Joseph N. Kravec, Jr.
SPECTER SPECTER EVANS
  & MANOGUE, P.C.
The 26th Floor Koppers Building
Pittsburgh, Pennsylvania 15219
Tel:   (412) 642-2300
Fax:   (412) 642-2309
E-mail: jnk@ssem.com

Michael D. Braun (167416)
BRAUN LAW GROUP, P.C.
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Tel:   (310) 442-7755
Fax:   (310) 442-7756
E-mail: service@braunlawgroup.com

Ira Spiro (67641)
SPIRO MOSS BARNESS, LLP
11377 West Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Tel:   (310) 235-2468
Fax:   (310) 235-2456
E-mail: ira@spiromoss.com

Janet Lindner Spielberg (221926)
LAW OFFICES OF JANET
LINDNER SPIELBERG
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Tel:   (310)392-8801
Fax:   (310)278-5938
E-mail: jlspielberg@jlslp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| SIDNEY SCHOLL and FELTON A. SPEARS, JR., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON MUTUAL, INC. a Washington corporation; WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK); FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC., <br><br> Defendants. | **CASE NO.:** 5:08-cv-00868 (HRL) <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

1  Plaintiffs, by their attorneys, bring this class action against Defendants

2  Washington Mutual, Inc., Washington Mutual Bank, FA (aka Washington Mutual

3  Bank)(herein after collectively referred to as "WaMu"), First American eAppraiseIT

4  ("EA"), and Lender's Service Inc., ("LSI") (collectively "Defendants") on their own

5  behalf and on behalf of all others similarly situated, and allege as follows based upon

6  the investigation of their counsel:

7  ## OVERVIEW

8  1.    This is a class action against Defendants seeking relief on behalf of

9  Plaintiffs and a class of all consumers in California and throughout the United States

10  who, on or after June 1, 2006, received home loans from WaMu, in connection with

11  appraisals that were obtained through either EA or LSI. Plaintiffs and the Class were

12  ultimately responsible for paying for these appraisals, which, as described throughout

13  this Complaint, were not performed in an independent, objective, impartial and

14  unbiased manner, in violation of applicable law and the contractual requirements for

15  the appraisal.

16  2.    The vast majority of home purchasers in the United States finance their

17  home purchase through a third party lender. The loan has traditionally been secured

18  by the lender, who retains a security interest in the property until the loan is repaid in

19  full. In the event of default, the lender will be entitled to sell off the security interest

20  (i.e., the property) and recoup the loan amount. Thus, it traditionally has been

21  critical for the lender to make sure the fair market value of the property  equals or

22  exceeds the value of the loan.[1]  To do so, lenders require that, prior to the loan, the

23  property be professionally appraised to determine its fair market value.

24  3.    A real estate appraisal is supposed to be an independent, objective,

25

26  [1]  Fair market value is the price at which a willing buyer would purchase a
property and a willing seller would sell the same property, when neither party is
27  under any compulsion to buy or sell, and each party has full knowledge of all
28  pertinent facts relating to the sale."

**FIRST AMENDED COMPLAINT**

1  impartial, unbiased, credible professional estimate of the fair market value of a
2  particular property.  It typically consists of a visual inspection of the interior and
3  exterior of a property; inspection of the neighborhood; and a comparison of selling
4  prices of comparable properties on the street or adjacent areas, among other indicia.
5  The lender (in this case, WaMu) typically undertakes to procure the appraisal on
6  behalf of itself and the borrower with the cost of the appraiser's services ultimately
7  borne by the borrower.

8       4.     If an appraisal is properly done, the appraisers perform the appraisal,
9  and appraisal reviewers review the appraisal report for accuracy and compliance with
10  applicable standards to create what legal and professional standards term a "credible
11  appraisal".  Appraisers and appraisal reviewers follow federally accepted standards,
12  the Uniform Standards of Professional Appraisal Practice ("USPAP"), which govern
13  the ethical and legal aspects of the appraisal undertaking, assessment, reporting and
14  review process, and establish the minimum standards for performing a "credible
15  appraisal".  These USPAP standards are also adopted by most, if not all, states,
16  including California.  Also they are part of the contractual undertakings expressly
17  stated in the Uniform Residential Appraisal Report, which is the standard form that
18  appraisers use for their appraisal reports and which were used for the WaMu loans
19  that are the subject of this Complaint.  These appraisal reports also expressly provide
20  that they are to be provided to borrowers and acknowledge that borrowers are
21  permitted to rely on the appraisals as part of any mortgage finance transaction
22  between borrowers and WaMu.

23       5.     The USPAP requirements provide that to promote and preserve the
24  public trust inherent in professional appraisal practice, an appraiser and an appraisal
25  reviewer must observe the highest standards of professional ethics to perform and
26  ensure a "credible appraisal".  An appraiser and an appraisal reviewer must perform
27  assignments ethically and competently, in accordance with USPAP and any
28  supplemental standards agreed to by the appraiser in accepting the assignment.

**FIRST AMENDED COMPLAINT**

1  Under USPAP, an appraiser and an appraisal reviewer must perform assignments
2  with impartiality, objectivity, and independence, and without bias or accommodation
3  of personal interests. In appraisal practice under USPAP, an appraiser and an
4  appraisal reviewer must not perform as an advocate for any party or issue, must not
5  accept an assignment that includes the reporting of predetermined opinions and
6  conclusions or favors the cause of any client, must not communicate assignment
7  results or write a report in a misleading or fraudulent manner, and must not permit an
8  employee or other person to communicate a misleading or fraudulent report.

9      6.    In or about June 2006, WaMu entered an agreement, conspiracy or
10 scheme with EA and LSI, two purportedly independent appraisal companies, to
11 handle all of WaMu's home loan appraisals. As part of this arrangement, EA and
12 LSI received appraisal requests from WaMu, procured local appraisers to perform the
13 appraisals, reviewed the appraisal reports, and requested, at the behest of WaMu, that
14 the appraisers make changes before finalizing the reports and providing them to
15 WaMu to transmit to the borrowers. In reality, WaMu, with the full, unfettered
16 cooperation of EA and LSI, controlled the process by which individual appraisers
17 were selected, how home appraisals were performed and, ultimately, the values at
18 which properties were appraised. EA and LSI consulted directly with WaMu and its
19 loan officers to establish the property values they desired before EA and LSI (and its
20 appraisers) finalized the appraisal reports. This conspiratorial conduct allowed
21 WaMu to direct appraisers to artificially inflate home values and thus provide false
22 appraisals in order to qualify more people for higher value loans. WaMu would then
23 aggregate and package these home loans and sell them in the financial markets for a
24 substantial profit. Ultimately, the higher the volume and value of these loans, the
25 higher WaMu's profits. In 2006, WaMu made over $760 million in revenue from
26 sales and servicing of home mortgage loans.

27     7.    As part of the scheme, EA and LSI each received millions of dollars in
28 appraisal fees from unsuspecting WaMu borrowers who, despite paying for what

1  should have been credible appraisals (i.e., done in compliance with applicable legal
2  and professional standards so as to provide an independent, unbiased, and objective
3  appraisal of the fair market value of their property), instead unwittingly received
4  biased appraisals that were neither independent, objective or in compliance with
5  legal and professional standards.  Each borrower was charged for a credible, lawful
6  appraisal, but as a result of the arrangement between WaMu, EA and LSI, no
7  credible, lawful appraisal was performed.  WaMu borrowers (i.e., Plaintiffs and the
8  Class) were damaged thereby.

9       8.    EA has its principal place of business in Poway, California and operates,
10  manages and directs its nationwide appraisal services and business operations from
11  its offices in California.  Likewise, LSI has two of its three nationwide operation
12  centers in California, from which LSI operates and directs the majority, or at least a
13  substantial proportion, of its nationwide appraisal services and business operations.
14  A majority of WaMu's home loan portfolio are loans made in California, according
15  to its 2006 Annual Report.  It is therefore believed and averred that the agreements,
16  conspiracy and misconduct at issue in this Complaint occurred, was conducted
17  and/or was directed primarily from, or at least a substantial proportion emanated
18  from, California, including, but not limited to: a) the designation and assignment of
19  appraisers for WaMu home loans; b) the review, approval and revision of appraisals
20  for WaMu home loans to meet WaMu's expectations; and c) the management and
21  supervision of appraisal services for WaMu home loans to Plaintiffs and the Class.

22       9.    Defendants' conduct violates the Real Estate Settlement Procedures Act,
23  12 U.S.C. section 2607, the unlawful, unfair and fraudulent prongs of California's
24  Business and Professions Code section 17200, *et seq*. (the "UCL") as well as the
25  Consumer Legal Remedies Act ("CLRA").  Defendants' conduct also constitutes an
26  unlawful civil conspiracy.  Defendants' conduct also breaches their contracts with
27  Plaintiffs and the Class, either directly or because Plaintiffs and Class members are
28  intended beneficiaries of the contracts, or Defendants' services, or is grounds for

1  restitution on a quasi-contract/unjust enrichment basis.

2                              **PARTIES**

3       10.    Plaintiff, Sidney Scholl, is an individual who is a citizen of the State of

4  California, residing in Sonoma County, California.  In October, 2006, Ms. Scholl

5  entered a mortgage loan through WaMu's offices in Sonoma, California to purchase

6  a property located at 194 Terrace, Edmond, Oklahoma.  In connection with this loan,

7  WaMu procured for itself and Ms. Scholl an appraisal on the subject property from

8  EA and/or LSI that was performed pursuant to the scheme alleged in this Complaint.

9  Ms. Scholl was charged for this appraisal.

10      11.    Plaintiff, Felton A. Spears, Jr., is an individual who is a citizen of the

11  State of California, residing in San Jose, California.  In March, 2007, Mr. Spears

12  entered a mortgage loan with WaMu on a property located in San Jose, California.

