Stephen M. Rummage, *pro hac vice*
Jonathan M. Lloyd, *pro hac vice*
Martin Fineman (Cal. Bar No. 104413)
Sam N. Dawood (Cal. Bar No. 178862)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile:  (415) 276-6599
Email: martinfineman@dwt.com
          samdawood@dwt.com

Attorneys for Defendant Washington Mutual Bank

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

| | |
|---|---|
| SIDNEY SCHOLL and FELTON A. SPEARS, JR., on behalf of themselves and all others similarly situated, | Case No. 5:08-cv-00868 (HRL) |
| Plaintiffs, | CLASS ACTION |
| v. | **DEFENDANT WASHINGTON MUTUAL BANK'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| WASHINGTON MUTUAL, INC., a Washington corporation; WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK); FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC., | |
| Defendants. | Date:  Tuesday, July 15, 2008<br>Time: 10:00 a.m.<br>Department: SJ, Courtroom 2, 5th Floor |

Defendant Washington Mutual Bank hereby requests that this Court take judicial notice of

the following facts and documents pursuant to Federal Rule of Evidence 201:

1.      Washington Mutual Bank is a federally-chartered savings association located in

Stockton, California, pursuant to Federal Stock Charter No. 4539, declared effective on December

28, 1988 by the Federal Home Loan Bank Board.  Attached hereto as **Exhibit A** is a true and

correct copy of the Federal Stock Charter of Washington Mutual Bank, FA, formerly known as

American Savings Bank, F.A., as amended by the Consent of Shareholders in Lieu of Meeting

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 5:08-cv-00868 (HRL)

DWT 11004912v2 0013149-000099

1  dated September 23, 1997, reflecting that, on June 17, 1997, American Savings Bank, F.A.

2  amended the Federal Stock Charter to change its corporate title to Washington Mutual Bank, FA,

3  and that, effective April 4, 2005, Washington Mutual Bank, FA amended the Federal Stock

4  Charter to change its corporate title to Washington Mutual Bank and amended its Bylaws to

5  provide that Washington Mutual Bank also may do business under the name "Washington Mutual

6  Bank, FA." *See United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (fact of bank's

7  FDIC-insured status was proper subject of judicial notice); *United States v. Phillips*, 427 F.2d

8  1035, 1037 (9th Cir. 1970) (same).

9        2.       On January 1, 2005, Washington Mutual Bank merged into Washington Mutual

10  Bank, FA.  Attached hereto as **Exhibit B** is a true and correct copy of an Office of Thrift

11  Supervision Certificate of Succession in Interest reflecting this merger and the related amendments

12  to Washington Mutual Bank's Federal Stock Charter and Bylaws.

13        Respectfully submitted this 2nd day of May, 2008.

14                                    DAVIS WRIGHT TREMAINE LLP

15

16                                    By /s/ Stephen M. Rummage
                                        Stephen M. Rummage, *pro hac vice*
17                                      Jonathan M. Lloyd, *pro hac vice*
                                        Martin Fineman (Cal. Bar No. 104413)
18                                      Sam N. Dawood (Cal. Bar No. 178862)

19
                                        Attorneys for Defendant Washington Mutual
20                                      Bank

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

# EXHIBIT A

**WASHINGTON MUTUAL BANK
BOARD OF DIRECTORS RESOLUTION**

## AMENDMENT TO FEDERAL STOCK CHARTER (No. 4539)

**RESOLVED**, that Section 2 of the Federal Stock Charter of the Association (the "Charter") is hereby amended as follows:

       Section 2.    <u>Office.</u>  The home office shall be located in Henderson, Nevada.

The second resolution, as shown on the enclosure, would amend Article I, Section 2 of the Association's bylaws to read as follows:

## AMENDMENT TO BYLAWS

**RESOLVED FURTHER**, that Article I, Section 2 of the Bylaws of the Association shall be amended in its entirety to read as follows:

       Section 2.    <u>Home Office</u>.  The home office of the savings bank shall be at Henderson, in the County of Clark, in the State of Nevada.

**RESOLVED FURTHER**, that the foregoing amendments shall become effective as of September 23, 2005.

## AUTHORITY OF OFFICERS

**RESOLVED FURTHER**, that the Senior Executive Vice President, the Secretary or any Assistant Secretary, and each of them acting alone, are hereby authorized to execute and deliver any and all documents, and to take such other actions, as may be necessary or appropriate to effect such amendments of the Charter and the Bylaws.



**WASHINGTON MUTUAL BANK, FA**
**BOARD OF DIRECTORS RESOLUTION**

**AMENDMENT TO FEDERAL STOCK CHARTER (No. 4539)**

**RESOLVED,** that Section 1 of the Federal Stock Charter of the Association (the "Charter") is hereby amended as follows:

Section 1.    <u>Corporate Title</u>.  The corporate title of the savings bank is Washington Mutual Bank.

**AMENDMENT TO BYLAWS**

**RESOLVED FURTHER,** that Article I, Section 1 of the Bylaws of the Association shall be amended in its entirety to read as follows:

Section 1.    <u>Corporate Title and Name</u>.  The full corporate title of the savings bank is Washington Mutual Bank.  The savings bank also may do business under the name Washington Mutual Bank, FA.

**RESOLVED FURTHER,** that the foregoing amendments shall become effective as of April 4, 2005.

**RESOLVED FURTHER,** that the Senior Executive Vice President, the Secretary and the Assistant Secretary, and each of them acting alone, are hereby authorized to execute and deliver any and all documents, and to take such other actions, as may be necessary or appropriate to effect such amendments.



# HellerEhrman

ATTORNEYS

OFFICE OF THRIFT SUPERVISION
WEST REGION

01 FEB -9 AM 10:00

**RECEIVED**

MAR 1 5 2001

HELLER EHRMAN Jacob A. Scholl
jscholl@hewm.com
(206) 389-4283
Main (206) 447-0900
Fax (206) 447-0849

260200015

February 8, 2001

*Via Federal Express*

Bowman Lee
Office of Thrift Supervision
1 Montgomery Street, Suite 400
San Francisco, California 94104-4533

Re:    **Washington Mutual Bank, FA**

Dear Mr. Lee:

   We represent Washington Mutual Bank, FA. (the "Association"). Enclosed please find a copy of supplementary sections to the Association's Federal Stock Charter and related cover letter filed with the Seattle office of the Office of Thrift Supervision on February 8, 2001, pursuant to 12 C.F.R. § 552.4(b)(4). Enclosed with the filing please also find a revised draft plan of merger in connection with the proposed merger of Bank United with and into the Association.

   If you have any questions about these matters, please call me at (206) 389-4283, my colleague Bernard L. Russell (206) 389-6238 or William L. Lynch of Washington Mutual at (206) 461-3140.

Very truly yours,

Jacob A. Scholl

Enclosures

C:\program files\firm\heller\Letter.dot
2/8/01 2:49 PM (260200015)



**OTS West Region**

Notification Of:

☐ Approval                    ☒ Notice Appropriately
☐ No Objection                   Filed and Accepted
☐ File Closed                 ☐ Compliance Materials
☒ No Further Action              Filed and Accepted
   Required               ☐ As of: ____

By: _____ 2/15/2001
Title: Applications Analyst

bcc: P. Marshall
     N. Dyer

Heller Ehrman White & McAuliffe LLP   701 Fifth Avenue, Suite 6100   Seattle, WA  98104-7098   www.hewm.com

**Seattle** Portland Anchorage San Francisco Silicon Valley Los Angeles San Diego New York Washington D.C. Hong Kong Singapore
Affiliated Camelutti Offices: Milan Rome Paris Padua Naples

OFFICIAL FILE COPY
OTS/WEST

# HellerEhrman
### A T T O R N E Y S

OFFICE OF THRIFT SUPERVISION
WEST REGION
01 FEB -9 AM 10: 01

**RECEIVED**

MAR 1 5 2001

**HELLER EHRMAN**

Jacob A. Scholl
jscholl@hewm.com
(206) 389-4283
Main (206) 447-0900
Fax (206) 447-0849

February 8, 2001

*Via Hand Delivery*

Penny D. Marshall
Office of Thrift Supervision
101 Stewart Street, Suite 1210
Seattle, WA 98101

260200015

Re:    **Washington Mutual Bank, FA**

Dear Ms. Marshall:

We represent Washington Mutual Bank, FA (the "Association"). Please accept for filing pursuant to 12 C.F.R. § 552.4(b)(4) notice of the Association's adoption of supplementary sections to its Federal Stock Charter establishing and designating two series of preferred stock (the "Preferred Stock") and fixing and determining the relative rights and preferences of those series.

The Association will issue the Preferred Stock in connection with the successful tender offer (the "Tender Offer") by Association's ultimate parent, Washington Mutual, Inc., for shares of the two classes of preferred stock issued by Bank United. The Association will issue the Preferred Stock to Washington Mutual, Inc. in connection with the merger of Bank United with and into the Association (the "Association Merger"). As you know, the Association Merger is a part of Washington Mutual, Inc.'s proposed acquisition of Bank United Corp., Bank United's ultimate parent company. The results of the (successful) Tender Offer have been reported to the Office of Thrift Supervision through a separate filing.

Also, please find enclosed for your review a revised draft plan of merger for the Association Merger. We currently anticipate filing the completed plan of merger with the OTS on or around February 12, 2001, assuming Washington Mutual, Inc.'s acquisition of Bank United Corp. is consummated tomorrow, as anticipated.

If you have any questions, please contact me or Bernie Russell at (206) 389-6238 or Bill Lynch at (206) 461-3140.

Very truly yours,

Jacob A. Scholl

Enclosures

cc:    William L. Lynch
       Dave Permut, BTD (OTS D.C.)
       Public Information Department (OTS D.C.)
       Bowman Lee (OTS S.F.)
       Bernard L. Russell (without enclosures)

**OTS West Region**

Notification Of:

| | |
|---|---|
| ☐ Approval | ☒ Notice Appropriately |
| ☐ No Objection | Filed and Accepted |
| ☐ File Closed | ☐ Compliance Materials |
| ☒ No Further Action | Filed and Accepted |
| Required | ☐ As of: |

By: _____  2/15/2001
Title: Applications Analyst

Heller Ehrman White & McAuliffe LLP   701 Fifth Avenue, Suite 6100   Seattle, WA  98104-7098   www.hewm.com

Seattle  Portland  Anchorage  San Francisco  Silicon Valley  Los Angeles  San Diego  New York  Washington D.C.  Hong Kong  Singapore
Affiliated Carnelutti Offices:  Milan  Roma  Paris  Padua  Naples

## WASHINGTON MUTUAL BANK, FA

### SUPPLEMENTARY SECTIONS TO FEDERAL STOCK CHARTER
(Charter No. 4539)

The undersigned, William L. Lynch, hereby certifies that he is the Secretary of WASHINGTON MUTUAL BANK, FA, a federal savings bank whose home office is located in Stockton, California ("WMBFA" or the "Association"), and that the following resolution was unanimously adopted by the Board of Directors of the Association at a meeting duly held on January 16, 2001:

RESOLVED FURTHER, that pursuant to the authority granted to the Board of Directors by Section 5, Paragraph B of the Federal Stock Charter of WMBFA, there is hereby created, and WMBFA is hereby authorized to issue, a new series of serial preferred stock, designated as 10.12% Non-Cumulative Preferred Stock, Series C, stated value $25 per share that shall have the following terms, conditions, designations, preferences and privileges, relative, participating optional and other special rights, and qualifications, limitations and restrictions as set forth in a section of the Federal Stock Charter, hereby added by amendment, entitled "Section 5B. 10.12% Non-Cumulative Preferred Stock, Series C.":

1. Designation and Amount; Fractional Shares. There shall be a series of preferred stock of the Savings Bank designated as "10.12% Non-Cumulative Preferred Stock, Series C" and the number of shares constituting such series shall be 3,114,824. Such series is referred to herein as the "Series C Preferred Stock". The Series C Preferred Stock is issuable solely in whole shares.

2. Stated Value and Issue Price. The stated value of each such share is $25.00.

3. Dividends.

(a) The holders of Series C Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors or, to the extent permitted by applicable law, a duly authorized committee thereof, out of funds at the time legally available therefor, cash dividends at a rate of 10.12% per annum ($.6325 per quarter), and no more, which shall be non-cumulative, and which shall be payable when, as and if declared by the Board of Directors in cash quarterly in arrears on the last day of March, June, September and December of each year commencing March 31, 2001 (each, a "Dividend Payment Date") (except that if any such date is a Saturday, Sunday or legal holiday, then such dividend shall be payable on the next day that is not a Saturday, Sunday or legal holiday) to holders of record as they appear upon the stock transfer books of the Savings Bank on such record dates, not more than sixty days nor less than ten days preceding the payment dates for such dividends, as are fixed by the Board of Directors or, to the extent permitted by applicable law, a duly authorized committee thereof (each, a "Record Date"). If the dividend otherwise payable on any Dividend Payment Date shall not be declared and paid as aforesaid, all rights of holders of the Series C Preferred Stock to receive such dividend shall terminate, and such dividend shall not be accumulated or paid in any subsequent period. For purposes hereof, the term "legal holiday" shall mean any day on which federal savings banks are authorized to close. The Series C Preferred Stock will not participate in dividends with the Savings Bank's common stock (the "Common Stock").

