McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
MICHAEL T. FOGARTY (#065809)
LAURA J. FOWLER (#186097)
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax: 916.444.3249

THACHER PROFFITT & WOOD LLP
RICHARD F. HANS (*Pro Hac Vice*, SBN 2593200NY)
PATRICK J. SMITH (*Pro Hac Vice*, SBN 2402394NY)
JEFFREY D. ROTENBERG (*Pro Hac Vice* SBN 3984994NY)
2 World Financial Center
New York, NY 10281
Phone: 212.912.7400
Fax: 212-912-7751

Attorneys for Defendant eAppraiseIT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>WASHINGTON MUTUAL, INC., a Washington corporation; FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDERS SERVICES, INC.,<br><br>            Defendants. | Case No. C 08 00868 HRL<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION; MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date:**     Tuesday, July 15, 2008<br>**Time:**    10:00 a.m.<br>**Place:**   Courtroom 2, 5th Floor<br>           280 South 1st Street<br>           San Jose, CA 95113<br><br>**Honorable Howard R. Lloyd** |

# TABLE OF CONTENTS

**Page(s)**

I.    DISCUSSION ............................................................................................................4

    A.    Plaintiffs' Claim under RESPA is Subject to Dismissal For Failure to State a Claim upon which Relief can be Granted. ..................................................4

    B.    Plaintiffs' State Law Claims Should be Dismissed on Preemption Grounds ...............6

        1.    HOLA Created a Pervasive Federal Regulatory Scheme Which Leaves No Room for State Regulation or Oversight ...............................6

        2.    FIRREA Extends the OTS' Pervasive Reach to Appraisal Programs and Institution-Affiliated Parties Such as eAppraiseIT ....................9

    C.    Plaintiffs Have Failed to Adequately Allege their State Law Claims .......................11

        1.    Plaintiffs' Claims Under Business and Professions Code Section 17200 Must Be Dismissed Because Plaintiffs Do Not Having Standing. .................11

        2.    Plaintiffs' Claim Under the CLRA Must be Dismissed. ...........................12

            a.    Plaintiffs' CLRA Claim Must be Dismissed Because Appraisals Do Not Qualify as "Goods" or "Services." ........................12

            b.    Plaintiffs' CLRA Claim Must be Dismissed Due to the Absence of Allegations of Damages ...............................14

            c.    Plaintiffs' CLRA Claim Must Be Dismissed Because Plaintiffs Failed to File the Venue Affidavit as Required by Civil Code § 1780(c). .........................................14

        3.    Plaintiff's Breach of Contract Claim is Subject to Dismissal. .......................15

            a.    Plaintiffs Do Not Alleged the Existence of a Contract with eAppraiseIT ............................................15

            b.    Plaintiffs Do Not Allege the Nature or Terms of their Contracts. ...........................................16

            c.    Plaintiffs Do Not Allege Damages ..................................17

        4.    Plaintiffs' Quasi-Contract/Unjust Enrichment Claim is Subject to Dismissal. ...........................................17

II.    CONCLUSION ........................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### Federal Cases

4
*Arikat v. JP Morgan Chase & Co.*, 430 F.Supp.2d 1013 (N.D.Cal. 2006) ........................15

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988)........................................3

5
*Bank of America v. City and County of San Francisco*, 309 F. 3d 551 (9th Cir. 2002) ....................6

6
*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007)........................3

7
*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) ........................3

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................3

8
*Dorian v. Harich Tahoe Development,*
    Nos. C-94-3387 (DLJ), 1996 WL 925859, at *6 (N.D.Cal. Jan. 16, 1996) ....................17

9

10
*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
    403 F.Supp.2d 968 (N.D. Cal. 2005) ........................17

11
*Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)....................6, 7, 8

*Flagg v. Yonkers Sav. & Loan Ass'n FA*, 396 F.3d 178, 183 (2nd Cir. 2005) ....................8

12
*Hernandez v. Hilltop Financial Mortgage, Inc.,*
    2007 WL 3101250, *6 (N.D.Cal. Oct. 22, 2007) ........................14

13

14
*Jefferson v. Chase Home Finance* LLC,
    No. C06-6510, 2007 WL 1302984, at *3 (N.D.Cal. May 3, 2007) ........................14

15
*Papasan v. Allain*, 478 U.S. 265 (1986) ........................3

*Sanders v. Kennedy,* 794 F.2d 478 (9th Cir. 1986) ........................3

16
*Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,*
    40 F.3d 247 (7th Cir. 1994) ........................3

17

18
*State Farm Bank, F.S.B. v. Burke*,
    Case No. 3:05CV808 (JBA), 2006 WL 1728919 (D. Conn. June 21, 2006)....................9

19
*United States v. Locke*, 529 U.S. 89 (2000) ........................6

*Welch v. Centex Home Equity Co.*, 323 F.Supp.2d 1087 (D. Kan. 2004) ....................5, 6

20

### State Cases

21
*Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796 (2006) ........................11

22
*First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731 (2001)........................15

*Harris v. Rudin, Richman, & Appel*, 74 Cal.App.4th 299 (1999) ........................16

23
*McBride v. Boughton*, 123 Cal.App.4th 379 (2004)........................17

24
*McKell v. Washington Mutual*, 142 Cal.App.4th 1457 (2006) ........................ 12, 13, 17

25
*Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089 (1991) ........................13

*Otworth v. Southern Pacific Transportation Co.*, 166 Cal.App.3d 452 (1985)........................16

26
*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688 (2007) ........................11

27
*Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746 (2003)........................14

28


cDonough Holland & Allen PC
Attorneys at Law

1

# Statutes

California Business and Professions Code
  § 17200.....................................................................................................2, 11, 12, 18
  § 17204...........................................................................................................11, 18
California Civil Code
  § 1761(a).....................................................................................................................12
  § 1761(b)...............................................................................................................12, 13
  § 1780.........................................................................................................................15
  § 1780(c).....................................................................................................................14
Federal Rules of Civil Procedure 12(b)(6).......................................................................1, 3
12 United States Code
  § 1461...........................................................................................................................6
  § 1462a(b)(2)................................................................................................................8
  § 1463(a)(2)..................................................................................................................8
  § 1464(a).....................................................................................................................10
  § 1813...........................................................................................................................9
  § 1813(u).....................................................................................................................10
  § 1813(u)(4)................................................................................................................10
  § 2607(a).......................................................................................................................5
  § 2607(b).......................................................................................................................4
  § 3301...........................................................................................................................9
  §§ 3346-3348.............................................................................................................10

