Stephen M. Rummage, *pro hac vice*
Jonathan M. Lloyd, *pro hac vice*
Martin Fineman (Cal. Bar No. 104413)
Sam N. Dawood (Cal. Bar No. 178862)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: martinfineman@dwt.com
         samdawood@dwt.com

Attorneys for Defendant Washington Mutual Bank

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

| | |
|---|---|
| SIDNEY SCHOLL and FELTON A. SPEARS, JR., on behalf of themselves and all others similarly situated, ) ) ) | Case No. 5:08-cv-00868 (HRL) |
| Plaintiffs, ) ) ) | CLASS ACTION |
| v. ) ) ) | **DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| WASHINGTON MUTUAL, INC., a Washington corporation; WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK); FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC., ) ) ) ) ) | |
| Defendants. ) ) ) ) ) | Date: Tuesday, July 15, 2008 Time: 10:00 a.m. Department: SJ, Courtroom 2, 5th Floor |

DAVIS WRIGHT TREMAINE LLP

1

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND.................................................................................... 2

III.  STATEMENT OF ISSUES ...................................................................................... 4

IV.   ARGUMENT AND AUTHORITY........................................................................... 4

      A.    Plaintiffs' RESPA Claim Does Not State a Claim against WMB. ........................... 5

            1.    Plaintiffs Cannot Assert a Claim against WMB under Section 8(a) of
                  RESPA. ............................................................................................................. 6

            2.    Plaintiffs Cannot Assert a Claim against WMB under Section 8(b) of
                  RESPA. ............................................................................................................. 9

      B.    Plaintiffs Have Not Stated any Claims under State Law. ........................................ 12

            1.    Federal Law Preempts Plaintiffs' State Law Claims. ................................... 12

            2.    Even If They Were Not Preempted, Plaintiffs' UCL, CLRA, Breach Of
                  Contract and Unjust Enrichment Claims Fail as a Matter of State Law. ...... 17

V.    CONCLUSION ...................................................................................................... 25

DAVIS WRIGHT TREMAINE LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*Anunziato v. eMachines, Inc.,*
   402 F. Supp. 2d 1133 (C.D.Cal. 2005) ..................................................................... 19

4

5

*Augustine v. FIA Credit Servs., N.A.,*
   485 F. Supp. 2d 1172 (E.D.Cal. 2007) ..................................................................... 20

6

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1990) ..................................................................................... 4

7

8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. _ , 127 S. Ct. 1955 (2007) ......................................................................... 5

9

*Berry v. Am. Express Publishing, Inc.,*
   147 Cal.App.4th 224 (2007) ..................................................................................... 20

10

*Boulware v. Crossland Mortgage Corp.,*
   291 F.3d 261 (4th Cir. 2002) .................................................................................. 6,10

11

12

*Boursiquot v. Citibank F.S.B.,*
   323 F. Supp. 2d 350 (D.Conn. 2004) .................................................................... 16,17

13

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ....................................................................................... 2

14

15

*Buckland v. Threshold Enterprises, Ltd.,*
   155 Cal.App.4th 798 (2007) ..................................................................................... 18

16

*Cal. Medical Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,*
   94 Cal.App.4th 151 (2001) ....................................................................................... 25

17

18

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D.Cal. 2007) .................................................................... 18,19

19

*Chaires v. Chevy Chase Bank, F.S.B.,*
   748 A.2d 34 (Md.App. 2000) ................................................................................... 16

20

*Chamberlan v. Ford Motor Co.,*
   369 F. Supp. 2d 1138 (N.D.Cal. 2005) .................................................................. 20,22

21

22

*Cohen v. JP Morgan Chase & Co.,*
   498 F.3d 111 (2nd Cir. 2007) ............................................................................... 11,12

23

*Corbett v. Hayward Dodge, Inc.,*
   119 Cal.App.4th 915 (2004) ..................................................................................... 21

24

25

*Falk v. General Motors Corp.,*
   496 F. Supp. 2d 1088 (N.D.Cal. 2007) .................................................................. 22,25

26

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
   458 U.S. 141 (1982) ................................................................................................. 13

27

28

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

*Friends of Yosemite Valley v. Norton*,
    348 F.3d 789, 796 (9th Cir. 2003) ...................................................11

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988) ...........................................22

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
    926 F. Supp. 948 (S.D. Cal. 1996) .............................................22

*Geraci v. Homestreet Bank*,
    347 F.3d 749 (2003) ...........................................................10,11

*Haehl v. Washington Mut. Bank, F.A.*,
    277 F. Supp. 2d 933 (S.D.Ind. 2003) ...................................15,16

*Hall v. Time, Inc.*,
    158 Cal.App.4th 847 (Jan. 7, 2008) ............................................19

*Haug v. Bank of America, N.A.*,
    317 F.3d 832 (8th Cir. 2003) .......................................................10

*Hernandez v. Hilltop Financial Mortgage, Inc.*,
    2007 WL 3101250 (N.D.Cal. Oct. 22, 2007) ..............................21

*Jefferson v. Chase Home Finance LLC*,
    No. C06-6510, 2007 WL 1302984 (N.D.Cal. May 3, 2007) ........21

*Kagan v. Gibraltar Savs. & Loan Ass'n*,
    35 Cal.3d 582 (1984) ..................................................................21

*Knox v. Ameriquest Mortgage Co.*,
    No. C05-00240, 2005 WL 1910927 (N.D.Cal. Aug. 10, 2005) ......21

*Kruse v. Wells Fargo Home Mortgage, Inc.*,
    383 F.3d 49 (2d Cir. 2004) .........................................................10

*Krzalic v. Republic Title Co.*,
    314 F.3d 875 (7th Cir. 2002) .......................................................10

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D.Cal. 2005) ........................................19

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .........................................................2

*Leonard v. Northwest Airlines, Inc.*,
    605 N.W.2d 425 (Minn. Ct. App. 2000)......................................12

*Lopez v. World Sav. & Loan Assn.*,
    105 Cal.App.4th 729 (Cal. Ct. App. 2003)..................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .....................................................................18

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ......................................................18

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

*McKell v. Washington Mut., Inc.*,
    142 Cal.App.4th 1457 (2006) .................................................................... 21,23,24

*Melchior v. New Line Productions, Inc.*,
    106 Cal.App.4th 779 (2003) ............................................................................ 25

*Monroig v. Washington Mut. Bank, FA*,
    19 A.D.3d 563 (2005) ...................................................................................... 15

*Moskowitz v. Washington Mut. Bank, F.A.*,
    768 N.E.2d 262 (Ill. App. 2002) ............................................................... 12,16,17

*North Star Int'l v. Arizona Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) ............................................................................. 4

*Nymark v. Heart Fed. Sav. & Loan Ass'n*,
    231 Cal.App.3d 1089, 1096 (1991) .................................................................. 12

*O'Brien v. Camisasca Automotive Manufacturing, Inc.*,
    73 Cal.Rptr.3d 911 (Mar. 27, 2008) ................................................................ 19

*Parrish v. Nat. Football League Players Ass'n*,
    534 F. Supp. 2d 1081 (N.D.Cal. 2007) ............................................................ 24

*People ex rel. Lockyer v. Brar*,
    115 Cal.App.4th 1315 (2004) .......................................................................... 18

*Pfizer, Inc. v. Superior Court*,
    146 P.3d 1250 (2006) ...................................................................................... 19

*Prince-Servance v. BankUnited, FSB*,
    No. 07 C 1259, 2007 WL 3254432 (N.D.Ill. Nov. 1, 2007)............................... 15

*Roe v. Unocal Corp.*,
    70 F. Supp. 2d 1073 (C.D. Cal. 1999) ............................................................... 4

*Santiago v. GMAC Mortgage Group, Inc.*,
    417 F.3d 384 (3rd Cir. 2005) .......................................................................... 10

*Schuetz v. Banc One Mortgage Corp.*,
    292 F.3d 1004 (9th Cir. 2002) ........................................................................... 6

*Silvas v. E\*Trade Mortgage Corp.*,
    514 F.3d 1001 (Jan. 30, 2008) ............................................................... 14,15,16,17

