1  MARGARET A. KEANE (State Bar No. 255378)
   mkeane@dl.com
2  KRIS H. MAN (State Bar No. 246008)
   kman@dl.com
3  DEWEY & LEBOEUF LLP
   One Embarcadero Center
4  Suite 400
   San Francisco, CA  94111-3619
5  Telephone: (415) 951-1100
   Facsimile:  (415) 951-1180
6
   *Attorneys for Defendant*
7  *LSI Appraisal, LLC*

8                    IN THE UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11 FELTON A. SPEARS, JR. and ,              )  Case No. 5:08-cv-00868 (HRL)
   SIDNEY SCHOLL, on behalf of themselves   )
12 and all others similarly situated,       )  <u>CLASS ACTION</u>
                                            )
13                          Plaintiffs,     )  **NOTICE OF MOTION; MOTION TO**
                                            )  **DISMISS; AND MEMORANDUM IN**
14          vs.                             )  **SUPPORT OF MOTION TO DISMISS**
                                            )
15 WASHINGTON MUTUAL, INC.,                 )  Date:      Tuesday, July 15, 2008
   a Washington corporation;                )  Time:      10:00 a.m.
16 FIRST AMERICAN EAPPRAISEIT,              )  Place:     Courtroom 2, 5th Floor
   a Delaware corporation; and              )           280 South 1st Street
17 LENDERS SERVICE, INC.,                   )           San Jose, CA 95113
                                            )
18                          Defendants.     )
   _____      )  Honorable Howard R. Lloyd
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

STATEMENT OF RELIEF SOUGHT ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

    PRELIMINARY STATEMENT ...................................................................... 2

    FACTUAL BACKGROUND............................................................................ 3

    ARGUMENT ................................................................................................... 5

  I.      PLAINTIFFS CANNOT ESTABLISH THE BASIC JURISDICTIONAL
REQUIREMENTS OF ARTICLE III STANDING ......................................... 6

  II.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED ....................................................................................... 9

        A.    California Law Does Not Recognize A Claim Based on
Negligent Appraisal ...................................................................... 9

        B.    Plaintiffs Have Suffered No Actionable Damages Based on
the Appraisal Reports..................................................................... 10

        C.    Plaintiffs Cannot State A Claim Under RESPA Against LSI
Because LSI Did Not Provide Any Settlement Services In
Connection With Plaintiffs' Loans ............................................... 12

        D.    Plaintiffs Are Not Entitled to Restitution Because They Do Not
Have Standing to Seek Injunctive Relief ..................................... 13

        E.    CLRA Does Not Apply to Real Estate Transactions ................... 13

        F.    Plaintiffs Have Not Sufficiently Alleged the Existence of
A Contract..................................................................................... 14

        G.    Plaintiffs Cannot Recover For Quasi-Contract Because
LSI Never Received A Benefit from Plaintiffs............................. 14

CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allee v. Medrano*,
    416 U.S. 802 (1979)................................................................................................ 7

*Arikat v. JP Morgan Chase & Co.*,
    430 F. Supp. 2d 1013 (N.D. Cal. 2006) ............................................................. 14

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) ............................................................................ 5

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ................................................................................ 6

*Deitz v. Comcast Corp.*,
    2006 WL 378902 (N.D. Cal. 2006) .................................................................... 13

*Durning v. First Boston Corp.*,
    815 F.2d 1265 (9th Cir. 1987) ............................................................................ 6

*Edwards v. First Am. Corp.*,
    517 F. Supp. 2d 1199 (C.D. Cal. 2007) ............................................................. 12

*Foley v. Bates*,
    2007 WL 1831133, at *1 (N.D. Cal. June 25, 2007) .......................................... 5

*Forsythe v. Sun Life Fin., Inc.*,
    417 F. Supp 2d 100 (D. Mass. 2006)  ................................................................. 8

*Gipson v. Wells Fargo Corp.*,
    382 F. Supp. 2d 116, 119 (D.D.C. 2005) ............................................................2

*Henry v. Circus Circus Casinos, Inc.*,
    223 F.R.D. 541 (D. Nev. 2004).......................................................................... 7, 8

*Hodgers-Durgin v. De La Vina*,
    199 F.3d 1037 (9th Cir. 1999) ............................................................................ 6

*In re De Laurentiis Entertainment Group, Inc. v. National Broadcasting Co.*,
    963 F.2d 1269 (9th Cir. 1992) ............................................................................ 15

*In re Franklin Mut. Funds Fee Litig.*,
    388 F. Supp. 2d 451 (D. N.J. 2005). ................................................................. 7, 8

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
    2008 WL 486607 (D. Nev. Feb. 19, 2008). ........................................................ 8

*Kirkhart v. PPG Indus., Inc.*,
    2006 WL 3692643 (N.D. W.Va. Dec. 12, 2006). ............................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375, 376-78 (1994) .................................................................................... 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................. 6, 7

*Moore v. Radian Group, Inc., et al.*,
    233 F. Supp. 2d 819 (E.D. Tex. 2002)................................................................ 7, 12

*Morales v. Attorneys' Title Ins. Fund*,
    983 F. Supp. 1418 (S.D. Fla. 1997) ........................................................................ 7

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)................................................................................................. 7

*San Diego County Gun Rights Committee v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) .................................................................................. 7

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26, 40 n. 20 (1976).................................................................................. 7

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
    594 F.2d 730, 733 (9th Cir. 1979) ......................................................................... 6

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................. 6

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) .................................................................................. 6

