Joseph N. Kravec, Jr. *(Admitted Pro Hac Vice)*
SPECTER SPECTER EVANS
  & MANOGUE, P.C.
The 26th Floor Koppers Building
Pittsburgh, Pennsylvania 15219
Tel:    (412) 642-2300
Fax:    (412) 642-2309
E-mail: jnk@ssem.com

Michael D. Braun (167416)
BRAUN LAW GROUP, P.C.
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Tel:    (310) 442-7755
Fax:    (310) 442-7756
E-mail: service@braunlawgroup.com

Ira Spiro (67641)
SPIRO MOSS BARNESS, LLP
11377 West Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Tel:    (310) 235-2468
Fax:    (310) 235-2456
E-mail: ira@spiromoss.com

Janet Lindner Spielberg (221926)
LAW OFFICES OF JANET
LINDNER SPIELBERG
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Tel:    (310) 392-8801
Fax:    (310) 278-5938
E-mail: jlspielberg@jlslp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SIDNEY SCHOLL and FELTON A. SPEARS, JR., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK); FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC.,<br><br>Defendants. | **CASE NO.: 5:08-CV-00868 RMW**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STAY PROCEEDINGS**<br><br>**DATE:    July 25, 2008**<br>**TIME:    9:00 a.m.**<br>**CTRM:    6, 4th Floor** |

# TABLE OF CONTENTS

**PAGE NO.**

I.      INTRODUCTION ....................................................... 1

II.     FACTUAL SUMMARY ..................................................... 1

III.    PROCEDURAL SUMMARY ................................................. 3

        A.      Procedural Summary Before the Judicial Panel on Multidistrict
                Litigation ................................................................. 3

        B.      Procedural Summary of the Case at Bar ................................ 4

IV.     ARGUMENT .......................................................... 5

        A.      No Prejudice to Defendants ......................................... 5

        B.      Hardship and Inequity to Plaintiffs ................................. 6

        C.      Judicial Economy .................................................. 6

V.      CONCLUSION ........................................................ 8

i

I.    **INTRODUCTION**

By this motion, Plaintiffs respectfully ask this Court to exercise its discretion and stay this case, pending the resolution of Plaintiffs' Motion For Transfer of Tag-Along Action to MDL No. 1919.

II.    **FACTUAL SUMMARY**

This is a putative class action against Washington Mutual Bank, FA ("WaMu"), First American eAppraiseIT ("EA"), and Lender's Service Inc., ("LSI") (collectively "Defendants") brought by Felton Spears and Sidney Scholl ("Plaintiffs") on behalf of themselves and a nationwide class of consumers who, on or after June 1, 2006, received unlawful, false appraisals that WaMu procured for Plaintiffs through either EA or LSI in connection with home loans from WaMu.

Plaintiffs and members of the class financed home purchases through WaMu. Prior to obtaining the loan, WaMu required the buyer to pay for a purportedly independent professional appraisal that WaMu procured for them to determine the fair market value of the property and ostensibly to justify the amount of the loan.

A real estate appraisal is supposed to be an independent, objective, impartial, unbiased, credible professional estimate of the fair market value of a particular property. Appraisers are to follow federally accepted standards, the Uniform Standards of Professional Appraisal Practice ("USPAP"), which govern the ethical and legal aspects of the appraisal undertaking, assessment, reporting and review process, and establish the minimum standards for performing a "credible appraisal". Under USPAP, an appraiser and an appraisal reviewer must perform assignments with impartiality, objectivity, and independence, and without bias or accommodation of personal interests. In appraisal practice under USPAP, an appraiser and an appraisal reviewer must not perform as an advocate for any party or issue, must not accept an assignment that includes the reporting of predetermined opinions and conclusions or favors the cause of any client, must not communicate assignment results or write a report in a misleading or fraudulent manner, and must not permit an employee or other person to communicate a misleading or fraudulent report.

