1  Joseph N. Kravec, Jr. *(Admitted Pro Hac Vice)*
   SPECTER SPECTER EVANS
2      & MANOGUE, P.C.
   The 26th Floor Koppers Building
3  Pittsburgh, Pennsylvania 15219
   Tel:   (412) 642-2300
4  Fax:   (412) 642-2309
   E-mail: jnk@ssem.com
5
   Michael D. Braun (167416)
6  BRAUN LAW GROUP, P.C.
   12304 Santa Monica Blvd., Suite 109
7  Los Angeles, CA 90025
   Tel:   (310) 442-7755
8  Fax:   (310) 442-7756
   E-mail: service@braunlawgroup.com
9
   Ira Spiro (67641)                           Janet Lindner Spielberg (221926)
10 J. Mark Moore (180473)                       LAW OFFICES OF JANET
   SPIRO MOSS BARNESS, LLP                       LINDNER SPIELBERG
11 11377 West Olympic Blvd., Fifth Floor        12400 Wilshire Blvd., Suite 400
   Los Angeles, CA 90064-1683                    Los Angeles, CA 90025
12 Tel:   (310) 235-2468                         Tel:   (310) 392-8801
   Fax:   (310) 235-2456                         Fax:   (310) 278-5938
13 E-mail: ira@spiromoss.com                     E-mail: jlspielberg@jlslp.com
           mark@spiromoss.com
14
   *Attorneys for Plaintiffs*

15

**UNITED STATES DISTRICT COURT**
16 **NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

17

18

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY<br>19 SCHOLL, on behalf of themselves and all<br>others similarly situated, | **CASE NO.: 5:08-CV-00868 (RMW)** |
| 20 | **CLASS ACTION** |
| Plaintiffs, | |
| 21 | |
| v. | |
| 22 | **PLAINTIFFS' MEMORANDUM IN**<br>**OPPOSITION TO LSI APPRAISAL, LLC'S** |
| 23 WASHINGTON MUTUAL, INC., a<br>Washington corporation; WASHINGTON | **MOTION TO DISMISS** |
| 24 MUTUAL BANK, FA (a/k/a<br>WASHINGTON MUTUAL BANK); FIRST | |
| 25 AMERICAN EAPPRAISEIT, a Delaware<br>corporation; and LENDER'S SERVICE, | |
| 26 INC., | |
| Defendants. | |
| 27 | |

28

1

**TABLE OF CONTENTS**

2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

6    I.    LSI'S LACK OF STANDING ARGUMENT IS A RED HERRING . . . . . . . . . . . 2

7         A.    Plaintiffs Have Article III Standing Since They Have
               Suffered an Injury in Fact as Alleged in the FAC and as
8              Evidenced by LSI Being Listed on Plaintiff's
               Appraisal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9         B.    Plaintiffs Have Article III Standing Since LSI Actively
10             Participated in a Conspiracy With WMB and EA. . . . . . . . . . . . . . . . . . . 5

11        C.    LSI's Role in the Conspiracy With WMB and EA
               Makes the Jurisdictional Issue so Intertwined with the
12             Substantive Issue that Dismissal at This Stage Would
13             be Inappropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          D.    In the Alternative to Denying LSI's Motion to Dismiss
14             for Lack of Subject Matter Jurisdiction Outright,
               Plaintiffs Request Jurisdictional Discovery to Respond
15             to LSI's Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16   II.   PLAINTIFFS HAVE PROPERLY ALLEGED CAUSES OF ACTION FOR LSI'S
          SPECIFIC AND CONSPIRATORIAL CONDUCT RESULTING IN DAMAGES
17        TO PLAINTIFFS, REQUIRING DENIAL OF LSI'S RULE 12(B)(6) MOTION. . 12

18        A.    LSI was Directly Involved in Plaintiffs' Appraisals. . . . . . . . . . . . . . . . 12

19        B.    LSI's Argument that California does not Recognize a
               Claim Based on Negligent Appraisal is Misplaced, as
20             Plaintiffs are not Alleging a Negligent Appraisal
               Claim, They are Alleging a Negligent or Intentional
21             Misrepresentation Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22        C.    LSI's "No Damages" Theory is Meritless. . . . . . . . . . . . . . . . . . . . . . . . 16

23        D.    Plaintiffs have Stated Cognizable RESPA Claims
               Under Sections 8(a) and (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

24
               1.    Plaintiffs have alleged a violation of RESPA Section 8 (a). . . . . . 19

25             2.    Plaintiffs have Alleged a Cognizable Section 8(b) Claim. . . . . . . 20

26
               3.    The RESPA Statute of Limitations does not Bar Plaintiff Scholl's
27                   RESPA Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28

i

E.   Plaintiffs' CLRA Claim is not Barred Because a "Real
     Estate Transaction" was Involved. .................................. 21

F.   Plaintiffs Properly Allege a Contract Exists with LSI.  ................ 22

G.   Plaintiffs Properly Allege a Cause of Action for Quasi-
     Contract in the Alternative to a Breach of Contract. .................. 24

CONCLUSION  ............................................................... 25

1                                **TABLE OF AUTHORITIES**

2    <u>**CASES:**</u>                                                              **PAGE NOS.**

3    *Alliance Mortg. Co. v. Rothwell*, 900 P.2d 601 (Cal. 1995) ............................... 14

4    *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793 (9th Cir.1989) ..................... 11

5    *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454 (Cal. 1994) ... 5, 6, 7, 8, 9, 11

6    *Armstrong v. Davis*, 275 F.3d 849 (9th Cir.2001) ......................................... 3

7    *Augustine v. U.S.*, 704 F.2d 1074 (9th Cir. 1983) ........................................ 10

8    *Barry v. Raskov*, 232 Cal.App.3d 447 (1991) ............................................ 14

9    *Bates v. United Parcel Service, Inc.*, 511 F.3d 974 (9th Cir. 2007) ........................ 3, 5

10   *Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992) ................................... 14

11   *Briley v. State of Cal.*, 564 F.2d 849 (9th Cir. 1977) .................................... 21

12   *California Dept. of Social Services v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008) ................ 13

13   *Capell v. Pulte Mortgage L.L.C.*, 2007 U.S. Dist. LEXIS 82570 .......................... 20

14   *Casumpang v. Int'l Longshoremen's & Warehousemen's Union,*
          269 F.3d 1042 (9th Cir.2001) .................................................. 10

15
     *Day v. Alta Bates Med. Ctr.*, 98 Cal.App.4th 243 (2002) ............................... 24
16
     *Erwin v. City of Angels Camp, City Council & Planning Commission,*
17        1992 U.S. App. LEXIS 33810 (9th Cir.1992) .................................... 21

18   *Farr v. U.S.*, 990 F.2d 451 (9th Cir. 1993) .......................................... 10

19   *Forsythe v. Sun Life Financial, Inc.*, 417 F.Supp.2d 100 (D.Mass. 2006) .................... 9

20   *Gay v. Broder*, 109 Cal.App.3d 66 (1980) ......................................... 16, 18

21   *Gibson v. U.S.*, 781 F.2d 1334 (9th Cir. 1986) ....................................... 21

22   *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541 (D.Nev. 2004) ....................... 9

23   *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) ......................................... 21

24   *Hughes v. Holt*, 140 Vt. 38 (Vt.Sup.Ct. 1981) ...................................... 17, 18

25   *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269 (9th Cir. 1992) ............... 24

26   *In re Franklin Mut. Funds Fee Litigation*, 388 F.Supp.2d 451 (D.N.J. 2005) ................. 9

27   *In re Western States Wholesale Natural Gas Antitrust Litig.*, 2008 WL
          486607 (D.Nev. 2008) ...................................................... 7, 8, 9
28

iii

*Jefferson v. Chase Home Finance, LLC*, 2007 WL 1302984 (N.D.Cal. 2007) ............... 22

*Jiang v. Lee's Happy House*, 2008 WL 706529 (N.D. Cal. 2008) ......................... 2

*Kivalina Relocation Planning Committee v. Treck Cominco Alaska, Inc.*,
    227 F.R.D. 523 (D.Alaska 2004) ............................................. 5

*Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723 (2000) ......................... 24

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ............................... 12

*Lowes v. Hill & Co. Real Estate*, 2006 WL 463517 (N.D.Cal. 2006) ........................ 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................... 3, 8

*Luri v. First Federal Bank of California*, 2001 WL 1656602 (Cal.App. 2001) ............ 15, 16

*Moore v. Radian Group, Inc.*, 233 F.Supp.2d 819 (E.D.Tex. 2002) ......................... 20

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal.App.4th 303 (2000) ............. 14

*Newberry v. Befort*, 28 Kan.App.2d 807 (2001) ...................................... 16

*Nymark v. Heart Federal Savings & Loan Ass'n*, 231 Cal.App.3d 1089 (1991) ...... 14, 15,16, 18

*Patton v. Cox*, 276 F. 3d 493 (9th Cir. 2002) ......................................... 23

*People v. Bestline Products, Inc.*, 61 Cal.App.3d 879 (1976) .............................. 6

*Qwest Communications Corp. v. Weisz*, 278 F.Supp.2d 1188 (S.D.Cal. 2003) ............. 6, 11

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir.2004) ............................. 3

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir.2003) ......................... 4

*Shersher v. Superior Court*, 154 Cal.App.4th 1491 (2007) ............................... 24

*Soderberg v. McKinney*, 44 Cal.App.4th 1760 (1996) ................................. 14, 15

*Thornhill Publishing Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730 (9th Cir. 1979) . 10, 11

*Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553 (9th Cir.1987) ........ 10

*Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000) ..................................... 3, 5, 10

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir.1977) ............. 11, 12

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
    668 F.2d 1014 (9th Cir.1981) ............................................. 6

*Wyatt v. Union Mortgage Co.*, 598 P.2d 45 (Cal. 1979) ................................. 6

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658
    (9th Cir. 1998) ....................................................... 23, 25

iv

1  California Rules of Court, Rule 977(a) ............................................... 15

2  12 C.F.R. § 202.14 ................................................................. 15

3  12 U.S.C. § 2607(a) ............................................................... 19

4  12 U.S.C. § 2607(b) ............................................................... 20

5  15 U.S.C. § 1691(e) ............................................................... 15

6  24 C.F.R. § 3500.14(b) ............................................................ 19

7  24 C.F.R. 3500.14(d) .............................................................. 19

8  28 U.S.C. § 1407 .................................................................. 8

9  Cal. Civ. Code § 1754 ............................................................. 21

10  Cal. Civ. Code § 1761(b) ......................................................... 22

11  Fed. R. Civ. P. 12(b)(6) ............................................ 2, 12, 13, 23, 25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendant Lender's Service, Inc., n/k/a LSI Appraisal LLC (hereafter "LSI"),  bases the vast majority of its argument in support of its Motion to Dismiss on it's counsel's overreaching, unsupported assertion that **"LSI had absolutely no involvement or connection to"** Plaintiffs' appraisals. *See* LSI's Notice of Motion: Motion to Dismiss: And Memorandum in Support of Motion to Dismiss ("LSI Br."), pp. 6-8 . It is on this fatally flawed presumption that it had absolutely no involvement in Plaintiffs' appraisals that LSI argues Plaintiffs lack standing to sue, that all of Plaintiffs statutory and common law claims should be dismissed regardless of standing, and that all of the blame should be cast on its co-conspirators – Defendants Washington Mutual Bank, FA ("WMB") and First American eAppraiseIT ("EA").

