1  Stephen M. Rummage, *pro hac vice*
2  Jonathan E. Lloyd, *pro hac vice*
   Martin Fineman (Cal. Bar No. 104413)
3  Sam N. Dawood (Cal. Bar No. 178862)
   DAVIS WRIGHT TREMAINE LLP
4  505 Montgomery Street, Suite 800
   San Francisco, California 94111-6533
5  Telephone: (415) 276-6500
   Facsimile:  (415) 276-6599
6  Email:  steverummage@dwt.com
              samdawood@dwt.com
7
8  Attorneys for Defendant Washington Mutual Bank

9
                IN THE UNITED STATES DISTRICT COURT
10                NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE
11

12  SIDNEY SCHOLL and FELTON A. SPEARS,    )
    JR., on behalf of themselves and all others  )  Case No. 5:08-cv-00868 (RMW)
13  similarly situated,                    )
                                           )  CLASS ACTION
14            Plaintiffs,                   )
                                           )  **DEFENDANT WASHINGTON MUTUAL**
15       v.                                )  **BANK'S MEMORANDUM IN**
                                           )  **OPPOSITION TO PLAINTIFFS'**
16  WASHINGTON MUTUAL, INC., a Washington  )  **MOTION TO STAY PROCEEDINGS**
    corporation; WASHINGTON MUTUAL BANK,   )
17  FA (aka WASHINGTON MUTUAL BANK);       )
18  FIRST AMERICAN EAPPRAISEIT, a Delaware )  Date:  July 25, 2008
    corporation; and LENDER'S SERVICE, INC., )  Time: 9:00 a.m.
19                                         )  Department: Courtroom 6, 4th Floor
                                           )
20            Defendants.                   )
                                           )
21  _____)

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................................. 1

    A. Factual Background to Plaintiffs' Claims ................................................................ 1

    B. Procedural History of This Action ........................................................................... 3

    C. The MDL Proceedings ............................................................................................. 4

III. ARGUMENT ...................................................................................................................... 7

    A. An Assessment of the Factors Relevant to the Court's Exercise of
       Discretion Indicates that the Court Should Not Enter a Stay. ................................. 7

        1. Judicial Economy .......................................................................................... 7

        2. Prejudice to Defendants .............................................................................. 11

        3. No Hardship to Plaintiffs ............................................................................. 11

    B. Staying This Case Pending Resolution of Plaintiffs' Motion to Transfer Is
       Inappropriate Where the JPML Previously Refused to Transfer............................ 12

IV. CONCLUSION ................................................................................................................ 14

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY PROCEEDINGS
Case No. 5:08-cv-00868 (RMW)

DWT 11398546v6 0013149-000099

# **TABLE OF AUTHORITIES**

**Page(s)**

C ASES

*American Seafood, Inc. v. Magnolia Processing, Inc.*,
   Nos. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. May 7, 1992).........................................10

*Conroy v. Fresh Del Monte Produce, Inc.*,
   325 F. Supp. 2d 1049 (N.D. Cal. 2004) .................................................................................9

*Falk v. General Motors Corp.*,
   No. C 07-01731 WHA, 2007 WL 3101649 (N.D. Cal. Oct. 22, 2007)....................................8

*Hertz Corp. v. The Gator Corp.*,
   250 F. Supp. 2d 421 (D. N.J. 2003) ....................................................................................10

*In re Copper Antitrust Litig.*,
   269 F. Supp. 2d 1365 (J.P.M.L. 2003) .................................................................................9

*In re Exterior Siding & Aluminum Coil Litig.*,
   538 F. Supp. 45 (D. Minn. 1982)........................................................................................10

*In re Master Key Antitrust Litig.*,
   320 F. Supp. 1404 (J.P.M.L. 1971) ....................................................................................12

*In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*
   81 F.R.D. 482 (E.D. Mich. 1979) .......................................................................................10

*In re Washington Mutual, Inc., Securities, Derivative & "ERISA" Litig.*,
   536 F. Supp. 2d 1377 (J.P.M.L 2008) ...........................................................................5, 6, 13

*In re Zimmer, Inc., Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*,
   366 F. Supp. 2d 1384 (J.P.M.L. 2005) ................................................................................12

*Koulouris v. Builders Fence Co.*,
   146 F.R.D. 193 (W.D. Wash. 1991) ...................................................................................11

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ...........................................................................................................11

*Portnoy v. Zenith Labs.*,
   No. 86-35122, 1987 WL 10236 (D.D.C. Apr. 21, 1987) ......................................................10

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) ..............................................................................8, 10

*Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*,
   987 F. Supp. 1186 (N.D. Cal. 1997).................................................................................8, 9

DAVIS WRIGHT TREMAINE LLP

ii

1

2

**STATUTES**

3

28 U.S.C. § 1407 ..................................................................................................1, 5, 12

4

Section 10(b) of the Securities Exchange Act of 1934...................................................4

