Joseph N. Kravec, Jr. *(Admitted Pro Hac Vice)*
SPECTER SPECTER EVANS
   & MANOGUE, P.C.
The 26th Floor Koppers Building
Pittsburgh, Pennsylvania 15219
Tel:    (412) 642-2300
Fax:    (412) 642-2309
E-mail: jnk@ssem.com

Michael D. Braun (167416)
BRAUN LAW GROUP, P.C.
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Tel:    (310) 442-7755
Fax:    (310) 442-7756
E-mail: service@braunlawgroup.com

Ira Spiro (67641)
SPIRO MOSS BARNESS, LLP
11377 West Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Tel:    (310) 235-2468
Fax:    (310) 235-2456
E-mail: ira@spiromoss.com

Janet Lindner Spielberg (221926)
LAW OFFICES OF JANET
LINDNER SPIELBERG
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Tel:    (310) 392-8801
Fax:    (310) 278-5938
E-mail: jlspielberg@jlslp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SIDNEY SCHOLL and FELTON A. SPEARS, JR., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK); FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC.,<br><br>          Defendants. | **CASE NO.: 5:08-CV-00868 (RMW)**<br><br>**CLASS ACTION**<br><br>**DECLARATION OF MICHAEL D. BRAUN IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STAY PROCEEDINGS**<br><br>**DATE:**    **August 15, 2008**<br>**TIME:**    **9:00 a.m.**<br>**CTRM:**   **6, 4th Floor** |

1      I, Michael D. Braun declare as follows:

2      1.    I am a principal with the Braun Law Group, P.C., co-counsel for Plaintiffs in this

3 action. I am a member of the California Bar and am admitted to practice in this District.

4      2.    This Declaration is submitted in support of Plaintiffs' Reply Memorandum of Points

5 and Authorities in Support of Plaintiffs' Motion to Stay Proceedings.

6      3.    Attached as exhibits are true and correct copies of the following:

7      Exhibit A:    Notice of Tag-Along Action (February 15, 2008) MDL Docket No. 1919

8

9      Exhibit B:    Joint Preliminary Report (May 27, 2008) *In re Washington Mutual, Inc.*, 2:08-md-1919 MJP, USDC Western District of Washington at Seattle

10

11      Exhibit C:    Motion of Washington Mutual for Transfer of Actions to the Western District of Washington Pursuant to 28 U.S.C. §1407 for Coordinated or Consolidated Pretrial Proceedings

12

13      Exhibit D:    Brief in Support of Washington Mutual's Motion for Transfer of Actions Pursuant to 28 U.S.C. §1407

14      Exhibit E:    *Wertz v. Washington Mutual Bank, et. al*, 34-2008-00000717-CU-BC-GDS, Superior Court of the State of California for the County of Sacramento

15

16      I declare under penalty of perjury under the laws of the United states that the foregoing is

17 true and correct.

18      Executed on this 11th day of July, 2008.

19

20                    /S/ Michael D. Braun
                         MICHAEL D. BRAUN

21

22

23

24

25

26

27

28

# EXHIBIT A

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE WASHINGTON MUTUAL, INC.<br>SECURITIES, DERIVATIVE AND<br>"ERISA" LITIGATION | )<br>)<br>)<br>)<br>) | MDL Docket No. 1919 |

## NOTICE OF TAG-ALONG ACTION

1.      Pursuant to 28 U.S.C. § 1407 and Rules 7.2, 7.4 and 7.5 of the Rules of

Procedure of the Judicial Panel on Multidistrict Litigation (the "MDL Rules"), Defendant

Washington Mutual, Inc. ("WaMu") hereby notifies the Judicial Panel on Multidistrict Litigation

(the "Panel") of the pendency of the following tag-along action to the above-captioned matter:

**Plaintiffs:**    Felton A. Spears, Jr. and Sidney Scholl, on behalf of themselves
and all others similarly situated.

**Defendants:**    Washington Mutual, Inc.; First American eAppraiseIT; and
Lender's Services, Inc.

**District:**    Northern District of California

**Case No.:**    08-cv-00868-HRL

**Judge:**    Judge Howard R. Lloyd, U.S. Magistrate Judge

2.      On November 28, 2007, WaMu moved this Panel, pursuant to 28 U.S.C.

§ 1407 and Rule 7.2 of the MDL Rules, for an Order transferring seven similar actions, listed in

the Schedule of Actions, to the Honorable Marsha J. Pechman, United States District Judge for

the Western District of Washington, for coordinated or consolidated pretrial proceedings (the "Motion"). Oral argument with respect to WaMu's Motion was held before the Panel in Phoenix, Arizona during the January 30, 2008 Hearing Session.

    3.  By Notice of Tag-Along Action dated December 5, 2007, WaMu promptly notified the Panel of the following tag-along action: *Alexander v. Washington Mutual, Inc., et al.*, No. C07-1906 RSM (W.D. Wash., filed November 29, 2007).

    4.  By Notice of Tag-Along Action dated December 12, 2007, WaMu promptly notified the Panel of the following tag-along action: *Mitchell v. Washington Mutual, Inc., et al.*, No. C07-1938 MJP (W.D. Wash., filed December 5, 2007).

    5.  By Notice of Tag-Along Action dated December 21, 2007, WaMu promptly notified the Panel of the following tag-along action: *Ware v. Washington Mutual, Inc., et al.*, No. C07-1997 RAJ (W.D. Wash., filed December 13, 2007).

    6.  By Notice of Tag-Along Action dated January 3, 2008, WaMu promptly notified the Panel of the following tag-along action: *Rosenblatt v. Washington Mutual, Inc., et al.*, No. C07-2025 RSM (W.D. Wash., filed December 18, 2007).

    7.  By Notice of Tag-Along Action dated January 3, 2008, WaMu promptly notified the Panel of the following tag-along action: *Garber v. Washington Mutual, Inc., et al.*, No. 07 Civ. 11422 (S.D.N.Y., filed December 20, 2007).

    8.  By Notice of Tag-Along Action dated January 3, 2008, WaMu promptly notified the Panel of the following tag-along action: *McDonald v. Washington Mutual, Inc., et al.*, No. C07-2055 MJP (W.D. Wash., filed December 21, 2007).

9.      By Notice of Tag-Along Action dated January 3, 2008, WaMu promptly notified the Panel of the following tag-along action: *Marra v. Washington Mutual, Inc., et al.*, No. C07-2076 MJP (W.D. Wash., filed December 27, 2007).

10.     By Notice of Tag-Along Action dated January 9, 2008, WaMu promptly notified the Panel of the following tag-along action: *Slater v. Washington Mutual, Inc., et al.*, No. C08-0005 RAJ (W.D. Wash., filed January 4, 2008).

11.     By Notice of Tag-Along Action dated January 25, 2008, WaMu promptly notified the Panel of the following tag-along action: *Procida v. Killinger, et al.*, No. 08 CV 00565 (S.D.N.Y., filed January 23, 2008).

12.     By Notice of Tag-Along Action dated January 25, 2008, WaMu promptly notified the Panel of the following tag-along action: *Ryan v. Killinger, et al.*, No. C08-0095 TSZ (W.D. Wash., filed January 18, 2008).

13.     By Notice of Tag-Along Action dated February 8, 2008, WaMu promptly notified the Panel of the following tag-along action: *Wertz v. Washington Mutual Bank, et al.*, No. 2:08-cv-00317-GEB-KJM (E.D. Cal., filed February 8, 2008).[1]

14.     Plaintiffs Felton A. Spears, Jr. and Sidney Scholl filed a complaint, suing on behalf of themselves and all others similarly situated, on or about February 8, 2008 in the United States District Court for the Northern District of California (the "Spears Action"). A courtesy copy of the complaint in this action is included with this Notice of Tag-Along Action.

---

[1]     Although the *Wertz* action was originally filed in the Superior Court of California, Sacramento County, on January 9, 2008, Defendants timely removed the *Wertz* action to the United States District Court for the Eastern District of California on February 8, 2008.

15.    Like the other eighteen actions pending in federal district court, the Spears Action asserts claims arising from an alleged conspiracy to inflate appraisal valuations on loans WaMu originated.

16.    The complaint in the Spears Action relies on a complaint filed on November 1, 2007 by the New York Attorney General against First American Corporation and First American eAppraiseIT, which alleges that those two companies conspired to inflate appraisal values of property for which WaMu originated mortgage loans.  Sixteen of the eighteen other actions subject to WaMu's motion also explicitly premise their complaints on the allegations in the New York Attorney General's complaint,[2] and all of the complaints in the eighteen actions were filed after the filing of the New York Attorney General's complaint and pertain to the quality of WaMu's mortgage portfolio.

17.    The allegations in the Spears Action, along with the eighteen other actions currently the subject of WaMu's Motion pending before the Panel, raise similar claims and will involve similar complex and disputed issues of law and fact.

18.    For the reasons more fully discussed in WaMu's pending Motion, its supporting Brief, and its Reply Brief, the transfer and coordination or consolidation of these actions, including the Spears Action, to the Western District of Washington would conserve valuable judicial resources, prevent the risk of potentially conflicting or inconsistent judicial decisions, and serve the convenience of the parties, the witnesses, the judiciary and counsel in accordance with 28 U.S.C. § 1407.  Absent pretrial coordination or consolidation, there would be duplicative and unnecessary pretrial proceedings and discovery that would burden the parties, the witnesses, the judiciary and counsel.

---

[2]    The complaints in the *Mitchell* and *Rosenblatt* actions focus instead on WaMu's allegedly risky mortgage portfolio, and WaMu's allegedly "blind focus" on building loan volume.

19.  Accordingly, WaMu respectfully requests that the Panel transfer the Spears Action, along with the eighteen other actions currently the subject of WaMu's Motion and any other tag-along actions that may be filed, to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: February 15, 2008

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: _____
          Barry R. Ostrager
          Mary Kay Vyskocil
          David J. Woll
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
(212) 455-2502 (facsimile)
bostrager@stblaw.com

**Counsel for Defendants Washington Mutual,
Inc., Washington Mutual Bank, and Susan
Richter; and for the limited purpose of
participating in proceedings before the Panel,
Defendants Kerry K. Killinger; David C.
Schneider; Thomas W. Casey; Stephen J.
Rotella; John F. Woods; James B. Corcoran;
and Daryl D. David.**

# EXHIBIT B

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE & ERISA LITIGATION | No. 2:08-md-1919 MJP<br><br>**JOINT PRELIMINARY REPORT** |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION<br><br>This Document Relates to: ALL CASES | Lead Case No. C08-0387 MJP |
| IN RE WASHINGTON MUTUAL, INC. DERIVATIVE LITIGATION<br><br>This Document Relates to:<br>ALL DEMAND FUTILE ACTIONS | Lead Case No. C07-1826 MJP |
| IN RE WASHINGTON MUTUAL, INC. DERIVATIVE LITIGATION<br><br>This Document Relates to:<br>ALL DEMAND MADE ACTIONS | Lead Case No. C08-0566 MJP |
| IN RE WASHINGTON MUTUAL, INC. ERISA LITIGATION<br><br>This Document Relates to: ALL CASES | Lead Case No. C07-1874 MJP |

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP)

1    Washington Mutual, Inc. ("WaMu" or the "Company"); Ontario Teachers' Pension

2   Plan Board ("Lead Securities Plaintiff"); Faruqi & Faruqi, LLP and Krislov & Associates, Ltd.

3   (collectively, "Lead Demand Futile Derivative Counsel"); the Law Offices Bernard M. Gross, P.C.

4   ("Lead Demand Made Derivative Counsel"); Hagens Berman Sobol Shapiro LLP and Keller

5   Rohrback LLP (collectively, "Lead ERISA Counsel"); First American Corporation; eAppraiseIT;

6   and the Individual Defendants[1] jointly submit this Preliminary Report pursuant to the Court's

7   April 18, 2008 Order Scheduling Initial Conference.

8       **1.    Nature and Complexity of the Case**

9       <u>Securities Litigation</u>:  The consolidated securities class action (the "Securities

10  Case") is brought on behalf of WaMu investors against the Company, certain of its current and

11  former officers and directors, and (subject to further analysis and investigation by Lead Securities

12  Plaintiff) may also be brought against WaMu's auditor Deloitte & Touche LLP, and the

13  investment banks that underwrote WaMu's public offerings during the relevant time period,

14  among others.  Lead Securities Plaintiff anticipates that its consolidated complaint (the

15  "Consolidated Securities Complaint"), which will be filed no later than August 5, 2008, pursuant

16  to the Court's May 7, 2008 Order, will assert at least two distinct sets of claims:

17      First, Lead Securities Plaintiff anticipates that the Consolidated Securities

18  Complaint will assert fraud-based claims under the Securities Exchange Act of 1934 (the

19  "Exchange Act") against those defendants who are alleged to have made materially false and

20  misleading statements regarding, among other things, WaMu's financial results, accounting

21  practices and home-mortgage lending business, including the Company's underwriting and

22  appraisal practices for these mortgages, during the class period.  Lead Securities Plaintiff also

23  anticipates that the Consolidated Securities Complaint will assert "control person" claims under

24  Section 20(a) of the Exchange Act against various principals of WaMu, including certain of the

25

26  [1]    For purposes of this response, Thomas W. Casey, James B. Corcoran, Daryl D. David, Anne V.
Farrell, Stephen E. Frank, Kerry K. Killinger, Thomas C. Leppert, Charles M. Lillis, Phillip D. Matthews,

27  Regina T. Montoya, Michael K. Murphy, Deanna W. Oppenheimer, Margaret Osmer-McQuade, Mary E.
Pugh, William G. Reed, Jr., Stephen Rotella, David C. Schneider, Orin C. Smith, James H. Stever, Willis

28  B. Wood, Jr., and John F. Woods are collectively referred to as the "Individual Defendants."

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 1

1  *Individual Defendants*, who were allegedly in a position to control those defendants who made the

2  allegedly false and misleading statements to the market. Second, Lead Securities Plaintiff

3  anticipates that the Consolidated Securities Complaint will assert strict liability and negligence-

4  based claims under the Securities Act of 1933 (the "Securities Act") against those defendants who

5  are alleged to be statutorily responsible under Sections 11 and 12(a)(2) of the Securities Act for

6  the alleged materially untrue statements and omissions that were allegedly made in connection

7  with WaMu's public offerings during the relevant time period.

8      Derivative Litigation: The shareholder derivative claims against the Company

9  (collectively, the "Derivative Case") have been consolidated into two separate tracks, consisting of

10  those plaintiffs who contend that making a demand on the Company's board of directors (the

11  "Board") prior to filing suit would have been futile (the "Demand Futile Plaintiffs") and those who

12  made a pre-suit demand (the "Demand Made Plaintiffs"). Both sets of derivative plaintiffs purport

13  to bring claims on behalf of WaMu against certain of its officers and directors for breach of

14  fiduciary duty (and, in certain instances, against defendant First American/eAppraiseIT for

15  allegedly aiding and abetting breaches of fiduciary duty) relating to alleged inflation of the

16  Company's mortgage underwriting and loan origination volume, reserving practices, appraisal

17  practices, and SEC filings.

18      WaMu and the Demand Futile Plaintiffs submit that the necessity of a pre-suit

19  demand on the Board is a threshold question that must be resolved prior to the merits of the

20  Derivative Case. Demand Made Plaintiffs disagree with that position, asserting that they tendered

21  proper shareholder demands, the Board rejected those demands, and that the Demand Made

22  Plaintiffs should proceed without any stay or abatement. WaMu and the Individual Defendants

23  deny that demand was "refused," and submit that the Court should first determine whether demand

24  was required.

25      ERISA Litigation: The consolidated ERISA class action (the "ERISA Case")

26  alleges breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974

27  ("ERISA") against the Company and certain defendants alleged to be fiduciaries of the WaMu

28  Savings Plan (the "Plan"), an ERISA-regulated defined contribution plan. The ERISA Case arises

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 2

1   out of the alleged failure of the ERISA defendants to manage the Plan's investment in WaMu

2   stock prudently and loyally during the proposed class period. Specifically, plaintiffs allege that

3   the ERISA defendants continued to offer WaMu stock as a Plan investment option, and invest

4   Plan assets in WaMu stock when it no longer was prudent to do so because of serious

5   mismanagement, and dire financial circumstances affecting the Company. The ERISA Case is

6   brought as a class action on behalf of the Plan under, *inter alia*, ERISA § 502(a)(2), for losses to

7   the Plan, and the Plan's participants and beneficiaries.

8         <u>Defendants' Position</u>: WaMu and the Individual Defendants named in the

9   Securities, Derivative and ERISA Cases deny the material allegations in the complaints previously

10  on file with the Court, and they expect to move to dismiss any consolidated complaints making the

11  same or similar allegations. Defendants submit that efficiency will be enhanced by sequencing

12  motion practice, such that the Court addresses the sufficiency of the Consolidated Securities

13  Complaint before turning to the pleadings in the other cases. Defendants submit that the Court's

14  ruling on the legal sufficiency of the factual allegations in the Consolidated Securities Complaint

15  will provide guidance to the parties and will allow for streamlined motion practice in the

16  remaining cases.

17        **2.     ADR Method**

18        The parties' preferred ADR method is mediation (at the appropriate time, as

19  discussed below).

20        **3.     ADR Timing**

21        The parties for each of these respective actions believe that the appropriate time for

22  mediation likely will be at some point after the consolidated complaints have been filed, and

23  possibly after the parties have had sufficient discovery to evaluate fully the strength and

24  weaknesses of their respective cases.

25        **4.     Deadline for Joining Additional Parties**

26        Lead Securities Plaintiff, the Demand Futile Plaintiffs and the Demand Made

27  Plaintiffs propose that the deadline for joining additional parties in their respective cases be sixty

28  (60) days prior to the close of discovery. Lead ERISA Counsel propose that the deadline for

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 3

1  joining additional parties in the ERISA Case be the close of discovery. WaMu and the Individual

2  Defendants propose that the deadline for joining additional parties in all cases be coincident with

3  the deadlines for filing consolidated complaints.

