1  MARGARET A. KEANE (State Bar No. 255378)
   DEWEY & LEBOEUF LLP
2  One Embarcadero Center, Suite 400
   San Francisco, CA 94111
3  Telephone: (415) 951-1100
   Facsimile: (415) 951-1180
4  E-mail:     mkeane@dl.com

5  *Attorneys for Defendant LSI Appraisal, LLC*

6

7

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

                        SAN JOSE DIVISION
11

12  FELTON A. SPEARS, JR. and SIDNEY          )  Case No.: 5:08-cv-00868 (RMW)
    SCHOLL, on behalf of themselves and all   )
13  others similarly situated,                 )  **CLASS ACTION**
                                               )
14              Plaintiffs,                    )
                                               )
15          v.                                 )  **DEFENDANT LSI APPRAISAL, LLC'S**
                                               )  **REPLY MEMORANDUM OF LAW IN**
16  WASHINGTON MUTUAL BANK, FA (aka            )  **SUPPORT OF ITS MOTION TO DISMISS**
    WASHINGTON MUTUAL BANK); FIRST            )
17  AMERICAN EAPPRAISEIT, a Delaware           )
    corporation; and LENDER'S SERVICE, INC.,   )
18                                             )
                Defendants.                    )
19  _____)

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    LSI's Alleged Relationship to the Plaintiffs' Appraisals ................................ 2

        1.    The Scholl Appraisal ................................................................ 2

        2.    The Spears Appraisal ............................................................... 4

    B.    The Alleged Conspiracy ............................................................................... 4

ARGUMENT .......................................................................................................................... 5

    A.    Plaintiffs' Claim That LSI Was Tangentially "Involved" in the
        Scholl Report Cannot Establish Standing ................................................... 5

    B.    Plaintiffs Do Not Show That LSI Was Involved in a Conspiracy ............... 7

        1.    Plaintiffs Fail to Adequately Allege a Conspiracy ........................... 7

        2.    Plaintiffs Fail to Adequately Allege Any Harm From a Conspiracy ............. 10

        3.    LSI Had No Legal Duty to Plaintiffs That Could Serve as the
        Basis for a Conspiracy Claim ................................................ 11

    C.    Plaintiffs' Claims Fail as a Matter of Law................................................... 12

        1.    RESPA and CLRA Claims ........................................................ 13

        2.    Breach of Contract ................................................................ 13

        3.    Unjust Enrichment ................................................................ 14

CONCLUSION ...................................................................................................................... 15

Defendant LSI Appraisal, LLC's
Reply Memorandum In Support of Motion to Dismiss

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

Page

*Alfus v. Pyramid Technology Corp.*,
    745 F. Supp. 1511 (N.D. Cal. 1990) .................................................................... 7, 10, 11

*Arikat v. JP Morgan Chase & Co.*,
    430 F. Supp. 2d 1013 (N.D. Cal. 2006) ............................................................................ 9

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)............................................................................................. 8, 9, 10,

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) ............................................................................ 9

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................................ 13

*Grosz v. Lassen Community College Dist.*,
    ___ F. Supp. 2d ___, 2008 WL 2119923 (E.D. Cal. 2008) .............................................. 8

*In re Calpine Corp. Erisa Litig.*,
    2005 U.S. Dist. LEXIS 34452 (N.D. Cal. Dec. 5, 2005) ................................................ 13

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. Cal. 2008)............................................................................... 8, 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................... 5, 6

*McColm v. Abner*,
    2006 WL 3645308 (N.D. Cal. Dec. 12, 2006) ............................................................... 13

*Moore v. Radian Group, Inc.*,
    233 F. Supp. 2d 819 (E.D. Tex. 2002) ........................................................................... 13

*Morales v. Attorneys' Title Ins. Fund, Inc.*,
    983 F. Supp. 1418 (S.D. Fla. 1997) ............................................................................... 13

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
    ___ F.3d ___, 2008 WL 2697793 (9th Cir. 1008) ........................................................... 8

*Roberts v. Heim*,
    670 F. Supp. 1466 (N.D. Cal. 1987) .............................................................................. 11

*Roberts v. Peat, Marwick, Mitchell & Co.*,
    857 F.2d 646 (9th Cir. 1988) ......................................................................................... 11

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................................................... 13

1

2

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
  435 F.2d 989 (9th Cir. 2006) ................................................................. 9

3

**STATE CASES**

4

5

*Amelco Elec. V. City of Thousand Oaks*,
  27 Cal. 4th 228 (2002) ................................................................. 13

6

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ................................................................. 7, 11

7

8

*Gruenberg v. Aetna Insurance Co.*,
  9 Cal. 3d 566 (1973) ................................................................. 12

9

*Madrid v. Perot Sys. Corp.*,
  30 Cal. Rptr. 3d 210 (Ct. App. Cal. 2005) ................................................................. 12

10

11

*People v. Bestline Products, Inc.*,
  132 Cal. Rptr. 767 (Ct. App. Cal. 1976) ................................................................. 12

12

*Peterson v. Cellco Partnership*,
  2008 Cal. App. LEXIS 1121 (Ct. App. Cal. June 26, 2008) ................................................................. 13, 14

13

14

*State ex rel. Metz v. CCC Information Services, Inc.*,
  149 Cal. App. 4th 402 (Cal. Ct. App. 2007) ................................................................. 7

