1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  MICHAEL T. FOGARTY (#065809)
   LAURA J. FOWLER (#186097)
3  555 Capitol Mall, 9th Floor
   Sacramento, CA  95814
4  Phone: 916.444.3900
   Fax:    916.444.3249
5
   THACHER PROFFITT & WOOD LLP
6  RICHARD F. HANS (*Pro Hac Vice*, SBN 2593200NY)
   PATRICK J. SMITH (*Pro Hac Vice*, SBN 2402394NY)
7  JEFFREY D. ROTENBERG (*Pro Hac Vice* SBN 3984994NY)
   2 World Financial Center
8  New York, NY 10281
   Phone: 212.912.7400
9  Fax: 212.912.7751

10 Attorneys for Defendant eAppraiseIT, LLC

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14 FELTON A. SPEARS, JR. and SIDNEY        )   Case No. C 08 00868 HRL
   SCHOLL, on behalf of themselves and all others )
15 similarly situated,                     )   CLASS ACTION
                                           )
16                 Plaintiffs,             )   EAPPRAISEIT LLC'S REPLY
                                           )   MEMORANDUM OF POINTS AND
17         v.                              )   AUTHORITIES IN SUPPORT OF ITS
                                           )   MOTION TO DISMISS
18 WASHINGTON MUTUAL, INC., a              )
   Washington corporation; WASHINGTON      )
19 MUTUAL BANK FA (aka WASHINGTON          )
   MUTUAL BANK); FIRST AMERICAN            )   Date:     Friday, September 19, 2008
20 EAPPRAISEIT, a Delaware corporation; and )   Time:     9:00 a.m.
   LENDERS SERVICES, INC.,                 )   Place:    Courtroom #6
21                                         )
                                           )
22                 Defendants.             )

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

MHA
cDonough Holland & Allen PC
Attorneys at Law

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii

I.      Plaintiffs Have Failed to Allege that EA Violated RESPA.....................................2

        A.      Section 8(a) ....................................................................................................2

        B.      Section 8(b) ....................................................................................................5

II.     Plaintiffs' UCL Claim should be Dismissed .............................................................5

III.    Plaintiffs Cannot Allege a Breach of Contract Claim Against EA ...........................6

        A.      No Contractual Relationship Existed between EA and the Plaintiffs ............6

        B.      Plaintiffs Fail to Allege the Terms of any Contract with EA.........................9

IV.     The CLRA is Inapplicable to Plaintiffs' Loan Transactions with WaMu............10

V.      Plaintiffs Fail to set forth a Basis for an Unjust Enrichment Claim against EA ...................12

CONCLUSION ....................................................................................................................13



1

## TABLE OF AUTHORITIES

2                                                                                              **Page**

3  **Cases**

4  *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*
       158 Cal. App. 4th 226 (2007)...........................................................................10
5
    *Aron v. U-Haul Co. of California*
6       143 Cal. App. 4th 796 (2006) ............................................................................5

7  *Bardin v. DaimlerChrysler Corp.*
       136 Cal. App. 4th 1255 (2006) .........................................................................11
8
    *Bell Atl. Corp. v. Twombley*
9       --- U.S. ---, ---, 127 S. Ct. 1955 (2007) .............................................................2

10  *Boulware v. Crossland Mortg. Corp.*
        291 F. 3d 261 (4th Cir. 2002) .............................................................................3
11
    *Buckland v. Threshold Enterprises, Ltd.*
12       155 Cal. App. 4th 798 (2007) ...........................................................................11

13  *Busby v. JRHBW Realty, Inc.*
        513 F. 3d 1314 (11th Cir. 2008) .........................................................................5
14
    *Carias v. Lenox Financial Mortgage Corp.*
15       No. 07-0083, 2008 WL 397339, at *4 (N.D. Cal. Feb. 8, 2008).........................5

16  *Daugherty v. American Honda Motor Corp. Inc.*
        144 Cal. App. 4th 824 (2006) ...........................................................................11
17
    *Falk v. GMC*
18       496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...........................................................11

19  *Hess v. Ford Motor Co.*
        27 Cal. 4th 516 (2002) ........................................................................................6
20
    *Kahrer v. Ameriquest Mortg. Co*
21       418 F. Supp. 2d 748 (W.D.Pa. 2006).................................................................4

