Stephen M. Rummage, *pro hac vice*
Jonathan M. Lloyd, *pro hac vice*
Sam N. Dawood (Cal. Bar No. 178862)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile:  (415) 276-6599
Email:  steverummage@dwt.com
          samdawood@dwt.com

Attorneys for Defendant Washington Mutual Bank

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE

| | |
|---|---|
| SIDNEY SCHOLL and FELTON A. SPEARS, JR., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WASHINGTON MUTUAL, INC., a Washington corporation; WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK); FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC.,<br><br>                    Defendants. | Case No. 5:08-cv-00868 (RMW)<br><br>CLASS ACTION<br><br>**WASHINGTON MUTUAL BANK'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:  Friday, September 19, 2008<br>Time: 9:00 a.m.<br>Department: SJ, Courtroom 6, 4th Floor |

*DAVIS WRIGHT TREMAINE LLP*

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS ............................................................................. 1

III.  ARGUMENT AND AUTHORITY .......................................................................... 3

    A.    Plaintiffs Have Not Stated a RESPA Claim against WMB. ......................... 3

        1.    Plaintiffs Have Not Stated a Claim under RESPA Section 8(a).................... 3

            a.    Plaintiffs Have Not Alleged Payment of a "Thing of Value."................... 3

            b.    Plaintiffs Have Not Properly Alleged a "Referral." ................................. 4

        2.    Plaintiffs Have Not Stated a Claim under RESPA Section 8(b). ................. 6

    B.    Plaintiffs Have Not Stated any Claims under California Law................................... 8

        1.    Federal Law Preempts Plaintiffs' State Law Claims................................... 8

            a.    Plaintiffs' Claims Fall within Section 560.2(b), and That Ends the Preemption Inquiry. ................................................................................... 9

            b.    The Fact that Plaintiffs Assert Claims under "General" State Law Makes No Difference.................................................................................. 9

        2.    Plaintiffs Have Not Stated Claims for UCL or CLRA Violations or for Breach of Contract or Unjust Enrichment. .................................................. 11

            a.    Plaintiffs Lack Standing to Assert UCL Claims against WMB............... 11

            b.    Plaintiffs Have Not Stated a CLRA Claim. ............................................ 13

                (1)   No "Good or Service".................................................................... 13

                (2)   No Alleged Misrepresentation or Omission by WMB .................. 13

                (3)   No Damages ................................................................................... 14

            c.    Plaintiffs Have Not Stated a Claim for Breach of Contract.................... 14

            d.    Plaintiffs Have Not Stated a Claim for Unjust Enrichment.................... 15

IV.   CONCLUSION ........................................................................................................ 15

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (RMW)

DWT 11509865v5 0013149-000099

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly,*
  127 S. Ct. 1955 (2007)...................................................................................................1, 5

*Boulware v. Crossland Mortgage Corp.,*
  291 F.3d 261 (4th Cir. 2002) .........................................................................................6, 7

*Boursiquot v. Citibank F.S.B.,*
  323 F. Supp. 2d 350 (D. Conn. 2004)................................................................................11

*Busby v. JRHBW Realty, Inc.,*
  513 F.3d 1314 (11th Cir. 2008) ...........................................................................................6

*Chaires v. Chevy Chase Bank, F.S.B.,*
  748 A.2d 34 (Md. Ct. Spec. App. 2000)..............................................................................9

*Cohen v. JP Morgan Chase & Co.,*
  498 F.3d 111 (2d Cir. 2007) ................................................................................................6

*Colwell Co. v. Hubert,*
  248 Cal.App.2d 567 (1967) ...............................................................................................15

*Ewert v. eBay, Inc.,*
  No. C-07-2198 RMW, 2008 WL 906162 (N.D. Cal. Mar. 31, 2008) ..................................15

*Falk v. General Motors Corp.,*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007)..............................................................................15

*First Nationwide Sav. v. Perry,*
  11 Cal.App.4th 1662 (1992) ..............................................................................................15

*Friedman v. Market Street Mortgage Corp.,*
  520 F.3d 1289 (11th Cir. 2008) .......................................................................................7, 8

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.,*
  148 Cal.App.4th 937 (2007) ................................................................................................5

*Geraci v. Homestead Bank,*
  347 F.3d 749 (9th Cir. 2003) ..............................................................................................7

*Graddon v. Knight,*
  138 Cal.App.2d 577 (1956) ...............................................................................................15

*Haehl v. Wash. Mut. Bank,*
  277 F. Supp. 2d 933 (S.D. Ind. 2003).................................................................................11

DAVIS WRIGHT TREMAINE LLP

ii

DAVIS WRIGHT TREMAINE LLP

*Hall v. Time, Inc.*,
    158 Cal.App.4th 847 (Jan. 7, 2008) ..................................................................................... 12

*Haug v. Bank of Am., N.A.*,
    317 F.3d 832 (8th Cir. 2003) ................................................................................................. 7

*Hirsch v. Bank of America, N.A.*,
    107 Cal.App.4th 708 (2003) ................................................................................................. 15

*In re Merscorp*,
    2008 U.S. Dist. LEXIS 40473 (S.D. Tex. May 16, 2008) ....................................................... 6

*In re Ocwen Loan Servicing LLC*,
    491 F.3d 638 (7th Cir. 2007) ............................................................................................... 10

*Kajitani v. Downey Sav. & Loan Ass'n, F.A.*,
    No. 07-000398 SOM/LEK, 2008 WL 2164660 (D. Haw. May 22, 2008) ............................ 11

*Krzalic v. Republic Title Co.*,
    314 F.3d 875 (7th Cir. 2002) ................................................................................................. 7

*Lane v. Residential Funding Corp.*,
    323 F.3d 739 (9th Cir. 2003) ............................................................................................ 4, 7

*Lectrodryer v. Seoulbank*,
    77 Cal.App.3d 723 (2000) .................................................................................................... 15

*Marks v. Ocwen Loan Servicing*,
    No. C-07-2133 SI, 2008 WL 344210 (N.D. Cal. Feb. 6, 2008) ............................................ 14

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ............................................................................................ 13

*Molosky v. Wash. Mut. Bank*,
    No. 07-CV-11247, 2008 U.S. Dist. LEXIS 3896 (E.D. Mich. Jan. 18, 2008) ...................... 11

