McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
MICHAEL T. FOGARTY (#065809)
LAURA J. FOWLER (#186097)
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax:   916.444.3249

DLA PIPER LLP (US)
RICHARD F HANS (*Pro Hac Vice*, SBN 2593200NY)
PATRICK J. SMITH (Pro Hac Vice, SBN 2402394NY)
JEFFREY D. ROTENBERG (*Pro Hac Vice,* SBN 3984994NY)
KERRY FORD CUNNINGHAM (*Pro Hac Vice,* SBN 2862126NY)
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: 212.335.4556
Fax:   917.778.8556

Attorneys for Defendant eAppraiseIT, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL, INC., a Washington corporation; FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDER'S SERVICE, INC.,<br><br>Defendants. | CASE NO.: 5:08-CV-00868 (RMW)<br><br>**STATEMENT OF RECENT DECISION**<br><br>Date:  Friday, February 13, 2009<br>Time:  9:00 a.m.<br>Place: Courtroom #6 |

Pursuant to Local Rule 7.3(d), Defendant eAppraiseIT, LLC ("Defendant") hereby submits the following decision:

<u>Cedeno</u> v. <u>IndyMac Bancorp, Inc., et al.</u>, No. 06 Civ. 6438, 2008 WL 3992304 (S.D.N.Y. August 26, 2008).

///

The <u>Cedeno</u> case is relevant to eAppraiseIT's pending motion to dismiss and was rendered after the submission of eAppraiseIT's reply brief. The <u>Cedeno</u> case specifically supports eAppraiseIT's arguments that (1) plaintiffs cannot state a claim for relief under the Real Estate Settlement Practices Act even assuming the subject appraisals were inflated as alleged in the complaint, and (2) the plaintiffs' state law claims are preempted. A complete copy of this decision is attached hereto as **Exhibit A**.

DATED: February 3, 2009

                MCDONOUGH HOLLAND & ALLEN PC

By: <u>       Tod Fogarty /s/       </u>
           MICHAEL T. FOGARTY

Attorneys for Defendant eAppraiseIT, LLC

# Exhibit A

Slip Copy                                                                                                              Page 1
Slip Copy, 2008 WL 3992304 (S.D.N.Y.)
(Cite as: 2008 WL 3992304 (S.D.N.Y.))

C
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Virgen **CEDENO**, on behalf of herself and all others similarly situated, Plaintiff,
v.
**INDYMAC** BANCORP, INC., and the Federal Deposit Insurance Corporation, as Receiver for **IndyMac** Bank, F.S.B., Defendants.
No. 06 Civ. 6438(JGK).

Aug. 26, 2008.

Joseph P. Guglielmo (argued), Joy Nesbitt, Elizabeth Rosenberg, Whatley Drake & Kallas, New York, NY, for Plaintiff.
Todd Gale (argued), Richard E. Gottlieb, Dykema Gossett PLLC, Chicago, IL, for Defendants.

*OPINION AND ORDER*

JOHN G. KOELTL, District Judge.

*1 This is a purported class action on behalf of the plaintiff, Virgen Cedeno, and a similarly situated class of residential home mortgage borrowers against defendant IndyMac Bancorp, Inc. and the Federal Deposit Insurance Corporation, as Receiver for IndyMac Bank, F.S.B. ("IndyMac"),[FN1] for alleged violations of two federal statutes, namely the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. The plaintiff also alleges four state law claims, namely alleged violations of the California Business & Professions Code § 17200 et seq., and the New York General Business Law § 349; and claims for breach of contract and unjust enrichment.[FN2] The Amended Complaint alleges that IndyMac failed to disclose to the plaintiff that it selected appraisers, appraisal companies and/or appraisal management firms who performed faulty and defective appraisal services which inflated the value of residential properties in order to allow the defendant to complete more real estate transactions and obtain greater profits.[FN3] The inflated appraisals allegedly misled the plaintiff as to the true equity in her home. IndyMac moves to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

FN1. On July 11, 2008, the Office of Thrift Supervision closed IndyMac Bank, F.S.B., and duly appointed the Federal Deposit Insurance Corporation as Receiver. On August 21, 2008, this Court entered an Order substituting the Federal Deposit Insurance Corporation, as Receiver for IndyMac Bank, F.S.B., for defendant IndyMac Bank, F.S.B.

