1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**E-FILED on __03/09/09__**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FELTON A. SPEARS, JR. and SIDNEY
SCHOLL, on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

WASHINGTON MUTUAL, INC., a
Washington corporation; FIRST AMERICAN
EAPPRAISEIT, a Delaware corporation; and
LENDERS SERVICES, INC.,

Defendants.

No. C-08-00868 RMW

ORDER GRANTING LSI'S MOTION TO
DISMISS; ORDER GRANTING IN PART
AND DENYING IN PART EA'S MOTION TO
DISMISS

**[Re Docket Nos. 42, 46, 48]**

Plaintiffs Felton Spears ("Spears") and Sidney Scholl ("Scholl") bring this suit alleging that

defendants Washington Mutual Bank FA ("WMB"), First American eAppraiseIT ("EA"), and

Lender's Service, Inc. ("LSI") participated in a scheme to provide home-loan mortgage borrowers

with inflated appraisals of the property they sought to purchase. After the complaint was filed, the

Federal Deposit Insurance Corporation ("FDIC") was substituted as receiver for WMB, and

plaintiffs later stipulated to dismiss all claims against the FDIC. The court here considers EA and

LSI's pending motions to dismiss. For the reasons stated below, the court grants LSI's motion to

dismiss, and grants in part and denies in part EA's motion to dismiss. Leave to amend is granted to

state a claim against LSI and to assert a claim for breach of contract.

**I. BACKGROUND**

Plaintiffs bring this class action on behalf of all consumers in California who received home loans from WMB on or after June 1, 2006 with appraisals obtained through EA or LSI. According to the first amended complaint, home purchases in the United States have traditionally been financed through a third-party lender who retains a security interest in the property until the loan is repaid. Complaint ¶ 2. In order to ensure that the secured lender will recoup the value of the loan if the borrower defaults, the lender generally requires that the property be professionally appraised. *Id.* Plaintiffs allege that in June of 2006 WMB, with EA and LSI, began a scheme to inflate the appraised values of homes receiving loans in order to sell the aggregated security interests in the financial markets at inflated prices. *Id.* at ¶ 6. According to the complaint, banks like WMB changed from a business model in which they held the mortgage loans until repaid to one where they sold the loans to financial institutions. *Id.* at ¶ 22. This "paradigm shift" created an incentive for the bank to seek higher appraisals in higher volume. *Id.* at ¶ 23.

The complaint describes a scheme in which WMB allegedly conspired to inflate the appraised value of property underlying their mortgage loans. In 2006 WMB retained EA and LSI to administer WMB's appraisal program. *Id.* at ¶ 35. EA and LSI have since performed almost all of WMB's appraisals, and WMB's borrowers have become EA and LSI's largest source of business. *Id.* WMB created a list of "preferred appraisers," selected by WMB's origination staff, that it requested to perform appraisals for WMB borrowers. *Id.* at ¶¶ 36, 44. WMB also maintained the contractual right with those appraisers to challenge an appraisal by requesting a "reconsideration of value" (which was known as an "ROV"). *Id.* at ¶ 38. WMB would use the ROV to get EA and LSI to increase the appraisal value of property. *Id.* WMB also requested that EA and LSI hire "Appraisal Business Managers," who were given authority to override the values determined by third-party appraisers. *Id.* at ¶ 39.

Plaintiffs claim that the above conduct violates the Real Estate Settlement Practices Act ("RESPA"), California Business and Professions Code §§ 17200, and California's Consumer Legal Remedies Act ("CLRA"), and constitutes a breach of contract and results in unjust enrichment. EA and LSI moved to dismiss on May 5, 2008. After the FDIC was appointed receiver for WMB, the

United States District Court
For the Northern District of California

1  parties stipulated to stay the case for 90 days.  Plaintiffs have since voluntarily dismissed the claims

2  against WMB/FDIC.  Now at issue are EA and  LSIs motions to dismiss.

