1  MARGARET A. KEANE (State Bar No. 255378)
mkeane@dl.com
2  DEWEY & LEBOEUF LLP
1950 University Avenue, Suite 500
3  East Palo Alto, CA  94303
Telephone:  (650) 845-7000
4  Facsimile:  (650) 845-7333

5  KEVIN C. WALLACE (*Admitted pro hac vice*)
kwallace@dl.com
6  ANGELA M. PAPALASKARIS (*Admitted pro hac vice*)
apapalas@dl.com
7  1301 Avenue of the Americas
New York, NY  10019-6092
8  Telephone:  (212) 259-8000
Facsimile:  (212) 259-6333

9
*Attorneys for Defendant*
10 *LSI APPRAISAL, LLC*

11

12          **IN THE UNITED STATES DISTRICT COURT**

13          **NORTHERN DISTRICT OF CALIFORNIA**

            **SAN JOSE DIVISION**

14

15  FELTON A. SPEARS, JR. and                    )   **CASE NO.:    5:08-CV-00868 (RMW)**
    SIDNEY SCHOLL, JUAN BENCOSME and             )
16  CARMEN BENCOSME on behalf of themselves      )   **CLASS ACTION**
    and all others similarly situated,          )
17                                               )
                          Plaintiffs,            )   **NOTICE OF MOTION; MOTION TO**
18                                               )   **DISMISS; MEMORANDUM OF**
              v.                                 )   **POINTS AND AUTHORITIES IN**
19                                               )   **SUPPORT OF MOTION TO DISMISS**
    FIRST AMERICAN EAPPRAISEIT                   )   **AND IN OPPOSITION TO MOTION**
20  (a/k/a eAppraiseIT, LLC),                    )   **TO INTERVENE**
    a Delaware limited liability company; and    )
21  LENDER'S SERVICE, INC.,                      )   DATE:     June 5, 2009
    (a/k/a LSI Appraisal, LLC),                  )   TIME:     9:00 a.m.
22  a Delaware limited liability company,        )   CRTRM:  6, 4th Floor
                                                 )
23                        Defendants.            )
                                                 )
24  ─────────────────────────────────────────── )

25

26

27

28

1

## **TABLE OF CONTENTS**

2

**Page**

3    PRELIMINARY STATEMENT ................................................................................. 2

4    BACKGROUND ................................................................................................. 3

5        A.    The First Amended Complaint.......................................................... 4

6        B.    Motions to Dismiss the First Amended Complaint ................................ 4

7        C.    The Second Amended Complaint ...................................................... 5

8    ARGUMENT ..................................................................................................... 6

9        I.    The Analysis Behind the Court's March 9th Order Dismissing Certain
10                 Claims with Prejudice as to eAppraiseIT Applies Equally to LSI........................ 6

11       II.    Governing Standards of Law ........................................................... 6

12       III.   Plaintiffs Cannot Use Intervention to Cure Their Failure to
                 Establish Standing........................................................................ 8

13       IV.    This Court is Not the Proper Venue For the Bencosmes' Claims ....................... 10

14       V.    The Bencosmes' RESPA Claim is Barred by the Applicable One-Year
                 Statute of Limitations, Which Is Not Subject to Tolling Under
15               *American Pipe*............................................................................. 11

16               A.    *American Pipe* Tolling Does Not Apply Where the
                       Plaintiffs in the Original Action Lacked Standing................................... 12
17
                 B.    *American Pipe* Tolling Does Not Apply to a
18                     Second Class Action ........................................................... 14

19               C.    Tolling Does Not Apply to Actions Dismissed Before
                       a Decision On Class Certification............................................ 15
20
21       VI.    The Complaint Fails to Adequately Allege a Claim Under
                 Section 8(a) of RESPA .................................................................. 15

22       VII.   The Complaint Fails to Sufficiently Allege a Breach of Contract Claim ............. 18

23               A.    Plaintiffs Fail to Allege an Agency Relationship ..................................... 18

24               B.    Plaintiffs Fail to Sufficiently Allege the Existence of a Contract............ 20

25               C.    Allegations of Damages Are Insufficient ................................................. 21

26
27   CONCLUSION.................................................................................................. 23

28

i

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                                                  **<u>Page</u>**

*Abrams Shell v. Shell Oil Co.*,
    165 F. Supp. 2d 1096 (C.D. Cal. 2001) ................................................................ 11

*Aetna Cas. & Sur. Co., v. Hillman*,
    796 F.2d 770 (5th Cir. 1986) ............................................................................... 8

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)................................................................................... *passim*

*Amochaev v. Citigroup Global Markets Inc.*,
    2007 WL 484778 (N.D. Cal. Feb. 12, 2007) ....................................................... 10

*Andrews v. Orr*,
    851 F.2d 146 (6th Cir. 1988) ............................................................................. 14

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) ................................................................................. 7

*Arikat v. JP Morgan Chase & Co.*,
    430 F. Supp. 2d 1013 (N.D. Cal. 2006) ............................................................... 20

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) .............................................................................. 7

*Basch v. Ground Round, Inc.*,
    139 F.3d 6, 10-11 (1st Cir. 1998)........................................................................ 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)................................................................... 7

*Bhandari v. Cadence Design Systems, Inc.*,
    485 F. Supp. 2d 747 (E.D. Tex. 2007) .................................................................. 8

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ................................................................................. 7

*Catholic Social Services Inc. v. INS*,
    232 F.3d 1139 (9th Cir. 2000) ............................................................................ 14

*Cedeno v. IndyMac Bancorp., Inc.*,
    2008 WL 3992304 (S.D.N.Y. Aug. 26, 2008)......................................... 15, 16, 18

ii

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)..................................................................................... 13

*Dukes v. Wal-Mart Stores, Inc.*,
    2001 WL 1902806 (N.D. Cal. Dec. 3, 2001)........................................................... 11

*Durning v. First Boston Corp.*,
    815 F.2d 1265 (9th Cir. 1987) ......................................................................... 7

*Durr v. Intercounty Title Co. of Illinois*,
    826 F. Supp. 259 (N.D. Ill. 1993), *aff'd*, 14 F.3d 1183 (7th Cir. 1994) ............................... 17

*Edwards v. First Am. Corp.*,
    517 F. Supp. 2d 1199 (C.D. Cal. 2007) ................................................................ 11

*Foley v. Bates*,
    2007 WL 1831133 (N.D. Cal. June 25, 2007) .......................................................... 7

*Foster v. Center Township*,
    798 F.2d 237 (7th Cir. 1986) .......................................................................... 9

*Griffin v. Singletary*,
    17 F.3d 356 (11th Cir. 1994) .......................................................................... 14

*Haas v. Pittsburgh National Bank*,
    526 F.2d 1083 (3d Cir. 1975)........................................................................... 15

*In re Colonial Ltd. P'ship Litig.*,
    854 F. Supp. 64 (D. Conn. 1994) ...................................................................... 12

*In re Crazy Eddie Sec. Litig.*,
    747 F. Supp. 850 (E.D.N.Y. 1990) .................................................................... 12

*In re Crazy Eddie Sec. Litig.*,
    802 F. Supp. 804 (E.D.N.Y. 1992) .................................................................... 9

*In re Elscint Limited Securities Litigation*,
    674 F. Supp. 374 (D. Mass. 1987) .................................................................... 13

*In re Exodus Communications, Inc. Sec. Litig.*,
    2006 WL 2355071 (N. D. Cal. Aug. 14, 2006) ....................................................... 8

*Kelly v. Echols*,
    2005 WL 2105309 (E.D. Cal. Aug. 30, 2005) ........................................................ 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).................................................................................... 7

*Korwek v. Hunt*,
    827 F.2d 874 (2d Cir. 1987)............................................................................ 14

iii

*Kruse v. Wells Fargo Home Mortgage, Inc.*,
    2006 WL 1212512 (E.D.N.Y. May 3, 2006) ........................................................... 9, 10, 11

*Lierboe v. State Farm Mutual Automobile Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ...................................................................................... 8, 9

*McClune v. Shamah*,
    593 F.2d 482 (3d Cir. 1979) ............................................................................................. 8

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*
    295 F.3d 380 (3d Cir. 2002) ............................................................................................. 9

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988) ......................................................................................... 8

*Moore v. Radian Group, Inc.*,
    233 F. Supp. 2d 819 (E.D. Tex. 2002) *aff'd*, 69 F. App'x 659 (5th Cir. 2002) ..................... 17

