1   Joseph N. Kravec, Jr. *(Admitted Pro Hac Vice)*
    SPECTER SPECTER EVANS
2      & MANOGUE, P.C.
    The 26ᵗʰ Floor Koppers Building
3   Pittsburgh, Pennsylvania 15219
    Tel:    (412) 642-2300
4   Fax:    (412) 642-2309
    E-mail: jnk@ssem.com
5
    Michael D. Braun (167416)
6   BRAUN LAW GROUP, P.C.
    12304 Santa Monica Blvd., Suite 109
7   Los Angeles, CA 90025
    Tel:    (310) 442-7755
8   Fax:    (310) 442-7756
    E-mail: service@braunlawgroup.com
9
    Ira Spiro (67641)                     Janet Lindner Spielberg (221926)
10  J. Mark Moore (180473)                LAW OFFICES OF JANET
    SPIRO MOSS BARNESS, LLP               LINDNER SPIELBERG
11  11377 West Olympic Blvd., Fifth Floor 12400 Wilshire Blvd., Suite 400
    Los Angeles, CA 90064-1683            Los Angeles, CA 90025
12  Tel:    (310) 235-2468                Tel:    (310) 392-8801
    Fax:    (310) 235-2456                Fax:    (310) 278-5938
13  E-mail: ira@spiromoss.com             E-mail: jlspielberg@jlslp.com

14
    *Attorneys for Plaintiffs*
15
                    **UNITED STATES DISTRICT COURT**
16                 **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN JOSE DIVISION**
17

18
    FELTON A. SPEARS, JR. and SIDNEY     )   **CASE NO.: 5:08-CV-00868 (RMW)**
19  SCHOLL, JUAN BENCOSME and            )
    CARMEN BENCOSME, on behalf of        )   **CLASS ACTION**
20  themselves and all others similarly situated, )
                                         )
21                         Plaintiffs,   )   **PLAINTIFFS' MEMORANDUM IN**
                                         )   **OPPOSITION TO DEFENDANT LENDER'S**
22              v.                       )   **SERVICE, INC.'S MOTION TO DISMISS**
                                         )   **SECOND AMENDED COMPLAINT**
23  FIRST AMERICAN EAPPRAISEIT (a/k/a    )
    eAppraiseIT, LLC),                   )
24  a Delaware limited liability company ; and )
    LENDER'S SERVICE, INC. (a/k/a LSI    )
25  Appraisal, LLC), a Delaware limited  )
    liability company,                   )
26                                       )
                           Defendants.   )
27  _____ )

28

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE ORIGINAL PLAINTIFFS HAVE STANDING TO SUE LSI AND THE INTERVENOR PLAINTIFFS' RESPA CLAIM IS TIMELY WITH *AMERICAN PIPE* TOLLING TO WHICH THEY ARE ENTITLED . . . . . . . . . . . . . . . . . . . . . 2

II.  LSI'S VENUE ARGUMENT LACKS MERIT  . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. THIS COURT HELD THAT PLAINTIFFS PLED A COGNIZABLE CLAIM FOR A RESPA SECTION 8 (A) VIOLATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.   Plaintiffs Allege That EA and LSI Provided WaMu with "A Thing of Value" in the Form of Counterfeit Appraisals and That WaMu Provided EA and LSI with "A Thing of Value" in the Form of WaMu's Appraisal Business. . . . 7

   B.   Plaintiffs' Properly Allege That Wamu Referred its Appraisal Business to EA and LSI in Exchange for the Counterfeit, Sham Appraisals. . . . . . . . . . . . 9

   C.   Plaintiffs Undisputedly Meet the Constitutional and Statutory Standing Requirements to Bring an 8(a) Claim for a RESPA Violation. . . . . . . . . . 10

IV.  PLAINTIFFS' SAC PLEADS A COGNIZABLE BREACH OF CONTRACT CLAIM AGAINST LSI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   A.   The Bencosmes Adequately Plead WaMu Acted as Their Agent in Procuring an Appraisal Contract with LSI for Them. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   B.   The Bencosmes Sufficiently Allege the Existence of a Contract Between Themselves and LSI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   C.   The Bencosmes Sufficiently State Damages from LSI's Breach of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**TABLE OF AUTHORITIES**

**CASES:**                                                              **PAGE NO.**

*Abrams Shell v. Shell Oil*, 343 F.3d 482 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*American Builder's Assoc. V. Au-Yang*, 226 Cal. App.3d 170 (1990) . . . . . . . . . . . . . . . . . . . . 15

*ATAI v. Dogwood Realty of N.Y., Inc.,* 807 N.Y.S.2d 615 (App.Div. 2005) . . . . . . . . . . . . . . . 18

*Bagdasarian v. Gragnon*, 31 Cal.2d 744 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Carias v. Lenox Financial Mortg. Corp.*, 2008 WL 397339 (N.D.Cal.2008) . . . . . . . . . . . . . . . 7

*Carter v. Welles-Bowen Realty Inc.,* 553 F. 3d 979 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . 6, 11-14

*Cedeno v. IndyMac Bancorp, Inc.,* 2008 WL 3992304 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . 13

*Channel Lumber Co., Inc. v. Porter Simon*, 78 Cal.App.4th 1222 (2000) . . . . . . . . . . . . . . . . . . 20

*Deep Blue Ventures, Inc. v. Manfra, Tordella & Brookes, Inc.*, 791 N.Y.S.2d 298
  (N.Y. Sup. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Edwards v. First American Corp.*, 517 F. Supp. 2d 1199 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . 11

*Garlock Sealing Technologies, Inc. v. NAK Sealing Technologies Corp.,*
  148 Cal. App.4th 937 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hancock v. Chicago Title Ins. Co.*, 2008 WL 4344620 (N.D. Tex. 2008) . . . . . . . . . . . . . . . 4, 5

*Kahrer v. Ameriquest Mortgage Co.,* 418 F. Supp. 2d 748 (W.D. Pa. 2006) . . . . . . . . . . . . . 7, 11

*Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.*, 105 N.E. 88 (N.Y. 1914) . . . . . . . . . . . 15

*Kruse v. Wells Fargo Home Mortgage, Inc*., 2006 WL 1212512 (E.D.N.Y. 2006) . . . . . . . . . . 3-5

*Lane v. Residential Funding Corp.,*, 323 F.3d 739 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Levin v. Knight*, 780 F.2d 786 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Malloy v. Fong*, 37 Cal.2d 356 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Martin v. Julius Dierck Equipment Co.*, 374 N.E.2d 97 (N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . 21

*Michelson v. Hamada*, 29 Cal. App.4th 1566 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Morales v. Attorneys' Title Ins. Fund,* 983 F.Supp. 1418 (S.D.Fla.1997) . . . . . . . . . . . . . . . . . . 12

*News America Mktg., Inc. v. Lepage Bakeries, Inc*., 16 A.D.3d 146 (N.Y.A.D. 2005) . . . . . . . . 20

*Patton v. Triad Guar. Ins. Corp.,* No. CV100-132 (S.D. Ga. 2002) . . . . . . . . . . . . . . . . . . . . . . . 11

1    *Pedraza v. United Guar. Corp.,* 114 F. Supp. 2d 1347 (S.D. Ga. 2000) . . . . . . . . . . . . . . . . . . . 11

2    *Purviance v. Shostuk*, 90 Cal. App.2d 295 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3    *Robinson v. Fountainhead Title Group Corp*., 447 F. Supp. 2d 478 (D.Md. 2006) . . . . . . . . . . . 11

4    *Seaman's Direct Buying Service, Inc. v. Standard Oil Company of California,*
       36 Cal.3d 752 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
5
     *Sterling v. Taylor*, 40 Cal.4th 757 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
6
     *Sunset Milling & Grain Co. v. Anderson*, 39 Cal.2d 773 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . 15
7
     *Wood Building Corp. v. Griffitts*, 164 Cal. App.2d 559 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . 15
8
     *Yates v. All American Abstract Co.*, 487 F. Supp. 2d 579 (E.D. Pa. 2007) . . . . . . . . . . . . . . . . . 11
9
10   **STATUTES AND OTHER AUTHORITIES:**

11   12 U.S.C. 2607(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12   24 C.F.R. 3500.14(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

13   24 C.F.R. § 3500.14(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14   24 C.F.R. § 3500.14(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15   24 C.F.R. § 3500.14(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16   24 C.F.R. § 3500.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17   24 C.F.R.§ 3500.14(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

18   28 U.S.C. § 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19   Cal. Civ. Code § 1584 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20   Cal. Civ. Code § 2030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21   Cal.Civ.Code § 3343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

22   Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* . . . . . . . . . . . . . . . . . . . . . 1-15

23

24

25

26

27

28

1

**INTRODUCTION**

2        On March 9, 2009, this Court gave Plaintiffs Scholl and Spears leave to amend their complaint

3  to add allegations to address their standing to sue Defendant Lender's Service, Inc. (a/k/a LSI Appraisal,

4  LLC)("LSI"), and to amend their breach of contract claim against LSI.  3/9/09 Order (Document No.

5  147), pp. 1, 3-4, 11.  On March 30, 2009, Plaintiffs filed a Second Amended Complaint (Document No.

