**E-FILED on** __08/30/09__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL, INC., a Washington corporation; FIRST AMERICAN EAPPRAISEIT, a Delaware corporation; and LENDERS SERVICES, INC.,<br><br>Defendants. | No. C-08-00868 RMW<br><br>ORDER DENYING PLAINTIFFS' MOTION TO INTERVENE; GRANTING LSI'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART EA'S MOTION TO DISMISS<br>**[Re Docket Nos. 150, 155, 156, 162]** |

Plaintiffs bring this suit alleging that defendant-appraisers participated in a scheme to provide home-loan mortgage borrowers with inflated appraisals of the property they sought to purchase. On March 9, 2009, this court granted, with leave to amend, defendant Lender's Service, Inc.'s ("LSI") motion to dismiss on the basis that Sidney Scholl ("Scholl") had failed to establish standing to sue LSI. The court also granted in part and denied in part, again with leave to amend, plaintiff First American eAppraiseIT's ("EA") motion to dismiss. Plaintiffs have filed a Second Amended Complaint ("SAC"), adding proposed intervenors Juan and Carmen Bencosme ("the Bencosmes") as plaintiffs. The Bencosmes now move to intervene, contending that they have standing against LSI. LSI opposes the motion to intervene and moves to dismiss the SAC. EA also

moves to dismiss the SAC, and plaintiffs move in response to strike portions of EA's motion to dismiss. For the reasons stated below, the court denies the Bencosme's motion to intervene, grants LSI's motion to dismiss, grants in part and denies in part EA's motion to dismiss, and denies plaintiffs' motion to strike.

## I. BACKGROUND

Plaintiffs bring this class action on behalf of all consumers in California who received home loans from WMB on or after June 1, 2006 with appraisals obtained through EA or LSI. According to the SAC, home purchases in the United States have traditionally been financed through a third-party lender who retains a security interest in the property until the loan is repaid. SAC ¶ 2. In order to ensure that the secured lender will recoup the value of the loan if the borrower defaults, the lender generally requires that the property be professionally appraised. *Id.* Plaintiffs allege that in June of 2006 Washington Mutual Bank ("WMB"), with EA and LSI, began a scheme to inflate the appraised values of homes receiving loans in order to sell the aggregated security interests in the financial markets at inflated prices. *Id.* at ¶ 6. According to the complaint, banks like WMB changed from a business model in which they held the mortgage loans until repaid to one where they sold the loans to financial institutions. *Id.* at ¶ 23. This "paradigm shift" created an incentive for the bank to seek higher appraisals in higher volume. *Id.* at ¶ 24.

The complaint describes a scheme in which WMB allegedly conspired to inflate the appraised value of property underlying their mortgage loans. In 2006 WMB retained EA and LSI to administer WMB's appraisal program. *Id.* at ¶ 34. EA and LSI have since performed almost all of WMB's appraisals, and WMB's borrowers have become EA and LSI's largest source of business. *Id.* at ¶ 36. WMB created a list of "preferred appraisers," selected by WMB's origination staff, that it requested to perform appraisals for WMB borrowers. *Id.* at ¶¶ 37, 45. WMB also maintained the contractual right with those appraisers to challenge an appraisal by requesting a "reconsideration of value" (which was known as an "ROV"). *Id.* at ¶ 39. WMB would use the ROV to get EA and LSI to increase the appraisal value of property. *Id.* WMB also requested that EA and LSI hire "Appraisal Business Managers," who were given authority to override the values determined by third-party appraisers. *Id.* at ¶ 40.

1  Plaintiffs claim that the above conduct violates the Real Estate Settlement Practices Act
2  ("RESPA") and constitutes a breach of contract.[1]  The Bencosmes now move to intervene as
3  plaintiffs.  EA and LSI move separately to dismiss the SAC brought by Spears and Scholl,
4  respectively.  Finally, plaintiffs move to strike that portion of EA's motion to dismiss that concerns
5  matter already covered in this court's March 9, 2009 order on defendants' motions to dismiss.