13  In connection with this loan, WaMu procured for itself and Mr. Spears an appraisal

14  of the subject property from EA and/or LSI that was performed pursuant to the

15  scheme alleged in this Complaint.  Mr. Spears was charged for this appraisal.

16      12.    Defendants Washington Mutual, Inc. and Washington Mutual Bank, FA

17  (aka Washington Mutual Bank)(herein after collectively referred to as "WaMu")

18  collectively operate as a consumer and small business banking company in the

19  United States with assets totaling $346 billion.  WaMu operates in four segments:

20  Retail Banking, Card Services, Commercial, and Home Loans.  The Home Loans

21  segment originates and services home loans, manages capital market operations,

22  fulfills and services a portfolio of home equity loans and lines of credit, originates

23  and purchases mortgage loans to higher risk borrowers, provides financing and other

24  banking services to mortgage bankers for the origination of mortgage loans, and

25  offers insurance-related products and reinsurance services.  This segment offers

26  various real estate secured residential loan products and services primarily consisting

27  of fixed-rate home loans, adjustable-rate home loans, hybrid home loans, option

28  ARM loans, and mortgage loans to higher risk borrowers.  As of December 31, 2006,

**FIRST AMENDED COMPLAINT**

1   the company operated 2,225 retail banking stores and 472 lending stores and centers
2   in 36 states, including California. According to the company's 2006 Annual Report,
3   the majority of WaMu's home loan portfolio are loans made in California.

4       13.    Defendant First American eAppraiesIT ("EA") is a Delaware
5   corporation with its principal place of business at 12395 First American Way,
6   Poway, California. EA is a subsidiary of The First American Corporation and is a
7   California corporation with its principal place of business at 1 First American Way,
8   Santa Ana, California.

9       14.    Defendant Lender's Service Inc. is one of the country's largest providers
10  of property valuation, title and closing services to the first mortgage, home equity,
11  and subprime markets, as well as to mortgage servicers and investors. LSI is a
12  subsidiary of Fidelity National Information Services, a corporation incorporated in
13  Georgia and headquartered in Jacksonville, Florida. LSI maintains three operation
14  centers, two of which, Santa Ana and Sacramento, are located in California.

15              **JURISDICTION AND VENUE**

16      15.    Jurisdiction of this Court is proper under 28 U.S.C. §1331(federal
17  question jurisdiction) and §1367(supplemental jurisdiction). Plaintiffs assert a
18  federal claim under RESPA, 12 U.S.C. §2607, and supplemental state law claims.

19      16.    Jurisdiction of this Court is alternatively proper under 28 U.S.C.
20  §1332(d)(2). Plaintiffs are citizens of the State of California and reside in Sonoma
21  and San Jose, California. Defendant WaMu is incorporated in the State of
22  Washington and has its corporate headquarters in Seattle, Washington. Defendant
23  EA is incorporated in the State of Delaware and has its principal place of business in
24  Poway, California. Defendant LSI has two of its three main operation centers
25  located in Santa Ana, California and Sacramento, California. A substantial portion
26  of the conduct at issue in this lawsuit took place in one or more of Defendants'
27  California offices.

28      17.    The amount in controversy exceeds $5,000,000 for Plaintiffs and Class

1  members collectively, exclusive of interest and costs, by virtue of the combined cost

2  of appraisals performed by EA and LSI for WaMu, and the revenue and profit reaped

3  by Defendants from their transactions with Plaintiffs and the Class, as a direct and

4  proximate result of the wrongful conduct alleged herein, and by virtue of the

5  statutory, exemplary and/or punitive damages alleged herein.

6        18.    Venue is proper within this judicial district pursuant to 28 U.S.C. §

7  1391(b), (c) and (d). Defendant EA has agents, transacts business and is otherwise

8  found within this judicial district. Defendant LSI has agents, transacts business, and

9  is otherwise found within this judicial district. Defendant WaMu has agents,

10 transacts business and is otherwise found within this judicial district. A substantial

11 portion of the transactions and events complained of herein, including Plaintiffs',

12 occurred in this judicial district, a substantial portion of the affected persons and

13 entities are in this judicial district, and Defendants have received substantial

14 compensation from such transactions and business activity in this judicial district,

15 including the transaction Plaintiffs entered with Defendant. Finally, Defendants

16 inhabit and/or may be found in this judicial district, and the interstate trade and

17 commerce described herein is and has been carried out in part within this judicial

18 district.

19                               **BASIC FACTUAL ALLEGATIONS**

20                               **The Real Estate Mortgage Industry**
                        **Provides Incentives for High Appraisals**

21

22       19.    WaMu is the country's largest savings and loan with assets totaling

23 $346 billion. During the first three quarters of 2007 alone, WaMu originated $116

24 billion in residential mortgage loans. WaMu procures more appraisals from EA and

25 LSI than any other single entity.

26       20.    Traditionally, a lender such as WaMu would have an interest in ensuring

27 that a borrower is able to repay a home loan, and that the loan is adequately

28 collateralized in case the borrower defaults. Likewise, a consumer borrowing money

for a home loan places their trust in the lender to procure a credible appraisal (i.e., one done in compliance with applicable legal and professional standards so as to provide an independent, objective and unbiased appraisal of their home's value) and to lend them money on terms appropriate to that independent, objective and unbiased assessment of that home's fair market value. Traditionally, the borrower and lender shared a common interest in having a property independently and objectively appraised to ensure both that the borrower was not paying too much, and that the property value could support repayment of the loan in the event of a default.

21. Because historically banks retained ownership of the loan and mortgage for the life of the loan, the banks' primary interest was to make sure that the borrower paid off the principal and interest without delay or default. Whenever a borrower defaulted on a loan it would have a direct financial impact on the lender, i.e. loss or threatened loss of principal and interest on the loan. If the loan was properly based on the actual fair market value of the property, however, the lender would be able to sell the loan and recoup the outstanding principal. Accordingly, it was critical that the market value of the property was properly appraised and that the loan amount reflected that value.

22. In recent years the traditional model, whereby banks held a mortgage loan until it was paid off, has changed. Banks such as WaMu no longer hold all, or even most of their mortgage loans, but instead sell them to investment banks or government sponsored enterprises such as the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac"). These loans are then pooled together, securitized, and sold to the general public as mortgage backed securities, allowing lenders such as WaMu to profit from the volume and value of loans it has procured. The larger the aggregate value of the loans, the more profit for the lender.

23. The paradigm shift away from retaining a portfolio of loans towards the sale of mortgage backed securities fundamentally altered a lender's incentive to issue

**FIRST AMENDED COMPLAINT**

1    quality loans. By selling the vast majority of their mortgage loan portfolio to other
2    companies, banks no longer assumed the risk of a bad loan. The risk of default was
3    passed on to other companies and eventually the investors who bought mortgage
4    backed securities. More importantly, now bank profit directly correlated to the
5    volume and value of loans generated, not the likelihood that a loan would be repaid.
6    Banks were thus incentivized to offer as many loans at the highest dollar amounts
7    that could be offered with little regard to whether the loan could be paid back.

8        24.    In this environment, there remains little incentive for Wamu to obtain  a
9    credible appraisal of a property's real market value and every incentive to offer the
10   highest loan amounts possible, supporting the loans with biased, artificially inflated,
11   false appraisals.

12                **Federal and State Laws Require Appraisal Independence**

13       25.    Despite the new economic paradigm fueling the mortgage lending
14   industry, state and federal regulations require that appraisals be "credible" by being
15   independent, objective, unbiased and performed in compliance with the minimum
16   standards set forth in the Uniform Standards of Professional Appraisal Practice
17   ("USPAP"). These USPAP standards are incorporated into federal law, *see* 12
18   C.F.R. § 34.44, are incorporated into many, if not all, state laws, including
19   California, *see* California Business and Professions Code §11319, and are part of the
20   contractual undertakings expressly stated in the Uniform Residential Appraisal
21   Report, which is the standard form that appraisers use for their appraisal reports and
22   which were used for the WaMu loans that are the subject of this Complaint. These
23   appraisal reports also expressly contemplated that they would be provided to
24   borrowers and acknowledged that borrowers may rely on the appraisals as part of any
25   mortgage finance transaction between borrowers and WaMu.

26       26.    USPAP requires appraisers to conduct their appraisals independently:
27   "An appraiser must perform assignments with impartiality, objectivity, and
28   independence, and without accommodation of personal interests. In appraisal

**FIRST AMENDED COMPLAINT**

1  practice, an appraiser must not perform as an advocate for any party or issue.  An

2  appraiser must not accept an assignment that includes the reporting of predetermined

3  opinions and conclusions." USPAP Ethics Rules (Conduct).

4      27.    USPAP requires appraisers to communicate their appraisals honestly:

5  "An appraiser must not communicate assignment results in a misleading or

6  fraudulent manner.  An appraiser must not use or communicate a misleading or

7  fraudulent report or knowingly permit an employee or other person to communicate a

8  misleading or fraudulent report."  USPAP Ethics Rules (Conduct).