Holders of shares of Series C Preferred Stock called for redemption on a redemption date between a Record Date and the corresponding Dividend Payment Date shall not be entitled to receive the dividend payable on such Dividend Payment Date. As used herein, (i) the term "Initial Dividend Period" shall mean the period from and including the date of distribution to the initial holders of the Series C Preferred Stock (the "Date of Original Issue") to and excluding March 31, 2001, (ii) the term "Subsequent Dividend Period" shall mean the applicable period from March 31 to and excluding the next June 30, from June 30 to and excluding the next September 30, from September 30 to and excluding the next December 31, or from December 31 to and excluding the next March 31, or, in each such case as to particular shares of the Series C Preferred Stock such shorter period during which such shares of the Series C Preferred Stock are outstanding (excluding the last day of such shorter period), and (iii) the term "Dividend Period" shall mean the Initial Dividend Period or any Subsequent Dividend Period, as the context requires.

(b)  The amount of dividends payable on each share of the Series C Preferred Stock for the Initial Dividend Period and for each full quarterly Dividend Period during which such share was outstanding shall be $.6325. For any Subsequent Dividend Period for which the Board of Directors declares a dividend and during which such share was not outstanding for a full quarterly Dividend Period, the amount of dividends payable on each such share of the Series C Preferred Stock shall be computed by multiplying $2.53 by a fraction, the numerator of which shall be the number of days (but in no event more than 90 days with respect to any one calendar quarter) in such Dividend Period that such share was outstanding (excluding the last day) and the denominator of which shall be 360. Dividends on each share of the Series C Preferred Stock will be non-cumulative. Holders of shares of the Series C Preferred Stock shall not be entitled to any interest, or sum of money in lieu of interest, in respect of any dividend payment or payments on shares of the Series C Preferred Stock declared by the Board of Directors which may be in arrears. Any dividend payment made on shares of the Series C Preferred Stock shall first be credited against the earliest declared but unpaid dividend with respect to shares of the Series C Preferred Stock.

(c)  No dividends or other distributions, other than dividends payable solely in shares of the Savings Bank's Common Stock or other capital stock of the Savings Bank ranking junior as to dividends and as to liquidation rights to the Series C Preferred Stock shall be declared, paid or set apart for payment on any shares of Common Stock or other capital stock of the Savings Bank, when and if issued, ranking junior as to dividends to the Series C Preferred Stock (collectively with the Common Stock, the "Junior Dividend Stock"), unless and until full dividends for each of the four most recent Dividend Periods (or for all Dividend Periods, if less than four Dividend Payment Dates have accrued from the Date of Original Issue) on the Series C Preferred Stock have been paid in full or declared and set apart for payment prior to the date of payment of such dividends or other distributions on Junior Dividend Stock shall have been paid or declared and set apart for payment. If at any time any dividends on the Series C Preferred Stock shall not have been paid or declared and set apart for payment, the Savings Bank shall not (except by conversion into or exchange for Junior Dividend Stock) repurchase, redeem or otherwise acquire (including by payment to or made available for a sinking fund for the redemption of) any shares of Common Stock, Junior Dividend Stock or any other class or series of the Savings Bank's capital stock hereafter issued ranking junior as to dividends and rights upon liquidation,

dissolution or winding up of the Savings Bank to the Series C Preferred Stock (the "Junior Liquidating Stock"), unless and until full dividends for each of the four most recent Dividend Periods (or for all Dividend Periods, if less than four Dividend Payment Dates have accrued from the Date of Original Issue) on the Series C Preferred Stock have been paid in full or declared and set apart for payment prior to the date of such repurchase, redemption or other acquisition of such capital stock.

(d)  No full dividends shall be paid or declared and set apart for payment on any class or series of the Savings Bank's capital stock simultaneously or hereafter issued ranking, as to dividends, on a parity with the Series C Preferred Stock (including the Savings Bank's 9.60% Non-Cumulative Preferred Stock, Series D (the "Series D Preferred Stock")) (the "Parity Dividend Stock") for any period unless full dividends have been, or contemporaneously are, paid or declared and set apart for such payment on the Series C Preferred Stock for the Dividend Periods terminating on or prior to the date of payment of such full dividends.  No full dividends shall be paid or declared and set apart for payment on the Series C Preferred Stock for any Dividend Period unless full dividends have been, or contemporaneously are, paid or declared and set apart for payment on the Parity Dividend Stock for the dividend periods terminating on or prior to the date of payment of such full dividends. When accrued dividends are not paid in full on the Series C Preferred Stock and the Parity Dividend Stock, all dividends paid or declared and set apart for payment on the Series C Preferred Stock and the Parity Dividend Stock shall be paid or declared and set apart for payment pro rata so that the amount of dividends paid or declared and set apart for payment per share on the Series C Preferred Stock and the Parity Dividend Stock shall in all cases bear to each other the same ratio that accrued and unpaid dividends per share on the Series C Preferred Stock and the Parity Dividend Stock bear to each other.

(e)  Any reference to "distribution" contained in this Section 3 shall not be deemed to include any distribution made in connection with any liquidation, dissolution or winding up of the Savings Bank, whether voluntary or involuntary.

4.  Liquidation Preference.  In the event of a liquidation, dissolution or winding up of the Savings Bank, whether voluntary or involuntary, each holder of a share of Series C Preferred Stock shall be entitled to receive out of the net assets of the Savings Bank available for distribution to its stockholders, an amount equal to $25.00 per share, plus an amount equal to the dividend accrued and unpaid from the Dividend Payment Date next preceding the date of such payment in liquidation, without interest, and no more, before any payment shall be made or any assets distributed to the holders of Common stock or any other a Junior Liquidation Stock; provided, however, that such rights shall accrue to the holders of Series C Preferred Stock only in the event that the Savings Bank's payments with respect to the shares of capital stock of the Savings Bank hereafter issued ranking senior as to rights upon liquidation, dissolution or winding up to the Series C Preferred Stock (the "Senior Liquidation Stock") are fully met. The entire net assets of the Savings Bank available for distribution after the preferences of the Senior Liquidation Stock upon liquidation, dissolution or winding up are fully met shall be distributed ratably among the holders of the Series C Preferred Stock and any other class or series of the Savings Bank's capital stock simultaneously or hereafter issued having parity as to rights upon liquidation, dissolution or winding up with the Series C Preferred Stock (including the Series D Preferred Stock) in proportion to the respective preferential amounts to which each is entitled (but only to the extent of such preferential amounts).  After payment in full of the preferences of

the shares of the Series C Preferred Stock upon liquidation, dissolution or winding up, the holders of such shares in their capacity as such shall not be entitled to any further participation in any distribution of assets by the Savings Bank. Neither a change of control of the Savings Bank, nor a consolidation or merger of the Savings Bank with or into another corporation nor a merger of any other corporation with or into the Savings Bank, nor a sale or transfer of all or any part of the Savings Bank's assets for cash, securities or other property will be considered a liquidation, dissolution or winding up of the Savings Bank.

5. Redemption at Option of the Savings Bank.

(a) The Series C Preferred Stock may be redeemed by the Savings Bank, at its option on any date set by the Board of Directors (or, to the extent permitted by applicable law, a duly authorized committee thereof), in whole or in part, out of funds legally available therefor, at any time or from time to time, at the following redemption prices per share (expressed as a percentage of the $25.00 liquidation preference thereof (exclusive of accrued dividends)), if redeemed during the 12-month period beginning December 31, of the year indicated:

| YEAR | REDEMPTION PRICE |
| --- | --- |
| 2000 | 102% |
| 2001 | 101% |

and thereafter at $25.00 per share, plus, in each case, an amount in cash equal to accrued and unpaid dividends thereon, if any, from the Dividend Payment Date next preceding the date fixed for redemption, to but excluding the date fixed for redemption (a "Redemption Date") to but excluding the Redemption Date, such sum being hereinafter referred to as the "Redemption Price."

On and after the Redemption Date, provided that the Redemption Price (including any accrued and unpaid dividends to the Redemption Date), has been duly paid or provided for, dividends shall cease to accrue on the Series C Preferred Stock called for redemption, such shares shall no longer be deemed to be outstanding, and all rights of the holders of such shares as stockholders of the Savings Bank shall cease, except the right to receive the monies payable upon such redemption, without interest thereon, upon surrender of the certificates evidencing such shares.

(b) In case of the redemption of less than all of the then outstanding shares of Series C Preferred Stock, the Savings Bank shall designate by lot, or in such other manner as the Board of Directors (or, to the extent permitted by applicable law, a duly authorized committee thereof) may determine, the shares to be redeemed, or shall effect such redemption pro rata.

(c) Not more than sixty nor less than thirty days prior to the Redemption Date fixed by the Board of Directors, notice by first class mail, postage prepaid, shall be given to the holders of record of shares of the Series C Preferred Stock to be redeemed, addressed to such holders at their last addresses as shown upon the stock transfer books of the Savings Bank. Each such notice of redemption shall specify the date fixed for redemption, the number of shares of Series C Preferred Stock to be redeemed, and if less than all the shares held by such holder are to be

redeemed, the number of such shares to be redeemed from such holder, the Redemption Price, the place or places of payment, that payment will be made upon presentation and surrender of the certificates representing shares of Series C Preferred Stock, and that on and after the Redemption Date dividends will cease to accrue on such shares.

(d) Any notice that is mailed as herein provided shall be conclusively presumed to have been duly given, whether or not the holder of shares of Series C Preferred Stock receives such notice; and failure to give such notice by mail, or any defect in such notice to the holders of any shares designated for redemption shall not affect the validity of the proceedings for the redemption of any other shares of Series C Preferred Stock. On or after the date fixed for redemption as stated in such notice, each holder of the shares called for redemption shall surrender the certificate evidencing such shares to the Savings Bank at the place designated in such notice and shall thereupon be entitled to receive payment of the Redemption Price for each such share. If less than all the shares evidenced by any such surrender certificate are redeemed, a new certificate shall be issued evidencing the unredeemed shares. Notice having been given as aforesaid, if, on the date fixed for redemption, funds necessary for the redemption shall be available therefor and shall have been irrevocably deposited or set aside, then, notwithstanding that the certificates evidencing any shares so called for redemption shall not have been surrendered, dividends with respect to the shares so called shall cease to accrue as of 5:00 p.m. (Pacific time) on the day before the date fixed for redemption, such shares shall no longer by deemed outstanding, the holders thereof shall cease to be stockholders of the Savings Bank and all rights whatsoever with respect to the shares so called for redemption (except the right of the holders to receive the Redemption Price for each share without interest upon surrender of their certificates therefor) shall terminate. If funds legally available for such purpose are not sufficient for redemption of the shares of Series C Preferred Stock which were to be redeemed, then the certificates evidencing such shares shall not be deemed to be surrendered, such shares shall remain outstanding and the right of holders of shares of Series C Preferred Stock thereafter shall continue to be only those of a holder of shares of the Series C Preferred Stock.

(e) The shares of Series C Preferred Stock shall not be subject to the operation of any mandatory purchase, retirement or sinking fund.

6. Voting Rights.

(a) The holders of Series C Preferred Stock will not have any voting rights except as set forth below or as otherwise from time to time required by law. In connection with any right to vote, each holder of Series C Preferred Stock will have one vote for each such share held, and will not be entitled to cumulative voting in any election of directors. Any shares of Series C Preferred Stock held by the Savings Bank or any entity controlled by the Savings Bank shall not have voting rights hereunder and shall not be counted in determining the presence of a quorum.

(b) Whenever dividends on the Series C Preferred Stock have not been paid for the equivalent of at least six Dividend Periods (which, prior to the occurrence of a Significant Transaction, are during any period during which, since the date of the first Dividend Payment Date on which dividends were not paid in full which is to be included for purposes of determining whether dividends have not been paid for the equivalent of six Dividend Periods, there has not been the payment of full dividends on the Series C Preferred Stock for four



consecutive Dividend Periods, (i) the number of members of the Board of Directors shall be increased by two, effective as of the time of election of such directors as hereinafter provided, and (ii) the holders of the Series C Preferred Stock (voting separately as a class with all other affected classes or series of the Parity Dividend Stock upon which like voting rights have been conferred and are exercisable) will have the exclusive right to vote for and elect such two additional directors of the Savings Bank at any meeting of stockholders of the Savings Bank at which directors are to be elected held during the period such dividends remain in arrears. The right of the holders of the Series C Preferred Stock to vote for such two additional directors shall terminate when dividends on the Series C Preferred Stock have been declared and paid or set apart for payment for four consecutive Dividend Periods, provided that, once a Significant Transaction has occurred, in the event that such right to elect two additional directors terminates at any time upon the payment or the declaration and setting aside for payment of dividends for four consecutive Dividend Periods, the holders of the Preferred Stock shall have the right to vote for two additional directors beginning as of the next Dividend Payment Date after such termination on which dividends have not been declared and paid or set aside for payment. The term of any director elected by the holders of the Series C Preferred Stock (and any Parity Dividend Stock) shall terminate upon the payment or the declaration and setting aside for payment of full dividends on the Preferred Stock for four consecutive Dividend Periods.