# Rules and Regulations

12 Code of Federal Regulations
  § 545.2...........................................................................................................................8
  § 560.2(a).......................................................................................................................8
  Part 564.......................................................................................................................6, 9
  § 564.1(b).......................................................................................................................9
  § 564.2(i)(1)-(3)
  § 564.3
  § 564.4.........................................................................................................................10
  § 564.7.........................................................................................................................10
24 Code of Federal Regulations § 3500.14(c)......................................................................5

# Treatises

4 C. Wright & A. Miller, Federal Practice and Procedure, § 1235 (3rd Ed. 2004)...........................16
5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)..............3

MHA
cDonough Holland & Allen PC
Attorneys at Law

1

## NOTICE OF MOTION AND MOTION

2

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE THAT on July 15, 2008, at 10:00 a.m., or as soon thereafter as the

4  matter may be heard, in Courtroom 2, 5th Floor, of the above-entitled Court, located at 280 South 1st

5  Street, San Jose, CA 95113, before the Honorable Howard R. Lloyd, Defendant eAppraiseIT, LLC

6  (erroneously sued herein as First American eAppraiseIT) ("eAppraiseIT") will and hereby does

7  move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss all claims for

8  relief in the Amended Class Action Complaint filed by Plaintiffs in this action.

9      This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities

10 in Support of the Motion to Dismiss, all documents in the Court's file, matters of which this Court

11 can take judicial notice, and any evidence presented at or prior to the hearing on this matter. [1]

12

## STATEMENT OF RELIEF SOUGHT

13     Defendant eAppraiseIT seeks an Order from this Court dismissing Plaintiffs' Amended

14 Complaint in its entirety without leave to amend.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

16     Defendant eAppraiseIT respectfully submits the following memorandum of points and

17 authorities in support of its motion to dismiss the First Amended Class Action Complaint of

18 Plaintiffs Felton A. Spears, Jr. and Sidney Scholl ("Plaintiffs") pursuant to Federal Rule of Civil

19 Procedure 12(b)(6).

20

## PRELIMINARY STATEMENT

21     This lawsuit represents a thinly veiled attempt to capitalize upon the subprime mortgage

22 crisis and heightened scrutiny of practices in the home loan industry.  In this case, however,

23 Plaintiffs fail to describe or explain how the Defendants' conduct caused them any harm.  Their

24 resulting failure to state a cognizable claim against eAppraiseIt mandates dismissal of this action.

25     Plaintiffs sought and received loans from defendant Washington Mutual ("WaMu") in order

26

------

[1]     eAppraiseIT hereby incorporates all arguments made by co-defendants, Washington Mutual

27 Bank and LSI Appraisal, LLC, (erroneously sued herein as Lenders Services, Inc.) in their
accompanying motions to dismiss.  All named defendants are sometimes collectively referred to as

28 "Defendants."



NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS        1094925v1 36887/0002

to finance home purchases. Plaintiffs' sole complaint is that in connection with the loan process, WaMu conspired with eAppraiseIT and defendant Lender Services, Inc. ("LSI") to procure inflated appraisals. It is undisputed that Plaintiffs sought financing, received financing, and acquired their homes. Plaintiffs do not allege that they paid excessive fees to any of the Defendants or that the putative scheme has inured to their detriment.

Nonetheless, Plaintiffs – who purport to represent a class of consumers who also obtained mortgage loans from Washington Mutual since January 1, 2006[2] – allege seven claims for relief: (1) a statutory claim under the federal Real Estate Settlement Practices Act ("RESPA"); (2) three separate statutory claims for unfair competition under California Business and Professions Code § 17200; (3) a statutory claim under the California Consumer Legal Remedies Act ("CLRA"); (4) breach of contract; and (5) quasi contract/unjust enrichment. As explained below, all of these claims are subject to dismissal.

To summarize, Plaintiffs allege no actionable conduct under RESPA, which was enacted to prohibit kickbacks and improper referral fees in the real estate industry. In this case, Plaintiffs do not and cannot allege any such practices occurred. Plaintiffs' state law claims are preempted by the extensive federal regulatory regime governing eAppraiseIT's relevant appraisal practices. Independently, with regard to their claims under Business and Professions Code § 17200, Plaintiffs do not allege the requisite injury in fact necessary under section 17204. There are no allegations that Plaintiffs have suffered any loss or damage to property as a result of the allegedly wrongful actions. As for the CLRA claim, appraisals do not qualify as "goods" or "services" within the meaning of that statute. In any event, Plaintiffs have indisputably failed to file an affidavit regarding proper venue – a statutory prerequisite to filing such a claim. The breach of contract claim fails for the simple reason that there was no contract between Plaintiffs and eAppraiseIT. Furthermore, Plaintiffs' allegations as to the purported breach of contract are vague and ambiguous and fail to articulate essential elements of such a cause of action. The "quasi-contract/unjust enrichment" theory fails for the very same reasons and because there is no such legally recognized claim.

---

[2]    eAppraiseIT does not concede the propriety of treating this as a class action. eAppraiseIT reserves all appropriate challenges to this question and will raise those challenges if and when Plaintiffs move to certify the class.

## FACTUAL BACKGROUND

This case arises out of home purchases and the receipt of mortgage loans. According to the allegations of the complaint, Plaintiffs separately obtained loans from WaMu to finance the purchase of residential properties. WaMu, in turn, contracted with eAppraiseIT and LSI for appraisal services on these properties. Plaintiffs allege that WaMu conspired with eAppraiseIT and LSI to provide inflated appraisals, in order to allow WaMu to obtain advantageous terms on mortgage backed securities.

## STANDARD OF REVIEW

A motion to dismiss is proper under Rule 12(b)(6) when the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [*Conley v. Gibson*, 355 U.S. 41, 47 (1957)]; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ....

*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007) (footnote omitted).

A court may dismiss a complaint under Rule 12(b)(6), based on the "lack of a cognizable legal theory" or based upon the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The complaint is construed in the light most favorable to the non-moving party, and all nonspeculative material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). A court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

/ / /



MHA
cDonough Holland & Allen PC
Attorneys at Law

**STATEMENT OF ISSUES**

A.    Whether Plaintiffs have stated a viable claim under RESPA, given the absence of any allegations that:  (1) any kickbacks or referral fees are involved between the various parties; or (2) any defendant completely failed to provide services for which they paid.