*Sosa v. Chase Manhattan Mortgage Corp.*,
    348 F.3d 979 (11th Cir. 2003) ........................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007).................................................................................... 2

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*,
    594 F.2d 730 (9th Cir. 1979) .......................................................................... 18

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

*Van Slyke v. Capital One Bank*,
    503 F. Supp. 2d 1353 (N.D.Cal. 2007) ................................................................20,21

*Washington Mut. Bank, FA v. Superior Court*,
    95 Cal.App.4th 606 (2002) ................................................................12,15

*Wilens v. TD Waterhouse Group, Inc.*,
    120 Cal.App.4th 746 (2003) ................................................................22

## STATUTES AND REGULATIONS AND RULES

12 U.S.C. § 1464 ................................................................13

12 U.S.C. § 2601 ................................................................5,6

12 U.S.C. § 2607 ................................................................5,6,9,10

12 U.S.C. § 2614 ................................................................5

28 U.S.C. § 1332(d)(2) ................................................................12

12 C.F.R. § 560.2 ................................................................14,15,16,17

12 C.F.R. § 564.4 ................................................................3

12 C.F.R. § 564.5 ................................................................3,8,9

24 C.F.R. § 3500.14 ................................................................6,7,8,9

Cal. Bus. & Prof. Code § 17204 ................................................................18

Cal. Civ. Code § 1770(a) ................................................................20

Cal. Civ. Code § 1780(c) ................................................................20

Cal. Civ. Code § 1761(b) ................................................................21

Fed. R Civ. P. 12(b)(1) ................................................................18

Fed. R Civ. P. 12(b)(6) ................................................................2, 4

Fed. R. Civ. P. 9(b) ................................................................20

## AGENCY INTERPRETATIONS

61 Fed. Reg. 50951 (Sept. 30, 1996) ................................................................14

*Frequently Asked Questions on the Appraisal Regulations and the Interagency Statement
    on Independent Appraisal and Evaluation Functions* (March 22, 2005) ................................................................8

Interagency Statement, *Independent Appraisal and Evaluation Functions* (Oct. 28, 2003) ................................................................8

OTS Letter P-99-3 (Mar. 10, 1999) ................................................................14,16

v

OTS Letter P-2006-2 (Mar. 7, 2006) ............................................................................................14

**OTHER AUTHORITIES**

Daniel Schwarcz, *Beyond Disclosure: The Case For Banning Contingent Commissions*, 25
    Yale L. & Pol'y Rev. 289 (2007) .......................................................................................7

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

## I.    INTRODUCTION

Plaintiffs' First Amended Complaint (the "Complaint") amounts to a cynical, opportunistic attempt to profit from the subprime crisis by borrowers who cannot plausibly claim any harm arising out of their loan transactions with Washington Mutual Bank ("WMB").  Plaintiffs have collected factual allegations from the press and borrowed core assertions from a highly publicized complaint that the New York Attorney General filed against First American eAppraiseIT ("EA"). From these, they have cobbled together a series of claims about appraisals on WMB loans, labeled as seven different causes of action.  WMB disputes the accuracy of Plaintiffs' factual allegations. But even if one takes their version of the facts as true, Plaintiffs' non-specific allegations of appraisal malpractice – which do not even assert that the appraisals incorrectly valued Plaintiffs' properties – do not state federal or state claims against WMB, for the following reasons:

*First*, the federal Real Estate Settlement Procedures Act ("RESPA") does not provide a cause of action for an alleged lack of appraisal independence.  Plaintiffs cannot assert a claim under Section 8(a) of RESPA because appraisals that lenders order in connection with loan transactions do not involve a "referral" of settlement services to borrowers, as required to assert a claim under Section 8(a).  Nor have Plaintiffs stated a claim under RESAP Section 8(b).  Even the most liberal interpretation of Section 8(b) requires that they allege either a split of a settlement fee, a markup of a fee, or payment for a service that was not provided at all.  They have not done so.

*Second*, Plaintiffs' state law claims fall short on both federal law and state law grounds. Acting pursuant to an express Congressional grant of authority, the federal Office of Thrift Supervision ("OTS") has by regulation preempted state statutory and common law claims that purport to regulate a federal savings association's activities in originating real estate secured loans. For that reason, federal law preempts and requires dismissal of Plaintiffs' state law claims against WMB.  Even if their state law claims were not preempted, Plaintiffs have not satisfied, and could not satisfy, the pleading requirements for those claims.  Plaintiffs do not have standing to assert UCL claims because they have not alleged that they suffered damages as a result of WMB's actions.  Their CLRA claim falls short because (a) mortgage loans do not fall within the CLRA; (b) Plaintiffs have not alleged a representation or omission; and (c) Plaintiffs have not alleged

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)                                    DWT 11010663v3 0013149-000099

damages.  Plaintiffs' breach of contract claim fails because they have not identified any contractual promise that WMB violated.  And California law does not recognize a distinct unjust enrichment claim.

## II.    FACTUAL BACKGROUND

Plaintiffs Sidney Scholl and Felton Spears obtained real estate secured loans from WMB.  Complaint, ¶¶ 58, 63.  To verify the value of the properties that Scholl and Spears offered as security, WMB ordered and obtained appraisals and charged Scholl and Spears appraisal fees as a cost of originating their loans.  Complaint, ¶¶ 59, 64.  WMB obtained these appraisals through EA, a third-party appraisal management company to whom WMB outsourced some appraisal functions beginning in 2006.  Complaint, ¶¶ 33, 35, 59, 64.  (Although Scholl and Spears also have sued Lender's Service, Inc. ("LSI"), another appraisal management company, neither Plaintiff's appraisal appears to have been performed by an appraiser contracted through LSI.)

Plaintiffs' transactions with WMB were for mortgage loans, not appraisals.  As to Ms. Scholl, the transaction documents show that on or about September 9, 2006, she and two co-investors signed a real estate purchase and sale agreement to buy a newly-built home in Oklahoma for $289,000.  Declaration of Stephen M. Rummage ("Rummage Decl."), Ex. E.[1]  After signing the agreement, Ms. Scholl contacted WMB to seek a loan (not an appraisal), and she submitted an application for a mortgage loan in the amount of $231,200 to finance that purchase.  WMB arranged for an appraisal of the property.  Rummage Decl., Ex. B.  Elizabeth Angelo of Angelo Appraisal Service, Inc., performed the appraisal in mid-September 2006, valuing the Scholl Property at the price that Ms. Scholl and her partners had agreed to pay, i.e., $289,000 (the "Scholl Appraisal").  Ms. Scholl executed a promissory note and mortgage, WMB funded Ms. Scholl's mortgage loan, and her purchase of this investment property closed on October 3, 2006, using funds provided by WMB.  Rummage Decl., Exs. A, C & D.

---

[1] In ruling on a Rule 12(b)(6) motion, the Court may consider documents submitted with or incorporated into the complaint by reference and otherwise central to its allegations, as well as matters that may be judicially noticed.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (citing 5B Wright & Miller § 1357); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  Defendants' reliance on documents referred to in Plaintiffs' complaint "does 'not convert the motion to dismiss into a motion for summary judgment.'" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (citation omitted).

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

Mr. Spears engaged in a standard refinancing transaction.  In early 2007, Mr. Spears and his wife submitted an application for a $178,000 loan (not an appraisal) from WMB.  In approving that loan, WMB relied on an appraisal performed by Kathryn Kumamoto of Deborah Garrett & Associates, which valued the Spears property at $525,000 (the "Spears Appraisal").  Rummage Decl., Ex. G.  Mr. Spears executed a promissory note and deed of trust, and WMB funded Mr. Spears's secured loan with the requested $178,000, which allowed Mr. Spears to pay off an existing loan on his home and receive $19,000 in cash.  Rummage Decl., Ex. F, H & I.  The transaction closed on March 2, 2007.