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)................................................................................................. 6

**STATE CASES**

*Bramalea Cal., Inc. v. Reliable Interiors, Inc.*,
    119 Cal. App. 4th 468, 473, 14 Cal. Rptr. 3d 302 (Cal. Ct. App. 2004) .............. 10

*Conrad v. Bank of Am.*,
    45 Cal. App. 4th 133, 159, 53 Cal. Rptr. 2d 336 (Cal. Ct. App. 1996) ................ 10

*Day v. Alta Bates Med. Ctr.*,
    98 Cal. App. 4th 243, 119 Cal. Rptr. 2d 606 (Cal. Ct. App. 2002) ...................... 14

*First Commercial Mortgage Co. v. Reece*,
    89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23 (Cal. Ct. App. 2001) ................ 14

*Gay v. Broder*,
    109 Cal. App. 3d 66, 73, 167 Cal. Rptr. 123 (Cal. Ct. App. 1980)...................... 9, 11

*Hughes v. Holt*,
    140 Vt. 38, 41, 435 A.2d 687 (Vt. Sup. Ct. 1981)................................................. 11

iii

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003)................................................................... 13

*Luri v. First Fed. Bank of Cal.*,
    2001 WL 1656602 (Cal. Ct. App. 2001) ............................................... 9

*McKell v. Washington Mutual Inc.*,
    142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ................... 13

*Nymark v. Heart Fed. Savings & Loan Ass'n*,
    231 Cal. App. 3d 1089, 283 Cal. Rptr. 53 (Cal. Ct. App. 1991) ...................9, 10, 11

## FEDERAL STATUTES

Federal Rules of Civil Procedure 12(b)(1)................................................... 1, 2, 5

Federal Rules of Civil Procedure 12(b)(6)...................................................1, 2, 6, 9

Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 .................................... 12

Real Estate Settlement Procedures Act, 12 U.S.C. § 2614 .................................... 12

United States Constitution, Article III ........................................................2, 6, 13

## STATE STATUTES

California Business & Professions Code §§ 17200 *et seq.*.................................... 13

California Business & Professions Code § 17204 ............................................ 7

California Civil Code §§ 1750 *et seq.*......................................................... 13

California Civil Code § 1754...................................................................... 13

California Civil Code § 1780...................................................................... 7

## MISCELLANEOUS

1 Alba Conte et al., Newberg on Class Actions § 2:5 (4th ed. 2003) ......................... 7

5 James Wm. Moore, et al.,
    Moore's Federal Practice § 23.63[1][b] (3rd ed. 2007)..................................... 7

Uniform Standards of Professional Appraisal Practice .......................................3, 5, 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE THAT** on July 15, 2008, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 2, 5th Floor, of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Howard R. Lloyd, LSI Appraisal, LLC[1] will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for the entry of an Order dismissing all claims for relief in the Amended Class Action Complaint filed by Plaintiffs in this action.

 This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in Support of the Motion to Dismiss, the accompanying the Declaration of Kathleen M. Rice in Support of the Motion to Dismiss, all documents in the Court's file, and matters of which this Court can take judicial notice, and any evidence presented at or prior to the hearing on this matter.

### STATEMENT OF RELIEF SOUGHT

 LSI Appraisal, LLC seeks an Order from this Court dismissing Plaintiffs' Amended Complaint in its entirety without leave to amend.

---

[1] Plaintiffs erroneously named Lenders Service, Inc. as a defendant. Lenders Service, Inc. is the former name of the entity now operating as LSI Appraisal, LLC.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant LSI Appraisal, LLC ("LSI") respectfully submits this memorandum of points and authorities in support of its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, all claims of the Amended Complaint ("Am. Compl.") filed on March 28, 2008 by plaintiffs Felton A. Spears, Jr. and Sidney Scholl (collectively "Plaintiffs").[2]

### PRELIMINARY STATEMENT

The Amended Complaint fails to pass the first test every action has to face – establishing Article III standing.  As a matter of pleading and as a matter of fact, the Plaintiffs cannot establish that they suffered any harm from – or even had any commercial connection to – LSI.  Absent such a showing, Plaintiffs simply cannot maintain an action against LSI.

Plaintiffs contend that they were injured because they were able to obtain home equity loans based on appraisals that did not comply with "legal and professional standards."  Plaintiffs further claim that they were improperly charged by their lender, Washington Mutual, Inc. ("WaMu") for an "independent" and "credible" appraisal.  While Plaintiffs do allege that WaMu contracted with two outside vendors to obtain appraisals – LSI and defendant First American eAppraiseIT ("eAppraiseIT") – they make no specific allegations that LSI provided either Mr. Spears or Ms. Scholl with an appraisal.  This pleading failure is understandable.  As a matter of undeniable fact, LSI did not perform an appraisal in connection with either party's loan.  In fact, LSI played no role whatsoever in the real estate transactions at issue in this action.  As a result, Plaintiffs lack standing to bring these claims against LSI.  Plaintiffs are likewise prohibited from sustaining a class action where neither of the named plaintiffs is capable of maintaining an individual claim against LSI.

Even if the named Plaintiffs had standing to bring their claim, however, the Amended Complaint is still beset by a host of substantive and procedural problems.  As a preliminary matter, under California law, a plaintiff cannot sustain a claim against a lender or an appraiser based on a

---

[2] The Amended Complaint wrongly names "Lender's Service, Inc." as a defendant.  The correct legal entity is LSI Appraisal, LLC.  While dismissal would be proper for this reason alone, because the Federal Rules of Civil Procedure allow for liberal amendment where a plaintiff misnames a defendant, LSI will address the substance of the Amended Complaint.  *See, e.g., Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 119 (D.D.C. 2005).