1

1    As alleged in the complaint, in or about June 2006, WaMu entered an agreement, conspiracy
2    or scheme with EA and LSI, two purportedly independent appraisal companies, to handle all of
3    WaMu's home loan appraisals for WaMu borrowers. As part of this arrangement, EA and LSI
4    received appraisal requests from WaMu, procured local appraisers to perform the appraisals,
5    reviewed the appraisal reports, and requested at the behest of WaMu that the appraisers make
6    changes before finalizing the reports and providing them to WaMu to transmit to the borrowers. In
7    reality, WaMu, with the full, unfettered cooperation of EA and LSI, controlled the process by which
8    individual appraisers were selected, how home appraisals were performed and ultimately the values
9    at which properties were appraised. EA and LSI consulted directly with WaMu and its loan officers
10   to establish the property values they desired before EA and LSI (and its appraisers) finalized the
11   appraisal reports. This conspiratorial conduct allowed WaMu to direct appraisers to artificially
12   inflate home values and thus provide false appraisals in order to qualify more people for higher
13   value loans. WaMu would then aggregate and package these home loans and sell them in the
14   financial markets for a substantial profit.

15   As part of the scheme, EA and LSI each received millions of dollars in appraisal fees from
16   unsuspecting WaMu borrowers who, despite paying for what should have been credible appraisals
17   *(i.e.*, done in compliance with applicable legal and professional standards so as to provide an
18   independent, unbiased, and objective appraisal of the fair market value of their property), they
19   instead unwittingly received biased appraisals that were neither independent, objective or in
20   compliance with legal and professional standards and therefore, in fact, were not appraisals at all.
21   Each borrower was charged for a credible, lawful appraisal, but as a result of the arrangement
22   between WaMu, EA and LSI, no credible, lawful appraisal was performed and instead they received
23   nothing more than a false, sham appraisal that had no real value. WaMu borrowers (*i.e.*, Plaintiffs
24   and the Class) were damaged thereby.

25   The complaint alleges that Defendants' conduct violates the Real Estate Settlement
26   Procedures Act, 12 U.S.C. Section 2607, the unlawful, unfair and fraudulent prongs of California's
27   Business and Professions Code Section 17200, *et seq*. (the "UCL") as well as the Consumer Legal
28   Remedies Act ("CLRA"). Defendants' conduct also constitutes an unlawful civil conspiracy.

2

1   Defendants' conduct also breaches their contracts with Plaintiffs and the Class, either directly or

2   because Plaintiffs and Class members are intended beneficiaries of the contracts, or Defendants'

3   services, or is grounds for restitution on a quasi-contract/unjust enrichment basis.

4   **III.    PROCEDURAL SUMMARY**

5          **A.    Procedural Summary Before the Judicial Panel on Multidistrict Litigation**

6          On November 1, 2007, the New York Attorney General ("NYAG") filed a complaint against

7   First American eAppraiseIT, an appraisal management company ("AMC"), for its role in

8   participating in a conspiracy with WaMu to provide artificially high home appraisal values.  The

9   NYAG's complaint also alleged a third company, Lenders Services, Inc., also participated in the

10  conspiracy with WaMu and EA to provide fraudulent appraisals.

11         Soon after the NYAG filed its complaint, multiple individual and class actions were filed

12  against WaMu alleging a variety of causes of action including securities fraud, derivative actions,

13  and ERISA claims, each premised specifically on the NYAG's allegations of the WaMu-EA

14  conspiracy.  [See Docket No. 88 Plaintiffs' Brief in Support of Motion for Transfer of Tag-along

15  Action to MDL NO. 1919].

16         On November 28, 2007, WaMu Moved the Panel to centralize all of the actions and transfer

17  them to the United States District Court for the Western District of Washington.  *Id.* at p. 2.  WaMu

18  argued that transfer of the actions for coordinated pretrial proceedings was appropriate because

19  nearly all of the complaints had the same underlying factual  allegations regarding WaMu's alleged