However, LSI's counsel's assertion that LSI had no role in Plaintiffs' appraisals or the alleged conspiracy is demonstratively false and is belied by: 1) Plaintiff Scholl's appraisal report referenced in the FAC[1] which specifically identifies LSI, EA and WMB as parties to the appraisal; 2) LSI's own affiant who does not deny that LSI received, reviewed, and affected Plaintiffs' appraisals; 3) LSI's own affiant who does not deny that LSI conspired with WMB and EA to inflate appraisal values as Plaintiffs allege; 4) California law which holds every member of a conspiracy liable for the torts committed by co-conspirator regardless of which conspirator commits the tort directly; and 5) Plaintiffs' allegations of LSI's participation in the conspiracy which not only must be accepted as true, but are also supported by evidence discovered by the New York Attorney General which is also cited in Plaintiffs' FAC. Because LSI was directly involved in Plaintiffs' appraisals, and because Plaintiffs' allege LSI harmed Plaintiffs and each member of the Class directly and/or by virtue of its participation in the alleged conspiracy, all of LSI's "we didn't do it" arguments must be rejected.

Likewise, LSI's remaining arguments that California law does not recognize a cause of action for a "negligent appraisal" and that Plaintiffs have not been damaged by the actions of the alleged conspiracy are wrought with mis-characterizations of Plaintiffs' allegations and California law.  For all of these reasons, Defendant LSI's Motion to Dismiss must be denied.

---

[1]   "FAC" refers to Plaintiffs' First Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief, filed on March 28, 2008 (Docket No. 14).

1

**STANDARD OF REVIEW**

As this Court has succinctly stated, "[o]n a motion to dismiss under Rule 12(b)(6) the issue is not what plaintiff has or will be able to prove, but whether the allegations, which are presumed true, are sufficient" to state a cognizable claim. *Jiang v. Lee's Happy House*, 2008 WL 706529, *1 (N.D. Ca., Mar. 14, 2008)(Seeborg, m.j.)(citation omitted). Here, Plaintiffs' FAC not only sufficiently alleges each of their causes of action, but those allegations are also supported by the appraisal reports and other documents incorporated by reference in their FAC. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003)(a court may consider on a motion to dismiss documents incorporated by reference in plaintiff's complaint).

**ARGUMENT**

**I.     LSI'S LACK OF STANDING ARGUMENT IS A RED HERRING**

LSI's entire Article III standing argument is premised on the incorrect, unsupported factual assertion by its counsel that "LSI had absolutely no involvement with or connection to" either of Plaintiffs' appraisals, and the flawed legal assertion that LSI cannot be held liable for harm caused by its co-conspirators. LSI Br., pp. 6-8. LSI's contentions are belied by: 1) Plaintiff Scholl's appraisal report referenced by the FAC which identifies LSI as one of the appraiser's clients for her appraisal; 2) the allegations in Plaintiffs' FAC which provides evidence of LSI's willing participation in a conspiracy to unlawfully inflate appraisal values; 3) LSI's own affiant who failed to deny LSI's involvement in Plaintiffs appraisals or LSI's involvement in the alleged conspiracy; and 4) California law which imposes tort liability on a coconspirator for harm caused by any member of the conspiracy.  As Plaintiffs have shown evidence linking LSI to one of Plaintiff's appraisals and to the alleged conspiracy, this Court should either deny LSI's motion to dismiss for lack of Article III jurisdiction outright, or permit Plaintiffs discovery to prove Plaintiffs have Article III standing.

**A.     Plaintiffs Have Article III Standing Since They Have Suffered an Injury in Fact as Alleged in the FAC and as Evidenced by LSI Being Listed on Plaintiff's Appraisal.**

LSI contends Plaintiffs lack standing to bring their claims in federal court under Article III of the United States Constitution. LSI Br., pp. 6-8. "To satisfy constitutional standing, plaintiffs bear the burden of showing they meet three requirements: (1) they suffered an injury in fact; (2) the injury is

2

1  fairly traceable to the challenged action of defendant; and (3) it is 'likely,' as opposed to 'speculative,'

2  that the injury will be redressed by a favorable decision." *Tyler v. Cuomo*, 236 F.3d 1124, 1131-32 (9th

3  Cir. 2000), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   "In a class action,

4  standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel*

5  *Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th

6  Cir.2001).  LSI challenges whether Plaintiffs' injuries are traceable to LSI's conduct, but does not

7  appear to challenge that Plaintiffs have suffered an injury-in-fact or that the injury will be redressed by

8  a favorable decision.  LSI Br., pp. 2, 7.[2]

9         LSI was directly involved in Plaintiff Scholl's appraisal as is evidenced by LSI being listed on

10  the appraisal report as one of the parties to the appraisal.  *See* Affidavit of Joseph N. Kravec, Jr. in

11  Support of Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss, Exh. 2 ("Scholl

12  Report"),  p.  7  (identifying  the  email  address  lsistatus@lendersservice.com  as  the

13  "LENDER/CLIENT's" address).  Although LSI is clearly identified as one of the parties to Plaintiff

14  Scholl's appraisal report, LSI's counsel ignores this fact and instead makes the bald assertion that "LSI

15  has neither prepared **nor reviewed** an appraisal report for either Ms. Scholl or for [her property]," and

16  that "[t]he undisputed facts – as demonstrated by the text of the appraisals themselves and by the Rice

17  Affidavit – demonstrate that **LSI had absolutely no involvement with or connection to** the appraisals

18  at issue in this suit."  LSI Br., pp. 4, 8 (internal quotation and citation omitted)(emphasis added).  It is

19  based solely on these erroneous assertions that LSI argues that Plaintiffs lack standing.  LSI Br., pp. 6-8.

20         To support the erroneous contention that "LSI had absolutely no involvement or connection to"

21  Plaintiffs' appraisals, LSI's counsel relies on the Affidavit of Kathleen M. Rice in Support [sic] Motion

22  to Dismiss Amended Complaint ("Rice Aff."), ¶¶ 6, 10-15.[3]  However, Ms. Rice's Affidavit purports

23  ─────────────────

24         [2]     While not challenged by LSI, it is noteworthy that Plaintiffs do allege an injury fairly
   traceable to Defendants' conduct that is likely to be redressed by a favorable decision as required for
25  Article III standing.   Specifically, the FAC alleges "Plaintiffs and the Class were damaged by
   Defendants' arrangement in that they never received the appraisal service for which they were charged
26  by Defendants..." FAC, ¶ 87.  At a minimum, this can be redressed by returning the monies Plaintiffs
   paid Defendants for the appraisal service they never received from them.
27

28         [3]     By submitting evidence to disprove jurisdiction, LSI converted its motion to dismiss into
   a factual challenge to jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004).

3

1  to say much, but actually denies little utterly failing to acknowledge or completely deny LSI's

2  involvement with Plaintiffs' appraisals or to address the relevant facts asserted in Plaintiffs' FAC. In

3  fact, Ms. Rice's Affidavit contradicts LSI's counsel's assertion that it had no involvement with Ms.

4  Scholl's appraisal.

5      Ms. Rice attests she had a search conducted "for any and all appraisal reports relating" to

6  Plaintiffs and their properties, but fails to state if the search uncovered any appraisal reports related to

7  Plaintiffs or their homes. Rice Aff., ¶ 3. Based on this search, Ms. Rice's carefully worded affidavit

8  states only that LSI had not "completed" or "prepared" an appraisal report for either Plaintiff. Rice Aff.

9  ¶¶ 6, 9-15. This is not surprising because LSI handles "the administrative duties relating to obtaining

10  the appraisal: entering the order, assigning the order to an individual [third-party] appraiser, tracking

11  the status of the order, checking the quality of the appraisal before delivery, and finally delivering the

12  appraisal." LSI Br., p. 3. LSI never contends it otherwise "prepares" or "completes" appraisals for

13  WMB or any other bank, as this is the role of the third-party appraisers it hires, so Ms. Rice's denial of

14  these activities as to Plaintiffs is irrelevant. *Id.*

15      Regardless of who "prepared" or "completed" the appraisals, both Ms. Rice and LSI's counsel

16  fail to even mention the fact LSI is listed on Plaintiff Scholl's appraisal report as one of the parties to

17  the appraisal, or to explain how being listed as a party on the appraisal does not mean LSI was somehow

18  "involved" with the appraisal.[4] Indeed, Ms. Rice never denies that LSI received a copy of Plaintiff

19  Scholl's appraisal, that LSI reviewed a copy of Plaintiff Scholl's appraisal, or that LSI altered Plaintiff

20  Scholl's appraisal as is alleged in the FAC. FAC, ¶¶ 6-9, 37-39, 42-43. This applies equally to Plaintiff

21  Spears because Ms. Rice merely states that LSI had not "prepared" an appraisal for him either. Rice

22  Aff., ¶ 6.

23      LSI being listed on the Scholl Report as a party to the appraisal report and Ms. Rice's failure

24  

25  Plaintiffs are therefore obligated to furnish evidence necessary to establish subject matter jurisdiction.
   *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). Here, Plaintiffs have

26  provided this Court with evidence directly linking LSI to Plaintiff Scholl's appraisal report. *See* Scholl

27  Report, p. 6.

28      [4]   The Scholl Report comes as no surprise to LSI as it was attached to Plaintiffs' originally
   filed complaint with this Court. Docket No. 1, Exhibit 2.