5

6

**OTHER**

7

J.P.M.L. Rule 1.5...........................................................................................................7, 8

8

Rule 10b-5 ........................................................................................................................4

9

Fed. R. Civ. P. 26(f)......................................................................................................3, 9

10

11

DAVIS WRIGHT TREMAINE LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY PROCEEDINGS
Case No. 5:08-cv-00868 (RMW)

DWT 11398546v6 0013149-000099

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

## I.    INTRODUCTION

Plaintiffs ask this Court to enter a stay, the sole effect of which would be to defer a ruling on Defendants' pending motions to dismiss.  Plaintiffs make this request in the hope that the Judicial Panel on Multidistrict Litigation ("JPML"), having once refused to transfer this case pursuant to 28 U.S.C. § 1407, will reconsider and transfer the case to the Western District of Washington so that it can rule on the motions instead of this Court.  The Court should deny the stay for two reasons:

*First*, none of the factors on which Plaintiffs rely supports a stay.  Regardless of whether the JPML ultimately transfers the case, some court will need to decide Defendants' motions to dismiss before the case can proceed.  (By contrast, an order granting the motions to dismiss may moot the transfer motion.)  Because a stay thus will only delay rulings on those motions, rather than save the judicial system from the effort, considerations of judicial economy favor denial of a stay.  Moreover, in light of the pending motions to dismiss and the parties' agreement to postpone discovery pending resolution of those motions, a stay will create only unnecessary delay.  Proceeding with the motions to dismiss will benefit Plaintiffs, either by resolving the case before they invest more time and resources or by accelerating progress towards a final resolution.

*Second*, the JPML already refused to transfer and consolidate this action with the cases in MDL 1919, and Plaintiffs have not given the Court any reason to believe the JPML will re-think the decision.  Despite Plaintiffs' effort to shoehorn their case into the MDL proceedings, the prior consolidated cases all involve shareholder claims against Washington Mutual, Inc. ("WMI"), and its management, alleging misrepresentations or omissions concerning WMI's financial condition.  This case, by contrast, involves consumer claims against Washington Mutual Bank ("WMB"), WMI's subsidiary, which have nothing to do with WMI's financial condition.  Plaintiffs' requested stay thus would serve no purpose other than to delay disposition of threshold motions.

## II.    FACTUAL BACKGROUND

### A.    Factual Background to Plaintiffs' Claims

Plaintiffs Sidney Scholl and Felton Spears obtained real estate secured loans from WMB.  To verify the value of the properties that Scholl and Spears offered as security, WMB obtained

1

DAVIS WRIGHT TREMAINE LLP

appraisals and passed through to Scholl and Spears the appraisal fees.  Complaint, ¶¶ 59, 64.
WMB obtained the appraisals through First American eAppraiseIT ("EA"), a third-party appraisal
management company to whom WMB outsourced some appraisal functions beginning in 2006.
Complaint, ¶¶ 33, 35, 59, 64.  Although Scholl and Spears also have sued Lender's Service, Inc.
("LSI"), another appraisal management company, neither Plaintiff's appraisal appears to have
been performed by an appraiser contracted through LSI.

Plaintiffs contracted with WMB for mortgage loans, not appraisals.  In September 2006,
Ms. Scholl and two co-investors signed a real estate purchase and sale agreement to buy a newly-
built home in Oklahoma for $289,000.  Rummage Decl. in Supp. of WMB Motion to Dismiss
("Initial Rummage Decl.") [Dkt. 43], Ex. E.  After signing the agreement, Ms. Scholl contacted
WMB for a loan (not an appraisal) and applied for a $231,200 mortgage loan to finance the
purchase.  WMB arranged for an appraisal.  *Id.*, Ex. B.  An Oklahoma appraiser performed the
appraisal and valued the Scholl Property at the $289,000 price that Ms. Scholl and her partners
had already agreed to pay the seller.  Ms. Scholl executed a promissory note and mortgage, WMB
funded Ms. Scholl's mortgage loan, and her purchase of this investment property closed with
funds provided by WMB.  *Id.*, Exs. A, C & D.

Mr. Spears engaged in a standard refinancing transaction.  In early 2007, Mr. Spears and
his wife submitted an application for a $178,000 loan (not an appraisal) from WMB.  In approving
that loan, WMB relied on an appraisal that valued the Spears property at $525,000.  Initial
Rummage Decl. [Dkt. 43], Ex. G.  Mr. Spears signed a note and deed of trust, and WMB funded
Mr. Spears's secured loan with the requested $178,000, which allowed Mr. Spears to pay off an
existing loan on his home and receive $19,000 in cash.  *Id.*, Exs. F, H & I.