4        **5.**     **Deadline for Amending Pleadings**

5           Pursuant to the Court's May 7, 2008 Order in the Securities Case, Lead Securities

6  Plaintiff will file its Consolidated Securities Complaint on or before August 5, 2008. Lead

7  Securities Plaintiff proposes that the deadline for the amendment of the pleadings in the Securities

8  Case should be no later than thirty (30) days after the close of discovery.

9           Demand Futile Plaintiffs propose to undertake discovery on demand futility prior to

10 filing a consolidated complaint. Defendants contend that such discovery is not appropriate, but

11 they and Demand Futile Plaintiffs agree that the issue of Demand Futile Plaintiffs' entitlement to

12 discovery regarding demand futility should be resolved prior to the filing of their consolidated

13 complaint. Defendants and Demand Futile Plaintiffs agree to meet and confer, and Demand Futile

14 Plaintiffs propose to file a motion regarding this issue—if at all—by August 1, 2008, and will file

15 a consolidated complaint by the later of: (a) thirty (30) days after the close of any Court-ordered

16 discovery regarding demand futility; (b) thirty (30) days after the Court's denial of discovery

17 regarding demand futility; or (c) September 5, 2008.

18          Demand Made Plaintiffs propose to file a consolidated complaint on July 18, 2008.

19 Demand Made Plaintiffs take the position that neither the Private Securities Litigation Reform

20 Act, 15 U.S.C. § 78u-4(b)(3)(B) ("PSLRA"), nor FRCP 9(b) applies to the Derivative Case, and

21 that the breach of fiduciary duty claims are separate and distinct from the claims asserted in the

22 Securities and ERISA Cases. Accordingly, Demand Made Plaintiffs believe that their action

23 should proceed without regard to the status of the motions to dismiss any other case.

24          Lead ERISA Counsel propose that no later than July 5, 2008, defendants shall

25 produce core ERISA documents and information that will enable plaintiffs to identify accurately

26 the specific persons who serve as Plan fiduciaries during the class period, or otherwise inform

27

28

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 4

1   plaintiffs of the identity of such persons[2]; and that plaintiffs will file a consolidated complaint on

2   August 5, 2008, or within 30 days of the receipt of the documents identified above, whichever is

3   later. Lead ERISA Counsel further propose that the deadline for amending the pleadings in the

4   ERISA case should be the close of discovery. Lead ERISA Counsel further propose that the

5   ERISA Case should proceed without regard to the status of motions to dismiss in the Securities

6   and Derivative Cases as the ERISA Case asserts fiduciary breach claims under ERISA that Lead

7   ERISA Counsel submit are not governed by the PSLRA or FRCP 9(b).

8         Defendants submit that motion practice should be sequenced such that the Court

9   addresses the sufficiency of the Consolidated Securities Complaint before turning to the pleadings

10   in the other cases, and that the deadline by which consolidated pleadings should be filed in the

11   Derivative and ERISA Cases should be set accordingly. Regardless of the schedule, defendants

12   submit that the consolidated pleading filed in the Derivative Case should be filed by the Demand

13   Futile Plaintiffs (rather than the Demand Made Plaintiffs), and that defendants' motion to dismiss

14   for failure to make a pre-suit demand on the Board be ruled upon first. Once the Court has ruled

15   on the question of whether a pre-suit demand was required, one set of plaintiffs can prosecute any

16   claims that remain.

17       **6.**     **Timeline for Class Certification**

18         Lead Securities Plaintiff proposes that its motion for class certification should be

19   due after the close of discovery, consistent with precedent concluding that evidence developed

20   through fact discovery can be important to class certification issues.[3] Class certification is not

---

21   [2]     These documents are as follows: (1) documents that identify the persons who from January 1, 2006

22   through the present serve or served on (a) the Human Resources Committee of the Board of Directors of
  WaMu, (b) the Plan Administrative Committee for the WaMu Savings Plan, and (c) the Plan Investment

23   Committee for the WaMu Savings Plan (collectively, "the Committees"); (2) and minutes and/or
  resolutions of the Committees and/or subcommittees thereof that pertain to the WaMu Savings Plan and

24   show the appointment or removal of Plan fiduciaries or otherwise demonstrate the fiduciary function of any
  of the Committees.

25   [3]     *See* FRCP 23 (2003 amendments), Advisory Committee's note ("The 'as soon as practicable'

26   exaction [of the old Rule 23] neither reflects prevailing practice nor captures the many valid reasons that
  may justify deferring the initial certification decision . . . . Time may be needed to gather information

27   necessary to make the certification decision"); *see also, e.g., Hurley v. U.S. Healthworks Medical Group of*
  *Wash.,* 2006 WL 1788994, at *4-5 (E.D. Wash. Jun. 27, 2006) (finding plaintiffs' motion for class

28   certification, which was filed after the close of discovery, timely under Rule 23).

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 5

1   applicable in the Derivative Case. Lead ERISA Counsel propose that they will file their motion

2   for class certification by January 9, 2009, or ninety (90) days after the Court rules on ERISA

3   motions to dismiss, if any, whichever is later. Defendants propose to meet and confer with respect

4   to the process for discovery on and briefing of class certification issues upon the Court's

5   resolution of defendants' motions to dismiss.

6       **7.    Discovery Plan**

7           A.    Dates for FRCP Conference/Disclosures:  Pursuant to the PSLRA,

8   discovery in the Securities Case will "be stayed during the pendency of any motion to dismiss,

9   unless the court finds upon the motion of any party that particularized discovery is necessary to

10  preserve evidence or to prevent undue prejudice to that party." Lead Securities Plaintiff proposes

11  that, absent a ruling by the Court, discovery in the Securities Case commence immediately after

12  the Court has ruled on any motions to dismiss the Consolidated Securities Complaint. Lead

13  Securities Plaintiff further proposes that, consistent with the Court's May 7, 2008 Order, the initial

14  FRCP 26(f) conference and the initial FRCP 26(a) disclosures in the Securities Case should occur

15  within thirty (30) days after the Court's decision on any motions to dismiss the Consolidated

16  Securities Complaint.

17          Demand Futile Plaintiffs propose to move this Court by August 1, 2008 regarding

18  their entitlement to discovery on the narrow issue of demand futility and otherwise propose that

19  FRCP 26(a) initial disclosures should occur within thirty (30) days after the Court's resolution of

20  the motion to dismiss the Derivative Case. Demand Made Plaintiffs propose that the FRCP 26(f)

21  conference and FRCP 26(a) initial disclosures should occur within thirty (30) days after the filing

22  of their consolidated complaint. Demand Made Plaintiffs further propose that they will serve

23  document requests upon defendants with the filing of their consolidated complaint, and that

24  defendants shall respond in accordance with the Federal Rules and shall place documents in a

25  depository to which all cases will have access at the appropriate time. Demand Made Plaintiffs

26  submit that they will not commence depositions of witnesses until resolution of defendants'

27  motion to dismiss.

28

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 6

1    Lead Demand Made Derivative Counsel propose that the FRCP 26(f) initial
2  conference and FRCP 26(a) initial disclosures should occur within thirty (30) days after the filing
3  of their consolidated complaint. They will serve document requests upon defendants with the
4  filing of their consolidated complaint and defendants shall respond in accordance with the Federal
5  Rules. Documents to be produced shall be placed in a depository to which all cases will have
6  access at the appropriate time. If defendants move to dismiss the Demand Made Derivative
7  Claims, Lead Demand Made Derivative Counsel will not commence depositions of witnesses until
8  resolution of the motion.

9    Lead ERISA Counsel state that the PSLRA does not apply to the ERISA action,
10  which asserts ERISA claims that are separate and distinct from the claims asserted in the securities
11  and derivative actions. Accordingly, Lead ERISA Counsel propose to proceed with discovery
12  upon resolution of ERISA motions to dismiss, if any, in the phased manner discussed below. Lead
13  ERISA Counsel propose that the initial FRCP 26(f) conference and FRCP 26(a) disclosures should
14  occur within thirty (30) days after the Court's resolution of ERISA motions to dismiss, if any.

15    ·   WaMu and the Individual Defendants believe that the most efficient, simplified and
16  logical course is for the Court to assess first the legal sufficiency of the consolidated complaints in
17  each of the cases in turn, with discovery commencing uniformly on the date the last motion to
18  dismiss has been decided. WaMu and the Individual Defendants reserve the right to oppose
19  initiation of discovery in the ERISA and Derivative Cases before a ruling on the motions to
20  dismiss the Securities Case, and to take discovery on all claims and defenses at issue.

21    B.    Discovery Topics/Phasing: Lead Securities Plaintiff believes that discovery
22  will be needed on all subjects relevant to the allegations in its anticipated Consolidated Securities
23  Complaint, including, but not limited to the following topics: the underwriting of WaMu's loans;
24  the securitization of WaMu's loans; the appraisal of the properties underlying WaMu's loans; the
25  various types of loans originated by WaMu and the procedures related to the origination of those
26  loans; the accounting for WaMu's home-mortgage loans, including how WaMu established its
27  reserves, valued the loans reported on its financial statements, and reported its assets and liabilities
28  associated with those loans; WaMu's internal controls over financial reporting; WaMu's financial

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 7

1 reporting; each defendant's involvement in the aforementioned activities, if any; class certification

2 issues; and damages.

3        Demand Futile Plaintiffs submit that additional topics for discovery include the

4 independence and good faith of the Board, and the actions of defendants First American and

5 eAppraiseIT. Defendants object to discovery on the question of whether a pre-suit demand was

6 required, but they and the Demand Futile Plaintiffs agree that the question of whether Demand

7 Futile Plaintiffs are entitled to discovery on the question of demand futility is a matter that should

8 be resolved prior to the filing of a consolidated complaint. Demand Futile Plaintiffs recognize the

9 need to coordinate overlapping discovery and cooperate with the other parties to the extent

10 possible.

11        Demand Made Plaintiffs submit that additional discovery will be needed

12 concerning the Board's actions and knowledge with respect to the allegations of wrongdoing.

13 Demand Made Plaintiffs believe that the issues of the Board's independence and good faith arise

14 only in connection with the Board's alleged rejection of the demand made upon them and the issue

15 of defendants' liability for the alleged wrongdoing. Recognizing the need to coordinate

16 overlapping discovery, Demand Made Plaintiffs submit that they will first depose non-overlapping

17 witnesses and then will coordinate depositions of witnesses who are relevant to the Securities and

18 ERISA Cases to avoid duplicative depositions.

19        Lead ERISA Counsel note that the ERISA plaintiffs will take discovery on

20 defendants' status as Plan fiduciaries; alleged breach of their fiduciary duties, factors bearing on

21 the alleged imprudence of WaMu stock (including many of the factual areas germane to the

22 Securities and Derivative Cases as noted above); losses to the Plan allegedly caused by breaches

23 of fiduciary duties; and related fact and expert discovery. Lead ERISA Counsel recognize the

24 need to coordinate overlapping discovery in the ERISA, Securities, and Derivative. To facilitate

25 this coordination, Lead ERISA Counsel propose that during the pendency of the PSLRA stay that

26 is applicable to the Securities Case, they will first serve written discovery in all relevant areas,

27 followed by depositions of witnesses that are specific to the ERISA Case. No depositions will be

28 noticed on issues germane to the Securities and Derivative Cases until the Court resolves the

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 8

1  securities motion to dismiss; depositions will be coordinated to avoid duplication.  Lead ERISA

2  Counsel note that this same approach to discovery has been followed successfully in several other

3  litigations with parallel ERISA, securities, and derivative cases.

4            Counsel for all parties agree that expert discovery will be necessary in several

5  areas.  The parties will have more insight into the nature and extent of the necessary discovery

6  after the filing of consolidated complaints in each of the cases and after the Court has decided

7  defendants' respective motions to dismiss.

8            C.    Discovery Limitations:  Given the complexity of this litigation and its

9  anticipated scope, all plaintiffs believe that certain discovery in excess of the limits established in

10  certain of the Federal and Local Civil Rules is necessary.  While WaMu and the Individual

11  Defendants do not believe that discovery in excess of the established limits is necessary, all parties

12  agree to discuss these matters in connection with the FRCP 26(f) conference, after the

13  consolidated complaint has been filed.  The parties propose advising the Court of any suggested

14  modifications as appropriate.

15            D.    Minimization of Discovery Expenses:  The parties will work together in

16  good faith to manage and limit all discovery burdens and costs to the extent possible, including

17  coordinating document production and depositions when possible.  The parties will hold meet and

18  confer conferences on a prompt basis after service of any party's objections to discovery requests,

19  and will work together in good faith to resolve any disputes.

20            E.    Other Orders:  At this time, the parties do not contemplate any additional

21  orders that should be entered by the Court pursuant to FRCP 26(c) or Local Rule CR 16(b) and

22  (c).

23      8.    Discovery Deadline

24            Considering, *inter alia*, the anticipated complexity and scope of the allegations at

25  issue, the substantial volume of documents anticipated to be produced (including from third

26  parties), the number of defendants, and the number of anticipated issues requiring expert

27  discovery, the parties propose the following schedule for the completion of discovery:

28

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 9

1          A.    Lead Securities Plaintiff proposes that discovery in the Securities Case

2  commence immediately after the Court's decision on any motions to dismiss the Consolidated

3  Securities Complaint. Lead ERISA Counsel propose that discovery in the ERISA Case commence

4  immediately after the Court's decision on any motions to dismiss the consolidated ERISA

5  complaint, and be completed one hundred twenty (120) days prior to the trial date. WaMu and the

6  Individual Defendants propose that discovery should commence immediately after the Court's

7  ruling on the sufficiency of the pleadings in the Securities, ERISA and Derivative Cases, and

8  should be closely coordinated to prevent duplication and unnecessary expense.

9          B.    Lead Securities Plaintiff proposes that parties in the Securities Case will

10  substantially complete the production of their documents in response to initial discovery requests

11  one hundred twenty (120) days after the Court's decision on any motions to dismiss the

12  Consolidated Securities Complaint. Demand Futile Plaintiffs propose that they will substantially

13  complete the production of their documents in response to initial discovery requests one hundred

14  twenty (120) days after the Court's decision on any motions to dismiss their claims. WaMu and

15  the Individual Defendants propose that the parties will substantially complete the production of

16  their documents in response to initial discovery requests one hundred twenty (120) days after the

17  Court's decision on the final motion to dismiss.

18          C.    The deadline for completion of fact discovery should be nine (9) months

19  after the deadline for the substantial completion of the production of documents. The deadline for

20  completion of expert discovery should be sixty (60) days after the completion of fact discovery.

21  **9.**    **Pending Motions**

22          There are no motions currently pending before the Court.

23  **10.**    **Bifurcation**

24          At this time, the parties do not anticipate that bifurcation of the liability and

25  damages issues will be necessary or useful.

26

27

28

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 10

1       **11.**    **Pretrial Statements and Pretrial Order**

2            At this time, the parties do not believe that the pretrial statements and pretrial order

3    called for by Local Rules CR 16(e), (h), (i), and (l), and 16.1 should be dispensed of, in whole or

4    in part.

5       **12.**    **Date Case(s) Will Be Trial Ready**

6            The parties are not in a position at this time to identify the specific date that these

7    actions will be ready for trial, as the trial dates will depend, in large part, on the deadlines for

8    filing summary judgment motions, the amount of time necessary to address pre-trial issues,

9    including *Daubert* and *in limine* motions, and the nature of the issues in dispute.  The parties

10   propose that the Court reconvene a status conference after disposition of motions for class

11   certification and summary judgment to discuss trial dates for the three cases.

12      **13.**    **Jury or Bench Trial**

13           Lead Securities Plaintiff elects trial by jury.  Demand Futile Plaintiffs and Demand

14   Made Plaintiffs elect trial by jury.  Lead ERISA Counsel elect a bench trial.

15     **14.**    **Number of Trial Days Required**

16           The parties anticipate multi-week trials in each of the Securities, Derivative and

17   ERISA Cases.

18      **15.**    **Return to Original Districts for Trial**

19           The parties anticipate that each of the Securities, Derivative and ERISA Cases will

20   be tried in this District.

21      **16.**    **Further Suggestions for Simplification**

22           The parties will work together at all times to make this litigation as efficient and

23   streamlined as possible.

24      **17.**    **Trial Counsel**

25           *See* Appendix A.

26      **18.**    **Companies Affiliated with the Parties and All Associated Counsel**

27           *See* Appendix B.

28

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 11

**19.    Related Cases**

There are four shareholder derivative cases pending in Washington State Superior Court, King County related to the above-captioned cases:  *Catholic Medical Mission v. Killinger, et al.,* Case No. 07-2-36548-6, *Breene v. Killinger, et al.,* Case No. 07-2-41042-2, *Gibb v. Killinger, et al.,* Case No. 07-2-41044-9, and *Brody v. First American Corp., et al.,* Case No. 08-2-13425-3.  The first three cases have been consolidated, *In re Washington Mutual, Inc. King County Derivative Litigation,* Lead Case No. 07-2-36548-6, and all proceedings have been stayed pending this Court's ruling on defendants' motions to dismiss the Securities Case.  The parties are in the process of negotiating a stipulation to add the *Brody* action to the consolidated state court docket and bring it within the purview of the stay.