15

*The Doctors' Company v. Superior Court*,
  49 Cal. 3d 39 (1989) ................................................................. 11, 12

16

17

**STATUTES**

18

Federal Rules of Civil Procedure
  12(b)(1) ................................................................. 15
  12(b)(6) ................................................................. 15

19

20

**MISCELLANEOUS**

21

Uniform Standards of Professional Appraisal Practice ................................................................. 6, 14

22

23

24

25

26

27

28

1    Defendant LSI respectfully submits this reply memorandum in further support of its motion to

2    dismiss Plaintiffs' Amended Complaint.[1]

3                                        **PRELIMINARY STATEMENT**

4            Plaintiffs now concede that LSI did not provide or prepare the appraisal reports on the properties

5    at issue in this action.  Indeed, another WaMu vendor, eAppraiseIT, prepared the appraisal reports for

6    Scholl and Spears.  Plaintiffs also recognize that the appraisal fees they claim were improperly paid

7    went to eAppraiseIT, not LSI.  Recognizing that these facts would preclude a cause of action against

8    LSI, Plaintiffs now seek to shift to two alternative theories of liability.

9            First, Plaintiffs claim that while LSI may not have "prepared" or "provided" the appraisals, the

10   Company is otherwise directly liable to Plaintiffs because it **may have** "received, reviewed, or altered"

11   one of the appraisal reports.  As a preliminary matter, the Amended Complaint does not allege when or

12   whether LSI might have "received, reviewed, or altered" the appraisals.  Instead, Plaintiffs cling to the

13   fact that an LSI affiliated email address appears on one of the reports.  That stray email address is not

14   evidence of involvement in the appraisal.  Moreover, even assuming solely for purposes of argument

15   that the email address indicated that LSI received the appraisal report or was otherwise "involved" in the

16   report, Plaintiffs have not alleged how that activity harmed Ms. Scholl or violated any duty to her.

17   Plaintiffs' theory of liability is clear: they allege that they paid WaMu, and by extension its vendor, for a

18   USPAP complaint appraisal.  Plaintiffs claim that they did not receive a USPAP compliant appraisal

19   because the individual appraisers were not independent.  LSI was not the vendor responsible for

20   assigning an appraiser for the report on either Plaintiff's property and had no responsibility for the

21   actions that allegedly give rise to liability.  LSI received no fee for the appraisals at issue – the entire

22   basis for the damages alleged in the Amended Complaint.  Pointing to an email address on one of the

23   appraisal reports does not alter the facts.  LSI is not liable to Plaintiffs.

24           Plaintiffs also contend that they have an "indirect" cause of action even if LSI did not prepare or

25   provide their appraisals, because LSI allegedly conspired with WaMu and eAppraiseIT.  As a result of

26   that conspiracy, Plaintiffs claim that LSI is liable to them for the acts of those parties.  Plaintiffs'

27

28

---

[1]  Unless defined herein, capitalized terms have the same meaning as LSI's opening brief.  [Docket Entry ("DE") 48]

Defendant LSI Appraisal, LLC's
                                                      Reply Memorandum In Support of Motion to Dismiss

conspiracy theory fails for a host of reasons.  First, the Amended Complaint fails to adequately allege a conspiracy between LSI and the other defendants.  Second, Plaintiffs fail to adequately allege that they were harmed, or even directly impacted by, the alleged conspiracy.  Indeed, the bulk of the alleged conspiratorial acts occurred well after the only plaintiff who claims any connection to LSI, Ms. Scholl, had her property appraised and closed her loan.  Finally, even if Plaintiffs could plead a conspiracy among the defendants, they cannot use a theory of conspiracy to hold LSI liable for the particular statutory and contractual claims alleged in the Amended Complaint.  In sum, Plaintiffs' conspiracy claims are insufficient as a matter of pleading and as a matter of law.

Plaintiffs' efforts to sustain their underlying substantive claims also fail.  As a preliminary matter, Plaintiffs do not dispute LSI's showing that the Amended Complaint fails to state a viable claim for the three causes of action plead under the UCL.  Likewise, Plaintiffs offer no meaningful rebuttal on their contract claims or their claims under RESPA and CLRA.  LSI respectfully asks this Court to dismiss Plaintiffs' claims against LSI with prejudice.

## FACTUAL BACKGROUND

**A.    LSI's Alleged Relationship to the Plaintiffs' Appraisals**

**1.    The Scholl Appraisal**

In their opposition to LSI's motion to dismiss, Plaintiffs assert that they have standing to proceed based on an appraisal of Plaintiff Sidney Scholl's property in Edmond, Oklahoma.  The appraisal was prepared by an Oklahoma appraiser, Elizabeth Angelo ("Angelo"), who was employed by Angelo Appraisal Services, 1217 Salem Avenue, Edmond, OK  73003.  [Docket Entry ("DE") 100, Ex. 2.]

Ms. Scholl's appraisal report (the "Scholl Report," DE 100, Ex. 2) consistently identifies eAppraiseIT and Washington Mutual Bank ("WaMu") as the client for whom the report is being completed.  First, the cover page of the Scholl Report reads:

**FOR:**
Washington Mutual/eAppraiseIt
75 N Fairway Dr
Vernon Hills, Il 60061

2

1    The bottom right hand corner of each of the 12 pages of the Scholl Report is also repeatedly

2  stamped:

3                    Completed on behalf of eAppraiseIT.

4    On Line 9 of the first page of the "Summary Appraisal Report" form in the Scholl Report, the

5  "Lender/Client" is identified as "Washington Mutual/eAppraiseIT."