22  *Markowitz v. Fidelity Nat. Title Co.*
        142 Cal. App. 4th 508 (2006) .............................................................................8
23
    *Matthau v. Superior Court*
24       151 Cal. App. 4th 593 (2007) .............................................................................8

25  *Mirkin v. Wasserman*
        5 Cal. 4th 1082 (1993) ......................................................................................11
26
    *Nymark v. Heart Fed. Savings & Loan Ass'n*
27       231 Cal. App. 3d 1089 (1991) .....................................................................10, 11

28  *Pellegrini v. Weiss*
        --- Cal. Rptr.3d ---, 2008 WL 2894849, at *6 (2008) ........................................9

M·H·A
cDonough Holland & Allen PC
Attorneys at Law

*Prouty v. Gores Technology Group*
   121 Cal. App. 4th 1225 (2004)................................................................8

*Richard B. Levine, Inc. v. Higashi*
   131 Cal. App. 4th 566 (2005).................................................................9

*Schuetz v. Banc One Mortg. Corp.*
   292 F. 3d 1004 (9th Cir. 2002)..............................................................3

*Smith v. Microskills San Diego L.P.*
   153 Cal. App. 4th 892 (2007).................................................................8


**Statutes**

Business & Professions Code
   § 17204........................................................................................5

Civil Code
   § 1559...........................................................................................8


**Federal Statutes**

24 Code of Federal Regulations
   § 3500.14.......................................................................................3
   § 2607(c)........................................................................................4


**Rules**

Federal Rules of Civil Procedure
   Rule 12(b)(6)..................................................................................1

**MHA**
**cDonough Holland & Allen pc**
Attorneys at Law

1    Defendant eAppraiseIT, LLC (hereinafter "EA"), erroneously sued herein as First American

2    eAppraiseIT, respectfully submits this Reply Memorandum of Points and Authorities in Support of

3    its Motion to Dismiss the First Amended Complaint ("Complaint") in its entirety pursuant to

4    Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5    Plaintiffs' Memorandum in Opposition to Defendants WaMu and First American

6    eAppraiseIT's Motion to Dismiss the First Amended Complaint ("Opposition Brief") cannot

7    overcome the Complaint's deficiencies so as to salvage plaintiffs' claims against EA. Specifically,

8    the Real Estate Services Procedures Act ("RESPA") Section 8(a) claim fails because the alleged

9    "kickback" identified in the Opposition Brief does not fall within the universe of activities this

10   section is intended to combat. The Section 8(b) claim also fails because plaintiffs did receive timely

11   and complete appraisals, appraisals WaMu required in order to make the loans, in exchange for their

12   payment of fees.

13   The Court need not reach the merits of the remaining claims because they should be

14   dismissed on preemption grounds as discussed further in WaMu's reply brief. Independently, with

15   respect to the Unfair Competition Law ("UCL") claims, nothing in the Opposition Brief changes the

16   fact that plaintiffs cannot plausibly charge that they have been damaged by EA's alleged

17   wrongdoing. Plaintiffs also cannot show the existence of a contract with EA nor have they

18   adequately alleged the terms of the contracts EA has supposedly breached. While plaintiffs posit a

19   number of theories of liability in the Opposition Brief, there is no basis for these contentions in the

20   Complaint. Even assuming the underlying facts were alleged, they would be insufficient to state a

21   breach of contract claim. Plaintiffs' argument that the California Legal Remedies Act ("CLRA")

22   claim should survive because the appraisals constitute financial services is belied by their plainly

23   commercial character as reflected in the appraisal reports themselves and embodied in the theory of

24   plaintiffs' case. Finally, putting aside the question of whether plaintiffs can even assert a separate

25   cause of action for unjust enrichment under California law, such a claim would fail here as plaintiffs

26   have not even challenged EA's argument that plaintiffs have improperly employed group pleading

27   and failed to identify the wrongdoing engaged by each individual defendant.