*Moskowitz v. Washington Mut. Bank, FA*,
    768 N.E.2d 262 (Ill. App. Ct. 2002) .............................................................................. 10, 11

*Reyes v. Downey Sav. & Loan Ass'n, F.A.*,
    No. SACV 07-615-AG (CTx), 2008 WL 867722 (C.D. Cal. Mar. 29, 2008) ................... 10, 11

*Schuetz v. Bank One Mortgage Corp.*,
    292 F.3d 1004 (9th Cir. 2002) ............................................................................................... 7

*Silvas v. E\*Trade Mortgage Corp.*,
    514 F.3d 1001 (9th Cir. 2008) ....................................................................................... 8, 9, 11

*The Missing Link v. eBay*,
    No. C-07-4487 RMW, 2008 WL 1994886 (N.D. Cal. May 5, 2008) .....................................13

*Weizeorick v. ABN AMRO Mortgage Group, Inc.*,
    337 F.3d 827 (7th Cir. 2003) .....................................................................................................6

*Yeomalakis v. Wash. Mut. Bank*,
    No. 07-CV-11365-NG (D. Mass. Jan. 15, 2008) (see RJN).....................................................11


**STATUTES, REGULATIONS AND RULES**

12 U.S.C. § 1331 *et seq.* ...............................................................................................................12

12 U.S.C. § 2602(3)...........................................................................................................................3

RESPA, Section 8, 12 U.S.C. § 2607 ......................................................................................... 1, 4-7

12 C.F.R. § 560.2.....................................................................................................................1, 9, 10

12 C.F.R. § 564.1 *et seq.* ...................................................................................................2, 5, 9, 12

24 C.F.R. § 3500.2.........................................................................................................................3, 5

24 C.F.R. § 3500.14(d).................................................................................................................3, 4

Fed. R. Civ. P. 8(a) ..........................................................................................................................1


**AGENCY INTERPRETATIONS**

Interagency Statement, *Interagency Appraisal & Evaluation Functions*, at 2 (Oct. 28,
    2003)............................................................................................................................................2, 5


**OTHER AUTHORITIES**

Earl Phillips, *Undivided Unearned Overcharges Are OK, Other Undivided Unearned Fees
    Are Not*, CONSUMER CREDIT & TRUTH-IN-LENDING COMPLIANCE REPORT 2 (Sept.
    2007)...............................................................................................................................................6

USPAP 2008-2009, Statement on Appraisal Standards No. 9 (see RJN) .......................................5

DAVIS WRIGHT TREMAINE LLP

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (RMW)

DWT 11509865v5 0013149-000099

# I.     INTRODUCTION

Plaintiffs' opposition to WMB's motion relies on a combination of rhetoric that cannot be squared with the Complaint's factual allegations and a characterization of lender-obtained appraisals that conflicts with federal law.  The law, the loan documents, and the appraisal reports are clear, and they bar Plaintiffs' claims.  Plaintiffs' allegations of appraiser malpractice – without even alleging the inaccuracy of their own appraisals – do not state claims against WMB:

***First***, Plaintiffs have not stated a claim under RESPA Section 8(a) because they have not alleged that EA provided WMB with a "thing of value" in exchange for a "referral" of Plaintiffs' appraisal business.  Plaintiffs' arguments to the contrary rely on circular reasoning that no court has accepted.  The Court also should dismiss their RESPA Section 8(b) claim, as the Ninth Circuit is likely to join other circuits in rejecting "undivided, unearned fee" claims under that section.  In any event, Plaintiffs have not alleged such a claim, since they admit that appraisal services were performed on their properties, a fact that negates the "unearned fee" claim as a matter of law.

***Second***, HOLA preempts Plaintiffs' state law claims, which challenge WMB's "processing [or] origination" of mortgages, assessment of "loan-related fees," and loan-related disclosures, which federal law governs.  *See* 12 C.F.R. § 560.2(b)(5), (9) & (10).  Leaving aside preemption, Plaintiffs have not stated claims under California law, for a variety of reasons.

# II.     PLAINTIFFS' ALLEGATIONS

Plaintiffs rely on the rhetorical device of characterizing, over and over, the appraisals on their properties as "counterfeit, sham appraisals."  *See, e.g.,* Pl. Opp. 1:11, 1:25, 4:20, 4:26, 6:10.  *See also* 3:11 & 3:19 (referring to "false, sham reports").  But federal courts may not decide motions to dismiss based on rhetoric.  Instead, with special concern for the *in terrorem* effect of purported class actions, the Supreme Court has directed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007).  The allegations in a complaint "must be enough to raise a right to relief above the speculative level," *id.* at 1965, and "the 'plain statement'" required by Rule 8(a) must "possess enough heft to 'sho[w]' that the pleader is entitled to relief.'"  *Id.* at 1966.

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (RMW)

DWT 11509865v5 0013149-000099

DAVIS WRIGHT TREMAINE LLP

Stripping away their "labels and conclusions," Plaintiffs allege only that WMB, EA, and LSI agreed to use a "proven appraiser list" where possible, allegedly compiled with input from WMB. Compl. ¶¶ 44-49. They then allege that WMB's control over the use of the "proven appraiser list" violated federal regulations, which require "independent" appraisals. Compl. ¶¶ 50-56; *see also id. ¶¶ 25 et seq.* But, as WMB has explained (Mem. 3:12-21), Plaintiffs do not allege that this alleged conduct affected ***them*** at all:

- Mr. Spears and Ms. Scholl do ***not*** allege that the appraisers on ***their*** properties came from the so-called "proven appraiser list";

- They do ***not*** allege that the appraisers on ***their*** properties were not independent, that those appraisers did not really perform appraisals, or that they did a poor job;

- They do ***not*** allege that the appraisals misstated the value of ***their*** properties; and

- They do ***not*** allege that any flaws in the appraisals caused ***them*** to take action.

Plaintiffs' Opposition glosses over these glaring omissions. Instead, hoping to manufacture a class claim out of straw, Plaintiffs argue that ***all*** borrowers "bought" appraisals when they paid the appraisal fee on a newly originated loan, and they urge that the arrangements between WMB, EA and LSI meant that no borrower (including them) received anything in exchange for that fee.