On July 31, 2008, defendant IndyMac Bancorp, Inc. filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Central District of California. Therefore, this action is stayed against IndyMac Bancorp, Inc. pursuant to 11 U.S.C. § 362(a)(1).

While both defendants had originally filed the motion to dismiss, this action is stayed as to IndyMac Bancorp, Inc. All references in this Opinion referring to "IndyMac" refer to IndyMac Bank, F.S.B., for whom the Federal Deposit Insurance Corporation, as Receiver, has been substituted as the successor and real party in interest.

FN2. Jurisdiction over the state law claims is based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiff is a citizen of New York. At the time this case was brought, IndyMac Bank, F.S.B. was a citizen of California because it was headquartered there. *See* 12 U.S.C. §

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1464(x). IndyMac Bancorp, Inc. is a Delaware corporation with its principal place of business in California and is thus a citizen of both of those states. *See* 28 U.S.C. § 1332(c)(1).

> It should be noted that, in view of the presence of the Federal Deposit Insurance Corporation as a party, there is now an independent basis for jurisdiction under 12 U.S.C. § 1819(b)(2).

> FN3. The defendants originally moved to dismiss the original complaint. At this Court's suggestion, the plaintiffs filed the Amended Complaint attempting to respond to the arguments raised by the defendants. The defendants have now moved to dismiss the Amended Complaint.

### I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly v. Bell Atlantic Corp.*, --- U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007). The Court may also rely upon documents on which the plaintiff relied in drafting the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002).

### II.

The following facts alleged in the Amended Complaint are accepted as true for the purpose of deciding this motion to dismiss. IndyMac Bancorp is the holding company for IndyMac Bank, F.S.B., a federally chartered savings bank. (Am.Compl.¶¶ 17, 18.)

The named plaintiff is a resident of Brooklyn, New York, who obtained an $80,000 line of credit from IndyMac Bank secured by her property located in Brooklyn. (Am. Compl. ¶ 16; Def.'s Ex. A.) In connection with the loan, the plaintiff was charged a $500.00 appraisal fee. The appraisal services on the plaintiff's property were provided by an appraisal company known as Supreme Appraisals. (Am Compl. ¶ 26.) The purported class includes "all persons in the United States who, at any time from January 1, 2004 to the present, have financed or refinanced their mortgages and obtained an appraisal through IndyMac."(Am.Compl.¶ 50.)

*2 The plaintiff alleges that IndyMac failed to provide the necessary insulation and separation between its own internal production or sales personnel responsible for providing the mortgage services ("Production Personnel") and the credit or valuation personnel who were responsible for overseeing and verifying the accuracy of the appraisal services ("Credit/Valuation Personnel"). (Am.Compl.¶¶ 2-4.) This lack of insulation allowed the Production Personnel to pressure the Credit/Valuation Personnel to approve inflated appraisals so that loans and profits could be increased. IndyMac allegedly failed to ensure that the appraisals were accurate and allowed its own quality control staff to approve inflated and defective appraisals. (Am.Compl.¶ 11.)

The Amended Complaint alleges that IndyMac communicated that there was a certain "target value" or "qualifying value" necessary to close the loan. The appraisers understood that if they met the targeted value, they would be selected for future referral of business from IndyMac. Through direct and indirect communication, IndyMac informed the appraisers that the certain "target values" were desirable, and "low values" would impede the ability to close the loan. (Am.Compl.¶ 43.) IndyMac hired appraisal management firms or appraisers whose prior performance repeatedly returned the values

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

needed to match the qualifying loan values. (Am.Compl.¶ 45.) Allegedly, according to a confidential witness, IndyMac refused to do further business with a certain appraisal management firm because that firm was not providing the needed value in appraisals to meet the targeted amount. (Am.Compl.¶ 49.)

The Amended Complaint alleges that when consumers overpay for a home, or are induced to borrow excessively on the supposed equity of their homes, the results are inflated closing costs, higher interest, and in many cases the necessity of private mortgage insurance. (Am.Compl.¶ 9.) Thus, the Amended Complaint alleges that the inflated appraisals which resulted from IndyMac's improper practices led the plaintiff and members of the purported class to pay higher closing costs and higher financing costs than they would have otherwise paid, and to pay more for their homes than warranted by the actual value of their homes. (Am.Compl.¶¶ 5, 8-9.)