## II. ANALYSIS

### A.    Standing as to LSI

LSI first argues that plaintiffs lack standing to bring suit against them because LSI had no involvement with Spears' or Scholl's appraisal.  In order to have standing to sue under Article III of the Constitution, plaintiffs must show that 1) they suffered an injury in fact; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely that the injury will be redressed by a favorable decision. *Tyler v. Cuomo*, 236 F.3d 1123, 1131-32 (9th Cir. 2000).   In a class action, standing is satisfied if at least one named plaintiff meets the requirements. *See Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.2001).

LSI contends that plaintiffs' injury is not traceable to its conduct.  LSI offers the affidavit of Kathleen M. Rice, Executive Vice President of Appraisal Operations for LSI, which states that Rice performed a search of LSI's records and found no evidence that the company had ever prepared or completed an appraisal on behalf of Scholl or the property she purchased.  Affidavit of Kathleen M Rice ¶ 7-15.  Plaintiffs respond that, on Scholl's appraisal form, the address "lisstatus@lendersservice.com" appears in the Lender/Client contact information field.  See Affidavit of Joseph Kravec, ISO Pls' Opp'n to Def.'s Mot. to Dismiss, Ex. 2, pg. 7.  Plaintiffs argue that this email address belies LSI's statement that it had "no involvement" with the appraisals at issue, and further point out that Rice's affidavit is carefully worded to state only that no appraisals were "prepared" or "completed" for plaintiffs.  These points are well-taken; the appearance of the email address does suggest some involvement, and Rice's affidavit leaves some possibilities open. But standing requires that a plaintiff establish that some injury in fact is fairly traceable to the conduct of the defendant.  Here plaintiffs' alleged injury arises out of EA and LSI incorrectly appraising the property on which either took out a loan.  Without more, the email address does not establish that LSI influenced in any way the appraised value of Scholl's property.  There is no claim that LSI was involved with the appraisal of Spears' property.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiffs next argue that LSI's role in the alleged conspiracy between WMB, EA, and LSI

2    makes the jurisdictional issue so intertwined with the merits that dismissal would be inappropriate at

3    this time. Pls.' Mem. ISO Opp'n to Mot. to Dismiss 10. Plaintiffs cite *Augustine v. United States*, in

4    which the Ninth Circuit deferred a jurisdictional ruling until relevant facts could be determined on a

5    merits motion or at trial. 704 F.2d 1074, 1077 (9th Cir. 1983). In *Augustine*, a dentist's alleged

6    negligence went both to the merits and to notice for the purposes of a jurisdictional filing

7    requirement. *Id.* at 1076. Here, plaintiffs argue that the merits of their conspiracy claim are

8    intertwined with traceability.  In order to allege a civil conspiracy, plaintiffs must allege an

9    agreement to commit wrongful acts. *Wasco Products v. Southwall Technologies, Inc.*, 435 F.3d 989,

10   992 (9th Cir. 2006). Plaintiffs characterize the conspiracy in their motions as among LSI, EA, and

11   WMB, but the complaint's allegations are more limited.  The complaint describes what might be

12   described as two parallel conspiracies; one between EA and WMB, and another between LSI and

13   WB.  *See* Compl. ¶¶ 99-110 (Third and Fourth Claims for Relief). There does not appear to be A

14   sufficient allegation that EA and LSI had an agreement.  Plaintiffs have thus failed to establish

15   standing, either directly or as a result of a conspiracy, to sue LSI.  LSI's motion to dismiss is

16   therefore granted with leave to amend.

17          **B.      RESPA Claims**

18          Plaintiffs first claim for relief alleges that defendants violated two provisions of RESPA, 12

19   U.S.C. § 2607(a) and 2607(b).  Defendants argue that the complaint fails to state a claim under both

20   provisions.  Under 2607(a), they argue that the alleged sham-appraisals are not a "thing of value"

21   under the statute.  And under 2607(b), defendants claim that the only payment by plaintiffs was for

22   services actually performed.