*Morales v. Attorneys' Title Ins. Fund, Inc.*,
    983 F. Supp. 1418 (S.D. Fla. 1997) ............................................................................... 17

*Mullinax v. Radian Guaranty, Inc.*,
    311 F. Supp. 2d 474 (M.D.N.C. 2004) ..................................................................... 12, 17

*O'Shea v. Littleton*,
    414 U.S. 488, 94 S. Ct. 669 (1974) ............................................................................... 13

*Parrish v. Nat. Football League Players Ass'n*,
    534 F. Supp. 2d 1081 (N.D. Cal. 2007) ......................................................................... 21

*Price v. Countrywide Home Loans, Inc.*,
    2005 WL 2354348 (S.D. Ga. Sept. 26, 2005) ................................................................. 11

*Rahr v. Grant Thornton LLP*,
    142 F. Supp. 2d 793 (N.D. Tex. 2000) ........................................................................... 15

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ......................................................................................... 7

*Rio Properties, Inc. v. Rio Intern. Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ......................................................................................... 7

*Robbin v. Fluor Corp.*,
    835 F.2d 213 (9th Cir. 1987) .................................................................................... 14, 15

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*,
    765 F.2d 1334 (5th Cir. 1985) ....................................................................................... 14

*Stutz v. Minnesota Mining Manufacturing Co.*,
    947 F. Supp. 399 (S.D. Ind. 1996) ................................................................................. 15

iv

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
   594 F.2d 730 (9th Cir. 1979) ................................................................. 7

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ......................................................... 9

*United States v. Trucking Employers, Inc.*,
   72 F.R.D. 98 (D.D.C. 1976)................................................................. 11

*Webb v. Chase Manhattan Mortgage Co.*,
   2005 WL 106896 (S.D.N.Y. Jan. 18, 2005) ..................................... 11

*Western Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ............................................................... 7

**State Cases**

*Bramalea California, Inc. v. Reliable Interiors, Inc.*,
   119 Cal. App. 4th 468, 14 Cal. Rptr. 3d 302 (Cal. Ct. App. 2004) ........................................ 21

*CDF Firefighters v. Maldonado*,
   158 Cal. App. 4th 1226, 70 Cal. Rptr. 3d 667 (Cal. App. 5th Dist. 2008) ............................ 20

*Emery v. Visa International Service Ass'n*,
   95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (Cal. App. 3 Dist. 2002)..................................... 18

*First Commercial Mortgage Co. v. Reece*,
   89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23 (2001)................................................................. 20

*Kaplan v. Coldwell Banker Residential Affiliates, Inc.*,
   59 Cal. App. 4th 741, 69 Cal. Rptr. 2d 640 (Cal. App. 2 Dist. 1997)..................................... 19

*McKell v. Washington Mutual, Inc.*,
   142 Cal. App. 4th 1457 (2006) ........................................................... 20

**Statutes and Regulations**

Federal Rules of Civil Procedure
   Rule 12(b)(1) ................................................................. 2, 6, 23
   Rule 12(b)(3) ................................................................. 2, 7, 23
   Rule 12(b)(6) ................................................................. 2, 7, 23

Real Estate Settlement Procedures Act
   Section 2607(a) ........................................................... *passim*
   Section 2607(b) ........................................................... 4, 5
   Section 2607(d)(2) ....................................................... 17
   Section 2614................................................................. 10, 11

12 C.F.R. § 564.5 ................................................................. 19

28 U.S.C. § 1391 ................................................................. 10

v

28 U.S.C. § 1406 ................................................................................................ 10

### **Miscellaneous**

4 Witkin, *Cal. Procedure* (4th ed. 1997) Pleading ...................................................... 20

15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3844 (1986).................. 8

Frequently Asked Questions on the Appraisal Regulations and the Interagency Statement on Independent Appraisal and Evaluation Functions (Mar. 22, 2005) ............................................... 20

Independent Appraisal and Evaluation Functions (Oct. 28, 2003) ............................................ 20

Restatement (Third) Of Agency (2006) ....................................................................... 19

Uniform Standards of Professional Appraisal Practice,
    Statement of Appraisal Standards No. 9 ............................................................... 21

## NOTICE OF MOTION AND MOTION

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 5, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Ronald M. Whyte, in Courtroom 6, of the above-entitled Court located on the 4th Floor, at 280 1st Street, San Jose, CA 95113, will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6), for the entry of an Order dismissing all claims for relief in the Second Amended Complaint and denying the Motion to Intervene by Putative Class Members Juan and Carmen Bencosme filed by Plaintiffs in this action.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in Support of the Motion to Dismiss and in Opposition to Motion to Intervene, all documents in the Court's file, and matters of which this Court can take judicial notice, and any evidence presented at or prior to the hearing on this matter.

## STATEMENT OF RELIEF SOUGHT

LSI Appraisal, LLC seeks an Order from this Court dismissing Plaintiffs' Second Amended Complaint and denying the Motion to Intervene by Putative Class Members Juan and Carmen Bencosme in their entirety without leave to amend.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant LSI Appraisal, LLC ("LSI") respectfully submits this memorandum of points and authorities in support of its motion to dismiss pursuant to Rules 12(b)(1), 12(b)(3) and 12(b)(6), Federal Rules of Civil Procedure, the Second Amended Complaint (the "Complaint") filed on March 30, 2009 by plaintiffs Felton A. Spears, Jr., Sidney Scholl, Juan Bencosme and Carmen Bencosme (collectively "Plaintiffs"); and in opposition to the Motion to Intervene by Putative Class Members Juan and Carmen Bencosme (the "Motion to Intervene"), also filed by Plaintiffs on March 30, 2009.[1]

### **PRELIMINARY STATEMENT**

Plaintiffs' latest amendment to their complaint against LSI and First American eAppraiseIT ("eAppraiseIT") is not the first time that Plaintiffs attempt to state a claim against LSI based on allegations of "biased" and "unreliable" appraisal services.  It should, however, be their last.

On March 9, 2009, this Court held that Plaintiffs Spears and Scholl could not state a claim against LSI because they failed to pass the basic test of standing, either based on an alleged conspiracy or LSI's direct involvement with the appraisals Plaintiffs Spears and Scholl.  The Court therefore, granted LSI's motion to dismiss Plaintiffs' claims against LSI, but granted Plaintiffs leave to replead.  The Court then continued to dismiss five of the seven claims against eAppraiseIT *with prejudice*.  Although those claims were dismissed with prejudice only as to eAppraiseIT, the analysis in the Order applies equally to LSI.  Plaintiffs, therefore, cannot establish any of those claims against LSI.

Plaintiffs now seek to cure their standing problems and salvage their remaining claims against LSI by including the Bencosmes as named plaintiffs and filing the Motion to Intervene on behalf of the Bencosmes.  These futile efforts are insufficient to save Plaintiffs' last two claims against LSI.

---

[1] For the convenience of the Court, LSI will cite filings in this action by reference to their entry number in the docket. Therefore, Plaintiffs' First Amended Complaint filed Feb. 8, 2008 ("First Amended Complaint") is Docket No. 14; the Court's Order Granting LSI's Motion to Dismiss, dated March 9, 2009 is Docket No. 147; the Complaint is Docket No. 149; and the Motion to Intervene is Docket No. 150.

2

1        **First**, the Bencosmes are not entitled to intervene, either permissively or as of right.  Because

2  neither of the originally named Plaintiffs had standing to sue LSI, the action must be dismissed and

3  newly named plaintiffs with standing may not intervene.

4        **Second**, even if the Bencosmes are permitted to intervene, their claims against LSI should be

5  dismissed because this Court is not the proper venue for the Bencosmes' claim under Section

6  2607(a) of the Real Estate Settlement Procedures Act ("RESPA").

7        **Third**, any RESPA claim based on the appraisal services rendered in connection with the

8  Bencosmes' mortgage loan is time-barred under the one-year statute of limitations.  For several

9  reasons, *American Pipe* and its progeny do not apply here to toll the statute of limitations for the

10  Bencosmes' RESPA claim.

11        **Fourth**, Plaintiffs have not and cannot establish a REPSA claim against LSI.  In addition to

12  the arguments set forth by eAppraiseIT in support its motion to dismiss the Complaint, the

13  Bencosmes RESPA claim should be dismissed because the Plaintiffs fail to allege that the

14  Bencosmes' appraisal was inflated.  They merely allege that it was not an "independent, objective,

15  unbiased and credible appraisal done in compliance with applicable law."  This establishes neither

16  an inflated appraisal or, for that matter, damages.