6  149)("SAC").

7        In the SAC, Plaintiffs addressed their standing to sue LSI by adding allegations to clarify the

8  existence of a **single** conspiracy between LSI, Washington Mutual Bank ("WaMu") and Defendant First

9  American eAppraiseIT ("EA").  In its 3/9/09 Order, this Court acknowledged that the existence of a

10  single conspiracy would give standing to Plaintiffs Scholl and Spears to sue LSI for violations of the

11  Real Estate Settlement Practices Act ("RESPA"), even though EA was the primary actor in their

12  appraisals.  3/9/09 Order, p. 4.  This Court, however, concluded that the First Amended Complaint

13  seemed to describe "what might be described as two parallel conspiracies; one between EA and WMB,

14  and another between LSI and WB (*sic*)," so it gave Plaintiffs leave to amend to clarify.  Plaintiffs

15  believe their single conspiracy allegations are sufficient to confer standing on Plaintiffs Scholl and

16  Spears to sue LSI.  To the extent this Court believes more factual support is needed, then Plaintiffs

17  respectfully request jurisdictional discovery on that issue.  Likewise, this Court noted that the

18  appearance on Plaintiff Scholl's appraisal of LSI's "email address does suggest some involvement, and

19  Rice's affidavit leaves some possibilities open."  3/9/09 Order, p. 3.  Plaintiff Scholl also seeks leave

20  for jurisdictional discovery on the extent of LSI's involvement with her appraisal.

21        Plaintiffs also addressed standing against LSI by adding new Plaintiffs Mr. and Mrs. Bencosme,

22  whose appraisal was prepared by LSI.  There is no question the Bencosmes' breach of contract claim

23  is timely.  However, with respect to the Bencosmes' RESPA claim, that claim is timely only with the

24  benefit of *American Pipe* tolling.  Thus, the Bencosmes also moved to intervene.  It is clear that if the

25  original Plaintiffs Scholl and Spears had standing to sue LSI, then the Bencosmes' intervention and

26  application of *American Pipe* toling to their RESPA claim must be allowed.  Hence, resolution of the

27  original Plaintiffs Scholl and Spears standing, including any required jurisdictional discovery, must

28  occur before this Court can determine the standing of the Bencosmes.

1    The balance of LSI's arguments for dismissal are far more mundane. LSI argues that venue over

2    the Bencosmes' claims should be in the Eastern District of New York based on a RESPA statute that

3    LSI's own cited case says does not apply to plaintiffs, like the Bencosmes, intervening in an existing

4    action. LSI argues that the Bencosmes' RESPA Section 8(a) claim that is identical to the RESPA claim

5    this Court sustained as to EA should be dismissed, but advances no new arguments and instead merely

6    incorporates and re-asserts the same old arguments previously rejected by this Court as to EA. Finally,

7    as to the Bencosmes' breach of contract claim, LSI argues that the Bencosmes have failed to show that

8    WaMu acted as their agent to enter a contract with LSI, that no contract exists with LSI, that LSI did

9    not prepare their appraisal, and they have no damages. But LSI's contentions are directly contradicted

10   by the allegations of the SAC, the exhibits thereto establishing the Bencosmes' appraisal contract with

11   and payment to LSI, and applicable law.

12   For these reasons and those explained herein, LSI's Motion to Dismiss should be denied.

13                                        **ARGUMENT**

14   **I.   THE ORIGINAL PLAINTIFFS HAVE STANDING TO SUE LSI AND THE
          INTERVENOR PLAINTIFFS' RESPA CLAIM IS TIMELY WITH *AMERICAN PIPE***
15       **TOLLING TO WHICH THEY ARE ENTITLED**

16   LSI chose to file a joint Memorandum to respond to the Bencosmes' Motion to Intervene and

17   to support LSI's Motion to Dismiss Plaintiffs' Second Amended Complaint. In that Memorandum, LSI

18   contends that: a) the original Plaintiffs, Spears and Scholl, do not have standing to sue LSI, b) the

19   intervenor Plaintiffs, Mr. and Mrs. Bencosme, are not entitled to *American Pipe* tolling on their Real

20   Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA") claim purportedly because the

21   original Plaintiffs lacked standing to sue LSI, the Bencosmes are filing a second class action and the

22   claims against LSI were previously dismissed, and c) without *American Pipe* tolling the Bencosmes'

23   RESPA claim is untimely. LSI contentions are contrary to the allegations of Plaintiffs' SAC and

24   applicable law.

25   Because the issues of the original Plaintiffs standing to sue LSI and the timeliness of the

26   Bencosmes' RESPA claim are intertwined with the Bencosmes intervention motion, Plaintiffs have

27   stated their response to these contentions by LSI in their Reply In Further Support of the Bencosmes'

28   Motion to Intervene, which response they incorporate herein. Plaintiffs respectfully request the Court

1   refer to that Reply on these issues.

2   **II**.     **LSI'S VENUE ARGUMENT LACKS MERIT**

3          LSI argues at pages 10-11 of its brief that venue over the Bencosmes' claim is improper and that

4   their claim should be dismissed.  LSI does *not* argue that venue does not exist under the general venue

5   statute, 28 U.S.C. § 1391 (and has thus waived any such argument).  Rather, LSI purports to base its

6   venue argument on RESPA's specific venue provision, 12 U.S.C. § 2614, and on an unpublished New

7   York district court decision, *Kruse v. Wells Fargo Home Mortgage, Inc.*, 2006 WL 1212512 (E.D.N.Y.

8   2006).  According to LSI, "[t]he specific venue requirement of RESPA makes the Eastern District of

9   New York the only proper venue for the Bencosmes' claims."  LSI Br., p. 10:13-14.

10          However, in light of the *intervention context* at issue, LSI's venue argument is meritless,  as LSI

11   either knows or should have known upon reading the entire *Kruse* opinion and cases citing it.   Unlike

12   in *Kruse*, the Benscomes are not seeking to intervene into a "non-existent lawsuit."  Plaintiff Scholl's

13   claims against LSI were *not* dismissed with prejudice, nor did this Court find that both original plaintiffs

14   lack standing to sue LSI; rather, this Court granted leave to amend to establish standing as against LSI.[1]

15   The Bencosmes are thus unnamed class members who are seeking to intervene in a pending lawsuit.

16    As such, *Kruse* itself makes clear that LSI's argument cannot withstand scrutiny.

17          In *Kruse*, the original plaintiffs never had standing against the defendant, failed to oppose the

18   defendant's summary judgment motion, and had their claims dismissed.  *Kruse, supra*, at *3.  Several

19   new plaintiffs then sought leave to intervene, after years of litigation and discovery.   In addressing the

20   motion to intervene, the *Kruse* court stated:

21          "The present case poses the question of whether or not intervention is the proper
           mechanism by which plaintiffs can resuscitate a suit in which the original named
22          plaintiffs never had standing to sue.  Finding this to be a prejudicial use of Rule 24, the
           Court determines that it is not."   *Kruse, supra* at *4.
23
           Here, of course, the Bencosmes are not seeking to "resuscitate" a dead case, nor has there been
24
     any final determination that the original plaintiffs did not have standing to sue LSI.  The question of
25

26   _____

27          [1]   At the time, Plaintiffs' motion for jurisdictional discovery - seeking to confirm the facts that
     would allow standing by Plaintiffs Scholl and Spears - was pending. However, that motion was denied
28   without prejudice by Magistrate Judge Lloyd upon learning of the ruling on the motion to dismiss. *See*
     March 9, 2009 Order (Document No. 148).

standing by the original Plaintiffs has not yet been resolved.  Indeed, Plaintiffs SAC alleges a single conspiracy between LSI, EA and WaMu and, alternatively, Plaintiffs continue to seek jurisdictional discovery to confirm original Plaintiffs' allegations of a single conspiracy between LSI, EA and WaMu, and to confirm the extent of LSI's involvement in Ms. Scholl's appraisal, given the reference to LSI in her appraisal documents.  LSI, not coincidentally, wants to deprive Plaintiffs of any such discovery.