## II.  ANALYSIS

### A.  The Bencosmes' Motion to Intervene

The Bencosmes move to intervene in this action, apparently seeking to preserve the action in light of this court's March 9, 2009 order concluding that the FAC did not adequately allege facts showing that plaintiff Scholl had standing to sue LSI.  But, as plaintiffs appear to concede, intervention is only possible if a named plaintiff presently has standing to sue LSI.  *See Lierboe v. State Farm Mutual Automobile Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003);  Pls.' Reply ISO Mot. to Intervene 6 (stating that plaintiffs are "cognizant of the Ninth's Circuit's holding in *Lierboe* that the original plaintiff must have standing . . .").  In *Lierboe*, the Ninth Circuit considered whether, when a named plaintiff was found to lack standing, "it may be possible that the suit can proceed as a class action with another representative . . . ." 350 F.3d at 1023.  The court concluded that "because this is not a mootness case, in which substitution or intervention might have been possible, we remand this case to the district court with instructions to dismiss."  *Id.*  The Bencosmes, then, may not intervene unless plaintiffs can show that a named plaintiff presently has standing to sue LSI.  *See also In re Exodus Comm. Sec. Litig.*, 2006 WL 2355071, *1 (N.D.Cal. 2006) (denying motion to intervene because named plaintiff lacked standing); *Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998) (affirming dismissal of class action where named plaintiffs lacked standing; rejecting argument that other class members should be named as representatives).

Plaintiffs contend that the Bencosmes should be permitted to intervene because the SAC adequately alleges a conspiracy between LSI, EA, and WMB.  In its March 9, 2009 order dismissing

---

[1] Plaintiffs include the previously dismissed claims for violation of RESPA, California Business and Professions Code § 17200 and California's Consumer Legal Remedies Act ("CLRA") in the SAC "solely to preserve Plaintiffs' right to appeal [their] dismissal."  SAC ¶¶ 28, 30, 34, 36, 38, 49.

United States District Court
For the Northern District of California

the First Amended Complaint ("FAC"), the court wrote that the complaint describes "two parallel conspiracies; one between EA and WMB, and another between LSI and [WMB]. There does not appear to be a sufficient allegation that EA and LSI had an agreement. Plaintiffs have thus failed to establish standing, either directly or as a result of a conspiracy, to sue LSI." *Spears v. Washington Mut., Inc.*, 2009 WL 605835, *2 (N.D.Cal. 2009). As defendants point out, the paragraphs of the complaint that plaintiffs cite in support of their claim that LSI, EA, and WMB were co-conspirators are largely unchanged in the SAC. *See* LSI's Reply ISO Mot. to Dismiss 3-4 (comparison of paragraphs attached as Ex. A). Nothing in the minor revisions to the allegations in the complaint adequately alleges that a conspiracy including both EA and LSI exists. The court concludes that plaintiff Scholl still lacks standing to sue LSI. The Bencosmes are therefore not entitled to intervene.   In their reply, plaintiffs request jurisdictional discovery to establish that a conspiracy exists. District courts in the Ninth Circuit, following the law of other circuits, have required that plaintiffs make a "colorable" showing of jurisdiction in order to justify jurisdictional discovery. *Miltan v. Feeney*, 497 F.Supp. 2d 1113, 1119 (C.D.Cal. 2007) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir.2000)). This "colorable" showing could be understood as "requiring the plaintiff to come forward with 'some evidence' tending to establish" jurisdiction over the defendant. *Id.*

In support of the request for jurisdictional discovery, the SAC alleges that EA and LSI participated together on conference calls and apparently adopted WMB's appraiser assigning process. SAC ¶¶ 44, 54. Additionally, the form report submitted for Scholl's appraisal lists an LSI email address. *Id.* Ex. 2 at 5. These facts alone, while they may show that EA and LSI knew about the other's relationship with WMB, they do not show a conspiratorial agreement between EA and LSI. *See Wasco Products v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). The provided facts are not sufficient to warrant jurisdictional discovery on the basis of an EA-LSI conspiracy. Plaintiffs' request for jurisdictional discovery is therefore denied.

**B.    LSI's Motion to Dismiss**

Because the court denies the Bencosmes' motion to intervene, it does not reach LSI's motion to dismiss the Bencosmes' claims on the merits. As stated in Section A above, plaintiffs do not have

standing to sue LSI. Therefore, the SAC is dismissed as to LSI without leave to amend. Plaintiffs essentially repeated the allegations of standing from the FAC, and they therefore appear to have no additional facts to plead.

### C.     EA's Motion to Dismiss

EA moves to dismiss the SAC, arguing that the SAC 1) fails to state a claim under RESPA; 2) fails to state a claim for breach of contract; and 3) that the breach of contract claim is preempted by Home Owner's Loan Act ("HOLA"). Because some of EA's arguments were considered by the court and rejected in the court's March 9, 2009 order, plaintiffs move to strike the repeated arguments in the motion to dismiss. The court finds the motion to strike of little practical import, and will therefore deny it and proceed to consider the merits of EA's motion to dismiss. The court will, however, treat repeated arguments only briefly when there is no basis to revise a previous conclusion.