9      28.    USPAP requires that "[i]n developing a real property appraisal, an

10  appraiser must: (a) be aware of, understand, and correctly employ those recognized

11  methods and techniques that are necessary to produce a credible appraisal..."

12  USPAP Standards Rule 1-1.

13      29.    USPAP also requires that "[e]ach written real property appraisal report

14  must contain a signed certification that is similar in content to the following form:

15      I certify that, to the best of my knowledge and belief:

16      -    the statements of fact contained in this report are true and correct.

17/18      -    the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

19/20/21      -    I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

21/22      -    I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

23      -    my engagement in this assignment was not contingent upon developing or reporting predetermined results.

24/25/26      -    my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

27/28      -    my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of*

10

1    *Professional Appraisal Practice.*"

2    The appraisal reports for the WaMu loans that are the subject of this

3    Complaint contained this or a materially identical certification.

4    30.    The same or similar USPAP ethics rules, standards and certifications are

5    required for appraisal reviewers (i.e., appraisers who perform a quality review of

6    another appraiser's report). Such appraisal reviews were performed by EA and LSI

7    appraisal reviewers on the appraisal reports for the WaMu loans that are the subject

8    of this Complaint.

9    31.    Federal law mandates that appraisers involved in federally-regulated

10    transactions operate independently. *See* 12 U.S.C. §§ 3331 *et seq.* The Federal

11    Regulations provide that for independent contractors or "fee" appraisers, the

12    appraiser shall "have no direct or indirect interest, financial or otherwise, in the

13    property or the transaction." 12 C.F.R. 34.45.

14    32.    In 2005, federal regulators, including the Office of Thrift Supervision

15    ("OTS"), published "Frequently Asked Questions on the Appraisal Regulations and

16    the Interagency Statement on Independent Appraisal and Evaluation Functions."

17    With regard to appraisal independence, the statement provides:

18        3.      Who should be considered the loan production staff

19                for purpose of achieving appraisal independence?

20                Could loan production staff select an appraiser?

21

22        Answer:    The loan production staff consists of those

23                responsible for generating loan volume or approving

24                loans, as well as their subordinates. This would

25                include any employee whose compensation is based

26                on loan volume. Employees responsible for credit

27                administration function or credit risk management are

28                not considered loan production staff. **Loan**

11

1    **production staff should not select appraisers.**

2

3    5.    When selecting residential appraiser, may loan

4          production staff use a revolving pre-approved

5          appraiser list, provided the list is not under their

6          control?

7

8    Answer:    Yes, loan production staff may use a revolving board-

9              approved list to select a residential appraiser,

10             provided the development and maintenance of the list

11             is not under their control.  **Staff responsible for the**

12             **development and maintenance of the list should be**

13             **independent of the loan production process.**

14             **Further, there should be periodic interval review**

15             **of the appraiser selection process to ensure that**

16             **appropriate procedures are being followed and**

17             **that controls exist to ensure independence.**

18             (Emphasis added).

19

20                    **LSI and EA**

21    **Conspired With WaMu to Provide Artificial Appraisals**

22    33.    In 2006, responding to these federal regulations, as well as threats of

23    strict federal enforcement of appraiser independence in the mortgage lending

24    industry, WaMu attempted to insulate itself from criticism and federal oversight by

25    entering into an agreement with two purportedly independent Appraisal Management

26    Companies ("AMCs"), First American eAppraiseIT and Lender's Services, Inc.,

27    whereby WaMu would procure appraisals from these two AMCs on behalf of

28    borrowers for all or nearly all WaMu residential loans nationwide, with the cost of

**FIRST AMENDED COMPLAINT**

1  the appraisals being charged to the borrowers at the time of the closing of their loans.
2  These two AMCs were engaged to oversee the appraisal process and provide a barrier
3  of independence between WaMu (the lender) and those hired to appraise properties
4  on which it would provide mortgage loans. In theory, these AMCs were to select
5  appraisers independent of WaMu, serve as the sole contact with the appraiser, review
6  the appraiser's report, and communicate the unbiased results and report to WaMu.
7  WaMu would in turn communicate the appraisal results and reports to WaMu
8  borrowers so both the borrower and lender could rely on them in entering the
9  mortgage loans. Under this arrangement, WaMu would theoretically not be able to
10  improperly influence the appraiser or the ultimate value placed on a property.

11  34.  Both EA and LSI tout themselves as unbiased appraisers who abide by
12  USPAP requirements. As reported on its website, EA assures consumers that it uses
13  "only the services of appraisers licensed or certified by the state in which a subject
14  property is located" and "customers can be assured that Uniform Standards of
15  Professional Appraisal Practice and Financial Institutions Reform Recovery and
16  Enforcement Act ("FIRREA") guidelines are followed and that each appraisal is
17  audited for compliance." Likewise, LSI assures consumers that its appraisals
18  "conform to USPAP requirements."

19  35.  In or about June 2006, WaMu retained EA and LSI to administer
20  WaMu's appraisal program. Since this time, EA and LSI have performed nearly all
21  of WaMu's appraisals. WaMu borrowers quickly became both EA's and LSI's
22  largest source of revenue. Since June 2006, EA alone has received over $50 million
23  in fees from borrowers who received loans through WaMu.

24  36.  Prior to being retained by WaMu, EA and LSI used a combination of
25  internal staff and third party appraisers to service Wamu borrowers. Although the
26  independence of the appraiser is critical to the appraisal process, soon after retaining
27  EA and LSI to administer the WaMu appraisal program, WaMu identified certain
28  appraisers ("Preferred Appraisers") that WaMu requested conduct residential

13

property appraisals for its loans. At first these preferred appraisers were simply added to the list of possible appraisers to conduct appraisals for WaMu loans, but eventually WaMu demanded that all of its appraisals be done by the Preferred Appraisers. Despite USPAP and FIRREA requirements that appraisers be independent, EA and LSI acquiesced to WaMu's demand to staff appraisals with Preferred Appraisers.

37.    Additionally, WaMu encouraged EA and LSI to hire former WaMu employees as staff appraisers and appraisal business managers, the latter of which had authority to override and/or revise the values reached by third party appraisers. Both LSI and EA agreed to WaMu's request and took on new employees who formerly worked for WaMu as its appraisers and regional managers.

38.    Moreover, pursuant to contractual agreements between WaMu and the AMCs, WaMu had the right to challenge an appraiser's conclusions by requesting a "reconsideration of value" (also known as a "ROV" or "rebuttal") when WaMu did not like the appraised value of a home. This rebuttal system gave WaMu a direct way to request that EA or LSI reconsider an appraiser's report and to raise the value assigned to a given home. WaMu frequently used this "reconsideration of value" technique to get EA and LSI to provide higher appraisal values on homes to enable its loan origination staff to close the loans.

39.    In addition to WaMu's contractual ability to request a re-appraisal of property valuation, the AMCs' Appraisal Business Managers, hired at the request of WaMu, were given unfettered authority to override the values prescribed by third party appraisers. According to a complaint filed by the New York Attorney General ("NYAG") against EA, a WaMu executive defined the role of EA's Appraisal Business Managers in terms of value disputes in the following way:

> ... the four appraisers/reviewers would be directly involved in
> escalations dealing with: ROVs, Valuation issues where the purchase
> price and appraised value differ with no reconciliations/justifications by

14

1  the appraiser, Value cuts which we continue to receive from your third

2  party reviewers (Wholesale), **proactively making a decision to**

3  **override and correct the third party appraiser's value or reviewer's**

4  **value cut**, when considered appropriate and supported...

5  Through these Appraisal Business Managers, WaMu sought to, and did, ensure that

6  home valuations would be sufficient to support the loan WaMu wanted to provide.

7

8                    **Guaranteed High Appraisals Were Facilitated Through**
                    **Instituting WaMu's Preferred Appraiser List**
9

10       40.    Soon after entering its arrangement with EA and LSI, WaMu's loan

11  origination staff began complaining about the appraisals performed by these AMCs

12  having property values too low for the proposed loans.  WaMu's loan origination

13  staff received commissions based on the value and volume of loans generated.  Their

14  dissatisfaction was based on desire to close loans at amounts higher than the

15  appraisals justified.

16       41.    For example, according to the NYAG's complaint, as early as August 9,

17  2006, WaMu's internal staff admonished EA for not providing appraisals at the

18  values they wanted.  In response to this acknowledged, improper pressure coming

19  from WaMu's loan origination staff who desired the higher appraisals, EA's

20  Executive Vice President capitulated to WaMu's demands by giving its Appraisal

21  Business Managers discretion to raise the value of homes up to $50,000.

22       42.    In order to guarantee WaMu would get the high appraisals it wanted,

23  without having to go through the delay of the rebuttal system, by the winter of 2007,

24  WaMu insisted that EA and LSI use WaMu's "Preferred Appraisers" for all of

25  WaMu's home loan appraisals.  These appraisers were individuals whom WaMu was

26  confident would appraise properties at a high inflated value to ensure WaMu could

27  quickly close the loan at a desired amount, and get as much value from the

28  transaction as possible.

**FIRST AMENDED COMPLAINT**

43.    According to the NYAG's complaint, both EA and LSI were complicit
with WaMu's demands to exclusively use Preferred Appraisers.  In an email dated
February 22, 2007, EA's President explained to senior executives at EA's parent
corporation, First American, that:

>    We had a joint call with Wamu and LSI today.  The attached document
>    outlines the new appraiser assigning process.  In short, we will now
>    assign all WaMu's work to WaMu's "Proven Appraisers" ... We will pay
>    their appraisers whatever they demand.  **Performance ratings to retain**
>    **position as a Wamu Proven Appraiser will be based on how many**
>    **come in on value, negating a need for an ROV.**  (Emphasis added).