The foregoing right of the Holders of the Series C Preferred Stock with respect to the election of two directors may be exercised at any annual meeting of stockholders or at any special meeting of stockholders held for such purpose. If the right to elect directors shall have accrued to the holders of the Series C Preferred Stock more than ninety days preceding the date established for the next annual meeting of stockholders, the President of the Savings Bank shall, within twenty days after the delivery to the Savings Bank at its principal office of a written request for a special meeting signed by the holders of at least 10% of all outstanding shares of the Series C Preferred Stock, call a special meeting of the holders of the Series C Preferred Stock to be held within sixty days after the delivery of such request for the purpose of electing such additional directors.

The holders of the Series C Preferred Stock and any Parity Dividend Stock referred to above voting as a class shall have the right to remove without cause at any time and replace any directors such holders shall have elected pursuant to this Section 6.

(c) So long as the Series C Preferred Stock is outstanding, the Savings Bank shall not, without the affirmative vote or consent of the holders of at least 66-2/3% of all outstanding shares of the Series C Preferred Stock voting separately as a class, (i) amend, alter or repeal any provision of the Charter of the Savings Bank (including any such amendment, alteration, or repeal resulting from a merger or consolidation of the Savings Bank), so as to affect adversely the relative rights, preferences, qualifications, limitations or restrictions of the Series C Preferred Stock, or (ii) create, authorize or issue, or reclassify any authorized stock of the Savings Bank that is senior or superior as to dividends or liquidation to the Series C Preferred Stock, or any security convertible into such senior security. A class vote on the part of the Series C Preferred Stock shall, without limitation, specifically not be deemed to be required (except as otherwise required by law or resolution of the Board of Directors) in connection with: (a) the authorization, issuance of increase in the authorized amount of any shares of any other class or series of stock which ranks junior to, or on a parity with, the Series C Preferred Stock in respect of the payment

of dividends and distributions upon liquidation, dissolution or winding up of the Savings Bank; or (b) the authorization, issuance or increase in the amount of any notes, commercial paper, bonds, mortgages, debentures or other obligations of the Savings Bank.

No vote of the Series C Preferred Stock shall be required if the Series C Preferred Stock is to be redeemed in whole on a Redemption Date occurring on or prior to the date of occurrence of any event otherwise requiring a class vote by the Series C Preferred Stock.

(d) A majority of the shares of Series C Preferred Stock outstanding and entitled to vote on any matter shall constitute a quorum.

7. Ranking. Any class or classes of stock of the Savings Bank shall be deemed to rank:

(i) prior to the Series C Preferred Stock, as to dividends or as to distribution of assets upon liquidation, dissolution or winding up, if the holders of such class shall be entitled to the receipt of dividends or of amounts distributable upon liquidation, dissolution or winding up, as the case may be, in preference or priority to the holders of Series C Preferred Stock,

(ii) on a parity with the Series C Preferred Stock, as to dividends or as to distribution of assets upon liquidation, dissolution or winding up, whether or not the dividend rates, dividend payment dates or redemption or liquidation prices per share thereof are different from those of the Series C Preferred Stock, if the holders of such class of stock and the Series C Preferred Stock shall be entitled to the receipt of dividends or of amounts distributable upon liquidation, dissolution or winding up, as the case may be, in proportion to their respective amounts of accrued and unpaid dividends per share or liquidation prices, without preference or priority one over the other, and

(iii) junior to the Series C Preferred Stock, as to dividends or as to the distribution of assets upon liquidation, dissolution or winding up, if such stock shall be Common Stock or if the holders of Series C Preferred Stock shall be entitled to receipt of dividends or of amounts distributable upon liquidation, dissolution or winding up, as the case may be, in preference or priority to the holders of shares of such stock.

8. Status of Acquired Shares. Shares of Series C Preferred Stock redeemed by the Savings Bank, or otherwise acquired by the Savings Bank, will be restored to the status of authorized but unissued shares of the Savings Bank's preferred stock, without designation as to class, and may thereafter be issued, but not as shares of Series C Preferred Stock.

9. Conversion and Preemptive Rights. The Series C Preferred Stock is not entitled to any conversion, preemptive or subscription rights in respect of any securities of the Savings Bank.

10. Severability of Provisions. Whenever possible, each provision hereof shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision hereof is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or otherwise adversely affecting the remaining provisions hereof. If a court of competent jurisdiction should determine that a provision hereof would be valid or enforceable if a period of time were extended

or shortened or a particular percentage were increased or decreased, then such court may make such change as shall be necessary to render the provision in question effective and valid under applicable law.

The undersigned hereby further certifies that the following resolution was unanimously adopted by the Board of Directors of the Association at a meeting duly held on January 16, 2001:

RESOLVED FURTHER, that pursuant to the authority granted to the Board of Directors by Section 5, Paragraph B of the Federal Stock Charter of WMBFA, there is hereby created, and WMBFA is hereby authorized to issue, a new series of serial preferred stock, designated as 9.60% Non-Cumulative Preferred Stock, Series D, stated value $25 per share that shall have the following terms, conditions, designations, preferences and privileges, relative, participating optional and other special rights, and qualifications, limitations and restrictions as set forth in a section of the Federal Stock Charter, hereby added by amendment, entitled "Section 5B. 9.60% Non-Cumulative Preferred Stock, Series D.":

1. <u>Designation and Amount; Fractional Shares</u>.  There shall be a series of preferred stock of the Savings Bank designated as "9.60% Non-Cumulative Preferred Stock, Series D" and the number of shares constituting such series shall be 3,674,358. Such series is referred to herein as the "Series D Preferred Stock". The Series D Preferred Stock is issuable solely in whole shares.

2. <u>Stated Value and Issue Price</u>.  The stated value of each such share is $25.00.

3. <u>Dividends</u>.

(a)  The holders of Series D Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors or, to the extent permitted by applicable law, a duly authorized committee thereof, out of funds at the time legally available therefor, cash dividends at a rate of 9.60% per annum ($.60 per quarter), and no more, which shall be non-cumulative, and which shall be payable when, as and if declared by the Board of Directors in cash quarterly (prorated for any partial dividend, including the Initial Dividend Period (defined below)) in arrears on the last day of March, June, September and December of each year commencing March 31, 2001 (each, a "Dividend Payment Date") (except that if any such date is a Saturday, Sunday or legal holiday, then such dividend shall be payable on the next day that is not a Saturday, Sunday or legal holiday) to holders of record as they appear upon the stock transfer books of the Savings Bank on such record dates, not more than sixty days nor less than ten days preceding the payment dates for such dividends, as are fixed by the Board of Directors or, to the extent permitted by applicable law, a duly authorized committee thereof (each, a "Record Date"). If the dividend otherwise payable on any Dividend Payment Date shall not be declared and paid as aforesaid, all rights of holders of the Series D Preferred Stock to receive such dividend shall terminate, and such dividend shall not be accumulated or paid in any subsequent period. For purposes hereof, the term "legal holiday" shall mean any day on which federal savings banks are authorized to close. The Series D Preferred Stock will not participate in dividends with the Savings Bank's common stock (the "Common Stock").

Holders of shares of Series D Preferred Stock called for redemption on a redemption date between a Record Date and the corresponding Dividend Payment Date shall not be entitled

to receive the dividend payable on such Dividend Payment Date. As used herein, (i) the term "Initial Dividend Period" shall mean the period from and including the date of distribution to the initial holders of the Series D Preferred Stock (the "Date of Original Issue") to and excluding March 31, 2001, (ii) the term "Subsequent Dividend Period" shall mean the applicable period from September 30 to and excluding the next December 31, from December 31, to and excluding the next March 31, from March 31 to and excluding the next June 30, or from June 30 to and excluding the next September 30, or, in each such case as to particular shares of the Series D Preferred Stock such shorter period during which such shares of the Series D Preferred Stock are outstanding (excluding the last day of such shorter period), and (iii) the term "Dividend Period" shall mean the Initial Dividend Period or any Subsequent Dividend Period, as the context requires.

(b)  The amount of dividends payable on each share of the Series D Preferred Stock for the Initial Dividend Period and for each full quarterly Dividend Period during which such share was outstanding shall be $0.60. For any Subsequent Dividend Period for which the Board of Directors declares a dividend and during which such share was not outstanding for a full quarterly Dividend Period, the amount of dividends payable on each such share of the Series D Preferred Stock shall be computed by multiplying $2.40 by a fraction, the numerator of which shall be the number of days (but in no event more than 90 days with respect to any one calendar quarter) in such Dividend Period that such share was outstanding (excluding the last such day) and the denominator of which shall be 360. Dividends on each share of the Series D Preferred Stock will be non-cumulative. Holders of shares of the Series D Preferred Stock shall not be entitled to any interest, or sum of money in lieu of interest, in respect of any dividend payment or payments on shares of the Series D Preferred Stock declared by the Board of Directors which may be in arrears. Any dividend payment made on shares of the Series D Preferred Stock shall first be credited against the earliest declared but unpaid dividend with respect to shares of the Series D Preferred Stock.

(c)  No dividends or other distributions, other than dividends payable solely in shares of the Savings Bank's Common Stock or other capital stock of the Savings Bank ranking junior as to dividends and as to liquidation rights to the Series D Preferred Stock, shall be declared, paid or set apart for payment on any shares of Common Stock or other capital stock of the Savings Bank, when and if issued, ranking junior as to dividends to the Series D Preferred Stock (collectively with the Common Stock, the "Junior Dividend Stock"), unless and until full dividends for each of the four most recent Dividend Periods (or for all Dividend Periods, if less than four Dividend Payment Dates have accrued from the Date of Original Issue) on the Series D Preferred Stock have been paid in full or declared and set apart for payment prior to the date of payment of such dividends or other distributions on Junior Dividend Stock shall have been paid or declared and set apart for payment. If at any time any dividends on the Series D Preferred Stock shall not have been paid or declared and set apart for payment, the Savings Bank shall not (except by conversion into or exchange for Junior Dividend Stock) repurchase, redeem or otherwise acquire (including by payment to or made available for a sinking fund for the redemption of) any shares of Common Stock, Junior Dividend Stock or any other class or series of the Savings Bank's capital stock hereafter issued ranking junior as to dividends and rights upon liquidation, dissolution or winding up of the Savings Bank to the Series D Preferred Stock (the "Junior Liquidating Stock"), unless and until full dividends for each of the four most recent Dividend Periods (or for all Dividend Periods, if less than four Dividend Payment Dates have accrued from

the Date of Original Issue) on the Series D Preferred Stock have been paid in full or declared and set apart for payment prior to the date of such repurchase, redemption or other acquisition of such capital stock.

(d)  No full dividends shall be paid or declared and set apart for payment on any class or series of the Savings Bank's capital stock simultaneously or hereafter issued ranking, as to dividends, on a parity with the Series D Preferred Stock (including the Savings Bank's 10.12% Non-Cumulative Preferred Stock, Series C (the "Series C Preferred Stock")) (the "Parity Dividend Stock") for any period unless full dividends have been, or contemporaneously are, paid or declared and set apart for such payment on the Series D Preferred Stock for the Dividend Period terminating on or prior to the date of payment of such full dividends. No full dividends shall be paid or declared and set apart for payment on the Series D Preferred Stock for any Dividend Period unless full dividends have been, or contemporaneously are, paid or declared and set apart for payment on the Parity Dividend Stock for the dividend periods terminating on or prior to the date of payment of such full dividends. When accrued dividends are not paid in full on the Series D Preferred Stock and the Parity Dividend Stock, all dividends paid or declared and set apart for payment on the Series D Preferred Stock and the Parity Dividend Stock shall be paid or declared and set apart for payment pro rata so that the amount of dividends paid or declared and set apart for payment per share on the Series D Preferred Stock and the Parity Dividend Stock shall in all cases bear to each other the same ratio that accrued and unpaid dividends per share on the Series D Preferred Stock and the Parity Dividend Stock bear to each other.

(e)  Any reference to "distribution" contained in this Section 3 shall not be deemed to include any distribution made in connection with any liquidation, dissolution or winding up of the Savings Bank, whether voluntary or involuntary.