B.    Whether Plaintiffs have alleged any viable state law claims.

1.    Whether federal law preempts Plaintiffs' state law claims, given that the federal Office of Thrift Supervision has expressly preempted all state statutory or common law regulation of "initial charges," "disclosures and advertising," and "processing [or] origination" of real estate secured loans.

2.    Assuming no preemption, whether Plaintiffs have stated viable state law claims given that their Complaint does not allege (a) any actionable misrepresentation or omission by eAppraiseIT; (b) any sale of "goods" or "services," as those terms are used in the CLRA; (c) any damage or ascertainable loss within the meaning of California's unfair competition law; or (d) the existence of any contract between Plaintiffs and eAppraiseIT (or breach thereof).

## I. DISCUSSION

**A.    Plaintiffs' Claim under RESPA is Subject to Dismissal For Failure to State a Claim upon which Relief can be Granted.**

In their first claim, Plaintiffs allege that Defendants, by conspiring to provide inflated appraisals, have violated RESPA.  Complaint at ¶ 81.  This claim fails as against eAppraiseIT because Plaintiffs do not allege any actionable conduct.

RESPA, in general, was enacted to govern real estate settlement procedures.  Here, Plaintiffs assert claims under two of RESPA's provisions.  First, Plaintiffs purport to invoke 12 U.S.C. § 2607(b), which prohibits fee-splitting.  This section provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).  As interpreted by the courts, section 2607(b) is intended to prohibit referral fee arrangements in the real estate settlement business.  The regulations accompanying subsection (b) emphasize that "[a] charge by a person for which no or nominal services are performed or for

MHA

cDonough Holland & Allen PC
Attorneys at Law

1    which duplicative fees are charged is an unearned fee and violates this section."  24 C.F.R.

2    § 3500.14(c).

3        A separate provision of RESPA specifically prohibits the payment of referrals (i.e.,

4    kickbacks) in connection with mortgage loans.  This section provides:

5        No person shall give and no person shall accept any fee, kickback, or thing of value
         pursuant to any agreement or understanding, oral or otherwise, that business incident
6        to or a part of a real estate settlement service involving a federally related mortgage
         loan shall be referred to any person.
7

8    12 U.S.C. § 2607(a).

9        Neither section nor its implementing regulation applies here.  In this case, Plaintiffs notably

10   do not allege that any kickbacks or referral fees are involved between the various parties.  Nor do

11   they allege that Defendants failed to perform any services whatsoever.  Indeed, Plaintiffs admit that

12   appraisals were conducted – they just disagree with their quality.  See Complaint at ¶ 68 ("Indeed,

13   EA and LSI were recognized, experienced appraisal companies who retained certified appraisers

14   who prepared reports that on the surface appeared to have all the earmarks of a legitimate,

15   independent, objective, unbiased, credible and lawful appraisal.")  Complaint at ¶ 81 ("the appraisals

16   Plaintiffs and the Class received were not worth the paper on which they were printed and were

17   otherwise valueless") and Complaint at ¶ 87 ("[Plaintiffs] instead unwittingly received biased

18   appraisals that were neither independent, objective or in compliance with legal and professional

19   standards.").

20       Although Plaintiffs dispute the quality of the appraisals, Plaintiffs are not contending that any

21   of the entities "kicked back" or otherwise shared fees in contravention of RESPA.  Moreover, the

22   remainder of Plaintiffs' allegations make it clear that this case is not one in which Defendants failed

23   to perform a contracted service.  Aggrieved borrowers who may be displeased with the quality of

24   services provided by those involved in obtaining a mortgage loan cannot invoke RESPA simply

25   because someone failed to perform up to par.  In fact, other courts have declined to allow RESPA

26   claims where the plaintiffs predicate their claims on services that were not performed faithfully or

27   accurately.  For example, in *Welch v. Centex Home Equity Co.*, 323 F.Supp.2d 1087 (D. Kan. 2004),

28   the plaintiff's ex-husband secured a note on her home by forging her name.  The plaintiff then filed

**M·H·A**
cDonough Holland & Allen pc
Attorneys at Law

suit against various entities and individuals involved with securing that note. She filed a claim under section 2607(b), claiming that the defendants violated RESPA by charging real estate settlement fees and expenses for services that were not performed in accordance with the seller's closing instructions. The court disagreed with the plaintiff's theory under RESPA and granted the defendants' dismissal motion:

> In this case, plaintiff's complaint contains no allegation that any of the defendants shared a portion, split, or percentage of any settlement charge. Plaintiff contends that defendants did not perform the closing services according to Centex's closing instructions, and that § 2607(b) prohibits charging fees for services that are not performed faithfully or accurately. Even if those allegations are true, however, § 2607(b) "prohibits only transactions in which the defendant shares a portion, split, or percentage of any charge with a third party," and in this case plaintiff's complaint contains no such allegation. Thus plaintiff's complaint fails to state a claim for a violation of RESPA § 2607(b), and defendants' motions to dismiss are granted with respect to that claim.

*Id.*, 323 F.Supp.2d at 1097-98 (internal citations omitted). The same analysis and reasoning apply here. Based on the allegations in the complaint, Plaintiffs have not alleged claims to bring themselves within the scope of RESPA. This claim should be dismissed.

**B.    Plaintiffs' State Law Claims Should be Dismissed on Preemption Grounds**

Plaintiffs' state law claims are preempted by a comprehensive scheme of federal law and regulations which exclusively govern the operations of savings and loan associations and institution-affiliated parties such as eAppraiseIT. See, e.g., Home Owners' Loan Act ("HOLA") 12 U.S.C. § 1461 *et seq.*; 12 C.F.R. Part 564.

**1.    HOLA Created a Pervasive Federal Regulatory Scheme Which Leaves No Room for State Regulation or Oversight**

Federal preemption of state law and regulation is assured wherever the state purports to "regulate[] in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108 (2000); *Bank of America v. City and County of San Francisco,* 309 F. 3d 551, 558 (9th Cir. 2002). The field of banking is one such area. *Bank of America,* 309 F. 3d at 558. Through the Home Owners' Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA"), Congress established a "significant federal presence," regulating all aspects of the operation of federal savings associations. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 144 (1982). "Congress delegated to


**MHA**
cDonough Holland & Allen PC
Attorneys at Law

1   the [Federal Home Loan Bank Board ("FHLBB"), now the OTS] broad authority to establish and

2   regulate 'a uniform system of [savings and loan] institutions where there are not any now,' and to

3   'establish them with the force of the government behind them, with a national charter.' . . . And the

4   [OTS] has exercised that discretion, regulating comprehensively the operations of these associations,

5   including their lending practices and, specifically, the terms of loan instruments." *Id*. at 166-167

6   (citation omitted).[3]  Given this pervasive "federal presence" in every aspect of the operation of

7   federal savings associations, it cannot be presumed that state laws purporting to regulate their

8   practices, including appraisal practices, are permissible.