Both Ms. Scholl and Mr. Spears thus sought and received loans from WMB.  Neither Ms. Scholl nor Mr. Spears has alleged that they came to WMB seeking appraisals or that the appraisals WMB obtained and relied on in connection with their loans inflated the values of their property.  Neither Ms. Scholl nor Mr. Spears has alleged any flaws in the appraisers' selection or evaluation of comparable properties (indeed, in Ms. Scholl's case, two of the comparables appear to have been located in the same housing development as her property) or in any other aspects of the appraisers' valuation methods.  Neither has alleged that the appraisals led to a foreclosure on their property or otherwise harmed them economically.  (Such an allegation would be especially implausible as to Mr. Spears, who received a loan for only one-third of the appraised value of his property.)  In short, these Plaintiffs have not alleged that the appraisals that WMB obtained were off by a nickel – much less that they suffered any ascertainable loss as a result of any supposed inaccuracies in the appraisal amount.

Instead, Ms. Scholl and Mr. Spears rely on non-specific allegations concerning a supposed lack of "independence" by the appraisers used on WMB loans generally.  Federal regulations promulgated by the OTS, WMB's primary regulator, and guidelines issued by the OTS and other federal regulators, require that appraisals conducted in connection with federally related real estate loan transactions comply with generally accepted appraisal standards, embodied in the Uniform Standards of Professional Appraisal Practice ("USPAP").  *See* 12 C.F.R. § 564.4.  These include a requirement of appraiser independence.  *See* 12 C.F.R. § 564.5.  Plaintiffs allege that WMB's outsourcing arrangements with EA and LSI violated USPAP requirements, including the

requirement of appraiser independence. Complaint ¶¶ 33-56. But these Plaintiffs obtained loans from WMB, not appraisals, and WMB secured appraisals to protect its interests as a secured lender, not to provide guidance to its borrowers. Moreover, even if all else were true, Plaintiffs still have not alleged that the appraisals on which WMB relied in making loans to them were improperly performed or inflated. The Complaint's vague allegations do not state a claim, and WMB therefore now moves to dismiss.

## III.    STATEMENT OF ISSUES

A.    Whether Plaintiffs have stated a federal claim under RESPA, given their inability to allege any referral of appraisal services, any split of fees for appraisal services, any markup of the charge for appraisal services, or a complete failure to provide the services for which they paid?

B.    Whether Plaintiffs have alleged any viable state law claims?

1.    Whether federal law preempts Plaintiffs' state law claims, given that the OTS has expressly preempted all state statutory or common law regulation of "initial charges," "disclosures and advertising," and "processing [or] origination" of real estate secured loans?

2.    Assuming no preemption, whether Plaintiffs have stated viable state law claims given that their Complaint does not allege (a) any actionable misrepresentation or omission by WMB; (b) any sale of a "service," as the CLRA uses that term; (c) any damage or ascertainable loss; or (d) any promise that WMB broke in outsourcing its appraisal function.

## IV.    ARGUMENT AND AUTHORITY

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)) (affirming dismissal); *Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073, 1075 (C.D. Cal. 1999) (granting motion to dismiss). The court may dismiss an action under Rule 12(b)(6) based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). As the Supreme Court recently made clear, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)                                    DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  *Id.* at 1969 (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1155 (9th Cir. 1989)).  Although the court takes factual allegations in a complaint to be true, those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citing 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1216, pp. 235-36 (3d ed. 2004)).

### A.    Plaintiffs' RESPA Claim Does Not State a Claim against WMB.

In Count I of their Complaint, Plaintiffs purport to assert a federal claim under the Real Estate Settlement Procedures Act ("RESPA") based on alleged deficiencies in appraisals that WMB obtained through EA and LSI.  But Congress did not create RESPA to provide a remedy for alleged malpractice in providing real estate services.  Instead, Congress enacted RESPA to

> insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country … [such as] kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services.

12 U.S.C. §§ 2601(a), (b)(2).  The structure of RESPA Section 8 reflects this purpose, seeking to prevent these "abusive practices" by means of two specific prohibitions:  Section 8(a) proscribes the payment of "fee[s], kickback[s] or thing[s] of value" in exchange for referrals of settlement services, while Section 8(b) forbids people from giving or receiving "any portion, split, or percentage" of fees charged in connection with the settlement of certain mortgage-related transactions "other than for services actually performed."  12 U.S.C. § 2607.

Plaintiffs' vague allegations of appraisal malpractice do not fit under Section 8.  Plaintiffs have not alleged (and cannot allege) under Section 8(a) that WMB referred any settlement services, let alone received compensation for doing so.  As to Section 8(b), they have not alleged that WMB split or marked up an appraisal fee or that an appraisal was not performed at all.[2]

---

[2] Plaintiff Sidney Scholl's RESPA claim is also barred under RESPA's statute of limitations, as her loan transaction closed more than one year before Plaintiffs sued.  12 U.S.C. § 2614.

**DAVIS WRIGHT TREMAINE LLP**

1.    **Plaintiffs Cannot Assert a Claim against WMB under Section 8(a) of RESPA.**

RESPA Section 8(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  The section thus "prohibits fees for referrals."  *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1009 (9th Cir. 2002); *see also Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 266 (4th Cir. 2002) (describing Section 8(a) as "seek[ing] to eliminate kickbacks or referral fees paid to a third party…[by] prohibit[ing] the payment of formal kickbacks or fees for the referral of business").  To assert a claim under Section 8(a), a plaintiff must allege (1) the payment or receipt of a thing of value; (2) an agreement or understanding; and (3) a referral of settlement business.  24 C.F.R. § 3500.14.  Plaintiffs have not alleged either that WMB received a "thing of value" in exchange for a referral or that WMB made a "referral" at all.

a.    **Plaintiffs Have Alleged Payment of a "Thing of Value."**

The prohibition against trading a "thing of value" for a referral addresses the practice of settlement service providers giving compensation, gifts or free services in exchange for referrals of business.  RESPA's implementing regulation, Regulation X, broadly defines "thing of value" to include a wide variety of fees, discounts, services, and so on.  *See* 24 C.F.R. § 3500.14(d).  In forbidding such transfers of consideration from the settlement service provider to the referral source, Congress and HUD sought to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b)(2).

Here, Plaintiffs apparently intend to allege that WMB functioned as the referral source, receiving some "thing of value" from EA and LSI.  But Plaintiffs have ***not*** alleged that EA or LSI gave WMB any gifts, gratuities or other consideration in exchange for referrals, which might increase the cost of appraisals.  Instead, Plaintiffs' circular allegations identify high-value appraisals themselves as the "thing of value" that WMB received in exchange for the supposed referral of appraisal services to EA, LSI and various "Proven Appraisers."  Complaint, ¶¶ 84-86.

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

But this cannot be.  The appraisals *are* the settlement service; they cannot simultaneously be both the purchased settlement service *and* an illicit kickback.

WMB cannot find any case suggesting that the paid provision of a settlement service can satisfy the definition of a thing of value.  If the service itself could constitute the prohibited "thing of value," then every service provider who sought to satisfy a client (and potential referral source) in the expectation of future business would thereby violate RESPA.  Congress never intended RESPA to reach that far.

**b.    Plaintiffs Have Not Alleged a "Referral."**

Plaintiffs' RESPA claim does not contain *any* reference to a referral, apart from Plaintiffs' pro forma quotation of Section 8(a).  Complaint, ¶ 83.  In fact, fundamental distinctions between appraisals and other settlement services show that Plaintiffs cannot allege a referral.

Borrowers have the opportunity to select the providers of many settlement services used in connection with their real estate loan transactions.  And "when consumers purchase a home, they typically rely on a number of market intermediaries, such as realtors and mortgage brokers, who themselves provide *advice on choosing* additional service providers such as lawyers and lending institutions."  Daniel Schwarcz, *Beyond Disclosure: The Case For Banning Contingent Commissions*, 25 Yale L. & Pol'y Rev. 289, 312 (2007) (emphasis added).  The borrower's ability to select among settlement service providers creates the opportunity for illicit referrals.  "In these situations, the third-party service provider may make side payments to the market intermediary in exchange for its referral of business." *Id.*

Congress therefore passed RESPA Section 8(a) to prevent that sort of quid pro quo in exchange for a referral.  *Id.* at 313.  Consistent with that purpose, HUD has thus defined "referral":

> (1) A referral includes any oral or written action directed to a person which has the effect of *affirmatively influencing the selection* by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business.