2

real estate appraisal that was obtained for the benefit of the lender. Second, Plaintiffs fail to allege that they suffered actionable damages. Finally, the Amended Complaint fails to adequately allege the elements of each of its substantive causes of action.

**FACTUAL BACKGROUND**

Under various federal regulations, a real estate lender, like WaMu is required to obtain independent appraisals before entering into certain transactions. To facilitate that process, lenders often turn to outside appraisal management companies, like LSI, to manage the process of retaining those appraisals. Specifically, an appraisal management company will recruit a network of third-party outside appraisers. The company will then verify their licensure and negotiate fees and service level expectations with those appraisers. The appraisal management company will then manage the process of ordering and obtaining appraisals from the members of its network on behalf of lenders. That requires the company to handle virtually all of the administrative duties relating to obtaining the appraisal: entering the order, assigning the order to an individual appraiser, tracking the status of the order, checking the quality of the appraisal before delivery, and finally delivering the appraisal.

The preparation of an individual real estate appraisal is governed by a set of professional standards known as the Uniform Standards of Professional Appraisal Practice ("USPAP"). Those rules are in turn incorporated into state and federal law. Am. Compl. ¶ 25. USPAP not only provides a set of standards for the appraisal valuation process itself, but serves to define the nature of the professional engagement. For example, USPAP requires that appraisal reports specifically state the identity of the client and any intended users. *See* USPAP Standards Rule 2-2. In addition, USPAP sets out a number of ethical rules regarding the preparation of an appraisal. Among those rules, an appraiser is prohibited from disclosing their appraisal report "to anyone other than the client and persons specifically authorized by the client." *See* USPAP Ethics Rule, Confidentiality.

As alleged in the Amended Complaint, USPAP also requires that an appraisal report be prepared with "impartiality, objectivity and independence." Am. Compl. ¶ 25. This independence requirement means that an appraiser cannot accept an assignment that "includes the reporting of predetermined opinions and conclusions" as to the price of the property at issue. Am. Compl. ¶ 26.

3

1    Each appraisal report, therefore, requires a certification stating that the appraiser's engagement was

2    not "contingent upon developing or reporting predetermined results" and his or her compensation for

3    the assignment was "not contingent upon the development of a predetermined value or direction in

4    value that favors the client." *Id.* ¶ 29. In other words, the appraiser is required to certify that the

5    report reflects their independent opinion and was not directed to a particular value by the client.

6          Echoing these independence requirements, federal regulations require banks and thrifts to

7    obtain independent appraisal valuations and ensure that the independent contractor appraisers they

8    retain have no direct or indirect financial interest in the underlying transaction. Am. Compl. ¶ 31. In

9    addition, federal banking regulators have stated that lenders should not allow lending staff – who

10   often have a financial interest in the outcome of the loan and the appraisal – to select appraisers for

11   specific assignments. Am. Compl. ¶ 32. Lenders are, however, permitted to have lending staff

12   select appraisers from a revolving, pre-approved list of appraisers, provided that the staff responsible

13   for the development and control of the list is independent of the lending function. *Id.* Consistent

14   with these federal guidelines, in June of 2006, WaMu sought to further separate its appraisal

15   management process by outsourcing that function to two vendors, LSI and eAppraiseIT. Am.

16   Compl. ¶ 33.

17         Some months after WaMu retained LSI and eAppraiseIT, Ms. Scholl sought to obtain a loan

18   from WaMu in connection with purchase of real property located at 817 Northwest 194 Terrace in

19   Edmond, Oklahoma. Am. Compl. ¶ 58. In connection with that loan, WaMu obtained an appraisal

20   report on the property through eAppraiseIT. *See* Am. Compl., Ex. 2. The report explicitly states

21   that it was prepared "on behalf of eAppraiseIT." *Id.* at 1. The report further identifies the clients

22   and intended users of the report as WaMu and eAppraiseIT. *Id.* at 3, 6. "No additional use or users

23   are identified by the appraiser." *Id.* at 3. LSI had no role in preparing the report for Ms. Scholl's

24   property. *See* Affidavit of Kathleen M. Rice, dated May 2, 2008 ("Rice Aff.") ¶¶ 7-15. LSI has

25   neither prepared nor reviewed an appraisal report for either Ms. Scholl or for the property located at

26   817 Northwest 194 Terrace. *Id.*

27

28                                                      4

In or around March of 2007, Mr. Spears sought to obtain his own loan from WaMu to refinance a piece of real property located in San Jose, California. Am. Compl. ¶ 63. Although Mr. Spears does not attach a copy of his appraisal report to the Amended Complaint, he nevertheless alleges that WaMu procured an appraisal in connection with the loan application and that the appraisal was performed for WaMu and eAppraiseIT. Am. Compl. ¶ 64. In it Mr. Spears does not claim that he was the "client" of the appraiser as defined under USPAP. *Id.* LSI played no role in obtaining that specific appraisal for Mr. Spears. *See* Rice Aff. at ¶¶ 4-6. LSI has neither prepared nor reviewed any appraisal for Mr. Spears. *Id.*

Neither Mr. Spears nor Ms. Scholl identifies any specific problems with the appraisals relating to their real estate loans. Nor for that matter do Plaintiffs specifically allege that their appraisals misstated the value of the real estate they were borrowing against. Instead, Plaintiffs contend that their appraisals violated USPAP because WaMu provided LSI and eAppraiseIT with a list of "preferred" appraisers. Am. Compl. ¶ 36. Plaintiffs do not allege that their appraisals were performed by these "preferred" appraisers. Nor do Plaintiffs specifically allege that the assignment given to the individual appraisers included a requirement that they report a predetermined opinion and conclusion. There is likewise, no specific claim that the individual appraiser assignments were contingent upon developing or reporting a predetermined value. Nevertheless, Plaintiffs contend that the use of this preferred list contravened USPAP guidelines.