20  conspiracy with its AMCs. *Id.*

21         On February 8, 2008, Plaintiffs filed their action in the United States District Court for the

22  Northern District of California, on behalf of themselves and a class of WaMu borrowers nationwide

23  alleging the conspiracy among WaMu, EA and LSI as the basis for their consumer claims.  As with

24  the securities, derivative and ERISA actions, the gravamen of Plaintiffs' complaint is that WaMu

25  entered into a conspiracy with EA and LSI, in an effort to artificially inflate home mortgage loans,

26  with the ultimate goal of securitizing them and selling them in the financial markets.

27

28

3

1    As Plaintiffs' case shares the identical factual bases as the securities, derivative and ERISA

2    actions filed against WaMu, WaMu noticed Movants' action as a tag-along action pursuant to 28

3    U.S.C. § 1407 on February 15, 2008. *Id* at p. 3.

4    On February 21, 2008, less than one week after WaMu noticed Plaintiffs' action as a tag-

5    along to the derivative, securities and ERISA actions, the Panel issued a Transfer Order centralizing

6    most of the actions then pending against WaMu and transferring them to the United States District

7    Court for the Western District of Washington before the Honorable Marsha J. Pechman. The Panel

8    neither mentioned nor considered Plaintiffs' action in its Transfer Order for MDL 1919 despite its

9    factual similarities to the other actions transferred. *Id.* Instead, Plaintiffs were notified by the Clerk

10   of the Panel that WaMu's Notice of Tag-along Action was administratively denied as being "not

11   related" to MDL 1919 by indicating "No Action Taken" on the Panel's Case Listing Report. The

12   Clerk did not specify a reason why Plaintiffs' action was deemed "not related."

13   Despite the Panel's Clerk's administrative determination that Movants' action was "not

14   related," Plaintiffs believe, as does WaMu, that the factual claims underlying their action are

15   identical to the other actions already centralized in MDL 1919, making transfer of their action

16   pursuant to Rule 1407 appropriate for coordination of pre-trial proceedings and to avoid duplicative

17   discovery and inconsistent pre-trial rulings. Accordingly, on June 19, 2008, Plaintiffs filed a

18   Motion for Transfer of Tag-Along Action with the Judicial Panel on Multidistrict Litigation. The

19   Panel's Clerk has advised Plaintiffs' counsel that this Motion for Transfer likely will be scheduled

20   by the Panel for a hearing in September, 2008.

21            **B.    Procedural Summary of the Case at Bar**

22   This matter was originally filed on February 8, 2008. An amended complaint ("FAC") was

23   filed on March 28, 2008. The matter was assigned to the Honorable Magistrate Howard R. Lloyd.

24   On May 9, 2008, Defendant EA filed notice of their refusal to consent to this matter being heard by

25   Magistrate Lloyd and the case was subsequently reassigned to this Court on May 12, 2008.

26   Defendants have since each moved to dismiss the FAC and parties have stipulated to a briefing

27   schedule which culminates with a hearing on Defendants' motions on August 15, 2008. The Court

28   has ordered a case management conference for August 29, 2008 and further ordered that a joint case

4

1  management conference statement be filed by August 22, 2008.  Parties have already met and
2  conferred pursuant to this Court's CMC order dated May 15, 2008 and Plaintiffs have since
3  propounded discovery to each Defendant consisting of 54 document requests.