4

1    to deny that LSI received, reviewed, or altered either Plaintiffs' appraisal reports completely undermines

2    LSI's counsel's assertions that "LSI has neither prepared **nor reviewed** an appraisal report for either

3    Ms. Scholl or for [her property]," and that "LSI had absolutely **no involvement with or connection to**

4    the appraisals at issue in this suit." LSI's Br., p. 4, 8 (emphasis added).  As such, this Court need not

5    consider LSI's counsel's overreaching, unsupported claims that LSI had nothing to do with Plaintiffs'

6    appraisals because Plaintiffs have provided specific contrary evidence.  *See, e.g., Kivalina Relocation*

7    *Planning Committee v. Treck Cominco Alaska, Inc.*, 227 F.R.D. 523, 528-529 (D.Alaska 2004)(a court

8    need not consider a party's conclusory statements contradicted by the record evidence).  Accordingly,

9    Plaintiffs have standing to pursue an action against LSI as they have furnished specific evidence that

10   LSI was directly involved in Plaintiff Scholl's apprisal.  *See Tyler*, 236 F.3d at 1131-1132;  *Bates*, 511

11   F.3d at 985 (only one named plaintiff in a class action must satisfy standing requirements).

12        **B.      Plaintiffs Have Article III Standing Since LSI Actively Participated in a**
             **Conspiracy With WMB and EA.**

13

14        Not only has LSI not denied its direct involvement in receiving, reviewing, and altering

15   Plaintiffs' appraisal reports, LSI has also not denied it was part and parcel to the alleged conspiracy with

16   WMB and EA to provide unlawful and incredible appraisals.  *See* LSI Br., *generally*; *see also* Rice Aff.,

17   *generally*.  The Scholl Report is evidence of both LSI's involvement with Plaintiff Scholl's appraisal

18   and LSI's conspiracy with WMB and EA.  Scholl Report, p. 7 (identifying all three alleged co-

19   conspirators, LSI, WMB and EA, as the appraiser's "CLIENTS" for Plaintiff Scholl's appraisal).  The

20   Scholl Report corroborates other evidence of LSI's involvement as alleged in Plaintiffs' FAC.  FAC,

21   ¶ 43.  Instead of denying its participation in the unlawful conspiracy, LSI argues that Plaintiffs cannot

22   "rely on the conspiracy theory of liability ... to establish standing."  LSI Br., p. 8 (internal quotation

23   omitted).  Just as LSI's counsel was wrong in stating "that LSI had absolutely no involvement or

24   connection to" Plaintiffs' appraisals, LSI's counsel is wrong that a conspirator cannot be held liable for

25   the torts committed by its co-conspirators.  *See Applied Equipment Corporation v. Litton Saudi Arabia*

26   *Limited*, 869 P.2d 454, 510-511 (Cal. 1994).

27        In *Applied Equipment Corporation*, California's Supreme Court established that under

28   California law, liability is imposed "on persons who, although not actually committing a tort

5

1     themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied*

2     *Equipment Corporation*, 869 P.2d at 510-511 *(citing Wyatt v. Union Mortgage Co.*, 598 P.2d 45 (Cal.

3     1979)). *See also William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1053

4     (9th Cir.1981)("coconspirators are jointly and severally liable for all damages caused by the

5     conspiracy"), *People v. Bestline Products, Inc.*, 61 Cal.App.3d 879, 917-920 (1976)(holding that all

6     parties to a conspiracy to commit a UCL violation are responsible for all acts committed pursuant to

7     the conspiracy, no matter who actually performs the acts). Accordingly, "by participating in a civil

8     conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within

9     the ambit of the conspiracy. In this way, a coconspirator incurs tort liability coequal with the immediate

10    tortfeasors." *Applied Equipment Corporation,* 869 P.2d at 511 (citation omitted). Thus, as Article III

11    standing is proper against a primary tortfeasor, it is equally proper against the tortfeasor's co-

12    conspirators even if they did not personally defraud the plaintiff. *See, e.g., Qwest Communications*

13    *Corp. v. Weisz*, 278 F.Supp.2d 1188, 1192 (S.D.Cal. 2003)(denying an alleged co-conspirator

14    defendant's motion to dismiss based on the defendant's theory that he was not a direct party to the

15    allegedly fraudulent transaction because the chief function of the conspiracy theory "is to extend

16    liability beyond the principals who actually committed the tort").

17       Here, Plaintiffs allege WMB entered into a conspiracy with EA and LSI – the two appraisal

18    management companies ("AMCs") who provided all of WMB's appraisals during the alleged class

19    period – for the express purpose of inflating the appraised values of homes associated to home mortgage

20    loans. FAC, ¶¶ 6-9. Plaintiffs allege WMB unlawfully controlled the appraisal process, and instructed

21    LSI and EA to hire appraisers of WMB's choosing and to otherwise manufacturer appraisals with the

22    values WMB wanted rather than the true value of the property. *Id.*, ¶¶ 35-49. LSI acted in concert with

23    WMB to further the conspiracy by using WMB's "Proven Appraisers" and by altering appraisals it

24    received from otherwise independent appraisers in violation of federal and state laws. *Id.*, ¶¶ 35-39.

25       LSI's action in altering appraisals and otherwise allowing WMB to control the appraisal process

26    was done in furtherance of the conspiracy to allow WMB to increase the value of its portfolio of home

27    mortgage loans which it bundled and sold on the financial market for substantial profit. *Id.*, ¶¶ 6, 9, 33-

28    56. LSI's and EA's acquiescence to WMB's demands for higher appraisals, as well as their subsequent

6

1    unlawful tampering with the appraisal process in furtherance of the conspiracy, are the cause of

2    Plaintiffs' injuries. *Id.*, ¶¶ 6-9, 37-39, 43. The conspiracy and LSI's actions to further the conspiracy

3    have injured Plaintiffs because they paid WMB to procure a lawful and credible appraisals which they

4    did not receive. *Id.*, ¶¶ 7, 9, 81, 87, 98, 104, 110, 116, 123, 127. The conspiracy, and each participants'

5    actions in furtherance therein, has resulted in thousands of borrowers paying millions of dollars to the

6    three companies for unlawful and incredible appraisals, including Plaintiffs. *Id.*, ¶ 65.

7          LSI acknowledges its role by stating it managed the process of ordering and obtaining appraisals

8    for WMB from third-party appraisers, handling virtually all of the administrative duties relating to

9    obtaining the appraisal, and by failing to deny that it participated in the alleged conspiracy with WMB.

10   LSI Br., p. 3. The fact LSI, EA and WMB are all listed as parties to Plaintiff Scholl's appraisal only

11   confirms Plaintiffs' allegations that LSI and EA acted in tandem with WMB despite being competitors.

12   Scholl Report, p. 7.[5]

13         Even though California law is clear that a conspirator can be held liable for its co-conspirators'

14   torts, and Plaintiffs have alleged damages resulting from the conspiracy, LSI asserts that Article III

15   standing cannot be found against a participant in a conspiracy. LSI Br., p. 8. LSI's legal assertion here,

16   much like its factual assertion that LSI had "no involvement" with Plaintiffs' appraisals, is nothing but

17   a game of hide-the-ball from this Court. Just as LSI's counsel failed to mention it was listed on the

18   Scholl Report as a party to the appraisal, LSI's counsel fails to mention the existence of *Applied*

19   *Equipment Corporation* even though it is a controlling California Supreme Court decision on California

20   law that has been cited over 4400 times by courts and in legal articles. *See Applied Equipment*

21   *Corporation*, citing references. Instead of relying on authority binding on this Court, LSI's counsel

22   argues in its self-created vacuum this Court should follow the unpublished opinion in *In re Western*

23   *States Wholesale Natural Gas Antitrust Litig.*, 2008 WL 486607 (D.Nev. 2008) for the notion that a co-

24

_____

25        [5]   As LSI acknowledges, "an appraiser is prohibited from disclosing their appraisal report 'to
     anyone other than the client and persons specifically authorized by the client.'" LSI's Br., p. 3 quoting
26   USPAP Ethics Rule, Confidentiality. LSI's possession of Plaintiffs' appraisal reports would therefore
     be evidence of one of three things: 1) That LSI was the appraiser's "client" as listed in the Scholl
27   Report; 2) that one of the appraiser's other clients, i.e. WMB, EA (the two alleged co-conspirators) or
     Plaintiff Scholl gave permission for the report to be given to LSI, which Plaintiff Scholl did not; or 3)
28   LSI is either permitting or facilitating unethical behavior by its appraisers.

7

1  conspirator cannot be held liable for injuries caused by a conspiracy. LSI Br., p. 8. However, *In re*

2  *Western States* is utterly inapposite to Plaintiffs' action here.

3      *In re Western States* involved Minnesota plaintiffs who were transferred to the District Court

4  of Nevada pursuant to 28 U.S.C. § 1407, pursuing an antitrust action against multiple natural gas

5  companies for an alleged price fixing conspiracy. *In re Western States*, 2008 WL 486607 at *1. The

6  *In re Western States* plaintiffs alleged two causes of action arising under Minnesota's antitrust statute.

7  *Id.* The *In re Western States* defendants moved to dismiss one of the two counts which voided a

8  contract subject to an antitrust conspiracy, and allowed a party who made a direct payment thereon to

9  recover their money. *Id.*

10      To bring a claim under the Minnesota statutory cause of action the defendants moved to dismiss,

11  the plaintiffs in *In re Western States* had to meet a specific jurisdictional requirement of that Minnesota

12  statute – *i.e.*, having been a party to a voided contract, and having made a payment thereon. *Id.*

13  However, the vast majority of the *In re Western States* defendants did not enter into any contracts with

14  any of the plaintiffs in the action. *Id.* at *2. Accordingly, the *In re Western States* court suggested it

15  would dismiss that cause of action as to defendants who never contracted with any of the plaintiffs, but

16  did not dismiss the claims at that time to allow jurisdictional discovery to determine whether facts

17  sufficient to establish jurisdiction existed. *Id.* at *8, *11. *See also* Section I.D, *infra.*

18      *In re Western States'* suggestion that the plaintiffs there might not have standing under one

19  section on Minnesota's antitrust statute has absolutely no relevance to Plaintiffs' action here. Plaintiffs

20  here need only satisfy Article III standing for California state law claims, not the statutory jurisdictional

21  requirement under Minnesota's antitrust statute. *Lujan*, 504 U.S. at 560-61. As California law

22  specifically permits a plaintiff to pursue an action against any member of a conspiracy regardless of

23  whether the conspirator was a direct party to the plaintiff's transaction, Plaintiffs have properly alleged

24  an injury-in-fact tied to LSI's participation in the conspiracy. See *Applied Equipment Corporation*, 869

25  P.2d at 511. Indeed, LSI's reliance on *In re Western States* is completely misplaced because the court

26  there acknowledged that absent the specific standing requirement under Minnesota's antitrust statute,

27  a party directly or indirectly injured by an unlawful conspiracy may pursue an action against any of the

28  co-conspirators regardless of the existence of a direct contract between the parties. *In re Western States*,

8

1    2008 WL 486607 at *6, n. 5. Thus, *In re Western States* actually supports Article III standing here.