Neither Ms. Scholl nor Mr. Spears has alleged that they came to WMB seeking appraisals
or that the appraisals WMB obtained and relied on in connection with their loans inflated their
property values.  Further, neither Ms. Scholl nor Mr. Spears has alleged any flaws in the
appraisers' selection or evaluation of comparable properties or in any other aspects of the
appraisers' valuation methods.  Neither has alleged that the appraisals led to a foreclosure on their
property or otherwise harmed them financially.  In short, Plaintiffs have not alleged that the

2

appraisals that WMB obtained were off by a nickel – much less that Ms. Scholl or Mr. Spears suffered any economic loss as a result of any supposed inaccuracies in the appraisal amount. Instead, Ms. Scholl and Mr. Spears rely on non-specific allegations concerning a supposed lack of "independence" by the appraisers used on WMB loans generally.  Complaint ¶¶ 33-56.

Based on these broad-brush allegations, Ms. Scholl and Mr. Spears seek to represent California and nationwide classes of WMB borrowers who obtained loans from WMB in transactions that involved allegedly non-independent appraisals provided through either EA or LSI.  Complaint ¶¶ 1, 58, 63.  WMB and LSI have each moved to dismiss for lack of standing and failure to state a claim, while EA has moved to dismiss for failure to state a claim.  Although the parties have nearly completed briefing on those motions (Plaintiffs have filed their oppositions), Plaintiffs now seek a stay to defer the dismissal of their claims.

### B.    Procedural History of This Action

WMB will not supplement Plaintiffs' brief recitation of the procedural history of this case, except to correct one exaggeration.

After describing briefly the course of events in this case (glossing over the three Motions to Dismiss filed on May 2, 2008), Plaintiffs conclude with the statement that they "have since [the initial discovery conference] propounded discovery to each Defendant consisting of 54 document requests."  Pl. Mem. [Dkt. 92] at 5:2-3.  When WMB's counsel read that assertion in Plaintiffs' June 20 filing, however, it came as a surprise.  Counsel for the parties had met and conferred pursuant to Rule 26(f) on May 6, 2008, and Plaintiffs specifically proposed that the parties begin discovery after disposition of Defendants' motions to dismiss.  All Defendants agreed.  Two days later, Plaintiffs circulated a draft Joint Case Management Conference Statement, which provided that discovery would not commence until the Court ruled on the Motions to Dismiss.  Rummage Decl. in Opp. to Stay ("Second Rummage Decl."), ¶ 3 & Ex. B.[1]

---

[1] On May 9, 2008, the day after Plaintiffs circulated the Draft CMC Statement, defendants EA and LSI filed declinations to proceed before Magistrate Judge Lloyd.  [Dkt. 59, 61.]  The Clerk thereafter issued a reassignment order and vacated all scheduled dates. [Dkt. 64.]  As a result, the parties never finalized or filed the Draft CMC Statement.

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY PROCEEDINGS
Case No. 5:08-cv-00868 (RMW)                                                        DWT 11398546v6 0013149-000099

DAVIS WRIGHT TREMAINE LLP

Consistent with that agreement, Plaintiffs did not serve any discovery until June 19, 2008 – *the day before they filed their Motion*. But Plaintiffs served their first requests for production by mail, and so WMB's counsel did not even receive that discovery until June 24, 2008, four days *after* Plaintiffs filed their papers telling the Court that discovery had been "propounded." Second Rummage Decl. ¶ 4 & Ex. C.

### C.     The MDL Proceedings

This Motion revolves around Plaintiffs' effort to move this case from this Court, where they filed it, to another venue where they could have filed, but chose not to. The Court should view this request within the more general context of the cases pending against WMB in the Western District of Washington.

In the fall of 2007, various shareholders filed lawsuits against WMB's parent company, Washington Mutual, Inc. ("WMI"), in Washington and New York, based on the sudden drop in the value of WMI stock. (The closing price on WMI stock fell from $33.07 on October 17, 2007, to $23.81 on November 2, 2007, around the time of the first lawsuits. As of July 3, 2008, the stock is trading below $6.00 per share.) The initial wave of lawsuits asserted claims under the federal securities laws, specifically Rule 10b-5, promulgated pursuant to Section 10(b) of the Securities Exchange Act of 1934. As commonly happens in securities cases of this nature, other lawsuits soon followed, making virtually identical allegations. Specifically, WMI shareholders brought derivative actions against WMI management, claiming that they had breached their fiduciary duties to the corporation, and participants in WMI's ERISA-qualified WaMu Savings Plan also sued, alleging breaches of duty by plan fiduciaries relating to Plan investments in WMI stock. By the end of November, WMI faced seven shareholder-related lawsuits.