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 12

1    Dated this 27th day of May 2008.

2    SIMPSON THACHER & BARTLETT LLP    DAVIS WRIGHT TREMAINE LLP

3

4    By:    /s/ Barry R. Ostrager                    By:    /s/ Steven P. Caplow
         Barry R. Ostrager (*pro hac vice*)              Stephen M. Rummage, WSBA #11168
5        Mary Kay Vyskocil (*pro hac vice*)              Steven P. Caplow, WSBA #19843
         425 Lexington Avenue                            1201 Third Avenue, Suite 2200
6        New York, New York 10017                        Seattle, Washington 98101-3045
         Tel.:        (212) 455-2700                     Tel.:        (206) 757-8108
7        Fax:         (212) 455-2502                     Fax:         (206) 757-7136
         Email:       bostrager@stblaw.com               E-mail:      steverummage@dwt.com
8                     mvyskocil@stblaw.com                            stevencaplow@dwt.com

9        -and-                                       *Counsel for Defendant Washington Mutual,*
                                                     *Inc., and for the limited purpose of filing this*
         Robert J. Pfister (*pro hac vice*)          *Joint Preliminary Report, Kerry K. Killinger,*
10       Gabriel D. Miller (*pro hac vice*)          *Stephen Rotella, James B. Corcoran, David C.*
         1999 Avenue of the Stars, 29th Floor        *Schneider, John F. Woods, Daryl D. David,*
11       Los Angeles, California 90067               *Deanna W. Oppenheimer, the WaMu Human*
         Tel.:        (310) 407-7500                 *Resources Committee, the WaMu Plan*
12       Fax:         (310) 407-7502                 *Administration Committee, the WaMu Plan*
         Email:       rpfister@stblaw.com            *Investment Committee, the Plan*
13                    gdmiller@stblaw.com            *Administration Committee for the WaMu*
                                                     *Savings Plan, and the Plan Investment*
14                                                   *Committee for the WaMu Savings Plan*

15

16                                                   PERKINS COIE LLP

17                                                   By:    /s/Ronald L. Berenstain
                                                         Ronald L. Berenstain, WSBA #7573
18                                                       David F. Taylor, WSBA #25689
                                                         1201 Third Avenue, Suite 4800
19                                                       Seattle, Washington 98101-3099
                                                         Tel.:        (206) 359-8477
20                                                       Fax:         (206) 359-9477
                                                         E-mail:      rberenstain@perkinscoie.com
21                                                                    dftaylor@perkinscoie.com

22                                                   *Counsel for Defendants Anne V. Farrell,*
                                                     *Stephen E. Frank, Thomas C. Leppert, Charles*
23                                                   *M. Lillis, Phillip D. Matthews, Regina T.*
                                                     *Montoya, Michael K. Murphy, Mary E. Pugh,*
24                                                   *William G. Reed, Jr., Orin C. Smith, Thomas*
                                                     *Casey, James H. Stever, and Willis J. Wood,*
25                                                   *Jr.*

26

27

28

JOINT PRELIMINARY REPORT
(No. 2:08-md-01919 MJP) – 13

1   THACHER PROFFITT & WOOD LLP          BISHOP WHITE & MARSHALL

2
    By:   /s/ Richard F. Hans                By:   /s/ William Bishop
3       Richard F. Hans (pro hac vice)          Ann T. Marshall
        Patrick J. Smith (pro hac vice)         William Bishop, Jr.
4       Darius P. Chafizadeh (pro hac vice)     720 Olive Way, Suite 1301
        Two World Financial Center              Seattle, Washington  98101
5       New York, New York 10281            Tel:      (206) 622-5306
        Tel:      (212) 912-7400            Fax:      (206) 622-0354
6       Fax:      (212) 912-7751            Email:    amarshall@bwmlegal.com
        Email:    rhans@tpw.com                       bbishop@bwmlegal.com
7                 psmith@tpw.com
                  dchafizadeh@tpw.com
8
    Counsel for First American Corporation   Counsel for First American Corporation
9   and eAppraiseIT, LLC                     and eAppraiseIT, LLC

10

11  BERNSTEIN LITOWITZ                      BYRNES & KELLER LLP
       BERGER & GROSSMANN LLP
12

13  By:   /s/ Chad Johnson                   By:   /s/ Bradley Keller
        Chad Johnson (pro hac vice)             Bradley S. Keller, WSBA# 10665
14      Hannah Ross (pro hac vice)              Jofrey M. McWilliam, WSBA#28441
        1285 Ave. of the Americas, 38th Floor   1000 Second Avenue, Suite 3800
15      New York, New York 10019                Seattle, Washington 98104
        Tel:      (212) 554-1400            Tel:      (206) 622-2000
16      Fax:      (212) 554-1444            Fax:      (206) 622-2522
        Email:    chad@blbglaw.com          Email:    bkeller@byrneskeller.com
17                hannah@blbglaw.com                   jmcwilliam@byrneskeller.com

18  Counsel for Ontario Teachers' Pension Plan   Liaison Counsel for the Class
    Board and Lead Counsel for the Class
19

20  KRISLOV & ASSOCIATES, LTD.              BRESKIN JOHNSON & TOWNSEND PLLC

21
    By:   /s/ Clinton A. Krislov            By:   /s/ Roger M. Townsend
22      Clinton A. Krislov (pro hac vice)       Roger M. Townsend
        Jeffrey M. Salas (pro hac vice)         999 Third Avenue, Suite 4400
23      20 North Wacker Drive, Suite 1350       Seattle, Washington 98104-4088
        Chicago, Illinois 60606             Tel:      (206) 652-8660
24      Tel:      (312) 606-0500            Fax:      (206) 652-4088
        Fax:      (312) 606-0207            Email:    rtownsend@bjtlegal.com
25      Email:    clint@krislovlaw.com
                  jeff@krislovlaw.com
26
    Interim Co-Lead Counsel in Derivative    Interim Liaison Counsel in Derivative
27  Demand Futile Action                     Demand Futile Action

28

    JOINT PRELIMINARY REPORT
    (No. 2:08-md-01919 MJP) – 14

1    FARUQI & FARUQI, LLP

2

3    By:   /s/ David H. Leventhal
        David H. Leventhal (*pro hac vice*)
        369 Lexington Avenue, Tenth Floor

4         New York, New York 10017-6531
        Tel:       (212) 983-9330

5         Fax:       (212) 983-9331
        Email:     dleventhal@faruqilaw.com

6         -*and*-

7         Vahn Alexander (*pro hac vice*)
        1901 Avenue of the Stars, Second Floor

8         Los Angeles, California 90067
        Tel:       (310) 461-1426

9         Fax:       (310) 461-1427
        Email:     valexander@faruqilaw.com

10

11   *Interim Co-Lead Counsel in Derivative*
     *Demand Futile Action*

12   LAW OFFICES                     ZWERLING, SCHACHTER &
      BERNARD M. GROSS, P.C.        ZWERLING, LLP

13

14   By:   /s/ Deborah R. Gross          By:   /s/ Dan Drachler
        Deborah R. Gross                Dan Drachler (WSBA #27728)

15         Robert P. Frutkin               1904 Third Avenue, Suite 1030
        100 Penn Square East, Suite 450     Seattle, Washington 98101-1170

16         Philadelphia, Pennsylvania 19107    Tel:       (206) 223-2053
        Tel:       (215) 561-3600        Fax:       (206) 343-9636

17         Fax:       (215) 561-3000        Email:     ddrachler@zsz.com
        Email:     debbie@bernardmgross.com

18

19   *Interim Lead Counsel in the*        *Interim Lead Counsel in the*
     *Demand Made Derivative Action*    *Demand Made Derivative Action*

20   HAGENS BERMAN SOBOL        KELLER ROHRBACK L.L.P.
      SHAPIRO LLP

21

22   By:   /s/ Andrew M. Volk         By:   /s/ Derek W. Loeser
        Steve W. Berman, WSBA #12536    Lynn L. Sarko, WSBA #16569

23         Andrew M. Volk, WSBA #27639     Derek W. Loeser, WSBA # 24274
        Tyler Weaver, WSBA #29413       Erin M. Riley, WSBA # 30401

24         Genessa Stout, WSBA #38410      1201 Third Avenue, Suite 3200
        1301 Fifth Avenue, Suite 2900      Seattle, Washington 98101-3052

25         Seattle, Washington 98101        Tel:       (206) 623-1900
        Tel:       (206) 623-7292        Fax:       (206) 623-3384

26         Fax:       (206) 623-0594        Email:     lsarko@kellerrohrback.com
        Email:     steve@hbsslaw.com                dloeser@kellerrohrback.com

27                  andrew@hbsslaw.com
                 tyler@hbsslaw.com

28   *Interim Co-Lead ERISA Counsel*     *Interim Co-Lead ERISA Counsel*

   JOINT PRELIMINARY REPORT
   (No. 2:08-md-01919 MJP) – 15

# EXHIBIT C

### BEFORE THE JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE AND "ERISA" LITIGATION | ) ) ) ) ) |

MDL Docket No. _____

### MOTION OF WASHINGTON MUTUAL FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Defendant Washington Mutual, Inc. ("WaMu") respectfully moves this Panel, pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, for an Order transferring seven similar actions, listed in the attached Schedule of Actions, to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, for coordinated or consolidated pretrial proceedings.

In support of the transfer and coordination or consolidation of these actions, and as more fully articulated in the accompanying supporting Brief, WaMu states:

        1.     To date, seven separate actions (the "WaMu Cases") have been brought against WaMu and certain individual defendants pending in the United States District Courts for the Western District of Washington and the Southern District of New York.

        2.     WaMu is a defendant in each of the WaMu Cases.

3.    Each of the individual defendants in the WaMu Cases is an officer or director of WaMu, or both.

4.    Plaintiffs in three of the WaMu Cases purport to represent nationwide classes of investors in WaMu's publicly traded securities.

5.    The three putative class action complaints each assert claims under the federal securities laws and allege that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to (1) an alleged conspiracy between WaMu and an appraisal vendor, eAppraiseIT, related to appraisal valuations on loans originated by WaMu; (2) WaMu's exposure to loan-related losses, and its reserving and provisioning for those losses, in general and in light of that alleged conspiracy; and (3) various aspects of WaMu's performance and accounting in light of the alleged conspiracy and of changing conditions in the home lending and credit markets.

6.    Although the alleged WaMu-eAppraiseIT conspiracy is the subject of a lawsuit filed by the New York Attorney General, neither WaMu nor any of the individual defendants is named in the New York Attorney General's complaint.

7.    Plaintiffs in two of the WaMu Cases seek to sue derivatively on behalf of WaMu itself.

8.    The two derivative action complaints each assert state law claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. These claims are based largely on the theory that defendants misrepresented WaMu's exposure to risk in the home loan market and also misrepresented or failed to disclose information revealed in the New York Attorney General's complaint.

9.    Plaintiffs in two of the WaMu Cases purport to represent nationwide classes of participants or beneficiaries of the WaMu Savings Plan, a defined contribution retirement plan, under the Employee Retirement Income Security Act ("ERISA").

10.    The two putative ERISA class actions each assert claims under ERISA for breach of fiduciary duty.  The claims are based largely on the theory that the investment of WaMu Savings Plan funds in WaMu stock was imprudent because WaMu was over-reliant on the subprime mortgage market and was manipulating the appraisal process, as alleged in the New York Attorney General's complaint.

11.    WaMu is incorporated under the laws of the State of Washington.

12.    WaMu's principal place of business and headquarters are located in Seattle, Washington.

13.    Seattle, Washington is located in the Western District of Washington.

14.    WaMu generally prepares and releases its Securities and Exchange Commission filings from its Seattle, Washington headquarters.

15.    WaMu generally prepares and releases its press releases from its Seattle, Washington headquarters.

16.    Defendants Kerry K. Killinger, Stephen J. Rotella, Thomas W. Casey, David C. Schneider, James B. Corcoran, John F. Woods, and Daryl D. David are executives of WaMu, work at WaMu's headquarters in Seattle and live in or near the Seattle, Washington metropolitan area.

17.    It is WaMu's belief at this early stage of litigation that virtually all of the relevant documents and most of the witnesses are located in or near the Western District of Washington.

18.    The allegations of all seven WaMu Cases raise substantially similar claims against an overlapping group of defendants, and all seven actions will involve similar complex and disputed issues of law and fact.

19.    Common issues that will need to be determined in the pending actions include, but are not limited to, whether the largely overlapping allegations in each of the seven WaMu Cases about WaMu's loan loss reserves, its disclosures, and its dealings with outside appraisal firms are true, and if true, whether these facts are material, and if material, whether defendants knowingly or recklessly misrepresented or failed to disclose these facts.

20.    The consolidation and transfer of the WaMu Cases would serve the convenience of the parties, the witnesses, the judiciary and counsel in accordance with 28 U.S.C. § 1407.

21.    Absent pretrial coordination or consolidation, the possibility of inconsistent pretrial rulings exists, especially on motions to dismiss and motions for summary judgment, as well as with regard to class certification and the proper scope and extent of discovery.

22.    Neither motion practice nor discovery has commenced in any of the WaMu Cases.

23.    Neither of the district courts in which the WaMu cases were filed has invested substantial judicial resources in these matters that would be wasted should this Panel transfer the WaMu Cases to the Western District of Washington.

24.    Five out of the seven WaMu Cases are currently pending in the Western District of Washington.

25.    An additional derivative action, *Catholic Medical Mission v. Killinger, et al.*, No 07-2-36548-6, has been filed in the Superior Court of the State of Washington, King County, making substantially similar allegations to the WaMu Cases. As result, discovery could be coordinated between the federal and state court actions in Washington, should the need arise.

26.    The Western District of Washington has a less congested docket, particularly with regard to multidistrict litigation. As of September 30, 2006, the median time between filing and trial in the Western District of Washington was six months shorter than in the Southern District of New York. In addition, as of November 6, 2007, the Southern District of New York has thirty-eight multidistrict litigation actions pending on its dockets, compared to only one multidistrict litigation in the Western District of Washington.

27.    The WaMu cases should be transferred to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, who is currently presiding over the first action filed in the Western District of Washington. Judge Pechman has experience presiding over complex multidistrict litigation and thus is the most logical choice.

28.    Transfer of these actions to the Western District of Washington would conserve valuable judicial resources and would prevent potentially conflicting judicial decisions.

WHEREFORE, for the reasons stated herein and in the accompanying Brief in Support of WaMu's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407, WaMu respectfully requests that the Panel issue an Order transferring all seven actions listed in the attached Schedule of Actions, as well as all subsequently filed related actions, to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, for coordinated or consolidated pretrial proceedings.

Date:    November 28, 2007                Respectfully submitted,

                                          Barry R. Ostrager
                                          Mary Kay Vyskocil
                                          David J. Woll
                                          SIMPSON THACHER & BARTLETT LLP
                                          425 Lexington Avenue
                                          New York, New York  10017-3954
                                          (212) 455-2700
                                          (212) 455-2502 (fax)
                                          Counsel for Washington Mutual, Inc.

# EXHIBIT D

### BEFORE THE JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE AND "ERISA" LITIGATION | )<br>)<br>)<br>)<br>) | MDL Docket No. _____ |

### BRIEF IN SUPPORT OF WASHINGTON MUTUAL'S MOTION
### FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, defendant Washington Mutual, Inc. ("WaMu")

respectfully submits this Brief in support of its Motion to transfer those actions listed in the

Schedule of Actions (the "WaMu Cases") to the Honorable Marsha J. Pechman, United States

District Judge for the Western District of Washington, for coordinated or consolidated pretrial

proceedings.  Most of the defendants, virtually all of the relevant documents and witnesses, and

five of the seven actions are located in the Western District of Washington, making it the forum

that will best promote the just and efficient centralized pretrial proceedings of the WaMu Cases.

## PRELIMINARY STATEMENT

Three of the WaMu cases assert claims under the federal securities laws and allege that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to (1) an alleged conspiracy between WaMu and an appraisal vendor, eAppraiseIT, related to appraisal valuations on loans originated by WaMu; (2) WaMu's exposure to loan-related losses, and its reserving and provisioning for those losses, in general and in light of that alleged conspiracy; and (3) various aspects of WaMu's performance and accounting in light of the alleged conspiracy and of changing conditions in the home lending and credit markets. Two of the WaMu Cases are derivative actions, each asserting state law claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. These claims are based largely on the theory that defendants misrepresented WaMu's exposure to risk in the subprime home loan market and also misrepresented or failed to disclose information related to the alleged conspiracy. All seven WaMu Cases plainly arise out of the same set of operative facts, and coordination or consolidation for pretrial proceedings would serve the convenience of the parties and witnesses and promote the just and efficient conduct of these actions.

Coordination or consolidation of the WaMu Cases will promote the efficient administration of pretrial motions, discovery and related proceedings and, in the process, further the convenience of the judiciary, parties, witnesses and counsel. The combination of a complex core of facts involving WaMu's management of and disclosures related to potential loan losses in its home loans business and also involving the dealings between WaMu and outside appraisal firms, and claims requiring significant motion practice and possibly extensive discovery, militates strongly in favor of coordination or consolidation. Many of the WaMu Cases involve common legal questions that will be raised at the motion to dismiss stage, such as, *inter alia,*

2

whether the complaints state claims upon which relief can be granted, or whether plaintiffs in the derivative actions were excused from making a demand on WaMu's Board of Directors. Coordination or consolidation will avoid inconsistent determinations regarding these, as well as other, issues of law, and will avoid duplicative pretrial proceedings that would burden judicial resources. WaMu expects that plaintiffs in each of the pending cases will seek to depose many of the same witnesses, including WaMu's officers, directors and employees. Coordination or consolidation will help to eliminate or reduce the possibility for duplicative discovery, potentially inconsistent rulings, and the cost and inconvenience multiple actions entails.