6



7

8

9

10

11

12

13    The last page of the form again calls for "Lender/Client" and "Company Name."  In

14  response, Angelo entered: "Washington Mutual/eAppraiseIT" at the address of "75 N. Fairway Drive,

15  Vernon Hills, IL  60061."  Below the Lender/Client's name and address, reads an email address of

16  "lsistatus@lendersservice.com," the sole reference to LSI in the 12 page Scholl Report.  This

17  information is depicted on page 6 of the form:

18

19



20

21

22

23    Finally, at the top of the two pages of photos following that form, the "Lender" line reads:

24  "Washington Mutual/eAppraiseIT:"

25



26

27

28

                            3

1    LSI is not identified as the client anywhere in the twelve page Scholl Report, which is not

2    surprising given that "Washington Mutual/eAppraiseIT" was the client.

3    **2.    The Spears Appraisal**

4    Plaintiffs do not allege that LSI provided appraisal services to Plaintiff Felton Spears.

5    **B.    The Alleged Conspiracy**

6    The Scholl Report is dated September 17, 2006.  Plaintiffs allege that "in or about June 2006,"

7    WaMu retained LSI and eAppraiseIT to handle "all of WaMu's home loan appraisals."  Am. Cplt., ¶¶ 6,

8    33, 35.  Plaintiffs allege that as part of this business venture, LSI and eAppraiseIT "took on new

9    employees who formerly worked for WaMu," and they gave WaMu the right to review an appraiser's

10   work product and "challenge an appraiser's conclusions."  *Id.* at ¶¶ 37, 38.

11   Plaintiffs then claim that "as early as August 9, 2006, WaMu's internal staff admonished

12   [**eAppraiseIT**] for not providing appraisals at the values they wanted."  Am. Cplt. ¶ 41 (emphasis

13   added).  This allegation not only does not implicate LSI, but is based on the New York Attorney

14   General's complaint against First American Corporation and eAppraiseIT (the "NYAG Complaint,"

15   attached hereto at Exhibit A).  The NYAG Complaint does not name LSI as a party and neither makes

16   allegations against LSI nor makes allegations that LSI, eAppraiseIT, and WaMu participated in a

17   conspiracy.

18   The first mention of alleged wrongdoing on LSI's part involves conduct that took place in 2007,

19   more than one year after the Scholl Report was completed.  In the Amended Complaint, Plaintiffs claim

20   that "[i]n order to guarantee WaMu would get the high appraisals it wanted, without having to go

21   through the delay of the rebuttal system, by **winter of 2007**, WaMu insisted that [eAppraiseIT] and

22   LSI use WaMu's 'Preferred Appraisers' for all of WaMu's home loan appraisals."  *Id.*, ¶ 42 (emphasis

23   added).  Plaintiffs follow up that allegation with further emphasis on conduct that took place in 2007.

24   For example:

25   In an email dated **February 22, 2007**, [eAppraiseIT's] President explained
      to senior executives at [eAppraiseIT's] parent corporation, First American,
26   that…[w]e had a joint call with Wa[M]u and LSI today…. In short, we
      will now assign all WaMu's work to WaMu's "Proven Appraisers."

27

28

4

1    *Id.*, ¶ 43 (emphasis added); *see also* ¶ 36 ("[eAppraiseIT] and LSI acquiesced to WaMu's demand to

2    staff appraisals with Preferred Appraisers."); ¶¶ 45, 47, 53, 54 (citing emails to and from eAppraiseIT

3    dated between March 5, 2007 and April 17, 2007).

4                                            **ARGUMENT**

5              Plaintiffs do not dispute that LSI did not prepare or provide Plaintiffs' appraisals.  They make no

6    claim that LSI had any role in providing Plaintiff Spears' appraisal.  Instead, Plaintiffs try to evade the

7    fact that they have no relationship with LSI that could give rise to a legal duty, and present a tortured

8    theory of "involvement" based upon an email address.

9    **A.     Plaintiffs' Claim That LSI Was Tangentially "Involved" in the Scholl Report Cannot
10            Establish Standing**

11            Instead of conceding that they cannot establish a direct injury traceable to LSI, Plaintiffs argue

12   that LSI was directly involved in the Scholl appraisal.  Plaintiffs point out for the first time in their

13   opposition to LSI's motion to dismiss that the email address lsistatus@lendersservice.com appears in the

14   Scholl appraisal, but a reference to an anomalous email address that does not correspond to any of the

15   information around it is not sufficient to allege direct involvement in an appraisal.  Moreover, direct

16   involvement, even assuming arguendo that it did occur, does not constitute the directly traceable injury

17   required to establish standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

18            Seeking to create jurisdiction, Plaintiffs argue that the Rice Affidavit does not deny that LSI

19   "received, reviewed, or altered" the Scholl appraisal.  [DE 99, pp. 2-5.]  LSI, however, did not engage in

20   any of this conduct, and the Amended Complaint does not allege that LSI "received, reviewed, or

21   altered" either Plaintiff Scholl or Spears' appraisals.  In fact, WaMu's memorandum in support of its

22   motion to dismiss the Amended Complaint confirms that Plaintiff Scholl's appraisal was not provided