28   / / /

MHA

cDonough Holland & Allen PC
Attorneys at Law

EAPPRAISEIT'S REPLY MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS        1117848v3 36887/0002

1    Thus, for the foregoing reasons as well as those set forth in each of the defendants' opening

2    briefs in support of their motions to dismiss and their reply briefs, plaintiffs' have failed to state a

3    claim against EA for which relief can be granted.  *See Bell Atl. Corp. v. Twombley*, --- U.S. ---, ---,

4    127 S. Ct. 1955 (2007) (motions to dismiss should be granted where plaintiffs fail to allege "enough

5    facts to state a claim to relief that is plausible on its face.").[1]

6        I.   <u>Plaintiffs Have Failed to Allege that EA Violated RESPA</u>

7    In a futile attempt to state a claim under RESPA, plaintiffs employ colorful terminology in

8    their Opposition Brief.  They state that the defendants were involved in a "conspiracy" and that the

9    appraisals were a "sham" or "counterfeit."  This rhetoric is nothing more than a thinly veiled attempt

10   to deflect focus from the insufficiencies of their Complaint.  Regardless of the bald characterizations

11   plaintiffs have chosen to make in their Opposition Brief, they must show that the allegations of their

12   Complaint state a claim under RESPA.  This they cannot do.

13       A.   Section 8(a)

14   In the simplest terms, plaintiffs must show that EA provided a "thing of value" to WaMu in

15   exchange for WaMu's referral in order to state a claim under section 8(a) of RESPA.  In the

16   Opposition Brief, plaintiffs invite the Court not to address this argument, contending that any dispute

17   as to whether EA provided a "thing of value" to WaMu for referrals should not be considered on a

18   motion to dismiss.  In support, they rely on the maxim that the Court must accept as true plaintiffs'

19   "well-pled allegations which support their RESPA claims."  While this may be an accurate

20   formulation of the governing legal standard, it does not mean that the allegations themselves, taken

21   as true, should not be analyzed critically. The allegation that EA's appraisals were overvalued does

22   not lead to the conclusion that EA provided some additional "thing of value" beyond the allegedly

23   false appraisals themselves.  Kickbacks are unlawful, secret payments designed to generate or

24   increase the flow of business to the payor of the kickback, who in effect shares a portion of his profit

25   in return for the business.  There is no credible allegation in the Complaint that EA shared any

26   portion of its fees with WaMu.

27   

28   [1]   EA hereby incorporates all applicable arguments made by co-defendants LSI and WaMu in their respective reply
briefs filed in connection with their motions to dismiss.

MHA
cDonough Holland & Allen PC
Attorneys at Law

1    Plaintiffs now contend in their Opposition Brief that EA exchanged "things of value" with

2  WaMu in the form of "sham appraisals" for a stream of "appraisal business." They argue that this

3  purported claim is enough to establish a violation of RESPA Section 8(a). (Opposition Brief at 5-6).

4  While this may constitute a sufficient allegation of a fraud scheme, i.e. a scheme in which EA agreed

5  to supply fraudulent appraisals in return for a fee, the purported scheme does not have as a feature

6  the making of supplemental or additional payments, or of fee-splitting, all of which would be the

7  hallmarks of a kickback arrangement that might be cognizable under RESPA. This is nothing more

8  than a backdoor attempt to supplement the Complaint's plainly inadequate allegations.

9    Moreover, the alleged "kickback" identified in the Opposition Brief does not fall within the

10  scope of activities Section 8(a) of RESPA is intended to address. *See, e.g., Schuetz v. Banc One*

11  *Mortg. Corp.*, 292 F. 3d 1004, 1009 (9th Cir. 2002); *see also Boulware v. Crossland Mortg. Corp.*,

12  291 F. 3d 261, 266 (4th Cir. 2002) (describing Section 8(a) as "seek[ing] to eliminate kickbacks or

13  referral fees paid to a third party … Section 8(a) prohibits the payment of formal kickbacks or fees

14  for the referral of business"). The "thing of value" EA allegedly provided WaMu, according to the

15  plaintiffs, is the very thing WaMu directly paid EA to provide - appraisals. In their Opposition

16  Brief, plaintiffs cite the governing regulation and improperly suggest that it lists "counterfeit, sham

17  appraisals." Not so. The applicable regulation, quoted in full below, further shows why there is no

18  "thing of value" here:

19    (d)    *Thing of value*. This term is broadly defined in section 3(2) of RESPA (12

20  U.S.C. 2602(2)). It includes, without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of

21  partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained

22  or increased earnings, increased equity in a parent or subsidiary entity; special bank deposits or accounts, special or unusual banking terms, services of all types at special

23  or free rates, sales or rentals at special prices or rates, lease or rental payments based in whole or in part on the amount of business referred, trips and payment of another

24  person's expenses, or reduction in credit against an existing obligation. The term 'payment' is used throughout §§ 3500.14 and 3500.15 as synonymous with the giving

25  or receiving any "thing of value" and does not require transfer of money.