But this argument rests on a false legal premise, for the law establishes that WMB obtained these appraisals for its use, not for the use of Mr. Spears or Ms. Scholl. Under OTS regulations and Interagency Guidelines, federal savings associations ("FSAs"), such as WMB, must obtain appraisals when they originate federally related mortgage loans, and they must do so without the borrower's involvement—though they may pass on appraisal costs. 12 C.F.R. § 564.1 *et seq.*; Interagency Statement, *Interagency Appraisal & Evaluation Functions*, at 2 (Oct. 28, 2003); Mot. 8:5-20. The Spears and Scholl loan documents (which do not require WMB to obtain appraisals) and the appraisal reports (which identify WMB as the appraiser's client and the intended user) reflect this regulatory structure. Rummage Decl., Ex. A-I. The appraisal reports state:

> INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate this property that is the subject of this appraisal for a mortgage finance transaction.

> INTENDED USER: The intended user of this appraisal report is the lender/client.

Rummage Decl., Ex. B, at 6; Rummage Decl., Ex. G, at 5; *see also* Rummage Decl., Ex. B, at 5

2

(repeating similar language and noting that "No additional intended Uses or Users are identified by the appraiser").[1]  The appraisals on the Spears and Scholl properties thus comprised an integral part of WMB's extension of credit, not a separate service that Plaintiffs bought—which is why Mr. Spears and Ms. Scholl paid the appraisal fees as part of their closing costs on WMB's loans.

### III.    ARGUMENT AND AUTHORITY

**A.    Plaintiffs Have Not Stated a RESPA Claim against WMB.**

   **1.    Plaintiffs Have Not Stated a Claim under RESPA Section 8(a).**

      **a.    Plaintiffs Have Not Alleged Payment of a "Thing of Value."**

RESPA cannot accommodate Plaintiffs' circular argument that "counterfeit, sham appraisals" constitute a "thing of value" exchanged for referrals of WMB's appraisal business—which supposedly produced still more "counterfeit, sham appraisals."  Pl. Opp. 6:5-13.

HUD has defined a "thing of value" to include

> without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained or increased earnings, increased equity in a parent or subsidiary entity, special bank deposits or accounts, special or unusual banking terms, services of all types at special or free rates, sales or rentals at special prices or rates, lease or rental payments based in whole or in part on the amount of business referred, trips and payment of another's expenses, or reduction in credit against an existing obligation…

24 C.F.R. § 3500.14(d).  Of the twenty-plus examples of a "thing of value" set forth in RESPA and its regulations, not one is a settlement service.  *Compare* 24 C.F.R. § 3500.14(d) *with* 12 U.S.C. § 2602(3) (listing settlement services); 24 C.F.R. § 3500.2(b) (same).  Instead, each example of a "thing of value" identifies a vehicle for a service provider to give something valuable to a referral source—a gift, gratuity, service, or opportunity—*without* getting compensation in return.  As the Ninth Circuit has said, Section 8(a) prohibits only payments "*for nothing else than*

---

[1] In each report, the appraiser defines the "lender/client" as "Washington Mutual/eAppraiseIt." Rummage Decl., Ex. B, at 3, 8; *id.*, Ex. G, at 2, 7.  To suggest that they "bought" these appraisals, however, Plaintiffs point to language in the appraisal addenda that identifies them as the "Borrower/Client" and suggest this means they were the ***appraiser's*** clients rather than ***WMB's*** "Borrower/Client."  And Plaintiffs suggest that the appraisal reports' recognition of their limited right to "rely on th[e] appraisal report as part of [the] mortgage finance transaction" makes them "users" of the reports.  Rummage Decl., Ex. B, at 8, ¶ 23; *id*., Ex. G, at 7, ¶ 23.  Neither provision trumps the reports' clear limitations on their intended users, which follow federal law.

*the referral of business*," i.e., a transfer of value without receiving value (other than the prospect for a referral) in return. *Lane v. Residential Funding Corp.*, 323 F.3d 739, 744 (9th Cir. 2003) (quoting *Schuetz v. Bank One Mortgage Corp.*, 292 F.3d 1004, 1013 (9th Cir. 2002)) (emphasis in original). Here, Plaintiffs admit that EA and LSI *did* receive something for their work other than the referral of business, i.e., they were paid. Under *Lane* and *Schuetz*, then, the appraisals cannot be a "thing of value." Plaintiffs do not cite any case to the contrary.

Plaintiffs' contorted effort to turn purchased settlement services into a "thing of value" would lead to absurd results. Under Plaintiffs' theory, the "counterfeit, sham appraisals" on their properties would function as ***both*** a "thing of value" ***and*** the referred settlement service. This makes no sense. Further, if the paid provision of a settlement service could serve as the "thing of value," then virtually every provider of a settlement service who went the extra mile to please a customer in hope of future business would be exposed to Section 8(a) liability. That is not the law. Because the Complaint does not allege that EA or LSI transferred value apart from the appraisals they provided for compensation, Plaintiffs have not alleged a Section 8(a) claim.[2]

**b.    Plaintiffs Have Not Properly Alleged a "Referral."**

Plaintiffs offer two theories to support their specious claim that they sufficiently alleged a "referral" of appraisal services. First, they claim that WMB "required them to use" appraisers of WMB's choice pursuant to HUD's definition of referrals. Pl. Opp. 7:1-18. Second, Plaintiffs assert that WMB acted as their agent in obtaining the appraisals. Pl. Opp. 8:1-7.

WMB did not "require [Plaintiffs] to use" particular appraisers in the sense that RESPA contemplates in prohibiting unlawful referrals. As WMB explained (and Plaintiffs do not deny), Congress passed Section 8(a) to preserve borrowers' ability to choose service providers free of improper influence. Thus, HUD defines "referrals" to reach situations where a third party has the power to influence the borrower's selection of a settlement service provider or where "a person must use a particular [service] provider … to have access to some distinct service or property." 24

---

[2] Plaintiffs refer to EA's and LSI's receipt of "millions of dollars" from WMB borrowers and intimate that the payments amount to a "thing of value" under Section 8(a). Pl. Opp. 6:7-8. But even if Mr. Spears and Ms. Scholl paid EA, they did not make that payment in exchange for a referral of business to them, making the payments irrelevant to a Section 8(a) analysis.