### III.

Count Two of the Amended Complaint alleges a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). Count Three of the Amended Complaint alleges a violation of the Truth in Lending Act, 15U.S.C. § 1601 et seq. ("TILA").[FN4]

> FN4. IndyMac asserts that the plaintiff has attempted to allege a violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. §§ 3331, et seq. ("FIRREA"), but that statute does not provide a private cause of action for the plaintiff's claims. The plaintiff did in fact allege in the Amended Complaint that "it is the very practices alleged herein that the federal government, in [1989], sought to regulate when it passed ... [FIRREA]." (Am.Compl.¶ 6.) However, the plaintiff has specifically disavowed any effort to bring a claim under FIRREA, and agrees that there is no private right of action under FIRREA for the appraisal standards promulgated under the statute. (Pl.'s Mem. at 5 .) There is thus no FIRREA claim to be dismissed.

### A.

Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). Congress also provided that a purpose of RESPA was "to effect certain changes in the settlement process for residential real estate that will result-... (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services...."12 U.S.C. § 2601(b).

*3 The plaintiff asserts a claim under 12 U.S.C. § 2607(a), RESPA's "anti-kickback" provision, which prohibits a person from giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."12 U.S.C. § 2607(a). The term "thing of value" is broadly defined under the statute to include "any payment, advance, funds, loan, service, or other consideration."12 U.S.C. § 2602(2). The statute also includes a "safe harbor" provision which provides: "Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed."12 U.S.C. § 2607(c).

The plaintiff alleges that IndyMac's manipulation of appraisers enabled it to receive higher appraisals, in return for which the appraisers received the oppor-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tunity to do further appraisals for IndyMac and for business referrals from IndyMac. Thus, the plaintiff alleges that the "thing of value" IndyMac received for referring business to appraisers was the inflated appraisals themselves, which allowed IndyMac to increase profits as a result of the mortgage loans. (Am.Compl.¶¶ 70-71.) In return, IndyMac allegedly referred business to the appraisers. (Am.Compl.¶¶ 70, 72.)

The defendant argues that the plaintiff fails to identify a "thing of value" that the defendant received under RESPA, and that in any event, the "safe harbor" provision of Section 2607(c)(2) precludes the plaintiff's claim, because Supreme performed an appraisal for which it was paid, and RESPA is not intended to serve as a price or quality control statute.

The plaintiff has failed to state a claim under RESPA. Even assuming that IndyMac received a "thing of value" in the form of inflated appraisals,[FN5] and that IndyMac promised and provided business in return,[FN6] the plaintiff has not stated a claim under RESPA because the "safe harbor" provision of RESPA applies.

> FN5. "Thing of value" has been interpreted broadly to include various benefits that an entity might receive in return for business referrals. For example, the Department of Housing and Urban Development has stated that thing of value "is broadly defined" and:
>
> > [I]ncludes, without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distribution of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained or increased earnings, increased equity in a parent or subsidiary entity, special bank deposits or accounts, special or unusual banking terms, services of all types at special or free rates, sales or rentals at special prices or rates, lease or rental payments based in whole or in part on the amount of business referred, trips and payment of another person's expenses, or reduction in credit against an existing obligation.
>
> 24 C.F.R. § 3500.14(d). *See also Krupa v. Landsafe, Inc.,* 514 F.3d 1153, 1156 (11th Cir.2008) (defining "thing of value" received by a mortgage lender as the credit reporting agency's change in its pricing scheme, which allowed the lender to pass along the costs of credit reports to its customers).

> FN6. The defendant argues that the suggestion that inflated appraisals benefit IndyMac is contrary to common sense, because inflated appraisals result in under-secured loans, and under-secured loans lead to losses if the borrower defaults. However, this argument does not negate the plausibility of the plaintiff's claim. The plaintiff asserts that the higher appraisals allowed the defendants to increase the money they would acquire as a result of the mortgage loans.