23          § 2607(a), which generally prohibits payments for referrals, or "kickbacks," states that "[n]o

24   person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any

25   agreement or understanding, oral or otherwise, that business incident to or a part of a real estate

26   settlement service involving a federally related mortgage loan shall be referred to any person."  The

27   Department of Housing and Urban Development ("HUD") has interpreted "thing of value" broadly.

28   HUD regulations state that:

ORDER GRANTING LSI'S MOTION TO DISMISS; ORDER GRANTING IN PART AND DENYING IN PART EA'S MOTION TO
DISMISS —No. C-08-00868 RMW
JAS                                                              4

United States District Court
For the Northern District of California

1

2

3

4

5

6

> It includes, *without limitation*, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained or increased earnings, increased equity in a parent or subsidiary entity, special bank deposits or accounts, special or unusual banking terms, services of all types at special or free rates, sales or rentals at special prices or rates, lease or rental payments based in whole or in part on the amount of business referred, trips and payment of another person's expenses, or reduction in credit against an existing obligation. The term "payment" is used throughout Secs. 3500.14 and 3500.15 as synonymous with the giving or receiving any "thing of value" and does not require transfer of money.

7   25 C.F.R. 3500.14(d) (emphasis added). Here plaintiffs argue that the inflated appraisals constituted

8   "thing[s] of value" because they allowed WMB to sell the loans to in higher volume to financial

9   institutions at higher prices. As alleged, this is the kind of quid-pro-quo benefit in return for a

10  referral that § 2607(a)'s proscription of kickbacks is meant to reach. Indeed, the language of the

11  statute, encompassing all benefits constituting a "thing of value," and the interpreting regulation,

12  seem to include a wide variety of benefits that could be received in return for business referrals. The

13  court therefore finds that the alleged inflated appraisals fall within § 2607(a).

14       Defendants also filed a statement of recent decision attaching *Cedeno v. IndyMac Bancorp,*

15  *Inc.*, 2008 WL 3992304 (S.D.N.Y. 2008). *Cedeno* held that the "safe harbor" provision in

16  2607(c)(2) applied to a case with facts similar to this one. The safe harbor provides that "nothing in

17  this section shall be construed as prohibiting . . . the payment to any person of a bona fide salary or

18  compensation or other payment for goods or facilities actually furnished or for services actually

19  rendered." 12 U.S.C. 2706(c)(2). However, if one views the inflated appraisal as a "thing of value"

20  given from EA to WMB in return for the referral, it is not a payment for goods or services rendered.

21  In this case plaintiffs have, of course, paid for the appraisal services, but those payments are not

22  what is alleged to violate RESPA. Rather, the high appraisal is the payment made in exchange for

23  the referral of appraising business.

24       § 2607(b), which prohibits fee-sharing, provides that "[n]o person shall give and no person

25  shall accept any portion, split, or percentage of any charge made or received for the rendering of a

26  real estate settlement service in connection with a transaction involving a federally related mortgage

27  loan other than for services actually performed." Plaintiffs argue that the appraisals they received

28  were "not worth the paper on which they were printed and were otherwise valueless" and therefore

ORDER GRANTING LSI'S MOTION TO DISMISS; ORDER GRANTING IN PART AND DENYING IN PART EA'S MOTION TO DISMISS —No. C-08-00868 RMW
JAS

that their payment for the appraisal is one other than for services performed under § 2607(b). Defendants argue that, although plaintiffs dispute the quality, they nonetheless received an appraisal for the fee paid.

There is significant authority for the proposition that disputes about price, however justified, do not give rise to liability under RESPA. *See Morrisette v. Novastar Home Mortg., Inc.*, 284 Fed.Appx. 729, 729-730 (11th Cir. 2008) (noting that the Second, Third, Fourth, Seventh, and Eighth and Eleventh Circuits hold that § 8(b) of RESPA does not govern excessive fees because "it is not a price control provision."). The court in *Morrisette* "rejected the notion that courts should break single fees into various "components" for evaluation . . . with the allegedly "earned" versus "unearned" portions of the fee." *Id.* Indeed, the court wrote, "subsection 8(b) requires a plaintiff to allege that *no* services were rendered in exchange for a settlement fee." *Id.* (emphasis in original). Plaintiffs do allege that they "never received the appraisal service for which they were charged." Compl. ¶ 82. Indeed, plaintiffs consistently refer to the provided appraisal as a "sham, counterfeit" appraisal. Pls.' Comb. Opp'n to Defs.' Mots. to Dismiss 9.