17        **Fifth**, the Plaintiffs cannot state a claim against LSI for breach of contract.  Plaintiffs do not

18  sufficiently allege an agency relationship between themselves and Washington Mutual Bank

19  ("WaMu").  Nor do they adequately identify the "appraisal contracts" that were allegedly entered

20  into between WaMu (as Plaintiffs agent) and LSI.  Leaving those pleading failures aside, Plaintiffs

21  have not and cannot establish damages.

22                                   **BACKGROUND**

23        LSI assumes that the Court is familiar with the facts of this case and hereby incorporates the

24  statement of facts set forth in its Memorandum in Support of Motion to Dismiss the First Amended

25  Complaint, dated May 2, 2008.  *See* Docket No. 48 at 3-5.

26

27

28

3

**A.      The First Amended Complaint**

In Plaintiffs' First Amended Complaint against LSI, eAppraiseIT and WaMu, Plaintiffs Scholl and Spears alleged that LSI and eAppraiseIT secretly conspired with WaMu to provide "artificial appraisals" to unsuspecting home-loan mortgage borrowers.  Docket No. 14, ¶¶ 33-39. According to Plaintiffs, this scheme began in 2006 and remained hidden until November 1, 2007 when the New York Attorney General announced a complaint against eAppraiseIT.  *Id*. ¶¶ 67-70. Plaintiffs claimed that, during this time period, they "unwittingly" paid for unreliable, biased appraisals.  *Id*. ¶ 87.  As a result, they sued LSI, eAppraiseIT and WaMu for violating Sections 2706(a) and (b) of RESPA, as well as the unlawful, unfair and fraudulent prongs of California's Business and Professions Code ("UCL"), and the Consumer Legal Remedies Act ("CLRA"). Plaintiffs Scholl and Spears also brought claims for breach of contract and unjust enrichment.

**B.      Motions to Dismiss the First Amended Complaint**

On May 2, 2008, LSI, eAppraiseIT and WaMu filed separate motions to dismiss the First Amended Complaint.[2]  In particular, LSI argued that Plaintiffs could not establish the basic jurisdictional requirements of Article III standing based on either the Scholl or Spears appraisal and that Plaintiffs failed to state a claim based upon RESPA or state law.

On March 9, 2009, the Court granted LSI's motion to dismiss.  It held that there was insufficient evidence "that LSI influenced in any way the appraised value of the Scholl property." Docket No. 147 at 3.  The Court also held that there was "no claim that LSI was involved with the appraisal of Spears' property."  *Id*.  The Court furthermore rejected Plaintiffs' argument that standing could be established based on their conspiracy allegations.  *Id*. at 4.  The Court stated that "[t]he Complaint describes what might be described as two parallel conspiracies; one between EA and WMB, and another between LSI and WB.…  There does not appear to be a sufficient allegation that EA and LSI had an agreement."  *Id*.  The Court therefore concluded that "Plaintiffs have thus

---

[2] After those motions were filed, the Federal Deposit Insurance Corporation (the "FDIC") was substituted as receiver for WaMu and plaintiffs later stipulated to dismiss all claims against the FDIC.  Consequently, the Court never decided WaMu's motion to dismiss.  LSI and eAppraiseIT are the only remaining defendants in this action.

1  failed to establish standing, either directly or as a result of a conspiracy, to sue LSI.  LSI's motion to

2  dismiss is therefore granted with leave to amend."  *Id*.

3       The Court also decided eAppraiseIT's motion to dismiss on March 9th.[3]  The Court

4  dismissed with prejudice Plaintiffs' claim against eAppraiseIT under 2607(b) of RESPA, as well as

5  the UCL and CLRA claims.  The Court held that Plaintiffs' could not sue eAppraiseIT under RESPA

6  Section 8(b), because the appraisals in question "were, in fact, successfully used to obtain

7  mortgages."  Docket No. 147 at 6.  In addition, the Court held that the UCL and CLRA claims were

8  preempted by HOLA.  *Id.* at 8.  The Court also held that Plaintiffs Scholl and Spears failed to

9  properly allege "that they have suffered any damage" sufficient to sustain their CLRA claims or

10  claims under the UCL.  *Id.* at 9.  Nevertheless, the Court denied eAppraiseIT's motion to dismiss

11  Plaintiffs' claim under 2607(a) of RESPA after finding that an inflated appraisal could constitute a

12  "thing of value."  It also granted Plaintiffs 20 days leave to amend their breach of contract claim

13  against eAppraiseIT.

14       **C.**    **The Second Amended Complaint**

15       On March 30, 2009, the Plaintiffs filed the Second Amended Complaint, which now contains

16  allegations pertaining to the newly-added intervenor plaintiffs, Juan and Carmen Bencosme, and

17  filed a Motion to Intervene on their behalf.

18       The Bencosmes live in the State of New York.  Docket No. 149, ¶ 68.  They applied for a

19  home mortgage loan from WaMu in order to finance the purchase of real property located at 17

20  Pennsylvania Avenue in Brentwood, New York.  *Id.* ¶ 69.  WaMu arranged for Steven C. Horn of

21  S.C. Horn Associates, Inc. to perform an appraisal of the property.  The appraisal, which was

22  completed on November 8, 2007, valued the Bencosme property at the purchase price that the

23  Bencosmes had agreed upon (the "Bencosme Appraisal").  *Id.*, Ex. 6.  WaMu funded the

24  Bencosmes' loan, and their purchase of this property closed on November 30, 2007.  *Id.*, Ex. 5.

25

26

---

27  [3] eAppraiseIT also argued that Plaintiffs failed to state a claim based upon RESPA or state law.  Furthermore, it argued that Plaintiffs' state law claims were preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*; 12

28  C.F.R. Part 564.  *See* Docket No. 46.

                  

1   Plaintiffs do not identify any specific problems with the Bencosme Appraisal.  Nor do

2   Plaintiffs allege that the Bencosme Appraisal misstated the value of the New York property.

3   Instead, Plaintiffs contend that the Bencosme Appraisal violated USPAP because WaMu provided

4   LSI and eAppraiseIT with a list of "preferred" appraisers.  Docket No. 149, ¶¶ 41-50.  Plaintiffs do

5   not, however, allege that the Bencosme Appraisal was performed by a "preferred" appraiser.  Nor do

6   Plaintiffs specifically allege that the assignment given to Steven C. Horn included a requirement that

7   he report a predetermined opinion and conclusion in order to inflate the value of the appraisal.  There

8   is likewise, no specific claim that Mr. Horn's assignment was contingent upon developing or

9   reporting a predetermined value.

**ARGUMENT**

10

11   **I.      The Analysis Behind the Court's March 9th Order Dismissing Certain Claims with
           Prejudice as to eAppraiseIT Applies Equally to LSI**

12

13   As a preliminary matter, the only viable claims against LSI following the Court's March 9th

14   Order are Plaintiffs' counts alleging violation of RESPA Section 8(a) and breach of contract.  The

15   Court has already found that five of the seven causes of action in the First Amended Complaint were

16   either improper or preempted, and hence subject to dismissal with prejudice.  Docket No. 147 at 11.

17   Because the Court concluded that Plaintiffs lacked standing to bring any claims against LSI, the

18   finding was only applicable to claims against eAppraiseIT.  Nevertheless, the Court's holding is

19   equally fatal to the claims against LSI.[4]  Indeed, Plaintiffs expressly concede that they cannot state

20   claims based on these causes of action, and that they are alleged in the Complaint, "solely to

21   preserve their right to appeal."  Docket No. 149 at 28, 30, 34, 36, 38, 49.

22   **II.     Governing Standards of Law**

23   Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction

24   over the subject matter."  When considering a 12(b)(1) motion to dismiss, the district court "is free

25   to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual

26   _____

[4] LSI expressly raised the same objections to the allegations in the First Amended Complaint.  Docket No. 48 at 9-15.
27   To the extent the Court considers any of those claims to still be pending against LSI, LSI respectfully refers to and relies
     upon the arguments in support of its original motion to dismiss.

28

6

1   disputes where necessary."[5] *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "In

2   such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the

3   existence of disputed facts will not preclude the trial court from evaluating for itself the merits of

4   jurisdictional claims.'" *Id.* (*quoting Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730,

5   733 (9th Cir. 1979)).  Plaintiffs, as the party seeking to invoke jurisdiction, have the burden of

6   establishing that jurisdiction exists.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

7   376-78 (1994).