Where unnamed class members seek to intervene in a pending class action, as is the case here, they are *not* required to independently satisfy the venue requirements.  Indeed, the *Kruse* court - in a portion of its opinion which LSI appears to have ignored - aptly stated:

> "[P]ermissive intervention in a class suit does not normally force intervenors to independently satisfy the venue requirements. [Citation omitted.] Nevertheless, when the original plaintiffs upon whose claims jurisdiction and venue are based are dismissed from the case, plaintiffs must offer independent grounds for venue. [Citations omitted.] Here, the dismissal of the original named plaintiffs requires intervenors to provide some basis for venue, which they have failed to do." *Id.*, at *8.

Here, in contrast, the original Plaintiffs have *not* been dismissed, nor have all their claims against LSI been dismissed.  Thus, under the very case LSI relies on in its brief, the Bencosmes need *not* offer independent grounds for venue.  The *Kruse* court was manifestly frustrated by the fact that the plaintiffs and their counsel were seeking to continue "the prosecution of a putative class through five plaintiffs whose claims, from the earliest returns on discovery, were shown to be baseless almost three years ago.  Since the original named plaintiffs [sic] claims are moot, and it would be improper to permit intervention to 'breathe life into a non-existent lawsuit,' the case is dismissed with prejudice." [Citation omitted.]  *Kruse, supra* at *9.  Here, there has been no ruling – let alone *discovery* demonstrating – that the original Plaintiffs' claims against LSI are baseless.   Indeed, LSI continues to try to preclude Plaintiffs' efforts to obtain basic jurisdictional discovery to address its standing arguments.

*Kruse* thus fails to support LSI's arguments that proposed intervenor plaintiffs, the Bencosmes, must independently establish that venue is proper as to their own claims in this pending class action lawsuit.  In fact, it refutes LSI's arguments.  Last year, the court in *Hancock v. Chicago Title Ins. Co.*, 2008 WL 4344620 (N.D. Tex. 2008) recognized as much in granting a motion to intervene and rejecting a defendant's related venue arguments, notwithstanding the defendant's efforts to rely on *Kruse*.  The *Hancock* court noted that, unlike in *Kruse*, the claims of original plaintiff Hancock had not been

dismissed as moot, and thus the intervenor plaintiff, Benavides, did *not* have to establish venue under the *Kruse* court's own analysis, which the *Hancock* court found actually supported allowing intervention. *Hancock, supra* at *5. The court held:

> "Accordingly, the court concludes that any objections based on Benavides' ability to provide independent grounds for venue in this court are premature and do not support denying her motion to intervene. Benavides is not now required to independently satisfy the venue requirements in this district, and her motion to intervene as a class representative is granted." *Id.*

Here, despite *Kruse* recognition that intervenors generally do not have to independently offer a basis for venue in seeking to become named parties to a *pending* class action such as this one, and *Hancock*'s subsequent confirmation of that rule, LSI proceeds to assert that the fact this case is styled as a class action does not alter the venue analysis. LSI Br., p. 11:5. This is a non-sequitur. It is not the class action context that alters the venue analysis, but the *intervention* context. The four cases LSI cites for the proposition that named class plaintiffs must satisfy the venue requirements (LSI Br., p. 11) are not remarkable. They merely show – and Plaintiffs do not contest – that *original* named plaintiffs in a class action must satisfy applicable venue requirements (assuming the venue issue is not waived).

Not one of the cases cited by LSI contradicts the general rule, recognized in *Kruse* and *Hancock*, that unnamed class members who seek to intervene in a pending class action need not independently satisfy the venue requirements when the original plaintiffs' claims are still pending. Indeed, all four cases involve disputes about whether the original named plaintiffs in a class action had satisfied the venue requirements, not whether putative class members could intervene in pending class actions without independently satisfying the venue requirements. *See, e.g., Hancock, supra* at *4 (distinguishing *Abrams Shell v. Shell Oil*, 343 F.3d 482 (5th Cir. 2003) on this basis).

In sum, LSI's contention that the Benscomes must independently demonstrate that venue is proper under 12 U.S.C. § 2614 is baseless under the decisional law on which LSI itself relies. The Court should reject Defendant's venue challenge.

## III. THIS COURT HELD THAT PLAINTIFFS PLED A COGNIZABLE CLAIM FOR A RESPA SECTION 8 (A) VIOLATION

Plaintiffs' SAC alleges that LSI violated RESPA Section 8(a) by engineering a *quid pro quo*

1   in which WaMu referred its business to EA and LSI and, in exchange for doing so, EA and LSI

2   provided WaMu with sham appraisals at pre-determined values which WaMu delivered to and charged

3   Plaintiffs. SAC ¶¶ 89-93. Plaintiffs, and each member of the class, were charged for and paid for these

4   so-called appraisals. *Id.*, ¶ 93. While the appraisals did allow for Plaintiffs to receive the home loans

5   for which they had applied, the appraisals were also the result of an illegal business arrangement in

6   direct violation of RESPA Section 8 (a). This Court has agreed, sustaining the exact same RESPA

7   claim against EA. 3/9/09 Order, pp. 4-5.

8       Defendants' primary arguments on the question of standing and damages for such a violation

9   was subjected to a rigorous analysis in *Carter v. Welles-Bowen Realty Inc.,* 553 F. 3d 979 (6th Cir.

10  2009), the only Court of Appeals to address these issues. This Court's Order sustaining Plaintiffs'

11  RESPA Section 8(a) claims against EA is in complete accord with *Carter* as well as the recent

12  statement of the Department of Housing and Urban Development at 24 C.F.R. § 3500.14(g)(2). There

13  is no good reason that the result should be different as to either EA or LSI on this second round of

14  motions to dismiss.

15      Indeed, histrionics aside, there simply are no legitimate grounds to suggest that Plaintiffs and

16  members of the Class do not have standing to pursue their claims for statutory damages under RESPA.

17  Yet, Defendants simply re-argue the identical arguments previously briefed and addressed by EA at

18  length at the February 13, 2009 hearing.    To ensure their identity of its arguments Defendants

19  incorporate each others re-hashed arguments so Plaintiffs will address them jointly. EA Br., p. 6 fn 3;

20  LSI Br., p. 16. Defendants' re-hash of these same arguments rejected by this Court as to an identical

21  RESPA claim against EA, are unavailing. This is so because *Carter* – the only Appellate Court to

22  comprehensively analyze the question of standing for bringing RESPA §8 claims – refutes every legal

23  argument put forth by Defendants EA and LSI .[2]

24

25

26

27      [2] EA mentions *Carter* only in footnotes, misrepresenting both its substance and its import on

28  the case at bar (EA Br., p.6 fn 4, p. 7 fn 5), while LSI ignores *Carter* altogether.

**A.**    **Plaintiffs Allege That EA and LSI Provided WaMu with "A Thing of Value" in the Form of Counterfeit Appraisals and That WaMu Provided EA and LSI with "A Thing of Value" in the Form of WaMu's Appraisal Business.**

RESPA Section 8(a) provides:

(a) Business referrals.  No person shall give and no person shall accept any fee, kickback, _**or**_ thing of value pursuant to an agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. (Emphasis added).

Defendants try to escape liability for Plaintiffs' Section 8(a) claim based on the erroneous assertions that: (1) WaMu received no "thing of value" for referring business to EA and LSI (EA Br., p. 11; incorporated by LSI at LSI Br., p. 16), and (2) Plaintiffs did not claim a separate kickback was involved.  EA Br., p.12 [3]; incorporated by LSI at LSI Br., p. 16.  Neither of these arguments withstand scrutiny.

The term "thing of value" is broadly defined and "includes, without limitation, monies, things, discounts, ... the opportunity to participate in a money-making program, ... services of all types at special or free rates." 24 C.F.R. 3500.14(d).  "The term 'payment' is used throughout [the regulations] as synonymous with the giving or receiving any 'thing of value' and does not require transfer of money." *Kahrer v. Ameriquest Mortg. Co.,* 418 F.Supp.2d 748, 755 n. 9 (W.D.Pa. 2006)(quoting 24 C.F.R. § 3500.14(d)).  "An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern, or course of conduct." *Carias v. Lenox Financial Mortg. Corp.*, 2008 WL 397339, *3 (N.D.Cal. 2008) (slip copy)(quoting 24 C.F.R. § 3500.14(e)).  "When a thing of value is received repeatedly and is connected in any way with the volume or value of the business referred, the receipt of the thing of value is evidence that it is made pursuant to an agreement or understanding for the referral of business." *Id.*

---

[3]    EA, and by its incorporation LSI, fail to cite a single case supporting its argument.  EA's reliance on *Lane v. Residential Funding Corp.,*, 323 F.3d 739, 744 (9th Cir. 2003) is misplaced.  *Lane* was premised on a line of RESPA cases known as "Yield Spread Premium" cases concerning whether fees paid to mortgage brokers were compensation for services actually provided by the mortgage brokers. *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1320-22 (11th Cir. 2008).  *Lane* held that the fees at issue were for compensable services.  *Lane,* 323 F.3d at 745.