#### 1.     Standing Under RESPA

EA first argues that the RESPA claim should be dismissed because plaintiffs lack standing to sue under RESPA because they do not allege that they were charged an above-market rate for the appraisals (an "overcharge"). EA's Mot. To Dismiss 6. Although this argument was brought up at argument in the previous motion to dismiss, the court did not discuss in its March 9, 2009 order whether plaintiffs must allege an overcharge to have standing under § 2607.

In *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979 (6th Cir. 2009), the only court of appeals decision to consider the question, the court sought to resolve a division in district courts over whether an overcharge is necessary for standing under § 2607. *Id.* at 984. After considering the text and purpose of the statute, the legislative history, and seeking the advice of the Department of Housing and Urban Development ("HUD") (the agency charged with administering RESPA), the court concluded that "the plain meaning of the statutory language and the persuasive authorities examined by the court indicate that Congress created a private right of action to impose damages where kickbacks and unearned fees have occurred – even when there is no overcharge." *Id.* at 986-86. This court finds *Carter*'s analysis sound, and concludes that plaintiffs have standing to sue under § 2607.

### 2. Failure to State a Claim Under RESPA

EA repeats the argument from its previous motion to dismiss that plaintiffs have not alleged that EA gave a "thing of value" in return for a referral, and therefore cannot state a claim under § 2607(a). EA also argues that, even if the transfer of a thing of value is alleged, the safe-harbor provision in § 2706(c)(2) defeats plaintiffs' claim. The court considered EA's arguments, including the case of *Cedeno v. IndyMac Bancorp, Inc.*, 2008 WL 3992304 (S.D.N.Y. 2008), in its March 9, 2009 order on the previous motions to dismiss. *See Spears*, 2009 WL 605835, *3-*4. The court again concludes that plaintiffs have sufficiently alleged that the allegedly inflated appraisals provided by EA constituted a "thing of value" under RESPA and its supporting regulations, and that the safe-harbor provision in § 2706(c)(2) does not apply. *See id.*

EA also argues that no "referral" has occurred, and therefore that plaintiffs cannot state a claim for violation of RESPA. Under 24 C.F.R. § 3500.14(f), a "referral" occurs in two circumstances:

> (1) A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business.
>
> (2) A referral also occurs whenever a person paying for a settlement service or business incident thereto is required to use (see § 3500.2, "required use") a particular provider of a settlement service or business incident thereto.

EA contends that under these regulations referrals only occur, and § 2607(a) only applies, where the borrowers themselves have the power to select the settlement service provider or where they are required to use a designated provider. EA's Mot. to Dismiss 10. The court agrees that § 3500.14(f)(1) does not appear to apply here because plaintiffs did not have the power to select an appraiser. But EA's argument that plaintiffs were not "required to use" a particular appraiser, despite the fact that WMB chose the appraiser for them, makes little sense. Plaintiffs allege that the appraisers were selected by WMB and the appraisals were procured for use in evaluating the loan collateral. *See* SAC ¶¶ 6, 60, 65. This falls within the plain scope of § 3500.14(f)(2). Plaintiffs have alleged a "referral" under RESPA.

### 3. Breach of Contract Claim

The court previously dismissed plaintiffs' claims for breach of contract for failure to state a claim, concluding that the FAC alleged neither the existence of a contract between Spears and EA, nor that an agency relationship existed between WMB and Spears. *Spears*, 2009 WL 605835, \*6. The court additionally concluded that the FAC did not provide enough detail as to the substance of the contract claims to determine whether they would be preempted under HOLA. *Id.* The SAC does not remedy the pleading deficits in the original complaint. Moreover, the breach of contract claim is preempted by federal law.

The SAC alleges that the appraisal reports constitute evidence of a contract between WMB and the appraisers, and that WMB acted as plaintiffs' agent in entering into that contract. But the appraisal reports merely reflect that an appraisal was performed; not that they were performed pursuant to a contract. The appraisal reports do indeed state the appraisals were performed in compliance with applicable law (SAC ¶ 129), but such a statement does not constitute a contractual obligation. Plaintiffs claim for breach of contract is therefore subject to dismissal.

In its March 9, 2009 order, the court described law regarding the preemption of state-law claims under HOLA as follows: The Office of Thrift Supervision ("OTS") promulgated a preemption regulation in 12 C.F.R. § 560.2 explicitly occupying the field of lending regulation for federal savings associations:

> To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.