### WaMu's "Preferred Appraiser List" Included Only Appraisers
### Selected and Controlled by WaMu's Loan Origination Staff

44.    The individuals on the "Preferred Appraiser List" were hand selected by
WaMu's loan origination staff.  Requests sent to WaMu's AMCs for the addition of
specific appraisers to the approved list were often sent by WaMu's loan origination
staff themselves.  WaMu's Vice President of "Appraisal Oversight" – the division of
WaMu that is supposed to be responsible for ensuring that no undue influence is
exerted by WaMu's loan origination staff on appraisers – stated in an email to EA
regarding one ROV for a "low value," that "[t]his is an example of the issue that has
caused sales pushing for a 'proven appraiser' process."

45.    In an email dated March 5, 2007, WaMu confirmed the role of its loan
origination staff in choosing specific appraisers for WaMu's "Proven Appraiser
List:"

>    Proven Appraiser List is being created.  This will replace the WaMu
>    preferred list.  **The initial list of names will be provided by lending**
>    with a minimum of two appraisers per area/county.  The list will then be
>    reviewed and approved by the Appraisal Business Oversight Team and

16

1   will be checked against our most recent ineligible list. Final list will be

2   provided to VMC's [vendor management companies]. Majority of work

3   must be assigned to the appraisers on the Proven Appraiser List on a

4   Priority Basis. (Emphasis added).

5   46.    Any review and approval by WaMu's Appraisal Business Oversight

6   Team was a facade. If an AMC went to WaMu's Appraisal Business Oversight team

7   to discuss the pressure being put on it by WaMu's loan origination staff to provide

8   higher home appraisal values, WaMu responded by telling the AMC to work the

9   issue out directly with the lending staff. WaMu insisted that its loan origination staff

10  have direct contact with appraisers so they could get the appraisals at the value they

11  wanted. Both EA and LSI permitted this direct involvement to occur.

12  47.    Appraisers were also aware that the Proven Appraisers were being

13  selected by WaMu's loan origination staff, and that the only way for an appraiser to

14  get onto the list was by giving WaMu's origination staff the appraisals they sought.

15  According to the NYAG's complaint, in an email sent on April 17, 2007 to EA's staff

16  appraisers to explain why staff appraisers were removed from WaMu's Proven

17  Appraiser List, EA's manager acknowledged WaMu's loan origination staff's

18  involvement in the selection of appraisers to perform WaMu's appraisals:

19  I thought I [sic] pass on my thoughts regarding the recent message that

20  we all received for [sic] Peter last weekend. I will be glad to tell you

21  what I know. I have been told that the lending folks at Wamu and [sic]

22  were unhappy with the AMC's and felt they were not receiving a good

23  level of appraisal work. They therefore decided to construct their own

24  appraisal panel, now known as the wamu proven panel, and instructed

25  the AMC's to utilize appraisers from this panel whenever possible. The

26  end result is that if you are not on this proven panel it is very unlikely

27  you will receive wamu work.

28  48.    The involvement of WaMu's loan origination staff in selecting

17

1   appraisers to perform WaMu's home loan appraisals was readily apparent to all

2   parties involved and evidenced by emails sent by WaMu's origination staff to EA and

3   LSI requesting the addition of specific appraisers to the Proven Appraiser List. In an

4   email identified in the NYAG's complaint, EA's Executive Vice President informed

5   EA's President that "currently WAMU is controlling the appraisal panel. They are

6   selecting appraisers and calling them 'proven' appraisers. These appraisers are being

7   chosen by their sales force. First American eAppraiseIT (FA eAppraiseIT) is

8   obligated to use these appraisers." The stated reason WaMu insisted on only using

9   its 'proven' appraisers was because EA's appraisers provided WaMu with "low

10  values."

11      49.    In addition to selecting which appraisers were on the Proven Appraiser

12  List, WaMu's loan origination staff was responsible for removing appraisers from the

13  list who did not comply with staff expectations or requests for high appraisals, or

14  who performed desk evaluations of other appraisals and reduced another appraiser's

15  valuation of one of WaMu's customer's properties.

16                  **WaMu's Proven Appraiser List is Illegal**

17      50.    The Code of Federal Regulations provides that for independent

18  contractors or "fee" appraisers, the appraiser shall "have no direct or indirect interest,

19  financial or otherwise, in the property or the transaction." 12 C.F.R. 34.45. In

20  addition, the Uniform Standards of Professional Appraisal Practice ("USPAP") are

21  incorporated into federal law, *see* 12 C.F.R. § 34.44, are incorporated into many, if

22  not all, states' laws, including California, and are expressly incorporated as part of

23  the Uniform Residential Appraisal Report used as the standard form for the appraisal

24  reports for the WaMu loans that are the subject of this Complaint. USPAP requires

25  appraisers and appraisal reviewers to provide and ensure "credible" appraisals by

26  complying with USPAP and other applicable legal and professional requirements,

27  which include, among other things, the requirement that appraisals and appraisal

28  reviews be conducted independently and without bias: "An appraiser must perform

18

1  assignments with impartiality, objectivity, and independence, and without
2  accommodation of personal interests.  In appraisal practice, an appraiser must not
3  perform as an advocate for any party or issue." USPAP Ethics Rules (Conduct).

4      51.    Despite the requirement that appraisers be unbiased, independent, and
5  have no direct or indirect interest in the home mortgage transaction, the agreements
6  between WaMu and EA and LSI establishing WaMu's Proven Appraiser List put in
7  place an appraisal system that was anything but unbiased and independent.  Those
8  appraisers willing to provide WaMu with its desired high appraisals for home
9  mortgage transactions were paid an additional 20% WaMu preferred appraisal fee for
10 each appraisal.  Those appraisers unwilling to bend to WaMu's, EA's and LSI's
11 desire to provide WaMu with high appraisals were removed from the Proven
12 Appraiser List by WaMu's loan origination staff, and were thereafter prohibited from
13 providing appraisals for WaMu by EA or LSI.  Appraisers, therefore, had a stake in
14 each and every appraisal they performed for WaMu.  They were rewarded financially
15 for providing high home appraisal values through the 20% premium for each WaMu
16 appraisal performed, and were rewarded by staying on WaMu's "Proven Appraiser
17 List" for future WaMu appraisals.

18     52.    EA and LSI likewise had a financial incentive to provide WaMu with the
19 specific appraisers WaMu wanted.  If either EA or LSI did not agree to provide
20 WaMu with appraisers from WaMu's Proven Appraiser List, they faced losing
21 millions of dollars of business on WaMu's loans.

22     53.    EA recognized that WaMu's Proven Appraiser List was unlawful, but
23 chose to go along with WaMu and continued providing illegal appraisal services in
24 order to reap millions of dollars from unsuspecting borrowers.  According to the
25 NYAG's complaint, in an email from EA's president to senior executives of First
26 American dated April 17, 2007, EA described the relationship with WaMu as
27 follows: "In short, the issuers are using their designated appraisers as mandated by
28 the WaMu production force at 20% gross margin and bypassing our panel.  **We view**

**FIRST AMENDED COMPLAINT**

1    this as a violation of the OCC, OTS, FDIC and USPAP influencing regulation."

2    (Emphasis added).  In support of EA's conclusion that its agreement with WaMu was

3    illegal, EA's Executive Vice President prepared a summary of the guidelines

4    regarding appraiser independence and, compared to WaMu's Proven Appraiser List,

5    concluded the following:

6       Based on our conversations we have had with the WAMU oversight as

7       well as the questions and answers initiated by our competitor LSI, **it is**

8       **our interpretation that the loan production staff has a great deal to**

9       **do with selecting appraisers.  The PAL [Proven Appraiser List] has**

10      **been selected by the loan production staff and the continued use of**

11      **these appraisers is being monitored by the loan production staff.**

12      For example, on the LSI question #1 "Does WAMU want to be updated

13      transactionally on every order we can not assign to a PAL?", WAMU's

14      answer is "Yes, we need a short sentence in the message log so that we

15      can monitor, – AND most important – lending can see why you didn't

16      assign to a PAL service provider.  Not using a PAL appraiser will be an

17      issue so we need to ensure we've covered our bases as to why they're

18      not utilized."  **This appears to be directly in contradiction to the**

19      **interagency guidelines unless you have a different interpretation.**

20      (Emphasis added).

21      54.    Both EA and LSI knew that what WaMu was doing, by having its loan

22   origination staff personally select appraisers, was illegal, and that by agreeing to

23   provide WaMu with its "Proven Appraisers" EA and LSI were acting as co-

24   conspirators.  According to the NYAG's complaint, in an email dated April 17, 2007,

25   EA's Executive Vice President wrote to EA's President and Chief Operating Officer

26   regarding EA's liability on this:

27      OTS and OCC only control lenders.  However, there is the legal concern

28      about collusion.  For example, let's say it is discovered that a lender

20

**FIRST AMENDED COMPLAINT**

1  (loan officer at a lender) is being collusive with an appraiser that is on

2  OUR (WAMU) panel.  That is, our reps and warrants apply.  Then we

3  are liable I would say because we have gone along with it....  In addition,

4  I think it will tarnish our reputation in the appraisal community because

5  we are allowing WAMU to pick appraisers based on their loan officers.