4.  _Liquidation Preference._  In the event of a liquidation, dissolution or winding up of the Savings Bank, whether voluntary or involuntary, each holder of a share of Series D Preferred Stock shall be entitled to receive out of the net assets of the Savings Bank available for distribution to its stockholders, an amount equal to $25.00 per share, plus an amount equal to the dividend accrued and unpaid from the Dividend Payment Date next preceding the date of such payment in liquidation, without interest, and no more, before any payment shall be made or any assets distributed to the holders of Common Stock or any other Junior Liquidation Stock; provided, however, that such rights shall accrue to the holders of Series D Preferred Stock only in the event that the Savings Bank's payments with respect to the shares of capital stock of the Savings Bank hereafter issued ranking senior as to rights upon liquidation, dissolution or winding up to the Series D Preferred Stock (the "Senior Liquidation Stock") are fully met. The entire net assets of the Savings Bank available for distribution after the preferences of the Senior Liquidation Stock upon liquidation, dissolution or winding up are fully met shall be distributed ratably among the holders of the Series D Preferred Stock and any other class or series of the Savings Bank's capital stock simultaneously or hereafter issued having parity as to rights upon liquidation, dissolution or winding up with the Series D Preferred Stock (including the Series C Preferred Stock) in proportion to the respective preferential amounts to which each is entitled (but only to the extent of such preferential amounts). After payment in full of the preferences of the the shares of the Series D Preferred Stock upon liquidation, dissolution or winding up, the holders of such shares in their capacity as such shall not be entitled to any further participation in any distribution of assets by the Savings Bank. Neither a change of control of the Savings Bank,



nor a consolidation or merger of the Savings Bank with or into another corporation nor a merger of any other corporation with or into the Savings Bank, nor a sale or transfer of all or any part of the Savings Bank's assets for cash, securities or other property will be considered a liquidation, dissolution or winding up of the Savings Bank.

5. Redemption at Option of the Savings Bank.

(a) The Series D Preferred Stock may be redeemed by the Savings Bank, at its option on any date set by the Board of Directors (or, to the extent permitted by applicable law, a duly authorized committee thereof), in whole or in part, out of funds legally available therefor, at any time or from time to time, at the following redemption prices per share (expressed as a percentage of the $25.00 liquidation preference thereof (exclusive of accrued dividends)), if redeemed during the 12-month period beginning September 30 of the year indicated:

| Year | Redemption Price |
| --- | --- |
| 2000 | 105% |
| 2001 | 104 |
| 2002 | 103 |
| 2003 | 102 |
| 2004 | 101 |

and thereafter at $25.00 per share, plus, in each case, an amount in cash equal to accrued and unpaid dividends thereon, if any, from the Dividend Payment Date next preceding the date fixed for redemption, to but excluding the date fixed for redemption (a "Redemption Date"), such sum being hereinafter referred to as the "Redemption Price."

On and after the Redemption Date, provided that the Redemption Price (including any accrued and unpaid dividends to the Redemption Date), has been duly paid or provided for, dividends shall cease to accrue on the Series D Preferred Stock called for redemption, such shares shall no longer be deemed to be outstanding, and all rights of the holders of such shares as stockholders of the Savings Bank shall cease, except the right to receive the monies payable upon such redemption, without interest thereon, upon surrender of the certificates evidencing such shares.

(b) In case of the redemption of less than all of the then outstanding shares of Series D Preferred Stock, the Savings Bank shall designate by lot, or in such other manner as the Board of Directors (or, to the extent permitted by applicable law, a duly authorized committee thereof) may determine, the shares to be redeemed, or shall effect such redemption pro rata.

(c) Not more than sixty nor less than thirty days prior to the Redemption Date fixed by the Board of Directors, notice by first class mail, postage prepaid, shall be given to the holders of record of shares of the Series D Preferred Stock to be redeemed, addressed to such holders at their last addresses as shown upon the stock transfer books of the Savings Bank. Each such notice of redemption shall specify the date fixed for redemption, the number of shares of Series D Preferred Stock to be redeemed, and if less than all the shares held by such holder are to be redeemed, the number of such shares to be redeemed from such holder, the Redemption Price,

the place or places of payment, that payment will be made upon presentation and surrender of the certificates representing shares of Series D Preferred Stock, and that on and after the Redemption Date dividends will cease to accrue on such shares.

(d) Any notice that is mailed as herein provided shall be conclusively presumed to have been duly given, whether or not the holder of shares of Series D Preferred Stock receives such notice; and failure to give such notice by mail, or any defect in such notice to the holders of any shares designated for redemption shall not affect the validity of the proceedings for the redemption of any other shares of Series D Preferred Stock. On or after the date fixed for redemption as stated in such notice, each holder of the shares called for redemption shall surrender the certificate evidencing such shares to the Savings Bank at the place designated in such notice and shall thereupon be entitled to receive payment of the Redemption Price for each such share. If less than all the shares evidenced by any such surrendered certificate are redeemed, a new certificate shall be issued evidencing the unredeemed shares. Notice having been given as aforesaid, if, on the date fixed for redemption, funds necessary for the redemption shall be available therefor and shall have been irrevocably deposited or set aside, then, notwithstanding that the certificates evidencing any shares so called for redemption shall not have been surrendered, dividends with respect to the shares so called shall cease to accrue as of 5:00 p.m. (Pacific time) on the day before the date fixed for redemption, such shares shall no longer be deemed outstanding, the holders thereof shall cease to be stockholders of the Savings Bank and all rights whatsoever with respect to the shares so called for redemption (except the right of the holders to receive the Redemption Price for each share without interest upon surrender of their certificates therefor) shall terminate. If funds legally available for such purpose are not sufficient for redemption of the shares of Series D Preferred Stock which were to be redeemed, then the certificates evidencing such shares shall not be deemed to be surrendered, such shares shall remain outstanding and the right of holders of shares of Series D Preferred Stock thereafter shall continue to be only those of a holder of shares of the Series D Preferred Stock.

(e) The shares of Series D Preferred Stock shall not be subject to the operation of any mandatory purchase, retirement or sinking fund.

6. Voting Rights.

(a) The holders of Series D Preferred Stock will not have any voting rights except as set forth below or as otherwise from time to time required by law. In connection with any right to vote, each holder of Series D Preferred Stock will have one vote for each such share held, and will not be entitled to cumulative voting in any election of directors. Any shares of Series D Preferred Stock held by the Savings Bank or any entity controlled by the Savings Bank shall not have voting rights hereunder and shall not be counted in determining the presence of a quorum.

(b) Whenever dividends on the Series D Preferred Stock have not been paid for the equivalent of at least six Dividend Periods (which, prior to the occurrence of a Significant Transaction, or any period during which, since the date of the first Dividend Payment Date on which dividends were not paid in full which is to be included for purposes of determining whether dividends have not been paid for the equivalent of six Dividend Periods, there has not been the payment of full dividends on the Series D Preferred Stock for four consecutive Dividend

Periods), (i) the number of members of the Board of Directors shall be increased by two, effective as of the time of election of such directors as hereinafter provided, and (ii) the holders of the Series D Preferred Stock (voting separately as a class with all other affected classes or series of the Parity Dividend Stock upon which like voting rights have been conferred and are exercisable) will have the exclusive right to vote for and elect such two additional directors of the Savings Bank at any meeting of stockholders of the Savings Bank at which directors are to be elected held during the period such dividends remain in arrears.  The right of the holders of the Series D Preferred Stock to vote for such two additional directors shall terminate when the dividends on the Series D Preferred Stock have been declared and paid or set apart for payment for four consecutive Dividend Periods, provided that, once a Significant Transaction has occurred, in the event that such right to elect two additional directors terminates at any time upon the payment or the declaration and setting aside for payment of dividends for four consecutive Dividend Periods, the holders of the Preferred Stock shall have the right to vote for two additional directors beginning as of the next Dividend Payment Date after such termination on which dividends have not been declared and paid or set aside for payment.  The term of any director elected by the holders of the Series D Preferred Stock (and any Parity Dividend Stock) shall terminate upon the payment of the declaration and setting aside for payment of full dividends on the Preferred Stock for four consecutive periods.

    The foregoing right of the holders of the Series D Preferred Stock with respect to the election of two directors may be exercised at any annual meeting of stockholders or at any special meeting of stockholders held for such purpose.  If the right to elect directors shall have accrued to the holders of the Series D Preferred Stock more than ninety days preceding the date established for the next annual meeting of stockholders, the President of the Savings Bank shall, within twenty days after the delivery to the Savings Bank at its principal office of a written request for a special meeting signed by the holders of at least 10% of all outstanding shares of the Series D Preferred Stock, call a special meeting of the holders of the Series D Preferred Stock to be held within sixty days after the delivery of such request for the purpose of electing such additional directors.

    The holders of the Series D Preferred Stock and any Parity Dividend Stock referred to above voting as a class shall have the right to remove without cause at any time and replace any directors such holders shall have elected pursuant to this Section 6.

    (c)  So long as the Series D Preferred Stock is outstanding, the Savings Bank shall not, without the affirmative vote or consent of the holders of at least 66 2/3% of all outstanding shares of the Series D Preferred Stock voting separately as a class, (i) amend, after or repeal any provision of the Charter of the Savings Bank (including any such amendment, alteration, or repeal resulting from a merger or consolidation of the Savings Bank), so as to affect adversely the relative rights, preferences, qualifications, limitations or restrictions of the Series D Preferred Stock, or (ii) create, authorize or issue, or reclassify any authorized stock of the Savings Bank that is senior or superior as to dividends or liquidation to the Series D Preferred Stock, or any security convertible into such senior security.  A class vote on the part of the Series D Preferred Stock shall, without limitation, specifically not be deemed to be required (except as otherwise required by law or resolution of the Board of Directors) in connection with: (a) the authorization, issuance, or increase in the authorized amount of any shares of any other class or series of stock which ranks junior to, or on a parity with, the Series D Preferred Stock in respect of the payment

of dividends and distributions upon liquidation, dissolution or winding up of the Savings Bank; or (b) the authorization, issuance or increase in the amount of any notes, commercial paper, bonds, mortgages, debentures or other obligations of the Savings Bank.

No vote of the Series D Preferred Stock shall be required if the Series D Preferred Stock is to be redeemed in whole on a Redemption Date occurring on or prior to the date of occurrence of any event otherwise requiring a class vote by the Series D Preferred Stock.

(d) A majority of the shares of Series D Preferred Stock outstanding and entitled to vote on any matter shall constitute a quorum.

7. Ranking. Any class or classes of stock of the Savings Bank shall be deemed to rank:

(a) prior to the Series D Preferred Stock, as to dividends or as to distribution of assets upon liquidation, dissolution or winding up, if the holders of such class shall be entitled to the receipt of dividends or of amounts distributable upon liquidation, dissolution or winding up, as the case may be, in preference or priority to the holders of Series D Preferred Stock.

(b) on a parity with the Series D Preferred Stock, as to dividends or as to distribution of assets upon liquidation, dissolution or winding up, whether or not the dividend rates, dividend payment dates or redemption or liquidation prices per share thereof are different from those of the Series D Preferred Stock, if the holders of such class of stock and the Series D Preferred Stock shall be entitled to the receipt of dividends or if amounts distributable upon liquidation, dissolution or winding up, as the case may be, in proportion to their respective amounts of accrued and unpaid dividends per share or liquidation prices, without preference or priority one over the other, and

(c) junior to the Series D Preferred Stock, as to dividends or as to the distribution of assets upon liquidation, dissolution or winding up, if such stock shall be Common Stock or if the holders of Series D Preferred Stock shall be entitled to receipt of dividends or of amounts distributable upon liquidation, dissolution or winding up, as the case may be, in preference or priority to the holders of shares of such stock.

8. Status of Acquired Shares. Shares of Series D Preferred Stock redeemed by the Savings Bank, or otherwise acquired by the Savings Bank, will be restored to the status of authorized but unissued shares of the Savings Bank's preferred stock, without designation as to class, and may thereafter be issued, but not as shares of Series D Preferred Stock.

9. Conversion and Preemptive Rights. The Series D Preferred Stock is not entitled to any conversion, preemptive or subscription rights in respect of any securities of the Savings Bank.

10. Severability of Provisions. Whenever possible, each provision hereof shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision hereof is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or otherwise adversely affecting the remaining provisions hereof. If a court of competent jurisdiction should

determine that a provision hereof would be valid or enforceable if a period of time were extended or shortened or a particular percentage were increased or decreased, then such court may make such change as shall be necessary to render the provision in question effective and valid under applicable law.

The foregoing resolutions have not been rescinded or modified and remains in full force and effect. These supplementary sections to the Federal Stock Charter of the Association shall be effective upon their receipt by the Office of Thrift Supervision.

EXECUTED this 8th day of February, 2001.