9          In enacting HOLA, Congress intended to rectify the inadequacies of the existing state

10  systems.  In doing so, Congress clearly envisioned that "federal savings [associations] would be

11  governed by what the [OTS] -- not any particular State -- deemed to be the 'best practices.'" *de la*

12  *Cuesta,* 458 U.S. at 161 (citation omitted).  The statute makes clear that the OTS is empowered

13  "under such regulations as the Director may prescribe to provide for the organization, incorporation,

14  examination, operation and regulation of associations to be known as Federal savings associations."

15  12 U.S.C. §1464(a). To be sure, the broad language of the statute "expresses no limits on the [OTS']

16  authority to regulate the lending practices of federal savings and loans." *de la Cuesta*, 458 U.S. at

17  161 (confirming that Congress intended the OTS to have plenary and exclusive authority to regulate,

18  monitor, and examine federal savings associations from cradle to grave).

19         *de la Cuesta* is instructive.  There, the Supreme Court reviewed the presumptive effect of a

20  federal regulation concerning due-on-sale clauses in loans made by federal savings associations.

21  California had enacted a statute limiting the enforcement of due-on-sale clauses to those instances in

22  which the lender's security was impaired.  The Supreme Court, however, invalidated California's

23  law.  458 U.S. at 162.  Noting that the federal regulation's preemptive intent was clarified in the final

24  regulation's preamble, the Court found that it preempted conflicting state law.  Where Congress has

25  delegated discretionary power to an administrator, the preemptive power of the administrator's

26  / / /

---

[3]     The OTS is the successor to the FHLBB.  Except as otherwise noted, the FHLBB will be referred to hereinafter as the "OTS."



regulation is subject only to the scope of his statutory authority. In sum, the federal regulations have the same preemptive power of statute. *Id.*

HOLA, and particularly the broad language of section 5(a), establishes the OTS' unlimited authority to regulate all aspects of federal thrifts' lending operations. *See also* 12 U.S.C. § 1462a(b)(2); 12 U.S.C. § 1463(a)(2). Regulations issued pursuant to HOLA confirm the OTS's broad charter: "OTS hereby occupies *the entire field of lending* regulation for federal savings associations." 12 C.F.R. § 560.2(a) (emphasis added). As the Supreme Court observed, "'[it] would have been difficult for Congress to give the [OTS] a broader mandate.'" *de la Cuesta*, 458 U.S. at 161 (citations omitted). Consistent with congressional intent, "[t]his exercise of the [OTS'] authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association." 12 C.F.R. § 545.2 (emphasis added).[4] "Congress expressly contemplated, and approved, [OTS'] promulgation of regulations superseding state law." *de la Cuesta*, 458 U.S. at 162. Indeed, Courts have recognized the OTS' regulation of federal savings associations to be "so pervasive as to leave no room for state regulatory control" and that OTS regulations therefore preempt the field of regulation of federal savings banks. *See Flagg v. Yonkers Sav. & Loan Ass'n FA*, 396 F.3d 178, 183-184 (2nd Cir. 2005) (holding HOLA and OTS regulations preempt the field of regulation of mortgage escrow accounts held by federal savings associations); *State Farm Bank,*

---

[4] 12 C.F.R. § 560.2, "Applicability of law," provides:

(a) *Occupation of field.* Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or §560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

(b) *Illustrative examples.* Except as provided in §560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

*        *        *

(10) *Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages; . . .*

(emphasis added)

McDonough Holland & Allen PC
Attorneys at Law

*F.S.B. v. Burke*, Case No. 3:05CV808 (JBA), 2006 WL 1728919 (D. Conn. June 21, 2006) (enjoining Banking Commissioner of the State of Connecticut from directly or indirectly regulating the mortgage lending and deposit-related activities of State Farm Bank, F.S.B., or any exclusive agents of State Farm Bank).

>    **2.    FIRREA Extends the OTS' Pervasive Reach to Appraisal Programs and Institution-Affiliated Parties Such as eAppraiseIT**

With passage of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 3301 *et seq.*, in 1989, Congress amended HOLA and, among other things, expanded Federal oversight of savings and loan associations to include review and regulation of appraisal programs. Congress intended to provide:

>    protection for federal financial and public policy interests in real estate related transactions by requiring real estate appraisals used in connection with federally related transactions to be performed in writing, in accordance with uniform standards, by appraisers whose competency has been demonstrated and whose professional conduct will be subject to effective supervision.

12 C.F.R. § 564.1(b). Under FIRREA, the exclusive responsibility for examination of the real estate lending and appraisal programs implemented by federally regulated savings and loans falls to the OTS. *Id.*

Further to the broad authority granted it under Title XI of FIRREA, the OTS issued extensive regulations specifically addressing the composition and construction of appraisal programs undertaken by and for savings and loan associations. See 12 C.F.R. Part 564. The purpose and scope of the regulations was made clear:

>    Title XI provides protection for federal financial and public policy interests in real estate transactions by requiring real estate appraisals used in connection with federally related transaction to be performed in writing, in accordance with uniform standards, by appraisers whose competency has been demonstrated and whose professional conduct will be subject to effective supervision. *This part implements the requirements of title XI and applies to all federally related transactions entered into by the OTS or by institutions regulated by the OTS.*

12 CFR § 564.1(b) (emphasis added). Critically, the regulations extend not only to savings and loans, but also to *"institution-affiliated parties, including staff appraisers and fee appraisers." Id.* at § 564.7 (emphasis added). "Institution-affiliated parties" are defined under the Federal Deposit Insurance Act, 12 U.S.C. § 1813 to include to include independent contractors through whom the



1   thrift operates, including staff and fee appraisers. 12 U.S.C. § 1813(u)(4). Like the thrifts governed

2   by the OTS, appraisers and other institution-affiliated parties who violate Part 564 are subject to

3   various penalties contemplated by the regulations.