> (2) A referral also occurs whenever a person paying for a settlement service or business incident thereto is *required to use* (see §3500.2, "required use") a particular provider of a settlement service or business incident thereto.

DAVIS WRIGHT TREMAINE LLP

7

24 C.F.R. § 3500.14(f) (emphasis added).[3]  These definitions require the involvement of three parties:  the person making the referral (the one who "influence[es] the selection), the party who receives the referral (the one who makes the selection), and the third-party service provider.

The appraisals alleged in the Complaint, however, do not involve these three parties. Borrowers dealing with federally regulated lenders such as WMB not only do not select appraisers, they **cannot** choose (and do not "use") real estate appraisers for their transactions. WMB's regulator mandates that either the lender must conduct an appraisal itself or "the appraiser shall be engaged directly by the regulated institution or its agent."  12 C.F.R. § 564.5(b)(1).[4]  The OTS precludes borrower selection of appraisers to preserve appraisal independence:

> Independence is compromised when an institution uses an appraiser who is recommended by the borrower or allows the borrower to select the appraiser from the institution's list of approved appraisers.

> Institutions may not use an appraisal prepared by an individual who was selected or engaged by a borrower.  An institution's use of a borrower-ordered appraisal violates the agencies' appraisal regulations.

Interagency Statement, *Independent Appraisal and Evaluation Functions*, at 2 (Oct. 28, 2003); *see also Frequently Asked Questions on the Appraisal Regulations and the Interagency Statement on Independent Appraisal and Evaluation Functions* ("*Interagency FAQs*"), Question 14 (Mar. 22, 2005) ("the borrower may not recommend an appraiser to the institution or select the appraiser"). In other words, while lenders may pass on the cost of the appraisal to the borrower, *Interagency FAQs*, Question 14, the borrower cannot be part of the process of obtaining the appraisal.

The requirement that federally regulated lenders obtain appraisals (and the complementary prohibition on borrower-obtained appraisals) excludes appraisals from HUD's definition of referrals.  Because borrowers cannot play any role in obtaining appraisals, they cannot "select[]…[the] provider of a settlement service."  24 C.F.R. § 3500.14(f)(1).  Similarly, because a

---

[3] 24 C.F.R. § 3500.2 defines "required use" as "a situation in which a person must use a particular provider of a settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service."  Here, as discussed more fully below, the appraisers provided their services to WMB, not to borrowers.

[4] WMB is subject to regulations promulgated by the OTS, whose regulations are materially identical to the OCC regulations that Plaintiffs erroneously cite throughout the Complaint.

DAVIS WRIGHT TREMAINE LLP

federally regulated lender always must select the appraiser it uses for the loans it originates, this selection cannot be a "required...use" by the borrower under 24 C.F.R. § 3500.14(f)(2). Instead, as the OTS regulation makes clear, the lender (not the borrower) "uses" the appraisal service in lieu of an in-house appraisal function. *See* 12 C.F.R. § 564.5.

The fact that WMB may have paid a fee to EA and LSI for services in obtaining appraisers and managing the appraisal process does not alter this conclusion. To the extent that EA and LSI selected appraisers in connection with WMB's real estate loan transactions (as the Complaint alleges), they did so as WMB's agents or contractors. But RESPA does not prohibit "the payment of a fee...(C) by a lender to its duly appointed agent for services actually performed in the making of a loan." 12 U.S.C. § 2607(c)(1); *see also* 24 C.F.R. § 3500.14(g)(1)(iii).[5]

### 2. Plaintiffs Cannot Assert a Claim against WMB under Section 8(b) of RESPA.

Count I also purports to assert a claim under Section 8(b) of RESPA, 12 U.S.C. § 2607(b). This claim asserts that, due to the alleged lack of independence of Plaintiffs' appraisals, those appraisals were "valueless" and Plaintiffs "never received the appraisal service for which they were charged by Defendants." Complaint, ¶¶ 81, 82. But Plaintiffs do not allege that WMB split the appraisal fee with another party, which courts have required for a plaintiff to state a claim under Section 8(b). Moreover, even if a plaintiff could assert an "unearned fee" claim under RESPA Section 8(b) in the absence of a fee split, Plaintiffs have not alleged such a claim.

Subsection 8(b) of RESPA provides:

(b) *Splitting charges*

No person shall give and no person shall accept *any portion, split, or percentage* of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan *other than for services actually performed*.

12 U.S.C. § 2607(b) (emphasis added). The text of Section 8(b), aptly entitled "Splitting charges," unambiguously prohibits a person *only* from giving or receiving "any portion, split, or percentage"

---

[5] In fact, Plaintiffs allege that WMB (not EA or LSI) impermissibly selected the appraisers. Complaint, ¶¶ 33-56. If one accepts that allegation as true, then Plaintiffs' Section 8(a) claim boils down to the illogical assertion that WMB unlawfully referred appraisers to itself.

DAVIS WRIGHT TREMAINE LLP

of fees charged in connection with the settlement of certain mortgage-related transactions "other than for services actually performed." 12 U.S.C. § 2607(b).  Plaintiffs have not pleaded a claim under any of the three theories that federal appellate courts have recognized as the basis for a recovery under Section 8(b):

*First*, several federal appellate courts have held that Section 8(b) unambiguously prohibits *only* transactions in which the defendant *shares* a "portion, split, or percentage" of the charge with another party.  *See Haug v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) ("Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute"); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir. 2002); *Boulware*, 291 F.3d at 265.  While the Ninth Circuit has not squarely addressed the meaning of Section 8(b), it has implicitly endorsed this common-sense understanding of the statute by noting that the statute "prohibits the payment of any percentage or division of a charge except for services actually rendered."  *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (emphasis added).  Plaintiffs have not alleged that WMB split or shared appraisal fees.

*Second,* a few federal appellate courts have permitted "mark-up" claims in which a plaintiff alleges that the lender outsourced a settlement service to a third party, charged the borrower more than it paid the third-party provider, and kept the excess.  But even this reading of Section 8(b) requires that the lender split the total fee with a third-party service provider; courts that have adopted this reading therefore reject as improper price regulation "overcharge" claims in which plaintiffs simply assert that their lender assessed to them a fee that exceeded the lender's cost for the service.  *See, e.g.*, *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 386 (3d Cir. 2005) (tax service and flood certification fees split between lender and third party vendors who performed services; rejecting claims related to overcharges by lender); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 53 (2d Cir. 2004) (tax service, flood certification and document preparation fees split between lender and third parties; rejecting claims related to overcharges); *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 983-84 (11th Cir. 2003) (fee split between lender and contractors providing courier or messenger services).

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

Plaintiffs have not alleged (and could not allege) a "markup" of a charge split between WMB and an appraiser. At most they have alleged that they paid too much for the appraisals because the appraisals had little value. But, as every circuit to consider the issue has held, such overcharge claims do not state a claim under Section 8(b).

**Third**, unlike every other circuit to consider the issue, the Second Circuit has recognized a cause of action under Section 8(b) where two parties did not split the challenged fee. In *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007), the court held that the words "any portion, split, or percentage of any charge" in Section 8(b) could be read to include the entirety of such charges, found the statute ambiguous, and therefore deferred to a HUD policy statement permitting a Section 8(b) claim for undivided fees for which no services at all were rendered. This Court should not follow the minority view of Section 8(b) articulated in *Cohen*, which departs from the text of the statute – particularly in its artificial interpretation of the phrase "portion, split, or percentage" to include "all" of a charge – and contradicts other circuits' interpretations of Section 8(b).[6] Further, the Ninth Circuit's characterization of Section 8(b) as "prohibit[ing] the payment of any percentage or division of a charge except for services actually rendered," *Geraci*, 347 F.3d at 751, suggests a narrower interpretation of the section than *Cohen* adopted.[7]

In any event, Plaintiffs have not stated a claim even under *Cohen*. In *Cohen*, the lender assessed a fee to the borrower but allegedly provided no settlement service at all in return. *Cohen*, 498 F.3d 111. (The settlement fee was a $225 "post-closing fee," for which plaintiff alleged the lender had done nothing. *Id.* at 113-14.) The Second Circuit found such an "undivided, unearned fee" distinct from a mere overcharge for a service actually performed, and it reversed the district court's dismissal of the claim. Here, Scholl and Spears *did* receive appraisals (and they tacitly concede that the appraisers worked on those appraisals), Complaint, ¶¶ 59, 64; they allege only

---

[6] *See Haug*, 317 F.3d at 838-40 (rejecting HUD's interpretation of Section 8(b) because statute unambiguous); *Krzalic*, 314 F.3d at 881 (same); *Boulware*, 291 F.3d at 266-67 (same).