### ARGUMENT

Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." When considering a 12(b)(1) motion to dismiss, the district court "is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary."[3] *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the

---

[3] Pursuant to Rule 12(b)(1) a court is free to consider facts and evidence outside the complaint – including affidavits and other documents – without converting the motion into one for summary judgment. *See Foley v. Bates*, 2007 WL 1831133, at *1 (N.D. Cal. June 25, 2007) *(*"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

5

existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  Plaintiffs, as the party seeking to invoke jurisdiction, have the burden of establishing that jurisdiction exists.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-78 (1994).  To defeat a factual challenge to jurisdiction, the plaintiff must come forward with evidence establishing jurisdiction. *Thornhill*, 594 F.2d at 733.

When considering a Rule 12(b)(6) motion to dismiss, all material allegations in the complaint must be deemed true and construed most favorably to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Nevertheless, a court may consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  Moreover, a court may disregard allegations in the complaint if facts established by the exhibits to the complaint contradict those allegations.  *Id.*  Nor for that matter is the court required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Finally, a court need not accept legal conclusions "cast in the form of factual allegations." *Id.*

## I.    PLAINTIFFS CANNOT ESTABLISH THE BASIC JURISDICTIONAL REQUIREMENTS OF ARTICLE III STANDING.

Article III standing goes to the very heart of a court's subject matter jurisdiction and represents "a threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). As the party invoking federal jurisdiction, Plaintiffs have the burden of establishing each element of standing for each claim and form of relief sought.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *see also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1040-42 (9th Cir. 1999) (standing to seek damages does not in and of itself serve as standing to seek equitable relief).  To meet this burden, Plaintiffs must "clearly and specifically" set forth facts sufficient to satisfy each required element.  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

To establish Article III standing, a plaintiff is required to demonstrate: (i) an injury-in-fact, (ii) that is fairly traceable to the Defendant's alleged misconduct, and (iii) will likely be redressed by

6

a favorable court decision.  *See Lujan*, 504 U.S. at 560-61; *San Diego County Gun Rights Committee v. Reno,* 98 F.3d 1121, 1126 (9th Cir. 1996).  The injury-in-fact element requires a plaintiff to show that they have personally suffered some injury as a result of the allegedly unlawful conduct.  *Lujan*, 504 U.S. at 560 n.1.  Accordingly, "a named plaintiff can bring suit against a party only if the plaintiff personally suffered an injury and that injury is traceable to that party."  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460-61 (D. N.J. 2005).  Simply put, if Plaintiffs cannot trace an injury to LSI, then they lack standing to pursue a claim against LSI.[4]

"The standing inquiry does not change in the context of a putative class action."  *Id.*  In fact, a class action "adds nothing to the question of standing," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n. 20 (1976), and a party is required to establish standing individually, and "cannot acquire individual standing by virtue of bringing a class action."  *See* 1 Alba Conte, et al., Newberg on Class Actions § 2:5 at p. 75 (4th ed. 2003).[5]  In the words of Chief Justice Burger, standing "cannot be acquired through the back door of a class action."  *Allee v. Medrano*, 416 U.S. 802, 828-829 (1979) (concurring).  Consequently, "to establish Article III standing in a class action, at least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a class claim against that defendant."  *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004).

Here, Plaintiffs have failed to establish there is any individual in the action with standing to bring a claim against LSI.  Neither of the Plaintiffs obtained appraisals through LSI.  *See* Am.

---

[4] The establishment of constitutional standing is required to state a claim under RESPA.  *See, e.g., Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819 (E.D. Tex. 2002) (holding that putative class representatives had suffered no injury and therefore had no standing to assert RESPA claim); *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997) (finding plaintiffs lacked standing to assert RESPA claim absent a cognizable injury).  In a similar vein, both UCL and CLRA impose an implicit standing requirement, which obligates plaintiffs to demonstrate that they suffered harm "as a result of" defendants' unlawful or unfair practices.  *See* Cal. Bus. & Prof. Code § 17204 (UCL); Cal. Civ. Code § 1780 (CLRA).

[5] *See also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ( "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); 5 James Wm. Moore, et al., Moore's Federal Practice § 23.63[1][b] at p. 23-291(3rd ed. 2007) ("The named plaintiff in a class action must meet all the jurisdictional requirements to bring an individual suit asserting the same claims, including standing.  That is, an actual case or controversy must exist between the named plaintiff and the defendants.  If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim.")