4  **IV.    ARGUMENT**

5      It is well-established that this Court has discretion to control its docket and the pace of
6  proceedings before it in the interests of justice and judicial economy.  *Moses H. Cone Mem. Hosp. v.*
7  *Mercury Constr. Corp.*, 460 U.S. 1, 20, fn. 23, 103 S.Ct. 927, 74 L.Ed. 2d 765 (1983) (recognizing
8  that court may stay case in its discretion to control its docket); *Adams v. California Dept. of Health*
9  *Services*, 487 F.3d 684, 688 (9th Cir. 2007) (district courts retain broad discretion to control their
10 dockets).  Indeed, "the power to stay proceedings is incidental to the power inherent in every court to
11 control the disposition of the causes on its docket with economy of time and effort for itself, for
12 counsel, and for litigants."  *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81
13 L. Ed. 153 (1936).  "How this can best be done calls for the exercise of judgment, which must weigh
14 competing interests and maintain an even balance."  *Id.*

15     In considering a motion to stay, a court should consider the interest of judicial economy and
16 efficiency, and the potential prejudice or hardship to the parties.  *Rivers v. Walt Disney Co.*, 980
17 F.Supp. 1358, 1360 (C.D. Cal. 1997).  Specifically, where an MDL transfer is pending, three factors
18 should be balanced to determine whether a stay meets this standard: (1) potential prejudice to the
19 non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3)
20 the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact
21 consolidated.  *Id.*

22          **A.    No Prejudice to Defendants**

23     A stay at this juncture will not prejudice Defendants.  This case is in its earliest stages.  The
24 only substantive motions that have been filed are Defendants' motions to dismiss.  This Court has
25 not yet held a case management conference setting forth the litigation schedule governing this
26 matter, nor has it considered any substantive motion.

27
28

5

1    Indeed, if the stay were to have any effect on Defendants, it would be beneficial and,

2    therefore, in their best interest.  For example, parties have met and conferred pursuant to Fed. R.

3    Civ. P. 26.  Plaintiffs are, therefore, entitled to, and have, propounded discovery.  One of the

4    primary purposes of seeking to transfer this matter, is to facilitate coordinated discovery.  Currently,

5    Defendants will have to separately respond to Plaintiffs' discovery requests.  A temporary stay

6    would, among other things, relieve Defendants of their obligation to respond to those requests or

7    spend additional time and resources with other pre-trial matters, that may ultimately be duplicated if

8    the matter is transferred.

9         **B.    Hardship and Inequity to Plaintiffs**

10    Continuing to prosecute a matter that may get transferred would be a hardship on all litigants

11    and be wasteful of judicial resources.  Engaging in law and motion work, scheduling and discovery,

12    that may need to be replicated in another court is an avoidable and unnecessary hardship.  Unlike

13    many litigation considerations that require a balancing of the equities, this is not a zero sum game

14    whereby what is beneficial to one party is not for the other.  Here, a stay works to the benefit of both

15    Plaintiffs and Defendants.  By staying this matter for the short period of time necessary for the MDL

16    Panel to make its decision, neither party will need to expend time, effort or resources on litigation

17    matters that might be mooted by a transfer.[1]  Conversely, if the transfer is not granted, the litigation

18    will be delayed for a relatively short period of time, after which both parties may proceed knowing

19    that their efforts will not need to be duplicated.

20        **C.    Judicial Economy**

21    "[A] majority of courts have concluded that it is often appropriate to stay preliminary pretrial

22    proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of

23    the judicial resources that are conserved."  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362

24    (C.D. Cal. 1997); *American Seafood, Inc. v. Magnolia Processing, Inc.*, 1992 U.S. Dist. LEXIS

25    7374, 1992 WL 102762, at *6 (citing *Arthur-Magna, Inc. v. Del-Val Fin. Corp.*, 1991 U.S. Dist.

26

27    _____

    [1]  "Costs and financial burden on a party having to defend itself in multiple fora is a factor
    that favors the entry of a stay pending a decision by a JPMDL." *The Hertz Corp. v. The Gator*
28    *Corp.*, 250 F. Supp. 2d 421, 427 (D. N.J. 2003).