2        LSI also suggests Plaintiffs cannot establish standing over LSI through class allegations, citing

3    *In re Franklin Mut. Funds Fee Litigation*, 388 F.Supp.2d 451, 461 (D.N.J. 2005); *Forsythe v. Sun Life*

4    *Financial, Inc.*, 417 F.Supp.2d 100, 118-119 (D.Mass. 2006); and *Henry v. Circus Circus Casinos, Inc.*,

5    223 F.R.D. 541, 543-544 (D.Nev. 2004). See LSI's Br., p. 8. These cases are likewise inapposite to

6    Plaintiffs' action here because they do not deal with a claim that the plaintiffs were injured by the

7    operation of a conspiracy. *See In re Franklin Mut. Funds,* 388 F.Supp.2d at 462 (in a shareholder and

8    derivative action without allegations of a conspiracy, the court dismissed without prejudice claims

9    against defendant mutual funds whom the plaintiffs had not invested in); *Forsythe,* 417 F.Supp.2d at

10   118-119 (in a securities litigation without allegations of a conspiracy, the court found the plaintiffs had

11   no standing to sue on behalf of mutual funds they did not own); *Circus Circus Casinos, Inc*, 223 F.R.D.

12   at 542 (in an FLSA action without allegations of a conspiracy against a company, the company's a

13   parent corporation, its subsidiaries, partnerships, and joint ventures, the Court dismissed all but the

14   actual company the employee worked for).

15        At most, LSI's cited authorities stand for the proposition that even in the class action context

16   a plaintiff must have an injury traceable to the defendant. *See Forsythe*, 417 F.Supp.2d at 118-119; *In*

17   *re Franklin Mut.,* 388 F.Supp.2d at 461; *Circus Circus Casinos,* 223 F.R.D. at 543-544. Unlike LSI's

18   cited cases, Plaintiffs here have suffered an injury-in-fact traceable to LSI both by LSI's being listed on

19   Plaintiff Scholl's appraisal report as one of the parties to that report, and by virtue of LSI's participation

20   in the conspiracy to inflate appraisal values for all of WMB's home mortgage loans. *See* Scholl Report,

21   p. 7; *see also Applied Equipment Corporation*, 869 P.2d at 511. Also unlike any of LSI's cited cases,

22   under Plaintiffs' theory here the perpetration of the conspiracy has caused the same harm to each and

23   every member of Plaintiffs' class regardless of which AMC hired the appraiser to perform the appraisal.

24   FAC, ¶¶ 8, 36-39, 43-44, 52-54.

25        As Plaintiffs have alleged: 1) an injury-in-fact being that they paid Defendants for lawful and

26   credible appraisals which they never received; 2) that the injury is traceable to LSI's misconduct either

27   directly as evidenced in Plaintiff Scholl's appraisal report, or indirectly through its participation in the

28   conspiracy with WMB and EA; and 3) Plaintiffs' injury will be redressed by a favorable decision,

9

1    Plaintiffs have Article III standing over LSI. *Tyler, supra*, 236 F.3d at 1131-32.

2        **C.   LSI's Role in the Conspiracy With WMB and EA Makes the Jurisdictional Issue so Intertwined with the Substantive Issue that Dismissal at This Stage Would be Inappropriate.**

3

4        Even if Plaintiffs did not show standing through the specific evidence linking LSI to Plaintiff

5 Scholl's appraisal and California law establishing liability over all members of a conspiracy, which of

6 course they have, a ruling on subject matter jurisdiction over LSI is premature because the question of

7 jurisdiction over LSI overlaps with the merits of Plaintiffs' action. *Augustine v. U.S.*, 704 F.2d 1074,

8 1077 (9th Cir. 1983). "Where the jurisdictional issue and substantive issues are so intertwined that the

9 question of jurisdiction is dependent on the resolution of factual issues going to the merits, the

10 jurisdictional determination should await a determination of the relevant facts on either a motion going

11 to the merits or at trial." *Augustine*, 704 F.2d at 1077 *citing Thornhill Publishing Co. v. General*

12 *Telephone Corp.*, 594 F.2d 730, 733-735 (9th Cir. 1979).

13        Unlike a factual challenge to subject matter jurisdiction that is **independent** of the merits of an

14 action, when jurisdiction and the merits of an action overlap, "the court must, of course, employ the

15 standard applicable to a motion for summary judgment." *Farr v. U.S.*, 990 F.2d 451, 454 n. 1 (9th Cir.

16 1993). Plaintiffs, as the nonmoving party, need only "set forth specific facts, beyond [their] pleadings,

17 to show that a genuine issue of material facts exist." *Trentacosta v. Frontier Pacific Aircraft Industries,*

18 *Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987). LSI can prevail "only if the material jurisdictional facts are

19 not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l*

20 *Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir.2001)(citation omitted).

21 Accordingly, a court must allow discovery to take place at least to the extent necessary to determine its

22 own jurisdiction. *Augustine*, 204 F.2d at 1079; *see also Thornhill*, 594 F.2d at 735 ("where the

23 jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is

24 dependent on decision on the merits, a party is entitled to have the jurisdictional issue submitted to the

25 jury, rather than having the court resolve factual issues").

26        As shown in Section I.B, *supra*, Plaintiffs allege that LSI participated in a conspiracy with WMB

27 and EA to artificially inflate the values of home loans by covertly providing unlawful, incredible, false

28 appraisals to Plaintiffs instead of the lawful, credible appraisals for which they paid. FAC, ¶¶ 6-9, 35-

1   56, 82, 87. Plaintiffs' conspiracy allegations go to the heart of the merits of Plaintiffs' claims that they

2   were injured by virtue each of the alleged co-conspirators actions in providing unlawful and incredible

3   appraisals. *Id.* Proving Plaintiffs' allegations that LSI conspired with WMB or EA to inflate home

4   appraisal values would likewise prove Plaintiffs have standing to sue LSI. *Applied Equipment*

5   *Corporation*, 869, P.2d at 510-511 ("by participating in a civil conspiracy, a coconspirator effectively

6   adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this

7   way, a coconspirator incurs tort liability coequal with the immediate tortfeasors"); *Weisz*, 278 F.Supp.2d

8   at 1192.

9         Where, as here, the issues of jurisdiction and the merits of Plaintiffs' action are completely

10  intermeshed so that the question of jurisdiction is dependent on the merits of Plaintiffs' action, Plaintiffs

11  are "entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve

12  factual issues." *Thornhill*, 594 F.2d at 735. Therefore, it is premature for this Court to rule on LSI's

13  jurisdictional challenge prior to discovery being taken.

14        **D.    In the Alternative to Denying LSI's Motion to Dismiss for Lack of Subject Matter**
          **Jurisdiction Outright, Plaintiffs Request Jurisdictional Discovery to Respond to**
15        **LSI's Claims.**

16        Plaintiffs have established standing over LSI because Plaintiffs' injuries stem directly from the

17  conspiracy between LSI, WMB, and EA, and therefore each member of the conspiracy can be held

18  jointly and severally liable for Plaintiffs' injuries. *See* Section I.B., *supra*. Should this Court conclude,

19  however, that the jurisdictional question does not overlap with the merits of Plaintiffs' claims, and is

20  still willing to entertain LSI's challenge to subject matter jurisdiction, Plaintiffs request jurisdictional

21  discovery to show whether jurisdiction is proper over LSI. *See* Plaintiff's Notice of Motion; Motion

22  and Supporting Memorandum for Jurisdictional Discovery.

23        In the Ninth Circuit, "where pertinent facts bearing on the question of jurisdiction are in dispute,

24  discovery should be allowed." *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th

25  Cir.1989)(*citing Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430-31, n. 24 (9th

26  Cir.1977)). Refusal to grant jurisdictional discovery is only appropriate "when it is clear that further

27  discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo &*

28  *Co.*, 556 F.2d at 430-31, n. 24.

11

1       Here, Plaintiffs dispute LSI's counsel's unsupported contention that LSI had "no involvement

2   or connection to" Plaintiffs' appraisals, which is LSI's entire basis for its challenge to Article III

3   standing, because LSI is listed on Plaintiff Scholl's appraisal report. Scholl Report, p. 7. Additionally,

4   LSI's own affiant refrained from attesting that LSI had not received, reviewed, or altered either

5   Plaintiffs' appraisals as is alleged in the FAC. FAC, ¶¶ 6-9, 37-39; compare Rice Aff., ¶¶ 6, 9-15. As

6   it is not clear that further discovery would not demonstrate facts sufficient to constitute a basis for

7   jurisdiction and in fact suggests Plaintiffs can establish jurisdiction, this Court should allow

8   jurisdictional discovery. *Wells Fargo & Co.*, 556 F.2d at 430-31, n. 24.

9   **II.     PLAINTIFFS HAVE PROPERLY ALLEGED CAUSES OF ACTION FOR LSI'S
        SPECIFIC AND CONSPIRATORIAL CONDUCT RESULTING IN DAMAGES TO**

10  **    PLAINTIFFS, REQUIRING DENIAL OF LSI'S RULE 12(B)(6) MOTION.**

11      **A.     LSI was Directly Involved in Plaintiffs' Appraisals.**

12      LSI moves to dismiss, pursuant to Rule 12(b)(6), several of Plaintiffs' causes of action under

13  the same mistaken premise that LSI had absolutely no involvement with Plaintiffs's appraisals. *See* LSI

14  Br., p. 10 (RESPA, UCL, and CLRA), p. 12 (RESPA claims), p. 13 (UCL claims). Based on LSI's

15  misguided assertions, LSI moves to dismiss based on the idea Plaintiffs lack Article III standing and

16  that LSI could not have harmed them because LSI neither "prepared or reviewed" Plaintiffs' appraisals.