On November 28, 2007, WMI filed with the JPML a Motion for Transfer of Actions to the Western District of Washington Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. The transfer motion sought transfer of the seven then-pending lawsuits to the Western District of Washington for coordinated or consolidated pretrial proceedings. During the next few months, while WMI's motion to transfer was pending, other plaintiffs filed at least 12 additional lawsuits, including this action. *See In re Washington Mutual, Inc., Securities,*

4

*Derivative & "ERISA" Litig.*, 536 F. Supp. 2d 1377, 1377 n.1 (J.P.M.L 2008). In each instance, WMI filed a notice of tag-along with the JPML to inform it of the newly-filed lawsuit. Unsure whether it would likewise face a multitude of consumer lawsuits, WMI also filed a notice of tag-along in this action, *Spears*, on February 15, 2008. (At that time, Plaintiffs had named only WMI as a Defendant, *not* WMB. The Plaintiffs eventually dismissed WMI from the case, and it no longer faces any claims here.) [2]

On February 21, 2008, the JPML issued a transfer order, consolidating the seven initial shareholder lawsuits in the Western District of Washington for coordinated or consolidated pretrial proceedings in MDL 1919. *In re Washington Mutual*, 536 F. Supp. 2d 1377. Each of the consolidated cases was "brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of [WMI], or participants in retirement savings plans suing for violations of ERISA." *Id.* at 1378. All of the cases revolve around "alleged misrepresentations or omissions concerning [WMI's] financial condition with respect to its subprime home loan portfolio." *Id.* The transfer order indicated that the other pending cases, including this one, would be treated as *potential* tag-along actions. *Id.* at 1377 n.1.

Plaintiffs are thus wrong to refer (repeatedly) to efforts by "WaMu" to consolidate the lawsuits against it through the vehicle of an MDL motion. *See* Pl. Mem. [Dkt. 92] at 3:16. Plaintiffs have defined "WaMu" to mean WMB, one of the defendants in this action. *See* Pl. Mem. [Dkt. 92] at 1:6. But *WMI* made the motion to transfer various actions brought against it; *WMB*, a banking subsidiary of WMI, never had an active role in the MDL proceedings. [3] And while Plaintiffs initially (and erroneously) named WMI as a defendant here, they voluntarily dismissed WMI on May 1, 2008. *See* Dkt. 39. Thus, the defendant in the various transferred cases is *not* the same entity that Plaintiffs have sued here.

---

[2] The voluntary dismissal followed WMI's representation to Plaintiffs' counsel that, "to the best of its knowledge, information and belief … it was not a participant in the conduct set forth in Plaintiffs' Initial or Amended Complaint." Second Rummage Decl., ¶ 2 & Ex. A.

[3] WMB was named as a defendant in *Wertz v. Washington Mutual Bank*, a case that the JPML refused to transfer, as described more fully below. WMB thus participated in the JPML proceedings only to the extent of noting *Wertz* as a potential tag-along case.

DAVIS WRIGHT TREMAINE LLP

In any event, even while WMI was a named defendant in this action, the JPML declined to transfer the case. Apart from the initial seven cases, the JPML considered transferring 17 other cases to the Western District of Washington for consolidation into MDL 1919. Second Rummage Decl., ¶ 5. The JPML transferred 15 of these cases, all of which involved claims, as the JPML noted, "alleg[ing] misrepresentations or omissions concerning [WMI's] financial condition with respect to its subprime home loan portfolio." *In re Washington Mutual*, 536 F. Supp. 2d at 1378. But the JPML declined to transfer the two cases that did ***not*** involve claims relating to WMI's financial condition: *Wertz v. Washington Mutual Bank*, a lawsuit brought against WMB by an individual appraiser in Sacramento, and this case, a putative consumer class action. The JPML thus made clear that the reasons for coordination related to common issues surrounding WMI and its financial condition, not to the appraisal issues alleged in the Plaintiffs' complaint.[4]

Far from disputing the JPML's decision, Plaintiffs on March 3, 2008, filed a Notice and Certificate with this Court, reporting the JPML's designation of this case as "not related" to the MDL cases. *See* Notice and Cert. of Denial of MDL Transfer [Dkt. 8] ¶¶ 4-5. The parties then entered into two stipulations for the filing of an amended complaint, which eventually set May 2, 2008, as the date for Defendants to move to dismiss. *See* Stip. & Order (March 28, 2008) [Dkt. 13]. Finally, more than a month after Defendants moved to dismiss on the agreed schedule (and only after receiving a stipulated fifteen day extension of time within which to file their opposition), Plaintiffs on June 9, 2008, filed a notice of tag-along with the JPML. Ten days later, without having received a response from the JPML, Plaintiffs filed a Motion for Transfer of Tag-Along Action to MDL No. 1919 and supporting brief, which is pending before the JPML. Now, Plaintiffs ask the Court to bring this lawsuit to a halt (that is, to delay ruling on the motions to

---

[4] Since the transfer of the shareholder-related claims to the Western District of Washington, that court has consolidated the cases into four lead cases, appointed lead counsel, generally provided for the filing of consolidated amended complaints, and conducted a comprehensive status and scheduling conference on June 9, 2008. The four tracks are known as *In re Washington Mutual Securities Litigation,* Lead Case No. C08-387 MJP*; In re Washington Mutual ERISA Litigation,* Lead Case No. C07-1874 MJP*; In re Washington Mutual Derivative Litigation (Demand Made)*, Lead Case No. C08-566 MJP*; and In re Washington Mutual Derivative Litigation (Demand Futile),* Lead Case No. C07-1826 MJP. Defendants expect to file motions to dismiss after filing of consolidated amended complaints, but dispositive motions have yet to be filed in any of the four lead cases. Second Rummage Decl., ¶ 6.