Finally, WaMu and most individual defendants are located in Washington. WaMu is a Washington corporation with its corporate headquarters in Seattle, Washington and most of the individual defendants reside in or near the Seattle metropolitan area. Virtually all of the relevant witnesses and documents are likely to be located in Washington. In addition to the five (out of the seven) actions currently pending Western District of Washington, there is also a derivative action pending in Washington state court. Thus, discovery could be coordinated between the federal and state actions, should the need arise. Notably, the median time between filing and trial is shorter in the Western District of Washington than in the Southern District of New York, where the remaining two WaMu Cases are pending, and the Western District of Washington has fewer pending civil actions and multidistrict litigations on the docket.

Accordingly, these cases (and any tag-along or related actions) should be coordinated or consolidated before the Honorable Marsha J. Pechman in the Western District of Washington. Judge Pechman, who is currently presiding over the first action commenced in the Western District of Washington, has extensive judicial experience and is the most logical choice to coordinate pretrial proceedings. For the reasons set forth below, the WaMu Cases therefore should be transferred pursuant to 28 U.S.C. § 1407 to the United States District Court for the

Western District of Washington, Seattle Courthouse, and assigned to the Honorable Marsha J. Pechman.[1]

## BACKGROUND OF THE LITIGATION[2]

### INTRODUCTION:

WaMu is incorporated under the laws of the State of Washington and has its headquarters and principal place of business in Seattle, Washington, which is in the Western District of Washington. WaMu is a bank holding company that owns is the largest savings and loan in the nation, which has consumer and small business banking operations in major U.S. markets. *See* Koesterer Compl. ¶¶ 2, 13; Abrams Compl. ¶¶ 18, 25; Nelson Compl. ¶ 7; Sneva Compl. ¶¶ 1, 2; Harrison Compl. ¶¶ 1, 2.; Bushansky Compl. ¶ 16; Bussey Compl. ¶ 15.[3]

Because WaMu's corporate headquarters are in Seattle, Washington, WaMu generally prepares and releases its Securities Exchange and Commission ("SEC") filings and its press releases from Seattle. Accordingly, it would appear that many relevant documents and witnesses are likely to be found in or near the Seattle, Washington metropolitan area.

Defendants Kerry K. Killinger, Stephen J. Rotella, Thomas W. Casey, David C. Schneider, James B. Corcoran, John F. Woods, and Daryl D. David are executives of WaMu.

---

[1] WaMu moves without prejudice to any defense to the above-captioned complaints that may be raised in a responsive pleading or otherwise.

[2] The facts recited herein for which citation is made to the complaints are assumed to be true only for purposes of this motion, unless otherwise indicated.

[3] "Koesterer Compl." refers to the complaint filed in *Koesterer v. Washington Mutual, Inc., et al.*, No. 07 Civ. 9801 (S.D.N.Y.); "Abrams Compl." refers to the complaint filed in *Abrams and Raffe v. Washington Mutual, Inc., et al.*, No. 07 Civ. 9806 (S.D.N.Y.); "Nelson Compl." refers to the complaint filed in *Nelson v. Woods, et al.*, No. C07-1809 (W.D. Wash); "Sneva Compl." refers to the complaint filed in *Sneva v. Killinger, et al.*, No. C07-1826 (W.D. Wash); "Harrison Compl." refers to the complaint filed in *Harrison v. Killinger, et al.*, No. C07-1827 (W.D. Wash); "Bushansky Compl." refers to the complaint filed in *Bushansky v. Washington Mutual, Inc., et al.*, No. C07-1874; "Bussey Compl." refers to the complaint filed in *Bussey v. Washington Mutual, Inc., et al.*, No. C07-1879.

4

*See* Koesterer Compl. ¶¶ 15-17; Abrams Compl. ¶¶ 19-21; Nelson Compl. ¶¶ 8-12; Sneva Compl. ¶¶ 14-18; Harrison Compl. ¶¶ 14-18; Bussey Compl. ¶ 35 . Messrs. Killinger, Rotella, Casey, Schneider, Corcoran, Woods and David work at WaMu's headquarters in Seattle, Washington. Moreover, these individual defendants also live with their families in or near the Seattle, Washington metropolitan area.

All other individual defendants are members of WaMu's board of directors. Anne V. Farrell, Mary E. Pugh, Michael K Murphy, William G. Reed, Jr., Orin C. Smith and James H. Stever are citizens of Washington. Stephen E. Frank and Phillip D. Matthews are citizens of California. Thomas C. Leppert is a citizen of Texas. Charles M. Lillis is a citizen of Colorado. Regina T. Montoya is a citizen of Washington, D.C. *See* Sneva Compl. ¶¶ 20-30; Harrison Compl. ¶¶ 20-30; Bushansky Compl.¶ 17; Bussey Compl. ¶¶ 28-32.

**ALLEGATIONS AGAINST DEFENDANTS:**

Two putative class actions alleging violations of securities laws were filed in the Southern District of New York, asserting that WaMu and the individual defendants violated the federal securities laws by allegedly making false and misleading statements and omissions concerning, among other things, the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. These actions were quickly followed by an additional putative class action complaint filed in the Western District of Washington, making the same allegations and claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. On November 13, two nearly identical complaints were filed in the Western District of Washington asserting derivative claims on behalf of WaMu. Those complaints allege that individual defendants' failure to disclose the risks of WaMu's mortgage lending business violated the individual defendants' fiduciary duties, wasted corporate assets, constituted gross mismanagement and abuse of control, and resulted in

5

unjust enrichment of the individual defendants. A third derivative action was filed in the Superior Court of the State of Washington, King County,[4] asserting substantially the same facts and the same claims as the derivative actions filed in federal district court. Finally, two putative class actions were filed in the Western District of Washington alleging that defendants breached fiduciary duties under the Employee Retirement Income Security Act ("ERISA") by investing funds from the WaMu Savings Plan in WaMu stock. The complaints allege this investment was imprudent because WaMu stock was an unduly risky investment due to WaMu's alleged manipulation of the appraisal process. *See* Koesterer Compl. ¶¶ 3-8; Ahrens Compl. ¶¶ 3-13; Nelson Compl. ¶¶ 73-77; Siena Compl. ¶¶ 3-9; Harrison Compl. ¶¶ 3-9; Brakensiek Compl. ¶¶ 4-7, 107-113; Bussey Compl. ¶¶ 5-9, 106-123.

## BRIEF SUMMARY OF WAMU CASES:

The following actions are currently pending in federal district courts.

### WaMu Cases in the Western District of Washington[5]

- *Nelson v. Woods, et al.,* No. C07-1809 (W.D. Wash): This action was filed on November 7, 2007 in federal district court in the Western District of Washington. Nelson Compl. at p. 1. Mark Nelson brought claims on behalf of a putative class of purchasers of WaMu common stock between April 18, 2006 and November 1, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. *See* Nelson Compl. ¶¶ 1, 102-114. The complaint alleges that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to the alleged conspiracy, loan-related issues, and WaMu's performance and accounting practices in light of those allegations. *See* Nelson Compl. ¶¶ 1, 73-77. This action was assigned to Judge Martha J. Pechman. Thus far, no answers or motions have been filed.

- *Siena v. Killinger, et al.,* No. C07-1826 (W.D. Wash): This action was filed on November 13, 2007 in federal district court in the Western District of Washington. Siena Compl. at p. 1. Tom Siena brought derivative claims against several of WaMu's officers and directors alleging state law claims of breach of fiduciary duty, abuse of control, gross

---

[4] The Seattle courthouse of the Western District of Washington is also located in King County.

[5] It is anticipated that other similar actions may be filed against the defendants in the future.

mismanagement, waste of corporate assets and unjust enrichment. Sneva Compl. ¶¶ 107-133. The complaint alleges that defendants misrepresented WaMu's exposure to risk in the home loan market and misrepresented or failed to disclose information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Sneva Compl. ¶¶ 4-9, 73-77. This action was assigned to Judge Ricardo S. Martinez. Thus far, no answers or motions have been filed.

- *Harrison v. Killinger, et al.,* No. C07-1827 (W.D. Wash.): This action was filed on November 13, 2007 in federal district court in the Western District of Washington. Harrison Compl. at 1. Lynne Harrison brought derivative claims against several of WaMu's officers and directors alleging state law claims of breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. Harrison Compl. ¶¶ 107-133. The complaint alleges that defendants misrepresented WaMu's exposure to risk in the home loan market and misrepresented or failed to disclose information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Harrison Compl. ¶¶ 4-9, 73-77. This action was assigned to Judge John C. Coughenour. Thus far, no answers or motions have been filed. Notably, this complaint is virtually identical to the Sneva Complaint.

- *Bushansky v. Washington Mutual, Inc. et al.,* No. C07-1874 (W.D. Wash.): This action was filed on November 20, 2007 in federal district court in the Western District of Washington. Bushansky Compl. at p. 1. Gregory Bushansky brought claims on behalf of a putative class of participants or beneficiaries in the WaMu Savings Plan, for breach of fiduciary duty under "ERISA." Bushansky Compl. ¶ 4. The complaint alleges that defendants imprudently allowed the WaMu Savings Plan to invest in WaMu common stock, as this stock was an unduly risky investment due to WaMu's over reliance on the subprime lending market and its alleged manipulation of the loan origination process. Bushansky Compl. ¶¶ 4-7, 107-113. This action was assigned to Judge Richard A. Jones. Thus far, no answers or motions have been filed.

- *Bussey v. Washington Mutual, Inc., et al.,* No. C07-1879 (W.D. Wash.): This action was filed on November 21, 2007 in federal district court in the Western District of Washington. Bussey Compl. at p. 1. Vincent Bussey brought claims on behalf of a putative class of participants or beneficiaries in the WaMu Savings Plan, for breach of fiduciary duty under "ERISA." Bussey Compl. ¶ 4. The complaint alleges that defendants imprudently allowed the WaMu Savings Plan to invest in WaMu common stock, as this stock was an unduly risky investment, that defendants had a conflict of interest because their compensation was tied to WaMu's stock price, and that defendants failed to provide complete and accurate information to WaMu Savings Plan participants. Bussey Compl. ¶¶ 5-7. This action was assigned to Chief Judge Robert S. Lasnik. Thus far, no answers or motions have been filed.

## WaMu Cases in the Southern District of New York

- *Koesterer v. Washington Mutual, Inc., et al.,* No. 07 Civ. 9801 (S.D.N.Y.): This action was filed on November 5, 2007 in federal district court in the Southern District of New York.

7

Koesterer Compl. at 1. Dennis Koesterer brought claims on behalf of a putative class of purchasers of WaMu common stock between July 19, 2006 and October 31, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. *See* Koesterer Compl. ¶¶ 1, 81-98. The complaint alleges that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Koesterer Compl. ¶¶ 3-8. This action was assigned to Judge Colleen McMahon. Thus far, no answers or motions have been filed.

- *Abrams and Roffe v. Washington Mutual, Inc., et al.*, No. 07 Civ. 9806 (S.D.N.Y.): This action was filed on November 5, 2007 in federal district court in the Southern District of New York. Abrams Compl. at 1. Joel Abrams and Brian Roffe brought claims on behalf of a putative class of purchasers of WaMu common stock between October 18, 2006 and November 1, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. *See* Abrams Compl. ¶¶ 1, 42-47. The complaint alleges that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to the strength of WaMu's mortgage loan portfolio. *See* Abrams Compl. ¶¶ 3-9. The complaint further alleges that these misleading statements or material omissions were related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Abrams Compl. ¶¶ 10-13. This action was assigned to Judge Alvin K. Hellerstein. Thus far, no answers or motions have been filed.

## ARGUMENT

The WaMu Cases are patently appropriate actions for transfer and coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, and the Western District of Washington is unquestionably the forum most convenient to the parties and witnesses. It is the forum where nearly all the defendants are located and, accordingly, where virtually all of the relevant witnesses and documents are likely to be found. In short, transfer to the Western District of Washington will best promote the just and efficient pretrial proceedings of the WaMu Cases.

## I.   TRANSFER AND COORDINATION OR CONSOLIDATION OF THESE ACTIONS IS APPROPRIATE AND NECESSARY

The Judicial Panel on Multidistrict Litigation (the "Panel") may transfer and coordinate or consolidate two or more civil cases involving "one or more common questions of

8

fact" for coordinated or consolidated pretrial proceedings upon a determination that the transfers would "be for the convenience of the parties and witnesses" and would "promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). By providing for the centralized management of pretrial proceedings, Section 1407 seeks "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation, Fourth*, § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). A straightforward application of the criteria set forth in Section 1407 compels the conclusion that all seven of the WaMu Cases should be coordinated or consolidated for pretrial proceedings.

A.    The WaMu Cases Present Common Questions of Law and Fact

Although arising from complex factual allegations, at bottom, each complaint alleges, *inter alia*, that defendants misrepresented WaMu's exposure to risk in the subprime home loan market and misrepresented or failed to disclose information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. The Panel has routinely transferred and centralized putative securities and ERISA class actions and shareholder derivative suits stemming from "a significant number of common events, defendants, and/or witnesses." *In re Pfizer, Inc. Sec., Derivative and "ERISA" Litig.*, 374 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002).

Although there are slight variations in the way each plaintiff phrases its allegations, the obvious factual similarities of these actions are illustrated by a simple comparison of the common questions of fact asserted in the WaMu Cases. First, the securities class action complaints allege false and misleading statements and omissions concerning:

9

- WaMu's exposure to home loan defaults and related losses. *See* Koesterer Compl. ¶¶ 30, 42, 46, 55, 59, 63, 67; Abrams Compl. ¶ 3, 12, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- WaMu's reported loan loss reserves and provisioning. *See* Koesterer Compl. ¶¶ 34, 42, 46, 55, 59, 63, 67; Abrams Compl. ¶¶ 6, 12, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- The adequacy of WaMu's systems of internal operational or financial controls. *See* Koesterer Compl. ¶ 55; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- The conspiracy to inflate appraisal values on residential-secured loans with the goal of artificially increasing loan-to-value ratios, artificially increasing loan origination volumes, under-reporting WaMu's true costs, and taking inadequate reserves. *See* Koesterer Compl. ¶¶ 22, 42, 46, 55, 59, 63, 67, 70, 71; Abrams Compl. ¶¶ 10, 12, 34, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- The level of risk inherent in the residential real-estate secured loans that WaMu made in light of its allegedly improper appraisal practices. *See* Koesterer Compl. ¶¶ 42, 46, 55, 59, 63, 67; Abrams Compl. ¶¶ 12, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- WaMu's reported income and asset valuations, in light of its allegedly improper appraisal practices. *See* Koesterer Compl. ¶¶ 42, 46, 55, 59, 63, 67; Abrams Compl. ¶ 12; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- WaMu's profitability in light of its failure to take sufficient reserves and its failure to account properly for the results of its operations. *See* Koesterer Compl. ¶¶ 42, 46, 55, 59, 63, 67; Abrams Compl. ¶ 12; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

Next, the two derivative lawsuits, which are virtually identical, repeat allegations similar to those pleaded in the securities complaints. *See* Sneva Compl. ¶¶ 53, 62, 71, 76, 81, 85; Harrison Compl. ¶¶ 53, 62, 71, 76, 81, 85. The complaints further assert that the defendant officers and directors violated their fiduciary duties to WaMu in light of the misrepresentations and omissions alleged in the securities complaints. *See, e.g.,* Sneva Compl. ¶¶ 100, 115; Harrison Compl. ¶¶ 100, 115. More particularly, the derivative claims assert that the underlying violations of the securities laws and the related misrepresentations and omissions have harmed WaMu in the following ways:

10

- WaMu has been and will continue to be forced to incur substantial costs of investigation and defense related to governmental investigations and the securities class actions. *See* Sneva Compl. ¶ 92; Harrison Compl. ¶ 92.

- WaMu's image, reputation and market capitalization have been severely damaged as a result of the defendants' fiduciary breaches. *See* Sneva Compl. ¶ 92; Harrison Compl. ¶ 92.

- Certain of the defendants sold WaMu stock with knowledge of true facts that were not generally disclosed to the investing public and thus misappropriated confidential WaMu information. *See* Sneva Compl. ¶¶ 101, 109; Harrison Compl. ¶¶ 101, 109.

- As a result of the defendants' conduct, WaMu has wasted corporate assets by paying unjustified incentive bonuses. *See* Sneva Compl. ¶ 129; Harrison Compl. ¶ 129.

The two putative ERISA class actions were also precipitated by the alleged conspiracy, and many of the allegations in the ERISA complaints repeat those above. Specifically, the putative ERISA class actions allege that WaMu stock was a risky investment because:

- WaMu's mortgage origination practices were highly risky and inappropriate. *See* Bushansky Compl. ¶ 64; Bussey Compl. ¶ 108-114.

- WaMu's financial condition, particularly with respect to subprime mortgages, was being misrepresented. *See* Bushansky Compl. ¶ 65; Bussey Compl. ¶ 94.

- WaMu disregarded the risk of loans collateralized by inflated appraisals because WaMu was primarily focused on increasing the volume of mortgage originations. *See* Bushansky Compl. ¶ 109; Bussey Compl. ¶¶ 117.

- WaMu held insufficient reserves, given the added risks of mortgages backed by inflated appraisals. *See* Bushansky Compl. ¶ 113.

The legal issues in the purported securities class actions are identical. The putative class would need to prove the facts above and show, in part, that defendants' statements misrepresented material facts about WaMu's financial condition, to what extent the members of the class sustained damages, and the proper measure of damages. *See* Koesterer Compl. ¶ 76; Abrams Compl. ¶ 36; Nelson Compl. ¶ 24. Likewise, plaintiffs in the derivative actions would

11

need to demonstrate, in part, that these nondisclosures damaged WaMu. *See* Sneva Compl. ¶¶ 92, 101, 108, 109, 129; Harrison Compl. ¶¶ 92, 101, 108, 109, 129. Finally, plaintiffs in the ERISA class actions seek to prove, *inter alia*, that WaMu's stock was an imprudent investment based, in part, on *defendants'* alleged misrepresentation of WaMu's true financial condition. Bushansky Compl. ¶ 65; Bussey Compl. ¶ 94.