23   by LSI.  [DE 47, p. 2 ("[N]either Plaintiff's appraisal appears to have been performed by an appraiser

24   contracted through LSI.").]  Rather, WaMu obtained Scholl's appraisal through eAppraiseIT. [*Id.*]  "As

25   eAppraiseIT is a separate company with no corporate relationship to LSI or its parent company, Fidelity

26   National Information Services, this indicates that the appraisal was not prepared by LSI."  [DE 48, Rice

27   Affidavit, ¶ 8.]

28

                                                 5

1    Moreover, in both the Amended Complaint and in their briefs, especially Plaintiffs' combined

2    opposition to WaMu and eAppraiseIT's motions to dismiss, Plaintiffs make clear that their claims

3    against LSI and eAppraiseIT are based on the vendor having "provided," and not just " received,

4    reviewed, or altered," their appraisals:

- Defendant Washington Mutual Bank, FA ("WMB")… conspired with two Appraisal
  Management Companies ("AMCs"), i.e., Defendants First American eAppraiseIT ("EA")
  and Lender's Service, Inc. ("LSI"), **to provide** Plaintiffs with appraisal reports on WMB
  loans…  [DE 101, p. 1 (emphasis added).]
- EA and LSI **provided** WMB with counterfeit, sham appraisals which WaMu delivered to and
  charged Plaintiffs.  [*Id*., pp. 4-5 (emphasis added).]
- EA and LSI have been paid millions of dollars directly from WMB's borrowers **for
  providing** counterfeit, sham appraisals.  [*Id*., p. 6 (emphasis added).]
- EA or LSI, in furtherance of their conspiracy with WMB, **provided** a counterfeit, sham
  appraisal that is of no value at all.  [*Id*., p. 9 (emphasis added).]

12    Furthermore, nowhere in the Scholl Report does the appraiser name LSI as the client or an

13    intended user of the appraisal.  The fact that eAppraiseIT as the client engaged the appraiser for this

14    assignment is reflected on page one of the report, which states that this appraisal of property located in

15    Edmond, Oklahoma was prepared for "Washington Mutual/eAppraiseIT."  The appraiser also states on

16    every page of the report that the appraisal was "[c]ompleted on behalf of eAppraiseIT."  [DE 100, Ex.

17    2.]  The Scholl Report lists eAppraiseIT or WaMu as the client more than a dozen times.  The fact that

18    LSI's email address appears once on the Scholl report does not convey standing.  None of the case law

19    cited by Plaintiffs supports the notion that it does.  [DE 99, pp. 2-5.]  *See Lujan*, 504 U.S. 555 (injury in

20    fact element of standing cannot be conjectural or hypothetical).

21    Additionally, under USPAP, the appraiser must identify the client and any other intended users

22    of the appraisal.[2]  *See* USPAP 2008-2009, Standards Rules 1-2, 7-2.  The appraiser of Ms. Scholl's

23    property did not list LSI as the "client" or an "intended user" of the appraisal.  Instead, the Scholl Report

24    identifies the intended users of the Scholl appraisal as "Washington Mutual/eAppraiseIT," the

---

[2]   The "client" is defined by USPAP as "the party or parties who engage an appraiser (by employment or contract) in a
specific assignment."  USPAP, Statement on Appraisal Standards No. 9.  USPAP defines the "intended user" as "the client
and any other party as identified, by name or type, as users of the appraisal, appraisal review, or appraisal consulting report
by the appraiser on the basis of communication with the client at the time of the assignment." *Id.*

1    "lender/client." [DE 100, Ex. 2, p. 4.]  The Scholl Report designates WaMu three lines above LSI's

2    email address as the "lender" [*Id*., p. 6.], and it names "Washington Mutual/eAppraiseIT" three lines

3    above the LSI email address as the "client." [*Id*.]

4    **B.    Plaintiffs Do Not Show That LSI Was Involved in a Conspiracy**

5            As an alternative to their theory of "direct" liability based on an email address, Plaintiffs argue

6    that they can establish standing against LSI based on the conspiracy allegations in the Amended

7    Complaint. [DE 99, pp. 5-10.]  But none of the cases cited by Plaintiffs support the conclusion that the

8    conspiracy allegations in the Amended Complaint could be used to establish Article III standing. [DE

9    99, pp. 5-10.]  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons

10   who, although not actually committing a tort themselves, share with the immediate tortfeasors a

11   common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7

12   Cal. 4th 503, 510-11 (1994).  When conspiracy is properly alleged, "a coconspirator effectively adopts

13   as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Id*. at 511.

14   However, for conspiracy liability to arise, a coconspirator must owe a duty to plaintiff recognized by law

15   and be potentially subject to liability for breach of that duty. *Id*.

16           **1.    Plaintiffs Fail to Adequately Allege a Conspiracy**

17           To establish liability for conspiracy, "a plaintiff must plead both an agreement to participate in

18   an unlawful act, and an injury caused by an unlawful overt act performed in furtherance of the

19   agreement." *Alfus v. Pyramid Technology Corp.*, 745 F. Supp. 1511, 1520 (N.D. Cal. 1990).  "A bare

20   agreement among two or more persons to harm a third person cannot injure the latter unless and until

21   acts are actually performed pursuant to the agreement." *Applied Equipment Corp*, 7 Cal. 4th at 511.