26  24 C.F.R. § 3500.14. Here, EA did not provide WaMu with any "thing of value" in connection with

27  the appraisal at issue here. To the contrary, the only "thing" that EA provided was the appraisal

28  itself.


cDonough Holland & Allen PC
Attorneys at Law

EAPPRAISEIT'S REPLY MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS    1117848v3 36887/0002

The language of RESPA makes clear that EA should be protected from overreaching plaintiffs seeking to transform the performance of ordinary business services into private causes of action. Section 2607(c) reflects this policy by protecting "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." To allow otherwise would necessarily interrupt the ordinary functioning of the mortgage and home loan industry. Indeed, if plaintiffs' superficial allegations were enough to state a claim under 8(a), then anyone in the home loan business who contracts with others can be hailed into court for alleged violations of RESPA – something that was never intended by the statutory scheme.

The case of *Kahrer v. Ameriquest Mortg. Co*, 418 F. Supp. 2d 748, 749 (W.D.Pa. 2006), cited by plaintiffs, does not support their position. (Opposition Brief at 5). In *Kahrer*, the plaintiffs were credit card holders and had fallen behind on their credit card payments. A representative of the plaintiff's credit card company called one of the plaintiffs to discuss her account and, over the course of the call, allegedly referred her and ultimately "patched [her] through" to Ameriquest, a mortgage company, for "the purpose of refinancing her home." Ameriquest then "encouraged plaintiff to apply for a mortgage refinancing loan," a portion of which would be used by the plaintiff "to pay off the debt she owed to" her credit card company. Plaintiff ultimately did close on such a loan with Ameriquest and did use a portion of the loan proceeds to satisfy her credit card debt. The plaintiff then filed suit against Ameriquest for, among other things, a violation of section 8(a) of RESPA. In denying a dismissal motion, the Court found that the plaintiff had alleged a violation of Section 8(a), since the credit card company had referred the plaintiff to Ameriquest in exchange for a "thing of value." The "thing of value" in that case was paying off her credit card debt through the home mortgage refinancing.

The factual scenario in *Kahrer* is entirely distinct from the instant action. There, the credit card company received payment on an outstanding debt in exchange for the referral to Ameriquest. Neither WaMu nor any other defendants in this case referred either of the plaintiffs to any other service provider. To the contrary, WaMu arranged for EA to be paid for appraisals. Plaintiffs' issues with the appraisals do not change the fact that EA actually provided tangible services in exchange for compensation.

MHA

cDonough Holland & Allen PC
Attorneys at Law

B.    Section 8(b)

Plaintiffs' RESPA Section 8(b) claim against EA is equally deficient.  In a contrived effort to fit themselves within the ambit of section 8(b), plaintiffs allege that they were charged for services not provided.  This is just not the case, as reflected in the appraisal report that plaintiffs attached to the Original Complaint as Exhibit 2 and as evidenced by plaintiffs' own allegations.  There is no allegation in the Complaint that EA did not provide appraisals for the properties for which it was commissioned.  As evidenced by the appraisal reports, plaintiffs did receive the required service.  Additionally, without these reports, WaMu could not and would not have made the loans plaintiffs needed to purchase their homes.  So, there can be no question that EA provided the reports required by WaMu.  The fact that plaintiffs now characterize those appraisals as "shams" or "counterfeit" does not provide a basis for their RESPA claim.

As this Court observed in *Carias v. Lenox Financial Mortgage Corp.,* No. 07-0083, 2008 WL 397339, at *4 (N.D. Cal. Feb. 8, 2008), a case cited by plaintiffs in their Opposition Brief, the fact that a transaction involved alleged abuses is not necessarily sufficient to give rise to a private cause of action under RESPA.  The Court there found that because the plaintiff could not demonstrate that he was "injured, or even affected" by the alleged scheme, the RESPA claim must fail.  Similarly, here, plaintiffs' Complaint is devoid of allegations sufficient to give rise to a claim of damages under either Section 8(a) or 8(b) of RESPA.[2]

II.    Plaintiffs' UCL Claim should be Dismissed

As noted in EA's opening brief, to establish standing under the California statutory UCL, plaintiffs must show that they have suffered damages as a result of the alleged conspiracy between the defendants and the receipt of the allegedly sham appraisals.  *See* Brief at 11; Bus. & Prof. Code § 17204; *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802 (2006).  Plaintiffs fail to do so.  Property appraisals are prerequisites to the issuance of loans to prospective home purchasers.