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (RMW)

DWT 11509865v5 0013149-000099

DAVIS WRIGHT TREMAINE LLP

C.F.R. §§ 3500.2, 3500.14(f).  Here, Plaintiffs could not select the appraisers at all, as they admit.  *See* Opp. 7:1; 12 C.F.R. § 564.1 *et seq.*; Interagency Statement, *Interagency Appraisal & Evaluation Functions*, at 2.  As a result, they resort to arguing that WMB "required [them] to use" the appraisers who reported on their property.  Pl. Opp. 7:2-9.

In fact, the Complaint does not allege that WMB restrained Plaintiffs from selecting and hiring their own appraisers for their own purposes, if they so chose.  But no matter what Plaintiffs did, federal law still required WMB to obtain its own appraisals in connection with Plaintiffs' loan applications.  *See* 12 C.F.R. § 564.1 *et seq.*; Compl. ¶ 31.  Thus, WMB did not "require" Plaintiffs to "use" appraisers obtained through EA; instead, WMB used those appraisers itself to fulfill its own legal obligations.  The appraisal reports therefore identify WMB/eAppraiseIt as the "intended user," not Mr. Spears or Ms. Scholl.  The fact that Plaintiffs received the appraisal reports changes nothing.  "Parties who receive a copy of an appraisal [report]…do not become intended users of the report unless they were specifically identified by the appraiser at the time of the assignment."  USPAP 2008-2009, Statement on Appraisal Standards No. 9 (RJN, Ex. B).  In short, WMB used these appraisers for its own purposes; it did not force Plaintiffs to use them as well.  And because the EA appraisals were a step in loan origination that federal law required WMB to undertake, they do not constitute "distinct service[s]" sufficient to satisfy HUD's "required use" definition.

Faced with this, Plaintiffs resort to the bizarre and legally insufficient claim that WMB acted as their "agent" in obtaining appraisals when they applied for loans with WMB.  For an agency relationship to exist, however, Plaintiffs had to have "the right to control the conduct of the agent with respect to matters entrusted to him."  *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937, 964 (2007) (quoting *Alvarez v. Felker Mfg. Co.*, 230 Cal.App.2d 987, 999 (1964)).  Here, because the law ***prohibited*** Mr. Spears and Ms. Scholl from exercising ***any*** control over WMB's selection and use of appraisers, 12 C.F.R. § 564.1 *et seq.*; Interagency Statement, at 2; Mot. at 8:5-20, WMB as a matter of law could not have been subject to Plaintiffs' control, and could not have been their agent, when it obtained the appraisals that federal law required.  Plaintiffs' implausible agency allegations do not "possess enough heft to 'sho[w] that [Plaintiffs are] entitled to relief.'"  *Twombly*, 127 S. Ct. at 1966.

DAVIS WRIGHT TREMAINE LLP

**DAVIS WRIGHT TREMAINE LLP**

1          2.    **Plaintiffs Have Not Stated a Claim under RESPA Section 8(b).**

2          Plaintiffs admit they cannot assert a claim under Section 8(b) for overcharges or markups

3    in appraisal fees.  Still, they assert they have alleged a RESPA Section 8(b) claim because (a) the

4    Ninth Circuit would follow the Second Circuit in recognizing an "undivided, unearned fee" claim

5    and (b) they have sufficiently alleged such a claim, on the theory that the appraisals that made

6    their loans possible were not appraisals at all.  They are wrong on both counts.

7          The Second Circuit in *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 120 (2d Cir.

8    2007), departed from RESPA's plain language when it relied on HUD's artificial interpretation of

9    the phrase "portion, split, or percentage" to include "***all***" of a charge, so that the fee need not be

10   shared.[3]  As other circuits have held, adopting *Cohen* and HUD's interpretation "would radically,

11   and wrongly, expand the class of cases to which RESPA applies."  *Weizeorick v. ABN AMRO*

12   *Mortgage Group, Inc.*, 337 F.3d 827, 831 (7th Cir. 2003).  Under *Cohen*, "every settlement fee

13   would be the subject of potential litigation and discovery, leading perhaps to increased costs for

14   real estate settlement services in the long run."  *Boulware v. Crossland Mortgage Corp.*, 291 F.3d

15   261, 267 (4th Cir. 2002).  Further, even the Second Circuit has admitted that its approach leads to

16   anomalous results:  because borrowers cannot sue under RESPA for excessive or unreasonably

17   high settlement fees, its reading of Section 8(b) means "that a lender could be liable under RESPA

18   § 8(b) for charging an unearned $225 post-closing fee but … could not be liable if it charged a

19   borrower $225 more [than was reasonable] for a service that was actually provided."  498 F.3d at

20   125.  "It is not clear [what] justifies the Second Circuit's different treatment" of these two

21   situations.  Earl Phillips, *Undivided Unearned Overcharges Are OK, Other Undivided Unearned*

22   *Fees Are Not*, CONSUMER CREDIT & TRUTH-IN-LENDING COMPLIANCE REPORT 2 (Sept. 2007).

23         Plaintiffs tacitly concede that *Cohen* states a minority rule.  Despite this, and despite the

24   flaws and anomalies in *Cohen*, Plaintiffs say that the Ninth Circuit "repeatedly defers to HUD's

25   2001 Statement of Policy" and suggest that it would follow *Cohen*.  Pl. Opp. 12:3-4.  But, as this

---

26        [3] Two cases that Plaintiffs cite for their 8(b) argument do not address the issue.  *See Busby v.
27   JRHBW Realty, Inc.*, 513 F.3d 1314, 1324-26 (11th Cir. 2008) (class certification decision
     addressing SOP 2001-1's yield spread premium analysis); *In re Merscorp*, 2008 U.S. Dist. LEXIS
28   40473, at *39-40 (S.D. Tex. May 16, 2008) (assuming, but not deciding that *Cohen*'s approach
     was correct, but dismissing "undivided, unearned fee" claim due to lack of supporting allegations).