The safe harbor provision provides that RESPA does not prohibit payment for goods or facilities actually furnished or services actually performed. *See* 12 U.S.C. § 2607(c)(2). Supreme received a $500 fee in return for an appraisal. The plaintiff concedes that she is not challenging the fee itself, or that an appraisal was provided, but she challenged "IndyMac's practices in relation to the appraisal services." (Pl.'s Mem. 26.) But RESPA is intended to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices" in connection with mortgage transactions, 12 U.S.C. § 2601(a), and to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

12 U.S.C. § 2601(b)(2). It specifically does not prohibit payments for services actually rendered. 12 U.S.C. § 2607(c)(2).

*4 The plaintiff attempts to avoid the "safe harbor" provision by arguing that the appraisal was "faulty and inaccurate." (Pl.'s Mem. 27). But there is no dispute that the appraisal was performed and paid for. The plaintiff attempts to modify the plain meaning of the safe harbor by requiring an analysis of the quality and price of the services actually performed. That interpretation exceeds the plain meaning of the statute and the plaintiff cites no authority to support it.[FN7] Because the safe harbor provision of RESPA permits payment to a person for services actually performed, the plaintiff has failed to state a claim under RESPA. *See Gardner v. First Am. Title Ins. Co.*, 296 F.Supp.2d 1011, 1019 (D.Minn.2003) (holding that payments to settlement services company for services actually performed fell within safe harbor provision Section 2607(c) (2)); *cf. DeLeon v. Beneficial Constr., Co.*, 998 F.Supp. 859, 863-64 (N.D.Ill.1998) (finding that the plaintiffs stated a claim under Section 2607 of RESPA where they alleged that no services were actually performed or that services were only nominally performed).

> FN7. To the extent that the plaintiff's argument could be construed as challenging the reasonableness of the payment, the plaintiff would read RESPA as a "price control" statute. In the course of interpreting RESPA's prohibition against "splitting charges," 12 U.S.C. § 2607(b), the Court of Appeals for the Second Circuit has held that RESPA was not intended to be a price control statute. *See Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 56-57 (2d Cir.2004) (holding that rule in HUD Policy Statement, which provided that a service provider could be liable under 12 U.S.C. § 2607(b) for charging a fee that exceeded the reasonable value of the goods or services provided, was not entitled to deference because it was inconsistent with the plain language of RESPA); *accord Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir.2002) ( "[RESPA] is not a price-control statute."); *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 268 (4th Cir.2002) ("RESPA was meant to address certain practices, not enact broad price controls.").

### B.

Similarly, the plaintiff's claim under TILA must fail. TILA is a disclosure statute that requires that the terms of credit and the fees charged for the extension of credit are properly disclosed. *See* 15 U.S.C. § 1637(a). The purpose of TILA is to assure "meaningful disclosure of credit terms to consumers." *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (citing 15 U.S.C. § 1601) (internal quotations omitted).

The plaintiff claims that IndyMac "violated TILA by demanding reimbursement for the costs to procure appraisal fees in connection with the extension of credit when such costs are related to the provision of improper and defective appraisal services."(Am.Compl.¶ 82.) The plaintiff does not contest that the cost of the appraisal-$500-was accurately and completely disclosed by IndyMac. Rather, the plaintiff alleges that the appraisal was inflated. TILA is directed to requiring that the cost of the service be set out, not to regulating the quality of the service. *See* 15 U.S.C. § 1637a(4)(A) (requiring the lender to provide certain disclosures at the time of opening a Home Equity Line of Credit, including an "estimate ... of the aggregate amount of additional fees that may be imposed by third parties (such as ... appraisers ... ) in connection with opening an account under the plan."); *Szumny v. Am. Gen. Fin.*, 246 F.3d 1065, 1070 (7th Cir.2001) ("TILA is a disclosure statute; it does not regulate substantively consumer credit but rather requires disclosure of certain terms and conditions

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of credit before consummation of a consumer credit transaction.") (internal quotation and citation omitted). The plaintiff has failed to allege the specific provision of TILA that the defendant violated and the plaintiff's allegations fail to state a claim under TILA.