The distinction to be drawn, then, is between an overpriced service, from which RESPA offers no protection, and no service at all, which it does. According to the allegations in the complaint, plaintiffs paid for appraisals and received in return appraisals with inflated values. Plaintiffs do not contend that the appraisals were so defective as to make them useless in supporting the borrowers' loan applications. And plaintiffs' position that the appraisal were so defective as to be useless and of no value is belied by the complaint. The appraisals were, in fact, successfully used to obtain mortgages. Therefore, plaintiffs do not state a claim under § 2607(b).

## C.    Preemption of State-Law Claims

Defendants also argue that plaintiffs' state-law claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq*.. Federal law may preempt state law in three ways: "First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . .  Third, preemption may be

1    implied when state law actually conflicts with federal law." *Bank of Am. v. City and County of San*

2    *Francsico*, 309 F.3d 551, 558 (9th Cir. 2002).

3           HOLA was enacted in 1933 as a result of congressional dissatisfaction with state law and

4    practice in financing home construction. *Conference of Federal Sav. and Loan Associations v.*

5    *Stein,* 604 F.2d 1256, 1257-58 (9th Cir. 1979).  At the time, State laws were "a hodgepodge of

6    savings and loan regulations," and 40% of home loans were in default. *Id.* (quoting T. MARVELL,

7    THE FEDERAL HOME LOAN BANK BOARD, p. 26 (1969)).  To ameliorate the resulting lack of

8    confidence in savings and loan institutions, Congress passed HOLA, giving the Office of Thrift

9    Supervision ("OTS") broad regulatory authority over thrift institutions. *Silvas v. E*Trade Mortgage*

10   *Corp.*, 514 F.3d 1001 (9th Cir. 2008); 12 U.S.C. § 1464(a).

11          OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 explicitly occupying the field

12   of lending regulation for federal savings associations:

13          To enhance safety and soundness and to enable federal savings associations to
            conduct their operations in accordance with best practices (by efficiently delivering
14          low-cost credit to the public free from undue regulatory duplication and burden),
            OTS hereby occupies the entire field of lending regulation for federal savings
15          associations. OTS intends to give federal savings associations maximum flexibility to
            exercise their lending powers in accordance with a uniform federal scheme of
16          regulation.

17   12 C.F.R. § 560.2(a).  After the above general field-preemption provision, § 560.2(b) enumerates,

18   though "without limitation," thirteen particular types of state laws that are explicitly preempted.

19   These include, relevant here, state laws purporting to impose requirements regarding loan related

20   fees (12 C.F.R. § 560.2(b)(5)), and processing, origination, servicing, sale or purchase of, or

21   investment or participation in, mortgages (12 C.F.R. § 560.2(b)(10)). § 560.2(c) identifies state laws

22   that are not preempted, listing some state laws of general application and providing that they are not

23   preempted "to the extent they only incidentally affect the lending operations of Federal savings

24   associations . . . ." 12 C.F.R. § 560.2(c).  According to later OTS regulations, a court should first

25   inquire whether a particular state law falls within § 560.2(b).  *Silvas,* 514 F.3d 1001, 1005 (9th Cir.

26   2008)(quoting 61 Fed. Reg. 50951, 50966-50967 (Sept. 30, 1996)).  If it does, then the law is

27   preempted. *Id.*  If not, the next question is whether the law affects lending, in which case the law is

28

preempted *unless* the law can clearly be shown to fall within 560.2(c).  *Id.*  Finally, § 560.2(c)

should be interpreted narrowly, and any doubt should be resolved in favor of preemption. *Id.*

### 1.      Preemption of UCL and CLRA Claims

The first step is to analyze whether Cal. Bus. Prof. Code § 17200, as applied, is the type of

state law contemplated under § 560.2(b).  *Id.*  Plaintiffs first UCL claim is based on EA's allegedly

unlawful conduct in contravention of the Uniform Standards of Professional Appraisal Practice

("USPAP").  Compl. ¶ 91.  Specifically, plaintiffs allege that EA violated the requirement that an

appraisal be performed with impartiality, objectivity, and independence.  *Id.*  Those standards are

incorporated into federal regulations concerning real-estate lending.  *See* 12 C.F.R. 34, *et sec*

(entitled "Real Estate Lending and Appraisals.").  Plaintiffs' second and third UCL claims, which

concern the same conduct, allege that the impartiality of the offered appraisals constituted unfair and

fraudulent business practices under § 17200.  Plaintiffs CLRA claim alleges that EA represented that

their home appraisal services were of a standard or quality that they were not, in violation of

California Civil Code § 1770(a)(7).