8       Likewise on a motion pursuant to Rule 12(b)(3), to dismiss for improper venue, the pleadings

9   need not be accepted as true, *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998),

10  and the court may consider facts outside of the pleadings.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d

11  320, 324 (9th Cir. 1996).  Once a defendant raises an objection to venue, the plaintiff bears the

12  burden of establishing that the selected venue is proper.  *Rio Properties, Inc. v. Rio Intern. Interlink*,

13  284 F.3d 1007, 1019 (9th Cir. 2002).  When there are multiple parties in an action, the plaintiff must

14  establish that venue is proper as to each defendant.  *Kelly v. Echols*, 2005 WL 2105309, *16 (E.D.

15  Cal. Aug. 30, 2005).

16      Finally, on a Rule 12(b)(6) motion to dismiss, the allegations of the complaint are accepted

17  as true and the plaintiff is entitled to all reasonable inferences that can be drawn in its favor.  *Cahill*

18  *v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Nevertheless, to survive a Rule

19  12(b)(6) motion to dismiss, the allegations in the complaint must be plausible.  *Bell Atlantic Corp. v.*

20  *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1970 (2007).  A court may not only consider facts

21  established by exhibits attached to the complaint, but also disregard allegations in the complaint if

22  contradicted by facts established by the exhibits.  *Durning v. First Boston Corp.*, 815 F.2d 1265,

23  1267 (9th Cir. 1987).  The court is not required to accept as true conclusory allegations,

24  unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643

25  F.2d 618, 624 (9th Cir. 1981).

26  ───────────────
    [5] Pursuant to Rule 12(b)(1) a court is free to consider facts and evidence outside the complaint – including affidavits and
27  other documents – without converting the motion into one for summary judgment.  *See Foley v. Bates*, 2007 WL
    1831133, at *1 (N.D. Cal. June 25, 2007) *("In resolving a factual attack on jurisdiction, the district court may review
28  evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").*

1

**III.      Plaintiffs Cannot Use Intervention to Cure Their Failure To Establish Standing**

2

Plaintiffs do not directly object or respond to this Court's finding that Mr. Spears and Ms.

3
Scholl "failed to establish standing, either directly or as a result of conspiracy, to sue LSI."  Docket

4
No. 147 at 4.  Instead, counsel for Plaintiffs have filed a simultaneous Motion to Intervene on behalf

5
of the Bencosmes that seeks to protect potential "class members who had their appraisals conducted

6
through LSI."  Docket No. 150-2 at 1.  A party, however, cannot use intervention to cure its failure

7
to establish standing by bringing a new plaintiff in to the action.  *See Lierboe v. State Farm Mutual*

8
*Automobile Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003); *In re Exodus Communications, Inc.*

9
*Sec. Litig.*, 2006 WL 2355071, *1 (N. D. Cal. Aug. 14, 2006).

10

Unless it establishes jurisdiction, a party is not allowed to amend the complaint or use

11
intervention to bring in a new plaintiff.  *See Bhandari v. Cadence Design Systems, Inc.*, 485 F. Supp.

12
2d 747, 750 (E.D. Tex. 2007) ("A plaintiff who does not have standing to assert a claim against the

13
defendant does not have standing to amend the complaint and control the litigation by substituting

14
new plaintiffs, a new class, or a new cause of action.") (*citing Aetna Cas. & Sur. Co., v. Hillman*,

15
796 F.2d 770, 774 (5th Cir.1986)).  Absent proper jurisdiction, a "district court has 'no power to do

16
anything with the case except dismiss.'"  *Morongo Band of Mission Indians v. Cal. State Bd. of*

17
*Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (*citing* 15 C. Wright, A. Miller & E. Cooper,

18
Federal Practice and Procedure § 3844, at 332 (1986)).

19

For example, in *In re Exodus Communications*, Judge Chesney refused to allow two new

20
parties to intervene after determining that the prior named plaintiffs did not have standing to sue.

21
The court found that "where the named plaintiffs in a class action lack standing, the action must be

22
dismissed and new named plaintiffs with standing may not intervene.'"  2006 WL 2355071 at *1.

23
"Put another way, 'intervention will not be permitted to breathe new life into a nonexistent lawsuit.'"

24
*Id.* (*citing McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1979)).

25

Even in a class action, intervention after a dismissal for lack of standing is not allowed.  In

26
*Lierboe v. State Farm*, the Ninth Circuit remanded an appeal to the district court with instructions to

27
dismiss, because the named plaintiff never had standing to pursue the action and was never a

28

8

member of the purported class.  *Lierboe,* 350 F.3d at 1023.  While the court was "mindful of judicial economy considerations," it was without power to allow the action to proceed.  *Id.*  In reaching that conclusion, the court relied on *Foster v. Center Township*, 798 F.2d 237, 245 (7th Cir. 1986), which did not allow intervention despite the fact that litigation had been pending for almost six years.  While the *Foster* court recognized that the ruling "may seem harsh," it was "a matter the parties could have easily avoided."  *Id.*  As is the case here, in *Foster*, it "was apparent from the face of the complaint that [plaintiff] never had standing and that she was never a member of the class she was named to represent."[6]  *Id.*

Here, neither of the originally named Plaintiffs has standing to sue LSI.  *See* Docket No. 149 at 22-24.  Nothing in the Complaint or the Motion to Intervene changes that fact.  In short, for Plaintiffs to assert a claim on behalf of individuals "who had their appraisals conducted through LSI," they were required to include such a party in the original action.[7]  Docket No. 150-2 at 5; *see Kruse v. Wells Fargo Home Mortgage, Inc.*, 2006 WL 1212512, *4-5 (E.D.N.Y. May 3, 2006) (denying motion to intervene in a RESPA class action, and rejecting tactic whereby, "[h]aving conceded that the original named plaintiffs have never had standing to sue, plaintiffs counsel hope[d] to continue the lawsuit by intervention.").

---

[6] None of the decisions cited in plaintiffs' Motion to Intervene are to the contrary.  *See* Docket No. 150-2 at 2.  Instead, those decisions generally involve the ability of a party to intervene where a named plaintiff has been determined to be inappropriate pursuant to Rule 23 – not a failure to establish standing.  *See, e.g., McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002) (denying class certification on the ground that named plaintiff was not adequate class representative under Rule 23); *In re Crazy Eddie Sec. Litig.*, 802 F. Supp. 804 (E.D.N.Y. 1992) (dismissing common law claims, not because putative class representatives did not have standing, but because they could not adequately represent class under Rule 23); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) (allowing intervention where newly added plaintiff would alleviate, not an issue with standing, but concerns relating to adequacy of representation under Rule 23(a)(4)).

[7] Even if some party with standing was permitted to join this action, the Bencosmes' would not be proper parties to intervene, either as of right or permissively.  The Bencosmes' claims are insufficiently similar to the claims pursued by Spears and Scholl.  Whereas both of the originally named defendants claimed that they were misled by the alleged conspiracy among WaMu, eAppraiseIT and LSI, the Bencosmes only obtained their appraisal after that alleged scheme became public on November 1, 2007.  The Complaint specifically alleges that the "upon and after the New York Attorney General's announcement in the Fall of 2007 … Plaintiffs became aware of Defendants' scheme." Docket No. 149, ¶ 76.

IV.     **This Court is Not the Proper Venue For the Bencosmes' Claims**

Even if the Bencosmes' were permitted to intervene, their claim would have to be dismissed (or transferred) for improper venue.[8]  In the Complaint, Plaintiffs allege that jurisdiction is proper under 28 U.S.C. § 1391, because a "substantial portion of the transactions and events complained of herein, including plaintiffs' occurred in this judicial district."  Docket No. 149, ¶ 19.  Not only is that plainly incorrect as to the Bencosmes, it also ignores that jurisdiction in this case is governed by the more specific venue provision of RESPA.

While venue is generally governed by 28 U.S.C. § 1391, that statute does not apply to cases alleging federal causes of action that contain more specific venue provisions.  For claims alleged under Section 8(a) of RESPA, venue is only proper in a "district in which the property involved is located or where the violation is alleged to have occurred."  12 U.S.C. § 2614; *see also Kruse*, 2006 WL 1212512 at *7.

The specific venue requirement of RESPA makes the Eastern District of New York the only proper venue for the Bencosmes' claims.  The Bencosmes are New York State residents and the "property involved" in their transaction is located in Brentwood, New York.  *See* Docket No. 149, ¶¶ 68-69.  Furthermore, the documents attached to the Complaint demonstrate that the settlement of the transaction took place in Huntington, New York (Docket No. 149-6, Ex. 5 at 1); and that the appraiser, Steven Horn, is located in Valley Stream, New York.  *See* Docket No. 149-7, Ex. 6 at 6.