1  The fact that the transfer of the thing of value does not result in an increase in any charge made by the

2  person giving the thing of value is irrelevant in determining whether the act is prohibited." 24 C.F.R.

3  § 3500.14(g)(2).

4      Specifically, WaMu entered into a conspiratorial agreement with EA and LSI for them to

5  provide WaMu with counterfeit, sham appraisals at predetermined or inflated values in exchange for

6  WaMu referring all or most of its appraisal business to them. SAC, ¶¶ 6, 34, 36, 90.   EA and LSI

7  conspired with WaMu to inflate appraisal values.  SAC, ¶¶ 6, 41, 42, 43, 50.  Consequently, EA and

8  LSI have been paid millions of dollars directly from WaMu's borrowers for providing counterfeit, sham

9  appraisals.  *Id.*, ¶ 7.  WaMu, received a "thing of value" – *i.e.* counterfeit, sham appraisals – in

10  exchange for referring more appraisal business to EA and LSI.  *See* 24 C.F.R. 3500.14(d)(defining

11  "thing of value" to be any "thing" which would include a counterfeit, sham appraisal).  Thus, WaMu's

12  agreements with EA and LSI to give them all of WaMu's appraisal services business in exchange for

13  EA and LSI providing sham appraisals is precisely what Section 8(a) of RESPA prohibits. 24 C.F.R.

14  § 3500.14(b), subsection (e) (explaining "When a thing of value is received repeatedly and is connected

15  in any way with the volume or value of the business referred, the receipt of the thing of value is

16  evidence that it is made pursuant to an agreement or understanding for the referral of business").

17      Notwithstanding Defendants' urging, there is nothing in the substance of EA's improper re-

18  argument or LSI's adoption thereof that merits this Court revising its prior Order sustaining Plaintiffs

19  RESPA § 8(a) claim.  EA Br., pp. 5-14.  Indeed, as this Court already correctly held,

> Here, plaintiffs argue that the inflated appraisals constituted 'thing[s] of value' because they allowed WaMu to sell the loans in higher volume to financial institutions at higher prices.  As alleged, this is the kind of quid-pro-quo benefit in return for a referral that § 2607 (a)'s proscription of kickbacks is meant to reach. Indeed, the language of the statute, encompassing all benefits constituting a 'thing of value' and the interpreting regulation, seem to include a wide variety of benefits that could be received in return for business referrals.  The court therefore finds that the alleged inflated appraisals fall with § 2607(a). Order at p. 5.

**B.    Plaintiffs' Properly Allege That Wamu Referred its Appraisal Business to EA and LSI in Exchange for the Counterfeit, Sham Appraisals.**

Defendants admit EA proffered the same argument in connection with its motion to dismiss the First Amended Complaint, yet seems to imply that since the Court did not understand and agree with EA, Defendants can argue it now.   EA Br., p.9 n.6; incorporated by LSI at LSI Br., p. 16.   Not withstanding this admission, Defendants repeat that Plaintiffs fail to allege that referrals were made and therefore cannot maintain a violation of Section 8(a).  The basis for this contention is, once again, that there cannot be a referral because borrowers have no freedom to select the appraisers in regards to getting home loans.  EA Br., pp. 7-11; incorporated by LSI at LSI Br., p. 16.  Ironically, Defendants also argue there *can't* be a RESPA violation here because borrowers were always free to go out and select their own appraisers (also asserting that any such appraisals could not be used by WaMu for loan origination). EA Br., p. 10; incorporated by LSI at LSI Br., p. 16.  Could Defendants actually be suggesting that there would be no RESPA violation if the borrower paid for two appraisals - one appraiser referred by WaMu, the other not?  Or, are Defendants simply stating the obvious - that of course a homeowner was always free to go out and select an appraiser and have his or her home appraised - the appraisal just could not be used toward the origination of a loan?

Defendants' first re-argument - that borrowers are not free to select the appraisers themselves - is simply irrelevant.   The unambiguous language in RESPA belies the falsity of Defendants' proposition: "a referral also occurs whenever a person paying for a settlement service or business incident thereto is required to use (*see* § 3500.2, "required use") a particular provider of a settlement service or business incident thereto." 24 C.F.R. § 3500.14(f). A "required use" is "a situation in which a person must use a particular provider of a settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service."  24 C.F.R. § 3500.2.  Here, Plaintiffs were required to use the appraisers of WaMu's choosing, *i.e.* EA or LSI, and Plaintiffs paid for that "service."  SAC, ¶¶ 6, 34, 36, 60, 62, 65, 67, 70,72; *see also* SAC Exh. 1 ("Scholl HUD"), p. 2, Line 803; Exh. 3 ("Spears HUD"), p. 2., Line 803; Exh. 5 ("Bencosmes' HUD"), p.2, Line 803.

Nor can Defendants evade the obvious Section 8(a) referral violation by implying that there

cannot be a violation based upon a referral when WaMu was using the appraisals for its own purposes - that is, that the appraisers provided their services to WaMu alone, not to borrowers.  EA Br., p. 10; incorporated by LSI at LSI Br., p. 16.  Such an assertion is plainly wrong by the face of Plaintiffs' appraisal reports and the facts as alleged in the SAC.  Plaintiffs allege they hired WaMu to act as their agent to procure appraisals. SAC, ¶¶ 3, 60, 65, 70, 126, 127, 142, 143.  *See also* § IV, *infra.*  Plaintiffs paid WaMu to procure appraisals for both WaMu's and Plaintiffs' benefit. SAC, ¶¶ 60, 65, 70; Scholl HUD, p. 2, Line 803; Spears HUD, p. 2, Line 803; Bencomes HUD, p. 2, Line 803.  WaMu, acting as Plaintiffs' agent, hired EA and LSI to procure appraisals both for Plaintiffs' and WaMu's benefit. SAC, ¶¶ 6, 36, 60, 65, 70, 126, 127, 142, 143.  Consistent with Plaintiffs' allegations, both WaMu and Plaintiffs are identified in Plaintiffs' appraisal reports as the appraiser's clients for whom the reports were prepared. SAC, Exh. 2 ("Scholl Report"), pp.7-9; Exh. 4 ("Spears Report"), pp. 8-17; Exh. 6 ("Bencomes Report"), pp. 6-10.  Moreover, each of Plaintiffs' appraisal reports state that both Plaintiffs and WaMu may rely on the appraisals in the home mortgage transactions. SAC, ¶ 26; Scholl Report, p. 7, ¶ 23; Spears Report, p.7, ¶ 23; Bencomes Report, p.6, ¶ 23.  Plaintiffs' appraisals were purchased by Plaintiffs through their agent WaMu for Plaintiffs' benefit, and not simply for WaMu's benefit.

Defendants' throwaway argument - that homeowners are free to select appraisers as long as the appraisal is not used for loan origination - suggesting Defendants should be insulated from liability for a RESPA violation is just silly.  The subject matter of the SAC is limited to appraisal services that were used for the origination of home loans.  SAC, ¶ 1.

**C.  Plaintiffs Undisputedly Meet the Constitutional and Statutory Standing Requirements to Bring an 8(a) Claim for a RESPA Violation.**

Defendants reiterate the previously briefed position that Plaintiffs have no standing to bring a claim for a violation of RESPA. EA Br., pp. 5 - 9; incorporated by LSI at LSI Br., p. 16.  In so doing, Defendants evidently confuse the requirements for various RESPA violations - initially citing to Plaintiffs' pleading of the 8(b) violation in which Plaintiffs had alleged the so-called appraisals were appraisals in name-only, that is, nominal appraisals. EA Br., p. 6; incorporated by LSI at LSI Br., p. 16.  That argument is irrelevant now since the Court dismissed Plaintiffs' 8(b) claim. Order, pp. 5-6.