12 C.F.R. § 560.2(a). After the above general field-preemption provision, § 560.2(b) enumerates, though "without limitation," thirteen particular types of state laws that are explicitly preempted. These include, relevant here, state laws purporting to impose requirements regarding loan related fees (12 C.F.R. § 560.2(b)(5)), and processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages (12 C.F.R. § 560.2(b)(10)). § 560.2(c) identifies state laws that are not preempted, listing some state laws of general application and providing that they are not preempted "to the extent they only incidentally affect the lending operations of Federal savings

1  associations . . . ." 12 C.F.R. § 560.2(c). According to later OTS regulations, a court should first
2  inquire whether a particular state law falls within § 560.2(b). *Silvas v. E*Trade Mortgage Corp.*,
3  514 F.3d 1001, 1005 (9th Cir. 2008)(quoting 61 Fed. Reg. 50951, 50966-50967 (Sept. 30, 1996)). If
4  it does, then the law is preempted. *Id.* If not, the next question is whether the law affects lending, in
5  which case the law is preempted *unless* the law can clearly be shown to fall within 560.2(c). *Id.*
6  Finally, § 560.2(c) should be interpreted narrowly, and any doubt should be resolved in favor of
7  preemption. *Id.*

8   The court next concluded that plaintiffs claims for violation of the California's Unfair
9  Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") were preempted because
10 those claims challenged the impartiality, objectivity, and independence of the appraisals that
11 plaintiffs received, which relate directly to the processing and origination of mortgages, and indeed
12 are required by federal regulations. *Spears*, 2009 WL 605835, *5-*6; *See* 12 C.F.R. § 34, *et sec.*
13 (entitled "Real Estate Lending and Appraisals").

14  In the SAC, plaintiffs allege that "EA breached these contracts with Plaintiffs and each Class
15 member by not providing a home appraisal which was performed by an impartial, independent,
16 objective and unbiased appraiser, and by not providing appraisal reports that were credible,
17 unbiased, impartial, independent, without predetermined values and done in compliance with
18 USPAP standards." SAC ¶ 134. The complaint also alleges that EA breached the contracts by
19 violating other standards in the Uniform Standards of Professional Appraisal Practice ("USPAP"),
20 which is the basis for the preempted claims. *Id.* ¶¶ 135-136. As amended, plaintiffs' contract claim
21 is similar in substance to the UCL and CLRA claims. The contract claim therefore directly relates to
22 and affects lending, and does not fall within the exception provided for in 12 C.F.R. § 560.2(c). The
23 court therefore concludes that plaintiffs claim for breach of contract is preempted by HOLA.

24
25  \\
26  \\
27  \\
28  \\

ORDER DENYING PLAINTIFFS' MOTION TO INTERVENE; GRANTING LSI'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART EA'S MOTION TO DISMISS     —No. C-08-00868 RMW
JAS                                                                8

\\

\\

### III. ORDER

For the reasons stated above, the court:

1. denies the Bencosmes' motion to intervene;
2. grants LSI's motion to dismiss;
3. grants EA's motion to dismiss plaintiffs' claim for breach of contract;
4. denies EA's motion to dismiss plaintiffs' claim for violation of 12 U.S.C. § 2607(a).
5. denies plaintiffs' motion to strike.

DATED: 08/30/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Ira Spiro | Ira@SpiroMoss.com |
| Janet Lindner Spielberg | jlspielberg@jlslp.com |
| Joseph N. Kravec , Jr. | jnk@ssem.com |
| Michael David Braun | service@braunlawgroup.com |
| James Mark Moore | mark@spiromoss.com |

**Counsel for Receiver:**

| | |
|---|---|
| Jonathan Mark Lloyd | jonathanlloyd@dwt.com |
| David A. Super | david.super@bakerbotts.com |
| Ryan E. Bull | Ryan.Bull@bakerbotts.com |
| Sam N. Dawood | samdawood@dwt.com |
| Stephen M. Ng | stephen.ng@bakerbotts.com |

**Counsel for Defendants:**

| | |
|---|---|
| Stephen Michael Rummage | steverummage@dwt.com |
| Robert J. Pfister | rpfister@stblaw.com |
| Martin L. Fineman | martinfineman@dwt.com |
| Jeffrey D. Rotenberg | jrotenberg@tpw.com |
| Kerry Ford Cunningham | kerry.cunningham@dlapiper.com |
| Laura Jean Fowler | lfowler@mhalaw.com |
| Patrick J. Smith | psmith@tpw.com |
| Richard F. Hans | rhans@tpw.com |
| Michael T. Fogarty | tfogarty@mhalaw.com |
| Christopher J Clark | cjclark@dl.com |
| Kevin C Wallace | kwallace@dl.com |
| Kris Hue Chau Man | kman@dl.com |
| Margaret Anne Keane | mkeane@dl.com |
| Angela M. Papalaskaris | apapalas@dl.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 08/30/09

JAS
**Chambers of Judge Whyte**