6  It makes us look complicit.  So [it] may not be actionable

7  legally but would hurt our reputation.  So those are two bad things

8  off the cuff.  There may be more if we think about it and use

9  creative paranoia.

10      55.    Despite increasing regulatory scrutiny, rather than abandon the Proven

11  Appraiser List, WaMu sought to obfuscate its misfeasance by changing the name of

12  its Proven Appraiser List to the "WaMu Select" panel.  WaMu stated that the, "Name

13  change from 'proven appraiser' and/or use of the moniker "PAL" list is discontinued,

14  under direction of the WaMu legal department.  We are utilizing a more generic term

15  acceptable w/in regulatory guidelines and industry standards."

16      56.    As a result of WaMu's, EA's and LSI's arrangement, conspiracy and

17  scheme, thousands of WaMu borrowers who collectively paid millions of dollars for

18  "independent, unbiased, and credible" appraisals, failed to receive what they paid for

19  and were damaged thereby.

20                          **PLAINTIFF SIDNEY SCHOLL**

21      57.    Plaintiff, Sidney Scholl, is an individual who is a citizen of the State of

22  California, residing in Sonoma County, California.

23      58.    In October, 2006, Ms. Scholl entered a mortgage loan through WaMu's

24  offices in Sonoma, California to purchase a property located at 194 Terrace, Edmond,

25  Oklahoma.  See Exhibit 1 (Settlement Statement).

26      59.    In connection with this loan, WaMu procured for itself and Ms. Scholl

27  an appraisal on the subject property from EA and/or LSI.  See Exhibit 2 (appraisal

28  report).  The appraisal report, utilizing the Uniform Residential Appraisal form,

**FIRST AMENDED COMPLAINT**

1    certifies that it was completed in compliance with the USPAP standards, including

2    being performed in an independent, objective and unbiased manner. *Id.* It also

3    acknowledges that the appraisal was performed for WaMu and EA and provided to

4    them and LSI, and was contemplated to be disclosed to and could be relied upon by

5    the borrower, Ms. Scholl, in her mortgage loan transaction with WaMu. *Id.* Ms.

6    Scholl was charged $255.00 for this appraisal.

7        60.    Ms. Scholl understood she was purchasing a credible, lawful appraisal

8    and had no reason to doubt the certification in the appraisal report and therefore

9    believed that the appraisal done on her property was performed independently,

10   objectively, without undue influence or bias to affect the value of the home, and was

11   otherwise a credible, lawful appraisal done in compliance with applicable law. It was

12   upon this appraisal that Ms. Scholl and WaMu entered her loan.

13       61.    Contrary to Ms. Scholl's belief and unbeknownst to her until shortly

14   before filing this Complaint, the appraisal for the property that was the subject of her

15   WaMu loan was created pursuant to the scheme described in this Complaint and

16   therefore Ms. Scholl did not receive the independent, objective, unbiased and

17   credible appraisal done in compliance with applicable law for which she paid, since

18   no such appraisal was performed by WaMu, EA, LSI or their agents. Ms. Scholl has

19   been damaged thereby.

20                    **PLAINTIFF FELTON A. SPEARS JR.**

21       62.    Plaintiff, Felton A. Spears, Jr., is an individual who is a citizen of the

22   State of California, residing in San Jose, California.

23       63.    In March, 2007, Mr. Spears entered a mortgage loan with WaMu on a

24   property located in San Jose, California. See Exhibit 3 (Closing Statement).

25       64.    In connection with this loan, WaMu procured for itself and Mr. Spears

26   an appraisal on the subject property from EA and/or LSI. It is believed that the

27   appraisal report, utilizing the Uniform Residential Appraisal form, certifies that it

28   was completed in compliance with the USPAP standards, including being performed

                                         22
                            **FIRST AMENDED COMPLAINT**

1   in an independent, objective and unbiased manner. *Id.* It is also believed that the

2   appraisal report acknowledges that the appraisal was performed for WaMu and EA

3   and provided to them and LSI, and was contemplated to be disclosed to and could be

4   relied upon by the borrower, Mr. Spears, in his mortgage loan transaction with

5   WaMu. *Id.* Mr. Spears was charged approximately $361.00 for this appraisal.

6       65.    Mr. Spears understood he was purchasing a credible, lawful appraisal

7   and had no reason to doubt the certification in the appraisal report and therefore

8   believed that the appraisal done on his property was performed independently,

9   objectively, without undue influence or bias to affect the value of the home, and was

10  otherwise a credible, lawful appraisal done in compliance with applicable law.

11      66.    Contrary to Mr. Spears' belief and unbeknownst to him until shortly

12  before filing this Complaint, the appraisal for the property that was the subject of his

13  WaMu loan was created pursuant to the scheme described in this Complaint and

14  therefore Mr. Spears did not receive the independent, objective, unbiased and

15  credible appraisal done in compliance with applicable law for which he paid, since no

16  such appraisal was performed by WaMu, EA, LSI or their agents. Mr. Spears has

17  been damaged thereby.

18              **DEFENDANTS' CONCEALMENT OF ITS SCHEME**

19      67.    WaMu's, EA's and LSI's scheme to conduct and charge Plaintiffs and

20  the Class for appraisals for WaMu home loans that were neither independent,

21  objective, impartial, unbiased, credible or in compliance with USPAP and applicable

22  law was never disclosed to Plaintiffs or any Class member by Defendants.

23      68.    Nor did Defendants give Plaintiffs or the Class any reason to suspect

24  that there were any problems with their appraisals. Indeed, EA and LSI were

25  recognized, experienced appraisal companies who retained certified appraisers who

26  prepared reports that on the surface appeared to have all of the earmarks of

27  legitimate, independent, objective, unbiased, credible and lawful appraisals. The

28  appraisal reports even included the appraiser's certification that the report was done

**FIRST AMENDED COMPLAINT**

1  independently, objectively, impartially and in compliance with USPAP standards and
2  applicable law.

3       69.    Moreover, it was traditional that lenders, like WaMu, would obtain
4  appraisals of properties in connection with the home loans and would provide the
5  appraisal reports to borrowers and would charge the borrowers for the reports.  In
6  other words, without disclosure of Defendants' arrangement, Plaintiffs and the Class
7  could not have reasonably suspected that there was anything wrong with the appraisal
8  for which they were each charged.

9       70.    The first time Defendants' scheme was publically revealed was in the
10  Fall of 2007 when the New York Attorney General announced its investigation and
11  complaint against EA for conspiring with WaMu to create false appraisals for WaMu
12  home loans.  It was only upon and after the New York Attorney General's
13  announcement in the Fall of 2007 that Plaintiffs became aware of Defendants'
14  scheme, and that Class members could have become aware of Defendants' scheme.

15                       **CLASS ACTION ALLEGATIONS**

16       71.    Plaintiffs bring this action on behalf of themselves and on behalf of all
17  other members of the Class ("Class"), defined as all persons in the United States who
18  received a home loan with WaMu and received an appraisal performed by EA or LSI.
19  Excluded from the Class are WaMu's, EA's, and LSI's officers, directors and
20  managerial employees, and any of WaMu's, EA's, or LSI's subsidiary or affiliated
21  entities and any of the judges of the Court before which this case is pending.

22       72.    There are thousands of class members who are geographically dispersed
23  throughout the United States, including California.  Therefore, individual joinder of
24  all members of the Class would be impracticable.

25       73.    Common questions of law or fact exist as to all members of the Class.
26  These questions predominate over the questions affecting only individual class
27  members.  These common legal or factual questions include:

28            a.    Whether WaMu entered into an agreement with EA and/or LSI to

                                      24

                       **FIRST AMENDED COMPLAINT**

1  procure appraisal services that were not performed by independent, unbiased
2  appraisers as required by law;

3          b.      Whether Defendants had and have policies, practices, or
4  procedures that undermine the possibility that Plaintiffs and the Class received
5  credible appraisals done in compliance with USPAP and applicable law;

6          c.      Whether WaMu, through its agreement with EA and/or LSI, was
7  able to control the appraisal process, by its loan origination personnel or otherwise,
8  by having either EA or LSI provide higher appraised values for homes than EA's or
9  LSI's appraiser had initially concluded  or than was the actual fair market value of
10 the home;

11         d.      Whether EA and/or LSI agreed with WaMu to provide WaMu
12 with appraisers who were selected by WaMu to be on WaMu's Proven Appraiser List
13 (or the WaMu Select panel);

14         e.      Whether WaMu controlled and/or manipulated the pool of
15 appraisers on WaMu's Proven Appraiser List;

16         f.      Whether the agreements between WaMu, EA and LSI constitute a
17 civil conspiracy;

18         g.      Whether Defendants' actions described herein violate the Real
19 Estate Settlement Procedures Act, 12 U.S.C. §2607;

20         h.      Whether Defendants' actions described herein violate California's
21 Business and Professions Code, sections 17200 *et seq.*;

22         i.      Whether Defendants' actions violate California's Consumer Legal
23 Remedies Act, California Civil Code sections 1750 *et seq.*;

24         j.      Whether Defendants breached their contracts with Plaintiffs and
25 the Class;

26         k.      The appropriate measure of damages and/or restitution.

27     74.    Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs
28 took out home mortgage loans with Defendant WaMu and their home appraisals were

1  procured for them by WaMu through EA and/or LSI. Plaintiffs, therefore, are no
2  different in any relevant respect from any other Class member, and the relief sought
3  is common to the Class.