William L. Lynch, Secretary

# WASHINGTON MUTUAL BANK, FA

## AMENDMENT TO FEDERAL STOCK CHARTER
### (Charter No. 4539)

The undersigned, William L. Lynch, hereby certifies that he is the Secretary of WASHINGTON MUTUAL BANK, FA, a federal savings bank whose home office is located in Stockton, California ("WMBFA" or the "Association"), and that the following resolution was unanimously adopted by the Board of Directors of the Association at a meeting duly held on January 16, 2001:

RESOLVED FURTHER, that the first sentence of Section 5 of the Federal Stock Charter of WMBFA is hereby amended to read in its entirety as follows:

The total number of shares of all classes of the capital stock which the savings bank has the authority to issue is 11,000,000, of which 1,000,000 shall be common stock of par value $1.00 per share and of which 10,000,000 shall be serial preferred stock of par value $.01 per share.

The foregoing resolution has not been rescinded or modified and remains in full force and effect. Pursuant to 12 C.F.R. 552.4(b), this amendment to the Federal Stock Charter of the Association shall be deemed effective upon its adoption by the Association's board of directors.

EXECUTED this 30th day of January, 2001.

William L. Lynch, Secretary



**OTS West Region**

Notification Of:

☐ Approval ☑ Notice Appropriately
☐ No Objection Filed and Accepted
☐ File Closed ☐ Compliance Materials
☐ No Further Action Filed and Accepted
Required ☑ As of: 1/31/01

By: Terry Marshall
Title: Applications Manager

LEGAL DEPARTMENT

**AMERICAN SAVINGS BANK, F.A.**

**AMENDMENT TO FEDERAL STOCK CHARTER**
(Charter No. 4539)

The undersigned, William L. Lynch, hereby certifies that he is the Secretary of AMERICAN SAVINGS BANK, F.A., a federal savings bank whose home office is located in Stockton, California (the "savings bank" or the "Association"), and that the following resolution was unanimously adopted by the Board of Directors of the Association at a meeting duly held on September 16, 1997:

IT IS HEREBY RESOLVED, that Section 1 of the Federal Stock Charter of the Association is hereby amended as follows:

Section 1. Corporate Title. The full corporate title of the savings bank is Washington Mutual Bank, FA.

The foregoing resolution has not been rescinded or modified and remains in full force and effect. This amendment to the Federal Stock Charter of the Association shall be effective at the time of the merger of Great Western Bank, a Federal Savings Bank with and into the Association.

EXECUTED this 25th day of September, 1997.

William L. Lynch, Secretary



305373.1

## AMERICAN SAVINGS BANK, F.A.

### CONSENT OF SHAREHOLDERS IN LIEU OF MEETING

The undersigned, being the holders of all issued and outstanding shares of common stock and preferred stock of American Savings Bank, F.A., a federal savings bank (the "savings bank" or "ASB") hereby consent to and adopt the following resolutions (which were adopted by ASB's board of directors on June 17, 1997) in lieu of holding a special meeting of the shareholders:

IT IS HEREBY RESOLVED, that Section 1 of the Federal Stock Charter of ASB is hereby amended to read in its entirety as follows:

Section 1. <u>Corporate Title</u>. The full corporate name of the savings bank is Washington Mutual Bank, FA.

IT IS FURTHER RESOLVED, that the first sentence of Section 5 of the Federal Stock Charter of ASB is hereby amended to read in its entirety as follows:

The total number of shares of all classes of the capital stock which the savings bank has the authority to issue is 2,000,000 of which 1,000,000 shall be common stock of par value of $1.00 per share and of which 1,000,000 shall be serial preferred stock of par value $.01 per share.

DATED this _22nd_ day of September, 1997

HOLDER OF ALL COMMON STOCK:

NEW AMERICAN CAPITAL, INC.

By: _William A. Longbrake_

William A. Longbrake
Executive Vice President

HOLDER OF ALL PREFERRED STOCK:

WASHINGTON MUTUAL, INC.

By: _William A. Longbrake_

William A. Longbrake
Executive Vice President

---

**OTS West Region**

Notification Of:

☐ Approval     ☑ Notice Appropriately
☑ No Objection     Filed and Accepted
☐ File Closed     ☐ Compliance Materials
☐ No Further Action     Filed and Accepted
Required     ☑ As of: 9/26/97

304693.1

By: _Perry D. Marshall_
Title: _Applications Manager_

AMERICAN SAVINGS BANK, F.A.

AMENDMENT TO FEDERAL STOCK CHARTER
(Charter No. 4539)

The undersigned, William L. Lynch, hereby certifies that he is the Secretary of AMERICAN SAVINGS BANK, F.A., a federal savings bank whose home office is located in Stockton, California (the "savings bank" or "ASB"), and that the following resolution was unanimously adopted by the Board of Directors of ASB at a meeting duly held on June 17, 1997:

IT IS HEREBY RESOLVED, that the first sentence of Section 5 of the Federal Stock Charter of ASB is hereby amended to read in its entirety as follows:

The total number of shares of all classes of the capital stock which the savings bank has the authority to issue is 2,000,000 of which 1,000,000 shall be common stock of par value of $1.00 per share and of which 1,000,000 shall be serial preferred stock of par value $.01 per share.

The foregoing resolution has not been rescinded or modified and remains in full force and effect. This amendment to the Federal Stock Charter of ASB shall be effective at the time of the merger of Great Western Bank, a Federal Savings Bank with and into ASB.

EXECUTED this 22nd day of September, 1997.

_____
William L. Lynch, Secretary



304019.1

AMERICAN SAVINGS BANK, F.A.

SUPPLEMENTARY SECTION TO FEDERAL STOCK CHARTER
(Charter No. 4539)

The undersigned, William L. Lynch, hereby certifies that he is the Secretary of AMERICAN SAVINGS BANK, F.A., a federal savings bank whose home office is located in Stockton, California (the "Savings Bank" or "ASB"), and that the following resolution was unanimously adopted by the Board of Directors of ASB at a meeting duly held on June 17, 1997:

RESOLVED FURTHER, that pursuant to the authority granted to the Board of Directors by Section 5, Paragraph B of the Federal Stock Charter of ASB, there is hereby created, and ASB is hereby authorized to issue, a new series of serial preferred stock, designated as 8 3/4% Noncumulative Perpetual Convertible Preferred Stock, Series B that shall have the following terms, conditions, designations, preferences and privileges, relative, participating, optional and other special rights, and qualifications, limitations and restrictions as set forth in a section of the Federal Stock Charter, hereby added by amendment, entitled "Section 5B. 8 3/4% Noncumulative Perpetual Convertible Preferred Stock, Series B.":

1.  Designation.  The designation of the series of preferred stock created by this resolution shall be 8 3/4% Noncumulative Perpetual Convertible Preferred Stock, Series B, $.01 par value, (hereinafter referred to as "Noncumulative Perpetual Convertible Preferred Stock"), and the number of shares constituting such series shall be 517,500, which number may be increased (but not above the total number of shares of preferred stock of the Savings Bank) or decreased (but not below the number of shares then outstanding) from time to time by the Board of Directors or any authorized committee thereof.  The Noncumulative Perpetual Convertible Preferred Stock shall rank prior to the Common Stock of the Savings Bank ("Common Stock") with respect to the payment of dividends and the distribution of assets upon the liquidation, dissolution or winding up of the Savings Bank.

2.  Dividend Rights.  The holders of shares of Noncumulative Perpetual Convertible Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors, out of funds legally available therefor, cash dividends, accruing from the Issue Date, at the annual rate of 8 3/4% per annum, and no more, payable, when, as and if declared by the Board of Directors, quarterly on February 1, May 1, August 1, and November 1 of each year (each quarterly period ending on any such date being hereinafter referred to as a "dividend period"), commencing on the first of such dates to occur after the effective time (the "Effective Time") of the merger of Great Western Bank, a Federal Savings Bank ("GWB") with and into the Savings Bank, at such annual rate.  Each dividend will be payable to holders of record as they appear on the stock books of the Savings Bank (or its predecessor) on such record dates, not

304024.1                              -1-

exceeding 45 days preceding the payment dates thereof, as shall be fixed by the Board of Directors of the Savings Bank. The date of initial issuance of shares of Noncumulative Perpetual Convertible Preferred Stock is hereinafter referred to as the "Issue Date". Dividends payable on the Noncumulative Perpetual Convertible Preferred Stock (i) for any period other than a full year consisting of twelve 30-day months and (ii) for each full dividend period, shall be computed by dividing the annual dividend rate by four. If the Board of Directors fails to declare a dividend payable on a dividend payment date or the Savings Bank is otherwise prevented by regulation or regulatory action from paying a dividend, then the right to receive a dividend in respect of the dividend period ending on such dividend payment date will be lost and the Savings Bank shall have no obligation to pay the dividend accrued for such period, whether or not dividends are declared payable on any future dividend payment date.

3.     Liquidation Preferences.

(a)     In the event of any liquidation, dissolution or winding up of the affairs of the Savings Bank, whether voluntary or involuntary, the holders of Noncumulative Perpetual Convertible Preferred Stock shall be entitled to receive out of the assets of the Savings Bank available for distribution to stockholders an amount equal to $250 per share of Noncumulative Perpetual Convertible Preferred Stock before any distribution shall be made to the holders of Common Stock or any other class of stock of the Savings Bank ranking junior to the Noncumulative Perpetual Convertible Preferred Stock as to the distribution of assets upon any such liquidation, dissolution or winding up. After payment of such liquidating distributions, the holders of shares of Noncumulative Perpetual Convertible Preferred Stock will not be entitled to any further participation in any distribution of assets by the Savings Bank.

(b)     In the event the assets of the Savings Bank available for distribution to stockholders upon any liquidation, dissolution or winding up of the affairs of the Savings Bank, whether voluntary or involuntary, shall be insufficient to pay in full the amounts payable with respect to the Noncumulative Perpetual Convertible Preferred Stock and any other shares of Preferred Stock ranking on a parity with the Noncumulative Perpetual Convertible Preferred Stock as to the distribution of assets upon any such liquidation, dissolution or winding up, the holders of Noncumulative Perpetual Convertible Preferred Stock shall share ratably in any distribution of assets of the Savings Bank in proportion to the full respective preferential amounts to which they are entitled.

(c)     The merger or consolidation of the Savings Bank into or with any other corporation, the merger or consolidation of any other corporation into or with the Savings Bank or the sale of the assets of the Savings Bank substantially as an entirety shall not

be deemed a liquidation, dissolution or winding up of the affairs of the Savings Bank within the meaning of this Section 3.

4.   Redemption.

(a)  The Savings Bank, at its option, may redeem any or all shares of Noncumulative Perpetual Convertible Preferred Stock, at any time or from time to time, at the redemption prices set forth below during the 12-month period beginning on May 1 of the years shown below (the "Redemption Price"):

| Year | Redemption Price Per Share |
|------|---------------------------|
| 1997 | $258.7500 |
| 1998 | $256.5625 |
| 1999 | $254.3750 |
| 2000 | $252.1875 |
| 2001 and thereafter | $250.0000 |

(b)  If less than all the outstanding shares of Noncumulative Perpetual Convertible Preferred Stock are to be redeemed, the shares to be redeemed shall be selected pro rata (subject to rounding to avoid fractional shares) as nearly as practicable or by lot, or by such other method as the Board of Directors may determine to be equitable.

(c)  If on or before the date fixed for redemption funds sufficient to redeem the shares called for redemption are set aside by the Savings Bank in trust for the account of the holders of the shares to be redeemed, notwithstanding the fact that any certificate for shares called for redemption shall not have been surrendered for cancellation, from and after the related redemption date the shares represented thereby so called for redemption shall be deemed to be no longer outstanding, and all rights of the holders of such shares as stockholders of the Savings Bank shall cease, except the right to receive the Redemption Price, without interest, upon surrender of the certificate representing such shares. Upon surrender of the certificate for any shares so redeemed (duly endorsed or accompanied by appropriate instruments of transfer, if so required by the Savings Bank in such notice), the holders of record of such shares shall be entitled to receive the Redemption Price, without interest. In case fewer than all the shares represented by any such certificate are redeemed, a new certificate shall be issued representing the unredeemed shares without cost to the holder thereof.

5.   Conversion Rights.  The holders of shares of Noncumulative Perpetual Convertible Preferred Stock shall have the right, at their option, to convert such shares into shares of the Common Stock on the following terms and conditions.

(a)  Shares of Noncumulative Perpetual Convertible Preferred Stock shall be convertible at any time into fully paid and nonassessable shares of Common Stock at a conversion price of

$805.15 per share of Common Stock (the "Conversion Price"). The Conversion Price shall be subject to adjustment as hereinafter provided. For purposes of such conversion, each share of Noncumulative Perpetual Convertible Preferred Stock will be valued at $250.