4        The OTS regulations in the field of appraisals are exhaustive. The regulations identify which

5   real estate-related financial transactions require the services of an appraiser; prescribe which

6   categories of federally related transactions shall be appraised by a state certified appraiser or a state

7   licensed appraiser; and prescribe minimum standards for the performance of real estate appraisals in

8   connection with federally related transactions under its jurisdiction. *See* 12 C.F.R. §§ 564.2(i)(1)-

9   (3), 564.3 and 564.4. [5]  Importantly, FIRREA and its accompanying regulations expressly limit the

10  state's role in the appraisal arena to supervising the professional conduct of individual appraisers.

11  See 12 U.S.C. §§ 3346-3348.  In 12 C.F.R. § 564.5, the OTS directly addresses and defines

12  "Appraiser independence" for both staff and fee appraisers.  The OTS and other Federal banking

13  regulators (including the OCC, the FDIC, and the Federal Reserve) have continued to issue specific

14  guidance to its regulated entities.  This guidance not only directly addresses the appraisal process for

15  federally regulated institutions and their institution-affiliated parties, it also identifies the manner in

16  which these entities must maintain appraisal independence.

17       The OTS necessarily occupies this field and must be left to enforce its rules.  As the nation's

18  largest savings and loan association, WaMu is regulated exclusively by OTS.  *See* 12 U.S.C.

19  § 1464(a).  By operation of federal statutes and regulations, eAppraiseIT, as an appraisal service

20  provider to WaMu, is an "institution-affiliated party" and thus subject with WaMu to the exclusive

21  jurisdiction of OTS.  *See* 12 U.S.C. § 1813(u); 12 C.F.R. § 564.7.  As such, it is for the OTS - and

22  OTS alone - to oversee WaMu's appraisal program and its relationships with appraisal service

23  providers.

24       It is not for the Plaintiffs or the laws of the state of California to either interpret or enforce

25  the OTS regulations.  Any effort to that end only serves to confuse the regulated and thwart the clear

26

27  _____
    [5]      The OCC, Federal Reserve and FDIC have all promulgated regulations pursuant to FIRREA identical to those
    issued by the OTS in 12 C.F.R. 564.1 – 564.6. *See* 12 C.F.R. 34.41 – 34.47 (OCC) ; 12 C.F.R. 225.61 – 225.67 (Federal
    Reserve); and 12 C.F.R. 323.1 – 323.7 (FDIC).

28



NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS        1094925v1 36887/0002

Congressional objective to assign exclusive responsibility for regulating thrifts and affiliated institutions to the OTS. Accordingly, Plaintiffs' state law claims should be dismissed.

### C.    Plaintiffs Have Failed to Adequately Allege their State Law Claims

Should the Court nevertheless consider Plaintiffs' state claims, it should independently dismiss each such claim due to Plaintiffs failure to plead their respective elements.

### 1.    Plaintiffs' Claims Under Business and Professions Code Section 17200 Must Be Dismissed Because Plaintiffs Do Not Having Standing.

In claims two through four, Plaintiffs allege three separate theories under Business and Professions Code § 17200 for unfair, unlawful, and fraudulent business practices. Each of these claims must fail because Plaintiffs lack standing to assert claims under this section.

In 2004, California's unfair competition law was amended to impose a specific standing requirement. Now, to maintain a claim under section 17200, a plaintiff must show that he or she has "suffered injury in fact and has lost money or property as a result of such unfair competition." Bus. & Prof. Code § 17204 (emphasis added). In order to meet this standing requirement, a plaintiff must allege (1) that money was expended by the plaintiff due to the defendant's acts of unfair competition; (2) that money or property was lost or suffered a diminution in value; or (3) that plaintiff was denied money to which plaintiff had a cognizable claim. *Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 802 (2006); *accord, Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 716 (2007). This standing requirement applies to all three of Plaintiffs' claims under section 17200.

Plaintiffs do not allege that they have suffered any monetary losses or that they have been deprived of any interest in property, simply because they cannot. There is no nexus claimed between the alleged "arrangement" and damage to WaMu borrowers. *See*, e.g., Complaint at ¶¶8, 61, 66. Plaintiffs sought and obtained financing from defendant WaMu. They used this financing to purchase homes. In connection with this financing, eAppraiseIT provided appraisal services. Further, Plaintiffs do not allege that they paid excessive fees to any of the Defendants for the appraisal (or for any other service). Nor do they charge that they have suffered any other form of harm as a result of the Defendants' alleged wrongdoing.

NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS    1094925v1 36887/0002

McDonough Holland & Allen PC
Attorneys at Law

1    Instead, they focus on the money that Defendants allegedly have made and request restitution

2    as a remedy.  For example, Plaintiffs allege, in claims three and four, that "through their unfair acts

3    and practices, Defendants have obtained, and continue to unfairly obtain, money from members of

4    the Class.  As such, Plaintiffs request that this Court cause Defendants to restore this money to

5    Plaintiffs and all Class members."  Complaint at ¶ 103, 109.  The complaint contains no allegation

6    that <u>Plaintiffs</u> have suffered an "injury in fact" or that they have lost money or property as a result of

7    the allegedly unfair, unlawful, or fraudulent practices.  For this reason, Plaintiffs are not entitled to

8    relief under section 17200, and claims two through four should be dismissed.

9    **2.    Plaintiffs' Claim Under the CLRA Must be Dismissed.**

10    In their fifth claim, Plaintiffs allege a claim under the California Consumer Legal Remedies

11    Act ("CLRA").  This statute protects consumers against a variety of unfair and deceptive business

12    practices pertaining to "goods" and "services."

13
**a.    Plaintiffs' CLRA Claim Must be Dismissed Because Appraisals Do Not Qualify as "Goods" or "Services."**
14

15    In order to invoke this statute, Plaintiffs must establish that they purchased "goods" or

16    "services."  The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for

17    personal, family, or household purposes, … including goods which, at the time of the sale or

18    subsequently, are to be so affixed to real property as to become part of real property, whether or not

19    severable therefrom."  Cal. Civil Code § 1761(a).  "Services" are defined as "work, labor, and

20    services for other than a commercial or business use, including services furnished in connection with

21    the sale or repair of goods."  Cal. Civil Code § 1761(b).