[7] "Division" means "one of the parts, sections or groups into which something is divided," while "percentage" is defined as "a proportion or share in relation to a whole" or "an amount…that varies in proportion to a larger sum." Webster's II New College Dictionary 340, 836 (3d ed. 2005). *See Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 796 (9th Cir. 2003) (looking to dictionary definitions of undefined statutory terms).

that "the appraisals Plaintiffs … received were not worth the paper on which they were printed and were otherwise valueless." *Id.*, ¶ 81.  These allegations amount to a claim that the Plaintiffs were overcharged for a service actually performed, distinguish Plaintiffs' allegations from *Cohen*, and preclude Plaintiffs from asserting an "undivided, unearned fee" claim under Section 8(b), even assuming the Ninth Circuit would recognize *Cohen*'s elastic formulation of RESPA.

### B.    Plaintiffs Have Not Stated any Claims under State Law.

California law does not impose on a lender "a duty of care to a borrower in appraising the borrower's collateral to determine if it is adequate security for a loan," at least "when the [lender's] involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991) (citations omitted).  Apparently recognizing this limitation, Plaintiffs attempt to fit their appraisal malpractice theory into other state statutory and common law causes of action.[8]  But the Court should dismiss these state law claims, for two reasons:  (1) federal law preempts the assertion of state law claims against a federal savings association, such as WMB, based on loan origination activities, including the assessment of origination-related fees; and (2) Plaintiffs have not alleged the essential elements of their state causes of action.

### 1.    Federal Law Preempts Plaintiffs' State Law Claims.

WMB is a federally chartered savings association.  *See* Request for Judicial Notice ("RJN"), Exs. A, B; *see also Washington Mut. Bank, FA v. Superior Court*, 95 Cal.App.4th 606, 613 (2002) (recognizing WMB as a federal savings association); *Moskowitz v. Washington Mut. Bank, FA*, 768 N.E.2d 262, 264 (Ill. App. Ct. 2002) (same).  Accordingly, federal law regulates all facets of WMB's lending operations.  In particular, Congress authorized the Office of Thrift Supervision ("OTS") to issue sweeping preemptive regulations, and the OTS has done so.  Because "federal preemption bars relief under any set of facts consistent with the pleadings, the complaint fails to state a claim and must be dismissed."  *Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425, 428 (Minn. Ct. App. 2000) (citations omitted).

---

[8] Even after dismissing Plaintiffs' RESPA claim, this Court will have jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)                                                    DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

### a.     Congress Granted the OTS Exclusive Authority to Regulate the Lending Operations of Federal Savings Associations.

In passing the Home Owners' Loan Act ("HOLA"), Congress empowered the OTS to issue regulations "to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations…giving primary consideration of the best practices of thrift institutions in the United States." 12 U.S.C. § 1464(a).  As the United States Supreme Court has explained, Congress made this federal power exclusive:

> Congress plainly envisioned that federal savings and loans would be governed by what the [OTS] – not any particular State – deemed to be the "best practices." ...  Thus, the statutory language suggests that Congress expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law.

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161-62 (1982) (citation omitted).

Further, Congress made the OTS's exclusive power expansive.  "The broad language of [HOLA] expresses ***no limits*** on the [OTS]'s authority to regulate the lending practices of federal savings and loans.  As one court put it, '[i]t would have been difficult for Congress to give the [OTS] a broader mandate.'" *Id.* at 161 (emphasis added) (quoting *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 910 (C.D. Cal. 1978)).

### b.     The OTS Has Completely Occupied the Field of Lending Regulations Applicable to Federal Savings Associations.

Consistent with the broad congressional mandate the Supreme Court recognized in *de la Cuesta*, the OTS has occupied the entire field of lending regulations applicable to federal savings associations, including WMB.  In 1996, the OTS promulgated new regulations emphasizing the broad scope of its preemptive power:

> *Occupation of field*.  Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS ***is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations*** when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA.  To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), ***OTS hereby occupies the entire field of lending regulation for federal savings associations.***  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  ***Accordingly, federal savings***

13

1

2

3

*associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities*, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

4

12 C.F.R. § 560.2(a) (emphasis added). The OTS explained its preemptive purpose as follows:

5

"instead of being subject to a hodgepodge of conflicting and overlapping state lending

6

requirements, federal thrifts are free to originate loans under a single set of uniform federal laws

7

and regulations." 61 Fed. Reg. 50951, 50965 (Sept. 30, 1996) (OTS comments on § 560.2).

8

Accordingly, when a plaintiff challenges a federal savings association's lending practices

9

under state law, federal law preempts the claim. "[T]he federal regulation is intended to preempt

10

*all* state laws purporting to regulate *any aspect* of the lending operations of a federally chartered

11

savings association, whether or not OTS has adopted a regulation governing the precise subject of

12

the state provision." *Lopez v. World Sav. & Loan Ass'n,* 105 Cal.App.4th 729, 738 (2003)

13

(emphasis added). The Ninth Circuit recently described the regulatory scope of HOLA and these

14

implementing regulations as "so pervasive as to leave no room for state regulatory control." *Silvas*

15

*v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (quoting *Conference of Fed.*

16

*Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1260 (9th Cir. 1979)); *see also* OTS Letter P-2006-2,

17

at 3 (Mar. 7, 2006) (describing federal regulatory scheme as "exclusive, leaving no room for state

18

regulation, conflicting or complementary").[9]

19

### c. OTS Regulations Expressly Preempt All of Plaintiffs' Non-Federal Claims.

20

The OTS's preemption regulation provides analytical guideposts for determining the scope

21

of preemption, chief among them being a list of non-exclusive "[i]llustrative examples" of "the

22

types of state laws preempted." 12 C.F.R. § 560.2(b). These examples of expressly preempted

23

state laws include *any state statutes or common law principles* that purport to regulate:

24

25

---

[9] Borrowers have ample federal protection. Borrowers' interests are protected not only by "the elaborate network of federal borrower-protection statutes applicable to federal thrifts, including the Truth in Lending Act, the Real Estate Settlement Procedures Act, [and] the Equal Credit Opportunity Act," among others, but also by separate OTS regulations forbidding unfair practices and specific OTS regulations regarding appraisals. *See* 61 Fed. Reg. at 50965-66; 12 C.F.R. § 564.1 *et seq.*; *see also* OTS Letter P-99-3, at 18 (Mar. 10, 1999). Plaintiffs' RESPA claim implicitly recognizes the primacy of federal law in this area.

26

27

28

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

- "*Loan-related fees*, including without limitation, *initial charges*, late charges, prepayment penalties, servicing fees, and overlimit fees";
- "*Disclosure and advertising*, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents"; and
- "Processing, *origination*, servicing, sale or purchase of, or investment or participation in, *mortgages*."

12 C.F.R. §§ 560.2(b)(5), (9) & (10).  As the Ninth Circuit recently held, if a state law "is listed in [this list of exemplar preempted laws in] paragraph (b) … the analysis will end there; *the law is preempted*."  *Silvas*, 514 F.3d at 1005 (citing 61 Fed. Reg. at 50966) (emphasis added). Applying Section 560.2(b), courts have held that federal law preempts state law claims with respect to federal savings associations' loan origination activities and any fees associated with origination. *See, e.g., Silvas*, 514 F.3d 1001 (lock-in fees, related disclosures, advertising); *Prince-Servance v. BankUnited, FSB*, No. 07 C 1259, 2007 WL 3254432 (N.D. Ill. Nov. 1, 2007) (yield spread premium); *Haehl v. Washington Mut. Bank, F.A.*, 277 F. Supp. 2d 933, 940 (S.D. Ind. 2003) (reconveyance fees assessed at origination); *Monroig v. Washington Mut. Bank, FA*, 800 N.Y.S.2d 416 (N.Y. App. Div. 2005) (same); *Washington Mut. Bank v. Superior Court*, 95 Cal.App.4th 606 (pre-closing interest).