7

Compl., Ex. 2; Docket No. 43, Ex. G; Rice Aff. ¶¶ 4-15.  Plaintiffs seek to gloss over this fact by alleging that they received an appraisal from "EA and/or LSI."  Am. Compl. ¶¶ 59, 64.  The undisputed facts – as established by the text of the appraisals themselves and by the Rice Affidavit – demonstrate that LSI had "absolutely no involvement with or connection to" the appraisals at issue in this suit.  *Kirkhart v. PPG Indus., Inc.*, 2006 WL 3692643, at *4 (N.D. W.Va. Dec. 12, 2006).  As a result, Plaintiffs cannot establish standing or jurisdiction with respect to LSI.  *See id.* ("Based on the foregoing affidavits, this Court finds that although American Tire sells tires to PPG, it had absolutely no involvement with or connection to the particular tires on the Kalamazoo at the time of the accident.").

Nor can Plaintiffs rely on "the conspiracy theory of liability and class representation principles," to establish standing.  *In re Western States Wholesale Natural Gas Antitrust Litig.*, 2008 WL 486607, at *4 (D. Nev. Feb. 19, 2008).  In *Western States*, for example, the court dismissed claims against nine defendants based on affidavits from their employees stating that "they searched company records for sales between each Defendant and any named Plaintiffs and discovered no evidence of any such direct sale."  *Id.*  Plaintiffs could not rely on the fact that "one named Plaintiff has standing to assert a claim against one named Defendant" to establish standing.  *Id.* at *8.  Nor could they rely on "unnamed potential class members who may have purchased . . . directly from the moving Defendants to establish standing as to those Defendants."  *Id.*  Here, the absence of any direct connection between Plaintiffs and LSI precludes them from pursuing either direct or class claims against LSI.  *See In re Franklin*, 388 F. Supp. 2d at 462 ("In other words, if the named plaintiffs cannot or do not assert their own direct claim against a named defendant, they may not bring a claim against that defendant on behalf of other investors."); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp 2d 100, 119 (D. Mass. 2006) (dismissing claims against defendants that plaintiffs did not invest with because "plaintiffs have no standing to sue . . . 'on behalf of'" other defendants "simply because the style their case as a class action"); *Circus Circus*, 223 F.R.D. at 544 (finding that "what is required is that for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant").

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if Plaintiffs could establish standing as to LSI, the Amended Complaint fails to state any claim upon which relief can be granted.  Therefore, the claims against LSI must be dismissed pursuant to Rule 12(b)(6).

### A.    California Law Does Not Recognize A Claim Based on Negligent Appraisal

Under California law, a borrower cannot state a claim based on a deficient appraisal ordered by a bank.  *See Luri v. First Fed. Bank of Cal.*, 2001 WL 1656602, at *5 (Cal. Ct. App. 2001) (no claim against bank or appraiser based on appraisal that allegedly failed to discover defects in property); *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53 (Cal. Ct. App. 1991) (no claim against lending institution based on appraisal that allegedly failed to discover defects in property); *Gay v. Broder*, 109 Cal. App. 3d 66, 73, 167 Cal. Rptr. 123 (Cal. Ct. App. 1980) (no cause of action where appraisal negligently set the value of the property lower than the sales price such that plaintiff was unable to secure financing from Veterans Administration and forced to obtain alternative financing).  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark*, 231 Cal. App. 3d at 1096; *see also Luri*, 2001 WL 1656602, at *5 (holding plaintiff could not state claim against appraiser because *inter alia* plaintiff failed to allege that she was ever the appraiser's client).

There are many reasons in support of the general rule: (1) the purpose of the appraisal is to protect the lender, not the borrower; (2) even if it is foreseeable that the borrower may consider the appraisal in connection with closing the loan transaction, the foreseeability of harm to the borrower is remote; (3) even assuming injury, the link between the injury and the conduct of the bank and the appraiser is tenuous; (4) there is no moral blame because the borrower was in a position to protect himself from any alleged loss; (5) a strong public policy exists to prevent a lending institution from having to insure the success of every investment, which would require banks to conduct more in-

9

1    depth appraisals and consequently drive up the costs of settlement services for borrowers.  *See*

2    *Nymark*, 231 Cal. App. 3d at 1099-100.

3          Here, it is clear that Plaintiffs were not the clients of the appraisers.  *See infra* at 4-5.

4    Plaintiffs were not the intended or authorized users of the appraisal reports.  *Id.*  In fact, under

5    USPAP guidelines, Plaintiffs were not even permitted to see the results of the appraisal report.  *Id.*

6    Plaintiffs cannot avoid the standard of law governing the relationship between lender, appraiser and

7    borrower by simply recasting a claim for negligent appraisal as a claim under RESPA, the UCL,

8    CLRA or for breach of contract or unjust enrichment.  *See Nymark*, 231 Cal. App. 3d at 1093 n.2

9    ("The nature of the cause of action is determined by the allegations set forth therein, not by the title

10   ascribed to it by the pleader.")

11         **B.    Plaintiffs Have Suffered No Actionable Damages Based on the Appraisal**

12                 **Reports**

13         The allegations of the Amended Complaint also ignore the reality that Plaintiffs have

14   suffered no actionable damages.  This inevitable truth is fatal to Plaintiffs' claims against LSI.  *See,*

15   *e.g., Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473, 14 Cal. Rptr. 3d 302

16   (Cal. Ct. App. 2004) ("A breach of contract is not actionable without damage."); *Conrad v. Bank of*

17   *Am.*, 45 Cal. App. 4th 133, 159, 53 Cal. Rptr. 2d 336 (Cal. Ct. App. 1996) (holding a cause of action

18   for fraud cannot stand where the plaintiff has suffered no consequential damages).