1  LEXIS 1431, 1991 WL 13725 (D.N.J. 1991)); *Portnoy v. Zenith Laboratories*, 1987 U.S. Dist.

2  LEXIS 16134, 1987 WL 10236, at *1 (D.D.C. 1987).

3      Here, Plaintiffs are merely asking the Court temporarily stay the case until the MDL Panel

4  reaches a decision.  In the short period of time that is required for the MDL Panel's decision, this

5  Court will have to read, consider and adjudicate Defendants' motions to dismiss; consider parties

6  Joint Case Management Conference Statement, determine a schedule for this litigation and may

7  even have to deal with discovery disputes, all of which may be avoided if the Panel decides to relate

8  and transfer this action.  From the perspective of judicial economy, there is no doubt that a short

9  stay is the most economical and efficient way to proceed.

10      Ultimately, the consideration of judicial economy alone, is sufficient to justify a stay.  In

11  *Rivers* the Defendants did not argue it would be prejudiced if the Court granted Plaintiffs' motion to

12  stay.  Nor did Plaintiffs argue that it would be unduly burdensome to proceed with pretrial matters

13  pending the outcome of the MDL Panel proceedings.  *Rivers*, 980 F. Supp. 1358, 1360.  Granting

14  the stay, the Court determined that the conservation of judicial resources alone was sufficiently

15  compelling to justify its decision.

16      "There are two ways in which judicial resources could be conserved by staying this
matter. First, if this case is consolidated with the other cases in Florida and this Court

17  is not assigned by the MDL Panel to preside over the consolidated litigation, this
Court will have needlessly expended its energies familiarizing itself with the

18  intricacies of a case that would be heard by another judge.  And second, any efforts
on behalf of this Court concerning case management will most likely have to be

19  replicated by the judge that is assigned to handle the consolidated litigation if the
MDL Panel does not consolidate the Disney cases in this Court.  Therefore, there is a

20  great deal of this Court's time and energy that could be saved by staying the instant
case pending the MDL Panel decision."

21

22  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360-1361 (C.D. Cal. 1997).

23      The same reasons underlying the *Rivers* decision are present in the case at bar.  Numerous

24  cases have already been coordinated and/or consolidated by the MDL Panel and centralized in the

25  Western District of Washington.  If this case is deemed a related tag-along action, then it will

26

27

28

7

1   most likely be transferred by the Panel to Judge Pechman in Washington. Any pre-trial efforts by

2   this Court will have been wasted. Similarly, any pre-trial management efforts undertaken by the

3   Court, will likely need to be replicated by Judge Pechman, being that the whole purpose of transfer

4   is to coordinate such pre-trial matters.[2]

5   **V.    CONCLUSION**

6          For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

7   Motion to Stay this matter.

8

9   Dated: June 20, 2008                    Michael D. Braun
                                            BRAUN LAW GROUP, P.C.
10

11
                                  By:      _/s/  Michael D. Braun_____
12                                         Michael D. Braun
                                           12304 Santa Monica Blvd., Suite 109
13                                         Los Angeles, CA 90025
                                           Tel:    (310) 442-7755
14                                         Fax:    (310) 442-7756

15                                         Joseph N. Kravec, Jr. *(Admitted Pro Hac Vice)*
                                           SPECTER SPECTER EVANS
16                                             & MANOGUE, P.C.
                                           The 26th Floor Koppers Building
17                                         Pittsburgh, Pennsylvania 15219
                                           Tel:    (412) 642-2300
18                                         Fax:    (412) 642-2309

19

20                                _____

21         [2]  The *Rivers* Court also noted that, "there are no guarantees that an order by this Court
    would not later be vacated and this Court's investment of time and resources would not have been in
22  vain. Although transferee judges should generally respect any orders of a transferor judge as "law of
    the case," transferee judges have been known to vacate or modify previous rulings of the transferor
23  judge. *See In re Exterior Siding & Alum. Coil Litig.*, 538 F. Supp. 45, 47-8 (D. Minn. 1982)
    (transferee court granting class certification even though a motion for certification had already been
24  denied by the transferor court); *In re Upjohn Co. Antibiotic Cleocin Prod. Liab. Litig.*, 81 F.R.D.
    482, 486-87 (E.D. Mich. 1979) (holding that the transferee court may vacate or modify any orders
25  entered by another court). In other words, this Court could go forward with issues related to class
    certification at this time, but the time and energy that this Court would devote to any rulings it might
26  make regarding certification could be for naught if this action is transferred to another court and that
    court modifies or vacates any of this Court's orders." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358,
27  1361 (C.D. Cal. 1997).
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ira Spiro
SPIRO MOSS BARNESS, LLP
11377 West Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Tel:     (310) 235-2468
Fax:     (310) 235-2456