17  LSI Br., p. 11.

18      LSI cites to nothing to dispute Plaintiffs' claims that they were harmed by LSI's involvement

19  in the alleged conspiracy with WMB and EA, or to deny that LSI was directly involved in reviewing,

20  preparing, completing, changing, or otherwise affecting Plaintiffs' appraisals.[6] Plaintiffs, however,

21

---

22      [6]   LSI's counsel makes the same unsupported assertion that LSI had no role in Plaintiffs'
    appraisals in its Rule 12(b)(6) arguments as they did for LSI's motion based on Rule 12(b)(1).

23  However, LSI's counsel does not, and cannot, cite to Ms. Rice's affidavit to support this assertion
    because, as LSI's counsel is well aware, LSI cannot rely on evidence outside the pleadings on a Rule

24  12(b)(6) motion to dismiss without converting it into a motion for summary judgment. *Lee v. City of
    Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Even if this Court was to consider Ms. Rice's affidavit,

25  she does not deny LSI's involvement in Plaintiffs appraisals outside of the documents "preparation" and

26  "completion" and does not deny LSI's involvement in the alleged conspiracy. Rice Aff., ¶¶ 6, 10, 12,
    15. However, should this Court feel LSI's argument that LSI had no role whatsoever in Plaintiffs'

27  appraisals is supported by Ms. Rice's affidavit, Plaintiffs seek leave to file a Rule 56(f) affidavit which

28  will be materially similar to Plaintiffs' Motion for Jurisdictional Discovery for the evidence Plaintiffs
    believe will prove LSI did, in-fact, affect Plaintiffs' appraisals either directly or through the alleged

12

1    have shown specific evidence linking LSI to Plaintiff Scholl's appraisal, and as Plaintiffs have properly

2    alleged several causes of action for being given counterfeit appraisals as part of their real estate

3    settlement.  Accordingly, as this Court must take the allegations in Plaintiffs' complaint as true LSI's

4    Rule 12(b)(6) Motion to Dismiss must be denied for the same reasons its Motion to Dismiss for lack

5    of standing should be denied.  *See* Arguments I.A-B, *supra*.

6         **B.    LSI's Argument that California does not Recognize a Claim Based on Negligent**
               **Appraisal is Misplaced, as Plaintiffs are not Alleging a Negligent Appraisal Claim,**
7              **They are Alleging a Negligent or Intentional Misrepresentation Claim.**

8              Following LSI's flawed argument that Plaintiffs have no standing and cannot otherwise state

9    a claim against it because it desperately wants this Court to believe LSI had absolutely no involvement

10   in Plaintiffs' appraisals, LSI proceeds to argue that all of Plaintiffs' claims (including their federal

11   RESPA claim) must be dismissed because California law does not recognize negligent appraisal claims.

12   LSI Br., pp. 9-10.  The overriding problem with LSI's argument is that Plaintiffs are not alleging a

13   negligent appraisal claim.  Nowhere in the FAC do Plaintiffs suggest that they are suing Defendants,

14   or LSI in particular, based on receiving "negligent appraisals."

15             Plaintiffs are alleging Defendants, including LSI, intentionally and knowingly conspired so sell

16   Plaintiffs and borrowers counterfeit appraisals that violated USPAP and federal law while passing them

17   off as real, credible appraisals which they could rely on.  FAC, ¶¶ 6-9, 36-39, 44-56; *see also* Scholl

18   Report, p. 7, ¶ 23 (The borrower ... may rely on this appraisal report as part of any mortgage finance

19   transaction that involves any one or more of these parties"); Decl. of Stephen M. Rummage in Support

20   of Defendant WMB's Motion to Dismiss Plaintiffs' FAC, Exh. G ("Spears Report"), p. 7 (same).

21   Plaintiffs have alleged Defendants, including LSI, perpetrated this scheme with the express purpose of

22   profiting off of unknowing borrowers.  FAC, ¶¶ 6-7.  To this end, Plaintiffs have alleged Defendants

23   *misrepresented* that the appraisals were lawful and credible -- not that the appraisals were negligently

24   performed. FAC, ¶¶ 7, 56.  While LSI points out that California law does not ordinarily permit a cause

25   of action against a bank for a negligently performed appraisal, California law certainly does provide for

26   a cause of action based on a misrepresentation as Plaintiffs have alleged.

27

28   ————————————————

conspiracy. *California Dept. of Social Services v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008).

1       In *Nymark v. Heart Federal Savings & Loan Ass'n,* 231 Cal.App.3d 1089 (1991), which LSI

2  relies heavily on here, the court held that a lender may not owe a borrower any duty of care in

3  connection with the preparation of an appraisal used only for the lender's own purposes.  However,

4  "that principle does not extend to shield a lender or other entity from liability for making a negligent

5  misrepresentation concerning the substance of an appraisal." *Lowes v. Hill & Co. Real Estate,* 2006

6  WL 463517, *8 (N.D.Cal. 2006)(*citing Bily v. Arthur Young & Co.,* 834 P.2d 745 (Cal. 1992)).

7  Especially, as here, an appraisal delivered to the borrower, that expressly states it was prepared for the

8  borrower and lender, and that both the borrower and lender can rely on it in their mortgage transaction.

9  Scholl Report, p. 7; Spears Report, p. 7.

10       California courts distinguish negligent appraisal cases from misrepresentation cases because "an

11  appraiser is a professional assumed to have superior knowledge on the subject of property valuation and

12  thus may be liable for an erroneous opinion of value where the appraisal is intentionally in error to

13  induce a buyer or lender to enter into a transaction, or because of a negligent evaluation of property that

14  is below the industry standard of care." *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86

15  Cal.App.4th 303, 310 n. 3 (Cal.App. 2000).  Accordingly, California courts routinely find that where

16  a misrepresentation is made in connection with an appraisal report, either directly from the appraiser

17  or when procured by a lender, an intended beneficiary can pursue a cause of action for any

18  misrepresentation made. *See, e.g., Soderberg v. McKinney*, 44 Cal.App.4th 1760, 1768-69 (Cal.App.

19  1996)(an appraiser retained by a mortgage broker may be held liable to investors for a misrepresentation

20  in the report); *Alliance Mortg. Co. v. Rothwell*, 900 P.2d 601, 613-614 (Cal. 1995)(holding a lender can

21  bring a cause of action against a real estate broker and appraiser for misrepresenting the value of a

22  property); *Barry v. Raskov*, 232 Cal.App.3d 447, 454-455 (CalApp. 1991)(holding that a mortgage loan

23  broker can be held liable for the fraud or negligence of an independent property appraiser it hires to

24  appraise securing property); *Lowes v. Hill & Co. Real Estate*, 2006 WL 463517 at * 8.

25       Here, Plaintiffs' appraisal each identify Plaintiffs as the appraiser's clients. Scholl Report, pp.

26  8-9; Spears Report, pp. 8-17.  Additionally, Plaintiffs' appraisals state that they and WMB "may rely

27  on this appraisal report as part of any mortgage finance transaction that involves any one or more of

28  these parties."  Scholl Report, p. 7; Spears Report, p. 7, ¶ 23.  Where, as here, Plaintiffs allege LSI

14

1 misrepresented that the appraisals were being performed independently, lawfully, and credibly, and that

2 Plaintiffs could rely on them in deciding whether to borrow money from WMB, liability can be found

3 for LSI's misrepresentation. *See, e.g., Soderberg*, 44 Cal.App.4th at 1768-69.[7]

4         The three cases LSI cites in making its "negligent appraisal" argument are irrelevant and

5 inapposite to Plaintiffs' action here. LSI relies most heavily on *Nymark, supra*. Besides being a ruling

6 on summary judgment, and not a ruling on the pleadings, *Nymark* only involved a negligence claim, and

7 not a negligent misrepresentation. *Nymark*, 231 Cal.App.3d at 1096. The *Nymark* court only considered

8 "whether a lender has a duty of care to a borrower in appraising the borrower's collateral to determine

9 if it is adequate security for a loan." *Id.* at 1095-96. Not only does *Nymark* fail to speak on LSI's duty

10 as an appraiser, and not as a bank, but Plaintiffs here clearly allege the appraisals were procured for

11 Plaintiffs' benefit as well as the banks. FAC, ¶¶; Scholl Report, p. 7; Spears Report, p. 7. Additionally,

12 the lender, WMB, did not procure the appraisals for its own benefit in deciding whether to lend money;

13 rather, WMB procured the appraisals as part of its conspiracy with EA and LSI to inflate values of home

14 mortgages and facilitate the sale of mortgage-backed securities. FAC, ¶¶ 6, 22-24.

15         LSI also cites an unpublished, non-citable state court appellate decision, *Luri v. First Federal*

16 *Bank of California*, 2001 WL 1656602 (Cal.App. 2001).[8] Since a California court could not rely on it,

17 this Court should likewise not do so. Regardless, *Luri,* again, involved a negligent appraisal claim.

18 *Luri*, 2001 WL 1656602 at *4. The court held the plaintiff could not state a negligent appraisal claim

19 against the appraiser because she was not the appraiser's client, and therefore no duty of care was owed

20 to her. *Id.* at * 5. Again, Plaintiffs allege they were, indeed, the appraisers' clients as is illustrated on

21

22

      [7]  LSI goes so far to avoid the fact that Plaintiffs were the appraisers' clients that it states,
23 "Plaintiffs were not even permitted to see the results of the appraisal report." LSI Br., p. 10. This is
contradicted not only by the FAC and Plaintiffs' appraisal reports, but also by federal law which
24 **mandates** that lending institutions provide appraisal reports to borrowers any time credit is secured by
25 a lien on a dwelling. 12 C.F.R. § 202.14; 15 U.S.C. § 1691(e).

26       [8]  The opinion states at its outset that "California Rules of Court, rule 977(a), prohibits courts
and parties from citing or relying on opinions not certified for publication or ordered published, except
27 as specified by Rule 977(b). This opinion has not been certified for publication or ordered published
28 for purposes of Rule 977." Apparently, LSI thinks it is appropriate to nonetheless cite the decision now.