DAVIS WRIGHT TREMAINE LLP

1    dismiss) until they can find out whether the JPML will transfer the case to a forum that Plaintiffs

2    now apparently prefer, where they chose not to sue (though they could have) in the first place.

3                              III.    ARGUMENT

4        A.    **An Assessment of the Factors Relevant to the Court's Exercise of Discretion
5              Indicates that the Court Should Not Enter a Stay.**

6           None of the factors relevant to the Court's exercise of its discretion supports a stay.

7    Considerations of judicial economy suggest that the Court should proceed to consider Defendants'

8    motions to dismiss, which raise issues of California law that must be resolved no matter how the

9    JPML rules.  Further, Defendants brought their motions pursuant to a stipulated schedule, and then

10   again stipulated to a deferred hearing date at Plaintiffs' request; a further stay would prejudice

11   Defendants by allowing this meritless case to remain pending.  Finally, given that the parties will

12   have completed briefing on the motions to dismiss shortly after the Court considers this motion –

13   and given that Plaintiffs have finished their work on the motions to dismiss – Plaintiffs will not

14   suffer any hardship by a denial of the stay.

15                     **1.    Judicial Economy**

16          Plaintiffs argue that considerations of judicial economy favor a stay, suggesting that the

17   Court otherwise will need to devote considerable resources to pre-trial motions and discovery

18   issues.  In fact, "[t]he only substantive motions that have been filed are defendants' motions to

19   dismiss."  Motion to Stay at 5.[5]  Considerations of judicial economy do not favor deferring a

20   ruling on these motions until the JPML decides the Motion to Transfer.

21          Plaintiffs begin with a presumption against a stay.  J.P.M.L. Rule 1.5 provides that "[t]he

22   pendency of a motion…before the Panel concerning transfer…does not affect or suspend orders

23   and pretrial proceedings in the district court in which the action is pending and does not in any

24   way limit the pretrial jurisdiction of that court."  Therefore, "[a] putative transferor court need not

25   automatically postpone rulings on pending motions, or in any way generally suspend proceedings,

26   merely on the grounds that an MDL transfer motion has been filed."  *Tortola Restaurants, L.P. v.*

27   ────────────────────
28       [5] Plaintiffs also have filed a Motion for Jurisdictional Discovery, but that motion really forms
     part of their opposition to LSI's motion to dismiss – indeed, they have noted that motion for the
     same date as the Defendants' Motions to Dismiss.

                                              7

DAVIS WRIGHT TREMAINE LLP

*Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997) (citing *Manual for Complex Litigation 3d* § 31.131, p. 252 (3d ed. 1995)).

In the face of that presumption, Plaintiffs rely on so-called considerations of judicial economy.  In weighing judicial efficiency, however, courts focus on the "judicial resources ***that would be saved*** by avoiding duplicative litigation if the cases are in fact transferred," not the savings that would accrue to one court at the expense of another.  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (emphasis added).  Here, a stay of this Court's consideration of the motions to dismiss would not prevent duplicative litigation, as Plaintiffs suggest. Regardless whether the JPML transfers this case, some court will need to consider and rule on Defendants' motions to dismiss.  That being the case, a delay in this Court's consideration of the motions will not result in a net savings to the judicial system; at most, it would result in transferring the burden for deciding motions based largely on California law from a federal court in California to a federal court in Washington.  In these circumstances, a stay does not serve any institutional purpose.  *See, e.g., Falk v. General Motors Corp.*, No. C 07-01731 WHA, 2007 WL 3101649, at *3 (N.D. Cal. Oct. 22, 2007) (denying motion to stay based, *inter alia*, on concerns about duplicative discovery because "[d]efendant would have to turn over the same documents, and plaintiffs would have to depose the same witnesses whether or not these actions are consolidated and transferred").

For this reason, Plaintiffs have it exactly backwards when they imply that a transfer order might moot the Defendants' motions to dismiss.  No matter what happens on the MDL transfer request, ***some*** court will need to decide whether Plaintiffs have stated a claim.  By contrast, if this Court dismisses the action, as Defendants believe it should, the JPML will ***not*** need to resolve the transfer motion.  In other words, only a denial of the stay has the prospect of resulting in a net savings to the federal judicial system – a point the JPML itself has recognized in similar circumstances.  *See, e.g., In re Copper Antitrust Litig.*, 269 F. Supp. 2d 1365 (J.P.M.L. 2003) (dismissing motion to transfer as moot following transferor court's dismissal; noting that JPML deferred decision on the motion to transfer pending resolution of motion seeking dismissal).