**B.    The Questions of Law and Fact Are Sufficiently Complex To Require Consolidation under Section 1407**

Consolidation will ensure that many of the complex and difficult issues raised by these cases — for example, through motions to dismiss, motions for summary judgment, and discovery disputes — are handled in a consistent manner that will protect both plaintiffs and defendants from conflicting judgments by different district courts. This Panel has long held that the possibility of duplicative pretrial proceedings and inconsistent pretrial rulings is a central factor in determining whether cases should be consolidated pursuant to Section 1407. *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d at 1376; *In re Food Fair Sec. Litig.*, 465 F. Supp. at 1304; *In re First Nat'l Bank, Heavener, Okla. Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978).

A review of the allegations and claims for relief in the actions summarized above shows that these similar actions will involve complex legal and factual pretrial issues. Questions of the nature and scope of appropriate discovery, as well as privilege, will have to be resolved for each case. Most significantly, a court will need to resolve questions relating to whether each of the five putative securities and ERISA class actions can properly be maintained as class actions. *See* discussion section I.C, *infra*. Because the WaMu Cases are so similar, there exists a very real danger of conflicting or inconsistent pretrial rulings if these cases proceed separately.

12

C. **Consolidation Will Avoid Conflicting and Duplicative Class Certification Rulings**

Consolidation is appropriate where the actions purport to be brought on behalf of similar classes. This Panel has acknowledged that "[i]t is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest." *In re Plumbing Fixture Cases*, 298 F. Supp. at 493. In fact, this Panel has continually recognized that prevention of inconsistent rulings by separate district courts with respect to class certification issues is a primary purpose of Section 1407. *See In re Insologen, Inc. Sec. & Derivative Litig.*, 416 F. Supp. 2d 1366, 1367 (J.P.M.L. 2006); *In re Rex Exploration, Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

Consequently, consolidation is clearly appropriate here, where several of the actions purport to be brought on behalf of similar putative classes during overlapping class periods.[6] Consolidation will ensure consistency in the adjudication of class certification issues arising in these actions.

D. **Consolidation Will Avoid Duplicative Discovery and Would Be for the Convenience of the Witnesses and All Parties**

Consolidation also will prevent duplicative discovery and save the parties, witnesses and courts time and effort. As the Panel has recognized, consolidation "ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re General Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006); *see also In re Enron*

---

[6] It bears noting that the barely different class periods asserted in the purported class actions are no bar to consolidation. *See In re Pond Fair Sec. Litig.*, 465 F. Supp. 1301, 1304 (J.P.M.L. 1979) (ordering transfer even though the class period asserted was different in the putative securities class actions); *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 229 (J.P.M.L. 1978) (same). In any event, the periods differ only by a matter of months.

*Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d at 1376 ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel and the judiciary."); *In re Food Fair Sec. Litig.*, 465 F. Supp. at 1305 ("While voluntary cooperation among parties and their counsel is always commendable, transfer under Section 1407 and the assignment of all actions to a single judge will ensure the streamlining of discovery and all other pretrial proceedings as well."). Given the similar factual and legal allegations in these actions, *see* section I.C, *supra*, plaintiffs undoubtedly will seek largely duplicative discovery. Coordinated or consolidated discovery would avoid such duplication of effort by the parties, reduce litigation costs and minimize inconvenience to witnesses.

Counsel for plaintiffs also benefit from coordinated or consolidated pretrial proceedings by combining and streamlining their individual efforts. *See In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984) ("prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned"); *see also In re Sunshine Min. Co. Sec. Litig.*, 444 F. Supp. 223, 226 (J.P.M.L. 1978) (stating that streamlining efforts of the parties and their counsel is "one of the purposes of coordinated or consolidated pretrial proceedings"). This streamlining of efforts further supports consolidation of these actions.

Moreover, parties and witnesses may be further convenienced because the Panel often transfers actions to a location where the relevant documents and witnesses are located in order to promote the just and efficient conduct of the litigation. *See, e.g., In re Sterling Fin. Corp. Sec. Litig.*, MDL No. 1879, 2007 WL 3236468, at *1 (J.P.M.L. 2007); *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d at 1356. As discussed in section II, *infra*, many of

14

the individual defendants in the WaMu cases reside in Washington, and WaMu itself is

headquartered in Seattle. Accordingly, virtually all relevant documents and witnesses are likely

to be found in the Western District of Washington.

**II.      THE ACTIONS SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON WHICH IS BY FAR THE MOST APPROPRIATE FORUM**

The Western District of Washington is clearly the preferable transferee district for

the WaMu Cases. Accordingly, and for the reasons discussed below, the WaMu Cases should be

transferred to the Western District of Washington, Seattle Courthouse, and assigned to the

Honorable Marsha J. Pechman, to whom the first of the WaMu Cases filed in the Western

District of Washington was assigned.

As a threshold matter, neither motion practice nor discovery has commenced in

any of the federal district courts in which the WaMu Cases have been filed. Accordingly, it does

not appear that any judicial resources would be wasted should this Panel transfer the WaMu

Cases to the Western District of Washington. On the contrary, judicial resources will be

conserved by transfer to the Western District of Washington at this early stage of the litigation.

**A.      The Location of the Defendants, the Relevant Documents and Witnesses Strongly Supports Transfer to the Western District of Washington**

It is well settled that the Panel routinely transfers securities, ERISA and derivative

actions to a district where the defendant has its corporate headquarters and where many of the

individual defendants reside because "[that] district is where many relevant documents and

witnesses are likely to be found." *In re General Motors Corp. Sec. & Derivative Litig.*, 429 F.

Supp. 2d at 1370; *see also In re Pfizer Ins. Sec., Derivative & "ERISA" Litig.*, 374 F. Supp. 2d

1348, 1350 (J.P.M.L. 2005) (ordering transfer to the district where the defendant "has its

headquarters and many individual defendants reside, and therefore relevant witnesses and

15

documents will likely be found there"); *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (same).

Here, too, the Panel should transfer the WaMu Cases to the Western District of Washington since WaMu is a Washington corporation with its corporate headquarters in Seattle, Washington and many of the individual defendants reside in or near the Seattle metropolitan area. As a result, the Western District of Washington — over any other district — is the most appropriate transferee district for centralized pretrial proceedings, as most of the relevant witnesses and documents are likely to be found in or near Seattle, Washington. Notably, the public disclosures forming the basis of plaintiffs' claims in each of the WaMu Cases were drafted in and issued from WaMu's headquarters in Seattle, Washington, and decisions regarding the contents of those disclosures were largely made by individuals living and working in Washington. Standing alone, these facts are sufficient to demonstrate that the Western District of Washington is the center of gravity of the WaMu Cases and the forum that would best promote the convenience of the parties and witnesses. *See, e.g., In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251-52 (J.P.M.L. 1983) ("[W]e are persuaded that the Pacific Northwest, and particularly the State of Washington, is the center of gravity of this litigation and the focal point for discovery.").

Balanced against this is — nothing. The named plaintiffs in the WaMu Cases are dispersed throughout the country and, with respect to the securities and ERISA actions, purport to represent putative nationwide plaintiff classes. Consequently, there is nothing in the geographical location of the named plaintiff and the putative plaintiff classes that can overcome the overwhelming connection of the WaMu Cases to the Western District of Washington.[7]

---

[7]  Neither WaMu nor any of the individual defendants in the WaMu Cases is a party to the action the New York Attorney General filed against eAppraiseIT. Indeed, WaMu cannot be

16

097471-0024-13475-NY01.2691133.6

**B.    The Largest Number of Cases Are Pending in the Western District of Washington**

An examination of the WaMu Cases reveals that five of the seven actions are currently pending in the Western District of Washington. This further bolsters the evidence that the Western District of Washington is the most logical transferee district. *See, e.g., In re Burlington N. & Santa Fe Ry. Co. Employee Settlement Agreements Litig.*, 162 F. Supp. 2d 699, 700 (J.P.M.L 2001) (noting as a factor supporting transfer that three of the five actions were already pending in the Western District of Washington). *See also In re Doral Fin. Corp. Sec. Litig.*, 398 F. Supp. 2d 1369, 1370 (J.P.M.L. 2005) (noting as a factor supporting transfer that "nearly all" of the actions were already pending in the transferee district).

Moreover, since a related shareholder derivative action is currently pending in Washington state court "centralization in the [Western District of Washington] carries the added benefit of fostering coordinated discovery between the federal and state proceedings, should such a need arise." *In re General Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d at 1370 (noting as a factor supporting transfer that a related shareholder derivative action was pending in state court within the transferee district); *In re Delphi Corp. Sec., Derivative and "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (same).

---

a defendant to that action as it is regulated by a federal agency, namely the Department of the Treasury's Office of Thrift Supervision. Accordingly, the pendency of the New York Attorney General's complaint in the Southern District of New York does not militate against transfer to the Western District of Washington. *See In re Res. Exploration, Inc., Sec. Litig.*, 483 F. Supp. at 822 (transferring actions to a district, other than the district in which a proceeding by the SEC was pending, because, *inter alia*, the transferee district would have "a substantial quantity of documents [that] may be anticipated as part of the discovery process").

17

**C.    The Western District of Washington Is Also the Most Convenient Forum for Non-Party Witnesses**

It is also significant here that many of the relevant non-party witnesses — such as former WaMu executives and employees — are found either in or near Seattle, Washington. Accordingly, the Western District of Washington is the most convenient forum for many of the relevant non-party witnesses. Moreover, if the WaMu Cases were transferred to another federal district court, it appears that many of the relevant non-party witnesses would be outside the respective district court's subpoena power. As a result, transfer to the Western District of Washington advances the parties' ability to conduct discovery and take depositions of relevant non-party witnesses as these witnesses can be compelled to appear and produce documents.

**D.    Judge Pechman Has Experience Managing Multidistrict Litigation and Relative Docket Congestion Strongly Favors Transfer to the Western District of Washington**

The Honorable Marsha J. Pechman — to whom the first of the WaMu Cases filed in the Western District of Washington was assigned — is the most logical choice to coordinate pretrial proceeding in the WaMu Cases. Judge Pechman is no stranger to multidistrict litigation and, in turn, has developed expertise in the pretrial conduct of multidistrict litigation matters. *See In re Burlington N. & Santa Fe Ry. Co. Employee Settlement Agreements Litig.*, 162 F. Supp. 2d at 700 (assigning a multidistrict litigation matter to the Honorable Marsha Pechman for coordinated or consolidated pretrial proceedings). It also does not appear that Judge Pechman has any multidistrict litigation matters currently on her docket.[8]

---

[8]    *See Judicial Panel on Multidistrict Litigation, Distribution of Pending MDL Dockets* (as of Nov. 6, 2007), at p. 9, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf.

18

To the extent that Washington state law issues arise during the course of the WaMu Cases, for example, in connection with the derivative actions, it would appear that Judge Pechman — who was a Washington state superior court judge for eleven years prior to her appointment to the federal bench — would be more familiar with Washington law than a judge sitting elsewhere. Although the presence of foreign state law in multidistrict litigation is not dispositive, see In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litig., 438 F. Supp. 942, 943 (J.P.M.L. 1977), this is yet another example of how the scales tip decidedly in favor of transfer to the Western District of Washington and assignment to Judge Pechman.

Furthermore, the current levels of docket congestion in the two districts where the WaMu Cases are pending strongly favor transfer of the WaMu Cases to the Western District of Washington. As of September 30, 2006, the median time between a civil filing and trial was six months longer in the Southern District of New York than in the Western District of Washington.[9] Also, as of that date, the Southern District of New York had over six times more civil cases pending on its docket than the Western District of Washington. [10] Notably, the Southern District of New York has thirty-eight MDL dockets pending as of November 6, 2007, while the Western District of Washington has only one, which is not assigned to Judge Pechman.[11] The Panel has routinely favored one district over another "because that district has a significantly lighter

---

[9] The median time between a civil filing and trial is 19 months in the Western District of Washington versus 25.7 months in the Southern District of New York. See James C. Duff, 2006 Judicial Business of the United States Courts: Annual Report of the Director, Table C-10, at pp. 208-10, available at http://www.uscourts.gov/judbus2006/contents.html.

[10] There are 2,779 civil cases pending in the Western District of Washington versus 16,852 civil cases pending in the Southern District of New York. Id. at Table C-1, at pp. 159-61.

[11] See Judicial Panel on Multidistrict Litigation, Distribution of Pending MDL Dockets (as of Nov. 6, 2007), at pp. 7-9, http://www.jpml.uscourts.gov/MDL_Information/Pending/MDL-November-07.pdf.

19

civil action docket than the [other district] and, therefore, is in the best position to expeditiously process this particular litigation." *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764-65 (J.P.M.L.1975); *see also In re Air Crash Disaster at Taipei Int'l Airport on July 31, 1975*, 433 F. Supp. 1120, 1122 (J.P.M.L. 1977) (same); *In re Transit Co. Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 n.2 (J.P.M.L. 1972).

In sum, transfer of the WaMu Cases to the Honorable Marsha J. Pechman of the Western District of Washington is the best choice to efficiently and effectively conduct pretrial proceedings of the WaMu Cases.

## CONCLUSION

For the foregoing reasons, WaMu respectfully requests that the Panel transfer the WaMu Cases, listed in the Schedule of Actions, to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: November 28, 2007                     Respectfully submitted,

Barry R. Ostrager
Mary Kay Vyskocil
David J. Woll
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)
Counsel for Defendant Washington Mutual,
Inc.

# EXHIBIT E

FILED
Superior Court Of California,
Sacramento
Dennis Jones, Executive
Officer
01/10/2008
mrubalcaba
By_____, Deputy
Case Number:
34-2008-00000717-CU-BC-GDS

1 | **DANZ & GERBER**
STEPHEN F. DANZ SBN 68318
2 | 13418 VENTURA BOULEVARD
SHERMAN OAKS, CA. 91423
3 | TELEPHONE: (818) 783-7300
FACSIMILE: (818) 995-7159
4 |
ATTORNEY FOR PLAINTIFF, JENIFFER WERTZ
5 |
6 |
7 |
8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 | FOR THE COUNTY OF SACRAMENTO
10 |
11 |
12 | JENIFFER WERTZ,                                    ) CASE NO.
                                                       )
13 |         Plaintiff,                                ) COMPLAINT FOR DAMAGES AND
                                                       ) DEMAND FOR JURY TRIAL BASED
14 |     vs.                                           ) UPON:
                                                       )
15 | WASHINGTON MUTUAL BANK; FIRST                     ) 1. BREACH OF WRITTEN CONTRACT
     AMERICAN CORPORATION; FIRST                       ) 2. BREACH OF ORAL CONTRACT
16 | AMERICAN EAPPRAISEIT; LENDERS                     ) 3. BREACH OF IMPLIED COVENANT OF
     SERVICES, INC. DBA LSI; FIDELITY                 )    GOOD FAITH AND FAIR DEALING
17 | NATIONAL INFORMATION SERVICES,                    ) 4. INTENTIONAL INTERFERENCE WITH
     INC.; SUSAN RICHTER, AN                           )    PROSPECTIVE ECONOMIC GAIN
18 | INDIVIDUAL; DOES 1-100 INCLUSIVE                  ) 5. TORTIOUS INTERFERENCE WITH
                                                       )    CONTRACT
19 |         Defendants                                ) 6. FRAUD
                                                       ) 7. SLANDER
20 |                                                   ) 8. VIOLATION OF UNFAIR BUSINESS
                                                       )    PRACTICE
21 |                                                   ) 9. INTENTIONAL INFLICTION OF
                                                       )    EMOTIONAL DISTRESS
22 |                                                   ) 10. NEGLIGENT INFLICTION OF
                                                       )     EMOTIONAL DISTRESS
23 |                                                   ) 11. CIVIL CONSPIRACY
                                                       ) 12. DECLARATORY RELIEF
24 |                                                   )
25 |                                                   )        BY FAX
26 |                                                   )
27 |                                                   )
28 |                                                   )

                                    1
          COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | Plaintiff, JENIFFER WERTZ, upon information and belief alleges the following:

2

3 | **GENERAL ALLEGATIONS**

4 | **(AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 100)**

5

6 |     1. Plaintiff, JENIFFER WERTZ (hereinafter "Plaintiff") is a resident of the State of

7 | California, County of Sacramento.

8 |     2. At all times herein mentioned, Defendant, WASHINGTON MUTUAL BANK

9 | (hereinafter "WAMU") is a duly organized corporation licensed to do business in California and

10 | doing business in Sacramento County, State of California.

11 |     3. At all times herein mentioned, Defendants, LENDERS SERVICES, INC.. dba LSI, and

12 | FIDELITY NATIONAL INFORMATION SERVICES, INC. (hereinafter "LSI") are corporations

13 | with a principal place of business in California. LSI is an appraisal management company that

14 | conducts business and appraises real estate in the County of Sacramento and the State of California

15 |     4. At all times herein mentioned, Defendant, FIRST AMERICAN CORPORATION

16 | (hereinafter "FIRST AMERICAN") is an appraisal management company with his principal place

17 | of business in California. Said defendant operates in five primary business sectors: Title Insurance

18 | and Services, Specialty Insurance, Mortgage Information (including real estate appraisal services),

19 | Property Information, and Risk Mitigation and Business Services.

20 |     5. FIRST AMERICAN provides real estate appraisal services to savings and loans, banks,

21 | and other lending professionals through its wholly owned subsidiary, FIRST AMERICAN

22 | eAppraiseIT (hereinafter "eAppraiseIT), an appraisal management with a principal place of

23 | business in California.