22   Thus, the essence of a conspiracy action "is the acts done." *Id*.

23           "[B]are legal conclusions, inferences, generalities, presumptions, and conclusions are

24   insufficient" to allege conspiracy. *State ex rel. Metz v. CCC Information Services, Inc.*, 149 Cal. App.

25   4th 402, 419 (Cal. Ct. App. 2007); *see also Alfus*, 745 F. Supp. at 1521 (in civil conspiracy actions

26   alleging fraud, "courts insist upon a higher level of specificity than is usually demanded of other

27   pleadings").  "[T]he complaint must allege facts such as a 'specific time, place, or person involved in the

28

1    alleged conspiracies' to give a defendant seeking to respond to allegations of conspiracy an idea where

2    to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. Cal. 2008) (quoting *Bell Atlantic*

3    *Corp. v. Twombly*, 127 S. Ct. 1955, 1970 n.10 (2007)).

4            Moreover, following the Supreme Court's recent decision in *Twombly*, the requirements for

5    pleading conspiracy must consist of more than formulaic recitations of the legal elements, loosely tied to

6    the facts. *Twombly*, 127 S. Ct. at 1965. *Twombly* addresses the general pleading standard under Rule

7    12(b)(6) within the context of an antitrust conspiracy. This standard has since been applied by the Ninth

8    Circuit in antitrust cases, as well as District Courts within the Ninth Circuit to non-antitrust matters.

9    *See, e.g., Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, __ F.3d __, 2008 WL 2697793 (9th

10    Cir. 2008); *Grosz v. Lassen Community College Dist.*, __ F. Supp. 2d __, 2008 WL 2119923 (E.D. Cal.

11    2008).

12            Here, Plaintiffs' allegations of conspiracy fail even under a pre-*Twombly* pleading standard.

13    Significantly, the crux of Plaintiffs' conspiracy theory is that Defendants used the Proven Appraiser List

14    to manipulate the values contained in their appraisals. [DE 14, ¶¶ 42-56.] Yet Plaintiffs fail to make

15    any connection between their appraisals and the Proven Appraiser List. Paragraph 42 of the complaint

16    refers to WaMu insisting on use of the Proven Appraiser List by **winter 2007**. Meanwhile, the Scholl

17    appraisal was completed in September 2006, one year **before** the alleged conspiracy. eAppraiseIT's

18    decision to assign all WaMu work to "Proven Appraisers" also took place in February 2007, **after** the

19    Scholl appraisal was completed. *See supra*, p. 4. Thus, there is an insufficient nexus between the Scholl

20    appraisal and the so-called conspiracy.

21            At a more basic level, the Amended Complaint does not allege that LSI ever entered into any

22    agreement with eAppraiseIT. Rather, the Amended Complaint pleads that WaMu retained both LSI and

23    eAppraiseIT to provide independent appraisals, and then alleges that this retention agreement somehow

24    constituted a conspiratorial meeting of the minds:

25    - In or about June 2006, WaMu entered an agreement, conspiracy or scheme with EA and LSI
           … to handle all of WaMu's home loan appraisals. Am. Cplt., ¶ 6.
26
27    - In 2006 … WaMu attempted to insulate itself from criticism and federal oversight by
           entering into an agreement with two purportedly independent Appraisal Management
28

1      Companies ("AMCs"), First American eAppraiseIT and Lender's Services, Inc., whereby
WaMu would procure appraisals from these two AMCs on behalf of borrowers for all or

2      nearly all WaMu residential loans nationwide…. *Id*., ¶ 33.

3   •  In or about June 2006, WaMu retained EA and LSI to administer WaMu's appraisal program.
*Id*., ¶ 35.

4

5        There is no allegation that WaMu assigned the same appraisals to both companies or that LSI

6 and eAppraiseIT worked together on the same appraisals. In fact, the Amended Complaint alleges the

7 opposite – it states that appraisals "were obtained through either EA or LSI." [DE 14, ¶ 1.] The

8 Amended Complaint fails to allege an agreement or conspiracy between LSI and eAppraiseIT. *See*

9 *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (without

10 allegations that the parties ever formed an agreement to commit wrongful acts, plaintiff "failed under

11 federal law to allege the most basic and fundamental element of a civil conspiracy"); *Brennan v.*

12 *Concord EFS, Inc.*, 369 F. Supp. 2d 1127 (N.D. Cal. 2005) (complaint dismissed where scope of the

13 conspiracy was ambiguous); *Kendall*, 518 F.3d at 1048 (following *Twombly* to dismiss complaint

14 where plaintiffs "failed to plead any evidentiary facts beyond parallel conduct to prove their allegation

15 of a conspiracy").

16        Plaintiffs further hedge their bets by referring to LSI and eAppraiseIT collectively –

17 without any basis for doing so – in the context of discussing their own specific appraisals:

18   •  In connection with this appraisal, WaMu procured for itself and Ms. Scholl an appraisal on
the subject property from EA *and/or* LSI. Am. Cplt., ¶ 59 (emphasis added).

19

20   •  In connection with this appraisal, WaMu procured for itself and Mr. Spears an appraisal on
the subject property from EA *and/or* LSI. *Id*., ¶ 64 (emphasis added).

21        To the extent that these allegations "are ascribed to defendants collectively rather than to

22 individual defendants," they are insufficient. *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013,

23 1020 (N.D. Cal. 2006).