---

[2]  Plaintiffs' surprise that defendants do not cite to *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1319-21 (11th Cir. 2008) is misplaced.  In *Busby*, the plaintiff's real estate agent lowered its commission in order to encourage the seller to accept the plaintiff's offer for the home.  During the closing and settlement, the plaintiff was charged a $149 "Administrative Brokerage Commission" fee.  Plaintiff alleged that this fee violated Section 8(b) because no work was done by the broker in support of this separate hidden charge.  This is quite different from the case here, where EA clearly performed an appraisal and where plaintiffs are challenging its quality.


**MHA**
cDonough Holland & Allen PC
Attorneys at Law

EAPPRAISEIT'S REPLY MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS    1117848v3 36887/0002

1   Therefore, the money expended by plaintiffs for the cost of the appraisals to WaMu cannot be

2   attributed to the defendants' alleged acts of unfair competition, but rather simply to the fact that

3   plaintiffs sought to obtain home mortgage loans.   In the same vein, plaintiffs cannot plausibly

4   contend that they lost or were denied money or property due to the defendants' alleged wrongdoing.

5   Again, the cost of an appraisal was an unavoidable component of their obtaining mortgage loans.

6   Plaintiffs' myopic focus in their Opposition Brief on the money earned by defendants in connection

7   with the appraisals is emblematic of their inability to adequately allege personal injuries as

8   contemplated by the UCL statute.

9       Moreover, plaintiffs' suggestion that appraisals were somehow "material" to their decision to

10  proceed with the mortgage loan transaction is unsupportable.   As made clear by plaintiffs' own

11  allegations, they did not request appraisals.   Rather, as Plaintiffs admit, the appraisals at issue were

12  procured solely at WaMu's initiative. (Opposition's Brief at 22-23).   The fact that the appraisal

13  allows plaintiffs to rely on its contents does not mean, as plaintiffs assert in their Opposition Brief,

14  that the appraisals were material to any decision by plaintiffs to proceed with a mortgage loan from

15  WaMu.

16      III.    Plaintiffs Cannot Allege a Breach of Contract Claim Against EA

17          A.    No Contractual Relationship Existed between EA and the Plaintiffs

18      Plaintiffs have not and cannot demonstrate a contractual relationship with EA.   Having failed

19  to do so in the Complaint, plaintiffs now in their Opposition Brief attempt to explain the basis for a

20  putative contractual relationship between themselves and EA.   They first point to the fact that WaMu

21  acted as the plaintiffs' agent and procured an appraisal from EA on their behalf.   On that basis,

22  plaintiffs conclude that there is an agency relationship between WaMu and the plaintiffs and, in turn,

23  a contractual relationship between EA and the Plaintiffs.   (Opposition Brief at 24).   These are new

24  allegations not contained in the Complaint and therefore cannot be considered by the Court on this

25  motion to dismiss.   Regardless, such an agency relationship between WaMu and EA, even if

26  properly alleged, is insufficient to establish a contractual relationship between EA and the plaintiffs.

27  *See Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002).

28  / / /

MHA

McDonough Holland & Allen PC
Attorneys at Law

1    In further support of their contract claim against EA, plaintiffs assert in the Opposition Brief

2    that the appraisal reports identified the plaintiffs as "clients," another fact not alleged in the

3    Complaint. (Opposition Brief at 23). Plaintiffs boldly conclude that references to them by name in

4    their respective appraisal reports "certainly establish[] a direct contractual relationship" with EA. *Id.*

5    This is a legal conclusion masqueraded as fact and need not be accepted as true in considering

6    defendants' motion to dismiss. Without factual allegations to support a contractual relationship

7    between EA and the plaintiffs, the breach of contact claim, as against EA, must fail.

8    Moreover, this contention is, at best, disingenuous. First, only one appraisal report was

9    submitted by plaintiffs as an Exhibit to their Complaint -- the appraisal performed in connection to

10   the property purchased by plaintiff Sidney Scholl. (Original Complaint, Ex. 2; Kravec Affidavit

11   Ex. 2). WaMu did, however, submit the appraisal reports which are attached to the Declaration of

12   Stephen Rummage in Support of WaMu's Motion to Dismiss as Exhibits B and G respectively. In

13   both of these appraisal reports, both plaintiffs are listed as the borrowers, <u>not</u> as the clients. In fact,