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    DWT 11509865v5 0013149-000099
Case No. 5:08-cv-00868 (RMW)

Court has recognized, "the Ninth Circuit's determination in *Schuetz* that PS2001-1 should be accorded deference was *limited only* to that regulation's interpretation of § 8(c) of RESPA. *Schuetz* did not reach HUD's interpretation of § 8(b) as plaintiffs suggest." *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-03327 RMW, U.S. Dist. LEXIS 27388, at *11 n.4 (Mar. 30, 2007) (emphasis added); *see Geraci v. Homestead Bank*, 347 F.3d 749, 751-52 (9th Cir. 2003) (limited to same portion of SOP 2001-1); *Lane v. Residential Funding Corp.*, 323 F.3d 739, 742-46 (9th Cir. 2003) (same); *Friedman v. Market Street Mortgage Corp.*, 520 F.3d 1289, 1298 (11th Cir. 2008) (prior decision interpreting yield spread premium portion of SOP 2001-1 "does not compel our deference to the SOP with respect to" portion of SOP 2001-1 dealing with Section 8(b)).

In fact, the Ninth Circuit's discussions of RESPA show that it would reject SOP 2001-1 and would limit Section 8(b) liability to situations where two or more parties split a settlement charge – as the Fourth, Seventh and Eighth Circuits have. *See Haug v. Bank of Am., N.A.*, 317 F.3d 832, 839 (8th Cir. 2003); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir. 2002); *Boulware*, 291 F.3d at 265. In *Schuetz*, the Ninth Circuit noted that "the charges that § 8(b) addresses involve a single payment *split* among settlement service providers." *Schuetz*, 292 F.3d at 1014 (emphasis added). Similarly, in *Geraci*, the Court said that Section 8(b) "prohibits the payment of any *percentage* or *division* of a charge except for services actually rendered." 347 F.3d at 751 (emphasis added). It has never intimated that it would accept an undivided fee claim.

But even if the Ninth Circuit were to recognize an "undivided, unearned fee" claim, Plaintiffs have not pleaded it. Although Plaintiffs now argue that they received only "worthless" appraisal reports, Pl. Opp. 9:10-12, their Complaint admits that appraisers performed appraisal services on their properties and prepared reports that facilitated the loans Plaintiffs asked WMB to make. Compl. ¶¶ 59, 64. Moreover, Plaintiffs admit that "WMB hired EA and/or LSI to provide the appraisals Plaintiffs paid for." Pl. Opp. 9:13-14 (citing Compl. ¶¶ 6, 33, 35). At least one circuit has concluded that similar allegations take a case outside the "no services" paradigm. In *Friedman*, the Eleventh Circuit discussed a Section 8(b) claim alleging receipt of an unearned charge in light of its prior decision in *Sosa v. Chase Manhattan Mortgage Corp.*:

> In *Sosa*, the defendant…outsourced the task of providing messenger or courier services in connection with loan closing…charged borrowers a $50 fee for messenger or courier services, but paid only part of the fee to the third party contractor. We held that even if Chase "could not be credited with the actual delivery, Chase benefited the borrowers by arranging for third party contractors to perform the deliveries. Under these circumstances, we find it impossible to say that Chase performed no services for which its retention of a portion of the fees at issue was justified." Similarly, Market Street performs the service of locating and arranging for a third party contractor to perform tax monitoring services.

520 F.3d at 1296. WMB's act of arranging for appraisals (which Plaintiffs allege ***were*** performed) defeats Plaintiffs' "undivided, unearned fee" claim—even if such a claim were viable.

### B.    Plaintiffs Have Not Stated any Claims under California Law.

#### 1.    Federal Law Preempts Plaintiffs' State Law Claims.

Plaintiffs' discussion of preemption ignores HOLA's expansive scope and its presumption of preemption. Instead, Plaintiffs analyze the governing preemption regulation as if the law disfavored HOLA preemption – the exact opposite of what controlling authority requires. If Plaintiffs' analysis were correct, HOLA would not preempt anything other than state laws that expressly impose specific substantive lending requirements. But that is not the law, particularly in the Ninth Circuit, which earlier this year held that HOLA preempts claims asserted under the UCL—one of the statutes that Plaintiffs erroneously claim is "excluded from" HOLA preemption. Pl. Opp. 21:4-22:11; *see Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008).

In *Silvas*, the Ninth Circuit reiterated the settled HOLA preemption analysis:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

514 F.3d at 1005. As WMB's Motion described, under a proper application of this analysis, HOLA preempts Plaintiffs' state law claims. Plaintiffs' arguments (including their wishful attempt to limit *Silvas* to instances where plaintiffs assert state law claims in lieu of time-barred federal claims, Pl. Opp. 21 n.9) run counter to controlling authority.

DAVIS WRIGHT TREMAINE LLP

8

DAVIS WRIGHT TREMAINE LLP

a.    **Plaintiffs' Claims Fall within Section 560.2(b), and That Ends the Preemption Inquiry.**

Plaintiffs do not follow the preemption analysis that *Silvas* requires.  Specifically, they do not begin with an assessment of whether their claims fall within Section 560.2(b).  If they do, "the analysis will end there; the law is preempted."  *Silvas*, 514 F.3d at 1005.  Here, Plaintiffs' claims fall squarely within Section 560.2(b), for they invoke California law in an effort to regulate WMB's "processing [or] origination" of mortgages, its assessment of "loan-related fees" and "initial charges," and its loan-related disclosures.  *See* 12 C.F.R. § 560.2(b)(5), (9) & (10).  Plaintiffs' arguments to the contrary amount to empty rhetoric:

*First*, Plaintiffs suggest that appraisals are not part of WMB's "processing [or] origination of loans," as Section 560.2(b)(10) uses that term, because WMB "should have no involvement" in the appraisal.  Pl. Opp. 18:20-22.  But federal law *requires* WMB to obtain appraisals as part of loan origination, *see* 12 C.F.R. §§ 564.4, 564.5, refuting the premise of Plaintiffs' argument.

*Second*, hoping to avoid the preemptive effect of Section 560.2(b)(5), Plaintiffs protest that they "take no issue with the [appraisal] fee."  Pl. Opp. 19:6-7.  In fact, the Complaint repeatedly alleges Plaintiffs' payment of appraisal fees and points to the fee as the measure of damages.  Compl., ¶¶ 98, 104, 110.  By seeking to dictate when FSAs can retain fees, Plaintiffs' state law claims seek to impose limitations on WMB's loan-related fees, and are preempted.  *See* 12 C.F.R. § 560.2(b)(5); *Chaires v. Chevy Chase Bank, F.S.B.*, 748 A.2d 34, 46 (Md. Ct. Spec. App. 2000).