## IV.

*5 The plaintiff also asserts a number of state law claims under New York and California law. Specifically, the plaintiff alleges claims for violation of the deceptive practices statutes in California and New York, namely the California Business & Professions Code § 17200 et seq. (Count Four), and the New York General Business Law § 349 (Count Six), as well as claims for breach of contract (Count One) and unjust enrichment (Count Seven).[FN8] IndyMac contents that these claims are preempted by the Home Owners' Loan Act, 12 U.S.C. § 1461 et seq. ("HOLA").

> FN8. There is no Count Five in the Amended Complaint.

### A.

"Preemption can generally occur in three ways: where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law." *Clearing House Ass'n v. Cuomo,* 510 F.3d 105, 113 (2d Cir.2007) (quoting *Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 313 (2d Cir.2005)). Although there is generally a presumption against federal preemption of state law, *see Clearing House,* 510 F.3d at 113, the presumption against preemption "is not triggered ... in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000).

The Home Owners' Loan Act ("HOLA") provides that the Office of Thrift Supervision ("OTS") has principal responsibility for regulating federally chartered savings associations ("FSAs") such as IndyMac. 12 U.S.C. §§ 1462a, 1463(a), and 1464. In 12 C.F.R. § 560.2, the OTS states its intention to occupy the entire field of the lending regulation for FSAs:

> To enhance safety and soundness and to enable [FSAs] to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for [FSAs]. OTS intends to give [FSAs] maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.

12 C.F.R. § 560.2(a). Pursuant to the plenary authority granted under HOLA to regulate the operations of FSAs, the OTS has promulgated extensive regulations governing the operations of FSAs. *See Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 144-45, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (discussing the authority of the Federal Home Loan Bank, the predecessor to the OTS).

An OTS regulation allows FSAs to "extend credit as authorized under federal law ... without regard to state laws purporting to regulate or otherwise affect their credit activities."12 C.F.R. § 560.2(a). In Paragraph (b) of 12 C.F.R. § 560.2, OTS provides illustrative examples of the types of state laws preempted by OTS regulation, including state laws purporting to impose requirements regarding loan-related fees (§ 560.2(b)(5)), disclosure and advertising (§ 560.2(b)(9)), and processing or origination of mortgages (§ 560.2(b)(10)). Paragraph (c) of 12 C.F.R. § 560.2 identifies certain types of state laws, such as state contract, tort, and commercial law, that are not preempted to the extent "that they only incidentally affect the lending operations of [FSAs] ...." 12 C.F.R. § 560.2(c).

*6 IndyMac argues that the plaintiff's state law

claims are specifically directed at "loan-related fees" as contemplated by Section 560.2(b)(5) and directly challenge both IndyMac's "disclosure and advertising" and the "processing or origination of mortgages" as described in Sections 560.2(b)(9) and 560.2(b) (10). Thus, the defendant continues, the Court should not even reach the "incidental effect" analysis contained in section (c).

In a 1996 regulation, OTS provided guidance on the issue:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996).

When considering, as here, laws that do not on their face purport to impose regulations on the areas listed in paragraph (b), it is necessary to determine whether the law, as applied to the claims raised, is the type of law listed in paragraph (b).

For example, in *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir.2008), the Court of Appeals for the Ninth Circuit held that the claims against a mortgage lender under the California Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, and the California False Advertising Act, Cal. Bus. & Prof.Code § 17500, were preempted under HOLA. The plaintiffs claimed that the mortgage lender misrepresented that the lock-in fee was non-refundable, and they also claimed that the lock-in fee itself was unlawful. The Court of Appeals found that both claims were preempted. The first claim was preempted because the alleged misrepresentation was "contained in advertising and disclosure documents," and thus the alleged prohibition in state law was the type of state law contemplated in 12 C.F.R. § 560.2(b)(9) regarding advertising and disclosure documents. *Id.* at 1006. The alleged prohibition against the lock-in fee itself was preempted because it purported to impose requirements on loan-related fees which was preempted under 12 C.F.R. § 560.2(b)(5).*Id.* The Court of Appeals therefore found it unnecessary to turn to an analysis under 12 C.F.R. § 560.2(c), even though the claims related to a contract between the borrower and the lender, because the California statute was the type of law listed in 12 C.F.R. § 560.2(b).*Id.* at 1006-07.