Each of these claims relate directly to the processing and origination of mortgages.

Appraisals are required for many real-estate transactions. 12 C.F.R. 34.43 (requiring a certified or

licensed appraisal for all real-estate financial transactions except those falling within enumerated

exceptions).  And those appraisals must be performed according to certain standards in order to

protect the public and federal financial interests. 12 C.F.R. 34.41(b).  Indeed, plaintiffs' theory of the

case, that lenders and appraisers conspired to inflate appraisals in order to increase mortgage resale

prices, demonstrates the importance and interrelationship of impartial appraisals to mortgage

origination and servicing.  *See* Compl. ¶¶ 1-7.  The court therefore finds that plaintiffs' UCL and

CLRA claims, as applied, relate to the processing and origination of, and participation in, mortgages,

and are thus preempted under § 560.2(b)(10).  *See also Cedeno*, 2008 WL 3992304 at *8 (holding

that HOLA preempted a similar challenge to inflated appraisal values).

### 2.      Preemption of Breach of Contract Claims

Although the court concludes below that the complaint includes insufficient allegations to

plead a claim for breach of contract, plaintiffs argue that EA breached a contract by providing the

United States District Court
For the Northern District of California

1  inflated appraisal to plaintiffs.  As pled, the complaint offers insufficient detail to adjudicate whether

2  the claim is preempted.  *Compare In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*,

3  491 F.3d 638 (7th Cir. 2007)("Suppose [a Savings and Loan] signs a mortgage agreement with a

4  homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at

5  a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It

6  would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a

7  defense based on the mortgagee's breach of contract.") *with Cedeno*, 2008 WL 3992304 at *9-10

8  (holding that HOLA preempted a contract claim based on breach of the covenant of good faith and

9  fair dealing).  Should plaintiffs choose to amend their claim for breach of contract claim, the court

10  will revisit the preemption question.

11       **D.    California Business and Professions Code § 17200**

12       Defendants contend that plaintiffs have not pleaded that they have suffered any damage, and

13  therefore cannot state a claim for violation of California's UCL.  In order to have standing to sue

14  under § 17200, a plaintiff must have suffered an "injury in fact and have lost money or property as a

15  result of the unfair competition." Cal. Bus. & Prof. Code § 17204.  Plaintiffs contend that they have

16  suffered injury in fact because, had they known that the appraisals were deficient, they "would not

17  have agreed to pay the fees requested as payment for the purportedly real appraisals," and that they

18  "were damaged in that they never received the appraisal service for which they were charged."  Pls.'

19  Comb. Opp'n 28.  Because plaintiffs would have had to pay for the appraisal in order to take out the

20  loan, they would have paid an appraisal fee whether the appraisal provided was defective or not.

21  That is, had the appraisal been performed lawfully and in good faith, plaintiffs provide no basis on

22  which to conclude that they would have been better off.  Plaintiffs therefore lack standing under the

23  UCL.

24       **E.    CLRA**

25       Actual damages are also an element of plaintiffs' claim under the CLRA, and it is therefore

26  also dismissed. *Willens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 754 (2003).

27       **F.    Breach of Contract**

28

Defendants first argue that plaintiffs have not alleged that a contract existed between plaintiffs and EA.  Plaintiffs respond that the following paragraph of the complaint pleads a contractual relationship:

> In connection with these WMB home loans, WMB, on behalf of and for Plaintiffs and the Class, undertook and agreed to procure appraisals from EA and/or LSI for the homes that were the subject of Plaintiffs' and Class members' WMB loans.  EA and/or LSI undertook and agreed to provide and provided Plaintiffs and the Class with these appraisals directly and/or by delivery to them through WMB.  Plaintiffs and Class members were charged for these appraisals as reflected in their Settlement Statements (HUD-1) and other documents.