Nor is there any allegation that any relevant conduct took place in the Northern District of California.[9]  Because neither the property, nor the relevant transactions, nor the purported violation of RESPA occurred in the Northern District of California, "venue is improper in this district."[10]

---

[8] Pursuant to 28 U.S.C. § 1406, a district court is required dismiss an improperly venued action, unless it would be "in the interest of justice" to transfer the case to a proper district.

[9] To the extent the Complaint alleges that LSI took any actions in the State of California, it alleges that the company has "operations centers" in Santa Ana, which is in the Central District, and Sacramento, which is in the Eastern District.

[10] While 28 U.S.C. § 1406 does allow for a transfer rather than dismissal where it would serve the "interest of justice," courts regularly dismiss plaintiffs and claims where venue is improper.  *See, e.g., Kruse*, 2006 WL 1212512 at *8. Moreover, where a plaintiff engages in "bad faith" – like "purporting to bring the action pursuant to the general venue statute" and "failure to cite the proper venue statute" – other courts in this district have found dismissal to be the proper remedy.  *See Amochaev v. Citigroup Global Markets Inc.*, 2007 WL 484778, at *1 (N.D. Cal. Feb. 12, 2007).

10

1 | *Kruse*, 2006 WL 1212512 at *7; *Webb v. Chase Manhattan Mortgage Co.*, 2005 WL 106896, *1

2 | (S.D.N.Y. Jan. 18, 2005) ("Plaintiffs' complaint, however, clearly alleges that the properties are

3 | located in Tennessee and Colorado.  Furthermore, the wrongful conduct is not alleged to have

4 | occurred in New York.  RESPA's venue provision, therefore, is not satisfied.").

5 | The fact this case is styled as a class action does nothing to alter the venue analysis.

6 | "Notwithstanding the relaxation of venue and personal jurisdiction requirements as to unnamed

7 | members of a plaintiff class, it is by now well settled that these requirements to suit must be satisfied

8 | for each and every named plaintiff for the suit to go forward." *Abrams Shell v. Shell Oil Co.*, 165 F.

9 | Supp. 2d 1096, 1107 n. 5 (C.D. Cal. 2001).  Whatever the effect of a pending class claim on the

10 | consideration of venue, it is still necessary that venue be proper with respect to the named parties.

11 | *United States v. Trucking Employers, Inc.*, 72 F.R.D. 98, 100 (D.D.C. 1976).  Without any

12 | connection between the property, the parties, the transaction or the violation and this district, this

13 | action must be dismissed for lack of venue under RESPA.  *See Price v. Countrywide Home Loans,*

14 | *Inc.*, 2005 WL 2354348, *6 (S.D. Ga. Sept. 26, 2005) (dismissing named plaintiff for lack of venue

15 | and declining to find "pendent venue" for a class or otherwise extend "RESPA's venue provision

16 | because making broad exceptions for judicial economy, and avoiding a multiplicity of litigation,

17 | would thwart the will of Congress in crafting RESPA's specific venue provision"); *cf. Dukes v. Wal-*

18 | *Mart Stores, Inc.*, 2001 WL 1902806, *5 (N.D. Cal. Dec. 3, 2001) ("Requiring that every named

19 | plaintiff in a class action satisfy venue makes good judicial sense in that it is consistent with a

20 | principle well settled in case law.").

21 | **V.  The Bencosmes' RESPA Claim is Barred by the Applicable One-Year Statute of**
22 | **Limitations, Which Is Not Subject to Tolling Under *American Pipe***

23 | By its terms, RESPA limits private claims to a one year period, which begins to run from the

24 | time a party pays for the allegedly improper settlement service.  12 U.S.C. § 2614; *Edwards v. First*

25 | *Am. Corp.*, 517 F. Supp. 2d 1199, 1205 (C.D. Cal. 2007) (stating that the statute of limitations for a

26 | Section 2607 claim accrues when the "plaintiff pays for the tainted service, typically at closing").

27 | The Bencosmes paid for their appraisal services on November 30, 2007.  They failed to assert a

28 |

11

1    claim against eAppraiseIT or LSI relating to the relevant transaction until sixteen months later, on

2    March 30, 2009, when they were named as additional plaintiffs in this action.  The Bencosmes'

3    action is therefore barred by the statute of limitations.  *See, e.g., Mullinax v. Radian Guaranty, Inc.*,

4    311 F. Supp. 2d 474, 486 (M.D.N.C. 2004) ("RESPA's one-year statute of limitations is not

5    equitably tolled and, even if Mullinax and Pike had standing to bring their RESPA claims, their

6    claims would be dismissed with prejudice as barred by RESPA's statute of limitations.").

7         Moreover, there is no basis to apply *American Pipe* tolling to this case, where (a) the original

8    plaintiffs lacked standing to pursue a claim, (b) the earlier action was dismissed before a decision on

9    class certification, and (c) the Bencosmes are seeking permission to bring a second, "piggyback"

10   class claim.

11       **A.    *American Pipe* Tolling Does Not Apply Where The Plaintiffs In the Original
               Action Lacked Standing**

12

13       While Plaintiffs never expressly admit that the Bencosmes' claims are barred by the statute

14   of limitations, they nevertheless ask the Court to apply the tolling rule set forth in *American Pipe &*

15   *Construction Co. v. Utah*, 414 U.S. 538, (1974), "so that their claims will relate back to the date this

16   action was originally filed." Docket No. 150-2, at 1.  But there is no basis to apply *American Pipe*

17   tolling to this case because the original plaintiffs lacked standing to pursue a claim against LSI.

18       Because neither Mr. Spears nor Ms. Scholl ever had standing to pursue a claim against LSI,

19   there is no basis to find that the statute of limitations was tolled during the pendency of this action.

20   *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs

21   lacked standing to bring their claims in the first place, the filing of a class action complaint does not

22   toll the statute of limitations for other members of the purported class."); *In re Crazy Eddie Sec.*

23   *Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) (tolling does not apply to a "class action brought after

24   a previous class action has been dismissed for lack of standing").

25       *American Pipe* was a putative class action in which class certification was denied and

26   unnamed members of the putative class thereafter sought to intervene in the action to assert their

27   claims individually.  The basis for the doctrine was that tolling the claims of absent class members

28

12

1   pending a determination of class certification promoted the efficiencies behind Rule 23.  The

2   doctrine sought to avoid the "needless duplication of motions" that would otherwise be caused by

3   protective motions to intervene filed before the running of the limitations period to preserve the

4   timeliness of individual claims in the event that class action status were later denied.

5        While the doctrine was initially limited to permit intervention of an individual plaintiff in the

6   putative class action, the doctrine was later extended to apply to subsequently-filed individual

7   actions based on the same rationale stated in *American Pipe*.  *See Crown, Cork & Seal Co. v. Parker*,

8   462 U.S. 345, 349 (1983).  At the same time, however, Justice Powell cautioned against additional

9   extensions, noting that "the tolling rule of *American Pipe* is a generous one, inviting abuse."  *Id.* at

10   354 (Powell, J., concurring).  Justice Powell stated: "It is important to make certain . . . that

11   *American Pipe* is not abused by the assertion of claims that differ from those raised in the original

12   class suit."  *Id.* at 355.

13        The instant effort to extend the Bencosmes' time to file is precisely the kind of abuse Justice

14   Powell sought to avoid.  If a party is permitted to intervene and take advantage of *American Pipe*

15   tolling where no plaintiff in the original class action had constitutionally sufficient standing, it would

16   allow counsel to manipulate the class action process.  As long as counsel names a plaintiff, the

17   statute of limitations will be tolled indefinitely, regardless of whether there is any basis for

18   jurisdiction.  Under these circumstances, *American Pipe* tolling is not proper.[11]  *See, e.g., In re*

19   *Elscint Limited Securities Litigation*, 674 F. Supp. 374, 378-79 (D. Mass. 1987) ("[I]t would be

20   improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to

21

22   [11]  The decision in *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975), cited by Plaintiffs in support of the

23   Motion to Intervene, is not to the contrary.  Rather, the result in *Haas* was driven by a change in the law that led the
district court to decertify an active class.  Specifically, the district court in *Haas* had previously certified a class with a

24   single named plaintiff.  Thereafter, the Supreme Court rendered a decision in *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct.
669 (1974) which, along with another case from the Ninth Circuit, made clear that the district court's certification order

25   was improper insofar as there was no nominal plaintiff with standing against one of the defendants.  *Haas*, 526
F.2d at 1095.  The Court of Appeals concluded that an appropriate nominal plaintiff could be added and that *American*

26   *Pipe* tolling applied.  *Haas* is inapposite here because, like *Catholic Social Services Inc.*, discussed below, tolling was
only allowed after there had been a change in the law that negated one of the nominal plaintiff's standing.  Moreover, in

27   both cases, there had been a ruling on class certification, leading potential class members to rely on the adequacy of their
representation.  There has been no similar class certification ruling here.