1    Defendants also re-argue there can be no RESPA violation because there is no allegation of

2    Plaintiffs being overcharged. EA Br., p. 6; incorporated by LSI at LSI Br., p. 16.  Another misdirected

3    argument - Plaintiffs claims, and those of the class, are not premised on a RESPA violation alleging

4    overcharges.  Defendants then provide a list of other possible allegations that Plaintiffs did not include

5    in the SAC and uses this list as evidence that Plaintiffs have not established a violation of 8(a).  EA Br.,

6    p. 6, LSI Br., p. 16.  Defendants cannot unilaterally add pleading requirements for making out an 8(a)

7    claim.  Plaintiffs' SAC rests on the allegations as pled - the identical allegations this Court has already

8    ruled are sufficient to sustain an 8(a) claim: the appraisals for Plaintiffs and all the members of the class

9    were tainted by the illegal business referral arrangement between the appraisers and WaMu. Order,

10   p.5.

11       The defendant's arguments in *Carter* were identical to those of the Defendants here as to the

12   statutory and constitutional requirements for standing to bring a Section 8(a) claim for a RESPA

13   violation. *Carter*, 553 F.3d at 984-85.  *Carter's* importance is paramount for a number of reasons: first,

14   while numerous district courts have ruled on the Article III standing requirements for bringing a

15   RESPA claim, their holdings have been inconsistent;[4] second, *Carter* is the most recent case opining

16   on these standing requirements, and; third, *Carter* is the sole Circuit Court to issue a ruling clarifying

17   RESPA's standing requirements.  In *Carter*, the 6th Circuit Court of Appeals, after thoroughly

18   reviewing the previous divergent district court rulings addressing the very same questions, performed

19   a comprehensive statutory analysis – even going so far as soliciting the opinion of the relevant

20   regulatory agency (the Department of Housing and Urban Development) and inviting the U.S.

21

22   _____

23       [4]  The *Carter* Court analyzed the line of cases cited by EA as evidence that Plaintiffs here do
     not have Article III standing, essentially overruling their holdings.  *Carter's* conclusion was arrived at
24   only after carefully comparing those cases with the line of cases standing for the opposite proposition,
     such as *Kahrer v. Ameriquest Mortgage Co.,* 418 F. Supp. 2d 748, 756 (W.D. Pa. 2006); *Patton v. Triad*
25   *Guar. Ins. Corp.,* No. CV100-132, at *5-6, 12 (S.D. Ga. 2002); *Pedraza v. United Guar. Corp.,* 114 F.
     Supp. 2d 1347 (S.D. Ga. 2000); *Alexander v. Washington Mutl, Inc.,* 2008 WL 2600323, *6 (E.D. Pa.
26   2008); *Capell v. Puite Mortgage L.L.C.,* 2007 WL 3342389, *4-5 (E.D. Pa. 2007); *Edwards v. First*
     *American Corp.,* 517 F. Supp. 2d 1199, 1204 (C.D. Cal. 2007) ; *Yates v. All American Abstract Co.*, 487
27   F. Supp. 2d 579, 582 (E.D. Pa. 2007); *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d
     478, 488-89 (D.Md. 2006).  *Carter* at 983-89.
28

1    Government into the case – with the aim of finally resolving the question as to the standing

2    requirements for bringing a Section 8(a) claim. *Carter*, 553 F.3d at 983-984.

3          In *Carter*, as in the case at bar, the plaintiffs alleged their settlement services were tainted by

4    referral practices which were in violation of RESPA.  *Carter's* holding was in complete accord with

5    this Court's 3/9/09 Order.  "The statute prohibits - - in no uncertain terms - - the payment of any fee,

6    kickback, or thing of value from business referrals..." (Internal quotations omitted)) *Carter*, 553 F.3d

7    at 986.  An unlawful referral is plainly an individualized injury.  "RESPA does not authorize suits by

8    members of the public at large; it authorizes suits only by individuals who receive a loan that is

9    accompanied by an unlawful referral, which is plainly an individualized injury....Consumers under

10   RESPA have a right to receive referrals untainted by conflicts of interest" *Carter*, 553 F.3d at  989.

11         In *Carter*, as in the case at bar, there were no allegations of an overcharge. In response to

12   Appellees' insistence that an overcharge was necessary to for Article III standing, the Court explained:

13   *"Morales* [*v. Attorneys' Title Ins. Fund,* 983 F.Supp. 1418, 1427 (S.D.Fla.1997)]*, it is true, determined

14   that plaintiffs who do not allege that they paid more as a result of a RESPA violation cannot show an

15   injury-in-fact.  But this reasoning overlooks the Supreme Court's teaching that injuries need not be

16   financial in nature to be concrete and individualized.  Because the Carters have pleaded that they

17   themselves were given referrals sullied by kickbacks in violation of RESPA, they have Article III

18   standing to bring these claims." *Carter*, 553 F. 3d at 989; (*Carter* at 987 citing Govt. Br. at 21) ("a

19   person who violates section 8 is liable..., regardless of whether the consumer alleges that he was

20   charged too much for the service").  Moreover, after carefully analyzing RESPA's penalty provision,

21   the Court concluded "[w]here a violation of these blanket prohibitions occur, the plain language of the

22   statute provides that defendants are liable to the person or persons charged for the settlement service

23   involved in the violation for an amount equal to three times the amount of *any charge paid* for such

24   settlement service." (Internal quotations omitted)) *Carter*, 553 F. 3d at 986.[5]

25

26         [5]   Defendants also complain that the statutory penalty is unfair, citing this alleged unfairness

27   as a reason why this Court should dismiss Plaintiffs' RESPA 8(a) claim. EA Br., 9: 8-15; incorporated
     by LSI at LSI Br., p. 16.    Given the various purposes of RESPA, Plaintiffs disagree.  Moreover,

28   whether or not the statutory penalty is fair is an issue to be resolved by Congress if Congress has such

Defendants' suggestion that this Court ignored *Cedeno* in regard to the "safe harbor" provision is just untrue.[6] EA Br., p. 2 fn 1; incorporated by LSI at LSI Br., p. 16.   As evidenced by the Order, the safe harbor provision  was contemplated, understood, and correctly ruled upon. "The safe harbor provides that nothing in this section shall be construed as prohibiting...the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually rendered." 12 U.S.C. 2607(c)(2). Order, p. 5.  The safe harbor provision may have been applicable had Plaintiffs' claims been premised on allegations that Plaintiffs were overcharged for provided settlement services - there are no such allegations.[7]  To the contrary, Plaintiffs' Section 8 (b) claim was premised on the notion "that the appraisals they received were not worth the paper on which they were printed and were otherwise valueless and therefore that their payment for the appraisal is one other than for services performed."  (Internal quotations omitted) Order,  p. 6.

Plaintiffs Section 8(a) violation is premised solely upon the improper business relationship between WaMu, EA, and LSI - specifically, that in order to keep receiving referral business from WaMu, EA and LSI had to provide WaMu with appraisal values that met some pre-determined amount.  SAC ¶¶ 6, 90.  As this Court explained,

> However, if one views the inflated appraisal as a "thing of value" given from EA to WaMu in return for the referral, it is not a payment for goods or services rendered.  In this case plaintiffs have, of course, paid for the appraisal services, but those payments are not what is alleged to violate RESPA.  Rather, the high appraisal is the payment made in exchange for the referral of appraising business." Order, p.5 (Internal quotations omitted).

---

an interest - it is not a proper subject for the Court to consider here.

[6]  *Cedeno,* a district court level decision issued prior to the *Carter*, may be at odds with *Carter. Cedeno v. IndyMac Bancorp, Inc.,* 2008 WL 3992304 (S.D.N.Y. 2008).  However, *Carter* not only has precedential value here because it is the holding of an Appellate Court, the analysis in *Carter* is far clearer as to what the Court was contemplating and offered a more developed analysis as to each of the elements required for Article III standing.  Further, the *Carter* Court benefitted from the input of the U.S. Government and the Department of Housing and Urban Development.

[7]  There are two varieties of 8(b) violations. While the safe harbor provision may apply when there are allegations of overcharges, it would not be applicable if the allegation was that the settlement service had not been provided or had been provided in name only. *Busby, supra,* at 1324-26.

1    Defendants incorrectly suggest that even if this Court's Order was correct - that an inflated

2    appraisal can be a "thing of value" in violation of Section 8 (a) - Plaintiffs RESPA claim should be

3    dismissed because Plaintiffs do not specifically allege that their appraisals were inflated.  LSI Br.,  p.