4      75.    Plaintiffs are adequate representatives of the Class because their
5  interests do not conflict with the interests of the class members they seek to represent,
6  and they have retained counsel competent and experienced in conducting complex
7  class action litigation. Plaintiffs and their counsel will adequately protect the
8  interests of the Class.

9      76.    A class action is superior to other available means for the fair and
10 efficient adjudication of this dispute. The damages suffered by each individual class
11 member likely will be relatively small, especially given the burden and expense of
12 individual prosecution of the complex litigation necessitated by Defendants' conduct.
13 Thus, it would be virtually impossible for the class members individually to
14 effectively redress the wrongs done to them. Moreover, even if the class members
15 could afford individual actions, it would still not be preferable to class wide
16 litigation. Individualized actions present the potential for inconsistent or
17 contradictory judgments. By contrast, a class action presents far fewer management
18 difficulties and provides the benefits of single adjudication, economies of scale, and
19 comprehensive supervision by a single court.

20     77.    In the alternative, the Class may be certified because Defendants have
21 acted or refused to act on grounds generally applicable to the Class, thereby making
22 appropriate preliminary and final equitable relief with respect to the Class as a whole.

23            **FIRST CLAIM FOR RELIEF**

24     **(Against Defendants' for Violation of RESPA, 12 U.S.C. §2607)**

25     78.    Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint
26 and restate them as if they were fully written herein.

27     79.    Under 12 U.S.C. §2607(b) of RESPA, "[n]o person shall give and no
28 person shall accept any portion, split, or percentage of any charge made or received

26

1   for the rendering of a real estate service in connection with a transaction involving a
2   federally related mortgage loan other than for services actually performed."

3       80.    Plaintiffs and the Class entered federally related mortgage loans with
4   WaMu on or after June 1, 2006.

5       81.    In connection with these WaMu loans, Plaintiffs and the Class were
6   charged for appraisals WaMu procured for them through EA and LSI that were
7   certified in the appraisal report to be credible, independent, objective, unbiased, and
8   performed in compliance with USPAP and applicable law. As described throughout
9   this Complaint, no such appraisals were performed by Defendants and the appraisals
10  for which Plaintiffs and the Class were charged by Defendants were neither
11  independent, objective, unbiased or performed in compliance with USPAP or
12  applicable law, in violation of 12 U.S.C. §2607(b) of RESPA. As such, the
13  appraisals Plaintiffs and the Class received from WaMu, EA and LSI were not
14  appraisals at all in that they could not be relied upon at all since they had not been
15  performed in compliance with the applicable legal and professional standards. In
16  other words, the appraisals Plaintiffs and the Class received were not worth the paper
17  on which they were printed and were otherwise valueless.

18      82.    Plaintiffs and the Class never received the appraisal service for which
19  they were charged by Defendants and have been damaged thereby.

20      83.    Under 12 U.S.C. §2607(a) of RESPA, "[n]o person shall give and no
21  person shall accept any fee, kickback, or thing of value pursuant to any agreement or
22  understanding, oral or otherwise, that business incident to or part of a real estate
23  settlement service involving a federally related mortgage loan shall be referred to any
24  person."

25      84.    As described throughout this Complaint, WaMu entered into an
26  agreement or understanding with EA and LSI specifying that in exchange for WaMu
27  steering to EA and LSI all, or most, of the appraisal business for WaMu residential
28  loans, EA and LSI would cooperate with WaMu to ensure that the appraisals

1   established property values sufficient to support the WaMu residential loan amounts
2   regardless of the true market value of the properties that were the subject of the
3   WaMu home loans.

4        85.    To facilitate WaMu's, EA's and LSI's agreement or understanding, EA
5   and LSI agreed to use (for WaMu home loans) appraisers that WaMu's loan
6   origination staff selected to be on its Proven Appraiser List based on these
7   individuals providing WaMu with sufficiently high appraisals to financially benefit
8   both WaMu and its loan origination staff.  In return, WaMu demanded that EA and
9   LSI pay appraisers on its Proven Appraiser List a 20% premium over what EA's and
10  LSI's staff or third party appraisers were paid.  Those appraisers who did not provide
11  WaMu with the desired high appraisal values were removed from WaMu's Proven
12  Appraiser List by WaMu's loan origination staff, and were thereafter prohibited from
13  providing appraisals for WaMu, and could not get the 20% appraisal premium.
14  Appraisers on WaMu's Proven Appraiser List have a financial interest in each and
15  every WaMu home loan mortgage transaction that they perform appraisal services
16  for, both for the immediate 20% additional fee, as well as future appraisals for WaMu
17  at the additional 20% fee.

18       86.    WaMu benefitted from this arrangement by securing more high value
19  home mortgages that it could bundle and securitize for substantial profits, and EA
20  and LSI benefitted from this arrangement by securing a steady stream of appraisal
21  work on WaMu home loans.  Appraisers on WaMu's Proven Appraiser List who
22  were retained by EA and LSI to perform appraisals for WaMu home loans benefitted
23  from this arrangement by receiving a 20% premium in return for their participation in
24  this unlawful arrangement with WaMu, EA and LSI.

25       87.    Plaintiffs and the Class were damaged by Defendants' arrangement in
26  that they never received the appraisal service for which they were charged by
27  Defendants and instead unwittingly received unreliable, biased appraisals that were
28  the basis of the mortgage transactions they entered with WaMu.

1

## SECOND CLAIM FOR RELIEF

2

**(Against Defendants for Unfair Business Practices in Violation of
Business & Professions Code §§17200, *et seq.*)**

3

4      88.    Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint

5   and restate them as if they were fully written herein.

6      89.    The UCL defines unfair business competition to include any "unlawful,

7   unfair or fraudulent" act or practice.  Cal. Bus. & Prof. Code §17200.

8      90.    A business practice is "unlawful" under the Unfair Competition Law if it

9   is forbidden by law, including state or federal laws or regulations.

10      91.    The Code of Federal Regulations provides that for independent

11   contractors or "fee" appraisers, the appraiser shall "have no direct or indirect interest,

12   financial or otherwise, in the property or the transaction."  12 C.F.R. 34.45.  In

13   addition, the Uniform Standards of Professional Appraisal Practice ("USPAP"),

14   which are incorporated into federal law by 12 C.F.R. § 34.44, and into the state law

15   of many, if not all states, including California (*see* California Business and

16   Professions Code §11319) requires appraisers to perform a credible appraisal done in

17   compliance with USPAP standards, which includes requiring that their appraisals be

18   conducted independently: "An appraiser must perform assignments with impartiality,

19   objectivity, and independence, and without accommodation of personal interests.  In

20   appraisal practice, an appraiser must not perform as an advocate for any party or

21   issue."  USPAP Ethics Rules (Conduct).

22      92.    USPAP also requires that "[e]ach written real property appraisal report

23   must contain a signed certification that is similar in content to the following form:

24      I certify that, to the best of my knowledge and belief:

25      -      the statements of fact contained in this report are true and correct.

26      -      the reported analyses, opinions, and conclusions are limited only by the
       reported assumptions and limiting conditions and are my personal,

27       impartial, and unbiased professional analyses, opinions, and
       conclusions.

28

29

1    -    I have no (or the specified) present or prospective interest in the property
2         that is the subject of this report and no (or the specified) personal
         interest with respect to the parties involved.

3    -    I have no bias with respect to the property that is the subject of this
         report or to the parties involved with this assignment.
4
5    -    my engagement in this assignment was not contingent upon developing
         or reporting predetermined results.

6    -    my compensation for completing this assignment is not contingent upon
         the development or reporting of a predetermined value or direction in
7         value that favors the cause of the client, the amount of the value opinion,
         the attainment of a stipulated result, or the occurrence of a subsequent
8         event directly related to the intended use of this appraisal.

9    -    my analyses, opinions, and conclusions were developed, and this report
         has been prepared, in conformity with the *Uniform Standards of*
10         *Professional Appraisal Practice.*"

11         The appraisal reports for the WaMu loans that are the subject of this Complaint

12   contained this or a materially identical certification.

13         93.    The same or similar USPAP ethics rules, standards and certifications are

14   required for appraisal reviewers (i.e., appraisers who perform a quality review of

15   another appraiser's report).  Such appraisal reviews were performed by EA and LSI

16   appraisal reviewers on the appraisal reports for the WaMu loans that are the subject

17   of this Complaint.

18         94.    WaMu, EA, and LSI have and continue to violate the "unlawful" prong

19   of the UCL through the creation and use of WaMu's Proven Appraiser List because

20   appraisers on this list clearly have an interest in each WaMu home appraisal

21   transaction, and are not unbiased and independent.  WaMu's loan origination staff

22   selects appraisers to be on its Proven Appraiser List based on these individuals

23   providing WaMu with sufficiently high appraisals to financially benefit both WaMu

24   and its loan origination staff.  In return, WaMu demands that EA and LSI pay

25   appraisers on its Proven Appraiser List a 20% premium over what EA's and LSI's

26   staff or third party appraisers are paid.  Those appraisers who do not provide WaMu

27   with the desired high appraisal values are removed from WaMu's Proven Appraiser

28   List by WaMu's loan origination staff, and are thereafter prohibited from providing

**FIRST AMENDED COMPLAINT**

1  appraisals for WaMu, and can not get the 20% appraisal premium.  Appraisers on

2  WaMu's Proven Appraiser List clearly have a financial interest in each and every

3  WaMu home loan mortgage transaction that they perform appraisal services for, both

4  for the immediate 20% additional fee, as well as future appraisals for WaMu at the

5  additional 20% fee.