(b) In order to convert shares of Noncumulative Perpetual Convertible Preferred Stock into Common Stock, the holder thereof shall surrender the certificates therefor, duly endorsed if the Savings Bank shall so require, or accompanied by appropriate instruments of transfer satisfactory to the Savings Bank, at such office as may be designated by the Savings Bank, together with notice that such holder irrevocably elects to convert such shares or any fraction of a share of Noncumulative Perpetual Convertible Preferred Stock having a denominator of five, each such fractional interest, measured in one-fifths, being valued for purposes of conversion at $50; reference in this Section 5 to the conversion of any share of Noncumulative Perpetual Convertible Preferred Stock shall also apply, mutatis mutandis, to such fractional interests. As soon as practicable after receipt of the certificates representing the shares of Noncumulative Perpetual Convertible Preferred Stock to be converted and the notice of election to convert the same, the Savings Bank shall issue and deliver at said office a certificate for the number of whole shares of Common Stock issuable upon conversion of the shares of Noncumulative Perpetual Convertible Preferred Stock surrendered for conversion, together with a cash payment in lieu of any fraction of a share, as hereinafter provided, to the person entitled to receive the same.

(c) No fractional share of Common Stock shall be issued upon conversion of any shares of Noncumulative Perpetual Convertible Preferred Stock. If the conversion of any shares of Noncumulative Perpetual Convertible Preferred Stock results in a fractional share of Common Stock, the Savings Bank shall pay cash in lieu thereof in an amount equal to such fraction multiplied by $5000.

(d) In the event of any consolidation of the Savings Bank with or merger of the Savings Bank into any other corporation (other than a merger in which the Savings Bank is the surviving corporation) or a sale, lease or conveyance of the assets of the Savings Bank as an entirety or substantially as an entirety, or any statutory exchange of securities with another corporation, the holder of each share of Noncumulative Perpetual Convertible Preferred Stock shall have the right, after such consolidation, merger, sale or exchange to convert such share into the number and kind of shares of stock or other securities, and the amount of cash or other property receivable upon such consolidation, merger, sale or exchange by a holder of the number of shares of Common Stock issuable upon conversion of such shares of Noncumulative Perpetual Convertible Preferred Stock immediately prior to such consolidation, merger, sale or exchange. No provision shall be made for adjustments in the Conversion Price. The provisions of

this Section 5(d) shall similarly apply to any such successive consolidation, merger, sale or exchange.

(e) The Savings Bank shall pay any taxes that may be payable in respect of the issuance to the holder of shares of Common Stock upon conversion of shares of Noncumulative Perpetual Convertible Preferred Stock.

(f) The Savings Bank may make such reductions in the Conversion Price as it considers to be advisable in order that any event treated for federal income tax purposes as a dividend of stock or stock rights shall not be taxable to the recipients.

(g) The Savings Bank shall at all times reserve and keep available out of its authorized but unissued Common Stock the full number of shares of Common Stock issuable upon the conversion of all shares of Noncumulative Perpetual Convertible Preferred Stock then outstanding.

6. <u>Voting Rights</u>. Other than as required by applicable law, the Noncumulative Perpetual Convertible Preferred Stock shall not have any voting powers either general or special, except that:

(a) Unless the vote or consent of the holders of a greater number of shares shall then be required by law, the affirmative vote or consent of the holders of at least 66-2/3% of all of the shares of the Noncumulative Perpetual Convertible Preferred Stock, and any one or more other series of Preferred Stock of the Savings Bank ranking on a parity with the Noncumulative Perpetual Convertible Preferred Stock which by its terms provides for similar voting rights (the "Other Preferred Stock") and is similarly affected, at the time outstanding, given in person or by proxy, either in writing or by a vote at a meeting called for the purpose at which the holders of shares of the Noncumulative Perpetual Convertible Preferred Stock and any such other series of Other Preferred Stock shall vote together as a separate and single class, shall be necessary for authorizing, effecting or validating the amendment, alternation or repeal of, or any other change in, any of the provisions of the Charter, as amended, or of any amendment or supplement thereto (including any Supplementary Charter Section or any similar document relating to any series of Preferred Stock) of the Savings Bank which would adversely affect the preferences, rights, powers or privileges, qualifications, limitations and restrictions of the Noncumulative Perpetual Convertible Preferred Stock and any such other series of Other Preferred Stock.

(b) Unless the vote or consent of the holders of a greater number of shares shall then be required by law, the affirmative vote or consent of the holders of at least 66-2/3% of all of the shares of the Noncumulative Perpetual Convertible Preferred Stock and any series of Other Preferred Stock of the Savings Bank at the time outstanding, given in person or by proxy, either in writing or by a vote at a meeting called for the purpose

at which the holders of shares of the Noncumulative Perpetual Convertible Preferred Stock and any such series of Other Preferred Stock of the Savings Bank shall vote together as a single class without regarding to series, shall be necessary to create, authorize or issue, or reclassify any authorized stock of the Savings Bank into, or create, authorize or issue any obligation or security convertible into or evidencing a right to purchase, or increase the authorized amount of, any shares of any class of stock of the Savings Bank ranking prior to the Noncumulative Perpetual Convertible Preferred Stock and any series of Other Preferred Stock. Subject to the foregoing, the Savings Bank's Federal Stock Charter, as amended, may be amended to increase the number of authorized shares of Preferred Stock without the vote of the holders of Preferred Stock, including the Noncumulative Perpetual Convertible Preferred Stock.

7.    <u>Reacquired Shares</u>.    Shares of Noncumulative Perpetual Convertible Preferred Stock converted, redeemed, or otherwise purchased or acquired by the Savings Bank shall be restored to the status of authorized but unissued shares of Preferred Stock without designation as to series.

8.    <u>No Sinking Fund</u>.    Shares of Noncumulative Perpetual Convertible Preferred Stock are not subject to the operation of a sinking fund or other obligation of the Savings Bank to redeem or retire the Noncumulative Perpetual Convertible Preferred Stock.

9.    <u>Series A Preferred Stock</u>.    The Noncumulative Perpetual Convertible Preferred Stock shall rank prior to the Savings Bank's Participating Preferred Stock Series A with respect to the payment of dividends and the distribution of assets upon liquidation, dissolution or winding up of the Savings Bank.

The foregoing resolution has not been rescinded or modified and remains in full force and effect. This Supplementary Section to the Federal Stock Charter of ASB shall be effective at the time of the merger of Great Western Bank, a Federal Savings Bank with and into ASB.

EXECUTED this _____ day of September, 1997.

_____
William L. Lynch, Secretary

OTS West Region
Notification OE

☐ Approval        ☑ Notice Appropriately
☐ No Objection        Filed and Accepted
☐ File Closed        ☐ Compliance Materials
☐ No Further Action        Filed and Accepted
Required        As of 9/26/97

By: _____
304024.1
Title: _____

-6-

AMERICAN SAVINGS BANK, F.A.

SECRETARY'S CERTIFICATE

Re: Participating Preferred Stock Series A

I, JAMES J. SULLIVAN, certify that I am a duly qualified and appointed Assistant Secretary of AMERICAN SAVINGS BANK, F.A., a federal savings bank ("American"), and that the following resolutions were unanimously adopted by the Board of Directors of American, at a meeting duly held on December 28, 1988:

WHEREAS, Section 5, Paragraph B of the federal charter for this Savings Bank authorizes this Savings Bank to provide in supplementary sections to its charter for one or more classes of preferred stock, which shall be separately identified; and

WHEREAS, this Board of Directors has determined that it is in the best interests of this Savings Bank that its federal charter be amended to provide for a series of serial preferred stock in the amount and pursuant to the terms listed below;

NOW, THEREFORE, BE IT RESOLVED, that, pursuant to the authority granted to the Board of Directors by Section 5, Paragraph B of this Savings Bank's federal charter, there is hereby created and this Savings Bank is hereby authorized to issue a series of 10,000 shares of serial preferred stock, designated as Participating Preferred Stock Series A that shall have the following terms, conditions, designation, preferences and privileges, relative, participating, optional and other special rights, and qualifications, limitations and restrictions as set forth in a section of the federal stock charter, hereby added by amendment, entitled "Section 5A. Participating Preferred Stock Series A.":

(1) General.

10,000 shares of authorized serial preferred stock of the Savings Bank are hereby constituted as a series of serial preferred stock, having a par value of $.01 per share, designated as Participating Preferred Stock Series A ("Series A Preferred Stock"). All shares of Series A Preferred Stock shall be identical to each other in all respects.

(2) Dividends.

(a) Subject to paragraph (b) of this subsection (2), dividends on the Series A Preferred Stock shall be declared by the Board of Directors and paid out of assets of the Savings Bank legally available therefor at the same time as, in the same form as and in the same amount per share as, dividends declared and paid on the Common Stock. No dividends shall be declared or paid on the Series A Preferred Stock unless a dividend in the same amount per share is declared and paid on the Common Stock at the same time.

AMERICAN SAVINGS BANK, F.A.
Secretary's Certificate
Re:  Participating Preferred Stock Series A
October 28, 1993

        (b)  The holders of the Common Stock shall be entitled to
receive  out  of  the  assets  of  the  Savings  Bank  legally
available for distribution to its stockholders, an aggregate
amount not to exceed $714,000,000 (reduced by the amount of
dividends previously declared and paid with respect to shares
of Common Stock) before any dividend shall be declared or paid
with respect to the Series A Preferred Stock.

        (3)   Preference on Liquidation.

        (a)  In the event of the liquidation, dissolution or
winding up of the Savings Bank, the Series A Preferred Stock
shall be preferred over the Common Stock as to assets of the
Savings Bank available for a liquidating distribution to its
stockholders to the extent of, and the holders of the Series
A Preferred Stock shall be entitled to receive out of the
assets  of  the  Savings  Bank  available  for  a  liquidating
distribution to its stockholders, an amount not to exceed $.10
per share reduced by the amount of liquidating distributions,
if any, previously made with respect to shares of Series A
Preferred Stock.

        (b)  After the preferential liquidating distributions
provided for in paragraph (a) of this subsection (3) have been
made, the holders of the Common Stock shall be entitled to
receive out of the assets of the Savings Bank available for a
liquidating distribution to its stockholders, an aggregate
amount not to exceed $714,000,000 (reduced by the amount of
dividends, if any, previously declared and paid, and the
amount of liquidating distributions, if any, previously made,
with respect to shares of common stock) before any additional
liquidating distribution shall be made to the holders of the
Series A Preferred Stock.

        (c)  After the liquidating distributions provided for in
paragraphs (a) and (b) of this subsection (3) have been made,
each share of the Series A Preferred Stock shall be entitled
to receive further liquidating distributions at the same time
as and in an amount equal to any liquidating distributions
made with respect to a share of the Common Stock.

        (d)  A consolidation or merger of the Savings Bank or a
sale of all or a substantial part of the assets of the Savings
Bank shall not be deemed to be a liquidation, dissolution or
winding up within the meaning of this subsection (3).

        (4)   Voting.

        Each share of the Series A Preferred Stock shall entitle
the holder thereof to exercise the same voting rights as the
holder of a share of Common Stock.  Nothing contained in this
subsection (4) shall entitle the holders of the Series A

AMERICAN SAVINGS BANK, F.A.
Secretary's Certificate
Re: Participating Preferred Stock Series A
October 28, 1993

Preferred Stock to vote as a separate class except with respect to any amendment of this Charter which would adversely change the specific terms of the Series A Preferred Stock. An amendment which increases the number of authorized shares of any class or series of capital stock, or substitutes the surviving entity in a merger or consolidation for the Savings Bank, shall not be considered to be such an adverse change.

(5) Conversion.

(a) After there shall have been paid or declared and set aside for the holders of the Common Stock the full amount to which they are entitled pursuant to paragraph (b) of subsection (2), each holder of record of any shares of the Series A Preferred Stock shall have the right to cause any or all shares of the Series A Preferred Stock held by such holder to be converted into shares of Common Stock pursuant to this subsection (5). In order to exercise this conversion privilege, the holder of any shares of Series A Preferred Stock to be converted shall surrender such Series A Preferred Stock, duly endorsed or assigned to the Savings Bank or in blank, to the Savings Bank accompanied by written notice to the Savings Bank that such holder irrevocably elects to convert such Series A Preferred Stock. The Series A Preferred Stock elected to be converted shall be deemed to have been converted immediately prior to the close of business on the day of surrender of such Series A Preferred Stock for conversion.

(b) After there shall have been paid or declared and set aside for the holders of the Common Stock the full amount to which they are entitled pursuant to paragraph (b) of subsection (2), the Savings Bank shall have the right to cause all, but not less than all, of the shares of the Series A Preferred Stock to be converted into shares of Common Stock pursuant to this subsection (5). The Savings Bank shall give notice of the exercise of such right to each holder of record of the Series A Preferred Stock by mail addressed to such holder at the address as it appears on the records of the Savings Bank; provided, however, that the failure to give such notice, or the failure of any holder of the Series A Preferred Stock to receive such notice, shall not affect the validity or effectiveness of the conversion of the Series A Preferred Stock to Common Stock. After the conversion of all of the shares of Series A Preferred Stock to shares of Common Stock pursuant to this paragraph (b), no holder of a certificate evidencing shares of Series A Preferred Stock shall be entitled to receive any dividends or other distributions otherwise payable to holders of Common Stock unless and until such holder shall have surrendered such holder's certificate evidencing shares of Series A Preferred Stock in exchange for a certificate evidencing shares of Common Stock; provided,

AMERICAN SAVINGS BANK, F.A.
Secretary's Certificate
Re:  Participating Preferred Stock Series A
October 28, 1993

however, that upon such surrender there shall be paid to such holder, without interest, all distributions payable subsequent to such conversion, and prior to such exchange, on the shares of Common Stock for which such certificates shall have been exchanged.