22    In this case, appraisals plainly do not qualify as "goods."  They are not tangible chattels.

23    Under recent case law (involving some of the same parties), appraisals do not qualify as "services,"

24    either.  In *McKell v. Washington Mutual*, 142 Cal.App.4th 1457 (2006), borrowers filed a class

25    action against Washington Mutual based on fee mark-ups.  Plaintiffs specifically alleged that

26    Washington Mutual overcharged them for underwriting, tax services, and wire transfer fees in

27    conjunction with home loans.  Based on those allegations, Plaintiffs pleaded statutory claims under

28    RESPA, CLRA, and Business and Professions Code § 17200 as well as various common law

**MHA**
cDonough Holland & Allen PC
Attorneys at Law

NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS                    1094925v1 36887/0002

theories. The trial court sustained a demurrer on the CLRA claim with prejudice, based on the fact

that no "goods" or "services" were involved. The court specifically held:

> Plaintiffs cite no authority or make no argument demonstrating the Washington Mutual's actions were undertaken "in a transaction intended to result or which results in the sale or lease of goods or services." (Cal. Civ. Code § 1770, subd. (a)) Rather, its actions were undertaken in transactions resulting in the sale of real property. The CLRA thus is inapplicable and plaintiffs have demonstrated no error in the trial court's sustaining of defendants' demurrer without leave to amend as to their CLRA cause of action.

142 Cal.App.4th at 1488. The same result is compelled here. As in *McKell*, the actions taken here –

specifically, the appraisal services – were provided in connection with a transaction resulting in the

sale of real property. The exact same transaction is at issue here. Both Plaintiffs were purchasing

real property and obtained home loans from WaMu. The appraisal is incident to that transaction and

does not qualify as "services" within the meaning of the CLRA.

Moreover, the statutory definition of "services" excludes those for "commercial or business

use." Cal. Civil Code § 1761(b). Under California law, appraisals are conducted for the benefit of

the lender in order to protect the lender's security interest. *See Nymark v. Heart Fed. Savings &

Loan Assn.*, 231 Cal.App.3d 1089, 1096-97 (1991). As the Court noted in *Nymark*, "the purpose of

[an] appraisal [is] to protect the [lender's] interest by satisfying it that plaintiff's property provided

adequate security for the loan." *Id*. at 1099. And as Plaintiffs allege in the Complaint, a lender's

interest in obtaining appraisals in connection with its home lending business is purely commercial

and business driven in that it relates directly to the pooling of mortgages and sale of mortgage

backed securities. *See*, e.g., Complaint at ¶¶ 22-23.

Plaintiffs plainly recognize that WaMu is in the business of loaning money and that, as set

forth in the appraisal attached to the Complaint as Exhibit A, the "Intended Use" of the appraisal is

"for the lender/client [WaMu] to evaluate the property that is the subject of this appraisal to the

mortgage finance transaction" to ensure that its loan is sufficiently collateralized. Complaint at ¶ 12;

Ex. B. As a result, the appraisals in question are plainly a commercial use and therefore outside the

scope of the CLRA.

The post-*McKell* decisions from this district taking issue with its holding are distinguishable

from the instant action and should not be followed here. In both cases, the court refused to dismiss

1    CLRA claims arising out of mortgage loans where the plaintiffs' allegations addressed actions other

2    than the underlying extension of credit.  *See Hernandez v. Hilltop Financial Mortgage, Inc.*, 2007

3    WL 3101250, *6 (N.D.Cal. Oct. 22, 2007) ("plaintiffs did not seek just a loan; they sought

4    defendants' services in developing an acceptable refinancing plan by which they could remain in

5    possession of their home"); *Jefferson v. Chase Home Finance* LLC, No. C06-6510, 2007 WL

6    1302984, at *3 (N.D.Cal. May 3, 2007) (CLRA claim based on defendants' mortgage prepayment

7    services, not extension of credit).

8              **b.      Plaintiffs' CLRA Claim Must be Dismissed Due to the Absence of
                          Allegations of Damages**

9

10            "Relief under the CLRA is specifically limited to those who suffer damage, making causation

11   a necessary element of proof."  *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 754

12   (2003).  Even if Plaintiffs could establish that they bought appraisals from eAppraiseIT and that

13   eAppraiseIT failed to disclose that the third-party appraisals were not "credible, independent,

14   unbiased and performed in compliance with USPAP standards," Plaintiffs have not alleged that this

15   omission caused them damage.  Plaintiffs do not allege that the appraisals improperly inflated the

16   values of their properties.  They do not allege that they would not have gone forward with their

17   transactions had they been aware of the details of the relationships among the Defendants.  They do

18   not allege any type of monetary loss.  In light of the heightened pleading requirements for a CLRA

19   claim, Plaintiffs have not provided the necessary allegation of damages attributable to eAppraiseIT's

20   actions.

21            **c.      Plaintiffs' CLRA Claim Must Be Dismissed Because Plaintiffs
                        Failed to File the Venue Affidavit as Required by Civil Code
                        § 1780(c).**

22

23            Even if appraisals could qualify as a "service," the CLRA claim is still subject to dismissal.

24   Plaintiffs who allege claims under the CLRA must file the action in one of the following locations:

25   (1) the county in which the defendant resides; (2) the county in which the defendant has its principal

26   place of business or is doing business; or (3) the county where the transaction or any substantial

27   portion of the transaction occurred.  Cal. Civil Code § 1780(c).  At the time the complaint is filed,

28   the plaintiff is required to file an affidavit stating facts showing that the action has been commenced

MHA
cDonough Holland & Allen PC
Attorneys at Law

1  in a county that meets one of these requirements.  Cal. Civil Code § 1780(c).  If a plaintiff fails to

2  file the required affidavit, the court must, on its own motion or on the motion of any party, dismiss

3  the action.  Civil Code § 1780(c).

4      In this case, Plaintiffs have failed to file the requisite venue affidavit.  As a result, this claim

5  is subject to dismissal.  Indeed, even absent a motion, the Court would be statutorily obligated to

6  dismiss this claim.  Cal. Civil Code § 1780.

7           **3.    Plaintiff's Breach of Contract Claim is Subject to Dismissal.**

8      In their sixth claim, Plaintiffs allege breach of contract against all Defendants.  To state a

9  cause of action for breach of contract, the plaintiff must allege each of the following elements:

10 (1) existence of the contract; (2) performance by the plaintiff or excuse for nonperformance;

11 (3) breach by the defendant; and (4) damages.  *Arikat v. JP Morgan Chase & Co.*, 430 F.Supp.2d

12 1013, 1021 (N.D.Cal. 2006), citing *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731,

13 745 (2001).  Plaintiffs' have not satisfied their pleading burden and their contract claim therefore

14 fails.