On its face, 12 C.F.R. § 560.2(b) preempts all of Plaintiffs' non-federal claims, each of which seeks to use California law to regulate the manner in which WMB obtained real estate appraisals and the fees that it passed on to borrowers for those appraisals.[10]  Despite characterizing WMB's alleged failure to obtain independent appraisals as an "unfair," "unlawful" and "fraudulent" business practice (Claims II-IV), a misrepresented "home appraisal service" (Claim V), a breach of Plaintiffs' contracts with WMB (Claim VI), and a means of unjustly enriching WMB (Claim VII), Plaintiffs' claims all boil down to the same assertion:  WMB somehow told

---

[10] Plaintiffs' attempt to use state law to regulate WMB's mortgage lending and associated appraisal practices is particularly inappropriate because the OTS has promulgated specific regulations governing federal savings associations' use of appraisals in connection with their lending activities.  *See* 12 C.F.R. § 564.1 *et seq.*

DAVIS WRIGHT TREMAINE LLP

Plaintiffs that it was providing them with independent appraisals, as USPAP required, but failed to do so.  12 C.F.R. § 560.2(b) preempts all of these claims:

- Each of Plaintiffs' non-federal claims repeats the same allegations concerning the means whereby WMB hired EA and LSI to obtain appraisals on its behalf, and how its actions allegedly destroyed the independence of those appraisals.  Because this entire process of obtaining appraisals occurred as an integral part of WMB's "processing [or] origination" of mortgages, federal law preempts each of these claims pursuant to subparagraph (10) of 12 C.F.R. § 560.2(b).  *See, e.g., Haehl*, 277 F. Supp. 2d at 940 (subparagraphs (5) and (10) preempted state statutory and common law claims, including unjust enrichment claim, arising out of fees assessed at loan origination);

- Plaintiffs' state law claims challenge, directly or indirectly, appraisal fees WMB assessed at the closing of Plaintiffs' loan transactions.  But these fees are "loan-related fees" and "initial charges."  *See Chaires v. Chevy Chase Bank, F.S.B.*, 748 A.2d 34, 46 (Md. Ct. Spec. App. 2000).  Federal law therefore preempts each of these claims pursuant to subparagraph (5) of 12 C.F.R. § 560.2(b); *see, e.g., Silvas*, 514 F.3d at 1005-06 (UCL claims challenging a loan fee and loan-related advertising and disclosures concerning that fee are preempted by subparagraphs (5) and (9)); *Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 354-56 (D. Conn. 2004) (CUTPA claims based on fax statement fee, retention of taxes and fees and private mortgage insurance charges preempted under subparagraphs (5) and (9)); *Haehl* 277 F. Supp. 2d at 940; *Moskowitz*, 768 N.E.2d at 263-66 (state consumer protection act and breach of contract claims challenging payoff statement fee preempted under subparagraphs (5) and (9)); OTS Letter P-99-3, at 16 ("to the extent that the UC[L] is being used to regulate the imposition of loan-related fees…the UC[L] is preempted"); and

- Plaintiffs' claims of fraudulent practices in violation of the UCL (Count IV) and the CLRA (Count V), and supposedly leading to unjust enrichment (Count VII), all rely on alleged representations by WMB that the appraisals it requested and received, copies of which it provided to Ms. Scholl and Mr. Spears, complied with federal appraisal standards.  Complaint, ¶¶ 108, 115 & 125.  To the extent these claims seek to impose disclosure requirements or liability for

16

DAVIS WRIGHT TREMAINE LLP

disclosures (or omissions) relating to appraisals, federal law preempts them pursuant to subparagraph (9) of 12 C.F.R. § 560.2(b). *See Silvas*, 514 F.3d at 1005-06; *Boursiquot*, 323 F. Supp. 2d at 354-56; *Moskowitz*, 768 N.E.2d at 263-66.

Plaintiffs in similar cases have argued that state laws of general application escape preemption on the theory that they only "incidentally affect" a federal savings association's lending operations and therefore are not preempted pursuant to § 560.2(c). But as the Ninth Circuit emphasized in *Silvas*, the regulatory exception to preemption "is intended to be interpreted narrowly" and "[a]ny doubt should be resolved in favor of preemption." *Silvas*, 514 F.3d at 1005. In *Silvas*, plaintiffs argued that preemption did not apply under Section 560.2(c) because their claims rested "on California contract, commercial, and tort law." *Id.* at 1006. The Ninth Circuit rejected this argument. The court agreed that if a state law appears in the non-exhaustive list of preempted laws in Section 560.2(b), "the analysis will end there; ***the law is preempted***." *Id.* at 1005 (emphasis added). For that reason, the court did not need to "reach the question of whether the law fits within the confines of paragraph (c) [of 12 C.F.R. § 560.2] because Appellants' claims are based on types of laws listed in paragraph (b)." *Silvas*, 514 F.3d at 1006-07.

Here, as in *Silvas*, Plaintiffs base their claims on the types of laws listed in Section 560.2(b), which expressly preempts those laws and the non-federal claims based upon them. For that reason, Section 560.2(c)'s narrow exception to preemption cannot save Plaintiffs' claims.[11]

> ### 2. Even If They Were Not Preempted, Plaintiffs' UCL, CLRA, Breach Of Contract and Unjust Enrichment Claims Fail as a Matter of State Law.

Even if the Court were to conclude that the non-federal claims survive preemption, Plaintiffs have not properly alleged those claims.

---

[11] The fact that the various California state statutes and common law causes of action provide different remedies than the applicable federal law makes no difference. "When an entire field is preempted, a state may not add a damages remedy unavailable under the federal law." *Silvas*, 514 F.3d at 1007 n.3 (citing *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDA-CORP, Inc.*, 379 F.3d 641, 648-49 (9th Cir. 2004)).

DAVIS WRIGHT TREMAINE LLP

1

a.    **Plaintiffs Lack Standing to Assert UCL Claims against WMB.**

2      Plaintiffs lack standing to assert their three UCL claims because they have not alleged (and

3 could not allege) that they have suffered damages as a result of WMB's alleged UCL violations.

4 Accordingly, the Court should dismiss the UCL claims pursuant to Fed. R. Civ. P. 12(b)(1).

5      Rule 12(b)(1) allows a party to raise by motion the defense that the court lacks subject

6 matter jurisdiction. "A motion to dismiss for lack of subject matter jurisdiction may either attack

7 the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of

8 subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d

9 730, 733 (9th Cir. 1979) (citations omitted).  On a motion made on the latter ground, a

10 presumption of truthfulness does not attach to plaintiff's allegations.  *Id.*  "[T]he district court is

11 not restricted to the face of the pleadings, but may review any evidence, such as affidavits and

12 testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v.*

13 *United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citations omitted).  The party asserting

14 jurisdiction bears the burden on a Rule 12(b)(1) motion. *Thornhill Publ'g*, 594 F.2d at 733.

15      The UCL formerly permitted private individuals to assert claims as private attorneys

16 general, who did not need to have suffered any injury to bring a claim.  *See Buckland v. Threshold*

17 *Enters., Ltd.*, 155 Cal.App.4th 798, 811-12 (2007).  Following repeated abuse of the statute by

18 attorneys who used it as the basis for "shakedowns," *People ex rel. Lockyer v. Brar*, 115

19 Cal.App.4th 1315, 1317 (2004), California voters approved Proposition 64, which amended the

20 UCL to provide private UCL claims only for a plaintiff who has "suffered injury in fact and has

21 lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see*

22 *Buckland*, 155 Cal.App.4th at 812; *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947 (S.D.