19         Plaintiffs allege that they were able to secure loans in the open market as a result of arms

20   length transactions between themselves and WaMu.  Those loans were intended to allow them to

21   purchase certain properties.  Am. Compl. ¶¶ 58, 63.  In order to protect its interest and as a condition

22   of entering into those loans, WaMu required the subject properties to be appraised.  Am. Compl. ¶

23   21.  To that end, WaMu procured the appraisals, the cost of which was charged to Plaintiffs when

24   the loans closed.  Even assuming that the allegations in the Complaint are true, Plaintiffs do not

25   allege how, if at all, the values stated in the appraisal reports made any difference between the loan

26   amounts that were promised and the loan amounts they ultimately received.  Moreover, Plaintiffs do

27   not allege that they paid anything other than the fair market value of the properties they purchased.

28

1    Since the Plaintiffs have not alleged that they received anything other than the loans and properties

2    they bargained for, it is impossible to conclude that they have suffered any actionable damages.

3          In a similar vein, Plaintiffs do not claim that they used the appraisal reports in connection

4    with the loan transactions.  *See Hughes v. Holt*, 140 Vt. 38, 41, 435 A.2d 687 (Vt. Sup. Ct. 1981)

5    ("To establish a claim based on the appraisal, either against the appraiser or the bank, the plaintiffs

6    had to show that the appraisal was a proximate cause their injury and loss.").  As discussed above,

7    Mr. Spears has apparently never even seen the appraisal report that was used to secure his loan.

8    Despite any allegations to the contrary, the appraisal report obtained in connection with Ms. Scholl's

9    loan was intended to be used "for the lender/client to evaluate the property that is the subject of this

10   appraisal for a mortgage finance transaction."  Am. Compl. Ex. 2 at 4.  The Amended Complaint is

11   entirely lacking in allegations that might support Plaintiffs' claims that the appraisal reports were the

12   proximate cause of any purported damages.

13         To the extent Plaintiffs claim that their damages consist of the fees they paid for the appraisal

14   reports, they still have no claim against LSI because the reports were neither prepared nor reviewed

15   by LSI and, in any event, were not prepared for Plaintiffs' benefit.  *See Nymark*, 231 Cal. App. 3d

16   1089 (holding that there is no duty of care owed to the borrower in preparing an appraisal because its

17   purpose is to protect the lender not the borrower).  The appraisal is merely a cost of the application

18   for the loan.  *See Gay*, 109 Cal. App. 3d 66, 73 (stating that payment by the borrower of the

19   designated appraiser's fee does not change that the appraisal was designed to safeguard the lender

20   from responsibility upon its guarantee by reason of inadequate security).

21         Furthermore, Plaintiffs do not claim that the fees they paid were fictitious costs.  The

22   appraisal report attached to the Complaint belies any claim that no services were rendered.  Indeed,

23   the Complaint alleges that an appraisal report was completed in connection with each loan.  Am.

24   Compl. ¶¶ 59, 64.  Plaintiffs merely claim that what the fees bought them were worthless.

25   Importantly, however, there was never intended to be any purpose or value in obtaining the appraisal

26   reports besides allowing Plaintiffs to close the loan transactions with WaMu.  Thus, to the extent that

27

28                                                11

1    Plaintiffs obtained the loans for which they applied, any allegations regarding damages sustained are

2    wholly without merit.  Am. Compl. ¶¶ 61, 66.

3        C.        **Plaintiffs Cannot State A Claim Under RESPA Against LSI Because LSI Did**

4                  **Not Provide Any Settlement Services In Connection With Plaintiffs' Loans**

5        Plaintiffs are seeking to recover both compensatory and treble damages for the alleged

6    violations of RESPA.  Because Plaintiffs fail to include even the most basic allegations concerning

7    LSI in the Complaint, this claim must be dismissed.

8        As a preliminary matter, Scholl's RESPA claim against LSI is barred under the applicable

9    one-year statute of limitations because the alleged RESPA violation occurred in October 2006.  12

10   U.S.C. § 2614; *Edwards v. First Am. Corp.*, 517 F. Supp. 2d 1199, 1205 (C.D. Cal. 2007) (stating

11   that the statute of limitations for a Section 2607 claim accrues when the "plaintiff pays for the

12   tainted service, typically at closing").

13       Moreover, the Complaint fails to state a claim against LSI for violations of RESPA because

14   Plaintiffs do not (and could not) allege that LSI arranged for settlement services or paid either

15   appraiser for their services in connection with their loans or the subject properties.  Nor have

16   Plaintiffs identified which portion of the fees paid to these appraisers constituted the amount

17   involved in the alleged RESPA violation.  *Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819, 824

18   (E.D. Tex. 2002) (holding recovery under RESPA is "limited to that portion of a particular

19   settlement charge that was excessive or otherwise 'kicked-back' in exchange for the referral").  To

20   the extent that Plaintiffs rely on the vague allegation that appraisers on the Proven Appraiser List

21   received greater compensation than LSI appraisers, the Complaint fails to allege that Plaintiffs'

22   appraisals were obtained from appraisers on the Proven Appraiser List.  Even if the appraisals were

23   procured from appraisers on the Proven Appraiser List, the Complaint still fails to state a claim for

24   violations of RESPA because RESPA does not prohibit bona fide compensation for services actually

25   performed.  *See* 12 U.S.C. 2607(c).

26

27

28

                                                    12

**D.      Plaintiffs Are Not Entitled to Restitution Under the UCL Because They Do Not Have Standing to Seek Injunctive Relief**

Plaintiffs seek restitution and prospective relief under the UCL.  Cal. Bus. & Prof. Code §§ 17200 *et seq*.  As stated above, Plaintiffs are not entitled to prospective relief because they do not have Article III standing.