Janet Lindner Spielberg
LAW OFFICES OF JANET LINDNER SPIELBERG
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Tel:     (310) 392-8801
Fax:     (310) 278-5938

*Attorneys for Plaintiffs*

9

1

# PROOF OF SERVICE

2  STATE OF CALIFORNIA        )
                             )ss.:
3  COUNTY OF LOS ANGELES      )

4      I am employed in the county of Los Angeles, State of California, I am over the age of 18 and
not a party to the within action; my business address is 12304 Santa Monica Boulevard, Suite 109,
5  Los Angeles, CA  90025.

6      On June 20, 2008, using the Northern District of California's Electronic Case Filing System,
with the ECF ID registered to Michael D. Braun, I filed and served the document(s) described as:
7

8  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION TO STAY PROCEEDINGS**

9      The ECF System is designed to automatically generate an e-mail message to all parties in the
case, which constitutes service.  According to the ECF/PACER system, for this case, the parties
10  served are as follows:

| | |
|---|---|
| 11  Christopher J. Clark, Esq. | cjclark@dl.com |
| 12  Sam N. Dawood, Esq. | samdawood@dwt.com, allanpatterson@dwt.com, pammaiwandi@dwt.com |
| 14  Janet Lindner Spielberg, Esq. | jlspielberg@jlslp.com |
| 15  Richard F. Hans, Esq. | rhans@tpw.com |
| 16  Joseph N. Kravec, Jr., Esq. | jnk@ssem.com |
| 17  Ira Spiro, Esq. | ira@spiromoss.com |
| 18  Martin L. Fineman, Esq. | martinfineman@dwt.com edithshertz@dwt.com |
| 19  Laura Jean Fowler, Esq. | lfowler@mhalaw.com ekastern@mhalaw.com |
| 21  Margaret Anne Keane, Esq. | mkeane@dl.com |
| 22  Angela M. Papalaskaris, Esq. | apapalas@dl.com |
| 23  Robert J. Pfister, Esq. | rpfister@stblaw.com gdmiller@stblaw.com |
| 25  Jeffrey D. Rotenberg, Esq. | jrotenberg@tpw.com |
| 26  Stephen Michael Rummage, Esq. | steverummage@dwt.com jeannecadley@dwt.com |
| 27  Kevin C. Wallace, Esq. | kwallace@dl.com |

10

1    On June 20, 2008, I served the document(s) described as:

2    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
     **MOTION TO STAY PROCEEDINGS**

3
     by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:
4
     Kerry Ford Cunningham, Esq.
5    Patrick J. Smith, Esq.
     THACHER PROFFITT & WOOD LLP
6    Two World Financial Center
     New York, NY 10281
7
8        I served the above document(s) as follows:

9        BY MAIL.  I am familiar with the firm's practice of collection and processing
     correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on
10   that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of
     business.  I am aware that on motion of the party served, service is presumed invalid if postal
11   cancellation date or postage meter date is more than one day after date of deposit for mailing in an
     affidavit.

12
         I am employed in the office of a member of the bar of this Court at whose direction the
13   service was made.

14       I declare under penalty of perjury under the laws of the United States that the above is true
     and correct.

15       Executed on June 20, 2008, at Los Angeles, California 90025.

16

17

18                                          /S/ LEITZA MOLINAR
                                             Leitza Molinar
19

20

21

22

23

24

25

26

27

28

11