15

1   their appraisal reports. FAC, ¶¶ 25., 59, 64; Scholl Report, pp. 8-9; Spears Report, pp. 8-17. Likewise,

2   the appraisers did have a duty of care because they drafted the reports, published them to Plaintiffs, and

3   stated quite plainly that Plaintiffs may rely on them in their real estate transactions.  FAC, ¶ 25; Scholl

4   Report, p. 7, ¶ 23; Spears Report, p. 7, ¶ 23.   Given that both the facts and claims involved are

5   completely different from *Luri*, LSI's suggestion that such a case somehow requires dismissal of

6   Plaintiffs' claims – none of which are remotely predicated on a negligent appraisal – is nonsense.

7        Finally, LSI itself points out that *Gay v. Broder*, 109 Cal.App.3d 66 (1980) held that no claims

8   for negligent appraisals could exists "where appraisal negligently set the value of the property lower

9   than the sales price such that plaintiff was unable to secure financing from Veterans Administration and

10  forced to obtain alternative financing." LSI Br., p. 9.  Plaintiffs' allegations and legal theories bear no

11  resemblance to *Gay*, and thus *Gay* is not binding on this Court here.

12       LSI closes its "negligent appraisal" argument with by asserting that Plaintiffs cannot avoid the

13  "standard of law" in *Nymark* by "recasting a claim for negligent appraisal as a claim under RESPA, the

14  UCL, CLRA or for breach of contract or unjust enrichment." LSI Br., p. 10.  That might be true if this

15  case were about negligent appraisals, but it isn't.  LSI cannot avoid defending its legal conduct by

16  repeatedly casting Plaintiffs' case as a "negligent appraisal" case.  As Abraham Lincoln is reputed to

17  have said, "'calling' a tail a leg don't make it a leg." *See Newberry v. Befort*, 28 Kan.App.2d 807, 813

18  (2001).  The same holds true here.

19       **C.     LSI's "No Damages" Theory is Meritless.**

20       LSI makes several "no damages" arguments.[9]  First, like its co-conspirators, LSI attempts to

21  _____

22  [9]   In making the arguments, LSI blatantly mis-characterizes Plaintiffs' pleading, purportedly
    citing Paragraph 21 of the FAC for the notion that Plaintiffs have alleged that "[i]n order to protect its
23  interest and as a condition of entering into those loans, WMB required the subject properties to be
    appraised." Plaintiffs allege no such thing, and LSI knows this. In fact, Plaintiffs allege the opposite.
24  Plaintiffs' allege that "historically banks retained ownership of the loan and mortgage" and thus their
    interest was to ensure that the property was "properly appraised and that the loan amount reflected the
25  value." FAC, ¶ 21. Plaintiffs next allege that in recent years, that traditional model has changed. *Id.*
26  Now, lenders like WMB sell their loans to investment banks and government sponsored entities, which
    then pool, securitize and sell the loans to the general public as mortgage-backed securities, "allowing
27  lenders such as WMB to profit from the volume and value of the loans it has procured.  The large the
    aggregate value of the loans, the more profit for the lender." *Id.*  Thus, banks like WMB no longer
28  assume the risk of a bad loan, and bank profit now directly correlates to the volume and value of loans

1    focus on the fact that Plaintiffs sought and obtained loans from WMB.  LSI asserts that "Plaintiffs do

2    not allege how, if at all, the values stated in the appraisal reports made any differences between the loan

3    amounts that were promised and the loan amounts they ultimately received."  LSI's Br., p. 10.  This is

4    not alleged, however, because it is not the theory of Plaintiffs' case.  Plaintiffs are not claiming that they

5    did not receive the loans they wanted.  They are claiming that they paid for and expected to receive

6    lawful, credible appraisals; but, instead, they were provided with counterfeit, sham appraisals that were

7    neither lawful nor credible. FAC, ¶ 82.  The fees they were charged for these counterfeit appraisals are

8    their damages.  *Id.*, ¶ 87.

9        Likewise, LSI argues that Plaintiffs "do not allege they paid anything other than the fair market

10   value of the properties they purchased."  LSI Br., p. 10.  Again, this is a nonsequitur.  Plaintiffs' case

11   is predicated on the fees they paid for counterfeit appraisals, not on any lost value of the properties they

12   obtained after they paid those improper appraisal fees.  Plaintiffs are not required to allege that they

13   obtained more or less valuable properties than they thought they were buying.

14       LSI also argues that "Plaintiffs do not claim that they used the appraisal reports in connection

15   with the loan transactions," citing a Vermont case for the proposition that Plaintiffs must show that the

16   appraisals proximately caused them damages.  LSI Br., p. 11.  However, the cited Vermont case,

17   *Hughes v. Holt*, 140 Vt. 38 (Vt.Sup.Ct. 1981), is not authority in this case, which alleges California state

18   law claims and a RESPA claim.

19       Moreover, the facts underlying the theory of the plaintiffs' claims in *Hughes*, which arose out

20   of their purchase of a house which was infested with termites, makes it inapposite.  *Hughes*, 140 Vt.

21   at 38.  Plaintiffs are not claiming consequential damages as the result of a negligent appraisal.  *See*

22   Section II.B. *supra*.  Plaintiffs are claiming they were unlawfully and unfairly charged for a real estate

23   appraisal when they were not provided for one. FAC, ¶¶ 81-82, 87.  Further, the *Hughes* decision arose

24   after a jury verdict, and the opinion was based on the evidence presented in the case.  Some of the

25   _____

26   generated, rather than the likelihood of repayment. As such, WMB has little incentive to obtain credible
     appraisals of property values and "every incentive to offer the highest loan amounts possible, supporting
27   the loans with biased, artificially inflated, false appraisals." *Id.*, ¶¶ 23-24. In effect Plaintiffs allege that
     WMB provided the appraisers **not** to "protect its interest" – as LSI misleadingly suggests is Plaintiffs'
28   allegation – but rather to facilitate its efforts to increase its profits by selling loans to others.

17

1 reasons the Court found the plaintiffs could not state a claim against the appraiser for their damages

2 were that the facts showed that the appraisal report was confidential and had not been provided to the

3 plaintiffs and thus could not have been relied upon by them, and, in fact, they had already executed the

4 purchase and sale agreement before the appraisal was done. *Hughes* at 40-41.  This is in stark contrast

5 to Plaintiffs here who were provided with appraisal reports which state quite clearly that they could rely

6 on them in deciding whether to borrow money from WMB, and misrepresented that they were lawful

7 and prepared in accordance with USPAP when they were not, but rather were crated a part of

8 Defendants' alleged conspiracy.  FAC, ¶¶ 29, 59-61, 64-66, 68-69; Scholl Report, p. 7; Spears Report,

9 p. 7.

10    Finally, LSI actually tackles Plaintiffs' damage theory directly, claiming that Plaintiffs cannot

11 predicate damages on the appraisal fees they paid because LSI did not prepare or review the reports

12 and, moreover, they were not prepared for Plaintiffs' benefit. LSI Br., p. 11.  Here, again, it relies on

13 *Nymark* and *Gay* (discussed in Section II.B., *supra*), as if the statements in those cases about the *facts*

14 of those cases somehow override Plaintiffs' allegations about the facts of *this* case.  FAC, ¶¶ 21-23,

15 29, 59-61, 64-66, 68-69.

16    Despite the wishful thinking of LSI and its co-defendants, the mere inclusion of an "intended

17 use" statement in the counterfeit appraisals at issue does not somehow immunize them from being sued

18 by Plaintiffs based on the fees unfairly charged to Plaintiffs for such counterfeit appraisals.  Perhaps

19 after discovery, Defendants will be able to establish that some of the facts alleged by Plaintiffs lack

20 evidentiary support; for now, however, Plaintiffs' allegations must be accepted as true.[10]

21    **D.    Plaintiffs have Stated Cognizable RESPA Claims Under Sections 8(a) and (b).**

22    LSI falsely asserts that  Plaintiffs do not have standing under RESPA, doing so by: (1) mis-

23

24    [10]  LSI's closing salvo, that Plaintiffs do not allege that fees "were fictitious costs" but rather only that "what the fees bought them were worthless" is truly a distinction without substance. LSI Br., p. 11.  Yes, unlawful, counterfeit appraisals apparently were completed, and misleading appraisal reports which falsely asserted that they were prepared in accordance with USPAP were provided. The fact remains that Plaintiffs did not get what they paid for, what they were led to believe they were paying for, and what they reasonably expected they were paying for.  The fact that phoney appraisal reports were prepared, consistent with Defendants' conspiracy to use such appraisals to justify the values of the loans WMB was reselling, hardly means Plaintiffs have not been damaged by paying money for real appraisals when real appraisals were not provided.

18

1    characterizing the RESPA violations alleged in the Complaint - implying that the RESPA violations

2    alleged were simply for overcharges; (2) falsely suggesting that Plaintiffs did not plead specific enough

3    facts regarding the amount of money Defendants received as a result of the illegal referral arrangement;

4    and (3) inaccurately stating that Plaintiffs RESPA claims are barred by the statute of limitations. LSI's

5    Br., p. 12. As more fully explained in Plaintiffs' Opposition to WMB's and EA's Motions to Dismiss,

6    Plaintiffs have alleged cognizable RESPA claims under Sections 8(a) and (b) against WMB, EA, and

7    LSI. *See* Plaintiffs' Combined Memorandum in Opposition to Defendants Washington Mutual Bank's

8    and First American eAppraiseIT's Motions to Dismiss First Amended Complaint, pp. 1-10.

9           **1.    Plaintiffs have alleged a violation of RESPA Section 8 (a).**

10         Section 8(a) of RESPA makes it illegal for anyone to give or accept any "thing of value" for

11    a referral of settlement services. 12 U.S.C. § 2607(a). Plaintiffs have alleged the exchange of a thing

12    of value" in connection with the so-called appraisal services here – i.e. WMB entered into a conspiracy

13    with LSI to provide WMB with counterfeit, sham appraisals in exchange for WMB referring its

14    appraisal business to LSI. FAC, ¶¶ 6, 84. Plaintiffs also allege WMB demanded that EA pay those

15    appraisers who provided the counterfeit, sham appraisals a 20% incentive fee for doing so. *Id.*, ¶ 85.