DAVIS WRIGHT TREMAINE LLP

Further, the motions to dismiss raise issues of jurisdiction and standing, threshold questions that courts in this district have recognized as better resolved by transferor courts. *See Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004) (denying motion to stay in light of pending motion to remand because "it is in the interest of judicial economy to decide issues of jurisdiction as early in the litigation process as possible"); *Tortola Restaurants*, 987 F. Supp. at 1054 (same). If the Washington court had special expertise that it could bring to bear, that fact might weigh in the balance. But it does not. Instead, "[t]his Court is readily familiar with federal law, Ninth Circuit law, and California law, the laws applicable to … [the] Complaint" and the motions to dismiss. *Conroy*, 325 F. Supp. at 1054. Given that the Defendants will file their reply briefs on the motions to dismiss within a week of the date that Plaintiffs have noted this Motion to Stay for consideration, deferring a ruling makes no sense.

Plaintiffs also suggest that, in light of their pending discovery requests, the Court may waste judicial resources addressing discovery issues if it refuses to stay this case. This is a red herring. WMB received Plaintiffs' discovery requests four days *after* Plaintiffs filed their Motion to Stay, leaving little doubt that they propounded discovery with this motion in mind. Second Rummage Decl., ¶ 4 & Ex. C. Plaintiffs previously agreed at the May 6, 2008 Rule 26(f) conference that the parties would not engage in discovery pending a ruling on the motions to dismiss. Second Rummage Decl., ¶ 3. Indeed, Plaintiffs' draft CMC statement provides:

### VIII.    <u>DISCOVERY</u>

No formal discovery has been taken to date. ***Upon denial of Defendants' motions to dismiss, parties have agreed to a comprehensive discovery schedule attached hereto as Exhibit A.*** Parties have not agreed to modify any of the discovery rules, but reserve their rights to seek such an amendment at a later date if the need arises.

Second Rummage Decl., ¶ 3 & Ex. B, at 5 (emphasis added); *see also id.*, Ex. B, at 13 (setting forth Plaintiffs' proposed schedule). Because Plaintiffs surely will honor their word, the Court will not need to expend time or effort in addressing discovery issues until after disposition of the motions to dismiss – which may moot the issue entirely.

Finally, Plaintiffs' cases address different situations and do not counsel a different result here. In *Rivers*, for example, (a) employees had brought similar discrimination class actions

9

against the same defendant in multiple districts; (b) the JPML had not yet ruled on the initial

motion to transfer; (c) no dispositive motions were pending; and (d) the principal imminent event

was discovery on class certification, a process that would be centralized in the event of a transfer.

*Rivers*, 980 F. Supp. at 1361-62 ("no … substantive preliminary motions have been filed with this

Court and the parties have not indicated that such motions are imminently forthcoming"). Here,

by contrast, Defendants **have** filed motions to dismiss on a stipulated schedule. Those motions

raise legal issues that do not overlap in the slightest with the issues in the shareholder, derivative

and ERISA actions against WMI, which is not even a party here.

Each of Plaintiffs' other primary cases, *Hertz Corp., American Seafood*, and *Portnoy*,

involved a short and definite stay, with the JPML hearing on the pending transfer or consolidation

motion scheduled within a month of the court's opinion granting a stay. *Hertz Corp.*, 250 F. Supp.

2d at 425 (2 weeks); *American Seafood*, 1992 WL 102762 at *1 (3 weeks); *Portnoy*, 1987 WL

10236 at *1 (1 month). Here, the JPML has not yet set a hearing date for Plaintiffs' motion to

transfer. Moreover, the *Hertz Corp.* plaintiff's opposition to a stay arose out of a preliminary

injunction motion that it filed a month *after* defendant filed its motion for consolidation. 250 F.

Supp. 2d at 423-24, 427. By contrast, WMB, EA and LSI filed their motions to dismiss nearly

seven weeks *before* Plaintiffs filed their motion to stay, on the schedule agreed by the parties.

Finally, *American Seafood* refused to stay discovery pertaining to class certification and JPML

issues, which it did not view as duplicative. 1992 WL 102762 at *3. Here, Defendants' motions

to dismiss must be decided before this case can proceed and therefore do not raise concerns of

duplicative litigation.[6]

---

[6] Plaintiffs' other cases, cited for the proposition that transferee courts may vacate orders
entered by transferor courts, have no bearing here. *In re Exterior Siding* addressed class
certification motions, which it singled out as specifically appropriate for vacation by transferee
courts. 538 F. Supp. at 47-48. *In re Upjohn* dealt with a protective order that limited
dissemination of information in one consolidated case, which would have effectively nullified the
benefits of multidistrict litigation for that case. Because a court order resolving Defendants'
pending motions to dismiss will either end this case (and moot Plaintiffs' transfer motion) or
establish the sufficiency of (some of ) Plaintiffs' causes of action, the motions to dismiss do not
implicate the same concerns.