24 |     6. Plaintiff provided real estate appraisal services to WAMU directly; and contracted with

25 | LSI, FIRST AMERICAN, and eAppraiseIT to provide real estate appraisers to WAMU and other

26 | clients of LSI, FIRST AMERICAN and eAppraiseIT.

27 |     7. The California Superior Court has jurisdiction over this matter. Plaintiff is a resident of

28 | California and California has an interest in protecting its citizens. Additionally, WAMU, LSI,

**2**

1   FIRST AMERICAN, and eAppraiseIT have sufficient minimum contacts with California such that

2   jurisdiction does not offend traditional notions of fair play and substantial justice. WAMU, LSI,

3   FIRST AMERICAN, and eAppraiseIT's commercial activities have a substantial, continuous, and

4   systematic effect on the State of California. WAMU, LSI, FIRST AMERICAN. and eAppraiseIT

5   by soliciting employment and operating in California, have purposefully directed its activities at

6   California residents and purposefully availed themselves of the privileges of conducting activities

7   within the forum state, invoking the protection and benefits of local laws.

8        8. Defendant SUSAN RICHTER (hereinafter "RICHTER") at all times mentioned and

9   relevant to this action was a Sales Manager employed by WAMU. Plaintiff believes that RICHTER

10  is and at all times relevant to this action a resident of the State of California, County of Placer.

11  Additionally, Plaintiff is informed and believes that RICHTER as a private property owner, acted

12  and interfered as herein alleged with plaintiff's contractual relations in order to promote and

13  enhance RICHTER's private profits. As such, RICHTER acted partly within and partly without her

14  course and scope of employment with WAMU.

15       9. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or

16  associate, of those defendants fictitiously sued as DOES 1 through 100 inclusive and so the Plaintiff

17  sues them by these fictitious names.

18       10. Plaintiff is informed and believes that each of the DOE defendants reside in the State

19  of California and are in some manner responsible for the conduct alleged herein. Upon discovering

20  the true names and capacities of these fictitiously named Defendants, the Plaintiff will amend this

21  complaint to show the true names and capacities of these fictitiously named defendants. 10.Plaintiff

22  is informed and believes and thereon alleges that each defendant aided and abetted, and conspired

23  with, every other defendant to violate various State and Federal laws as alleged in this complaint,

24  resulting in a civil conspiracy to engage in the conduct alleged in causes of action 1-9 of this

25  complaint.

26       11. Plaintiff is licensed as a Real Estate Appraiser by The State of California Office of Real

27  Estate Appraisers. Beginning in 2001 Plaintiff began providing real estate appraisals to WAMU.

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | Plaintiff was receiving approximately two to three appraisal orders each day and earned in excess
2 | of $100,000 a year from WAMU.

3 |    12. In or about July 2006, WAMU began to outsource the management of their appraisal
4 | services to national appraisal management companies. WAMU began outsourcing their appraisal
5 | work through LSI and eAppraiseIT.

6 |    13. On or about July 15, 2006, LSI, through DAMON W. ZEIGLER, Vice Present, Supplier
7 | Management, (hereinafter "ZEIGLER") sent out a letter to California Appraisers, including
8 | Plaintiff inviting Plaintiff to do appraisal work through LSI for WAMU. Plaintiff accepted the offer
9 | of to provide appraisals for WAMU and others, through LSI.

10 |    14. At some time in July 2006, eAppraiseIT invited California Appraisers, including
11 | Plaintiff to do appraisal work through their company for WAMU and other companies. Plaintiff
12 | accepted the offer to provide appraisals through eAppraiseIT.

13 |    15. Plaintiff was considered a preferred real estate vendor which means that Plaintiff's
14 | worked had previously been used and WAMU was familiar with and considered Plaintiff's work
15 | to be proven.

16 |    16. Plaintiff continued to do real estate appraisals for WAMU through LSI until on or about
17 | August 2007 when LSI and WAMU terminated Plaintiff's contract. Plaintiff did appraisal reports
18 | for WAMU directly or for WAMU through LSI for a period of six years. Throughout the six-year
19 | period, Plaintiff's appraisal reports have always met or exceeded industry standards, as well as
20 | WAMU standards.

21 |    17. On or about May 21, 2007, RICHTER informed Plaintiff that a loan for which Plaintiff
22 | had prepared an appraisal report had been declined because Plaintiff had indicated in her report
23 | "declining" market conditions. RICHTER insisted that Plaintiff change her appraisal report to
24 | indicate "stable" market conditions so that the loan could be approved. RICHTER, however did
25 | not provide any evidence to contradict Plaintiff's opinion and the facts supporting the decline of
26 | market conditions. RICHTER then told Plaintiff that if she did not change the appraisal report, that,
27 | she RICHTER would have Plaintiff blocked or prevented from doing any WAMU appraisal work.
28 |

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    18. Shortly after the conversation with RICHTER, Plaintiff contacted LSI and reported that
2   RICHTER had insisted that Plaintiff change an appraisal report to reflect stable market conditions
3   when in fact stable market conditions did not exist.  Plaintiff told an LSI representative that
4   RICHTER had also told Plaintiff that if she did not change her appraisal report, then Plaintiff would
5   be prevented from doing any WAMU appraisal work.  Plaintiff also informed the LSI
6   representative that she believed that direct contact from RICHTER violated several laws,
7   regulations and policies related to an appraiser's independence from influence by anyone, including
8   the entity writing the loan, in this instance WAMU.

9    19. On or about June 18, 2007, LSI informed Plaintiff that Plaintiff had been blocked by
10  WAMU, that WAMU would not give Plaintiff any more appraiser work because of two of
11  Plaintiff's appraisal reports.  These reports were prepared in compliance with the Uniform
12  Standards of Professional Appraisal Practice (hereinafter "USPAP"), and state and federal laws and
13  regulations; and are to be independent of influence by any third parties, including LSI and WAMU.
14  California Administrative Code, Title 10, section 3701 states in relevant part that "Every holder of
15  a license under this part shall conform to and observe the Uniform Standards of Professional
16  Appraisal Practice (USPAP)..." The California Real Estate Bulletin dated Fall October 2006
17  relying on California Administrative Code Title 10, section 3701 states that "All licensed appraisers
18  are required to conform to the requirements of the [USPAP].  The Conduct section of the Ethics
19  Rule in USPAP states 'An appraiser must not accept an assignment that includes the reporting of
20  predetermined opinions and conclusions.'  In addition, each appraisal report must contain a
21  certification signed by the appraiser, stating that his or her compensation for completing the
22  assignment is not contingent upon the development or reporting of a predetermined value or
23  direction in value that favors the cause of the client." According to WAMU, two loans were denied
24  because the appraisal reports prepared by Plaintiff for the loans contained accurate and true
25  information of a market decline, as opposed to including false and deceptive information in the
26  appraisal reports, specifically that the market was stable. Because of Plaintiff's reports, WAMU
27  demanded that LSI and eAppraiseIT not use Plaintiff to do any more appraisals. WAMU prevented
28

5

1  Plaintiff from earning a living as an appraiser because she would not commit fraud and violate

2  federal and state laws including the law to remain independent in preparing her appraisals.

3      20.  Plaintiff refers to and incorporates by reference the Complaint filed by the People of

4  the State of New York against First American Corporation and First American eAppraisal,

5  (Complaint Number 07-10397, United States District Court, Southern District of New York) that

6  sets forth the following:

7      i. that federal and state laws require appraisal independence; and that the Uniform

8          Standards of Professional Appraisal Practice ("USPAP"), requires appraisers to

9          conduct their appraisals independently – "An appraiser must perform assignments

10         with impartiality, objectivity, and independence, and without accommodation of

11         personal interests.  In appraisal practice, an appraiser must not perform as an

12         advocate for any party or issue."

13     ii. 12 Code of Federal Regulations Section 34.45 states in part that "the appraiser

14         shall be engaged directly by the regulated institutions or its agent, and have no

15         direct or indirect interest, financial or otherwise, in the property transactions."

16     iii. The Federal Office of Thrift Supervision provides for appraisal independence

17          as set forth in Title 12, Code of Federal Regulations, section 564.5.

18     iv. The USPAP requires that a State certified or State licensed appraiser may not

19         accept a fee for an appraisal assignment that is contingent upon the appraiser

20         reporting a predetermined estimate, analysis, or opinion or is contingent upon the

21         opinion, conclusion or valuation reached, or upon the consequences resulting from

22         the appraisal assignment.

23     v. The lawsuit filed by the State of New York alleges that the defendants violated

24        federal and state independence requirements with regards to appraisals performed

25        for WAMU, and in doing so deceived borrowers and investors.  In the New York

26        lawsuit WAMU is alleged to have retained eAppraiseIT in 2006 and entered into a

27        contractual agreement which allowed WAMU to challenge an appraiser's

28        conclusion by requesting a "reconsideration of value" ("ROV") when WAMU

**6**

1   disagreed with an appraised value. This is in direct conflict of the State and Federal
2   laws and regulations.

3   vi. The lawsuit also alleges that WAMU had "received complaints from the WAMU
4   production team – **particularly in Northern California**" about eAppraiseIT's
5   failure to include in its appraisal reports the market values that WAMU desired, but
6   were not supported by evidence, assigned all of its Northern California appraisal
7   work to LSI. (Emphasis added)

8   vii. According to the lawsuit, "In February 2007, eAppraiseIT simply capitulated
9   to WAMU's demands. In an email on February 22, 2007, eAppraiseIT's President
10  told senior executives at First American **'we have agreed to roll over and just do**
11  **it.'** He explained that 'we were willing to live with the change if they would back
12  us up with the appraisers and tell them that simply because they are rated as Gold
13  Preferred does not mean that they can grab all the fees. They agreed.' In other
14  words, for the right price in fees, eAppraiseIT was willing to go along with the
15  Proven Panel. (Emphasis added)

16  viii. Also according to the lawsuit, "eAppraiseIT agreed to the Proven Panel with
17  full knowledge that WaMu's loan production staff was selecting appraisers that
18  would 'hit value' and provide higher appraisals. In an email dated March 1, 2007,
19  eAppraiseIT's President told WaMu executives: 'Recently we have been notified
20  that Lending would like us to use more of their 'Proven Appraisers' versus
21  appraisers off our pre-selected appraiser panel.    It seems the amount of
22  Reconsideration of Value (ROV) requests associated with our appraisers far exceeds
23  those initiated when a WaMu proven appraiser completes a file. Said differently,
24  Wamu proven appraisers bring the value in a greater majority of the time with
25  minimal involvement of the vendor, sales and Appraisal Oversight. I am fine with
26  that, of course, and will happily assign Wamu orders to Wamu proven appraisers
27  instead of eAppraiseIT's approved panel appraiser whenever possible." The
28  complaint goes further to say "[w]ith this email, eAppraiseIT's president 'happily'

7

1    agreed to compromise the company's independence and violate the laws governing

2    appraiser independence."

3    ix. Defendants buckled under WAMU's pressure and comprised the independence

4    and integrity of the appraisers; and consequently according to lawsuit, Defendants

5    have engaged in fraudulent or illegal business practice and deceptive acts or

6    practices

7

8    21. Plaintiff is requesting that pursuant to California Evidence Code section 452 (d) that this

9    court take judicial notice of the New York Attorney General's Complaint. (Complaint Number 07-

10    10397, United States District Court, Southern District of New York). Section 452 (d) states in

11    relevant part that the "Judicial notice may be taken of records of (1) any court of this state or (2)

12    any court of record of the United States or of any state of the United States.

13    22. Plaintiff alleges that WAMU complained that the appraised values were too low to

14    permit loans to close. If WAMU could not get the appraisal values it wanted, it threatened to

15    terminate the services of the appraisal management company. Because WAMU could not get the

16    appraised values it wanted from Plaintiff, WAMU prevented Plaintiff from doing any real estate

17    appraisal work for WAMU, resulting in a loss of annual income to Plaintiff in excess of $100,000.

18    23. On or about June 18, 2007, LSI informed Plaintiff that WAMU was not satisfied with

19    two appraisal reports that Plaintiff had prepared and wanted Plaintiff to revise her appraisal reports

20    to indicate inflated market conditions. When Plaintiff failed to do so, her services as an appraiser

21    to WAMU and with LSI was terminated.

22    24. After June 18, 2007, Plaintiff attempted to get reinstated as a preferred appraiser with

23    WAMU. Specifically, Plaintiff contacted WAMU to inquire about allocation of appraisal

24    assignments since Plaintiff was no longer receiving any appraisal work from WAMU.

25    25. On or about July 6, 2007, Plaintiff received a letter from JILL PETERSEN, First Vice

26    President, Manager Operations, Appraisal Oversight for WAMU, (hereinafter "PETERSEN")

27    informing Plaintiff that WAMU would not compromise an appraiser's integrity by asking an

28    appraiser to falsify data and that an appraiser would not be denied work by WAMU for maintaining

1    integrity and ensuring accurate appraisal methodology and reporting. However, this is exactly what

2    happened to Plaintiff and were the very reasons Plaintiff was terminated from doing work with

3    WAMU and LSI.

4          26. Plaintiff has not received any appraiser work from WAMU since May 2007. Plaintiff

5    has not received any appraiser work from LSI since June 2007; and has not received any appraiser

6    work from FIRST AMERICAN and eAppraiseIT since June 2007. All of Plaintiff's work stopped

7    because Plaintiff refused to compromise her integrity, independence, and refused to violate the laws

8    and include false and deceptive facts about existing market conditions.

9          27. Each of the acts complained of herein was performed, ratified, and authorized by

10   officers, directors, or managing agents of each named defendant and were done with malice,

11   oppression, and fraud thereby entitling plaintiff to punitive and exemplary damages.

12

13                           **FIRST CAUSE OF ACTION**

14                        **BREACH OF WRITTEN CONTRACT**

15          **(AGAINST DEFENDANTS LSI, FIRST AMERICAN, eAppraiseIT, AND DOE**

16                              **DEFENDANTS 1-100)**

17

18          28. Plaintiff re-alleges the information set forth in Paragraphs 1-27 above and incorporates

19   those paragraphs as though fully stated in this cause of action.

20          29. On or about August 2006, on information and belief, Plaintiff entered into a contract

21   with Defendant eAppraiseIT to provide real estate appraisers to clients of eAppraiseIT under a Fee

22   Appraiser Agreement.

23          30. Under the contract with eAppraiseIT, Plaintiff was to provide and did in fact provide

24   real estate appraisals for WAMU through eAppraiseIT. Plaintiff is informed and believes that

25   Defendant has the original contract in its possession and control and will amend this complaint to

26   attached same upon receipt of said contract.

27          31. The terms of the contract provided that all participants in the lending industry, including

28   appraisers, appraisal management companies, lenders, and mortgage brokers have the ethical

                                          **9**

1  obligations to fully support the intent and spirit of USPAP; and that the purpose and intent of the
2  USPAP must be adhered to. The terms of the contract also provided that appraisers would not be
3  subjected to any undue influence or coercion toward a market value that favors a client's [in this
4  case WAMU] objective.

5      32. Defendants breached the contract on or about June 2007 by terminating the agreement
6  and not assigning Plaintiff any appraisal work with WAMU or any other client of FIRST
7  AMERICAN or eAppraiseIT. The termination occurred because WAMU, in violation of the
8  contract terms, of the USPAP, and State and Federal laws, wanted Plaintiff to change her appraisal
9  reports to favor WAMU and when Plaintiff refused to do so and chose to honor her legal and
10  ethical responsibilities, eAppraiseIt terminated Plaintiff's contract to provide real estate appraisal
11  services

12      33. Plaintiff is entitled to damages for Defendant's breach of contract pursuant to California
13  Civil Code Section 3300 and all other applicable codes, rules, statues, and regulations, in an amount
14  which will compensate Plaintiff for all of the detriment proximately caused thereby, or which the
15  ordinary course of things, would be likely to result therefrom.

16      34. On or about August 2006, Plaintiff entered into an Independent Contractor Agreement
17  contract with Defendant LSI, (Attached hereto and incorporated in this Complaint for Damages as
18  Exhibit 1 is the contract between Plaintiff and LSI)

19      35. The contract provides that all participants in the lending industry, including appraisers,
20  appraisal management companies, lenders, and mortgage brokers have the ethical obligations to
21  fully support the intent and spirit of USPAP; and that the purpose and intent of the USPAP must
22  be adhered to. The terms of the contract also provide that appraisers would not be subjected to any
23  undue influence or coercion toward a market value that favors a client's [in this case WAMU]
24  objective.

25      36. The terms of the contract also provided that each and every appraisal assigned to
26  Plaintiff be done in accordance to applicable law, regulation or standard (including but not limited
27  to USPAP.

28

10

37. Defendants breached the contract on or about June 2007, by terminating Plaintiff's services with Defendant and not assigning Plaintiff any appraisal work with WAMU or any other client of LSI. The termination occurred because WAMU, in violation of LSI's contract terms, of the USPAP, and of State and Federal laws wanted Plaintiff to change her appraisal reports to favor WAMU and when Plaintiff refused to do so and chose to honor her legal and ethical responsibilities, LSI terminated Plaintiff's services.

38. Plaintiff is entitled to damages for Defendant's breach of contract pursuant to California Civil Code Section 3300 and all other applicable codes, rules, statues, and regulations, in an amount which will compensate Plaintiff for all of the detriment proximately caused thereby, or which the ordinary course of things, would be likely to result therefrom.

**SECOND CAUSE OF ACTION**

**BREACH OF ORAL CONTRACT**

**(AS TO DEFENDANTS, FIRST AMERICAN, eAppraiseIT, LSI AND DOES 1-100)**

39. Plaintiff re-alleges the information set forth in Paragraphs 1-38 above and incorporates those paragraphs as though fully stated in this cause of action.

40. On or about August 2006, Plaintiff entered into an oral contract with Defendants FIRST AMERICAN and eAppraiseIT to provide real estate appraisers to Defendants' clients.