24        Finally, Plaintiffs' allegations regarding the NYAG Complaint are not "evidence" of a

25 conspiracy between Defendants. Tellingly, LSI is not named as a defendant in the NYAG Complaint.

26 The allegations contained therein pertain to eAppraiseIT and its relationship with WaMu. The NYAG

27 Complaint does not allege that a conspiracy existed between those two entities or in any way suggest

28

9

1    that there was any meeting of the minds between WaMu and eAppraiseIT to provide "unlawful and

2    incredible" appraisals.

3    **2.    Plaintiffs Fail to Adequately Allege Any Harm From A Conspiracy**

4        Even reading the Amended Complaint in the light most favorable to Plaintiffs, none of the

5    alleged conspiratorial acts affected their appraisals or otherwise caused them harm. *See Alfus*, 745 F.

6    Supp. at 1520 (holding that conspiracy requires "an injury caused by an unlawful overt act performed in

7    furtherance of the agreement").

8        The Amended Complaint alleges the following conspiratorial acts:

9    • EA and LSI acquiesced to WaMu's demand to staff appraisals with Preferred Appraisers.
        Am. Cplt., ¶ 36.

10   • Both LSI and EA agreed to WaMu's request and took on new employees who formerly
        worked for WaMu as its appraisers and regional managers. *Id.*, ¶ 37.

11   • WaMu frequently used this 'reconsideration of value' technique to get EA and LSI to provide
        higher appraisal values on homes to enable its origination staff to close the loans. *Id.*, ¶ 38.

12

13       The Proven Appraiser List is central to Plaintiffs' conspiracy theory. [DE 14, ¶¶ 42-56.] Despite

14   their general allegations of conspiracy, there is no connection between the Proven Appraiser List and

15   Plaintiffs' appraisals. Indeed, the Amended Complaint is notable for what it does not allege:

16   • Plaintiffs do not allege that either appraisal was completed by a Preferred Appraiser or that
        the Preferred Appraiser list existed at the time of their appraisals.

17   • Nor do they allege involvement of an employee who formerly worked for WaMu.

18   • There is no allegation as to how and when the relevant appraisers were hired into LSI or
        eAppraiseIT's network of appraisers or the circumstances surrounding her becoming an
        appraiser for LSI or eAppraiseIT.

19

20   • Nor is there any allegation that either of the subject appraisals were subject to requests for
        "reconsideration of value" for a higher appraisal value.

21   • There is no allegation that the appraisals violated USPAP or were subject to inappropriate
        contact or improper pressure by Defendants.

22   • There is no allegation that the values contained in the appraisal reports were inflated.

23       The Amended Complaint simply concludes that Plaintiffs' appraisals were "created pursuant to

24   the scheme described in this Complaint." [*Id.* ¶¶ 61, 66.] Plaintiffs elsewhere argue that they bought

25   "unlawful and incredible" appraisals because there was a conspiracy to sell "unlawful and incredible"

26   appraisals. [DE 99, p. 5.] But "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

27   relief' requires more than labels and conclusions." *Twombly*, 127 S. Ct. 1964-65.

28

1    In the absence of any specific allegations connecting the injury alleged by the Plaintiffs to the

2    actions of the conspiracy, the Amended Complaint fails to sustain an actionable claim against LSI or any

3    of the other conspirators. *Alfus*, 745 F. Supp. at 1520-21 (granting defendants' motion to dismiss where

4    "Plaintiff has not alleged an injury causing damages or an agreement, and the conclusory statements that

5    she makes are not sufficient to state a claim for conspiracy against the individual defendants."); *see also*

6    *Roberts v. Heim*, 670 F. Supp. 1466, 1484 (N.D.Cal. 1987) ("To state a claim for conspiracy, plaintiffs

7    must plead an agreement to participate in an unlawful act and an injury caused by an unlawful overt act

8    performed in furtherance of the agreement."), *aff'd in part and rev'd in part on other grounds sub nom.*,

9    *Roberts v. Peat, Marwick, Mitchell & Co*., 857 F.2d 646 (9th Cir. 1988).

10   **3.    LSI Had No Legal Duty to Plaintiffs That Could Serve as the Basis for a Conspiracy**
11        **Claim**

12       Even if the Amended Complaint adequately alleged a conspiracy that was the proximate cause of

13   damage to the named defendants, those allegations would be insufficient to state a cause of action

14   against LSI. The cases cited by the Plaintiffs stand for the unremarkable proposition that conspiracy

15   may extend tort liability for an underlying wrong. California law makes it clear, however, that that

16   liability does not extend indefinitely. "By its nature, tort liability arising from conspiracy presupposes

17   that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to

18   plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Applied,* 7 Cal.

19   4th at 511. In *Applied*, the California Supreme Court recognized that this meant that a plaintiff could not

20   state a cause of action for a conspiracy to breach a contract, that "a party to contract owes no tort duty to

21   refrain from interference with its performance, [therefore,] he or she cannot be bootstrapped into tort

22   liability by the pejorative plea of conspiracy."[3] *Id.* at 514.