14   WaMu is listed as the "Lender/Client." The only portions of the appraisals that list the Plaintiffs as

15   the client are the attachments entitled "subject photos" and "additional field text," which list the

16   plaintiffs as the "Borrower/Client" and WaMu as the "Lender." Moreover, the only documentation

17   that was filed with the Complaint on behalf of plaintiff Spears is Alliance Title Company's closing

18   statement, which lists plaintiff Spears and his wife as the "Buyer/Borrower." (Original Complaint,

19   Ex. 3; Kravec Affidavit Ex. 3.) Thus, plaintiffs' attempt to infer that the borrowers were EA's

20   clients and thus were owed contractual duties must fail as it is without foundation in the pleadings or

21   any other documents properly before the court on this dismissal motion.

22   Even assuming plaintiffs' dubious reading of the appraisal reports is accurate, the

23   identification of plaintiffs as "clients" certainly does not establish a contractual relationship with EA.

24   EA was indisputably not a party to any contract with the plaintiffs. Thus, based on plaintiffs' own

25   allegations, any alleged deficiencies in EA's performance of its appraisal management function in

26   connection with WaMu's loans to plaintiffs do not give rise to a viable breach of contract claim.

27   Obviously recognizing the defects of their contract claim, plaintiffs purport to allege a third

28   party beneficiary theory. Even characterizing themselves as "third party beneficiaries," however, is

MHA
cDonough Holland & Allen PC
Attorneys at Law

unavailing.[3]  Under Civil Code section 1559, "a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  To enforce a third-party contract, plaintiff must allege that the contract was made expressly for his or her benefit. *Prouty v. Gores Technology Group,* 121 Cal. App. 4th 1225, 1232 (2004).  The intent to benefit a third party is gathered from the contract as a whole, taking into account the totality of the circumstances under which the parties entered into it.  *Id.*  Thus, to establish standing to enforce the contract, the plaintiff must specifically plead the facts and circumstances showing the requisite intent to benefit him or her.  *Smith v. Microskills San Diego L.P.*, 153 Cal. App. 4th 892, 898 (2007) (noting that the "term 'expressly' in Civil Code section 1559 … means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.") (internal citation and quotations omitted); *Markowitz v. Fidelity Nat. Title Co.*, 142 Cal. App. 4th 508, 527-28 (2006).  Plaintiffs do not and cannot allege that the intent of any agreement here was "unmistakably" to benefit them. *Smith*, 153 Cal. App. 4th at 898; *see also Matthau v. Superior Court*, 151 Cal. App. 4th 593 (2007) (holding that the mere fact that a third party may benefit from an agency agreement between two parties does not make the third party a beneficiary of the agency agreement.  Instead, a putative third party's rights are predicated on the contracting parties' express intent to benefit that third party).  In fact, the "intent" of the appraisal was explicitly set forth to allow "for the lender/client [WaMu] to evaluate the property that is the subject of this appraisal to the mortgage finance transaction" to ensure that its loan is sufficiently collateralized.  (Complaint at ¶ 12; Original Complaint, Ex. 2).

As noted above, any rights inuring to plaintiffs under any contract or agreement between the defendants require that as the contracting parties (WaMu and EA) expressly intended for plaintiffs to benefit from said contract.  Plaintiffs cannot conceivably meet this standard.  Plaintiffs' entire lawsuit is predicated upon their theory that WaMu and EA "conspired" to provide inflated appraisal figures.  Thus, the notion that the defendants intended to benefit plaintiffs and other borrowers is irreconcilable with plaintiffs' entire Complaint.

/ / /

/ / /

---

[3]  This failure supports denial of any motion by plaintiffs for leave to further amend their Complaint on this ground.

MHA
cDonough Holland & Allen PC
Attorneys at Law

B.    Plaintiffs Fail to Allege the Terms of any Contract with EA

Plaintiffs cannot overcome the Complaint's insufficient detail concerning the contract at issue and EA's supposed breach. Notwithstanding the fact that there are no clear terms of the contract set forth in the Complaint, plaintiffs argue that the Court should "imply" the terms of the contract and, specifically, that EA is required to have "performed in compliance with applicable law." (Opposition Brief at 25). Ironically, this applicable law emanates precisely from the federal regulatory regime plaintiffs endeavor to discount when discussing preemption. While plaintiffs continue to characterize the appraisal reports as "counterfeit" and "shams" in conclusory fashion, they altogether fail to provide any facts to illustrate how EA breached an enforceable contractual duty.