*Third*, Plaintiffs claim WMB violated California law by "charging an appraisal fee for a sham appraisal while *failing to disclose* that the appraisal" allegedly fell short of USPAP standards.  Pl. Opp. 28:11-12.  Section 560.2(b)(9) reserves regulation of WMB's loan-related disclosures to federal law and therefore preempts these state law claims.

b.    **The Fact that Plaintiffs Assert Claims under "General" State Law Makes No Difference.**

Rather than address Section 560.2(b), which is dispositive, Plaintiffs argue that their state law claims "are specifically excluded from preemption" because Section 560.2(c)(1) exempts contract and general statutory claims from HOLA preemption.  Pl. Opp. 15:9-25; 16:7-17:2.

But Plaintiffs' claims as pleaded rest on federal, not state, law. The Complaint turns on the notion that WMB (and the other Defendants) violated federal appraisal standards. *See* Compl. ¶¶ 25-44 (detailing standards); ¶¶ 44-56 (alleging violations). Based solely on these alleged violations of federal standards, Plaintiffs tease out claims under the UCL and CLRA, breaches of implied contractual obligations to conform to federal law, and unjust enrichment predicated on the collection of fees for appraisals that violate the federal standards. In these circumstances, "when plaintiffs rely on state laws of general application, but their claims are based on federal laws, federal law preempts." *Reyes v. Downey Sav. & Loan Ass'n, F.A.*, No. SACV 07-615-AG (CTx), 2008 WL 867722, at *4 (C.D. Cal. Mar. 29, 2008). That should end the matter.

Even if one leaves aside the federal genesis of Plaintiffs' claims, they cannot escape preemption. As to contract claims, Plaintiffs cite only one case that actually addresses preemption of contract claims under Section 560.2. Even that case, however, suggested that federal law ***can*** preempt state law contract claims that would regulate an FSA's lending activities by implying obligations not expressly assumed by contract. *In re Ocwen Loan Servicing LLC*, 491 F.3d 638, 647 (7th Cir. 2007) (if fee not "forbidden by the loan contract," claim "probably" preempted). *See also Moskowitz v. Washington Mut. Bank, FA*, 768 N.E.2d 262, 266 (Ill. App. Ct. 2002) (affirming dismissal of contract claim as preempted because it would "more than incidentally affect the lending operations" and would "interfere with section 560.2(a)'s purpose of allowing federal savings associations maximum flexibility to exercise their lending powers"). Here, Plaintiffs do not claim that WMB assumed an ***express*** obligation in connection with the appraisals; instead, Plaintiffs rely on California law to imply a duty to follow federal appraisal standards, i.e., they fabricate a state-imposed contractual and quasi-contractual obligation to handle appraisals and appraisal fees in a particular way. *See* Pl. Opp. 25:4-9 (relying on allegedly implied obligations under California law). Section 560.2 exists to preempt such state-specific claims.

Plaintiffs likewise urge that their UCL and CLRA claims arise under "laws of general application," which Section 560.2(c) supposedly excludes from preemption. Pl. Opp. 21:4-22:11. They argue that the UCL and CLRA claims rest on misrepresentations and argue that the "duty to refrain from misrepresentation is a general responsibility imposed on all business." *Id.* at 17:4-5.

DAVIS WRIGHT TREMAINE LLP

1    The Ninth Circuit has resolved the first point against Plaintiffs. In *Silvas*, the Court found

2    that federal law preempted statutory claims under both the UCL and the False Advertising Act,

3    another statute of general application. *Silvas*, 514 F.3d 1005-06. Courts across the country have

4    reached the same conclusion, holding that federal law preempts state consumer protection statutes

5    when plaintiffs invoke them (as Plaintiffs do) to regulate an FSA's lending activities. *See Molosky*

6    *v. Wash. Mut. Bank*, No. 07-CV-11247, 2008 U.S. Dist. LEXIS 3896 (E.D. Mich. Jan. 18, 2008);

7    *Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 354-56 (D. Conn. 2004); *Haehl v. Wash. Mut.*

8    *Bank*, 277 F. Supp. 2d 933, 941-42 (S.D. Ind. 2003); *Moskowitz*, 768 N.E.2d at 263-66.

9    Plaintiffs also argue that "HOLA preemption does not apply to misrepresentations by

10   lenders." Pl. Opp. 17:4-10. But Plaintiffs have not alleged ***any*** misstatement by WMB: "The

11   gravamen of Plaintiffs' case is that Defendants failed to perform appraisals in an independent,

12   objective, impartial and unbiased manner and instead delivered false, incredible and unlawful

13   appraisals to Plaintiffs." Pl. Opp. 14:27-15:1.[4] In other words, Plaintiffs' UCL and CLRA claims

14   do not seek remedies for a lie that WMB supposedly told; instead, those claims seek to create state

15   remedies for WMB's alleged violation of its federally imposed obligation to obtain independent

16   appraisals. HOLA plainly preempts such claims. *See Reyes*, 2008 WL 867722, at *4; *Yeomalakis*

17   *v. Wash. Mut. Bank*, No. 07-CV-11365-NG, *14 (D. Mass. Jan. 15, 2008) (RJN, Ex. A) ("An

18   artfully drafted complaint may not avoid the fact that…plaintiff's claims go directly to the nature

19   and implementation of…practices falling within the federal regulatory scheme's broad sweep").