Similarly, in *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litig.*, 491 F.3d 638 (7th Cir.2007), the Court of Appeals for the Seventh Circuit analyzed the difference between sections (b) and (c) as follows:

> *7 The line between subsections (b) and (c) is both intuitive and reasonably clear. The Office of Thrift Supervision has exclusive authority to regulate the savings and loan industry in the sense of fixing fees (including penalties), setting licensing requirements, prescribing certain terms in mortgages, establishing requirements for disclosure of credit information to customers, and setting standards for processing and servicing mortgages. But though it has some prosecutorial and adjudicatory powers ancillary to its regulatory functions, the Office has no power to adjudicate disputes between the S & Ls and their customers.

*Id.* at 643 (internal quotations and citations omitted). The Court's task, then, is to decide "which claims fall on the regulatory side of the ledger and which, for want of a better term, fall on the common law side."*Id.* at 644. The Court of Appeals found that various claims were "pretty clearly, even certainly, preempted," while others "probably are not," and that the trial court should have required the plaintiffs to specify the acts they contended violated state law. *Id.* at 648.*See also Rosenberg v.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Washington Mut. Bank, FA,* 369 N.J.Super. 456, 849 A.2d 566, 572 (N.J.Super.Ct.App.Div.2004) (finding claims under state contract statutes preempted under paragraph (b)).

The plaintiff argues that her state law claims challenging IndyMac's appraisal practices are state contract and commercial challenges that fall within the exceptions outlined in paragraph (c). IndyMac argues that the plaintiff is merely trying to circumvent HOLA preemption by pleading plainly preempted claims as violations of state contract law and consumer protection statutes. The question before the Court is whether the plaintiff's claims under state contract law and California and New York state deceptive practice statutes are brought in an effort to regulate IndyMac's appraisal practices in a way that interferes with an area defined in paragraph (b) or more than incidentally affects IndyMac's federally regulated thrift operations for purposes of paragraph (c).

**B.**

**1.**

The plaintiff alleges that the defendant engaged in unlawful, unfair or fraudulent business acts and/or practices within the meaning of the California Unfair Competition Law ("UCL"), § 17200 of the California Business & Professions Code. The California UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [§ 17500]," which prohibits false advertising. Cal. Bus. & Prof.Code § 17200. Specifically, the plaintiff alleges that the defendant (i) misrepresented the terms of its contracts, (ii) manipulated appraisals in breach of its contracts, (iii) concealed the true nature of its relationship with appraisers and the true nature of the appraisal agreements, and (iv) demanded reimbursement for the cost to procure the extension of credit when the costs are related to improper appraisal services. Pursuant to California Business & Professions Code § 17203, which authorizes a trial court to create a remedy to prevent unfair trade practices, the plaintiff requests an order enjoining such future conduct on the part of the defendant, and the appointment of a receiver to restore any money paid for the provision of the appraisal services. (*See* Am. Compl. ¶ 92, 93.)

*8 OTS has opined that California's UCL could be viewed as a form of contract and commercial law under § 560.2(c), but has stated that it is preempted in circumstances that would set very particular requirements on the Associations' lending operations. *See* OTS Letter P-99-3 (Mar. 10, 1999) (Def.'s Ex. 2). In particular, the OTS found that the California statute was preempted to the extent it sought to regulate advertising, forced placement of hazard insurance, and the charging of loan-related fees. *See id.* Moreover, in *Silvas,* the Court of Appeals for the Ninth Circuit found that the California Business & Professions Code §§ 17200 and 17500 were preempted as applied to claims that sought to regulate the disclosure and amount of lock-in fees. 514 F.3d at 1006-07.