Compl. ¶ 120.  This paragraph pleads that WMB agreed to procure an appraisal for plaintiffs and that EA and LSI agreed to provide the appraisal, but does not state whether the appraisal would be provided pursuant to a contract between EA and WMB, EA and plaintiffs, or merely to comply with federal law.  Plaintiffs argue that WMB acted as plaintiffs' agent, but that allegation does not appear in the complaint.  Plaintiffs therefore fail to plead an action for breach of contract.

**G.   Unjust Enrichment**

Defendants contend that no independent cause of action exists for unjust enrichment.  There is a split in California courts on whether unjust enrichment is an independent cause of action or merely an equitable remedy.  *See Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1099-100 (N.D.Cal. 2007).   Even where an independent action is permitted, it is generally where other forms of relief are inadequate.  *Id.*  Because the court finds that the complaint states a claim for violation of RESPA, and the unjust enrichment claim has the same basis, it is subject to dismissal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

### III.  ORDER

For the reasons stated above, the court:

1.   Grants LSI's motion to dismiss.

2.   Denies EA's motion to dismiss with respect to 12 U.S.C. 2607(a);

3.   Grants EA's motion to dismiss with respect to 12 U.S.C. 2607(b) with prejudice;

4.   Grants EA's motion to dismiss with respect to plaintiffs' claims under California's
     Unfair Competition Law and Consumer Legal Remedies Act with prejudice.

5.   Grants EA's motion to dismiss plaintiffs' breach of contract claim.

6.   Grants plaintiffs 20 days leave to amend.

DATED:     03/09/09                              _Ronald M Whyte_____
                                                 RONALD M. WHYTE
                                                 United States District Judge

ORDER GRANTING LSI'S MOTION TO DISMISS; ORDER GRANTING IN PART AND DENYING IN PART EA'S MOTION TO DISMISS —No. C-08-00868 RMW
JAS                                        11

**United States District Court**
For the Northern District of California

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiff:**

3    Ira Spiro               Ira@SpiroMoss.com
       Janet Lindner Spielberg    jlspielberg@jlslp.com
4    Joseph N. Kravec , Jr.      jnk@ssem.com
       Michael David Braun      service@braunlawgroup.com
5    James Mark Moore       mark@spiromoss.com

6    **Counsel for Receiver:**

7    Jonathan Mark Lloyd      jonathanlloyd@dwt.com
       David A. Super           david.super@bakerbotts.com
8    Ryan E. Bull             Ryan.Bull@bakerbotts.com
       Sam N. Dawood         samdawood@dwt.com
9    Stephen M. Ng           stephen.ng@bakerbotts.com

10    **Counsel for Defendants:**

11    Stephen Michael Rummage   steverummage@dwt.com
       Robert J. Pfister         rpfister@stblaw.com
12    Martin L. Fineman       martinfineman@dwt.com
       Jeffrey D. Rotenberg      jrotenberg@tpw.com
13    Kerry Ford Cunningham    kerry.cunningham@dlapiper.com
       Laura Jean Fowler       lfowler@mhalaw.com
14    Patrick J. Smith         psmith@tpw.com
       Richard F. Hans        rhans@tpw.com
15    Michael T. Fogarty      tfogarty@mhalaw.com
       Christopher J Clark      cjclark@dl.com
16    Kevin C Wallace       kwallace@dl.com
       Kris Hue Chau Man      kman@dl.com
17    Margaret Anne Keane     mkeane@dl.com
       Angela M. Papalaskaris    apapalas@dl.com

18

19    Counsel are responsible for distributing copies of this document to co-counsel that have not
       registered for e-filing under the court's CM/ECF program.

20

21

22

23    **Dated:**        03/09/09                   **JAS**
                                                 **Chambers of Judge Whyte**

24

25

26

27

28

ORDER GRANTING LSI'S MOTION TO DISMISS; ORDER GRANTING IN PART AND DENYING IN PART EA'S MOTION TO
DISMISS —No. C-08-00868 RMW
JAS                                  12