28

1   represent the asserted class to have the effect of tolling limitation to permit the otherwise untimely

2   intervention of proper class representatives.").

3      **B.**   *American Pipe* **Tolling Does Not Apply To a Second Class Action**

4      The Ninth Circuit has generally limited tolling to subsequent individual actions, and not

5   allowed invocation of the doctrine in subsequent putative class actions: "[T]o extend tolling to class

6   actions tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its care-fully crafted

7   parameters into the range of abusive options." *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir.

8   1987) (internal quotation marks omitted).

9      This is consistent with approach used by federal courts in other judicial circuits. *Andrews v.*

10  *Orr*, 851 F.2d 146, 149 (6th Cir. 1988) ("The courts of appeals that have dealt with [this] issue

11  appear to be in unanimous agreement that the pendency of a previously filed class action does not

12  toll the limitations period for additional class actions by the putative members of the original

13  asserted class."); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987); *Basch v. Ground Round, Inc.*,

14  139 F.3d 6, 10-11 (1st Cir. 1998); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994).  If tolling

15  were generally available in subsequent class actions, plaintiffs and their lawyers could improperly

16  string out class action litigation by "piggybacking" a second class action on top of a prior

17  unsuccessful class action.  *See Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334,

18  1351 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members

19  may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor

20  have we found any.").

21     The Ninth Circuit has departed from this general rule against tolling in only one situation that

22  involved extreme facts of a sort not even arguably present here.  In *Catholic Social Services Inc. v.*

23  *INS*, 232 F.3d 1139 (9th Cir. 2000), the district court had originally certified a class that included

24  both immigrants who had tendered applications for legalization and those who had not yet done so.

25  *Id.* at 1142.  During the pendency of the initial action, and partly in response to it, Congress amended

26  the governing statute.  When plaintiffs brought a new putative class action governed by the newly

27  amended statute, the Ninth Circuit applied the class action tolling rule and permitted the successor

28

14

1   class action to proceed.  The court expressly cited to *Robbin* as controlling law, *id.* at 1147, but held

2   that the statute of limitations should be tolled on the specific facts presented, where "[t]he

3   substantive claims asserted in" the subsequent later action were "within the scope of those asserted

4   in the earlier action, and the dismissal of that action did not result from an adverse decision on the

5   merits of any of those claims."  *Id.* at 1149.  Here there has been no intervening change in the law,

6   simply a decision from this Court, that there is no basis for jurisdiction from the face of the First

7   Amended Complaint.

8        **C.    Tolling Does Not Apply To Actions Dismissed Before a Decision On Class
               Certification**

9

10        Finally, the class action tolling doctrine was not intended to apply prior to a decision on class

11   certification.  *See Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793 (N.D. Tex. 2000); *Stutz v.*

12   *Minnesota Mining Manufacturing Co.*, 947 F. Supp. 399, 403 (S.D. Ind. 1996) ("Judicial recognition

13   of a proposed class, whether it is ultimately certified or decertified, is needed to trigger class

14   tolling.").  As stated above, the *American Pipe* doctrine is based on efficiency.  But, "[n]one of the

15   judicial efficiency purposes of the doctrine is served by applying it … before the court determines

16   whether the class is viable."  *Rahr*, 142 F. Supp. 2d at 800.

17   **VI.    The Complaint Fails to Adequately Allege a Claim under Section 8(a) of RESPA**

18        On March 9th, this Court held that the inflated appraisals alleged in the First Amended

19   Complaint constituted things of value, and thus fell within the proscription of kickbacks under

20   Section 2607(a), "because they allowed WMB to sell the loans in higher volumes to financial

21   institutions at higher prices."  Docket No. 147 at 5.  The Court found further that the safe harbor

22   provision of RESPA did not apply because, "if one views the inflated appraisal as a 'thing of value'

23   given from EA to WMB in return for the referral, it is not a payment for goods or services

24   rendered….  Rather, the high appraisal is the payment made in exchange for the referral of

25   appraising business."  *Id.*  In finding so, this Court acknowledged the recent decision in *Cedeno v.*

26   *IndyMac Bancorp., Inc.*, 2008 WL 3992304 (S.D.N.Y. Aug. 26, 2008).

27

28                                                         15

1     *Cedeno* is the only other case besides this one to ever address whether an inflated appraisal

2   can form the basis of a RESPA claim.  That case, however, was decided after WaMu, LSI, and

3   eAppraiseIT filed their reply briefs in support of their motions to dismiss the First Amended

4   Complaint.  As a result, the parties did not have the opportunity to fully brief *Cedeno* in their

5   motions to dismiss the First Amended Complaint.[12]

6     Now, in its motion to dismiss the Complaint, eAppraiseIT expands upon *Cedeno* in support

7   of its arguments that Plaintiffs cannot state a RESPA claim based on inflated appraisals and that the

8   safe harbor provision applies here.  These arguments directly address whether a Section 2607(a)

9   claim can exist based upon allegations that a lender exchanges its business for inflated appraisals.

10   As those allegations pertain to LSI, we fully join eAppraiseIT's arguments regarding Section

11   2607(a) and the safe harbor provision.

12     Moreover, even if an inflated appraisal can be a "thing of value" under Section 8(a), the

13   Plaintiffs' RESPA claim should still be dismissed because Plaintiffs do not specifically allege that

14   the Bencosme Appraisal was inflated.  Docket No. 149, ¶¶ 71-72.  Alternatively, there are no

15   allegations that connect the Bencosme Appraisal with the general conspiracy to inflate appraisals.

16   Plaintiffs do not allege that there were appraisal business managers who proactively overrode the

17   value of Mr. Horn in connection with the Bencosme Appraisal.  Plaintiffs neither allege that Mr.

18   Horn was a "proven" appraiser, nor that WaMu requested an "ROV" for the Bencosme Appraisal.

19   Finally, Plaintiffs fail to allege that Mr. Horn provided WaMu with a low value on the Bencosme

20   Appraisal.  Instead of alleging that the Bencosme Appraisal was inflated, either directly or based on

21   the conspiracy, Plaintiffs base their RESPA claim on the allegation that the Bencosmes paid for and

22   expected to receive a lawful, credible appraisal; while, to the contrary, they were provided an

23   appraisal that was neither lawful nor credible.  Docket No. ¶¶ 71-72.  This is not the same as

24   somehow establishing that the Bencosme Appraisal was inflated, thus qualifying it as a "thing of

25   value" under the Court's analysis of Section 2607(a).

26   _____

[12] Rather, the case was first brought to the Court's attention on February 3, 2009 when eAppraiseIT filed it as a
Statement of Recent Decision in support of its argument that plaintiffs cannot state a RESPA claim based on alleged
27   inflated appraisals and that plaintiffs' state law claims are preempted.  *See* Docket No. 140.

28
                                              16

1    Nor does this adequately establish damages under Section 2607(d)(2) of RESPA. 12 U.S.C.

2    § 2607(d)(2); *Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819, 826 (E.D. Tex. 2002), *aff'd*, 69 F.

3    App'x 659 (5th Cir. 2002) ("The treble damages provision extends only to that portion of a

4    settlement service charge that is involved in the RESPA violation."). Plaintiffs' sole allegation about

5    damages is that: "Plaintiffs and the Class were damaged by Defendants' arrangement in that they

6    never received the appraisal service for which they were charged by Defendants and instead

7    ***unwittingly*** received unreliable, biased appraisals that were the basis of the mortgage transactions

8    they entered with WaMu." *Id.* ¶ 93 (emphasis added). That allegation is unsupportable for two

9    reasons. First, on March 9th, this Court found that appraisal services were in fact provided under the

10   circumstances alleged here. Docket No. 147 at 6. ("plaintiffs paid for appraisals and received in

11   return appraisals"). Second, to the extent that the Bencosmes knew about the alleged scheme at the

12   time their appraisal services were procured, it undermines the allegation that the Bencosmes suffered

13   any damages under RESPA. Docket No. 149, ¶ 76. They were not misled about their appraisal

14   services.