4    16:13-14; EA Br., p. 6:5.  As the Court properly noted, the SAC contains numerous allegations about

5    apprisal values being inflated which, of course, included the Plaintiffs' appraisals. Order, pp. 5-6; SAC,

6    ¶¶ 6, 12, 41, 42, 43, 50, 84-93.  Seemingly, Defendants misunderstand the nature and purpose of

7    RESPA.  Once again, the *Carter* Court - the only Circuit Court to comprehensively analyze the issues

8    related to standing for a RESPA 8 (a) violation - explained that referral arrangements between

9    businesses potentiated the possibility for different forms of harm:

10                    including a lack of impartiality in the referral and a reduction of
                     competition between settlement service provide[r]s. Therefore, RESPA
11                    allows individuals to police the marketplace in order to ensure
                     impartiality of referrals and competition between settlement service
12                    providers...Ultimately, the purpose of the statute is to prevent certain
                     practices that are harmful to all consumers by establishing that
13                    consumers have a right not to be subject to those practices and providing
                     both public and private remedies of that right. (Internal quotations and
14                    citations omitted) *Carter* at  988.

15    The Court held that the Appellants were injured in not having received services that were

16    *untainted* by kickbacks. *Carter* at 989.

17    Thus, in order to have a valid 8(a) claim, it is not necessary that the Plaintiffs' appraisals have

18    been alleged to have been inflated.  All that is required is that Plaintiffs allege - which they have - that

19    their appraisals, and those of the members of the class, resulted from an illegal business arrangement

20    under RESPA.  SAC, ¶¶ 6, 12, 72, 84-93.  Allegations referencing the illegal business referral

21    arrangement are found throughout the SAC.  SAC, ¶¶ 6, 12, 42, 43, 48, 52-55, 72, 84-93.

22    An appraisal sullied by an illegal referral arrangement violates a statutory right conferred by

23    RESPA.  Plaintiffs here alleged EA and LSI provided WaMu with a "thing of value" - the counterfeit,

24    sham appraisal reports -  and in exchange WaMu provided EA and LSI with thousands of appraisal

25    referrals.  SAC, ¶¶ 6, 7, 34, 36-38, 90.  Plaintiffs' complaint is squarely premised upon this illegal

26    referral arrangement between WaMu and EA and LSI.  *Id.*, ¶¶ 6, 90.  Based on these well-supported

27    allegations in the SAC, and in accord with the current law as to the relevant constitutional and statutory

28

1   standing requirements, there are no legitimate grounds - legal or logical - for Defendants' contention

2   that Plaintiffs' RESPA Section 8(a) claim should be dismissed.

3   **IV.   PLAINTIFFS' SAC PLEADS A COGNIZABLE BREACH OF CONTRACT CLAIM AGAINST LSI**

4

5           Unlike the Bencosmes' RESPA claim that has a one-year statute of limitations and requires

6   *American Pipe* tolling to be timely, the Bencosmes' breach of contract claim for the LSI appraisal done

7   in November, 2007 is unquestionably timely.  Indeed, LSI has not challenged the timeliness of the

8   Bencosmes' breach of contract claim.

9           LSI instead contends that the Bencosmes have failed to state a breach of contract claim

10  purportedly because: a) they do not allege an agency relationship between themselves and WaMu under

11  which WaMu procured appraisal contracts with LSI for the Bencosmes; b) they fail to allege a contract

12  with LSI; and c) they do not allege damages.  In advancing its contentions that the Bencosmes have not

13  stated a breach of contract claim, LSI relies on unsupported contentions that are plainly contradicted

14  by the allegations of the SAC and applicable law.  Properly viewed, however, the Bencosmes' SAC

15  sufficiently states a breach of contract claim against LSI.

16          **A.   The Bencosmes Adequately Plead WaMu Acted as Their Agent in Procuring an Appraisal Contract with LSI for Them.**

17

18          LSI does not dispute the well-settled rule that "the contract of an agent is the contract of the

19  principal and he may sue or be sued thereon, though not named therein."  *Purviance v. Shostuk*, 90 Cal.

20  App.2d 295, 297 (1949).  *See also Sterling v. Taylor*, 40 Cal.4th 757, 773 (2007); *American Builder's*

21  *Assoc. V. Au-Yang*, 226 Cal. App.3d 170, 176 (1990); *Wood Building Corp. v. Griffitts*, 164 Cal.

22  App.2d 559, 565 (1958); *Sunset Milling & Grain Co. v. Anderson*, 39 Cal.2d 773, 778 (1952)(applying

23  rule to disclosed principals); Cal. Civ. Code § 2030.  *Cf.  Kelly Asphalt Block Co. v. Barber Asphalt*

24  *Paving Co.*, 105 N.E. 88, 89 (N.Y. 1914)(citation omitted).[8]  Nor does LSI dispute that the Bencosmes

25

26          [8]  As LSI notes in its venue argument, the Bencosmes live in New York and the appraisal at
    issue was performed on their home in New York. LSI Br., p. 10.  However, this Court may apply the

27  law of this forum, *i.e.*, California, and need not apply New York law here since California law is in
    accord with New York law as to the Bencosmes' breach of contract claim.  *Insurance Company of*

28  *North America v. Federal Express Corporation*, 189 F.3d 914, 921 (9th Cir. 1999)("If there is no 'true

1   allege that WaMu acted as their agent to enter and did enter a contract for appraisal services with LSI

2   for them.  LSI Br., p. 19, quoting SAC ¶ 142.  LSI instead argues that the Bencosmes' allegations of

3   an agency with WaMu are purportedly deficient because: a) they do not allege a "right to control

4   WaMu;" and b) they "do not allege when, where or how they authorized WaMu to act as their agent."

5   LSI Br., p. 19.

6        It is well-established that "[t]he power of the principal to terminate the services of the agent

7   gives him the means of controlling the agent's activities . . . It is not essential that the right of the

8   control be exercised or that there be actual supervision of the work of the agent.  The existence of the

9   right of control and supervision establishes the existence of an agency relationship."  *Michelson v.*

10  *Hamada*, 29 Cal. App.4th 1566, 1580 (1994), *quoting Malloy v. Fong*, 37 Cal.2d 356, 370 (1951).

11  Thus, as long as the Bencosmes retained the right to terminate WaMu's agency, that is sufficient

12  control to establish an agency relationship.

13       Here, Plaintiffs plead that "WaMu undertook and agreed to act as Plaintiffs' and Class

14  members' agents to enter contracts on their behalf with appraiser or appraisal service companies, such

15  as LSI, to provide appraisals for Plaintiffs and Class members on the homes that were the subject of

16  their WaMu loans to be completed prior to closing on and deciding to enter these loans."  SAC, ¶ 142.

17  Based on this allegation, it is clear that the appraisals were being obtained as part of the application

18  process for the Bencosmes' loan and that the Bencosmes were free to decide not to enter the loan with

19  WaMu and thereby terminate the process.  Had the Bencosmes terminated the loan application process

20  before WaMu entered a contract with LSI on the Bencosmes' behalf for an appraisal, WaMu's authority

21  to procure the appraisals for the Bencosmes and bind them to an appraisal contract would likewise be

22  terminated.[9]  Based upon this reasonable inference from the Bencosmes' allegation which the Court

23

24

25       conflict,' then the forum 'is entitled to apply its own law.")(quotation citation omitted).  LSI apparently
         agrees that there is no conflict and that California law is to be applied to the Bencosmes' breach of
26       contract claim since the only authorities LSI cites in its breach of contract argument are from California.
         *See* LSI Br., pp. 18-22.

27
         [9]  LSI argues that the Bencosmes "could not control WaMu's decision to select appraisers and
28       appraisal companies" or supervise or control WaMu's entering contracts with them.  LSI Br., p. 19.

1   must accept as true at the pleadings stage, the Bencosmes have sufficiently alleged a right to control

2   WaMu for agency purposes. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 923

3   (9th Cir. 2001)(On a motion to dismiss, "[t]his Court must 'accept as true and draw all reasonable

4   inferences in favor of the nonmoving party'")(quotation citation omitted).

5        LSI also argues that the Bencosmes fail to "allege when, where or how they authorized WaMu

6   to act as their agent." LSI Br., p. 19. LSI then intimates that this authorization had to be in a "written

7   agreement." *Id.* LSI is incorrect.

8        "Agency may be implied from the circumstances and conduct of the parties" so a written agency

9   agreement is not a prerequisite. *Michelson*, 29 Cal. App.4th at 1579. *Cf. Deep Blue Ventures, Inc. v.*

10  *Manfra, Tordella & Brookes, Inc.*, 791 N.Y.S.2d 298, 302 (N.Y. Sup. 2004).