6       95.    WaMu, EA and LSI conspired to allow WaMu's loan origination staff to

7  select individuals to be on WaMu's Proven Appraiser List even though federal and

8  state law prohibits loan producers from having a direct influence on appraisers.  *See*

9  Office of Thrift Supervision ("OTS"), published "Frequently Asked Questions on the

10 Appraisal Regulations and the Interagency Statement on Independent Appraisal and

11 Evaluation Functions."  WaMu, EA, and LSI also agreed that WaMu's loan

12 origination staff would have control over deciding which individuals would stay on

13 the list in violation of federal laws which prohibit loan producers from having a

14 direct influence on appraisers.

15      96.    Through these agreements, the appraisers on WaMu's Proven Appraiser

16 List retained by EA and LSI for WaMu home loans are not acting independently,

17 objectively and in compliance with USPAP standards as federal and state law

18 mandates.  Rather, WaMu, EA and LSI permit and have agreed to permit WaMu's

19 loan origination staff direct contact with appraisers to influence their ultimate

20 appraisal decision, instead of allowing them to act in an unbiased, independent

21 fashion.  Moreover, the appraisal reports that these appraisers create for WaMu home

22 loans, which are approved by EA and LSI in their review process, are not

23 independent, objective, unbiased, credible or performed in compliance with USPAP

24 standards as required by federal and state law.

25      97.    Additionally, as the violation of any law may serve as the predicate for a

26 violation of the unlawful prong of the Unfair Competition Law, Plaintiffs further

27 allege that Defendants, in violating the Real Estate Settlement Procedures Act, the

28 Consumers Legal Remedies Act, and the common law of contract, violated the Unfair

**FIRST AMENDED COMPLAINT**

1 | Competition Law.

2 |     98.   Because of Defendants' unlawful acts and practices, Defendants injured

3 | Plaintiffs and members of the Class and obtained, and continue to unfairly obtain,

4 | money and property from Plaintiffs and members of the Class. Thus, Plaintiffs

5 | request that this Court cause Defendants to restore this money to Plaintiffs and all

6 | Class members, and to enjoin Defendants from continuing to violate the Unfair

7 | Competition Law as discussed herein. Otherwise, the Class may be irreparably

8 | harmed and/or denied an effective and complete remedy if such an order is not

9 | granted.

10 | ### THIRD CLAIM FOR RELIEF

11 | **(Against Defendants for Unfair Business Practices in Violation of**

12 | **Business & Professions Code §§17200, *et seq.*)**

13 |     99.   Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint

14 | and restate them as if they were fully written herein.

15 |     100.   The UCL defines unfair business competition to include any "unlawful,

16 | unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code §17200.

17 |     101.   A business act or practice is "unfair" under the Unfair Competition Law

18 | if the reasons, justifications and motives of the alleged wrongdoer are outweighed by

19 | the gravity of the harm to the alleged victims.

20 |     102.   Defendants have violated, and continue to violate, the "unfair" prong of

21 | the UCL in the following ways:

22 |         a.   Agreeing to allow and allowing WaMu to create its Proven

23 | Appraiser List which is constituted of appraisers WaMu hand selected as being ones

24 | that would provide WaMu with high home appraisal values;

25 |         b.   Agreeing to allow and allowing WaMu to limit its Proven

26 | Appraiser List to only those appraisers WaMu knew would provide it with high home

27 | appraisal values;

28 |         c.   Agreeing to allow and allowing all of WaMu's home appraisals to

1  be performed by only appraisers on WaMu's Proven Appraiser List;

2          d.      Agreeing to allow and allowing WaMu control over the Proven

3  Appraiser List by allowing WaMu, or members of WaMu's loan origination staff, to

4  choose appraisers to be added to the list, or to choose appraiser to be taken off the

5  list;

6          e.      Agreeing to allow and allowing WaMu to dictate a financial

7  incentive for appraisers on WaMu's Proven Appraiser List to inflate appraisals;

8          f.      Agreeing to provide and providing appraisers on WaMu's Proven

9  Appraiser List a financial interest in each appraisal performed for WaMu;

10         g.      Agreeing to provide and providing appraisers on WaMu's Proven

11 Appraiser List a financial interest in remaining on WaMu's Proven Appraiser List by

12 paying these appraisers a higher per-appraisal fee, and by informing them that if they

13 did not provide appraisals at a high enough value for WaMu, they would be removed

14 from the Proven Appraiser List;

15         h.      Agreeing to allow and allowing WaMu the ability to overrule

16 home appraisal values WaMu believed to be too low through the "rebuttal" or

17 "Reconsideration of Value" system;

18         i.      Agreeing to allow and allowing WaMu's loan origination staff to

19 have direct contact with LSI, EA, and their appraisers, with regard to appraisals

20 performed for home loans for WaMu; and,

21         j.      Failing to provide home loan borrowers with unbiased,

22 independent and credible home appraisals performed in compliance with USPAP

23 standards.

24     103.    The gravity of the harm to members of the Class resulting from such

25 unfair acts and practices outweighs any conceivable reasons, justifications and/or

26 motives of Defendants for engaging in such deceptive acts and practices.  By

27 committing the acts and practices alleged above, Defendants have engaged, and

28 continue to be engaged, in unfair business practices within the meaning of California

**FIRST AMENDED COMPLAINT**

1  Business and Professions Code §§17200 *et seq*.

2      104.   Through their unfair acts and practices, Defendants have obtained, and

3  continue to unfairly obtain, money from members of the Class. As such, Plaintiffs

4  request that this Court cause Defendants to restore this money to Plaintiffs and all

5  Class members, and to enjoin Defendants from continuing to violate the Unfair

6  Competition Law as discussed herein. Otherwise, the Class may be irreparably

7  harmed and/or denied an effective and complete remedy if such an order is not

8  granted.

9  ## FOURTH CLAIM FOR RELIEF

10  **(Against Defendants for Unfair Business Practices in Violation of**
**Business & Professions Code §§17200, *et seq*.)**

11

12      105.   Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint

13  and restate them as if they were fully written herein.

14      106.   The UCL defines unfair business competition to include any "unlawful,

15  unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code §17200.

16      107.   A business act or practice is "fraudulent" under the Unfair Competition

17  Law if it actually deceives or is likely to deceive members of the consuming public.

18      108.   Defendants' acts and practices as described herein have deceived and/or

19  are likely to deceive members of the consuming public, including Plaintiffs and the

20  Class. Specifically, Defendants offered to provide Plaintiffs and members of the

21  Class with independent, unbiased and credible home appraisals performed in

22  compliance with USPAP standards, and, in fact, certified such in the appraisal reports

23  prepared for and disseminated to Plaintiffs and the Class by Defendants. Yet, despite

24  this offer and promise, Defendants' failed to provide independent, unbiased and

25  credible home appraisals in the following ways:

26      a.   Agreeing to allow and allowing WaMu to create its Proven

27  Appraiser List which is constituted of appraisers WaMu hand selected as being ones

28  that would provide WaMu with high home appraisal values;

1          b.    Agreeing to allow and allowing WaMu to limit its Proven
2    Appraiser List to only those appraisers WaMu knew would provide it with high home
3    appraisal values;

4          c.    Agreeing to allow and allowing all of WaMu's home appraisals to
5    be performed by only appraisers on WaMu's Proven Appraiser List;

6          d.    Agreeing to allow and allowing WaMu control over the Proven
7    Appraiser List by allowing WaMu, or members of WaMu's loan origination staff, to
8    choose appraisers to be added to the list, or to choose appraiser to be taken off of the
9    list;

10         e.    Agreeing to allow and allowing WaMu to dictate a financial
11   incentive for appraisers on WaMu's Proven Appraiser List;

12         f.    Agreeing to provide and providing appraisers on WaMu's Proven
13   Appraiser List a financial interest in each appraisal performed for WaMu;

14         g.    Agreeing to provide and providing appraisers on WaMu's Proven
15   Appraiser List a financial interest in remaining on WaMu's Proven Appraiser List by
16   paying these appraisers a higher per-appraisal fee, and by informing them that if they
17   did not provide appraisals at a high enough value for WaMu, they would be removed
18   from the Proven Appraiser List;

19         h.    Agreeing to allow and allowing WaMu the ability to overrule
20   home appraisal values WaMu believed to be too low through the "rebuttal" or
21   "Reconsideration of Value" system;

22         i.    Agreeing to allow and allowing WaMu's loan origination staff to
23   have direct contact with LSI, EA, and/or their appraisers, regarding appraisals
24   performed for WaMu home loans; and,

25         j.    Failing to provide home loan borrowers with unbiased,
26   independent and credible home appraisals performed in compliance with USPAP
27   standards.

28       109.   As a result of the conduct described above, Defendants have been, and

35

**FIRST AMENDED COMPLAINT**

1  will continue to be, unjustly enriched at the expense of Plaintiffs and members of the

2  proposed Class. Specifically, Defendants have been unjustly enriched by the profits

3  and revenue it has obtained from Plaintiffs and the Class from the home appraisals

4  charged to them when taking out WaMu loans.

5        110.  Because of Defendants' unlawful acts and practices, Defendants injured

6  Plaintiffs and members of the class and obtained, and continue to unfairly obtain,

7  money and property from Plaintiffs and members of the Class. Thus, Plaintiffs

8  request that this Court cause Defendants to restore this money to Plaintiffs and all

9  Class members, and to enjoin Defendants from continuing to violate the Unfair

10  Competition Law as discussed herein. Otherwise, the Class may be irreparably

11  harmed and/or denied an effective and complete remedy if such an order is not

12  granted.