(c)  Each share of Series A Preferred Stock converted pursuant to this subsection (5) shall be converted into one share of Common Stock.

(d)  All shares of Common Stock issued upon conversion of the Series A Preferred Stock shall be duly and validly issued, fully paid and nonassessable.

(6)  Anti-Dilution Provisions.

(a)  If the Savings Bank shall in any manner sub-divide (by stock split or otherwise) or combine (by reverse stock split or otherwise) the outstanding shares of the Common Stock, or pay a stock dividend in shares of any class to holders of the Common Stock, the dividend and liquidation rights of the Series A Preferred Stock shall be appropriately adjusted so as to avoid any dilution in the aggregate dividend and liquidation rights of the Common Stock or the Series A Preferred Stock.

(b)  The determination of any adjustment required under paragraph (a) of this subsection (6) shall be made by the Savings Bank's Board of Directors in its reasonable judgment.

(7)  Redemption.

The Series A Preferred Stock shall not be redeemable.

I further certify that the foregoing resolutions have not been rescinded and that they remain in full force and effect.

IN WITNESS WHEREOF, I have duly executed this Secretary's Certificate as of the 28th day of October 1993.

James J. Sullivan
Assistant Secretary

Charter No. 4539

## FEDERAL STOCK CHARTER

American Savings Bank, F.A.
Stockton, California

Section 1. <u>Corporate Title</u>. The full corporate title of the savings bank is American Savings Bank, F.A.

Section 2. <u>Office</u>. The home office shall be located in Stockton, California.

Section 3. <u>Duration</u>. The duration of the savings bank is perpetual.

Section 4. <u>Purpose and Powers</u>. The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Federal Home Loan Bank Board ("Board"). In addition, the savings bank may make any investment and engage in any activity as may be specifically authorized by action of the Board, including authorization by delegated authority, in connection with action approving the issuance of the charter.

Section 5. <u>Capital Stock</u>. The total number of shares of all classes of the capital stock which the savings bank has the authority to issue is 1,100,000 of which 1,000,000 shall be common stock of par value of $1.00 per share and of which 100,000 shall be serial preferred stock of par value $.01. The shares may be issued from time to time as authorized by the board of directors without the approval of its shareholders, except as otherwise provided in this Section 5 or to the extent that such approval is required by governing law, rule, or regulation. The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value. Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank. The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted to the savings bank), labor, or services actually performed for the savings bank, or any combination of the foregoing. In the absence of actual fraud in the transaction, the value of such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive. Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable. In the

No. 4539

case of a stock dividend, that part of the surplus of the savings bank which is transferred to stated capital upon the issuance of shares as a share dividend shall be deemed to be the consideration for their issuance.

Except for shares issuable in connection with the conversion of the savings bank from the mutual to stock form of capitalization, no shares of capital stock (including shares issuable upon conversion, exchange or exercise of other securities) shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a director, unless the issuance or the plan under which they would be issued has been approved by a majority of the total votes eligible to be cast at a legal meeting.

Nothing contained in this Section 5 (or in any supplementary sections hereto) shall entitle the holders of any class of a series of capital stock to vote as a separate class or series or to more than one vote per share, except as to the cumulation of votes for the election of directors: <u>Provided</u>, that this restriction on voting separately by class or series shall not apply:

(i)   To any provision which would authorize the holders of preferred stock, voting as a class or series, to elect some members of the board of directors, less than a majority thereof, in the event of default in the payment of dividends on any class or series of preferred stock;

(ii)   To any provision which would require the holders of preferred stock, voting as a class or series, to approve the merger or consolidation of the association with another corporation or the sale, lease, or conveyance (other than by mortgage or pledge) of properties or business in exchange for securities of a corporation other than the savings bank if the preferred stock is exchanged for securities of such other corporation: <u>Provided</u>, that no provision may require such approval for transactions undertaken with the assistance or pursuant to the direction of the Federal Savings and Loan Insurance Corporation;

(iii)   To any amendment which would adversely change the specific terms of any class or series of capital stock as set forth in this Section 5 (or in any supplementary sections hereto), including any amendment which would create or enlarge any class or series ranking prior thereto in rights and preferences.  An amendment which increases the number of authorized shares of any class or series of capital stock, or substitutes the surviving association in a merger or consolidation for the savings bank shall not be considered to be such an adverse change.

No. 4539

A description of the different classes and series (if any) of the savings bank's capital stock and a statement of the designations, and the relative rights, preferences, and limitations of the shares of each class of and series (if any) of capital stock are as follows:

A.  Common stock.  Except as provided in this Section 5 (or in any supplementary sections thereto) the holders of the common stock shall exclusively possess all voting power.  Each holder of shares of common stock shall be entitled to one vote for each share held by such holder, except as to the cumulation of votes for the election of directors.

Whenever there shall have been paid, or declared and set aside for payment, to the holders of the outstanding shares of any class of stock having preference over the common stock as to the payment of dividends, the full amount of dividends and of sinking fund, retirement fund, or other retirement payments, if any, to which such holders are respectively entitled in preference to the common stock, then dividends may be paid on the common stock and on any class or series of stock entitled to participate therewith as to dividends out of any assets legally available for the payment of dividends.

In the event of any liquidation, dissolution, or winding up of the savings bank, the holders of the common stock (and the holders of any class or series of stock entitled to participate with the common stock in the distribution of assets) shall be entitled to receive, in cash or in kind, the assets of the savings bank available for distribution remaining after:  (i) payment or provision for payment of the savings bank's debts and liabilities; (ii) distributions or provision for distributions in settlement of its liquidation account; and (iii) distributions or provisions for distributions to holders of any class or series of stock having preference over the common stock in the liquidation, dissolution, or winding up of the savings bank.  Each share of common stock shall have the sale relative rights as and be identical in all respects with all the other shares of common stock.

B.  Preferred stock.  The association may provide in supplementary sections to its charter for one or more classes of preferred stock, which shall be separately identified.  The shares of any class may be divided into and issued in series, with each series separately designed so as to distinguish the shares thereof from the shares of all other series and classes.  The terms of each series shall be set forth in a supplementary section to the charter.  All shares of the same class shall be identical except as to the following relative rights and preferences, as to which there may be variations between different series;

(a)  The distinctive serial designation and the number of shares constituting such series;

-3-

No. 4539

(b)   The dividend rate or the amount of dividends to be paid on the shares of such series, whether dividends shall be cumulative and, if so, from which date(s) the payment date(s) for dividends, and the participating or other special rights, if any, with respect to the dividends;

(c)   The voting powers, full or limited, if any, of shares of such series;

(d)   Whether the shares of such series shall be redeemable and, if so, the price(s) at which, and the terms and conditions on which such shares may be redeemed;

(e)   The amount(s) payable upon the shares of such series in the event of voluntary or involuntary liquidation, dissolution, or winding up of the savings bank;

(f)   Whether the shares of such series shall be entitled to the benefit of a sinking or retirement fund to be applied to the purchase or redemption of such shares, and if so entitled, the amount of such fund and the manner of its application, including the price(s) at which such shares may be redeemed or purchased through the application of such fund;

(g)   Whether the shares of such series shall be convertible into, or exchangeable for, shares of any other class or classes of stock of the savings bank and, if so, the conversion price(s) or the rate(s) of exchange, and the adjustments thereof, if any, at which such conversation or exchange may be made, and any other terms and conditions of such conversion or exchange;

(h)   The price or other consideration for which the shares of such series shall be issued; and

(i)   Whether the shares of such series which are redeemed or converted shall have the status of authorized but unissued shares of serial preferred stock and whether such shares may be reissued as shares of the same or any other series of serial preferred stock.

Each share of each series of serial preferred stock shall have the same relative rights as and be identical in all respects with all the other shares of the same series.

The board of directors shall have authority to divide, by the adoption of supplementary charter sections, any authorized class of perferred stock into series, and, within the limitations set forth in this section and this charter, fix and determine the relative rights and preferences of the shares of any series so established.

-4-

No. 4539

Prior to the issuance of any preferred shares of a series established by a supplementary charter section adopted by the board of directors, the savings bank shall file with the Secretary to the Federal Home Loan Bank Board a dated copy of that supplementary section of this charter established and designating the series and fixing and determining the relative rights and preferences thereof.

Section 6.  <u>Preemptive Rights</u>.  Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

Section 7.  <u>Directors</u>.  The savings bank shall be under the direction of a board of directors.  The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than three nor more than fifteen except when a greater number is approved by the Board.

Section 8.  <u>Amendment of Charter</u>.  Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is first proposed by the board of directors of the savings bank, then preliminarily approved by the Board, which preliminary approval may be granted by the Board pursuant to regulations specifying preapproved charter amendments, and thereafter approved by the shareholders by a majority of the total votes eligible to be cast at a legal meeting.  Any amendment, addition, alteration, change, or repeal so acted upon shall be effective upon filing with the Board in accordance with regulatory procedures or on such other date as the Board may specify in its preliminary approval.

Attest:                                American Savings Bank, F.A.


_____            By: _____
Secretary of the Savings Bank          Chairman of the Board and
                                       Chief Executive Officer

Declared effective this __28__ day of December, 1988.

Attest:                                FEDERAL HOME LOAN BANK BOARD


_____            By: _____
Secretary to the Board

-5-

AMERICAN SAVINGS BANK, F.A.

AMENDMENT TO FEDERAL STOCK CHARTER
(Charter No. 4539)

The undersigned, William L. Lynch, hereby certifies that he is the Secretary of AMERICAN SAVINGS BANK, F.A., a federal savings bank whose home office is located in Stockton, California (the "savings bank" or the "Association"), and that the following resolution was unanimously adopted by the Board of Directors of the Association at a meeting duly held on September 16, 1997:

IT IS HEREBY RESOLVED, that Section 1 of the Federal Stock Charter of the Association is hereby amended as follows:

Section 1.    Corporate Title.    The full corporate title of the savings bank is Washington Mutual Bank, FA.

The foregoing resolution has not been rescinded or modified and remains in full force and effect. This amendment to the Federal Stock Charter of the Association shall be effective at the time of the merger of Great Western Bank, a Federal Savings Bank with and into the Association.

EXECUTED this 25th day of September, 1997.

_____
William L. Lynch, Secretary



305373.1

AMERICAN SAVINGS BANK, F.A.

CONSENT OF SHAREHOLDERS IN LIEU OF MEETING

The undersigned, being the holders of all issued and outstanding shares of common stock and preferred stock of American Savings Bank, F.A., a federal savings bank (the "savings bank" or "ASB") hereby consent to and adopt the following resolutions (which were adopted by ASB's board of directors on June 17, 1997) in lieu of holding a special meeting of the shareholders:

IT IS HEREBY RESOLVED, that Section 1 of the Federal Stock Charter of ASB is hereby amended to read in its entirety as follows:

Section 1. Corporate Title. The full corporate name of the savings bank is Washington Mutual Bank, FA.

IT IS FURTHER RESOLVED, that the first sentence of Section 5 of the Federal Stock Charter of ASB is hereby amended to read in its entirety as follows:

The total number of shares of all classes of the capital stock which the savings bank has the authority to issue is 2,000,000 of which 1,000,000 shall be common stock of par value of $1.00 per share and of which 1,000,000 shall be serial preferred stock of par value $.01 per share.

DATED this 22d day of September, 1997

HOLDER OF ALL COMMON STOCK:

NEW AMERICAN CAPITAL, INC.

By: _William A. Longbrake_
William A. Longbrake
Executive Vice President

HOLDER OF ALL PREFERRED STOCK:

WASHINGTON MUTUAL, INC.

By: _William A. Longbrake_
William A. Longbrake
Executive Vice President

OTS West Region

Notification Of:

☐ Approval          ☑ Notice Appropriately
☑ No Objection          Filed and Accepted
☐ File Closed          ☐ Compliance Materials
☐ No Further Action          Filed and Accepted
Required          ☑ As of: 9/26/97

304693.1

By: _Perry D. Mansfield_
Title: Applications
Manager



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

## CERTIFICATE OF SUCCESSION IN INTEREST

**REFERENCE:**       Washington Mutual Bank
                     Seattle, Washington

                     Washington Mutual Bank, FA
                     Stockton, California

**SUCCESSOR:**       Washington Mutual Bank
                     Stockton, California

I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

1.  Washington Mutual Bank, Seattle, Washington, was organized under the laws of the State of Washington to transact the business of a State savings bank;

2.  Effective December 20, 2004, Washington Mutual Bank, Seattle, Washington, converted from a State-chartered savings bank to a Federally-chartered savings bank under the corporate title of Washington Mutual Bank, Seattle, Washington;

3.  Effective January 1, 2005, Washington Mutual Bank, Seattle, Washington, merged with and into Washington Mutual Bank, FA, Stockton, California, and Washington Mutual Bank, FA, Stockton, California, was the resulting institution; and

4.  Effective April 4, 2005, the Federal Stock Charter of Washington Mutual Bank, FA, Stockton, California, was amended to change its corporate title to Washington Mutual Bank, and its Bylaws were amended to provide that Washington Mutual Bank also may do business under the name "Washington Mutual Bank, FA".