15          **a.    Plaintiffs Do Not Alleged the Existence of a Contract with eAppraiseIT**

16

17     Plaintiffs plainly do not explain the nature of their "contract[s]" (if any) with eAppraiseIT.  In

18 fact, Plaintiffs allegations negate the existence of any such contracts.  Specifically, Plaintiffs allege

19 that they "took out a WaMu home loan with WaMu."  Complaint at ¶ 120.  Plaintiffs further allege

20 that "WaMu … procure[d] appraisals from eAppraiseIT and/or LSI for the homes that were the

21 subject of Plaintiffs' … WaMu loans."  *Id*.  Plaintiffs plainly allege the existence of a contract with

22 WaMu and a business relationship between WaMu and eAppraiseIT.  However, Plaintiffs do not

23 (and cannot) allege that they contracted with eAppraiseIT for any services.  As reflected in the

24 Complaint, Plaintiffs' only contracts are with WaMu, and eAppraiseIT was indisputably not a party

25 to those agreements.  Any alleged deficiencies in eAppraiseIT's performance in connection with its

26 business relationship with WaMu do not give rise to the breach of contract claim Plaintiffs assert.

27 / / /

28 / / /

MHA
cDonough Holland & Allen PC
Attorneys at Law

NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS          1094925v1 36887/0002

1

### b.     Plaintiffs Do Not Allege the Nature or Terms of their Contracts.

2

Second, the complaint is equally uncertain with respect to the nature of the alleged contracts.

3

In this case, it is impossible to determine the nature of the alleged contracts and whether they are

4

oral, written, or implied from conduct.  Plaintiffs appear to allege that Defendants collectively owe

5

contractual obligations arising out various documents, including "Settlement Statements," "loan

6

documents," "contracts," and "appraisal reports."  From these vague allegations, however, it is

7

impossible to determine which of these documents – in Plaintiffs' view – gives rise to enforceable

8

contractual obligations specifically enforceable against eAppraiseIT.

9

Independently, the claim fails because Plaintiffs do not allege the terms of their contracts.

10

When suing on a written contract, the plaintiff has several choices as to how to allege the contract's

11

terms, none of which Plaintiffs utilize here.  The plaintiff can quote the essential provisions, set them

12

out in *haec verba*, or attach them as an exhibit and incorporate them by reference.  *See* 4 C. Wright

13

& A. Miller, Federal Practice and Procedure, § 1235 (3rd Ed. 2004) ("plaintiff may set it forth

14

verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect.")

15

*Otworth v. Southern Pacific Transportation Co.*, 166 Cal.App.3d 452, 459 (1985) ("If the action is

16

based on an alleged breach of a written contract, the terms must be set out verbatim in the body of

17

the complaint or a copy of the written instrument must be attached and incorporated by reference.").

18

*See also Harris v. Rudin, Richman, & Appel*, 74 Cal.App.4th 299, 307 (1999) (same).  In this case,

19

Plaintiffs have not satisfied <u>any</u> of these requirements.  Plaintiffs do not quote the contracts, plead

20

the terms out in haec verba, attach the contracts to the pleading, or allege the substance of the

21

contract's terms.  Their allegations say nothing about the specific contractual obligations owing,

22

much less identify which parties engaged in the allegedly wrongful conduct.

23

The documents Plaintiffs attach to the complaint do not cure these deficiencies.  Most

24

importantly, none of these documents qualifies as a "contract" between Plaintiffs and eAppraiseIT.

25

Instead, Exhibit 1 is a HUD Settlement Statement, which does not even identify eAppraiseIT, much

26

less set forth any contractual obligations owing to Plaintiffs.  Exhibit 2 is an appraisal report, which

27

was procured by WaMu through the auspices of eAppraiseIT.  It is unclear how this appraisal report

28

/ / /



16

1  gives rise to any contract between eAppraiseIT and Plaintiffs.  At bottom, the failure to properly

2  allege the terms of the contract subjects this claim to dismissal.

3  **c.      Plaintiffs Do Not Allege Damages**

4  Plaintiffs assert that they "suffered damages, including economic losses" as a result of

5  "Defendants" breach of contract.  Once again, however, taking the Complaint's allegations as a

6  whole, it is entirely unclear how Plaintiffs' have been damaged.  The Complaint is devoid of any

7  suggestion of a nexus between the alleged wrongdoing and actual harm to the Plaintiffs.  This

8  deficiency presents an independent basis for dismissal of Plaintiffs' breach of contract claim.  *See*

9  *Dorian v. Harich Tahoe Development,* Nos. C-94-3387 (DLJ), 1996 WL 925859, at *6 (N.D.Cal.

10  Jan. 16, 1996) ("conclusory assertion that [plaintiffs] incurred $700,000,000 worth of damages '[b]y

11  reason of defendants' breach of contract'" insufficient" to allege damages).

12  **4.      Plaintiffs' Quasi-Contract/Unjust Enrichment Claim is Subject to Dismissal.**

13

14  In their seventh cause of actions, Plaintiffs seek recovery under a quasi-contract and/or unjust

15  enrichment theory.  This claim is equally as ambiguous as Plaintiffs' contract claim and must

16  likewise be dismissed.  Throughout the allegations relating to this claim, Plaintiffs repeatedly refer to

17  "Defendants" collectively and do not specify which Defendants engaged in which allegedly unlawful

18  actions.  This form of group pleading is plainly insufficient to state a claim.  To the extent Plaintiffs

19  purport to state a claim for "unjust enrichment" in Count VII, such a claim is also deficient.  As the

20  Northern District has recognized, a claim of unjust enrichment is not an independent cause of action.

21  *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,* 403 F.Supp.2d 968, 976 (N.D. Cal. 2005)

22  ("unjust enrichment is not a valid cause of action in California"), following *McBride v. Boughton*,

23  123 Cal.App.4th 379, 387 (2004) ("Unjust enrichment is not a cause of action, however, or even a

24  remedy, but rather 'a general principle, underlying various legal doctrines and remedies.'"); *McKell*

25  *v. Washington Mutual*, 142 Cal.App.4th 1457, 1490 (2006).  For those reasons, this claim must be

26  dismissed.