23 Cal. 2007).

24      As a result, a UCL plaintiff now must satisfy the standing requirements of the United

25 States Constitution, which include "an injury in fact – an invasion of a legally protected interest

26 which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

27 hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted); s*ee*

28 *Buckland*, 155 Cal.App.4th at 814.  The California Court of Appeals recently recognized that a

DAVIS WRIGHT TREMAINE LLP

18

plaintiff suffers an injury in fact when he or she has (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim. *O'Brien v. Camisasca Automotive Mfg., Inc.*, 73 Cal.Rptr.3d 911, 919-20 (Ct. App. Mar. 27, 2008); *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 854 (Jan. 7, 2008) (citations omitted). Most courts also have required that the plaintiff allege and prove that the defendant's unfair competition caused the injury in question. *O'Brien*, 73 Cal.Rptr.3d at 920-21; *Hall*, 158 Cal.App.4th at 855-57; *Cattie*, 504 F. Supp. 2d at 948; *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *but see Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1136-39 (C.D. Cal. 2005).[12] Thus, a UCL private plaintiff must allege "a causal connection or reliance on [an] alleged misrepresentation" to have standing to assert a UCL claim. *Hall*, 158 Cal.App.4th at 855.

Here, Plaintiffs have not properly alleged that they suffered any injury attributable either to receiving the mortgage loans for which they contracted or to the allegedly non-independent appraisals that made those loans possible. Each UCL claim identifies Plaintiffs' damages as the appraisal fees that they paid WMB. Complaint, ¶¶ 98, 104, 110. But, as a matter of federal law, Plaintiffs' loan transactions could not have closed without an appraisal of the property intended to secure the loan. The independence of the appraisals, or lack thereof, therefore had ***no effect*** on whether Plaintiffs paid an appraisal fee on their loans. Plaintiffs did not spend or lose money "as a result of" the alleged lack of appraiser independence.

Further, Ms. Scholl and Mr. Spears have ***not*** alleged that the appraisals incorrectly valued their property, or that they suffered any other harm arising out of their loan transactions with WMB. Ms. Scholl is a real estate investor who contracted to purchase a house for $289,000 – the same value that the appraiser later placed on it – ***before*** she contacted WMB to obtain a loan. Mr. Spears, on the other hand, refinanced his home, paid off an old mortgage, and received almost $20,000 in cash. The appraisal conducted on his property valued it at nearly three times the amount of the loan he obtained from WMB. Under these circumstances, neither Plaintiff could

---

[12] The California Supreme Court has granted review in a case addressing this issue. *See Pfizer, Inc. v. Superior Court*, 146 P.3d 1250 (2006).

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

allege that they would have entered into any different transaction (or paid less for WMB's appraisal) had they known the "truth" as they now allege it. Indeed, both Ms. Scholl and Mr. Spears received from WMB exactly the loan for which they contracted and applied before seeing the appraisals. Because these Plaintiffs have not alleged any ascertainable loss as a result of any supposed inaccuracies in the appraisal amounts, they do not have standing to bring UCL claims.

### b.    Plaintiffs' CLRA Claim Fails as a Matter of Law.

Plaintiffs allege that WMB violated the CLRA, Cal. Civ. Code § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade…if they are of another." Complaint, ¶ 115. But Plaintiffs have not stated a CLRA claim for three independent reasons: (1) Plaintiffs' loan transactions with WMB did not involve "goods or services" and therefore do not fall within the CLRA; (2) Plaintiffs have not properly alleged a representation or omission by WMB, as required to state a CLRA claim; and (3) Plaintiffs have not alleged that they incurred any specific damage from any such representation or omission, which is a necessary element of any CLRA claim. Because CLRA claims must be pled with particularity under Fed. R. Civ. P. 9(b), *see Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005), these flaws bar Plaintiffs' CLRA claim against WMB.[13]

### (1)    No "Good or Service"

The CLRA prohibits unlawful acts and practices "undertaken…in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). A claim under the CLRA therefore must relate to "goods or services." But state and federal courts have held that extensions of credit are not "goods or services" and cannot give rise to liability under the CLRA. *See, e.g.*, *Berry v. Am. Express Publ'g, Inc.* 147 Cal.App.4th 224, 229-33 (2007) (CLRA's language and legislative history "do[] not support the notion that credit, separate and apart from a specific purchase or lease of a good or service, is covered under the act"); *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1358-59 (N.D. Cal. 2007); *Augustine v. FIA Credit Servs., N.A.*, 485 F. Supp. 2d 1172, 1175 (E.D. Cal. 2007). Indeed, California's

DAVIS WRIGHT TREMAINE LLP

---

[13] In addition, Plaintiffs' CLRA claim must be dismissed without prejudice due to Plaintiffs' failure to file the venue affidavit required by Cal. Civ. Code § 1780(c).

Court of Appeals has squarely held that mortgage loans do not constitute "goods or services." In *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457 (2006), the court affirmed the dismissal of a CLRA claim based on alleged overcharges for underwriting, tax services and wire transfer fees that the lender charged in connection with the origination of home loans. The court concluded that these actions were "undertaken in transactions resulting in the sale of real property" rather than the sale of goods or services. 142 Cal.App.4th at 1488.[14]

Here, as in *McKell*, the only transaction between Plaintiffs and WMB was an extension of credit, which does not support CLRA liability. Despite Plaintiffs' implication that WMB sold appraisals, Complaint, ¶ 114, the Complaint establishes that Plaintiffs came to WMB looking for loans, not appraisals. Further, the Scholl and Spears Appraisals both expressly provide that "[t]he intended use of this appraisal report is for the lender/client [i.e., WMB] to evaluate the property that is the subject of this appraisal for a mortgage finance transaction." Rummage Decl., Ex. B, at 6; Ex. C, at 5. To the extent this amounts to a provision of "services" subject to the CLRA, the appraiser has provided the services only to WMB, not to the borrower. While recognizing that the borrower may receive a copy of the appraisal report, the report expressly limits the borrower to "rely[ing] on [it] as part of [the] mortgage finance transaction." Rummage Decl., Ex. B, at 8, ¶ 23; Ex. G, at 6, ¶ 23. In short, WMB merely extended credit and passed on the cost of appraisals it obtained in providing that credit. The transaction with WMB falls outside the CLRA.[15]

---

[14] Two unpublished decisions from this district have questioned *McKell*, but in both the Court refused to dismiss CLRA claims arising out of mortgage loans because the plaintiffs' allegations addressed actions other than the underlying extension of credit. *See Hernandez v. Hilltop Fin. Mortgage, Inc.*, No. C06-7401, 2007 WL 3101250, at *6 (N.D. Cal. Oct. 22, 2007) ("plaintiffs did not seek just a loan; they sought defendants' services in developing an acceptable refinancing plan by which they could remain in possession of their home"); *Jefferson v. Chase Home Fin. LLC*, No. C06-6510, 2007 WL 1302984, at *1-*3 (N.D. Cal. May 3, 2007) (CLRA claim based on defendants' mortgage prepayment services, not extension of credit); *see also Van Slyke*, 503 F. Supp. 2d at 1359 (noting that CLRA claim in *Jefferson* "was not directed to the extension of credit itself"). Further, *Knox v. Ameriquest Mortgage Co.*, No. C05-00240, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005), predates *McKell* and did not address it. In any event, Judge Conti in *Knox* relied on *Kagan v. Gibraltar Savs. & Loan Ass'n*, 35 Cal.3d 582 (1984), and *Corbett v. Hayward Dodge, Inc.*, 119 Cal.App.4th 915 (2004), cases that did not discuss whether the CLRA covered the transactions at issue and did not deal with mortgage loans. 2005 WL 1910927, at *4.

[15] In addition, Ms. Scholl cannot assert a CLRA claim because her mortgage loan related to her purchase of investment property, a "commercial or business use" that the CLRA excludes from the statutory definition of "services." Cal. Civ. Code § 1761(b).