While the scope of conduct proscribed by the UCL is broad, its remedies are limited.  Relief in the form of damages is not available.  As a result, "prevailing plaintiffs are generally limited to injunctive relief and restitution."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003).  Restitution is a form of ancillary relief to an injunction.  Thus, in order for a court to enter restitutionary relief, it must enter an injunction.  *Deitz v. Comcast Corp.*, 2006 WL 378902, at *5 (N.D. Cal. 2006) ("If, however, the court does not enter injunctive relief, then there is no occasion to consider ancillary relief in the form of an award of restitution.").   Here, the court cannot grant restitution because Plaintiffs do not have standing to obtain an injunction.  *Id.* (dismissing plaintiff's Section 17200 claim).  Thus, the claims for violations under the UCL must be dismissed in their entirety.

**E.      CLRA Does Not Apply to Real Estate Transactions**

Plaintiffs seek damages and injunctive relief under CLRA.  Cal. Civ. Code § 1750 *et seq*.  However, Plaintiffs are foreclosed from seeking relief under CLRA because CLRA does not apply to claims based on real estate transactions.  *See* Cal. Civ. Code § 1754 ("The provisions of this title shall not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence…."); *see also McKell v. Washington Mutual Inc.*, 142 Cal. App. 4th 1457, 1488, 49 Cal. Rptr. 3d 227, 253 (Cal. Ct. App. 2006) (finding the CLRA inapplicable, and sustaining defendants' demurrer as to plaintiffs' CLRA cause of action, where defendant's challenged actions were "undertaken in transactions resulting in the sale of real property").  Accordingly, Plaintiffs' CLRA claims fail and must be dismissed.

13

1    **F.    Plaintiffs Have Not Sufficiently Alleged the Existence of A Contract**

2    Plaintiffs seek to recover compensatory damages and injunctive relief based on breach of

3    contract.  This claim must be dismissed.  As discussed above, Plaintiffs allegations of damages are

4    patently insufficient.  In addition, Plaintiffs fall far short of adequately pleading the existence of a

5    contract between themselves and LSI.

6    "Under California law, a plaintiff must establish 'the existence of the contract, performance

7    by the plaintiff or excuse for nonperformance, breach by the defendant and damages' to state a

8    breach of contract claim."  *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1021 (N.D.

9    Cal. 2006) (quoting *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745, 108 Cal.

10   Rptr. 2d 23 (Cal. Ct. App. 2001)).  In *Arikat*, the court held that plaintiffs' claim for breach of

11   contract could not stand upon the  "vague allegation that they entered into 'various and sundry credit

12   agreements with all named defendants, and/or their assignors.'"  430 F. Supp. 2d at 1022.  Plaintiffs

13   here are entitled to fare no better.  As to the existence of a contract, the Complaint does nothing

14   more than allege that "EA and/or LSI undertook and agreed to provide and provided Plaintiffs and

15   the Class with these appraisals directly and/or by delivery to them through WaMu."  Am. Compl.

16   ¶120.  This is simply insufficient to state a cause of action for breach of contract.  *See Arikat*, 430 F.

17   Supp. 2d at 1022.

18   **G.    Plaintiffs Cannot Recover For Quasi-Contract Because LSI Never Received A**

19   **Benefit from Plaintiffs**

20    Plaintiffs cannot state a claim for quasi-contract against LSI because Plaintiffs do not, and

21   cannot, allege that they performed any services for LSI.  In order to recover under a quasi-contract or

22   "quantum meruit" theory, Plaintiffs must establish "*both* that [they were] acting pursuant to either an

23   *express or implied request* for such services from defendant *and* that the services rendered were

24   *intended to and did benefit* the defendant."  *Day v. Alta Bates Med. Ctr.*,, 98 Cal. App. 4th 243, 248,

25   119 Cal. Rptr. 2d 606, 609 (Cal. Ct. App. 2002) (emphasis in original).  "[C]ourts have always

26   required that the plaintiff have bestowed some benefit on the defendant as a prerequisite to recovery

27   [under a theory of quantum meruit]."  *Id.* at 249.  In fact, the very purpose of "quantum meruit

28   14

recovery is to compensate plaintiffs who have provided a benefit to defendants but who do not have a contract – express or implied – with those defendants." *In re De Laurentiis Entertainment Group, Inc. v. National Broadcasting Co.*, 963 F.2d 1269, 1272-73 (9th Cir. 1992).

Here, Plaintiffs have not performed any services for LSI nor otherwise conferred any unearned benefit on LSI. Furthermore, Plaintiffs never specify that they paid LSI for any services, and, in fact, LSI was not paid by Plaintiffs because LSI did not render any services whatsoever in connection with the subject properties. Accordingly, the claim for quasi-contract cannot survive against LSI and, therefore, must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, LSI respectfully requests that the Court dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, all claims against it set forth in the Amended Complaint.