16    Consequently, LSI has been paid millions of dollars directly from WMB's borrowers, including

17    Plaintiffs, for providing counterfeit, sham appraisals. *Id.*, ¶¶ 7, 59, 64.

18         WMB received a "thing of value," the counterfeit sham appraisals, in exchange for referring

19    business to LSI. *See* 24 C.F.R. 3500.14(d)(defining "thing of value" to be any "thing" which would

20    include a counterfeit, sham appraisal). Thus, WMB's agreement with LSI to give WMB's future

21    appraisal services business in exchange for LSI's provision of phony appraisals is precisely what

22    Section 8(a) of RESPA prohibits. 24 C.F.R. § 3500.14(b), subsection (c) (explaining "[w]hen a thing

23    of value is received repeatedly and is connected in any way with the volume or value of the business

24    referred, the receipt of the thing of value is evidence that it is made pursuant to an agreement or

25    understanding for the referral of business").[11]

26

27          [11]   LSI argues - without any authority - that the RESPA Section 8(a) claim cannot go forward

28    because RESPA does not prohibit compensation for services actually performed. LSI Br., p. 12. The
     argument has no relevance here because Plaintiffs consistently alleged the appraisal services were not

19

1    **2.    Plaintiffs have alleged a cognizable Section 8(b) claim.**

2    Plaintiffs also alleged a violation of RESPA Section 8 (b) which prohibits any parties from

3    giving or receiving any portion of any charge made for settlement services other than for services

4    actually performed.  12 U.S.C. § 2607(b).  Plaintiffs allege they, and members of the Class, were

5    charged an unearned fee because no appraisal services were provided. FAC, ¶ 82. Here, the unearned

6    fee, once again, refers to the entire amount of the appraisal service charged to Plaintiffs.[12] *Id.*, ¶¶ 59,

7    64.

8    LSI cites only *Moore v. Radian Group, Inc.*, 233 F.Sup.2d 819 (E.D.Tex. 2002) for the

9    irrelevant proposition that damages under RESPA are limited to the amount of any overcharge.[13] LSI

10   Br., p. 12.  Here, Plaintiffs have not alleged an overcharge; rather, Plaintiffs have alleged they were

11   charged for services that were not provided. FAC, ¶ 82. Therefore, the amount of damages as plead

12   by Plaintiffs is the full amount they paid for the counterfeit, sham appraisals. *Id.*, ¶¶ 59, 64, 87.

13

14

15   _____

16   performed.  FAC, ¶ 85.  *See also* Plaintiffs' Combined Memorandum in Opposition to Defendants' Washington Mutual Bank's and First American eAppraiseIT's Motions to Dismiss First Amended Complaint, pp. 6-9.

17

18   [12]    A more detailed description of this argument is provided in Plaintiffs' Combined Memorandum in Opposition to Defendants Washington Mutual Bank's and First American

19   eAppraiseIT's Motions to Dismiss First Amended Complaint at pages 6-9.

20   [13]    Moreover, *Moore* has no precedential value here, and has been criticized by more than one

21   court. *See Pettrey v. Enterprise Title Agency, Inc.*, 241 F.R.D. 268 (Northern Dist. Of Ohio, 2006) ("A number of courts have addressed the issue.  Earlier courts tended to limit damages to the amount of an

22   overcharge, thus permitting Section 8 actions only in instances where an overcharge occurred.  More recent courts have rejected these decisions and held that damages for ABA claims include all charges

23   paid to the sham ABA.  The Court agrees with these later decisions.") (internal citations omitted); *Capell v. Pulte Mortgage L.L.C.*, 2007 WL 3342389 *5 (E.D.Pa 2007)("First, limiting RESPA §(d)(2)'s

24   "any charge paid" language to overcharges is less consistent with the plain language of the statute than

25   reading the locution as including the entirety of the settlement charge.  Second, the 1983 amendment changed RESPA's statutory language in important ways that the *Moore* line fails to acknowledge.

26   Third, the *Moore* line relies on a narrow reading of Congress's purpose of protecting consumers from unnecessarily high settlement charges.  RESPA allows individuals to police the marketplace in order

27   to ensure impartiality of referrals and competition between settlement service providers, thereby creating a market-wide deterrent against unnecessarily high settlement costs. Suits without overcharges

28   thus advance Congress's goals under the statute.").

1      **3.**    **The RESPA statute of limitations does not bar Plaintiff Scholl's RESPA**
2          **claims.**

3        LSI's RESPA statute of limitations argument is limited to Plaintiff Scholl since Plaintiff Spears

4 clearly filed his RESPA claim within the one year RESPA statute of limitations. LSI Br., p. 12.

5 Plaintiff Scholl's RESPA claims, however, were tolled until Defendants' conspiracy to falsify

6 appraisals was first made public by the New York Attorney General in November, 2007 as Plaintiffs

7 have alleged. FAC, ¶¶ 67-70.   Taking these allegations as true as this Court must on a motion to

8 dismiss and applying equitable tolling to Plaintiff Scholl's RESPA claims in light of Defendants'

9 concealed fraudulent conspiracy, the statutory time period would not begin to run until Plaintiffs either

10 became aware of the agreement, or had reason to become aware of the agreement.  *Holmberg v.*

11 *Armbrecht*, 327 U.S. 392, 394-396 (1946)(unless Congress states otherwise, equitable tolling should

12 be read into every federal statute of limitations); *Erwin v. City of Angels Camp, City Council &*

13 *Planning Commission*, 1992 U.S. App. LEXIS 33810 (9th Cir.1992) ("The statute of limitations period

14 is tolled if a plaintiff 'has been injured by fraud or concealment and remains in ignorance of it without

15 any fault or want of diligence on...[her] part.' *Briley v. State of Cal.*, 564 F.2d 849, 855 (9th Cir. 1977).

16 'The statutory time period does not begin to run until discovery of the injury.' *Id.*; *accord Gibson v.*

17 *U.S.*, 781 F.2d 1334, 1344-45 (9th Cir. 1986)").

18        Plaintiff Scholl presents detailed allegations showing she and all other members of the Class

19 were neither aware of Defendants' concealed conspiracy agreement, nor had reason to be aware of the

20 conspiracy prior to November 1, 2007 - the date in which the New York Attorney General first

21 announced his intent to sue the appraisers for the practices forming the foundation of Plaintiffs'

22 complaint. FAC, ¶¶ 67-70.   These allegations must be accepted as true on a motion to dismiss.

23 Accordingly, Plaintiff Scholl's initial complaint that was filed on February 8, 2008, was well within

24 RESPA's one year statute of limitations once equitable tolling is properly applied.

25      **E.**    **Plaintiffs' CLRA Claim is not Barred Because a "Real Estate Transaction" was**
26          **Involved.**

27        In a one paragraph argument, LSI claims that Plaintiffs' CLRA claim must be dismissed not

28 because California Civil Code Section 1754 states that the CLRA's provisions do not apply to "any

21

1   transaction which provides for the construction, sale or construction and sale of an entire residence."

2   LSI Br., p. 13. The argument is baseless. The transactions at issue did not provide for the sale of

3   residences; rather, they provided for *financial services* in connection with the sales of residences. The

4   transactions which provided for the sales of residences were the transactions between Plaintiffs and the

5   home sellers, not the transactions between Plaintiffs and WMB which are at issue here.

6       Tellingly, in making this argument, LSI fails to discuss the only authority on point, *Jefferson*

7   *v. Chase Home Finance*, 2007 WL 1302984 (N.D.Cal. 2007). Even in that case (discussed in greater

8   detail in Plaintiffs' response in opposition to WMB and EA's motions) the defendant bank did not

9   claim that the plaintiffs' CLRA claim against it was barred by Section 1754. Judge Henderson,

10  however, aptly noted:

11      Although not cited by either party, California Civil Code section 1754 provides that
        the CLRA 'shall not apply to any transaction which provides for the construction, sale,
12      or construction and sale of an entire residence ... or for the sale of a lot or parcel of
        real property, including any site preparation incidental to such sale.' However, **this**
13      **provision bars application of the CLRA only to transactions for the sale or**
        **construction of real property; it does not exclude financial service related to such**
14      **transactions.**

15  *Jefferson*, 2007 WL 1302984 at *3 n. 1 (emphasis added).

16      Plaintiffs' claims against LSI and its co-defendants arise *not* out of "transactions for the sale

17  or construction of real property," but rather out of transactions which resulted in the sale of goods or

18  services, namely appraisals which are services. Plaintiffs here paid separately for appraisals, in

19  addition to securing loans, and Plaintiffs are not claiming that the mortgage loans that they received

20  were "goods or services" under the CLRA; rather, the sham appraisals they paid for and received were

21  "work, labor or services" as the term "services" is defined in the CLRA. Cal. Civ. Code § 1761(b).

22      **F.    Plaintiffs Properly Allege a Contract Exists with LSI.**

23      LSI seeks dismissal of Plaintiffs' breach of contract claims based on its erroneous contention

24  that Plaintiffs have not pled "the existence of a contract between themselves and LSI." LSI Br., p. 14.

25  LSI acknowledges that Plaintiffs plainly allege that "EA and/or LSI undertook and agreed to provide

26  and provided Plaintiffs and the Class with these appraisals directly and/or by delivery to them through

27  WaMu." LSI Br., p. 14, quoting FAC, ¶ 120. This allegation is consistent with Plaintiffs' other

28  allegations that LSI, EA and WMB were all part of a conspiracy agreement to provide false, sham

1   appraisal reports to Plaintiffs and the Class. FAC, ¶¶ 6-9, 33, 35-49, 56. Ignoring Plaintiffs conspiracy

2   agreement allegations, LSI asks this Court to view paragraph 120 of the FAC in a vacuum and conclude

3   that the allegations of paragraph 120 standing alone are too vague to establish a contractual relationship

4   between LSI and Plaintiffs for the appraisals. LSI Br., p. 14. Of course, on a motion to dismiss, the

5   Court may not ignore, as LSI urges, the other well pled allegations of the FAC alleging LSI is a

6   contracting party for Plaintiffs' appraisals. *Wyler Summit Partnership v. Turner Broadcasting System,*

7   *Inc.,* 135 F.3d 658, 664 (9th Cir. 1998)(on a Rule b(6) motion to dismiss a breach of contract claim,

8   "the district court [is] obligated to accept [the] well-pleaded allegation as true, not to look beyond the

9   complaint and make a factual determination based on incomplete evidence").