DAVIS WRIGHT TREMAINE LLP

### 2.    Prejudice to Defendants

Staying consideration of the motions to dismiss would prejudice the Defendants.  As WMB explained in its motion, Plaintiffs' lawsuit is a "cynical, opportunistic attempt to profit from the subprime crisis by borrowers who cannot plausibly claim any harm arising out of their loan transactions."  WMB's Mem. [Dkt. 47.] at 1.  As such, WMB believes the Court will dismiss all claims against it (and the other Defendants), thus sparing them the substantial unnecessary expense associated with defending a consumer class action.  The mere pendency of a meritless lawsuit amounts to prejudice that no defendant should be required to endure without good reason – especially when the parties have agreed upon a schedule for threshold motions.[7]

### 3.    No Hardship to Plaintiffs

In general, the proponent of a stay must "make out a clear case of hardship or inequity in being required to go forward."  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  Here, however, the Court's refusal to grant the requested stay would not impose any hardship or inequity on Plaintiffs.  As described above, this case does not implicate Plaintiffs' generalized concerns about wasteful motion practice, discovery and scheduling.  Plaintiffs have agreed on a briefing schedule, have completed their briefing on the motions to dismiss, have agreed not to conduct discovery until resolution of the motions to dismiss, and have proposed a detailed (and generally acceptable) agreed case schedule.  Under these circumstances, Plaintiffs cannot identify any actual prejudice arising from having their motion decided as soon as practicable.

Indeed, if the Court grants the motions, Plaintiffs will be well served by learning of the dismissal before expending time and effort prosecuting the case; if the Court denies the motions, Plaintiffs will be in a position to move forward with the litigation more expeditiously than if a stay were granted.  Plaintiffs cannot point to any adverse impact they might suffer from a prompt resolution of a motion on the pleadings.

---

[7] Most of the case law on the prejudice to non-moving parties revolves around stays sought by defendants seeking to halt the prosecution of claims.  In those cases, the courts recognize the "plaintiffs' interest in proceeding expeditiously with the civil action."  *See, e.g., Koulouris v. Builders Fence Co.*, 146 F.R.D. 193, 194 (W.D. Wash. 1991).  With the roles reversed here, the Court should give as much weight to the Defendants' interest in expeditious disposition of their motions to dismiss as courts typically give to plaintiffs.

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY PROCEEDINGS
Case No. 5:08-cv-00868 (RMW)

DWT 11398546v6 0013149-000099

**B.    Staying This Case Pending Resolution of Plaintiffs' Motion to Transfer Is Inappropriate Where the JPML Previously Refused to Transfer.**

Plaintiffs do not come to the Court writing on a blank slate. The JPML determined months ago that this putative consumer class action was not related to the consolidated cases involving WMI's financial condition, and it refused to transfer. Instead, the JPML consolidated in Washington *only* the actions brought against WMI by shareholders and ERISA plan participants with an interest in WMI stock. This case did not (and does not) fit that paradigm. WMB will not here argue the merits of Plaintiffs' effort to consolidate this putative consumer class action with the shareholder actions now pending in Seattle against its parent. The evident futility of Plaintiffs' argument, however, bears mentioning.

Although the JPML Rules do not expressly prohibit successive attempts to seek transfer pursuant to 28 U.S.C. § 1407, the JPML has indicated its general unwillingness to revisit an earlier denial of a Section 1407 transfer unless the party seeking transfer provides a persuasive basis for doing so. In *In re Zimmer, Inc., Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384 (J.P.M.L. 2005), for example, the JPML denied a second motion to transfer:

> This is the second time that the five Connecticut actions have been the subject of a Section 1407 transfer motion … The moving Connecticut action plaintiffs now before the Panel in MDL-1669 have offered no persuasive reason why we should revisit our [earlier] decision…It is therefore ordered that the motion, pursuant to 28 U.S.C. § 1407, for centralization of the actions listed on Schedule A is denied.

366 F. Supp. 2d at 1385; *cf. In re Master Key Antitrust Litig.*, 320 F. Supp. 1404, 1405 (J.P.M.L. 1971) (granting transfer where nine related actions pending in four districts and all parties support transfer; initial denial involved three actions in two districts where all parties opposed transfer).

Plaintiffs do not offer any reason why the JPML would revisit its earlier refusal to transfer this case to MDL 1919. Indeed, Plaintiffs' transfer motion essentially repeats the unsuccessful arguments for transfer that WMI made to the JPML in its own transfer motion and tag-along notice, at a time when WMI was a party to this case (which, as explained above, it no longer is) and was unsure what additional consumer cases might be brought. Plaintiffs attempt to distinguish *their* Motion for Transfer from the earlier requests by suggesting that WMI's filings "did not explain why" this case involved similar claims and issues of fact and law. In fact, however,

DAVIS WRIGHT TREMAINE LLP

12

WMI's transfer motion discussed the same alleged common facts on which Plaintiffs now focus, WMI Transfer Motion, ¶¶ 5-6, as did WMI's tag-along notice, which also attached a copy of the *Spears* complaint. *Compare* Plaintiffs' Transfer Motion, ¶¶ 2, 3, 7.[8] Plaintiffs' Transfer Motion thus asks the JPML to reconsider its earlier decision, but does not provide any reason why the JPML should change its mind or to suggest that it will.