41. Under the contract with FIRST AMERICAN and eAppraiseIT, Plaintiff provided real estate appraisals through Defendants and was compensated for her work.

42. The real estate appraisal reports prepared by Plaintiff for Defendants FIRST AMERICAN and eAppraiseIT complied with the USPAP, state and federal law. Defendants accepted these appraisals reports.

43. On or about June 2007, defendants FIRST AMERICAN and eAppraiseIT breached its oral contract with Plaintiff when they failed to give Plaintiff any appraisal work.

44. On or about August 2006, Plaintiff entered into an oral contract with Defendants with LSI.

11

1  45. Under the contract with LSI, Plaintiff provided real estate appraisals through Defendants

2  and was compensated for her work.

3  46. The real estate appraisal reports prepared by Plaintiff for Defendants LSI complied with

4  the USPAP, state and federal law.  Defendants accepted these appraisals reports.

5  47. On or about June 2007, defendant LSI breached its oral contract with Plaintiff when they

6  failed to give Plaintiff any appraisal work.

7  48. Defendants FIRST AMERICAN, eAppraiseIT and LSI and Does 1 through 100 refused

8  to give Plaintiff real estate appraisal work because Plaintiff refused to violate the USPAP, state and

9  federal law.  Plaintiff would not be influenced by third parties and would not change her appraisal

10  reports to indicate "stable market conditions" when such conditions did not exist.

11  49. Plaintiff reasonably relied on the fact that if she prepared real estate appraisal reports

12  in compliance with the USPAP, state and federal law, then she would continue to receive work

13  from Defendants.  However, Defendants breached the contract when they ceased giving Plaintiff

14  any real estate appraisal work.

15  50. Plaintiff is entitled to damages for Defendant's breach of contract pursuant to California

16  Civil Code Section 3300 and all other applicable codes, rules, statues, and regulations, in an amount

17  which will compensate Plaintiff for all of the detriment proximately caused thereby, or which the

18  ordinary course of things, would be likely to result therefrom.

19

20  **THIRD CAUSE OF ACTION**

21  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

22  **(AGAINST WAMU, FIRST AMERICAN, eAppraiseIT, LSI AND DOE DEFENDANTS**

23  **1-100)**

24

25  51. Plaintiff re-alleges and incorporates Paragraphs 1-50 above as though fully set forth

26  herein.

27  52. California law recognizes an implied covenant of good faith and fair dealing in every

28  contract.  The parties hereto have an express contractual relationship and based thereon Plaintiff

12

1  pleads this breach of covenant. The covenant is to the effect that neither party to the contract will

2  breach the terms of the contract, act in bad faith or engage in any conduct intended to make the

3  performance of the contract difficult or impossible.

4       53. Defendants FIRST AMERICAN and eAppraiseIT further breached the covenant of

5  good faith and fair dealing on or about June 2007 by terminating Plaintiff's services and not giving

6  her appraisal work to do for WAMU or other entities or businesses that contracted for appraisal

7  services with FIRST AMERICAN and eAppraiseIT.

8       54. Defendant LSI further breached the covenant of good faith and fair dealing on or about

9  June 2007 by terminating Plaintiff's services and not giving her appraisal work to do for WAMU

10  or other entities or businesses that contracted for appraisal services with LSI.

11       55. The above breaches have deprived the Plaintiff; and continue to deprive the Plaintiff of

12  the benefit of her written contractual agreement with Defendants and constitute a breach of the

13  covenant of good faith and fair dealing.

14       56. As a result of Defendants' breaches of the covenant of food faith and fair dealing,

15  Plaintiff has been damaged in an amount according to proof.

16

17                        **FOURTH CAUSE OF ACTION**

18     **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC GAIN**

19                  **(AGAINST ALL DEFENDANTS)**

20

21       57. Plaintiff re-alleges the information set forth in paragraphs 1-56 above, and incorporates

22  those paragraphs as though fully stated in this cause of action.

23       58. Plaintiff had an economic relationship with FIRST AMERICAN, eAppraiseIT, and LSI.

24  Those relationships earned Plaintiff in excess of $100,000 a year. Plaintiff, as a preferred vendor

25  with a good reputation in the appraisal community, had the probability of future economic benefits,

26  including future substantial earnings.

27       59. Defendants WAMU, RICHTER, and DOES 1 through 100; and each of them

28  intentionally did acts designed to disrupt Plaintiff's relationship with FIRST AMERICAN,

13

1   eAppraiseIT, and LSI, including the deliberate and independently illegal acts of communicating

2   and publishing false facts about Plaintiff's work product, attempting to coerce Plaintiff into

3   committing illegal acts by ordering Plaintiff to include fraudulent information in her appraisal

4   reports, and inducing AMERICAN, eAppraiseIT, and LSI to breach their respective contracts with

5   Plaintiff. Plaintiff fully incorporates paragraph 60 of this complaint herein. When Plaintiff failed

6   to do what WAMU, RICHTER and other unnamed defendants wanted her to do. Plaintiff services

7   with FIRST AMERICAN, eAppraiseIT, and LSI were terminated and Plaintiff lost her rights to

8   prospective economic gain.

9        60. Defendants WAMU, RICHTER, and DOES 1 through 100 conduct was willful, wanton,

10  malicious, and with reckless disregard for the rights of Plaintiff so as to justify an award of

11  exemplary and punitive damages. Plaintiff further alleges that RICHTER, acting for her own

12  personal benefit and outside the scope of her employment, interfered with plaintiff's expectation

13  of future economic benefit with WAMU.

14       61. As a proximate result of WAMU, RICHTER, and other unnamed defendants' actions,

15  Plaintiff has been deprived of a future economic benefit; Plaintiff has had her relationship with

16  FIRST AMERICAN, eAppraiseIT, and LSI terminated.  Plaintiff has suffered loss of income,

17  deferred income and other employment-related benefits in an amount unknown at this time, but

18  according to proof at the time of trial.

19       62. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues

20  to damages, including present and future economic damages in an amount unknown at this time,

21  but according to proof at the time of trial.

22       63. As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had

23  to employ the services of attorneys to pursue her legal rights, to Plaintiff's damage in an amount

24  unknown at this time but according to proof at the time of trial.

25  ///

26  ///

27  ///

28  ///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**FIFTH CAUSE OF ACTION**

**TORTIOUS INTERFERENCE WITH CONTRACT**

**(AGAINST DEFENDANTS WAMU, RICHTER AND DOES 1-100)**

64. Plaintiff re-alleges the information set forth in paragraphs 1-63 above, and incorporates those paragraphs as though fully stated in this cause of action.

65. Plaintiff had an economic relationship with Defendants; including a contract with FIRST AMERICAN, eAppraiseIT, and LSI to provide real estate appraisals to WAMU and other entities. Those contracts and economic relationships earned Plaintiff in excess of $100,000 a year.

66. Plaintiff, as a preferred vendor with a good reputation in the appraisal community, had the probability of future economic benefits, including future substantial earnings.

67. WAMU, RICHTER, and unnamed defendants tortuously interfered with Plaintiff's contract, contract rights, and contract benefits with LSI, FIRST AMERICAN, and eAppraiseIT by demanding that Plaintiff be removed from the list of appraisers to provide appraisal services to WAMU. Consequently, LSI, FIRST AMERICAN, and eAppraiseIT acquiesced to WAMU's pressure and terminated Plaintiff's services.

68. Plaintiff had a contract with Defendants LSI, FIRST AMERICAN, and eAppraiseIT, and each of them; and Plaintiff had a beneficial business relationship with Defendants LSI, FIRST AMERICAN, and eAppraiseIT, and each of them.

69. WAMU, RICHTER, and unnamed defendants knew of the existence of the contract between Plaintiff and FIRST AMERICAN and eAppraiseIT. WAMU, RICHTER and unnamed defendants knew that a contract existed between Plaintiff and LSI.

70. WAMU, RICHTER, and unnamed defendants were aware that Plaintiff had a beneficial business relationship with FIRST AMERICAN, eAppraiseIT, and LSI and each of them.

71. WAMU, RICHTER, and unnamed defendants did not have any authority to induce the FIRST AMERICAN, eAppraiseIT, and LSI to breach the contract and/or beneficial relationship with Plaintiff.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    72. WAMU, RICHTER, and other unnamed defendants, and each of them by their actions

2  and omissions as set forth in this Complaint, and as set forth in the allegations in the New York

3  State complaint, induced FIRST AMERICAN, eAppraiseIT, LSI and other unnamed defendants

4  to breach the contract or the business relationship with Plaintiff.

5           a. On page 17 of the New York Complaint, alleges that eAppraiseIT did not "push

6           back" and agreed to use WAMU's Proven Appraiser Panel, acceding to WAMU's

7           demand for complete control over the Proven Panel and the reconsideration of value

8           process.

9           b. eAppraiseIT's President acknowledged that WAMU violated several laws,

10          however, eAppraiseIT did not "push back" and acquiesced to WAMU,

11    "In short, the issues are using their designated appraisers as mandated by the WaMu

12  production force at 20% gross margin and bypassing our [eAppraiseIT] panel. We view this as a

13  violation of the OCC [Office of the Comptroller of the Currency], OTS, FDIC [Federal Deposit

14  Insurance Corporation] and USPAP influencing regulation."

15    73. WAMU, RICHTER and unnamed defendants intentionally or with total disregard did

16  acts to induce the breach of Plaintiff's contract and terminate the beneficial relationship. All the

17  tortuous actions and omissions of WAMU, RICHTER and unnamed defendants and each of them

18  were done with the willful and malicious intent to damage Plaintiff.

19    74. WAMU, RICHTER and unnamed defendants conduct was willful, wanton, malicious,

20  and with reckless disregard for the rights of Plaintiff so as to justify an award of exemplary and

21  punitive damages.

22    75. As a proximate result of WAMU, RICHTER, and unnamed defendants actions, Plaintiff

23  has suffered loss of income, deferred income and other employment-related benefits in an amount

24  unknown at this time, but according to proof at the time of trial.

25    76. As a further proximate result of WAMU, RICHTER, and unnamed defendants' actions,

26  Plaintiff has suffered and continues to suffer damages, including present and future economic

27  damages, distress, and anxiety, in an amount unknown at this time, but according to proof at the

28  time of trial.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    77. As a further proximate result of the aforementioned wrongful conduct by WAMU,

2    RICHTER and other unnamed defendants, and each of them, Plaintiff has had to employ the

3    services of attorneys to pursue her legal rights, to Plaintiff's damage in an amount unknown at this

4    time but according to proof at the time of trial.

5

6                        **SIXTH CAUSE OF ACTION**

7                        **FRAUD (COMMON LAW AND**

8    **STATUTORY CIVIL CODE SECTIONS 1572, 1709 & 1710)**

9                  **(AGAINST ALL DEFENDANTS AND DOES 1-100)**

10

11    78. Plaintiff re-alleges and incorporates Paragraphs 1-77 above as though fully set forth

12    herein.

13    79. Plaintiff is informed and believes that Defendants deceitfully failed to follow the laws

14    of the State of California, including maintaining the independence of the appraisal reports and

15    therefore mislead Plaintiffs, and all other similarly situated employees. Plaintiff reasonably relied,

16    to her detriment, on Defendants assurance that it would comply with all such laws. However,

17    Defendants failure to follow the laws resulted in damages to Plaintiffs. Plaintiff also believed as

18    a licensed real estate appraiser, that Defendants would allow and support Plaintiff's actions to

19    comply with the law and conduct appraisals truly independent of Defendants' demands, influence

20    or suggestions.

21    80. Plaintiff brings this cause of action for Fraud and Concealment because Defendants, by

22    and through its management, supervisors, and representatives, willfully deceived Plaintiff into

23    believing that Defendants would comply with all federal and state laws in  maintaining the

24    independence and integrity of the appraisal process and allow Plaintiff to maintain her license,

25    reputation and comply with the law in remaining totally complying with the law. By way of

26    example only, and not limitation, plaintiff alleges that LSI and First American in their written

27    contracts with plaintiff falsely alleged and implied that plaintiff "shall serve as an independent

28    appraiser..."; that each defendant would comply with all "applicable statutes, rules, and regulations

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   relating to your business", with the implication that defendants of necessity also complied with all

2   such laws, when that was not the truth; that defendants would provide "quality control measures

3   and periodic auditing requirements" with the understanding that said controls would necessarily

4   include defendant's own compliance with these same laws and rules, when such was not the case.

5   (Examples from LSI Contract). Plaintiff further alleges on information and belief that other frauds

6   and concealments were engaged in by each defendant at or near the time of entering and during the

7   performance of each contract attached as an exhibit to this complaint.

8       81. Plaintiff alleges that Defendants, management, supervisors, or representatives of

9   Defendants concealed the material facts referred herein, with the intention to deceive Plaintiff.

10  Defendants intended to induce Plaintiff by representing that they were employers that complied

11  with State and federal laws and regulations. Plaintiff relied on defendant's representations and

12  concealments and would not have so relied had she known the truth.

13      82. Plaintiff further alleges that the conduct referred to herein violates California Civil Code

14  Sections 1572, 1709 and 1710, as well as common law principles of fraud and concealment.

15      83. As a direct, foreseeable, and proximate result of Defendants' actions, and each of their

16  actions, including Plaintiff's reliance on the misrepresentation, as alleged in this cause of action,

17  which were intentional, malicious, oppressive, and made in a bad faith manner in an attempt to vex,

18  injure, annoy, and /or willfully and consciously disregard Plaintiff's rights by taking or failing to

19  take the actions alleged in this cause of action, Plaintiff prays for punitive damages against all the

20  Defendants, and each of them, in a sum within the jurisdiction of this court, to be ascertained,

21  according to proof, in a sufficiently large amount to punish said Defendants, deter future conduct

22  by said Defendants and other behaving like them, and to make an example of said Defendants.

23      84. The conduct of Defendants described hereinabove, and particularly the manner in which

24  Plaintiff's rights were violated and the illegal conditions defendants placed on Plaintiff's

25  employment resulting in termination of her employment, were outrageous and done with malice,

26  fraud, and oppression and with conscious disregard for Plaintiff's rights and with the intent, design,

27  and purpose of injuring Plaintiff. Defendants, through its agents, supervisors, and/or managers

28  authorized, condoned and/or ratified the unlawful conduct described hereinabove. By reason

**18**

1 | thereof, Plaintiff is entitled to an award of punitive damages in an amount according to proof at the

2 | time of trial.

3

4 | ### SEVENTH CAUSE OF ACTION

5 | ### SLANDER (Common Law, Civil Code 46(3))

6 | ### (AGAINST DEFENDANTS WAMU, FIRST AMERICAN, eAppraiseIT, LSI, RICHTER

7 | ### AND DOE DEFENDANTS 1-100)

8

9 |     85. Plaintiff re-alleges and incorporates Paragraphs 1-84 above as though fully set forth

10 | herein.

11 |     86. Plaintiff is informed and believes, and thereon alleges that, Plaintiff was terminated

12 | based on fabricated and highly slanderous statements that were maliciously published to persons

13 | who had no business-related reasons to hear those statements.

14 |     87. Plaintiff is further informed and believes, and thereon alleges Plaintiff was terminated

15 | because she complied with the laws, regulations and policies to conduct independent appraisals

16 | without being influenced by Defendants.

17 |     88. The false and disparaging statements made by Defendants concerning Plaintiff stated

18 | that Plaintiff did not have evidence to support her appraisals regarding the market conditions. In

19 | fact Plaintiff did have evidence to support the fact that market conditions were not stable. These

20 | statements served to further damage both Plaintiff's reputation and cause severe emotional distress

21 | and mental anguish. Pursuant to Civil Code 46 (3), slander is a false and unprivileged publication,

22 | orally uttered, and also communications by radio or any mechanical or other means which tends

23 | directly to injure him/her in respect to his/her office, profession, trade or business, either by

24 | imputing to him general disqualification in those respects which the office or other occupation

25 | peculiarly requires, or by imputing something with reference to his/her office, profession, trade, or

26 | business that has a natural tendency to lessen its profits.

27 |     89. Plaintiff is informed and believes, and thereon alleges, that she will be required and

28 | compelled to republish the information, as described in herein, in the future and said information

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    will be a material factor in keeping Plaintiff from seeking comparable employment elsewhere.

2    Plaintiff will be forced to republish slanderous statements by defendants each time she interviews

3    with a prospective employer and the reason for not receiving work from Defendants is discussed.

4          90. Plaintiff is further informed and believes and thereon alleges that she will be required

5    to self-publish to future employers that she was terminated as an appraiser with Defendants for not

6    writing an appraisal in compliance with USPAP and other laws, which is not true. Such statements

7    violate Civil Code 46(3), in that said statement tends to injure Plaintiff in her business or

8    profession.

9          91. As a direct and proximate result of the bad faith actions of Defendants, Plaintiff has

10   suffered loss of reputation, general and pecuniary losses, and Plaintiff seeks all damages allowed

11   by law, according to proof at time of trial.

12         92. Defendants acted in a grossly reckless, and/or intentional, malicious, and bad faith

13   manner when they willfully violated the statutes enumerated in this cause of action, and for that

14   reason, Plaintiff is entitled to punitive damages against said Defendants, and each of them, in an

15   amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently

16   high enough to punish said Defendants, deter them from engaging in such conduct again, and to

17   make an example of them to others.

18

19                           **EIGHTH CAUSE OF ACTION**

20       **VIOLATION OF UNFAIR BUSINESS PRACTICE ACT (B &P 17200, et seq)**

21       **(AGAINST WAMU, FIRST AMERICAN, eAppraiseIT, LSI AND DOES 1-100)**

22

23         93. Plaintiff re-alleges the information set forth in Paragraphs 1-92 above, and incorporates

24   these paragraphs into this cause of action as if they were fully alleged herein.