23       The same rule also applies when the duty allegedly breached is statutory. In *The Doctors'*

24   *Company v. Superior Court*, 49 Cal. 3d 39, 45 (1989), for example, the court found that a plaintiff could

25

26   _____
     [3]  While Plaintiffs do not appear to have alleged a cause of action for conspiracy to breach a contract, any use of conspiracy
27   to establish standing for a contract claim is clearly precluded by *Applied*. 7 Cal. 4th at 511. The *Applied* court did recognize
     that a party to a contract could bring a suit against a third party for tortious interference with contract, but Plaintiffs have not
28   alleged any such claim against LSI.

not state a claim for conspiracy where the underlying statutory duty did not attach to third parties.  *See*

*also id.* at 46 ("The duty invoked here . . . is likewise peculiar to the insured because the duty is created

by statute which imposes it only on persons in the insurance business.")  Because the defendants in

*Doctors' Company* were not subject to the statutory duty, the court concluded that "they cannot be held

accountable on a theory of conspiracy."  *Id.* at 45 (*quoting Gruenberg v. Aetna Insurance Co.*, 9 Cal. 3d

566, 576 (1973)).

Likewise here, the particular statutory duties invoked by Plaintiffs do not attach to third parties

outside the specific commercial and contractual relationships defined by federal and California law.

Indeed, Plaintiffs fail to cite a single case where a third party to a commercial relationship was held

liable for a conspiracy to violate RESPA, the CLRA or the UCL.  In fact, Plaintiffs cite just a single

decision entailing any of those statutes, *People v. Bestline Products, Inc.*, 132 Cal. Rptr. 767 (Ct. App.

Cal. 1976).  *Bestline* was an action brought by the State of California, not a private plaintiff and "said

nothing about recovering restitution from a defendant who received nothing."  *Madrid v. Perot Sys.*

*Corp.*, 30 Cal. Rptr. 3d 210, 222 (Ct. App. Cal. 2005).  In considering the decision in *Bestline*, the

*Madrid* court concluded that it did not support permitting a private plaintiff to recover under the UCL

from a party that never received funds from the transaction in question.  To the contrary the court noted

that the plaintiff there failed "to cite any authority that a UCL plaintiff may recover money from a

defendant who never received it on a theory that the defendant conspired with or aided someone else

who did receive it."  *Id.*   Here there is no basis to conclude that LSI owed a statutory duty to either Mr.

Spears or Ms. Scholl.  As result, there is no basis to assert standing based on a theory of conspiracy.

## C.    Plaintiffs' Claims Fail as a Matter of Law

Plaintiffs contend that, based on an appraisal for an Oklahoma property, prepared by an

Oklahoma appraiser, licensed by the State of Oklahoma, for a closing that took place in Oklahoma and

funded by a lender in Illinois, they have stated various causes of action under California law.[4]  Plaintiffs,

however, do not dispute and much less address their UCL claims as they apply to LSI in the Second,

---

[4]  Plaintiffs allege that Ms. Scholl is a California resident who initiated her request for a loan at a WaMu office in Sonoma
county, but that is the extent of the connection to California.

1   Third and Fourth Claims of the Amended Complaint.  Thus, those claims should be dismissed.  *See In re*

2   *Calpine Corp. Erisa Litig.*, 2005 U.S. Dist. LEXIS 34452, at *21 (N.D. Cal. Dec. 5, 2005) (finding that

3   plaintiff conceded a point by "by utterly failing to address the [issue] in his opposition briefs" and

4   granting defendants' motions to dismiss plaintiff's amended complaint without leave to amend).

5   Plaintiffs' response was limited to the RESPA, CLRA, breach of contract and quasi-contract claims.

6       **1.    RESPA and CLRA Claims**

7       Plaintiffs cannot state a claim under RESPA or the CLRA because these statutes have

8   independent standing requirements.  *See, e.g., Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996

9   (N.D. Cal. 2007) ("[T]he … CLRA protect[s] only plaintiffs who have suffered harm 'as a result of'

10  defendants' unlawful or unfair practices.") (citing Cal. Civ. Code § 1780 (CLRA)); *Moore v. Radian*

11  *Group, Inc.*, 233 F. Supp. 2d 819 (E.D. Tex. 2002) (discussing standing under RESPA); *Morales v.*

12  *Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997) (discussing standing under RESPA).

13      For the same reasons that Plaintiffs cannot establish Article III standing, they cannot make a

14  sufficient showing of standing under RESPA or the CLRA.[5]

15      **2.    Breach of Contract**

16      Plaintiffs contend that the Scholl appraisal gives rise to a reasonable inference that LSI was a

17  contracting party for Plaintiffs' appraisal reports.  [DE 99, pp. 22-24.]  Plaintiffs' argument is meritless.

18      "Under California law, the elements required to establish actionable breach of contract are the

19  existence and terms of the contract, plaintiff's performance, defendant's breach, and damages

20  therefrom." *McColm v. Abner*, 2006 WL 3645308, at *11 (N.D. Cal. Dec. 12, 2006) (citing *Amelco Elec.*

21  *v. City of Thousand Oaks,* 27 Cal. 4th 228, 243 (2002)).

---

[5]   Even if Plaintiffs had addressed their UCL claims in their response, like RESPA and the CLRA, the UCL also has a
statutory standing requirement which Plaintiffs cannot meet.  *See, e.g., Peterson v. Cellco Partnership*, 2008 Cal. App.
LEXIS 1121, at *11 (Ct. App. Cal. June 26, 2008) (holding that a plaintiff pursuing a private UCL action "must make a
twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition");
*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947 (S.D. Cal. 2007) ("[U]nder… the UCL…, a plaintiff seeking to
represent claims on behalf of others must show "(1) she has suffered actual injury in fact, and (2) such injury occurred as a
result of the defendant's alleged unfair competition.").