Additionally, the Opposition Brief makes vague claims that the Defendants owed a duty to the plaintiffs "under the contractual duty of good faith and fair dealing … arising from the agreement." (Opposition Brief at 26). This theory of liability with its associated duties and implied terms was not set forth in the Complaint and therefore is irrelevant to whether plaintiffs have stated a cognizable claim sufficient to withstand any motions to dismiss.

Finally, plaintiffs proceed to argue breach of fiduciary duty, claiming that such duties may arise from their agreement with EA. (Opposition Brief at 26). Plaintiffs contend that EA, as subagent to WaMu, owed fiduciary duties to plaintiffs and breached them by failing to "deal honestly with plaintiffs." (Opposition Brief at 27). In making these arguments, plaintiffs move beyond any conceivable contract claim and indisputably outside the four corners of their Complaint. Breach of fiduciary duty is a separate cause of action in tort, subject to independent elements and pleading requirements. *Pellegrini v. Weiss*, --- Cal. Rptr.3d ---, 2008 WL 2894849, at *6 (2008). In order to plead a cause of action for breach of fiduciary duty, a plaintiff must show the existence of a fiduciary relationship, its breach, and damage caused by the breach. *Id.* These elements do not appear anywhere in the Complaint, nor could they. The existence of a fiduciary relationship derives from control by one person over the property of another. The mere placing of trust in another person does not automatically create a fiduciary relationship, nor does the mere existence of a contractual relationship give rise to fiduciary duties. *Richard B. Levine, Inc. v. Higashi*, 131 Cal. App. 4th 566,

MHA
cDonough Holland & Allen PC
Attorneys at Law

585 (2005). Before a person can be charged with a fiduciary obligation, he or she must either knowingly undertake to act on behalf of and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. *See Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226 (2007).

Here, there are absolutely no allegations in the Complaint to remotely suggest that such a relationship existed. For that reason alone, this theory provides no basis for denying Defendants' motions to dismiss.

IV.    The CLRA is Inapplicable to Plaintiffs' Loan Transactions with WaMu

Given the weight of authority and logic, this Court should reject plaintiffs' claim that the transactions between plaintiffs and WaMu somehow "involved" financial services in addition to the provision of a loan. (Opposition Brief at 32-33). The appraisals were not sold to the plaintiffs and the fact that the plaintiffs are permitted to rely on the appraisals does not mean they are a financial service for purposes of the CLRA. Rather, as is evident from the "intended use" language set out in the report, the appraisal reports are plainly commercial. The entirety of plaintiffs' suit derives from the commercial character of these loans, as plaintiffs assert WaMu procured these appraisals to support loan revenue -- clearly a commercial undertaking. *See, e.g.,* Complaint at ¶¶ 22-23. That WaMu charged plaintiffs for the preparation of the reports is not relevant to the question of whether the appraisals were services provided to them.

In addition, in footnote 19 of the Opposition Brief, plaintiffs unpersuasively purport to distinguish *Nymark v. Heart Fed. Savings & Loan Ass'n,* 231 Cal. App. 3d 1089, 1099 (1991). First, the fact that *Nymark* originated from a motion for summary judgment does not make it inapposite to this case. To the contrary, the *Nymark* court espoused a rule that is particularly appropriate to the claims as alleged here: homeowners attempting to establish liability based on the outcome of an appraisal. Regardless of whether the Court considers the "evidence" or the "pleadings," the result is the same. In the words of the *Nymark* court, "the borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain, i.e., not to insure the success of the investment." *Id.* at 1099.

MHA
cDonough Holland & Allen PC
Attorneys at Law

1    Second, plaintiffs try to conveniently sidestep the *Nymark* holding by claiming that the

2  appraisals were performed "to inflate values and facilitate sales of mortgage-backed securities."

3  (Opposition Brief at n. 19).  This description of plaintiffs' claims further illustrates the fact that they

4  are undeniably commercial in nature.   In any event, regardless of how plaintiffs frame their

5  particular claims, they are still attempting to challenge the adequacy of the appraisals.   What

6  plaintiffs must recognize is that California courts have severely limited (if not disallowed altogether)

7  the circumstances under which borrowers can levy such a challenge.   Third, Plaintiffs purport to

8  distinguish *Nymark* on the ground that it involved a negligence claim whereas they are asserting a

9  statutory-based claim.   This argument is spurious.   What is relevant for purposes of the CLRA is

10  determining whether an appraisal can qualify as a "service."   By statute, services are excluded and

11  cannot be the subject of a CLRA claim if it has a "commercial or business use."   *Nymark* further

12  shows that the appraisal is, indeed, a "commercial" service.