20           **2.    Plaintiffs Have Not Stated Claims for UCL or CLRA Violations or for**
                     **Breach of Contract or Unjust Enrichment.**

21

22                  **a.    Plaintiffs Lack Standing to Assert UCL Claims against WMB.**

23   WMB explained that Mr. Spears and Ms. Scholl lack standing to pursue their UCL claims

24   because they have not alleged injury caused by the supposedly non-independent appraisals, i.e.,

25   ───────────────

26   [4] Plaintiffs' authority does not support their argument that HOLA does not preempt
     misrepresentation claims. *Silvas* held that HOLA preempted UCL claims premised on ***written***
     misrepresentations. In *Kajitani v. Downey Sav. & Loan Ass'n, F.A.*, No. 07-000398 SOM/LEK,

27   2008 WL 2164660, at *10 (D. Haw. May 22, 2008), the court applied preemption principles to
     dismiss claims premised on written misrepresentations, while holding, with little discussion, that

28   state law claims premised on ***oral*** misrepresentations "do[] not appear" to be preempted. Here,
     Plaintiffs have not alleged any oral misrepresentations at all. Compl. ¶ 25.

they did not allege the inaccuracy of the appraisals or that they suffered loss from the loan transactions that the appraisals made possible. Mem. 19:12-26. Rather than contest these points, Plaintiffs recharacterize their mortgage loan transactions as involving the sale of "ancillary services," including appraisals. Pl. Opp. 29:2. Under Plaintiffs' theory, the appraisal fees that WMB passed through in extending credit to Plaintiffs reflect their *purchase* of appraisals.

This argument asks this Court to indulge still more legal fiction, contrary to federal law and the documents that form the backbone of Plaintiffs' Complaint. Federal law *required* WMB to obtain appraisals in originating Plaintiffs' loans, prohibited Mr. Spears and Ms. Scholl from involvement in the appraisal process, and imposed substantive requirements on the appraisals. *See* 12 C.F.R. § 564.1 *et seq.*; 12 U.S.C. § 1331 *et seq.* The regulations permitted WMB to pass on to borrowers the costs of obtaining appraisals. The appraisals make clear that "[t]he intended use of [an] appraisal report is for the lender/client [i.e., WMB] to evaluate this property that is the subject of this appraisal for a mortgage finance transaction." Rummage Decl., Ex. B, at 6. Plaintiffs thus paid for the appraisal reports *not* because they "bought" appraisals, but because the law required WMB to have an appraisal done and allowed it to pass through the appraisal fee as a loan-related cost.[5] Plaintiffs have *not* claimed that the appraisals on their properties erred or that an appraisal that complied with USPAP would have cost less. Thus, Plaintiffs have not alleged the necessary causal connection between the alleged lack of independence and the appraisal fees they paid. Nor have Plaintiffs alleged any loss of money or property other than the payment of the fee, which they would have had to pay regardless of the alleged lack of appraiser independence. They have not alleged that the appraisers overvalued their properties. They have not alleged that the appraisals caused any transactions to fail. In short, they have alleged no damage or loss at all.

Plaintiffs' arguments to the contrary miss the point. Plaintiffs suggest that "[i]n WMB's view, it could charge fees for *any* services – regardless of whether the services were sham or non-

---

[5] Plaintiffs suggest that they suffered a second type of damages "in that they never received the appraisal service for which they were charged by Defendants and instead unwittingly received unreliable, biased appraisals." Pl. Opp. 28:23-25. But Plaintiffs pled these damages only as to their RESPA claim, not their UCL claims. Compl. ¶¶ 87-110. More important, these alleged damages do not fall within any of the recognized types of "injury in fact" sufficient to establish standing for a UCL claim. *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854 (Jan. 7, 2008).

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

existent – when providing loans to unwitting customers, and so long as the customers ultimately closed their loan transactions, they would have no damages." Pl. Opp. 29:12-15. But lender-obtained appraisals are not just "any services." The federal government *requires* appraisals and allows FSAs to pass through appraisal fees. Appraisals thus differ from the services in *The Missing Link v. eBay*, No. C-07-4487 RMW, 2008 WL 1994886 (N.D. Cal. May 5, 2008), in which eBay allegedly did not deliver advertising as agreed. Here, WMB passed through the cost of the appraisal that federal law required it to obtain in connection with the loans Plaintiffs sought.

### b.    Plaintiffs Have Not Stated a CLRA Claim.

#### (1)    No "Good or Service"

Recognizing that the CLRA does not reach extensions of credit, Plaintiffs argue that the lender-obtained appraisals "involved the payment by Plaintiffs for *separate* tangential services, including appraisals." Pl. Opp. 30:18-19 (emphasis added). But this is wrong as a matter of law: the federal government required WMB to obtain appraisals and required that they be free from borrower influence. The law thus forecloses Plaintiffs' unsupported argument that they bought and paid for these appraisals as a service "separate" from their loan transactions.

The remainder of Plaintiffs' argument consists of a discussion of cases from this district, addressed in WMB's Memorandum (at 21 n.14), which hold that distinct services provided to borrowers in connection with a mortgage loan fall within the CLRA's definition of a "service." Pl. Opp. 32:3–34:10. Because lender-obtained appraisals do not amount to a "service" distinct from the underlying extension of credit, these cases offer no support to Plaintiffs' claim. Instead, *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006), controls.

#### (2)    No Alleged Misrepresentation or Omission by WMB

Plaintiffs have never alleged that WMB told them that the appraisals complied with USPAP. Now, Plaintiffs claim that WMB engaged in a conspiracy, so that misrepresentations in the appraisal reports can be attributed to it. Pl. Opp. 36:17-19. But Plaintiffs have not alleged any conspiracy with the individual appraisers on Plaintiffs' property, who performed and signed the appraisals; instead, the Complaint discusses only a supposed conspiracy with EA and LSI, who did *not* sign the appraisals. *See* Compl. ¶¶ 33-56. Further, Plaintiffs' only authority (*Marks v.*

13

*Ocwen Loan Servicing*, No. C-07-2133 SI, 2008 WL 344210 (N.D. Cal. Feb. 6, 2008)) does not address conspiracy liability at all, but deals with the potential liability of successor lenders.

Plaintiffs also assert, for the first time, that they have alleged omissions by WMB sufficient to support a CLRA claim. Pl. Opp. 37:24-38:5. This argument, however, relies on Plaintiffs' discredited theory that they paid appraisal fees to buy appraisal reports; in fact, as a matter of law, WMB passed on those fees as an integral part of the extension of credit.

**(3)    No Damages**

For the reasons set forth regarding Plaintiffs' UCL claims, *supra*, Plaintiffs have not alleged the requisite damages to state a claim under the CLRA.