In this case, the plaintiff attempts to apply the California UCL to impose requirements in areas explicitly preempted by federal law. The appraisal practices challenged by the plaintiff appear to relate directly to the processing or origination of mortgages, and thus the application of the law that the plaintiff seeks to impose falls within 12 C.F.R. § 560.2(b)(10). Moreover, the practices the plaintiff challenges also relate directly to the appraisal fee that is charged in connection with the mortgage, and thus the law the plaintiff seeks to invoke regulates loan-related fees under 12 C.F.R. § 560.2(b)(5). Similarly, the plaintiff challenges the disclosure made to her and thus seeks to use the California statute to regulate the disclosures made in connection with the mortgage, which falls within the scope of 12 C.F.R. § 560.2(b)(9). Therefore, as applied to the plaintiff's allegations, the California UCL is preempted under 12 C.F.R. § 560.2(b). *See*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Silvas,* 514 F.3d at 1006 (finding claims under the California UCL relating to allegedly faulty disclosure and an allegedly improper lock-up fee preempted under 12 C.F.R. § 560.2(b)(9) and (b)(5); *Ocwen,* 491 F.3d at 646 (finding that some allegations under the California UCL would be preempted while others would not be); *but cf. Gibson v. World Sav. & Loan Ass'n,* 103 Cal.App.4th 1291, 128 Cal.Rptr.2d 19 (2002) (finding claim that federally chartered savings association charged excessive amounts and misrepresented the premiums charged in violation of the California UCL was not preempted by the HOLA).

Because the plaintiff's claim under the California UCL is preempted under 12 C.F.R. § 560.2(b), there is no need to analyze whether it "more than incidentally affects" lending under 12 C.F.R. § 560.2(c). If the Court were to reach that question, the Court would find that as applied to this case, the California statute would fall within that prohibition also. The practices the plaintiff seeks to regulate relate directly to the valuation of the collateral security for loans. The relief the plaintiff seeks would plainly set particular requirements on IndyMac's lending operations.

2.

Similarly, the plaintiff's claim under New York General Business Law § 349 is preempted. Section 349(a) provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."N.Y. Gen. Bus. Law § 349(a). The plaintiff asserts that the defendant engaged in deceptive acts and practices in its conduct of business and furnishing of services in the state of New York in violation of New York General Business Law § 349(a).

*9 The plaintiff realleges all of the prior allegations in the Amended Complaint and alleges that they violate the New York General Business Law § 349(a). The same analysis with respect to the California UCL applies to the plaintiff's efforts to use the New York statute to penalize the alleged failure to disclose appraisal practices and the substance of those practices. As applied to the allegations in this case, the plaintiff is relying on a state law to regulate a loan-related fee, disclosure of information relating to the fee, and the processing and origination of a mortgage which are preempted under 12 C.F.R. § 560.2(b)(5), (9) and (10).

Because the statute is preempted as applied under 12 C.F.R. § 560.2(b), it is unnecessary to analyze the application of the statute under 12 C.F.R. § 560.2(c). However, for the reasons explained above with respect to the California UCL, this Court would also find that the New York statute as applied in this case more than incidentally affects federal thrift lending operations.

The plaintiff's claim is distinguishable from *Binetti v. Washington Mutual Bank,* 446 F.Supp.2d 217 (S.D.N.Y.2006), where Judge McMahon found that the plaintiff's claims arose strictly out of the lender's failure to adhere to the terms of its contract with the plaintiff. In that context, the statute was not directly aimed at lenders and had only an incidental impact on lending relationships. *Id.* at 220.Here, in contrast, the plaintiff's claims arise out of conduct directly regulated by the OTS: the processing and origination of mortgages, a loan-related fee, and the accompanying disclosure. *See*12 C.F.R. § 560.2(b)(5), (9) and (10). The appraisals are a prerequisite to the lending process, and are inextricably bound to it. Because the plaintiff's claim is not a simple breach of contract claim, but asks the Court to "set substantive standards for the Associations' lending operations and practices," it is preempted. *See* OTS Letter P-99-3 (Mar. 10, 1999) (Def.'s Ex. 2). Moreover, unlike the breach of contract claim in *Binetti,* the verified complaint in this case is aimed at the appraisal and evaluation practices of the defendants. (Am.Compl.¶ 13.) The claim also seeks an application of state law that would more than incidentally affect federal thrift lending practices.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

### 3.

The contract claim alleges that the plaintiff entered into a contract with the defendant for the purchase of mortgage services, including appraisal services, and that the defendant breached the contract by providing appraisal services which were materially inaccurate, because the defendant allowed interested parties to influence the appraisal and valuation results. (Am.Compl.¶ 64.) According to the plaintiff, the contract claims are predicated on the duties that the defendant assumed in contract, including the duty to comply with the covenant of good faith and fair dealing, and fall within the exception in paragraph (c)(1) of 12 C.F.R. § 560.2, and are thus not preempted.[FN9]

> FN9. The Home Equity Line of Credit that the plaintiff entered into with IndyMac provides that New York, the state where the mortgaged property is located, would govern a claim: "Federal law applies to certain aspects of this Agreement, including, but not limited to, the interest rate and related charges. The law of the state where you and the property are located will apply to the extent legally required."(Def.'s Ex. A ¶ 18.) The parties have only briefed New York law with respect to the claims for breach of contract and unjust enrichment, and the Court can accept the parties' agreement that New York law applies. *See, e.g., Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002).