15   In order to establish damages under RESPA, the Plaintiffs were required to allege that the

16   Bencosmes were overcharged for their appraisal services. *See, e.g., Mullinax v. Radian Guaranty*

17   *Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004) ("damages are available under 2607(d)(2) only if

18   Plaintiffs were overcharged"). In the absence of such allegations, Plaintiffs' claim should be

19   dismissed because it cannot satisfy the requirements of Section 2607(d)(2). Many courts have found

20   that allegations of an overcharge are necessary to state a RESPA claim. *Durr v. Intercounty Title*

21   *Co. of Illinois*, 826 F. Supp. 259 (N.D. Ill. 1993), *aff'd*, 14 F.3d 1183 (7th Cir. 1994) (calculating

22   damages based on the amount of overcharge and not the total amount charged for services); *Morales*

23   *v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997).[13]

---

24   [13] As discussed in greater detail in eAppraiseIT's papers, cases go both ways on this issue, which the Ninth Circuit has
     not yet decided. The better-reasoned cases, however, hold that a plaintiff must allege he or she paid more for settlement-

25   related services than he or she would have paid without a RESPA violation. *See, e.g., Mullinax*, 311 F .Supp. 2d at 483
     ("absent an overcharge that is contestable by the plaintiff, a plaintiff does not have standing to sue under RESPA");

26   *Morales*, 983 F. Supp. at 1429 (without an allegation of overcharges, plaintiffs lack standing to bring RESPA claim);
     *Moore*, 233 F. Supp. 2d at 823-26 (plaintiffs cannot rely on a per se violation of RESPA; without an allegation of

27   overcharges, plaintiffs lack standing to bring RESPA claim); *Durr*, 826 F. Supp. at 263 (plaintiff has no standing to
     assert RESPA claim where plaintiff does not allege he incurred increased expense due to challenged arrangement).

28

VII.    The Complaint Fails to Sufficiently Allege a Breach of Contract Claim

On March 9th, this Court held that Plaintiffs failed to state a claim for breach of contract against eAppraiseIT because, even though the First Amended Complaint alleged that LSI and eAppraiseIT agreed to provide appraisals, it did not allege whether that agreement was made pursuant to a contract with WaMu or the Plaintiffs, or merely to comply with federal law.  Docket No. 147 at 10.  The Court also found that the First Amended Complaint failed to allege that WaMu acted as Plaintiffs agent in procuring their appraisals.  *Id*.  The Court nevertheless granted Plaintiffs leave to amend.

In the Complaint, Plaintiffs seek to overcome their earlier pleading deficiencies by alleging that "WaMu undertook and agreed to act as Plaintiffs' and Class members' agents to enter contracts on their behalf with appraisers or appraisal service companies."  Docket No. 149 ¶ 142.  Plaintiffs further allege that "in furtherance of this agency, WaMu, on behalf of Plaintiffs and the Class and by making them an express contracting party to the appraisal contracts with LSI, entered contracts with LSI for appraisals on the homes that were the subject of Plaintiffs' and Class members' WaMu loans."  *Id*. ¶ 143.

These allegations are entirely specious.  The Complaint comes nowhere even close to pleading the existence of an agency relationship between the Bencosmes and WaMu.  Plaintiffs similarly fail to adequately plead the existence of a contract between WaMu (as purported agent for the Bencosmes) and LSI.  Finally, Plaintiffs' allegations of damages are nonexistent.[14]

A.    Plaintiffs Fail to Allege an Agency Relationship

An agency relationship is established by the existence of the right of control and supervision. *See Emery v. Visa International Service Ass'n*, 95 Cal. App. 4th 952, 116 Cal. Rptr.2d 25 (Cal. App. 3 Dist. 2002).  "It is the right to control the *means and manner* in which the result is achieved that is

---

[14] In addition, Plaintiffs' breach of contract claim should be dismissed because it is preempted by HOLA.  *See Cedeno,* 2008 WL 3992304 at *9-10.  On March 9th, this Court dismissed Plaintiffs' UCL and CLRA claims because they were "relate[d] directly to the processing and origination of mortgages."  Docket No. 147 at 8.  The same is true for the breach of contract claim as repled in the Complaint.  *See also Cedeno,* 2008 WL 3992304 at *10 ("Granting the plaintiff the relief she seeks would have the same effect as a direct regulation of appraisal practices--causing IndyMac to alter the methods it uses to evaluate loans and more than incidentally affecting lending operations of federally chartered savings associations.").

18

significant in determining whether a principal-agency relationship exists." *Kaplan v. Coldwell*

*Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 69 Cal. Rptr. 2d 640, 642 (Cal. App. 2 Dist.

1997) (emphasis in original).

Despite its allegations that "WaMu undertook and agreed to act as Plaintiffs' and Class

members' agent to enter into contacts on their behalf with appraisers and appraisal service

companies," Plaintiffs do not allege when, where or how they authorized WaMu to act as their agent.

The authority to act on another's behalf requires "a principal's manifestation to an agent that, as

reasonably understood by the agent, expresses the principal's assent that the agent take action on the

principal's behalf." Restatement (Third) Of Agency § 3.01 (2006). "A principal's unexpressed

willingness that another act as agent does not create actual authority." *Id*. (Comment B).

Plaintiffs do not allege the existence of any written agreement that either authorized WaMu

to act as their agent or gave Plaintiffs the right to control and supervise WaMu. Nor do Plaintiffs

allege other circumstances whereby they acquired the right to supervise or control WaMu in entering

into contracts with appraisers and appraisal service companies. Neither the appraisal reports nor the

settlement statements attached to the Complaint demonstrate Plaintiffs' right to control WaMu.

Instead, Plaintiffs merely repeat their *pro forma* assertion that WaMu acted as Plaintiffs' agent in

procuring appraisal services on their behalf. Docket No. 149, ¶¶ 60, 65, 75. This conclusory

statement does not properly allege an agency relationship. It thus cannot support Plaintiffs' breach

of contract claim under the theory that WaMu contracted with LSI under Plaintiffs' authority or

supervision and control.[15]

Indeed, Plaintiffs could not control WaMu's decisions to select appraisers and appraisal

companies. Federal regulation mandates that the lender must either conduct an appraisal itself or

engage the appraiser directly. *See* 12 C.F.R. § 564.5. Borrowers cannot select the appraiser that a

lender engages because "when an institution uses an appraiser who is recommended by the borrower

---

[15] In Plaintiffs Combined Memorandum in Opposition to Defendants Washington Mutual Bank's and First American EAppraiseIT's Motions to Dismiss the First Amended Complaint, Plaintiffs took the position that they "were required to use the appraisers of [WaMu's] choosing." *See* Docket No. 101 at 7. This position undermines the notion that Plaintiffs had the ability to supervise and control WaMu. And, for Plaintiffs to take an inconsistent position now would be transparent and completely improper.

19

or allows the borrower to select the appraiser from the institution's list of approved appraisers,"
appraiser independence is compromised.  *See* Interagency Statement, *Independent Appraisal and Evaluation Functions* (Oct. 28, 2003).  In other words, the borrower cannot play any role in the process of obtaining the appraisal.  *Frequently Asked Questions on the Appraisal Regulations and the Interagency Statement on Independent Appraisal and Evaluation Functions*, Question 14 (Mar. 22, 2005) ("Institutions may not use an appraisal prepared by an individual who was selected or engaged by a borrower.  An institution's use of a borrower-ordered appraisal violates the agencies' appraisal regulations.").

### B.   Plaintiffs Fail to Sufficiently Allege the Existence of a Contract

In California, a claim for breach of contract requires allegations regarding *inter alia* the existence of a contract.  *See CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667 (Cal. App. 5th Dist. 2008); *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1021 (N.D. Cal. 2006) (quoting *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23 (2001)). [16]

Plaintiffs have not met their burden in establishing the existence of a contract.  Plaintiffs allege that WaMu "entered contracts with LSI for appraisals on the homes that were the subject of Plaintiffs' and Class members' WaMu loans."  Docket No. 149, ¶ 143.  Plaintiffs describe these interchangeably as "appraisal contracts" or "contracts for appraisals."  But, it is not alleged whether these contracts were agreed upon orally or in writing.  Plaintiffs give no clue as to when these contracts were entered into or by whom.  The only "evidence" of the contracts is the "Residential Appraisal Report" created in connection with the Bencosme Appraisal and HUD "Settlement Statement" regarding the purchase of the New York property.  *Id*. ¶¶ 144, 148.  Plaintiffs do not allege that these constitute the appraisal contracts in question.  And it is plain that the so-called appraisal contracts are not incorporated by reference in those documents.  *Id.*, Ex. 5, 6.