11       Here, the Bencosmes allege that in connection with and prior to entering a home loan with

12  WaMu, WaMu agreed to and did act as their agent to procure and to enter contracts for appraisal

13  services with LSI for them. SAC, ¶¶ 70, 142, 143, 148. This allegation is supported by LSI's appraisal

14  report, which lists the Bencosmes as the "Borrower/Client," lists WaMu as the "Lender," indicates the

15  report was prepared for the "Clients" (*i.e.*, the Bencosmes),[10] and states that both the borrower and

16  lender "may rely on the appraisal report in entering their mortgage financing transaction." SAC, Exh.

17  6, p. 6 and subsequent pages. Further, the HUD-1 Settlement Statement WaMu prepared shows the

18  settlement services WaMu procured on the Bencosmes' behalf in connection with the loan. SAC, Exh.

19  5. It confirms WaMu procured and delivered the appraisal to the Bencosmes from LSI and then

20  collected LSI's fees for the appraisal from the Bencosmes. *Id.*, HUD-1, p. 2, Line 803.

21       These well-plead facts in the Bencosmes' SAC must be taken as true on a motion to dismiss and

22

23  _____

24  However, under *Michelson*, a principal's control of such details is unnecessary to establish an agency
    right to control as long as the principal had the right to terminate the agency, which the Bencosmes did.

25

26       [10] As discussed in the next section, the appraisal report certifies it was done in compliance with
    USPAP requirements. SAC, Exh. 6, p. 5 (Item No. 3). USPAP requires the appraiser to identify his

27  client in his report and confirm that the identified client is the party with whom the appraiser has an
    appraiser-client relationship and an employment or contract for the appraisal. USPAP, Standards Rule

28  1-2 and Definitions.

the Bencosmes given the benefit of every reasonable inference from them. *Arpin*, 261 F.3d 923.  When done, these allegations certainly show the who, what where and when of the agency between the Bencosmes and WaMu, and WaMu's conduct certainly confirms its acceptance of that agency.  That LSI may wish to deny these well-plead facts supporting WaMu's agency agreement with the Bencosmes demonstrates only that LSI seeks to create a factual dispute over the existence of the agency agreement.  Such factual disputes over the existence of an agency agreement must be resolved by the trier of fact at trial, not on a preliminary motion to dismiss.  *Garlock Sealing Technologies, Inc. v. NAK Sealing Technologies Corp.,* 148 Cal. App.4th 937, 965 (2007)("The existence of an agency relationship is a factual question for the trier of fact.").  *Cf.  Deep Blue Ventures, Inc. v. Manfra, Tordella & Brookes, Inc.*, 791 N.Y.S.2d at 302.

> **B.     The Bencosmes Sufficiently Allege the Existence of a Contract Between Themselves and LSI.**

LSI contends that the Bencosmes have not alleged the terms or specifics of any contract between LSI and them, that their appraisal was not performed by LSI, and that the Bencosmes are trying to assert a contract "based solely on the fact that the services were in fact performed."  LSI Br., pp. 20-21.  LSI contentions, however, are belied by the SAC and the exhibits thereto.

Here, the Bencosmes allege that WaMu acted as their agent to enter contracts for appraisals with LSI, naming the Bencosmes as direct contracting parties with LSI.  SAC, ¶¶ 70, 142, 143, 148. The Bencosmes further allege that the terms of these appraisal contracts between themselves and LSI are evidenced by two writings, *i.e.*, the "Residential Appraisal Report" (SAC, Exhibit 6), and the Settlement Statement (HUD-1) (SAC Exhibit 5).  *See* SAC, ¶¶ 144, 148.  LSI intimates in its brief that these writings cannot establish a contract with LSI.  LSI is wrong.

It is well-established that writings that are not formal contracts signed by both parties may nevertheless establish a contract between the parties as long as they state the "essential terms." *Seaman's Direct Buying Service, Inc. v. Standard Oil Company of California*, 36 Cal.3d 752, 762-63 (1984).  *Cf. ATAI v. Dogwood Realty of N.Y., Inc.,* 807 N.Y.S.2d 615, 618 (App.Div. 2005).  Under California law, "the few terms deemed essential" are "the subject matter, the price and the party against

1   whom enforcement is sought." *Levin v. Knight*, 780 F.2d 786, 787 (9th Cir. 1986).

2       Here, the "Residential Appraisal Report" and "Settlement Statement (HUD-1)" from the

3   Bencosmes indicates that LSI was preparing and providing an appraisal report to the Bencosmes and

4   WaMu for them to rely on in their mortgage financing transaction with WaMu, identified the

5   Bencosmes as the "Borrower/Client," identified LSI as the provider of the appraisal service, and

6   showed that the Bencosmes paid LSI $328.00 for the appraisal. SAC, Exh. 5, p 2 (Line 803); Exh. 6,

7   pp. 6 and subsequent pages.  Clearly, these writings the Bencosmes allege evidence their contract with

8   LSI and identify all of the "essential terms" necessary for the establishment of a contract with LSI.

9       LSI ignores the significance of an appraiser listing the Bencosmes as the "Borrower/Client" in

10  his report.  Unlike most of the pre-printed, boiler-plate language in the appraisal report, the field for

11  "Borrower/Client" and "Lender/Client" for that matter, are fields in the appraisal report that must be

12  filled in by the appraiser.  The appraiser's selection of who to list in these fields is significant and

13  controlled by USPAP, under which standards the appraisal report certifies it was prepared.  SAC, Exh.

14  6, p. 5 (Item No. 3).

15      USPAP requires that "[i]n developing a real property appraisal, **the appraiser must: (a)**

16  **identify the client and other intended users** . . ."  USPAP, Standards Rule 1-2.  (Emphasis added).

17  USPAP defines "Client" as "the party or parties who engage an appraiser (by employment or contract)

18  in a specific assignment.  *Comment*: **The client identified by the appraiser in an appraisal . . . is the**

19  **party or parties with whom the appraiser has an appraiser-client relationship** in the related

20  assignment . . ."  USPAP, Definitions.  (Emphasis added).

21      Clearly, by identifying the Bencosmes as the "Borrower/Client" in the appraisal report, the

22  appraiser is acknowledging an "appraiser-client relationship" and a contract with the Bencosmes.  LSI

23  tries to obfuscate this fact by arguing that the appraisal report was not prepared by LSI, but instead by

24  a "third-party appraiser, Steven Horn."  LSI Br., p. 21, citing SAC, Exh. 6, p. 6.  However, the SAC

25  specifically alleges that LSI had individual appraisers "prepare appraisal reports on LSI's behalf," and

26  "deliver these reports to LSI for LSI to in turn deliver to Plaintiffs and the Class directly and/or through

27  their agent, WaMu." SAC, ¶ 152.  Consistent with this allegation, the appraisal report prepared by Mr.

28

1    Horn besides identifying the Bencosmes as the "Borrower/Client" also identifies WaMu as the

2    "Lender" and LSI as another "Client." SAC, Exh. 6, p. 6.

3         Under USPAP, identifying LSI as a "Client" evidences the appraiser's "employment or

4    contract" with LSI to perform the appraisal on its behalf just as the Bencosmes allege. USPAP,

5    Definitions. That Mr. Horn performed the appraisal on LSI's behalf is further confirmed by the fact

6    that the Settlement Statement (HUD-1) that WaMu prepared to identify the loan services the

7    Bencosmes were paying for states the "Appraisal Fee" was being paid to "LSI." SAC, Exh. 5, p. 2

8    (Line 803). Certainly, these facts give rise to a reasonable inference that Mr. Horn acted as LSI's agent

9    or employee to prepare the appraisal report on LSI's behalf. Work performed by one's agent is the

10   work of the principal. *Channel Lumber Co., Inc. v. Porter Simon*, 78 Cal.App.4th 1222, 1227 (2000).

11   *Cf. News America Mktg., Inc. v. Lepage Bakeries, Inc*., 16 A.D.3d 146, 147 (N.Y.A.D. 2005)**.** This is

12   why the Bencosmes paid LSI for the appraisal, not Mr. Horn. SAC, Exh. 5, p. 2 (Line 803). At the

13   motion to dismiss stage, these factual allegations viewed in favor of the Bencosmes are more than

14   enough to establish the Bencosmes' contract with LSI. *Arpin*, 261 F.3d at 923.[11]

15        Finally, LSI contends that the Bencosmes have not alleged the terms of any contract with LSI

16   so their allegation that LSI breached its contract is conclusory. LSI Br., p. 21. This simply is not true.