13                          **FIFTH CLAIM FOR RELIEF**

14      **(Against Defendants for Violation of the Consumers Legal Remedies Act,
            California Civil Code §1750, *et seq.*)**

15

16        111.  Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint

17  and restate them as if they were fully written herein.

18        112.  This claim for relief is brought pursuant to the Consumers Legal

19  Remedies Act, California Civil Code §1750, *et seq.* (the "CLRA").

20        113.  Plaintiffs and each member of the proposed Class who took out WaMu

21  home loans, and had appraisals performed by EA and/or LSI are "consumers" within

22  the meaning of *Civil Code* §1761(d).

23        114.  The home appraisals sold by Defendants to Plaintiffs and Class members

24  are "services" within the meaning of *Civil Code* §1761(b).

25        115.  Defendants have violated, and continue to violate, the CLRA in at least

26  the following respects:

27        a.    in violation of *Civil Code* §1770(a)(7), Defendants represented

28  their home appraisal services to be of a particular standard or quality, (i.e., being

36

**FIRST AMENDED COMPLAINT**

1 credible, independent, unbiased and performed in compliance with USPAP

2 standards), which they were not.

3     116. Plaintiffs and the members of the Class request that this Court enjoin

4 Defendants from continuing to engage in the unlawful and deceptive methods, acts

5 and practices alleged above, pursuant to *California Civil Code* §1780(a)(2). Unless

6 Defendants are permanently enjoined from continuing to engage in such violations of

7 the CLRA, future consumers taking out WaMu home loans will be damaged by their

8 acts and practices in the same way as have Plaintiffs and the members of the

9 proposed Class.

10     117. Pursuant to *Civil Code* §1782, Plaintiffs notified Defendants in writing

11 of the particular violations of *Civil Code* §1770 and demanded that Defendants

12 rectify the problems associated with its illegal behavior detailed above, which actions

13 are in violation of *Civil Code* §1770.

14     118. Defendants failed within 30 days of receipt of Plaintiffs notice of

15 demand to give, or agree to give within a reasonable time to the Class, including

16 Plaintiffs, the requested remedies. Pursuant to *Civil Code* §1782(b)and (d), Plaintiffs

17 file this Amended Complaint and seek the following damages as provided for in *Civil*

18 *Code* §1780:

19         a.    actual damages in excess of the jurisdictional limits of this Court;

20         b.    an order enjoining methods, acts and/or practices, as outlined

21             above, which are in violation of *Civil Code* §1770;

22         c.    punitive damages;

23         d.    any other relief which the Court deems proper, and;

24         e.    court costs and attorneys' fees.

25            **SIXTH CLAIM FOR RELIEF**

26         **(Against Defendants for Breach of Contract)**

27     119. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint

28 and restate them as if they were fully written herein.

**FIRST AMENDED COMPLAINT**

1    120.  Plaintiffs and the other Class members on or after June 1, 2006 took out
2  a WaMu home loan with WaMu.  In connection with these WaMu home loans,
3  WaMu, on behalf of and for Plaintiffs and the Class, undertook and agreed to procure
4  and did procure appraisals from EA and/or LSI for the homes that were the subject of
5  Plaintiffs' and Class members' WaMu loans.  EA and/or LSI undertook and agreed to
6  provide and provided Plaintiffs and the Class with these appraisals directly and/or by
7  delivery to them through WaMu.  Plaintiffs and Class members were charged for
8  these appraisals as reflected in their Settlement Statements (HUD-1) or other loan
9  documents.

10    121.  As evidenced by the loan documents that accompanied the home loan
11  transaction, the contracts between Plaintiffs and the Class and Defendants show that
12  the Defendants were to provide a home appraisal which, pursuant to applicable laws
13  and standards as certified in the appraisal reports, would be performed by an
14  independent, objective and unbiased appraiser, and the appraisal reports would be
15  credible, objective, unbiased and independent home appraisal done in compliance
16  with USPAP standards.  Moreover, the appraisal reports Plaintiffs and the Class
17  received from Defendants specifically acknowledge that borrowers (i.e., Plaintiffs
18  and the Class) would receive the appraisal report and may rely upon them in their
19  mortgage financing transaction with the lender (i.e., WaMu).

20    122.  Plaintiffs and the Class performed all conditions of the contracts to be
21  performed by them, except to the extent they were lawfully excused from such
22  performance.  Defendants breached these contracts with Plaintiffs and each Class
23  member by not providing a home appraisal which was performed by an independent,
24  objective and unbiased appraiser, and by not providing appraisal reports that were
25  credible, objective, unbiased, independent, and done in compliance with USPAP
26  standards and applicable law.  In other words, Plaintiffs and the Class were charged
27  for a lawful appraisal which was never performed by Defendants.

28    123.  As a direct and proximate result of the foregoing conduct, Plaintiffs and

1  the Class members have suffered damages, including economic losses, warranting

2  compensatory damages as well as injunctive relief, declaratory relief and other

3  equitable relief deemed just and proper by the Court.

4  ## SEVENTH CLAIM FOR RELIEF

5  ## (Against Defendants for Quasi-Contract/Unjust Enrichment)

6      124.   Plaintiffs hereby incorporate by reference each and every allegation

7  contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

8  Plaintiffs plead this Count in the alternative.

9      125.   Defendants' engaged in unlawful conduct by representing to Plaintiffs

10  and the members of the Class that their home appraisals provided for the purpose of

11  obtaining a home loan would be performed by an independent and unbiased appraiser

12  and that the appraisal report would be credible, objective and done in compliance

13  with USPAP standards, but actually providing home appraisals performed by a

14  biased, non-independent appraiser and providing appraisal reports that were not

15  credible, objective or done in compliance with USPAP standards as described

16  throughout this Complaint, is unlawful

17      126.   Defendants took monies from Plaintiffs and Class members in exchange

18  for what were supposed to be independent, objective, unbiased, credible appraisals

19  and appraisal reports done in compliance with USPAP standards, but did not provide

20  such appraisals and appraisal reports.  Defendants have been unjustly enriched at the

21  expense of Plaintiffs and the Class members as a result of their unlawful conduct

22  alleged herein, thereby creating a quasi-contractual obligation on Defendants to

23  restore these ill-gotten gains to Plaintiffs and the Class.

24      127.   As a direct and proximate result of Defendants' unjust enrichment,

25  Plaintiffs and Class members are entitled to restitution in an amount to be proved at

26  trial.

27  / / /

28  / / /

**FIRST AMENDED COMPLAINT**

1

**PRAYER**

2    WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other

3    members of the Class, request an award and relief as follows:

4    A.    An order certifying that this action is properly brought and may be

5    maintained as a class action, that Plaintiffs be appointed Class Representative and

6    Plaintiffs' counsel be appointed Class Counsel.

7    B.    Compensatory damages, except as to Counts Two, Three, Four.

8    C.    Treble damages as to Count One.

9    D.    Punitive damages as to Count Five.

10    E.    Restitution in such amount that Plaintiffs and all Class members paid for

11    their home appraisals, or the profits, charges and fees Defendants obtained from

12    them.

13    F.    An order enjoining Defendants from maintaining and utilizing WaMu's

14    Proven Appraiser List, or any other mechanism by which WaMu has control over the

15    appraiser selected to perform WaMu's home appraisals or value the appraiser sets for

16    the subject property.

17    G.    An order awarding Plaintiffs their costs of suit, including pre and post-

18    judgment interest.

19    H.    An order awarding Plaintiffs' counsel's attorneys' fees.

20    I.    An order requiring an accounting for, and imposition of a constructive

21    trust upon, all monies received by Defendants as a result of the unfair, fraudulent and

22    unlawful conduct alleged herein.

23    J.    Such other and further relief as may be deemed necessary or appropriate.

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

**FIRST AMENDED COMPLAINT**

1

## <u>DEMAND FOR JURY TRIAL</u>

2     Plaintiffs hereby demand a trial by jury on all causes of action and issues so

3   triable.

4

5   Dated: March 28, 2008                LAW OFFICES OF JANET LINDNER
                                         SPIELBERG
6

7                                        By:     /s/
                                            Janet Lindner Spielberg
8                                           12400 Wilshire Boulevard, #400
                                            Los Angeles, California 90025
9                                           Tel.:  (310) 392-8801
                                            Fax:   (310) 278-5938
10

11                                       Joseph N. Kravec, Jr.
                                         SPECTER SPECTER EVANS
12                                           & MANOGUE, P.C.
                                         The 26th Floor Koppers Building
13                                       Pittsburgh, Pennsylvania  15219
                                         Tel:  (412) 642-2300
14                                       Fax:  (412) 642-2309

15                                       Ira Spiro
                                         SPIRO MOSS BARNESS  LLP
16                                       11377 West Olympic Blvd., Fifth Floor
                                         Los Angeles, CA 90064-1683
17                                       Tel:   (310) 235-2468
                                         Fax:  (310) 235-2456
18
                                         Michael D. Braun
19                                       BRAUN LAW GROUP, P.C.
                                         12304 Santa Monica Blvd., Suite 109
20                                       Los Angeles, CA 90025
                                         Tel:  (310) 442-7755
21                                       Fax:  (310) 442-7756

22
                                         *Attorneys for Plaintiffs*
23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**