**DATED** this 28th day of July 2005.



Nadine Y. Washington
Corporate Secretary

District of Columbia : ss
The foregoing instrument was acknowledged before me
this 28th day of July, 2005
by Nadine Y. Washington

Harold A. Howell, Notary Public, D.C.
My commission expires October 31, 2009

**WASHINGTON MUTUAL BANK, FA**
**BOARD OF DIRECTORS RESOLUTION**

**AMENDMENT TO FEDERAL STOCK CHARTER (No. 4539)**

**RESOLVED,** that Section 1 of the Federal Stock Charter of the Association (the "Charter") is hereby amended as follows:

Section 1.    Corporate Title.   The corporate title of the savings bank is Washington Mutual Bank.

**AMENDMENT TO BYLAWS**

**RESOLVED FURTHER,** that Article I, Section 1 of the Bylaws of the Association shall be amended in its entirety to read as follows:

Section 1.    Corporate Title and Name.   The full corporate title of the savings bank is Washington Mutual Bank.  The savings bank also may do business under the name Washington Mutual Bank, FA.

**RESOLVED FURTHER,** that the foregoing amendments shall become effective as of April 4, 2005.

**RESOLVED FURTHER,** that the Senior Executive Vice President, the Secretary and the Assistant Secretary, and each of them acting alone, are hereby authorized to execute and deliver any and all documents, and to take such other actions, as may be necessary or appropriate to effect such amendments.



DOCSSEA/105899.1 1-12-2005 15:10

## WASHINGTON MUTUAL BANK, FA
### CERTIFICATE OF SECRETARY

I, William L. Lynch, Secretary of Washington Mutual Bank, FA, formerly known as American Savings Bank, F.A. (the "Association") hereby certify that the following statements are true and correct:

      1.     The Association is a federal savings association duly authorized and existing under the laws of the United States of America, specifically, the Home Owners' Loan Act, 12 U.S.C. Section 1461 et seq.

      2.     A true and correct copy of the Association's Federal Stock Charter No. 4539 is attached.

      3.     Effective October 1, 1997, the Association amended its Federal Stock Charter to change its corporate title from American Savings Bank, F.A. to Washington Mutual Bank, FA., as set forth in a notice appropriately filed and accepted by the Office of Thrift Supervision West Region by official stamp affixed to the Consent of Shareholders in Lieu of Meeting dated September 23, 1997, a true and correct copy of which is attached.

IN WITNESS WHEREOF, I have hereunto subscribed my name this 6th day of April, 1998.

 

William L. Lynch
Secretary

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING     )

     I certify that I know or have satisfactory evidence that William L. Lynch is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Secretary of Washington Mutual Bank, FA to be the free and voluntary act of such part for the uses and purposes mentioned therein.

     Dated this 6th day of April, 1998.

Sally Bothwell
Notary Public in and for the State of
Washington, residing at Kirkland.
My commission expires: 2-1-2002

H:\LEGAL\CORPSECY\CERTIF\FACHAUTH.DOC

4/6/98 2:32 PM

Charter No. 4539

## FEDERAL STOCK CHARTER

### American Savings Bank, F.A.
### Stockton, California

Section 1.  <u>Corporate Title</u>.  The full corporate title of the savings bank is American Savings Bank, F.A.

Section 2.  <u>Office</u>.  The home office shall be located in Stockton, California.

Section 3.  <u>Duration</u>.  The duration of the savings bank is perpetual.

Section 4.  <u>Purpose and Powers</u>.  The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Federal Home Loan Bank Board ("Board").  In addition, the savings bank may make any investment and engage in any activity as may be specifically authorized by action of the Board, including authorization by delegated authority, in connection with action approving the issuance of the charter.

Section 5.  <u>Capital Stock</u>.  The total number of shares of all classes of the capital stock which the savings bank has the authority to issue is 1,100,000 of which 1,000,000 shall be common stock of par value of $1.00 per share and of which 100,000 shall be serial preferred stock of par value $.01.  The shares may be issued from time to time as authorized by the board of directors without the approval of its shareholders, except as otherwise provided in this Section 5 or to the extent that such approval is required by governing law, rule, or regulation.  The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value.  Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank.  The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted to the savings bank), labor, or services actually performed for the savings bank, or any combination of the foregoing.  In the absence of actual fraud in the transaction, the value of such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive.  Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable.  In the

No. 4539

case of a stock dividend, that part of the surplus of the savings bank which is transferred to stated capital upon the issuance of shares as a share dividend shall be deemed to be the consideration for their issuance.

Except for shares issuable in connection with the conversion of the savings bank from the mutual to stock form of capitalization, no shares of capital stock (including shares issuable upon conversion, exchange or exercise of other securities) shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a director, unless the issuance or the plan under which they would be issued has been approved by a majority of the total votes eligible to be cast at a legal meeting.

Nothing contained in this Section 5 (or in any supplementary sections hereto) shall entitle the holders of any class of a series of capital stock to vote as a separate class or series or to more than one vote per share, except as to the cumulation of votes for the election of directors: <u>Provided</u>, that this restriction on voting separately by class or series shall not apply:

(i)    To any provision which would authorize the holders of preferred stock, voting as a class or series, to elect some members of the board of directors, less than a majority thereof, in the event of default in the payment of dividends on any class or series of preferred stock;

(ii)    To any provision which would require the holders of preferred stock, voting as a class or series, to approve the merger or consolidation of the association with another corporation or the sale, lease, or conveyance (other than by mortgage or pledge) of properties or business in exchange for securities of a corporation other than the savings bank if the preferred stock is exchanged for securities of such other corporation: <u>Provided</u>, that no provision may require such approval for transactions undertaken with the assistance or pursuant to the direction of the Federal Savings and Loan Insurance Corporation;

(iii)   To any amendment which would adversely change the specific terms of any class or series of capital stock as set forth in this Section 5 (or in any supplementary sections hereto), including any amendment which would create or enlarge any class or series ranking prior thereto in rights and preferences.  An amendment which increases the number of authorized shares of any class or series of capital stock, or substitutes the surviving association in a merger or consolidation for the savings bank shall not be considered to be such an adverse change.

No. 4539

A description of the different classes and series (if any) of the savings bank's capital stock and a statement of the designations, and the relative rights, preferences, and limitations of the shares of each class of and series (if any) of capital stock are as follows:

A. **Common stock**. Except as provided in this Section 5 (or in any supplementary sections thereto) the holders of the common stock shall exclusively possess all voting power. Each holder of shares of common stock shall be entitled to one vote for each share held by such holder, except as to the cumulation of votes for the election of directors.

Whenever there shall have been paid, or declared and set aside for payment, to the holders of the outstanding shares of any class of stock having preference over the common stock as to the payment of dividends, the full amount of dividends and of sinking fund, retirement fund, or other retirement payments, if any, to which such holders are respectively entitled in preference to the common stock, then dividends may be paid on the common stock and on any class or series of stock entitled to participate therewith as to dividends out of any assets legally available for the payment of dividends.

In the event of any liquidation, dissolution, or winding up of the savings bank, the holders of the common stock (and the holders of any class or series of stock entitled to participate with the common stock in the distribution of assets) shall be entitled to receive, in cash or in kind, the assets of the savings bank available for distribution remaining after: (i) payment or provision for payment of the savings bank's debts and liabilities; (ii) distributions or provision for distributions in settlement of its liquidation account; and (iii) distributions or provisions for distributions to holders of any class or series of stock having preference over the common stock in the liquidation, dissolution, or winding up of the savings bank. Each share of common stock shall have the sale relative rights as and be identical in all respects with all the other shares of common stock.

B. **Preferred stock**. The association may provide in supplementary sections to its charter for one or more classes of preferred stock, which shall be separately identified. The shares of any class may be divided into and issued in series, with each series separately designed so as to distinguish the shares thereof from the shares of all other series and classes. The terms of each series shall be set forth in a supplementary section to the charter. All shares of the same class shall be identical except as to the following relative rights and preferences, as to which there may be variations between different series;

(a) The distinctive serial designation and the number of shares constituting such series;

-3-

No. 4539

(b)  The dividend rate or the amount of dividends to be paid on the shares of such series, whether dividends shall be cumulative and, if so, from which date(s) the payment date(s) for dividends, and the participating or other special rights, if any, with respect to the dividends;

(c)  The voting powers, full or limited, if any, of shares of such series;

(d)  Whether the shares of such series shall be redeemable and, if so, the price(s) at which, and the terms and conditions on which such shares may be redeemed;

(e)  The amount(s) payable upon the shares of such series in the event of voluntary or involuntary liquidation, dissolution, or winding up of the savings bank;

(f)  Whether the shares of such series shall be entitled to the benefit of a sinking or retirement fund to be applied to the purchase or redemption of such shares, and if so entitled, the amount of such fund and the manner of its application, including the price(s) at which such shares may be redeemed or purchased through the application of such fund;

(g)  Whether the shares of such series shall be convertible into, or exchangeable for, shares of any other class or classes of stock of the savings bank and, if so, the conversion price(s) or the rate(s) of exchange, and the adjustments thereof, if any, at which such conversation or exchange may be made, and any other terms and conditions of such conversion or exchange;

(h)  The price or other consideration for which the shares of such series shall be issued; and

(i)  Whether the shares of such series which are redeemed or converted shall have the status of authorized but unissued shares of serial preferred stock and whether such shares may be reissued as shares of the same or any other series of serial preferred stock.

Each share of each series of serial preferred stock shall have the same relative rights as and be identical in all respects with all the other shares of the same series.

The board of directors shall have authority to divide, by the adoption of supplementary charter sections, any authorized class of perferred stock into series, and, within the limitations set forth in this section and this charter, fix and determine the relative rights and preferences of the shares of any series so established.

-4-

No. 4539

Prior to the issuance of any preferred shares of a series established by a supplementary charter section adopted by the board of directors, the savings bank shall file with the Secretary to the Federal Home Loan Bank Board a dated copy of that supplementary section of this charter established and designating the series and fixing and determining the relative rights and preferences thereof.

Section 6. _Preemptive Rights_. Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

Section 7. _Directors_. The savings bank shall be under the direction of a board of directors. The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than three nor more than fifteen except when a greater number is approved by the Board.

Section 8. _Amendment of Charter_. Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is first proposed by the board of directors of the savings bank, then preliminarily approved by the Board, which preliminary approval may be granted by the Board pursuant to regulations specifying preapproved charter amendments, and thereafter approved by the shareholders by a majority of the total votes eligible to be cast at a legal meeting. Any amendment, addition, alteration, change, or repeal so acted upon shall be effective upon filing with the Board in accordance with regulatory procedures or on such other date as the Board may specify in its preliminary approval.

Attest:                          American Savings Bank, F.A.


_____          By: _____
Secretary of the Savings Bank        Chairman of the Board and
                                     Chief Executive Officer


Declared effective this _28_ day of December, 1988.

Attest:                          FEDERAL HOME LOAN BANK BOARD


_____          By: _____
Secretary to the Board

-5-

# EXHIBIT B



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

## CERTIFICATE OF SUCCESSION IN INTEREST

**REFERENCE:** Washington Mutual Bank
Seattle, Washington

Washington Mutual Bank, FA
Stockton, California

**SUCCESSOR:** Washington Mutual Bank
Stockton, California

I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

1. Washington Mutual Bank, Seattle, Washington, was organized under the laws of the State of Washington to transact the business of a State savings bank;

2. Effective December 20, 2004, Washington Mutual Bank, Seattle, Washington, converted from a State-chartered savings bank to a Federally-chartered savings bank under the corporate title of Washington Mutual Bank, Seattle, Washington;

3. Effective January 1, 2005, Washington Mutual Bank, Seattle, Washington, merged with and into Washington Mutual Bank, FA, Stockton, California, and Washington Mutual Bank, FA, Stockton, California, was the resulting institution; and

4. Effective April 4, 2005, the Federal Stock Charter of Washington Mutual Bank, FA, Stockton, California, was amended to change its corporate title to Washington Mutual Bank, and its Bylaws were amended to provide that Washington Mutual Bank also may do business under the name "Washington Mutual Bank, FA".

**DATED** this 28th day of July 2005.

*Nadine Y. Washington*
Nadine Y. Washington
Corporate Secretary

District of Columbia : ss
The foregoing instrument was acknowledged before me this 28th day of July 2005
by Nadine Y. Washington
Deborah A. Holland, Notary Public, D.C.
My commission expires October 31, 2009