27  / / /

28  / / /




cDonough Holland & Allen PC
Attorneys at Law

NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS          1094925v1 36887/0002

## II. CONCLUSION

In conclusion, eAppraiseIT requests that the Court dismiss the complaint in its entirety. Plaintiffs allege no actionable conduct under RESPA, which was enacted to prohibit kickbacks and improper referral fees in the real estate industry. In this case, Plaintiffs do not and cannot allege any such practices occurred. Plaintiffs' state law claims are preempted by a comprehensive scheme of federal law and regulation which exclusively governs the operations of savings and loan associations, and institution-affiliated parties such as eAppraiseIT. Independently, with regard to their claims under Business and Professions Code § 17200, Plaintiffs do not allege the requisite injury in fact necessary under section 17204. There are no allegations that Plaintiffs have suffered any loss or damage to property as a result of the allegedly wrongful actions. As for the CLRA claim, appraisals do not qualify as "goods" or "services" within the meaning of that statute. In any event, Plaintiffs have indisputably failed to file an affidavit regarding proper venue – a statutory prerequisite to filing suit. The breach of contract claim fails for the simple reason that there was no contract between Plaintiffs and eAppraiseIT. Plaintiffs' allegations fail to identify contractual obligations specifically enforceable against eAppraiseIT. The "quasi-contract/unjust enrichment" theory fails for the same reasons.

DATED:  May 2, 2008.

THACHER PROFFITT & WOOD LLP
RICHARD F. HANS
PATRICK J. SMITH
JEFFREY D. ROTENBERG

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law

By: _____ */s/ Laura J. Fowler*_____
                    LAURA J. FOWLER

*Attorneys for Defendant eAppraiseIT, LLC*

NOTICE OF MOTION; MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS          1094925v1 36887/0002

1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  MICHAEL T. FOGARTY (#065809)
   LAURA J. FOWLER (#186097)
3  555 Capitol Mall, 9th Floor
   Sacramento, CA  95814
4  Phone: 916.444.3900
   Fax:    916.444.3249
5
   THACHER PROFFITT & WOOD LLP
6  RICHARD F HANS (*Pro Hac Vice*, SBN 2593200NY)
   PATRICK J SMITH (*Pro Hac Vice*, SBN 2402394NY)
7  JEFFREY D. ROTENBERG (*Pro Hac Vice*, SBN 3984994NY)
   Two World Financial Center
8  New York, NY  10281
   Phone: 212.912.7400
9  Fax:    212.912.7751

10  Attorneys for Defendant eAppraiseIT, LLC

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

14  FELTON A. SPEARS, JR. and SIDNEY        )   CASE NO.:  5:08-CV-00868 HRL
    SCHOLL, on behalf of themselves and all )
15  others similarly situated,              )   CLASS ACTION
                                            )
16                          Plaintiffs,     )   [PROPOSED] ORDER GRANTING
                                            )   DEFENDANT EAPPRAISEIT, LLC'S
17        v.                                )   MOTION TO DISMISS
                                            )
18  WASHINGTON MUTUAL, INC., a              )
    Washington corporation; FIRST AMERICAN  )   Date:    Tuesday, July 15, 2008
19  EAPPRAISEIT, a Delaware corporation; and )  Time:    10:00 a.m.
    LENDER'S SERVICE, INC.,                 )   Place:   Courtroom 2, 5th Floor
20                                          )            280 South 1st Street
                            Defendants.     )            San Jose, CA 95113
21                                          )
                                            )
22  _____)  Honorable Howard R. Lloyd

23

24        This matter came before the Court on Defendant eAppraiseIT, LLC's (erroneously sued

25  herein as First American eAppraiseIT) ("eAppaiseIT") Motion to Dismiss Plaintiffs' First Amended

26  Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

27        In its motion to dismiss, eAppraiseIT has demonstrated that Plaintiffs have failed to state a

28  claim upon which relief can be granted.  Specifically, Count I of the Complaint fails to state a claim

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

1  under the Real Estate Settlement Procedures Act.  Counts II through VII of the Complaint, which

2  assert California statutory and common law claims, are preempted by federal law.

3        Independently, Plaintiffs have failed to adequately allege violations of Section 17200 of the

4  California Business and Professions Code (Counts II-IV) and the California Consumer Legal

5  Remedies Act (Count V).  In addition, Plaintiffs, as a matter of law, have not stated a breach of

6  contract claim (Count VI) or a quasi-contract/unjust enrichment claim (Count VII) against

7  eAppaiseIT.

8        As good cause exists,

9        IT IS HEREBY ORDERED THAT this motion is GRANTED and the Complaint is

10  dismissed with prejudice and without leave to amend.

11

12  Dated:_____          _____

13                                          HON. HOWARD R. LLOYD
                                           United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

| | |
|---|---|
| CASE TITLE: | *Felton A. Spears, Jr., et al. v. Washington Mutual Inc., et al.* |

COURT/CASE NO:    U.S.D.C., Northern Dist., San Jose Div., Case No. 5:08-cv-00868 (HRL)

### PROOF OF SERVICE

I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th Floor, Sacramento, California 95814.  I am over the age of eighteen years and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On May 2, 2008, I served the within:

1.    **NOTICE OF MOTION; MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

2.    **[PROPOSED] ORDER GRANTING DEFENDANT EAPPRAISEIT, LLC'S MOTION TO DISMISS**

[X]    **by mail** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below.  At McDonough Holland & Allen PC, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California.

[ ]    **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below.

[ ]    **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

[ ]    **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to the following party(ies) at the facsimile number(s) indicated:

| | |
|---|---|
| Jonathan M Lloyd | Attorneys *Pro Hac Vice* for Defendant |
| Davis Wright Tremaine LLP | Washington Mutual, Inc. |
| 1201 Third Avenue, Suite 2200 | |
| Seattle, WA  98101-3045 | |
| Ph:   206-622-3150 | |
| Fax: 206-757-7700 | |

1 | Kris H. Man                                    Attorneys for Defendant
  | Dewey & Leboeuf LLP                            Lender Service, Inc.
2 | One Embarcadero Center, Suite 400
  | San Francisco, CA 94111-3619
3 | Ph:   415-951-1100
  | Fax:  415-951-1180
4 |
  | Jeffrey D. Rotenberg                           Attorneys *Pro Hac Vice* for Defendant
5 | Kerry Ford Cunningham                          First American eAppraiseIT
  | Patrick J. Smith
6 | Richard F Hans
  | Thacher Proffitt & Wood LLP
7 | Two World Financial Center
  | New York, NY 10281
8 | Ph:   212-912-7400
  | Fax:  212-912-7751
9 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 2, 2008, at Sacramento, California.

                                        /s/ Elizabeth P. Kastern
                                        ELIZABETH P. KASTERN

1090823v1 36887/0002

**MHA**
McDonough Holland & Allen PC
Attorneys at Law