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

**(2)    No Alleged Misrepresentation or Omission by WMB**

Plaintiffs' CLRA claim also fails because they have not properly alleged a misleading representation or omission by WMB.  For liability to attach, CLRA § 1770(a)(7) requires a misleading representation "that goods or services are of a particular standard, quality or grade."  Plaintiffs rely on the conclusory allegation that Defendants generally (not WMB in particular) "represented their home appraisal services to be…credible, independent, unbiased and performed in compliance with USPAP standards, which they were not."  Complaint, ¶ 115.  Even if the appraisals could constitute a "service" that WMB "sold" to Plaintiffs, the Complaint includes only a single allegation of a representation regarding the "standard, quality or grade" of the appraisals: an "Appraiser's Certification," signed by the appraiser, ***not*** by WMB, that appears as part of the Scholl appraisal report.  Complaint, Ex. B, at 7-8.  In other words, Plaintiffs have not alleged that ***WMB*** said anything at all about the nature of the appraisals in question.[16]

Nor has Scholl or Spears alleged a claim based on any omission by WMB.  A plaintiff can base a CLRA claim on an omission only against a party who (i) failed to disclose material information (ii) that it was under a duty to disclose.  *See, e.g.*, *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-97 (N.D. Cal. 2007); *Chamberlan*, 369 F. Supp. 2d at 1144-45.  To show materiality, a plaintiff must allege that "had the omitted information been disclosed, one would have been aware of it and behaved differently."  *Falk*, 496 F. Supp. 2d at 1095 (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)).  Here, Plaintiffs have not alleged materiality or a duty to disclose – and they certainly have not alleged that they would have behaved differently (i.e., not gone forward with their loans) if they had known the "truth" as they now portray it.

**(3)    No Damages**

Finally, Plaintiffs cannot bring CLRA claims against WMB because they cannot allege any damages attributable to any representation or omission by WMB.  "Relief under the CLRA is

---

[16] Plaintiffs who choose to sue multiple defendants and assert multiple causes of action must specify in their complaint which causes of action and factual allegations they assert against which defendant.  *See, e.g., Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996) (granting dismiss in part due to plaintiff's "shotgun approach" of asserting three claims against five defendants in single conclusory allegation); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing where "defendants are lumped together in a single, broad allegation" and plaintiff did not specify how each defendant allegedly deprived plaintiff of his rights).

specifically limited to those who suffer damage, making causation a necessary element of proof." *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 754 (2003) (citing *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292 (2002)). Even if Plaintiffs could establish that they bought appraisals from WMB (rather than obtaining loans), and that WMB failed to disclose that the third-party appraisals were not "credible, independent, unbiased and performed in compliance with USPAP standards," Plaintiffs have not alleged that this omission caused them damage. Plaintiffs do not allege that the appraisals inflated the values of their properties. They do not allege that they would not have gone forward with their transactions had they been aware of the details of the relationships among the Defendants. In light of the heightened pleading requirements for a CLRA claim, Plaintiffs have not provided the necessary allegation of damages attributable to WMB's actions.

   c.      **Plaintiffs Have Not Stated a Claim for Breach of Contract.**

   Plaintiffs cast their appraisal malpractice theory as a breach of contract claim by claiming that WMB had a contractual obligation to provide appraisals that complied with USPAP. But neither of the "contracts" they identify – "the loan documents that accompanied the home loan transaction" or the "appraisal reports" – imposes any such obligation on WMB. In fact, WMB had no such obligation, because it contracted to provide Plaintiffs with mortgage loans, not appraisals.

   A breach of contract claim requires allegations of (1) a contract, (2) plaintiff's performance or excuse for failure to perform, (3) defendant's breach, and (4) resulting damage to plaintiff. *McKell*, 142 Cal.App.4th at 1489 (citing 4 Witkin, *Cal. Procedure* (4th ed. 1997) Pleading, § 476, p. 570). Where the claim rests on a written contract, the plaintiff may plead either the contract's terms, set out verbatim or in a copy of the contract attached to the complaint, or its legal effect. *Id.* (citing Witkin §§ 479, 480, pp. 572-73). Pleading a contract's legal effect is "more difficult" than pleading its terms, as it requires the plaintiff to "allege the substance of its relevant terms … requir[ing] a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Id.* (citing Witkin § 480, p. 573).

   Plaintiffs have not satisfied this requirement, despite identifying two written "contracts" that supposedly required WMB to provide them with USPAP-compliant appraisals. Plaintiffs first

DAVIS WRIGHT TREMAINE LLP

identify the "loan documents" executed in connection with Plaintiffs' home loan transactions. But Plaintiffs have not attached these loan documents (apart from settlement statements that do not purport to impose any obligations), and they have not made any attempt to quote the supposedly relevant contractual language. Instead, Plaintiffs merely repeat their pro forma assertion that "the Defendants were to provide a … credible, objective, unbiased and independent home appraisal done in compliance with USPAP standards" and allege that this is "evidenced" or "show[n]" by the loan documents. Complaint, ¶ 121. This conclusory statement does not properly allege a contract's legal effect and thus cannot support Plaintiffs' breach of contract claim. *See McKell*, 142 Cal.App.4th at 1489 (plaintiffs' allegations of requirement that they pay underwriting and wire transfer costs insufficient to support breach of contract claim); *see also Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1095 (N.D. Cal. 2007) (various legal conclusions, references to documents not produced with complaint, and statements that were not part of the contract are insufficient to plead the legal effect of the alleged contract). Moreover, Plaintiffs' primary loan documents demonstrate that their breach of contract claim against WMB is baseless, as they do not mention appraisals or USPAP. Rummage Decl., Exs. C, D, H & I.

Plaintiffs also identify the appraisal reports as possible "contracts" imposing an obligation on WMB to provide USPAP-compliant appraisals. They allege that every appraisal report must contain a specific certification of independence and USPAP compliance, and they attach one such report – for the property in Ms. Scholl's loan transaction – that includes such a certification. Complaint, ¶¶ 29-30 & Ex. B. But even if the appraisal reports were contracts of which Plaintiffs were intended third party beneficiaries, Plaintiffs still could not assert a breach of contract claim against WMB based on them. As the Scholl appraisal report shows, the certification on which Plaintiffs rely is an "Appraiser's Certification" **signed by the appraiser**, not by WMB. Thus, Plaintiffs' breach of contract claim relies on representations that WMB **received**, not that it **provided**. Plaintiffs at best may have a claim against the appraiser who provided the certification; they do not have such a claim against WMB.

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

### d.    Plaintiffs' Quasi-Contract/Unjust Enrichment Claim Fails as a Matter of Law.

In their final attempt to fit their appraisal malpractice theory into the framework of a cause of action, Plaintiffs plead a claim of quasi-contract/unjust enrichment "in the alternative." Complaint, ¶ 124. But "there is no cause of action in California for unjust enrichment. 'The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.'" *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003) (quoting *Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448 (1992)).[17]

Some courts have recognized that a cause of action for unjust enrichment may exist "where a claim seeks restitution [and] where other remedies are inadequate." *Falk*, 496 F. Supp. 2d at 1099 (citing *Ghirardo v. Antoniolo*, 14 Cal.4th 39, 50 (1996)). But this is not such a situation. Plaintiffs' claims all rest on the same theory of appraisal malpractice, and several of their claims would provide for restitution if Plaintiffs were to succeed on the merits. If Plaintiffs do not succeed on the merits of those other claims, on the other hand, they have no basis for restitution.

For that reason, a separate cause of action for unjust enrichment serves no purpose.

## V.    CONCLUSION

WMB therefore requests that the Court dismiss all claims set forth in Plaintiffs' Complaint. Respectfully submitted this 2nd day of May, 2008.

DAVIS WRIGHT TREMAINE LLP

By /s/ Stephen M. Rummage
　　Stephen M. Rummage, *pro hac vice*
　　Jonathan M. Lloyd, *pro hac vice*
　　Martin Fineman (Cal. Bar No. 104413)
　　Sam N. Dawood (Cal. Bar No. 178862)
　　Attorneys for Defendant Washington Mutual Bank

---

[17] Plaintiffs' dual naming of this claim as a "quasi-contract" is a distinction without a difference, as, under California law, "quasi-contract" claims are a sub-set or type of unjust enrichment claim. *See, e.g., Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal.App.4th 151, 172 n.23 (2001). Even if such a claim were separately cognizable, Plaintiffs could not bring it against WMB in light of the express contracts between Plaintiffs and WMB (i.e., their promissory notes and mortgage/deed of trust). *Id.* at 172 ("as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights").

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (HRL)

DWT 11010663v3 0013149-000099