Dated: May 2, 2008              DEWEY & LEBOEUF LLP


                                By: ___/s/___*Kris H. Man*_____
                                        Margaret A. Keane (State Bar No. 255378)
                                        Kris H. Man (State Bar No. 246008)

                                *Attorneys For Defendant, LSI Appraisal, LLC*

1  MARGARET A. KEANE (State Bar No. 255378)
   KRIS H. MAN (State Bar No. 246008)
2  DEWEY & LEBOEUF LLP
   One Embarcadero Center
3  Suite 400
   San Francisco, CA  94111-3619
4  Telephone: (415) 951-1100
   Facsimile:  (415) 951-1180
5
   *Attorneys for Defendant*
6  *LSI Appraisal, LLC*

7
                IN THE UNITED STATES DISTRICT COURT
8
                NORTHERN DISTRICT OF CALIFORNIA
9
                        SAN JOSE DIVISION
10
   FELTON A. SPEARS, JR. and ,                )  Case No. 5:08-cv-00868 (HRL)
11 SIDNEY SCHOLL, on behalf of themselves      )
   and all others similarly situated,         )  <u>CLASS ACTION</u>
12                                             )
                              Plaintiffs,      )  **AFFIDAVIT OF KATHLEEN M. RICE**
13                                             )  **IN SUPPORT MOTION TO DISMISS**
         vs.                                   )  **AMENDED COMPLAINT**
14                                             )
   WASHINGTON MUTUAL, INC.,                    )  Date:   Tuesday, July 15, 2008
15 a Washington corporation;                   )  Time:   10:00 a.m.
   FIRST AMERICAN EAPPRAISEIT,                 )  Place:  Courtroom 2, 5th Floor
16 a Delaware corporation; and                 )          280 South 1st Street
   LENDER'S SERVICE, INC.,                     )          San Jose, CA 95113
17                                             )
                              Defendants.      )  Honorable Howard R. Lloyd
18 _____ )

19

20        I, Kathleen M. Rice, certify as follows:

21        1.      I am the Executive Vice President of Appraisal Operations for LSI Appraisal, LLC,

22 ("LSI or the "Company") and I am authorized to make this verification on LSI's behalf. [1]

23        2.      I submit this affidavit in support of LSI's Motion to Dismiss the Amended Complaint

24 filed in the above referenced action.  I have personal knowledge of the facts set forth herein and, if

25 called upon to do so, could and would competently testify thereto.

26

27 [1] The Amended Complaint wrongly names "Lender's Service, Inc." as a defendant.  The correct legal entity is LSI Appraisal, LLC.

28                                        1
   AFFIDAVIT OF KATHLEEN M. RICE IN SUPPORT OF LSI'S MOTION TO DISMISS COMPLAINT

3.    LSI maintains a number of databases that track and record the appraisal reports the Company processes for each of its clients. The database allows a user with access to search by name of individual or a specific address or based on other criteria. In my capacity as Executive Vice President of Appraisal Operations, I authorized a search of LSI's database for any and all appraisal reports relating to Plaintiffs Felton A. Spears, Jr. and Sidney Scholl and the properties that are at issue in the Amended Complaint.

### Felton A. Spears, Jr.

4.    Neither the Amended Complaint nor the closing statement, attached as Exhibit 3 to the complaint, lists a full address of the alleged appraisal, only the city and state (San Jose, California).

5.    Nevertheless, LSI conducted a name search for any appraisal report prepared for a property owned by Felton A. Spears, Jr. or his wife, Toni Spears.

6.    LSI found that the Company had not prepared any appraisal report for property owned by either Mr. Spears or his wife.

### Sidney Scholl

7.    The Amended Complaint lists an address of 817 Northwest 194 Terrace, Edmond, Oklahoma 73003 for the appraisal obtained for property being purchased by Ms. Scholl.

8.    As a preliminary matter, a copy of the appraisal report attached to the Amended Complaint as Exhibit 2 indicated that the appraisal was completed "on behalf of eAppraiseIT." As eAppraiseIT is a separate company with no corporate relationship to LSI or its parent company, Fidelity National Information Services, this indicates that the appraisal was not prepared by LSI.

9.    LSI searched its database for an appraisal report completed for that property.

10.    LSI found no appraisal report completed by LSI for the property located at 817 Northwest 194 Terrace, Edmond, Oklahoma 73003.

11.    LSI also utilized the lot number contained on the appraisal, namely Lot 2, Block 3, Stonebriar Sec. 1 in Edmond Oklahoma.

12.    LSI was not able to find any appraisal report completed by LSI for that lot location.

2

1       13.    LSI also searched for any appraisal prepared for a property being purchased by

2  Sidney Scholl.

3       14.    LSI found that it had not prepared any appraisal for a property being purchased by

4  Sidney Scholl.

5       15.    There is simply no evidence in LSI's records that the Company ever prepared an

6  appraisal for either Ms. Scholl or the property she identified in her Amended Complaint.

7

8       I declare under penalty of perjury of the laws of the State of Pennsylvania and the United

9  States of America that the foregoing is true and correct.

10

11

12  Dated: May 2, 2008

                                   KATHLEEN M. RICE

13

14

15

16

17  State of PENNSYLVANIA       )

     County of ALLEGHENY      )

18

19  On MAY 2, 2008 before me, GREGORY J. PLIZGA, personally appeared Kathleen M. Rice, *personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within*

20  *instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon*

21  *behalf of which the person(s) acted, executed the instrument.*

22  WITNESS my hand and official seal.

                                          [NOTARIAL SEAL]

23

24  Signature

     (Signature of Notary Public)

25

                    COMMONWEALTH OF PENNSYLVANIA

26                            Notarial Seal

                      Gregory J. Plizga, Notary Public

  SF222790.1             Moon Twp., Allegheny County

27                 My Commission Expires Dec. 19, 2009

              Member, Pennsylvania Association of Notaries

                                   3

28