10          Moreover, LSI conveniently ignores the appraisal report itself which is referenced in the FAC

11   and expressly names LSI as a "CLIENT" along with Plaintiff Scholl, EA and WMB. Scholl Report,

12   p. 7. This fact alone certainly gives rise to the reasonable inference that LSI was a contracting party.

13   The Court must accord Plaintiffs the benefit of all such reasonable inferences on a motion to dismiss

14   for failure to state a claim. *Patton v. Cox,* 276 F. 3d 493, 500 n.3 (9th Cir. 2002). That LSI may

15   "dispute the existence of such an agreement" is not a proper ground for granting LSI's motion to

16   dismiss where the allegations of the FAC and referenced appraisal reports taken as true give rise to a

17   reasonable inference that LSI was a contracting party for Plaintiffs' appraisal reports. *Id.* (declining

18   to grant a motion to dismiss where the parties dispute the existence of a contract, but the allegations

19   of the complaint taken as true reasonably infer the existence of a contract).[14]

20          LSI also intimates that Plaintiffs have pled no damages. This is meritless. The FAC expressly

21   pleads that Plaintiffs contracted with LSI and the other Defendants to provide them with a lawful,

22   credible appraisal and that "Plaintiffs and the Class were charged for a lawful appraisal which was

23

---

24          [14]    While the Court may not properly rely on facts outside the FAC in resolving a motion to

25   dismiss under Fed. R. Civ. P.12(b)(6), it is noteworthy the Rice Affidavit LSI submitted on its
     jurisdictional arguments fails to deny that LSI was a named party in Plaintiffs' appraisal reports, and

26   fails to deny that LSI received, reviewed or was otherwise involved with Plaintiffs' appraisal reports.
     Rice Aff., ¶¶ 6, 9-15. Indeed, all Ms. Rice stated was that LSI did not "prepare" or "complete"

27   Plaintiffs' appraisal reports. *Id.,* ¶¶ 6, 10, 17, 14-15. That LSI's counsel in its brief tries to argue that

28   LSI had no involvement at all in Plaintiffs' appraisals is irrelevant since neither Ms. Rice nor anything
     else before the Court supports LSI counsel's contention.

23

1  never performed by Defendants." FAC, ¶¶ 120, 122.  Plaintiffs have plainly pled damages from LSI's

2  breach.

3  **G.    Plaintiffs Properly Allege a Cause of Action for Quasi-Contract in the Alternative to a Breach of Contract.**

4

5  Plaintiffs have not pleaded a common count for "quantum meruit," though one would think

   otherwise by reading LSI's argument. LSI Br., p. 14.  Strangely, LSI relies on language from *Day v.*

6  *Alta Bates Med. Ctr.*, 98 Cal.App.4th 243, 248 (Cal.App. 2002), but that case involved only a quantum

7  meruit common count. As Plaintiffs' FAC makes clear, Plaintiffs are not alleging that they provided

8  uncompensated services to LSI pursuant to an express or implied request from LSI, warranting

9  application of the quantum meruit principles."[15]  LSI's assertion that Plaintiffs "have not performed

10 services for LSI" is thus inexplicably non-sequitur. LSI Br., p. 15.  Plaintiffs are not seeking to recover

11 based on quantum meruit.

12

13 Rather, Plaintiffs here are claiming that LSI has been unjustly enriched because it obtained

   monies from Plaintiffs – via an intermediary, WMB – as a result of the Defendants' unfair, illegal

14 appraisal conspiracy, and that such monies should be returned to Plaintiffs.  The recent decision in

15 *Shersher v. Superior Court*, 154 Cal.App.4th 1491 (Cal.App. 2007) leaves no doubt that restitution can

16 be obtained from defendants to whom the plaintiffs made no direct payments, in circumstances where

17 the defendants have obtained benefits (here, money) which it would be unjust for them to retain. *Id.*

18 at 640-41.  *See also Lectrodryer v. Seul Bank*, 77 Cal.App.4th 723, 726 (Cal.App. 2000)(noting that

19 the elements of a claim for unjust enrichment are "receipt of a benefit and unjust retention of the benefit

20 at the expense of another").

21

22 LSI also announces summarily that it was not paid by Plaintiffs so it did not render any services

   whatsoever to Plaintiffs. LSI Br., p. 15.  In doing so, it conveniently ignores that it is listed on Ms.

23 Scholl's appraisal report as the appraiser's client.  Scholl Report, p. 7.  It also ignores Plaintiffs'

24 allegations that WMB paid it increased fees in exchange for its services in assisting in the conspiracy

25 to charge WMB borrowers for counterfeit appraisals which were then used in facilitating the sales of

26

27     [15]    The other are cited by LSI in making this argument, *In re De Laurentiis Entertainment*

28 *Group, Inc.*, 963 F.2d 1269 (9th Cir. 2002), also involved quantum meruit principles, and is thus
   similarly inapposite since Plaintiffs are not making such claims in this case.

24

1   loans to third parties.  FAC, ¶¶ 85.  The Court may not consider LSI's unsupported factual assertion

2   on a Fed. R. Civ. P. 12(b)(6) motion, but must accept Plaintiffs' allegations as true which allege the

3   requisite payment to LSI.  *Wyler Summit Partnership*, 135 F.3d at 661.

4                                **CONCLUSION**

5        For the foregoing reasons, LSI's motion to dismiss should be denied in its entirety.

6

7   Dated: June 25, 2008                          **SPECTER SPECTER EVANS &**
                                                  **MANOGUE, P.C.**
8

9                                                By:   s/Joseph N. Kravec, Jr.
                                                      Joseph N. Kravec, Jr.
10
                                                 The 26th Floor Koppers Building
11                                               Pittsburgh, Pennsylvania 15219
                                                 Tel:    (412) 642-2300
12                                               Fax:    (412) 642-2309
                                                 E-mail: jnk@ssem.com
13
                                                 Michael D. Braun, Esquire
14                                               **BRAUN LAW GROUP, P.C.**
                                                 12304 Santa Monica Blvd., Suite 109
15                                               Los Angeles, CA 90025
                                                 Tel:    (310) 442-7755
16                                               Fax:    (310) 442-7756
                                                 E-mail: service@braunlawgroup.com
17
                                                 Ira Spiro (67641)
18                                               J. Mark Moore (180473)
                                                 **SPIRO MOSS BARNESS, LLP**
19                                               11377 West Olympic Blvd., Fifth Floor
                                                 Los Angeles, CA 90064-1683
20                                               Tel:    (310) 235-2468
                                                 Fax:    (310) 235-2456
21                                               E-mail: ira@spiromoss.com

22                                               Janet Lindner Spielberg (221926)
                                                 **LAW OFFICES OF JANET**
23                                               **LINDNER SPIELBERG**
                                                 12400 Wilshire Blvd., Suite 400
24                                               Los Angeles, CA 90025
                                                 Tel:    (310)3928801
25                                               Fax:    (310)278-5938
                                                 E-mail: jlspielberg@jlslp.com
26
                                                 *Attorneys for Plaintiffs*
27

28

                                        25

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA      )
                                                   )  ss.:
COUNTY OF ALLEGHENY     )

I am employed in the County of Allegheny, State of Pennsylvania. I am over the age of 18 and not a party to the within action. My business address is The 26th Floor Koppers Building, Pittsburgh, Pennsylvania 15219.

On June 25, 2008, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO LSI APPRAISAL, LLC'S MOTION TO DISMISS**

The ECF System is designed to automatically generate an e-mail message to all parties in the case, which constitutes service. According to the ECF/PACER system, for this case, the parties are served as follows:

Janet Lindner Spielberg, Esquire          jlspielberg@jlslp.com

Ira Spiro, Esquire          ira@spiromoss.com

Robert Ira Spiro, Esquire          ira@spiromoss.com

J. Mark Moore, Esquire          mark@spiromoss.com

Michael D. Braun, Esquire          service@braunlawgroup.com

**Attorneys for Plaintiffs**

Robert J. Pfister, Esquire          rpfister@stblaw.com

Martin L. Fineman, Esquire          martinfineman@dwt.com

Stephen Michael Rummage, Esquire          steverummage@dwt.com

Sam N. Dawood, Esquire          samdawood@dwt.com

Jonathan M. Lloyd, Esquire          jonathanlloyd@dwt.com

**Attorneys for Defendant Washington Mutual, Inc.**

Laura Jean Fowler, Esquire          lfowler@mhalaw.com

**Attorneys for Defendant eAppraiseIT**

Margaret Anne Keane, Esquire          mkeane@dl.com

Kris Hue Chau Man, Esquire          kman@dl.com

Angela M. Papalaskaris, Esquire          apapalas@dl.com

Christopher J. Clark, Esquire          cjclark@dl.com

| 1 | Kevin C. Wallace, Esquire | kwallace@dl.com |
|---|---|---|
| 2 | Jeffrey D. Rotenberg, Esquire | jrotenberg@tpw.com |
| 3 | Richard F. Hans, Esquire | rhans@tpw.com |

4 **Attorneys for Defendant LSI Appraisal, LLC**

5    On June 25, 2008, I served the document(s) described as:

6 **PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO LSI APPRAISAL, LLC'S MOTION TO DISMISS**

7

8 by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:

9 Kerry Ford Cunningham, Esquire
Patrick J. Smith, Esquire
10 Thacher Proffitt & Wood LLP
Two World Financial Center
11 New York, New York 10281

12 **Attorneys for eAppraiseIT**

13 Kris H. Man, Esquire
Dewey and LeBoeuf LLP
14 One Embarcadero Center
Suite 400
15 San Francisco, CA 94111-3619

16 **Attorneys for LSI Appraisal, LLC**

17 I served the above document(s) as follows:

18    BY MAIL.  I am familiar with the firm's practice of collection and processing
correspondence by mailing.  Under that practice it would be deposited with U.S. postal
19 service on that same day with postage thereon fully prepaid at Pittsburgh, Pennsylvania
in the ordinary course of business.  I am aware that on motion of the party served,
20 service is presumed invalid if postal cancellation date or postage meter date is more than
one day after date of deposit for mailing in an affidavit.

21

22    I am employed in the office of an attorney who is admitted *pro hac vice* in this
action at whose direction the service was made.

23    I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

24

25    Executed on June 25, 2008, at Pittsburgh, Pennsylvania.

26    S/MARCIA Z. CARNEY
Marcia Z. Carney

27

28

2