Plaintiffs also seek to justify their Motion to Transfer by characterizing the initial JPML determination as a mere "administrative determination" by the JPML Clerk, Motion, at 4, implying that the JPML did not consider the merits of transfer. Plaintiffs do not offer any reason to suggest that the Court can so casually dismiss the initial JPML determination. Indeed, in the Notice and Certification that Plaintiffs filed with this Court, Plaintiffs' counsel explained: "I spoke with JPML Clerk, Dana Stewart, who advised me that Plaintiffs' instant action **was determined to be 'not related'** to the MDL established in the Western District of Washington." Notice & Certification [Dkt. 8] ¶ 3 (emphasis added). The JPML therefore made a substantive (and sensible) finding that the issues in this action did not sufficiently resemble the issues in the shareholder cases to merit consolidation. *See* WMI Transfer Brief, at 6-8 (describing basic allegations in the seven cases initially consolidated in MDL 1919). The JPML consolidated the shareholder cases because they "share factual questions arising from alleged misrepresentations or omissions concerning [WMI]'s financial condition with respect to its subprime home loan portfolio." *In re Washington Mutual*, 536 F. Supp. 2d at 1378. But this case (like *Wertz*, the other case that the JPML declined to consolidate) does not involve **any** "alleged misrepresentations or omissions concerning [WMI]'s financial condition" and does not involve WMI's securities.

WMI moved to transfer this case in the early stages of this litigation, when Plaintiffs still insisted on naming it as a party. But WMI no longer has a role in this action. That being the case,

---

[8] Plaintiffs also cite to "common questions of fact regarding WaMu's securitization practices of its mortgages," which supposedly provided "substantial profits over what it could make if the homes were properly appraised." Motion to Transfer, ¶ 8. But WMB's motives do not relate to any element of any of Plaintiffs' causes of action. More important, Plaintiffs have not explained how WMB's alleged motive for engaging in an alleged conspiracy with EA and LSI figures in the consolidated cases in Washington. Notably, the JPML's decision consolidating the initial seven cases did not mention this issue as a basis for transfer and consolidation. *In re Washington Mutual*, 536 F. Supp. 2d 1377.

*DAVIS WRIGHT TREMAINE LLP*

1   it would make no sense to transfer this consumer action against a WMI subsidiary, WMB, so that

2   it can be coordinated with shareholder actions against WMI.  The Court should not stay

3   consideration of the motions to dismiss until the JPML confirms that it meant what it said.

4                                    **IV.    CONCLUSION**

5           WMB therefore requests that the Court deny Plaintiffs' Motion for Stay.

6           Respectfully submitted this 3rd day of July, 2008.

7

8                                           DAVIS WRIGHT TREMAINE LLP

9                                           By /s/ Stephen M. Rummage
                                               Stephen M. Rummage, *pro hac vice*
10                                              Jonathan M. Lloyd, *pro hac vice*
                                               Martin Fineman (Cal. Bar No. 104413)
11                                              Sam N. Dawood (Cal. Bar No. 178862)

12                                          Attorneys for Defendant Washington Mutual Bank

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY PROCEEDINGS
Case No. 5:08-cv-00868 (RMW)                                    DWT 11398546v6 0013149-000099

CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Michael David Braun: | service@braunlawgroup.com |
| Christopher J. Clark | cjclark@dl.com |
| Laura Jean Fowler: | lfowler@mhalaw.com |
| Richard F. Hans | rhans@tpw.com |
| Margaret Anne Keane: | mkeane@dl.com |
| Joseph N. Kravec, Jr.: | jnk@ssem.com |
| Kris Hue Chau Man: | kman@dl.com |
| James Mark Moore | mark@spiromoss.com |
| Angela M. Papalaskaris | apapalas@dl.com |
| Robert J. Pfister: | rpfister@stblaw.com |
| Jeffrey D. Rotenberg | jrotenberg@tpw.com |
| Janet Lindner Spielberg: | jlspielberg@jlslp.com |
| Robert Ira Spiro: | ira@spiromoss.com |
| Kevin C. Wallace | kwallace@dl.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Kerry Ford Cunningham
Patrick J. Smith
THATCHER PROFITT & WOOD LLP
Two World Financial Center
New York, NY  10281

DATED this 3rd day of July, 2008.

Davis Wright Tremaine LLP
Attorneys for Def. Washington Mutual Bank

By /s/ Stephen M. Rummage
    Stephen M. Rummage, *pro hac vice*
    WSBA #11168
    1201 Third Avenue, Suite 2200
    Seattle, Washington  98101-3045
    Telephone: (206) 757-8136
    Fax: (206) 757-7700
    E-mail:  steverummage@dwt.com

DAVIS WRIGHT TREMAINE LLP

15