25         94. Plaintiff brings this claim on her own behalf against Defendants pursuant to Business

26   and Professional Code Section 17203. At all times mentioned herein Defendants were and are

27   subject to the requirements of this Unfair Competition Law (California Business and Professions

28   Code Section 17200 et. seq.), which prohibits unlawful, unfair or fraudulent business practices.

1    95. Defendants' conduct as alleged above, including not giving Plaintiff appraisal work
2    based on Plaintiff's decision to comply with all state and federal laws and regulations, Defendants
3    have violated the California Business and Professions Code Section 17200 et. seq. which prohibits
4    unlawful, unfair or fraudulent business practices and amounts to violations of Unfair Competition
5    Law because the unlawful practices occurred in connection with Defendants' deceptive and
6    misleading advertising in California.

7    96. Defendants' violations of the law, as alleged above, constitute business practices
8    because they were done repeatedly over a substantial period of time.  These practices were the
9    result of policies that worked to Plaintiff and others' detriment as well as to the detriment of other
10   entities.

11   97. Plaintiff is informed and believes that such unlawful, unfair and/or fraudulent conduct
12   continues to this day and Defendants will continue such activity in the future unless they are
13   enjoined from doing so.

14   98. As a direct and proximate result of the aforementioned unlawful conduct, Defendants'
15   owe damages to Plaintiff in amount according to proof at time of trial.  Plaintiff therefore seeks
16   money restitution on behalf of herself and others.

17   99. Furthermore, Plaintiff and others are entitled to relief, including full restitution and/or
18   disgorgement of all revenues, earnings and profits which have been retained by Defendants as a
19   result of the business acts and practices alleged above.

20   100. Additionally Plaintiff and others are entitled to an injunction preventing Defendants
21   from continuing to engage in such illegal practices.

22   101. Plaintiff also requests an award of attorneys' fees and costs in connection with this
23   litigation in an amount to be established by proof at time of trial.

24   ///
25   ///
26   ///
27   ///
28   ///

1        NINTH CAUSE OF ACTION

2    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

3    (AGAINST WAMU, FIRST AMERICAN, eAppraiseIT, LSI, RICHTER,

4              AND DOES 1 THROUGH 100)

5

6        102. Plaintiff re-alleges the information set forth in Paragraphs 1-101 above and

7    incorporates those paragraphs as though fully stated in this cause of action.

8        103. Defendants' conduct, as thoroughly alleged above, was and is extreme and outrageous

9    conduct amounting to intentional infliction of emotional distress, which was intended to and/or was

10   done in conscious disregard of the probability of causing Plaintiff to suffer severe emotional

11   distress.

12       104. Defendants' outrageous conduct includes trying to induce Plaintiff to violate federal

13   and state laws and regulations; and to deceive customers that are relying on independent appraisals;

14   and then terminating Plaintiff in retaliation for performing her job in compliance with the law.

15       105. By the actions described herein, Defendants intentionally and with conscious disregard,

16   attempted to strip Plaintiff of her dignity and reputation among her peers and throughout the

17   industry.

18       106. As a proximate result of Defendants' aforementioned wrongful conduct, Plaintiff has

19   suffered and continues to suffer grave emotional distress, including embarrassment, humiliation,

20   and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof

21   at the time of trial.

22       107. As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had

23   to employ the services of attorneys to pursue her legal rights, to Plaintiff's damage in an amount

24   unknown at this time but according to proof at the time of trial.

25       108. Defendants' conduct was willful, wanton, malicious, and with reckless disregard for

26   the rights of Plaintiff so as to justify an award of exemplary and punitive damages.

27

28

1    109. As a proximate result of Defendants' actions, Plaintiff has suffered loss of income,

2    deferred income and other employment-related benefits in an amount unknown at this time, but

3    according to proof at the time of trial.

4    110. As a further proximate result of Defendants' actions, Plaintiff has suffered and

5    continues to suffer depression and anxiety all to Plaintiff's damage in an amount unknown at this

6    time, but according to proof at the time of trial.

7    111. As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had

8    to employ the services of attorneys to pursue her legal rights, to Plaintiff's damage in an amount

9    unknown at this time but according to proof at the time of trial.

10

11    **TENTH CAUSE OF ACTION**

12    **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

13    **(AGAINST DEFENDANTS WAMU, RICHTER, FIRST AMERICAN, eAppraiseIT, LSI,**

14    **AND DOES 1-100)**

15

16    112. Plaintiff re-alleges the information set forth in Paragraphs 1-111 above and

17    incorporates those paragraphs as though fully stated in this cause of action.

18    113. Defendants' conduct, as thoroughly alleged above, was and is extreme and outrageous

19    conduct amounting to negligent infliction of emotional distress, which was intended to and/or was

20    done in conscious disregard of the probability of causing Plaintiff to suffer severe emotional

21    distress.

22    114. Defendants' outrageous conduct includes trying to induce Plaintiff to violate federal

23    and state laws and regulations; and to deceive customers that are relying on independent appraisals;

24    and then terminating Plaintiff in retaliation for performing her job in compliance with the law.

25    115. By the actions described herein, Defendants negligently stripped Plaintiff of her dignity

26    and reputation among her peers and throughout the industry.

27    116. As a proximate result of Defendants' aforementioned wrongful conduct, Plaintiff has

28    suffered and continues to suffer grave emotional distress, including embarrassment, humiliation,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof

2  at the time of trial.

3  117. As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had

4  to employ the services of attorneys to pursue her legal rights, to Plaintiff's damage in an amount

5  unknown at this time but according to proof at the time of trial.

6  118. Defendants' conduct was willful, wanton, malicious, and with reckless disregard for

7  the rights of Plaintiff so as to justify an award of exemplary and punitive damages.

8  119. As a proximate result of Defendants' actions, Plaintiff has suffered loss of income,

9  deferred income and other employment-related benefits in an amount unknown at this time, but

10  according to proof at the time of trial.

11  120. As a further proximate result of Defendants' actions, Plaintiff has suffered and

12  continues to suffer depression and anxiety all to Plaintiff's damage in an amount unknown at this

13  time, but according to proof at the time of trial.

14  121. As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had

15  to employ the services of attorneys to pursue her legal rights, to Plaintiff's damage in an amount

16  unknown at this time but according to proof at the time of trial.

17

18  **ELEVENTH CAUSE OF ACTION**

19  **CIVIL CONSPIRACY TO VIOLATE CAUSES OF ACTION 1-9**

20  **(AGAINST ALL DEFENDANTS AND DOES 1 TO 100)**

21

22  122. Plaintiff re-alleges the information set forth in paragraphs 1-121 above, and

23  incorporates those paragraphs as though fully stated in this cause of action.

24  123. At all times mentioned herein, each of the Defendants knowingly conspired with each

25  co-defendant for an unlawful purpose, and for a lawful purpose to be committed by an unlawful

26  means, and at all times acted in furtherance of said conspiracy. Based upon the allegations set forth

27  herein, each Defendant is jointly and severally liable for the actions and omissions of each other

28  defendant.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    124. The conduct alleged herein as carried out by the Defendants did in fact cause and
2    continues to cause Plaintiff to suffer sever emotional distress.  Defendants and their managerial
3    agents acted deliberately for the purpose of injuring Plaintiff as alleged above. Defendants, by and
4    through their managing agents and employees, further acted intentionally and unreasonably because
5    they knew and/or should have known that their conduct was likely to result in sever mental distress.
6    As a proximate result of said conduct, Plaintiff has suffered and continues to suffer pain,
7    discomfort, humiliation, anxiety, embarrassment and emotional distress and will continue to suffer
8    said emotional distress in the future in an amount according to proof.

9    125. Because the acts undertaken toward Plaintiff by Defendants were carried out by
10    managers, officers, and/or agents acting in a deliberate, cold, callous, malicious, oppressive and
11    intentional manner in order to injure and damage the Plaintiff, Plaintiff requests that assessment of
12    punitive damages against Defendants in an amount appropriate to punish and make an example of
13    Defendants.

14

15                               **TWELFTH CAUSE OF ACTION**
16                               **DECLARATORY RELIEF**
17    **(AGAINST DEFENDANTS WAMU, RICHTER, FIRST AMERICAN, eAppraiseIT, LSI,**
18                               **AND DOES 1-100)**

19

20    126. Plaintiff re-alleges the information set forth in paragraphs 1-125 above, and
21    incorporates those paragraphs as though fully stated in this cause of action.

22    127. The acts or omissions of Defendants and each of them, as set forth in this Complaint
23    were illegal acts.

24    128. Plaintiff is requesting that Defendants and each of them be enjoined from requiring any
25    appraiser from committing illegal acts, including but not limited to pressuring and influencing an
26    appraiser to include information in an appraisal report to favor Defendants; and to allow the
27    appraiser to comply with the USPAP, the OTS, and all state and federal laws.

28

1    WHEREFORE, Plaintiff prays for judgment as follows:

2    1. For economic and special damages in an amount unknown at this time, but according to

3    proof at trial;

4    2. For non-economic and general damages in an amount unknown at this time, but according

5    to proof at trial;

6    3. For punitive damages as allowed by law and according to proof at trial;

7    4. For pre-judgment interest at the prevailing legal rate;

8    5. For reasonable attorneys' fees and costs as allowed by law;

9    6. For declaratory relief to enjoin Defendants from engaging in the illegal conduct alleged

10   herein; and

11   7. For such other and further relief as this Court deems just and proper.

12

13   DATED: JANUARY 9, 2008              DANZ & GERBER

14

15                                      BY: _____
16                                      STEPHEN F. DANZ
                                        ATTORNEY FOR PLAINTIFF,
                                        JENNIFER WERTZ
17

18

19

20

21

22

23

24

25

26

27

28

26
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL



700 Cherrington Parkway
Coraopolis, PA 15108-4306
Tel 412 299 4000
Tel 800 722 0300

Re:    Independent Contractor Agreement

Dear Appraiser:

This Letter Agreement ("Agreement") confirms the terms and conditions of the agreement between you and Lender's Service, Inc ("LSI"), concerning your provision of certain collateral assessment services that may be requested by LSI.

LSI enters into this Agreement with you based on your experience as a licensed or certified appraiser in your state(s) of operation. You shall serve as an independent fee appraiser on LSI's network of independent suppliers and shall provide services as requested by LSI from time to time. This Agreement should in no way be construed as a guarantee or promise on the part of LSI, whether actual or implied, of a continuing relationship between us, of a minimum level of appraisal orders, of a minimum level of revenue or of a consistent or stable volume of orders. Order assignments shall be made by LSI in its sole discretion, based on whatever factors it may deem relevant from time to time. Your duties under this Agreement shall include, but shall not be limited to doing the following:

(a) Receive and forward immediately to LSI, at the address or telephone number designated by LSI, (1) all third party correspondence, mail, telephone inquiries, notices, and other communications of every kind and nature whatsoever which are addressed or otherwise directed to LSI; and (2) all funds received by you from any source in connection with transactions in which LSI is involved or which relate to any collateral assessment order solicited or negotiated by or on behalf of LSI,

(b) Comply, and shall cause any and all employees to comply, with all applicable statutes, rules, and regulations relating to your business in any and all jurisdictions in which you conduct business, including but not limited to the Uniform Standards of Professional Appraisal Practice ("USPAP"), and FIREAA Title XI. You shall also maintain and shall cause any and all employees to maintain, all licenses, certifications, and permits required in connection with your appraisal business Attached as Exhibit A is a full and complete list of all appraisers (and their license numbers) who work in your firm as of the date of this letter. You agree to notify LSI immediately of (a) any and all changes in the identity and/or license numbers of your appraiser staff; or (b) any change in your firm name, and

(c) Prepare each and every appraisal assigned to you by LSI in accordance with applicable law, regulation or standard (including but not limited to USPAP as it may have been adopted in your jurisdiction) and within the timeframes specified by LSI. You will cooperate with LSI in connection with all matters arising out of your provision of services hereunder, including but not limited to LSI's quality control measures and periodic auditing requirements. You may not subcontract to any third party any of the appraisal services to be performed by you under this Agreement, without LSI's prior written consent.

EXHIBIT 1

Subject to your provision of services acceptable to LSI, you shall be entitled to compensation on a fee for service basis in accordance with the fee schedule agreed upon between you and LSI from time to time. You agree to comply with and abide by all LSI billing and payment policies and procedures in effect from time to time during the term of this Agreement It is understood and agreed that you and your employees are independent contractors and not employees or agents of LSI or any affiliate thereof and nothing in this Agreement shall be construed to the contrary. LSI is not responsible for payment of any of your salaries, benefits, expenses, insurance, taxes, withholding, workers compensation, or any other employee costs or benefits, all of which shall be your sole responsibility. Except as instructed by LSI, under no circumstances will you attempt to collect any fees from any LSI client. You will not discuss with any third party, the fees paid to you by LSI or the fee structure set forth in this Agreement. You agree that all collateral assessment reports prepared by you at our request shall belong to the financial institution or other party for which it is prepared and that all property data (e.g. valuation, address) contained in such reports may be used by LSI. This Agreement may be terminated at any time by either of us, with or without cause, upon thirty (30) days advance written notice to the other. LSI may also terminate this Agreement immediately for cause, based on factors it deems relevant, in its sole discretion. In addition, at LSI's option, this Agreement shall terminate automatically in the event LSI has not placed an order with you for a period of 180 days.

You shall indemnify and hold LSI harmless from and against any and all liabilities, damages, losses, costs and expenses (including attorneys' fees), claims, and causes of action, arising out of your performance or non-performance of your duties and obligations hereunder, whether as a result of your negligence or willful misconduct. This Agreement constitutes the entire agreement between us regarding your services and it may not be assigned by you without our prior written consent. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania Except as otherwise noted in this letter, this Agreement may not be modified or amended except by a written instrument executed by both of us.

All notices, demands, requests, designations and consents given by either party hereto to the other party shall be in writing and shall be personally delivered or sent by express (next day) delivery service or by certified U. S. Mail, return receipt requested, addressed as follows:

If to LSI, to:                                      If to Appraiser to:

**LSI**                                             JENIFFER A. WERTZ
700 Cherrington Parkway
Coraopolis, PA 15108-4306
Attention Supplier Management

If the foregoing accurately states the agreement between us concerning the matters set forth herein, please execute this letter in the space provided below.

LSI, A Fidelity National Information Services Company

By: _____          Date: _____
    LSI – Executive VP

Accepted And Agreed To By:

    JENIFFER A. WERTZ          Date: _7/15/06_
    [Contractor]

**PROOF OF SERVICE**

STATE OF CALIFORNIA      )
                             )ss.:
COUNTY OF LOS ANGELES  )

      I am employed in the county of Los Angeles, State of California, I am over the age of 18 and not a party to the within action; my business address is 12304 Santa Monica Boulevard, Suite 109, Los Angeles, CA 90025.

      On July 11, 2008, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Michael D. Braun, I filed and served the document(s) described as:

**DECLARATION OF MICHAEL D. BRAUN IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STAY PROCEEDINGS**

      The ECF System is designed to automatically generate an e-mail message to all parties in the case, which constitutes service. According to the ECF/PACER system, for this case, the parties served are as follows:

| | |
|---|---|
| Christopher J. Clark, Esq. | cjclark@dl.com |
| Sam N. Dawood, Esq. | samdawood@dwt.com, allanpatterson@dwt.com, pammaiwandi@dwt.com |
| Martin L. Fineman, Esq. | martinfineman@dwt.com edithshertz@dwt.com |
| Laura Jean Fowler, Esq. | lfowler@mhalaw.com ekastern@mhalaw.com |
| Richard F. Hans, Esq. | rhans@tpw.com |
| Margaret Anne Keane, Esq. | mkeane@dl.com |
| Joseph N. Kravec, Jr., Esq. | jnk@ssem.com |
| Jonathan M. Lloyd, Esq. | jonathanlloyd@dwt.com terriray@dwt.com |
| Kris Hue Chau Man, Esq. | kman@dl.com sholstrom@dl.com |
| James Mark Moore, Esq. | mark@spiromoss.com emily@spiromoss.com |
| Angela M. Papalaskaris, Esq. | apapalas@dl.com |
| Robert J. Pfister, Esq. | rpfister@stblaw.com gdmiller@stblaw.com |
| Jeffrey D. Rotenberg, Esq. | jrotenberg@tpw.com |
| Stephen Michael Rummage, Esq. | steverummage@dwt.com jeannecadley@dwt.com |

1    Janet Lindner Spielberg, Esq.                jlspielberg@jlslp.com

2    Ira Spiro, Esq.                              ira@spiromoss.com

3    Kevin C. Wallace, Esq.                       kwallace@dl.com

4
     On July 11, 2008, I served the document(s) described as:
5
**DECLARATION OF MICHAEL D. BRAUN IN SUPPORT OF PLAINTIFFS' REPLY**
6    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
     **MOTION TO STAY PROCEEDINGS**
7
     by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:
8
     Kerry Ford Cunningham, Esq.
9    Patrick J. Smith, Esq.
     THACHER PROFFITT & WOOD LLP
10   Two World Financial Center
     New York, NY 10281
11
     I served the above document(s) as follows:
12
     BY MAIL.  I am familiar with the firm's practice of collection and processing
13   correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on
     that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of
14   business.  I am aware that on motion of the party served, service is presumed invalid if postal
     cancellation date or postage meter date is more than one day after date of deposit for mailing in an
     affidavit.
15
     I am employed in the office of a member of the bar of this Court at whose direction the
16   service was made.

17   I declare under penalty of perjury under the laws of the United States that the above is true
     and correct.
18
     Executed on July 11, 2008, at Los Angeles, California 90025.
19

20

21                                          _____/S/ LEITZA MOLINAR_____
                                                     Leitza Molinar
22

23

24

25

26

27

28