1    The Scholl appraisal does not show that Plaintiffs and LSI entered into a contract, how Plaintiffs

2    performed pursuant thereto, how LSI breached that contract, or how Plaintiffs were damaged thereby.

3    The parties to the Scholl appraisal were Ms. Angelo and eAppraiseIT.  According to the allegations of

4    the complaint, Plaintiffs are not trying to recover for breach of contract under the theory of a third-party

5    beneficiary.

6    Furthermore, the report only proves that appraisal services were in fact rendered by Ms. Angelo

7    in connection with Plaintiff Scholl's Oklahoma property.  USPAP acknowledges that a client may

8    engage an appraiser by employment or contract.  USPAP, Statement on Appraisal Standards No. 9.  It

9    does not follow that Plaintiffs and LSI, two unrelated parties, entered into a contract regarding these

10   services simply because the services were performed.  Thus, it would be unreasonable to infer the

11   existence of a contractual relationship between Plaintiffs and LSI based on the Scholl appraisal.

12   **3.     Unjust Enrichment**

13   Plaintiffs' assertion that LSI received fees from Plaintiffs via WaMu because "it is listed on Ms.

14   Scholl's appraisal report as the appraiser's client" fails to state a cause of action.  Moreover, Plaintiffs

15   mischaracterize the allegations of the Amended Complaint by arguing that WaMu paid LSI "increased

16   fees in exchange for its services in assisting the conspiracy to charge WMB borrowers for counterfeit

17   appraisals."  [DE 99, pp. 24-25.]  The Amended Complaint only alleges that appraisers on the Proven

18   Appraiser List received an additional 20% fee – not LSI.  The Amended Complaint does not allege that

19   appraisers on the Proven Appraiser List shared those fees with LSI.  Regardless, there is no allegation

20   that Ms. Angelo or the appraiser that prepared Plaintiff Spears' appraisal was a Proven Appraiser.

21   "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust

22   retention of the benefit at the expense of another.'"  *Peterson*, 2008 Cal. App. LEXIS 1121 at *17.  The

23   only damages Plaintiffs claim are the fees paid for their appraisals.  [DE 99, pp. 16-18].  The Amended

24   Complaint does not allege that Plaintiffs were charged for their appraisals by LSI or that LSI received

25   any portion of these fees.  Without a claim that LSI received a benefit at Plaintiffs' expense, their claim

26   for unjust enrichment fails.

27

28

1

## <u>CONCLUSION</u>

For the foregoing reasons, LSI respectfully requests that the Court grant its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, all claims stated against LSI.

Dated:  August 1, 2008                    DEWEY & LEBOEUF LLP

By:    /s/    *Margaret A. Keane*
Margaret A. Keane (State Bar No. 255378)
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111-3619
Telephone:   (415) 951-1100
Facsimile:   (415) 951-1180

*Attorneys for Defendant LSI Appraisal, LLC*

1

**CERTIFICATE OF SERVICE**

2

     I declare that I am over the age of eighteen (18) years and not a party to this action.  My business

3

address is:  Dewey & LeBoeuf LLP, One Embarcadero Center, Suite 400, San Francisco, CA  94111.

4

     On August 1, 2008, the foregoing **DEFENDANT LSI APPRAISAL, LLC'S REPLY**

5

**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** was filed with the

6

Clerk of the Court using the Official Court Electronic Case Filing System ("ECF System").  The ECF

7

System is designed to automatically generate an e-mail message, with a link to the filed document(s), to

8

all parties in the case registered for electronic filing, which constitutes service.  The ECF system will

9

send notification of such filing to the following:

10

| | |
|---|---|
| Michael D. Braun | service@braunlawgroup.com |
| Laura Jean Fowler | lfowler@mhalaw.com, ekastern@mhalaw.com |
| Joseph N. Kravec, Jr. | jnk@ssem.com |
| Robert J. Pfister | rpfister@stblaw.com, gdmiller@stblaw.com |
| Janet Lindner Spielberg | jlspielberg@jlslp.com |
| Robert Ira Spiro | ira@spiromoss.com, jeanette@spiromoss.com |
| Jonathan M. Lloyd | jonathanlloyd@dwt.com, terriray@dwt.com |
| Sam N. Dawood | samdawood@dwt.com, allanpatterson@dwt.com, pammaiwandi@dwt.com |
| Martin L. Fineman | martinfineman@dwt.com, edithshertz@dwt.com |
| Stephen Michael Rummage | steverummage@dwt.com, jeannecadley@dwt.com |
| J. Mark Moore | mark@spiromoss.com, emily@spiromoss.com |
| Richard F. Hans | rhans@tpw.com |
| Jeffrey D. Rotenberg | jrotenberg@tpw.com |
| Patrick J. Smith | psmith@tpw.com |

18

     A true and correct copy of the foregoing **DEFENDANT LSI APPRAISAL, LLC'S REPLY**

19

**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** was served via United

20

States Mail, postage prepaid, to the following party:

21

       Kerry Ford Cunningham

22

       THATCHER PROFITT & WOOD LLP

23

       Two World Financial Center
       New York, NY  10281

24

DATED:   August 1, 2008 at San Francisco, California.

25

26

27

          /s/   *Margaret A. Keane*
          MARGARET A. KEANE

28