13    In the Opposition Brief, plaintiffs elaborate on their claims by stating that the borrowers

14  would have resisted paying the required appraisal fees had they known they were being provided a

15  sham appraisal.  (Opposition Brief at 37).  Absent from the Complaint, however, are any allegations

16  by the plaintiffs that had they, or any other reasonable consumer, known how the specific appraisers

17  were chosen, they would have foregone their entire loan application with WMB.  Nor have plaintiffs

18  alleged that they had any expectation or assumptions about how appraisers were chosen.   Thus,

19  plaintiffs cannot claim that they either relied on an alleged misrepresentation or that the

20  misrepresentation was material.   As such, the plaintiffs CLRA claim can be dismissed on this

21  independent ground.[4]

---

[4]   In order to have standing to sue under the CLRA, a plaintiff must demonstrate that he or she actually relied on a material misrepresentation.  *See Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 811 (2007); *Falk v. GMC*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007).  In order for non-disclosed information to be material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently."  *Id.*  (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).  Crucially, in order to assert a valid claim under the CLRA, plaintiffs must demonstrate that reasonable consumers had an expectation or an assumption about the specific matter in question.  *Id.*  (citing *Daugherty v. American Honda Motor Corp. Inc.*, 144 Cal. App. 4th 824, 838 (2006) (dismissing CLRA claims for alleged failure to disclose engine defects where engine defects only manifested themselves long after warranty had expired and posed no safety concerns)); *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) (dismissing CLRA claim because plaintiffs could not demonstrate that had they known the type of material used to manufacture the exhaust pipe they would not have purchased the car).

**MHA**
cDonough Holland & Allen PC
Attorneys at Law

EAPPRAISEIT'S REPLY MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS    1117848v3 36887/0002

V.    Plaintiffs Fail to set forth a Basis for an Unjust Enrichment Claim against EA

Nothing in plaintiffs' Opposition Brief establishes an unjust enrichment cause of action under California law and there is no reason why this Court cannot rule on defendants' motion to dismiss that no such claim exists.  As an independent basis for challenging the unjust enrichment theory, EA took issue with the fact that plaintiffs have failed to identify the precise actionable conduct engaged in by each defendant.  Throughout the allegations relating to this claim, plaintiffs use an insufficient form of group pleading and repeatedly refer to "Defendants" collectively, without specifying which defendants engaged in which allegedly unlawful actions.  (*See* Brief at 17).  Plaintiffs do not even attempt to address this challenge to the unjust enrichment claim, apparently conceding its merit.

Regardless, as evident from the appraisal reports attached to the complaint and other filings in connection with the motions to dismiss, EA did arrange for the preparation of appraisals in connection with plaintiffs' loans.  These appraisals reflect property comparisons and analyses expected in such reports, and these reports underlay the loans made by WaMu to plaintiffs, which plaintiffs used to purchase their homes.  *See*, *e.g.*, Complaint, Ex. 2.  Thus, the notion that EA did not perform as required and therefore was unjustly enriched by plaintiffs is without merit.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /



1

## CONCLUSION

2      For the foregoing reasons, as well as for the reasons set forth in EA's Memorandum of Points

3  and Authorities in Support of Motion to Dismiss, and the Memoranda of Points and Authorities

4  submitted by defendants WaMu and LSI in support of their respective motions to dismiss, the First

5  Amended Complaint should be dismissed in its entirety, with prejudice, as against defendant EA.

6  Dated:  August 1, 2008

7                                            McDONOUGH HOLLAND & ALLEN PC
                                             Attorneys at Law
8

9
                                             By: _____ /s/ Laura J. Fowler _____
10                                                       LAURA J. FOWLER

11                                           *Attorneys for Defendant eAppraiseIT, LLC*

12

13                                           THACHER PROFFITT & WOOD LLP

14

15                                           By: _____ /s/ Richard F. Hans _____
                                                       RICHARD F. HANS
16
                                             *Attorneys for Defendant eAppraiseIT, LLC*
17

18

19

20

21

22

23

24

25

26

27

28

EAPPRAISEIT'S REPLY MEMO OF P'S & A'S IN SUPPORT OF MOTION TO DISMISS        1117848v3 36887/0002