**c.    Plaintiffs Have Not Stated a Claim for Breach of Contract.**

Plaintiffs do not allege an express contract imposing any obligation on WMB with respect to appraisals. Instead, they allege that (1) the appraisal reports evidence a contract with WMB and (2) WMB acted as their agent to obtain the appraisals. Pl. Opp. 23:9-28.

As to the first point, Plaintiffs point to language in the addenda to the reports that identifies them as the "Borrower/Client," suggesting that they must have been the appraiser's clients (as opposed to WMB's "Borrower/Client"). Plaintiffs also suggest that the reports' recognition of their limited right to "rely on th[e] appraisal report as part of [the] mortgage finance transaction" renders them "users" of the appraisal reports. Rummage Decl., Ex. B, at 8, ¶ 23; Rummage Decl., Ex. G, at 7, ¶ 23. But neither clause trumps the federal regulatory scheme or the limitations on the reports' intended users, which do ***not*** include Plaintiffs. Further, no facts alleged in the Complaint suggest that the appraisers' statements could bind WMB to any contractual relationship.

As for Plaintiffs' agency argument, borrowers cannot exercise control over the appraisal process sufficient to establish agency under California law. *See supra*, at 5-6. Plaintiffs' argument that "when a lender undertakes to procure an item for the borrower in connection with a loan, the lender is acting as the agent of the borrower in procuring the loan" does not alter this conclusion. Pl. Opp. 23:9-10. Plaintiffs' cases involve evidentiary questions as to oral agency agreements, in which lenders allegedly made express agreements to procure fire insurance, *Graddon v. Knight*, 138 Cal.App.2d 577, 581-83 (1956), or a lease, *Colwell Co. v. Hubert*, 248

14

DAVIS WRIGHT TREMAINE LLP

Cal.App.2d 567, 575 (1967).  Here, Plaintiffs have not alleged any express agreement, instead relying on the fact that federal law required WMB to obtain an appraisal when Plaintiffs applied for loans, WMB allowed Plaintiffs to have a copy of the appraisal, and WMB passed on the appraisal fee as a closing cost.  WMB knows of no case allowing a contract claim to proceed on similar allegations.

**d.**      **Plaintiffs Have Not Stated a Claim for Unjust Enrichment.**

Plaintiffs ignore WMB's argument that California courts recognize unjust enrichment only "where a claim seeks restitution [and] where other remedies are inadequate." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (citing *Ghirardo v. Antoniolo*, 14 Cal.4th 39, 50 (1996)).  In the three cited cases in which the court addressed the existence of an unjust enrichment cause of action, it was the sole claim that the court permitted to go forward.  *See First Nationwide Sav. v. Perry*, 11 Cal.App.4th 1662, 1664-65 (1992); *Lectrodryer v. Seoulbank*, 77 Cal.App.3d 723, 726 (2000); *Hirsch v. Bank of America, N.A.*, 107 Cal.App.4th 708, 712 (2003).  This Court's decision in *Ewert v. eBay, Inc.*, No. C-07-2198 RMW, 2008 WL 906162 (N.D. Cal. Mar. 31, 2008), dealt only with the defendant's motion to dismiss three other claims and is not probative of this issue.  Given Plaintiffs' several claims based on the same facts, a separate cause of action for unjust enrichment serves no purpose.

Further, the Complaint negates their right to relief.  A plaintiff can recover for unjust enrichment ***only*** by showing a defendant's "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer*, 77 Cal. App. 4th at 726.  WMB merely passed through appraisal fees charged by EA; Plaintiffs do not allege that WMB retained one nickel of the fees.  As one of Plaintiffs' cases explains, the unjust enrichment claim therefore lies against the recipient of the fee, not against the party that passed it on.  *See Hirsch*, 107 Cal. App. 4th at 721-22.

**IV.**      **CONCLUSION**

WMB therefore requests that the Court dismiss all claims set forth in Plaintiffs' Complaint.

DAVIS WRIGHT TREMAINE LLP

1    Respectfully submitted this 1st day of August, 2008.

2

3                                    DAVIS WRIGHT TREMAINE LLP

4                                    By /s/ Stephen M. Rummage
                                         Stephen M. Rummage, *pro hac vice*
5                                        Jonathan M. Lloyd, *pro hac vice*
                                         Sam N. Dawood (Cal. Bar No. 178862)

6

7                                    Attorneys for Defendant Washington Mutual Bank

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    DWT 11509865v5 0013149-000099
Case No. 5:08-cv-00868 (RMW)

DAVIS WRIGHT TREMAINE LLP

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

4

following:

5

6       Robert Ira Spiro - Ira@SpiroMoss.com
        Janet Lindner Spielberg - jlspielberg@jlslp.com
7       Joseph N. Kravec, Jr. - jnk@ssem.com
        Michael David Braun - service@braunlawgroup.com
8       James Mark Moore - mark@spiromoss.com
        Jeffrey D. Rotenberg - jrotenberg@tpw.com
9       Laura Jean Fowler - lfowler@mhalaw.com
        Patrick J. Smith - psmith@tpw.com
10      Richard F. Hans - rhans@tpw.com
        Christopher J Clark - cjclark@dl.com
11      Kevin C Wallace - kwallace@dl.com
        Kris Hue Chau Man - kman@dl.com
12      Margaret Anne Keane - mkeane@dl.com
        Angela M. Papalaskaris - apapalas@dl.com
13

14      and I hereby certify that I have mailed by United States Postal Service the document to the

following non CM/ECF participants:

15

16

17          Kerry Ford Cunningham
            THACHER PROFFITT & WOOD LLP
18          Two World Financial Center
            New York, NY  10281

19      DATED this 1st day of August, 2008.

20                  Davis Wright Tremaine LLP
                    Attorneys for Def. Washington Mutual Bank
21

22                  By /s/ Stephen M. Rummage
                        Stephen M. Rummage, *pro hac vice*
23                      WSBA #11168
                        1201 Third Avenue, Suite 2200
24                      Seattle, Washington  98101-3045
                        Telephone: (206) 757-8136
25                      Fax: (206) 757-7700
                        E-mail:  steverummage@dwt.com
26

27

28

1

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 5:08-cv-00868 (RMW)                                      DWT 11509865v5 0013149-000099