*10 The plaintiff has cited no provision of any contract between IndyMac and the plaintiff that IndyMac allegedly violated. The plaintiff does not dispute that the appraisal services were provided by a third party, Supreme Appraisals. (Def.'s Ex. D.) Indeed, the plaintiff does not dispute that she paid an appraisal fee and that she received an appraisal from Supreme Appraisals. Rather, the gist of the plaintiff's breach of contract claim, like her claims under the California and New York deceptive practices statutes, is that the appraisal provided to the plaintiff was inaccurate and the plaintiff alleges in her Memorandum that this was a breach of the covenant of good faith and fair dealing (Pl.'s Mem. 21.), although that covenant is not mentioned in the Amended Complaint. (Am.Compl.¶¶ 64-65.)

This claim, like the claims under the California and New York deceptive practices statutes, is preempted because it relies on state law purporting to impose a requirement on the processing and origination of the mortgage, which is preempted under 12 C.F.R. § 560.2(b)(10).[FN10] *See Rosenberg,* 849 A.2d at 572 (state contract claim was preempted under 12 C.F.R. § 560.2(b)(9) because the plaintiffs sought to insert a form of state regulation by compelling a different type of billing statement disclosure).

> FN10. 12 C.F.R. § 560.2(a) defines state law broadly: "For purposes of this section, 'state law' includes any state statute, regulation, ruling, order or judicial decision."

Because the state law breach of contract claim in this case is foreclosed by 12 C.F.R. § 560.2(b)(10), it is unnecessary to determine whether enforcement of the contract claim would "only incidentally affect the lending operations of Federal savings associations," under 12 C.F.R. § 560.2(c). However, for the reasons explained above, the regulation that the plaintiff seeks would in fact more than incidentally affect the lending operations of IndyMac and similarly situated federally chartered savings banks. The contract claim is simply another means to attempt to regulate the method used by IndyMac to assess the value of collateral in securing its loans. Granting the plaintiff the relief she seeks would have the same effect as a direct regulation of appraisal practices-causing IndyMac to alter the methods it uses to evaluate loans and more than incidentally affecting lending operations of federally chartered savings associations.

### 4.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Finally, the plaintiff's unjust enrichment claim fails to state a claim because it is a quasi contractual claim and the relationship between the plaintiff and IndyMac is regulated by contract. *See Payday Advance Plus, Inc. v. Findwhat.com, Inc.,* 478 F.Supp.2d 496, 504-05 (S.D.N.Y.2007); *Mina Inv. Holdings Ltd. v. Lefkowitz,* 16 F.Supp.2d 355, 361 (S.D.N.Y.1998); *Graystone Materials, Inc. v. Pyramid Champlain Co.,* 198 A.D.2d 740, 604 N.Y.S.2d 295, 296 (App.Div.1993). While there may be a dispute as to the scope of the contract, there is no dispute as to the existence of the contract between the plaintiff and IndyMac. To the extent that a valid claim for unjust enrichment exists, it is preempted for the reasons stated above with respect to the contract claim.

### Conclusion

**\*11** The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are moot or without merit. For the reasons explained above, the motion by defendant Federal Deposit Insurance Corporation, as Receiver for IndyMac Bank, F.S.B., to dismiss the Amended Complaint (Docket No. 32) is **granted.** This case remains stayed as to defendant IndyMac Bancorp, Inc., pursuant to the automatic bankruptcy stay. *See supra* note 1.

**SO ORDERED.**

S.D.N.Y.,2008.
Cedeno v. IndyMac Bancorp, Inc.
Slip Copy, 2008 WL 3992304 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.