---

[16] If the claim is based upon a written contract, the plaintiff may plead either the contract's terms or its legal effect. *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (citing 4 Witkin, *Cal. Procedure* (4th ed. 1997) Pleading, §§ 479, 480, pp. 572-73).  Pleading a contract's legal effect requires the plaintiff to "allege the substance of its relevant terms."  *Id.* (citing Witkin § 480, p. 573).

1   Any allegation that LSI owed contractual obligations to Plaintiffs based on these documents

2   is unsupportable.  None of the obligations stated in Pages 5 and 6 of the Bencosme Appraisal and

3   cited in the Complaint were undertaken by LSI.  *Id.* ¶ 146; Ex. 6 at 5-6.  Rather, those obligations,

4   which consist of the appraiser's certification, were undertaken by the third-party appraiser, Steven

5   Horn.  *Id.* at 6.

6   Moreover, Plaintiffs fail to allege that the parties were required to enter into a contract before

7   appraisal services could be rendered.  Plaintiffs simply ask the Court to assume that since services

8   were rendered, there must have been a contract.  But, USPAP acknowledges that a client may

9   engage an appraiser by employment or contract.  *See* USPAP, Statement of Appraisal Standards No.

10   9.  As such, it does not follow that WaMu and LSI entered into a contract to perform appraisal

11   services based solely on the fact that the services were in fact performed.

12   Without any verbatim account of the relevant contractual terms, Plaintiffs allege in rote

13   fashion that LSI breached the so-called "appraisal contracts" or "contracts for appraisals."  Docket

14   No. 149, ¶¶ 151, 152, 153.  "LSI breached the express requirements of their appraisal contracts with

15   Plaintiffs and the Class since the appraisals and appraisal reports completed by LSI for them were

16   biased, were based on predetermined values, were not independent or impartial, were not credible

17   and/or otherwise violated USPAP."  *Id.* ¶ 151.  This statement does not properly allege the terms of a

18   contract or its legal effect and thus cannot support Plaintiffs' breach of contract claim.  *Parrish v.*

19   *Nat. Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1095 (N.D. Cal. 2007) (various legal

20   conclusions, references to documents not produced with complaint, and statements that were not part

21   of the contract are insufficient to plead the legal effect of the alleged contract).

22   **C.     Allegations of Damages Are Insufficient**

23   Damages are an essential element of every breach of contact claim.  *Bramalea California,*

24   *Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473, 14 Cal. Rptr. 3d 302 (Cal. Ct. App. 2004)

25   ("A breach of contract is not actionable without damage.").  On March 9th, this Court held that a

26   lack of actual damages mandated the dismissal of Plaintiffs' claims under the UCL and CLRA.

27

28
                                                    21

Docket No. 147 at 9.  So too the Court should find that Plaintiffs' lack of damages provides the necessary grounds for dismissing their breach of contract claim against LSI.

The Complaint alleges that based on LSI's breach of the "appraisal contracts," Plaintiffs "have suffered damages, including economic losses, warranting compensatory damages as well as injunctive relief, declaratory relief and other equitable relief deemed just and proper by the Court." Docket No. 149, ¶ 155.  The crux of Plaintiffs claim is that they paid for credible, unbiased appraisals that they never received.  Plaintiffs claim that the fees they were charged for these appraisals are their damages.  Yet, as the Court pointed out in its March 9th Order: "plaintiffs would have had to pay for the appraisal in order to take out the loan."  Docket No. 147 at 9.  Therefore, "they would have paid an appraisal fee whether the appraisal provided was defective or not."  *Id*.  In other words, "had the appraisal been performed lawfully and in good faith, plaintiffs provide no basis on which to conclude they would have been better off."  *Id*.

The Complaint does not allege that, as a result of LSI's purported breach of the "contracts for appraisals," the Bencosmes paid more for the appraisal service provided than they would have paid in the absence of LSI's breach the so-called "appraisal contracts."[17]  Thus, the Plaintiffs have not alleged damages.

//

//

//

//

//

//

//

---

[17] In Plaintiffs Memorandum in Opposition to Defendant LSI Appraisal LLC's Motion to Dismiss, Plaintiffs take the position that the only damages they suffered are the fees they paid for their appraisals.  *See* Docket No. 99 at 17 ("The fees they were charged for these counterfeit appraisals are their damages…  Plaintiffs' case is predicated on the fees they paid for counterfeit appraisals, not on any lost value of the properties they obtained after they paid those improper appraisal fees.").  The Complaint does not allege any other theory of damages.

1

## CONCLUSION

2      For the foregoing reasons, as well as for the reasons stated by eAppraiseIT and by all

3 defendants in their prior briefing, LSI respectfully requests that the Court dismiss pursuant to Rule

4 12(b)(1), 12(b)(3) and 12(b)(6), Federal Rules of Civil Procedure, all claims against it set forth in the

5 Amended Complaint and deny the Motion to Intervene.

6

7 Dated:  April 21, 2009                    DEWEY & LEBOEUF LLP

8

9                                          By:     /s/ Margaret A. Keane
                                                  Margaret A. Keane (State Bar No. 255378)
10                                                DEWEY & LEBOEUF LLP
                                                  1950 University Avenue, Suite 500
11                                                East Palo Alto, CA  94303
                                                  Telephone: (650) 845-7000
12                                                Facsimile:  (650) 845-7333

13                                                Kevin C. Wallace (*admitted pro hac vice*)
                                                  Angela M. Papalaskaris (*admitted pro hac vice*)
14                                                DEWEY & LEBOEUF LLP
                                                  1301 Avenue of the Americas
15                                                New York, NY 10019
                                                  Telephone: (212) 259-8000
16                                                Facsimile:  (212) 259-6333

17                                                *Attorneys for Defendant*
                                                  *LSI Appraisal, LLC*

18

19

20

21

22

23

24

25

26

27

28
                                          23

**CERTIFICATE OF SERVICE**

I declare that I am over the age of eighteen (18) years and not a party to this action. My business address is: Dewey & LeBoeuf LLP, 1950 University Avenue, Suite 500, East Palo Alto, California 94303.

On April 21, 2009, the foregoing **NOTICE OF MOTION; MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO MOTION TO INTERVENE** was filed with the Clerk of the Court using the Official Court Electronic Case Filing System ("ECF System"). The ECF System is designed to automatically generate an e-mail message, with a link to the filed document(s), to all parties in the case registered for electronic filing, which constitutes service. The ECF system will send notification of such filing to the following:

| | |
|---|---|
| Michael D. Braun | service@braunlawgroup.com |
| Laura Jean Fowler | lfowler@mhalaw.com, ekastern@mhalaw.com |
| Joseph N. Kravec, Jr. | jnk@ssem.com |
| Robert J. Pfister | rpfister@stblaw.com, gdmiller@stblaw.com |
| Janet Lindner Spielberg | jlspielberg@jlslp.com |
| Robert Ira Spiro | ira@spiromoss.com, jeanette@spiromoss.com |
| Jonathan M. Lloyd | jonathanlloyd@dwt.com, terriray@dwt.com |
| Sam N. Dawood | samdawood@dwt.com, allanpatterson@dwt.com, pammaiwandi@dwt.com |
| Martin L. Fineman | martinfineman@dwt.com, edithshertz@dwt.com |
| Stephen Michael Rummage | steverummage@dwt.com, jeannecadley@dwt.com |
| J. Mark Moore | mark@spiromoss.com, emily@spiromoss.com |
| Richard F. Hans | Richard.Hans@dlapiper.com |
| Jeffrey D. Rotenberg | Jeffrey.Rotenberg@dlapiper.com |
| David A. Super | david.super@bakerbotts.com |
| Ryan E. Bull | Ryan.Bull@bakerbotts.com |
| Stephen M. Ng | stephen.ng@bakerbotts.com |
| Kerry Ford Cunningham | kerry.cunningham@dlapiper.com |
| Patrick J. Smith | psmith@tpw.com |
| Michael T. Fogarty | tfogarty@mhalaw.com |

DATED:   April 21, 2009 at East Palo Alto, California.

_/s/_    Sandy Holstrom