17        The Bencosmes allege, by quoting from and citing at length to the appraisal report LSI provided

18   to them, that LSI promised that the appraisals prepared for the Bencosmes were: a) "unbiased"

19   appraisals of the home that was the subject of their loan and that it was prepared by or on behalf of LSI,

20   b) that the appraisals were not conditioned on any agreement or understanding that the appraiser would

21   report a predetermined value targeted to obtain approval of a pending mortgage loan application, and

22   c) that the appraisals were done in compliance with USPAP standards. SAC, ¶¶ 143-147 and citations

23   stated therein. The Bencosmes SAC then details how LSI breached its appraisal contract with them

24

25   _____

26        [11]  As demonstrated above, the existence of Bencosmes' contract with LSI is <u>not</u> "based solely
     on the fact that the [appraisal] services were in fact performed" as LSI contends. However, the fact that

27   LSI performed the appraisal service and the Bencosmes paid LSI for it by itself would be enough under
     applicable law to establish a contract between LSI and the Bencosmes. *See* Cal. Civ. Code § 1584

28   (performance and acceptance of consideration constituted alternate modes of acceptance of a contract).

1   by delivering an appraisal with predetermined values directed by LSI's, EA's and WaMu's conspiracy,

2   and by delivering to them a biased appraisal that did not comply with USPAP requirements.  SAC, ¶¶

3   150-153.

4        The Bencosmes have clearly alleged the essential terms of their contract with LSI and LSI's

5   breaches thereof.  No more is required at the motion to dismiss stage.

6        **C.    The Bencosmes Sufficiently State Damages from LSI's Breach of Contract**

7        LSI correctly notes that "[t]he crux of Plaintiffs' claim is that they paid for credible, unbiased

8   appraisals that they never received."  LSI Br., p. 22.  *See also* SAC, ¶¶ 72, 154.  LSI then notes that

9   "Plaintiffs' claim that the fees they were charged for these appraisals are their damages."  *Id.*  LSI

10  contends these are not sufficient damages because the Bencosmes would have had to pay for the

11  appraisal whether done credibly in good faith or not to get their loan from WaMu.  *Id.*

12       Of course, the whole purpose of the appraisal was for the Bencosmes to have a credible,

13  unbiased appraisal of the value of the home they were about to buy so they could rely on it in deciding

14  if they wanted to buy the home and enter the mortgage loan with WaMu.  SAC, Exh. 6, p. 6 (Item No.

15  23).  By conspiring with WaMu to breach its contract to provide the Bencosmes a credible, unbiased

16  appraisal, LSI not only did not give the Bencosmes the benefit of the bargain on their appraisal contract

17  with LSI, but LSI also helped WaMu fraudulently induce the Bencosmes into a loan with WaMu and

18  a purchase of a home based on unreliable material information about the value of the home at issue.

19       This is clearly an egregious breach of contract by LSI.  There is no precept of law that requires

20  the Bencosmes to pay LSI for a sham appraisal, when the credible, unbiased appraisal they contracted

21  with LSI to provide was never delivered to them.  Clearly, the Bencosmes did not get what they

22  bargained for.  The law does not require payment in these circumstances.  *Bagdasarian v. Gragnon*,

23  31 Cal.2d 744, 762-763 (1948)(citing Cal.Civ.Code § 3343).  *Cf. Martin v. Julius Dierck Equipment

24  Co.*, 374 N.E.2d 97, 99-100 (N.Y. 1978).  To the extent LSI contends the Bencosmes got some value

25  from the sham appraisal it provided because it was used to get a loan from WaMu, the Bencosmes

26  should be afforded the opportunity to demonstrate after discovery and expert testimony that the value

27  of a sham report is worth less than the full value they paid for what was purportedly a credible,

28

1 | unbiased appraisal.

2 |      Addressing this issue after discovery is more than appropriate here, since the Bencosmes well-

3 | plead allegations of LSI's egregious breach warrants at least nominal damages which are sufficient to

4 | sustain the damage element of a breach of contract claim. *See Midland Pacific Building Corporation*

5 | *v. King*, 157 Cal. App. 4th 264, 275 (2008), *citing* Cal. Civ. Code §3360. *Cf. Kronos, Inc. V. AVX*

6 | *Corporation*, 612 N.E.2d 289, 292 (N.Y. 1993) ("Nominal damages are always available in breach of

7 | contract actions").  Through discovery, the Bencosmes will be able to establish the exact extent of their

8 | losses as a result of LSI's breach.  Dismissal of the breach of contract prior to discovery at the motion

9 | to dismiss stage is thus improper.

10 | **CONCLUSION**

11 |      For the foregoing reasons, LSI's Motion to Dismiss Plaintiffs' Second Amended Complaint

12 | should be denied in its entirety.

13 | Dated: May 15, 2009                **SPECTER SPECTER EVANS &**

14 |                               **MANOGUE, P.C.**

15 |

16 |                           By:  s/Joseph N. Kravec, Jr.
                               Joseph N. Kravec, Jr.

17 |                           The 26th Floor Koppers Building
                          Pittsburgh, Pennsylvania 15219

18 |                           Tel:    (412) 642-2300
                          Fax:    (412) 642-2309

19 |                           E-mail: jnk@ssem.com

20 |                           Michael D. Braun, Esquire
                          **BRAUN LAW GROUP, P.C.**

21 |                           10680 West Pico Boulevard, Suite 280
                          Los Angeles, CA 90064

22 |                           Tel:    (310) 836-6000
                          Fax:    (310) 836-6010

23 |                           E-mail: service@braunlawgroup.com

24 |                           Ira Spiro (67641)
                          J. Mark Moore (180473)

25 |                           **SPIRO MOSS BARNESS, LLP**
                          11377 West Olympic Blvd., Fifth Floor

26 |                           Los Angeles, CA 90064-1683
                          Tel:    (310) 235-2468

27 |                           Fax:    (310) 235-2456
                          E-mail: ira@spiromoss.com

28 |                                     mark@spiromoss.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Janet Lindner Spielberg (221926)
**LAW OFFICES OF JANET**
**LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Tel:      (310)3928801
Fax:      (310)278-5938
E-mail: jlspielberg@jlslp.com

***Attorneys for Plaintiffs***

1

**PROOF OF SERVICE**

2   STATE OF PENNSYLVANIA              )
                                        )   ss.:
3   COUNTY OF ALLEGHENY                )

4          I am employed in the County of Allegheny, State of Pennsylvania.  I am over the age of 18 and
5   not a party to the within action.  My business address is The 26th Floor Koppers Building, Pittsburgh,
    Pennsylvania 15219.

6          On May 15, 2009, using the Northern District of California's Electronic Case Filing System,
7   with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

8          **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LENDER'S
           SERVICE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

9          The ECF System is designed to automatically generate an e-mail message to all parties in the
10  case, which constitutes service.  According to the ECF/PACER system, for this case, the parties are
    served as follows:

11     Janet Lindner Spielberg, Esquire          jlspielberg@jlslp.com

12     Ira Spiro, Esquire                        ira@spiromoss.com

13     Michael D. Braun, Esquire                 service@braunlawgroup.com

14     James Mark Moore, Esquire                 mark@spiromoss.com

15  **Attorneys for Plaintiffs**

16     Jeffrey D. Rotenberg, Esquire             jrotenberg@tpw.com

17     Laura Jean Fowler, Esquire                lfowler@mhalaw.com

18     Patrick J. Smith, Esquire                 psmith@tpw.com

19     Richard F. Hans, Esquire                  rhans@tpw.com

20     Michael T. Fogarty, Esquire               tfogarty@mhalaw.com

21     Kerry Ford Cunningham, Esquire            kerry.cunningham@dlapiper.com

22  **Attorneys for First Americana eAppraiseIT**

23     Christopher J. Clark, Esquire             cjclark@dl.com

24     Kevin C. Wallace, Esquire                 kwallace@dl.com

25     Kris Hue Chau Man, Esquire                kman@dl.com

26     Margaret Anne Keane, Esquire              mkeane@dl.com

27

28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LENDER'S SERVICE, INC.'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT; CASE NO.: 5:08-CV-00868 (RMW)**

1    Angela M. Papalaskaris, Esquire          apapalas@dl.com

2    **Attorneys for Lenders Service, Inc.**

3    I am employed in the office of an attorney who is admitted *pro hac vice* in this action at whose direction the service was made.

4

5    I declare under penalty of perjury under the laws of the United States that the above is true and correct.

6    Executed on May 15, 2009, at Pittsburgh, Pennsylvania.

7                                              s/Marcia Z. Carney
                                                  Marcia Z. Carney
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28