Joseph N. Kravec, Jr.
(Admitted *Pro Hac Vice*)
**SPECTER SPECTER EVANS
   & MANOGUE, P.C.**
The 26th Floor Koppers Building
Pittsburgh, Pennsylvania 15291
Tel:  (412) 642-2300
Fax:  (412) 642-2309
Email:  jnk@ssem.com
**(**Additional Counsel on Signature Page)

*ATTORNEYS FOR PLAINTIFFS*

Richard F. Hans
Patrick J. Smith
Jeffrey D. Rotenberg
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  (212) 335-4556
Fax**:**  (917) 778-8556
(Additional Counsel on Signature Page)

*ATTORNEYS FOR DEFENDANT*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, JUAN BENCOSME and CARMEN BENCOSME, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company; and LENDER'S SERVICE, INC. (a/k/a LSI Appraisal, LLC), a Delaware limited liability company,<br><br>Defendants. | Case No. 5-08-CV-008968 RMW<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**Conference Date:** September 21, 2009<br>**Time:** 10:30 a.m.<br>**Courtroom:** 6 |

The remaining parties, Plaintiffs Sidney Scholl and Felton A. Spears, Jr. and Defendant eAppraiseIT, LLC ("EA"), to the above-entitled action jointly submit this Case Management Conference Statement pursuant to Fed. R. Civ. P. 26.

**I.    JURISDICTION AND SERVICE**

**Plaintiffs**:

Jurisdiction is proper under 28 U.S.C. §1331 (federal question jurisdiction) and § 1367 (supplemental jurisdiction).  Plaintiffs assert a federal claim under RESPA, 12 U.S.C. §2607, and supplemental state law claims.  Jurisdiction of this Court is alternatively proper under 28 U.S.C.

1

§1332(d)(2). Plaintiffs are citizens of the State of California and reside in Sonoma and San Jose, California and seek damages on behalf of themselves and the proposed Class that collectively exceed $5,000,000, exclusive of interest and costs. Defendant Washington Mutual Bank (formerly known as Washington Mutual Bank, FA) is a federally chartered savings association with its home office in Henderson, Nevada. It has retail lending offices in California through which the loans at issue in this litigation were conducted. Defendant eAppraiseIT, LLC ("EA"), erroneously sued as First American eAppraiseIT, is incorporated in the State of Delaware and has its principal place of business in Poway, California. Defendant LSI Appraisal, LLC ("LSI" and together with EA, "Defendants"), erroneously sued as Lender's Service, Inc., has two main operation centers located in Santa Ana, California and Sacramento, California. On February 4, 2009, Plaintiffs filed a Stipulation of Dismissal of claims against the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank. By Memorandum Orders dated March 9, 2009 (Document 147) and August 30, 2009 (Document 169), this Court dismissed Plaintiffs, Juan and Carmen Bencosme and Defendant, LSI from this lawsuit. All parties have been served.

**Defendant**:

EA contests subject matter jurisdiction over Plaintiffs' remaining claim and denies that Plaintiffs are entitled to any relief.

## II.     FACTS

**Plaintiffs**:

On February 8, 2008, Plaintiffs filed this action against Defendants Washington Mutual, Inc., EA, and LSI on their own behalf and on behalf of a putative class consisting of all consumers in California and throughout the United States who, on or after June 1, 2006, received home loans from Washington Mutual, Inc. in connection with appraisals that were obtained through either EA or LSI. On March 28, 2008, Plaintiffs filed their first amended complaint ("FAC") adding Defendant Washington Mutual Bank ("WaMu"). Plaintiffs have dismissed Washington Mutual, Inc. without prejudice, and, on February 4, 2009, Plaintiffs filed a Stipulation of Dismissal of claims against the Federal Deposit Insurance Corporation, as receiver for WaMu.

In essence, Plaintiffs allege that WaMu procured appraisals from EA and/or LSI on their behalf, that each WaMu borrower was charged for a credible, lawful appraisal, but as a result of the arrangement between WaMu, EA and LSI, no credible, lawful appraisal was performed.  WaMu borrowers (i.e., Plaintiffs and the Class) allege that they were damaged thereby.

WaMu is, among other things, a consumer lender that originates and services home loans.  Plaintiffs, and the putative class, each have obtained home loans from WaMu.  Pursuant to its standard practice, prior to issuing a home loan, WaMu requires the property to be professionally appraised, ostensibly to ensure that the fair market value of the property equals or exceeds the value of the loan.

A real estate appraisal is supposed to be an independent, objective, impartial, unbiased, credible professional estimate of the fair market value of a particular property.  A lender (in this case, WaMu) typically undertakes to procure the appraisal on behalf of itself and the borrower with the cost of the appraiser's services ultimately borne by the borrower.

Appraisers and appraisal reviewers follow federally accepted standards, the Uniform Standards of Professional Appraisal Practice ("USPAP"), which govern the ethical and legal aspects of the appraisal undertaking, assessment, reporting and review process, and establish the minimum standards for performing a "credible appraisal."  These USPAP standards are also adopted by most, if not all, states, including California.  Also, they are part of the contractual undertakings expressly stated in the Uniform Residential Appraisal Report, which is the standard form that appraisers use for their appraisal reports and which were used for the WaMu loans that are the subject of this Complaint.

In or about June 2006, WaMu entered an agreement, conspiracy or scheme with EA and LSI, two purportedly independent appraisal companies, to handle all of WaMu's home loan appraisals.  As part of this arrangement, EA and LSI received appraisal requests from WaMu to provide appraisal reports for WaMu and borrowers, procured local appraisers to perform the appraisals, reviewed the appraisal reports, and requested at the behest of WaMu that the appraisers make changes before finalizing the reports and providing them to WaMu to transmit to the borrowers.  In

reality, WaMu, with the full, unfettered cooperation of EA and LSI, controlled the process by which individual appraisers were selected, how home appraisals were performed and ultimately the values at which properties were appraised. EA and LSI consulted directly with WaMu and its loan officers to establish the property values they desired before EA and LSI (and its appraisers) finalized the appraisal reports. This conspiratorial conduct allowed WaMu to direct appraisers to artificially inflate home values and/or remove negative references and thus provide false appraisals in order to qualify more people for higher value loans. WaMu would then aggregate and package these home loans and sell them in the financial markets for a substantial profit.

As part of the scheme, EA and LSI each received millions of dollars in appraisal fees from unsuspecting WaMu borrowers who, despite paying for what should have been credible appraisals (i.e., done in compliance with applicable legal and professional standards so as to provide an independent, unbiased, and objective appraisal of the fair market value of their property), they instead unwittingly received biased appraisals that were neither independent, objective or in compliance with legal and professional standards. Each borrower, including Plaintiffs, had WaMu procure an appraisal report from EA and/or LSI on their behalf, was charged for a credible, lawful appraisal, but as a result of the arrangement between WaMu, EA and LSI, no credible, lawful appraisal was performed. Instead, WaMu borrowers received valueless false, counterfeit, sham appraisal reports. WaMu borrowers (i.e., Plaintiffs and the Class) were damaged thereby since they were each charged hundreds of dollars for credible, lawful appraisals that they never received.

**Defendant:**

Like other lending institutions, WaMu historically has obtained appraisals to provide an assessment of the value of real property being offered by borrowers as security for their loans. Beginning in 2006, WaMu lawfully outsourced aspects of its appraisal management function to EA. Beyond these basic facts, however, EA disagrees with Plaintiffs' factual recitation in almost every particular.

Contrary to Plaintiffs' assertions, there was no "agreement, conspiracy or scheme" involving EA. WaMu did not "control" the appraisal process in any way consistent with the allegations of

4

Plaintiffs' SAC. WaMu, EA and LSI did not conspire "to establish the property values they desired" or "artificially inflate home values;" and the appraisals at issue in this action were in fact independent, objective, and in compliance with legal and professional standards. In arguing to the contrary, Plaintiffs have borrowed their version of the facts from press reports and allegations in unrelated lawsuits, which will prove unfounded.

Further, the Plaintiffs have not alleged (and EA does not believe they can allege) that the alleged practices had any impact or effect on them. Plaintiff Scholl dealt with WaMu because she wanted a loan to facilitate her purchase of investment property at 817 Northwest 194th Terrace in Oklahoma, along with her partners. After assembling data concerning comparable sales (which Plaintiffs do not allege to have been inaccurate or improperly analyzed), the appraiser found that the property was worth the amount that Plaintiff Scholl and her partners already had agreed to pay. Plaintiff Spears, on the other hand, applied for a $178,000 loan on his property, hoping to refinance his first mortgage and put roughly $20,000 in cash in his pocket. After an appraisal that valued his home at $525,000, Spears received the loan he wanted, paid off his underlying debt, and retained about $20,000 to use as he determined – exactly as he expected. The Scholl and Spears loan transactions – which they sought, and about which they do not complain – would not have been possible without the appraisals at issue.

### III.     LEGAL ISSUES

**Plaintiffs**:

Plaintiffs allege that Defendants' conduct violates, or is in violation of the following:

(1)     Real Estate Settlement Procedures Act, 12 U.S.C. § 2607.

(2)     The unlawful, unfair and fraudulent prongs of California's Business and Professions Code §17200, et seq. (the "UCL").

(3)     The Consumer Legal Remedies Act ("CLRA"), California Civil Code §1750, et seq.

(4)     Breach of Contract.

(5)     Unjust Enrichment.

1 Plaintiffs have standing against each Defendant due to their conspiracy and participation in their appraisals and have pled all of the necessary elements of each of their causes of action. Further, federal preemption under 12 CFR § 560.2(b) does not apply to these appraiser Defendants who are active participants in a conspiracy to defraud Plaintiffs with false, sham appraisals and are subject to the federal laws and laws of general applicability asserted by Plaintiffs to redress Defendants fraudulent conduct. These issues were further addressed in Plaintiffs' response to Defendants' motions to dismiss. This Court issued Orders on March 9, 2009 (Document 147) and August 30, 2009 (Document 169) resolving Defendants' motions to dismiss as described in Section IV below.

Plaintiffs also meet all of the requisites for class certification under Fed. R. Civ. P. 23. Defendants conducted a uniform, undisclosed conspiracy to artificially inflate and to remove negative references from appraisal reports they provided to and for which they charged borrowers. This conduct violates the Uniform Standards of Professional Appraisal Practice ("USPAP"), which federal and state law, including California, impose on all appraisers and appraisal reports. The appraisal reports themselves were form documents filled out by Defendants that specifically stated they were done in compliance with USPAP and borrowers could rely upon them in entering a mortgage financing transaction. This was uniformly untrue due to Defendants' conspiratorial conduct. As reflected in their Settlement Statements (HUD-1), a federally required form to be completed and retained by lenders for all loans, borrowers were each charged hundreds of dollar for a USPAP compliant, credible, lawful appraisal prepared by EA and/or LSI, but unwittingly received valueless, false, sham appraisals.

**Defendant:**

Defendants EA's and LSI's Motions to Dismiss raised legal issues concerning standing, federal preemption under 12 CFR § 560.2(b), and Plaintiffs' failure to plead the required elements of each of their causes of action. Further, this case will raise a variety of legal issues revolving around (a) Plaintiffs' inability to satisfy the class action criteria set forth in Fed. R. Civ. P. 23 and (b) the unsuitability of this case for class treatment. This Court resolved those motions to dismiss as

6

specified in the next Section.

## IV. MOTIONS

On May 2, 2008, all three Defendants filed motions to dismiss Plaintiffs' FAC. On March 9, 2009, this Court issued a Memorandum Order (Document 147) sustaining Plaintiffs' Real Estate Settlement Practices Act ("RESPA"), Section 8 (a) claim against EA, dismissing all other claims against EA, dismissing LSI, and granting Plaintiffs' leave to amend their complaint as to their breach of contract claims against EA and LSI and to address standing as to LSI. On March 30, 2009, Plaintiffs filed a Second Amended Class Action Complaint ("SAC") amending the breach of contract claims, adding allegations to address standing as to LSI, and adding Plaintiffs Juan and Carmen Bencosome whose appraisal was performed by LSI. Juan and Carmen Bencosome also moved to intervene as to the RESPA claim to receive the benefit of *American Pipe* tolling. EA and LSI each moved to dismiss the SAC. On August 30, 2009, this Court issued a Memorandum Order (Document 169) sustaining Plaintiffs Spears' and Scholl's RESPA, Section 8 (a) claim against EA, dismissing the breach of contract claim against EA, dismissing LSI from this lawsuit, and denying Juan and Carmen Bencosome's Motion to Intervene.

As to the remaining RESPA, Section 8 (a) claim against EA, Plaintiffs anticipate filing motions for class certification and summary judgment after discovery. EA expects to move against class certification and otherwise oppose any motion for class certification by Plaintiffs and for summary judgment either on an individual or class basis, as appropriate. EA may also file a motion for certification of an interlocutory appeal of the District Court's denial in part of its motion to dismiss.

## V. AMENDMENT OF PLEADINGS

The parties do not anticipate amending the pleadings at this time. The parties have agreed to a deadline for amendment of pleadings as set forth in Exhibit A. The parties further reserve their right to object to any such amendment and to seek such an amendment at a later date for good cause and consistent with Rule 15.

//

7

## VI. EVIDENCE PRESERVATION

**Plaintiffs**:

Although each Defendant has separately represented that a 'litigation hold' has been put into place, Plaintiffs believe the scope of these holds is unclear. The parties are continuing to discuss the parameters of the litigation holds with respect to preserving evidence relevant to this litigation. If the parties are unable to reach an understanding that provides Plaintiffs with sufficient comfort that relevant evidence is being properly preserved, then Plaintiffs intend to move for a formal preservation order.

Plaintiffs have since the inception of this lawsuit either provided documents relevant to this litigation to their undersigned counsel or have acknowledged that they will retain any such relevant evidence.

**Defendant:**

Defendant EA has adopted comprehensive document preservation policies (also known as "litigation holds") with respect to allegations concerning their relationships and appraisal practices.

EA issued a broad document preservation notice to employees which covers the subject matter of Plaintiffs' claims in this lawsuit. Specifically, EA's preservation notice requires employees to preserve any hard copy documents or electronically stored information relating in any way to First American's relationship or dealings with WaMu and the appraisal management services it rendered for WaMu. Among other steps taken to ensure these preservation efforts, EA suspended the disposition of records protocol ordinarily operative under the company's record retention schedule. In addition, EA has backed-up relevant servers and taken steps to ensure that back-up tapes are not overwritten. These preservation measures went into effect prior to the filing of this lawsuit in light of allegations in other proceedings.

## VII. DISCLOSURES

Parties have agreed to adjourn the deadline on which to exchange initial disclosures to October 23, 2009.

//

8

## VIII. DISCOVERY

Plaintiffs served EA with their First Set of Document Request on June 20, 2008, following their first Fed. R. Civ. P. 26(f) conference in this action. EA responded on July 23, 2008, agreeing to provide most of the documents requested after the Court finally ruled on the motions to dismiss. Following the Court's ruling on the last motion to dismiss on August 30, 2009, the parties have been conferring concerning the timing of agreed document production and certain objections EA has raised concerning the sequencing of production and as to producing any document with respect to 2 of Plaintiffs' 55 requests. To foster the progress of this action, the parties will present to the Court in short order any disputes concerning these requests that they are unable to resolve. EA served each of the named plaintiffs with discovery requests on September 17, 2009. The parties have agreed to a comprehensive discovery schedule, attached hereto as Exhibit A. The parties have not agreed to modify any of the discovery rules, but reserve their rights to seek such an amendment at a later date if the need arises.

EA believes discovery in this case will be complicated by the WaMu receivership and the multiple non-parties we understand have asserted possibly conflicting claims of control over documents potentially relevant to this litigation.

## IX. CLASS ACTIONS

After a sufficient amount of time to conduct class-related discovery, Plaintiffs intend to move for class certification. Defendants may move against class certification and otherwise intend to oppose any such a motion by Plaintiffs. The parties have agreed on a schedule for class discovery and deadline for the filing of Plaintiffs' class certification motion. See Exhibit A.

## X. RELATED CASES

On November 28, 2007, WaMu moved to transfer this action to the Western District of Washington pursuant to 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multi District Litigation. In so doing, WaMu sought to transfer, coordinate and/or consolidate this matter with eighteen other actions. On March 3, 2008, the MDL Panel's staff informed Plaintiffs' counsel that this matter would not be related to the other actions, nor transferred

9

1  to the Western District of Washington.  Plaintiffs' counsel made a filing to that effect in this Court on
2  March 3, 2008.

3  On June 19, 2008, Plaintiffs filed their own motion to transfer this action to the Western
4  District of Washington.  On October 8, 2008, the MDL Panel denied Plaintiffs' motion, finding that
5  this action does not involve sufficient common questions with litigation previously transferred to the
6  Western District of Washington.

**XI.  RELIEF**

**Plaintiffs:**

Plaintiffs seek the following relief:

(1) An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representative and Plaintiffs' counsel be appointed Class Counsel.

(2) Compensatory damages.

(3) Treble damages as to the RESPA violation.

(4) Restitution in such amount that Plaintiffs and all Class members paid for their home appraisals, or the profits, charges and fees Defendant obtained for them.

(5) An order enjoining Defendant from maintaining and utilizing WaMu's Proven Appraiser List, or any other mechanism by which WaMu has control over the appraiser selected to perform WaMu's home appraisals or value the appraiser sets for the subject property.

(6) An order awarding Plaintiffs their costs of suit, including pre and post-judgment interest.

(7) An order awarding Plaintiffs' counsel's attorneys' fees.

(8) An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant as a result of the unfair, fraudulent and unlawful conduct alleged herein.

(9) Such other and further relief as may be deemed necessary or appropriate.

10

**Defendant:**

EA denies that Plaintiffs are entitled to any of the relief requested. At this point, EA does not envision seeking affirmative relief against the Plaintiffs.

**XII.  SETTLEMENT AND ADR**

The parties agree that settlement discussions are currently premature. If and when settlement discussions become appropriate, Plaintiffs and EA agree to use the services of professional mediation. At the present time, Plaintiffs and EA agree that mediation probably will not be appropriate until after the Court rules on Plaintiffs' anticipated motion for class certification.

**XIII.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The Parties do *not* unanimously consent to proceed before a Magistrate Judge for all purposes.

**XIV.  OTHER REFERENCES**

This matter is not suitable for reference to binding arbitration or a special master. This matter was previously referred to the Judicial Panel for Multidistrict Litigation. The Panel determined this matter was not related to other matters then pending before the Panel. See Part X.

**XV.  NARROWING OF ISSUES**

Both Plaintiffs and EA anticipate moving for summary judgment at a later date. At relevant procedural junctures throughout the litigation, parties will in good faith continue to explore the possibility of narrowing issues whenever possible.

**XVI.  EXPEDITED SCHEDULE**

See Chart of Dates and Deadlines at Exhibit A.

**XVII.  SCHEDULING**

See Chart of Dates and Deadlines at Exhibit A.

**XVIII.  TRIAL**

Plaintiffs have requested a jury trial with respect to claims that may be so adjudicated. Plaintiffs and EA agree that at this point and time, given that the Court has not decided whether this matter will proceed as a class action, they cannot estimate the trial length.

11

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

**Plaintiffs**:

Plaintiffs have filed a Certification of Interested Entities or Persons pursuant to Local Rule 3-16, identifying the following persons or entities:

1. SIDNEY SCHOLL, plaintiff;
2. FELTON A. SPEARS, JR., plaintiff;
3. WASHINGTON MUTUAL BANK, FA (aka WASHINGTON MUTUAL BANK), defendant;
4. EAPPRAISEIT, LLC, defendant; and
5. LENDER'S SERVICE, INC., defendant.

**Defendant:**

EA has filed a Certification of Interested Entities or Persons Pursuant to Local Rule 3-16.

## XX. SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY AND INEXPENSIVE DISPOSITION OF THIS MATTER

None.

## XXI. PLAINTIFFS' STATEMENT PURSUANT TO L. R. 16-9 (b)

**A. Plaintiff's Statement**

This is a class action against Defendants seeking relief on behalf of Plaintiffs and a class of all consumers in California and throughout the United States who, on or after June 1, 2006, received home loans from WaMu, in connection with appraisals that were obtained through either EA. Plaintiff will seek class certification pursuant to Fed. R. Civ. P 23(a) and (b)(3). Alternatively, Plaintiffs may also seek certification pursuant to Fed. R. Civ. P 23(b)(2).

There are thousands of class members who are geographically dispersed throughout the United States, including California, making the class sufficiently numerous and making joinder impracticable.

Common questions of law or fact exist as to all members of the Class. The appraisals are provided in accordance with USPAP which are incorporated into Federal and California law. 12

1 C.F.R. § 34.44; California Business and Professions Code §11319. The appraisers use standard form
2 contracts and Plaintiffs have alleged a common course of conduct. Common questions predominate
3 over any questions affecting only individual class members. These common legal or factual
4 questions include:

    A.    Whether WaMu entered into an agreement with EA to procure appraisal services that were not performed by independent, unbiased appraisers as required by law;

    B.    Whether Defendant had and have policies, practices, or procedures that undermine the possibility that Plaintiffs and the Class received credible appraisals done in compliance with USPAP and applicable law;

    C.    Whether WaMu, through its agreement with EA , was able to control the appraisal process, by its loan origination personnel or otherwise, by having EA provide higher appraised values for homes than EA's appraiser had initially concluded or than was the actual fair market value of the home;

    D.    Whether EA agreed with WaMu to provide WaMu with appraisers who were selected by WaMu to be on WaMu's Proven Appraiser List (or the WaMu Select panel);

    E.    Whether WaMu controlled and/or manipulated the pool of appraisers on WaMu's Proven Appraiser List;

    F.    Whether the agreements between WaMu and EA constitutes a civil conspiracy;

    G.    Whether WaMu had an agreement, combination, conspiracy, understanding or practice of referring appraisal borrower clients to EA in exchange for EA delivering an appraisal at an amount that would support the mortgage loan irrespective of the true market value of the property;

    H.    Whether EA's and WaMu's actions violate RESPA, Section 8 (a).; and

    I.    The appropriate measure of damages and/or restitution.

27     Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs took out home

1  mortgage loans with Defendant WaMu and their home appraisals were procured for them by WaMu
2  through EA.  Plaintiffs are no different in any relevant respect from any other Class member.
3        Plaintiffs are adequate representatives of the Class because their interests do not conflict with
4  the interests of the class members they seek to represent, and they have retained counsel competent
5  and experienced in conducting complex class action litigation.
6        Finally, a class action is superior to other available means for the fair and efficient
7  adjudication of this dispute.  The damages suffered by each individual class member likely will be
8  relatively small, especially given the burden and expense of individual prosecution of the complex
9  litigation necessitated by EA's alleged conduct.  Thus, it would be virtually impossible for the class
10 members individually to effectively redress the wrongs done to them.  Moreover, even if the class
11 members could afford individual actions, it would still not be preferable to class wide litigation.
12 Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast,
13 a class action presents far fewer management difficulties and provides the benefits of single
14 adjudication, economies of scale, and comprehensive supervision by a single court.
15       Plaintiffs intend to move for class certification according to the schedule set forth in Exhibit
16 A.

**B.  Defendant's Statement**

EA will contest class certification.  Recognizing that discovery has not yet occurred and that EA believes that there is no subject matter jurisdiction of Plaintiffs' remaining claim and that Plaintiffs cannot otherwise state this claim (for the reasons set forth in their motions to dismiss), EA believes that Plaintiffs cannot demonstrate their claims would satisfy the criteria to proceed as a class action. In the case at hand, Plaintiffs' class will inevitably face legal and factual questions that are unique to individual members of the proposed nationwide Class.

Moreover, Plaintiffs' claims as pleaded give rise to a right to relief only if the conduct they allege had a material impact on the values set forth in individual appraisals.  A finder of fact cannot resolve this central issue of individual appraisal values on a class basis.

As a result, EA disagrees that common questions exist, disagree that Plaintiffs' claims are

14

typical of the claims of the class they seek to certify, do not believe that common questions predominate, and believe that a class action would not be the superior means of adjudicating this dispute.  EA reserves judgment, subject to further discovery and definition of the proposed class, on the questions of adequacy of representation and numerosity.

Dated:  September 21, 2009

| | |
|---|---|
| **SPECTER SPECTER EVANS & MANOGUE, P.C.** | **DLA PIPER LLP** |
| By:      s/Joseph N. Kravec, Jr.          . <br>         Joseph N. Kravec, Jr. <br>         (Admitted Pro Hac Vice) | By:   s/Richard F. Hans via email consent     . <br>         Richard F. Hans <br>         (Admitted Pro Hac Vice) |
| The 26th Floor Koppers Building <br> Pittsburgh, Pennsylvania  15219 <br> Tel:  (412) 642-2300 <br> Fax:  (412) 642-2309 | Patrick J. Smith <br> Jeffrey D. Rotenberg <br> 1251 Avenue of the Americas <br> New York, New York  10020-1104 <br> Tel:  (212) 335-4556 <br> Fax:  (917) 778-8556 |
| Janet Lindner Spielberg <br> **LAW OFFICES OF JANET LINDNER SPIELBERG** <br> 12400 Wilshire Boulevard, #400 <br> Los Angeles, California  90025 <br> Tel:  (310) 392-8801 <br> Fax:  (310) 278-5938 | Michael T. Fogarty <br> Laura J. Fowler <br> **MCDONOUGH HOLLAND & ALLEN PC** <br> 555 Capitol Mall, 9th Floor <br> Sacramento, California  95814 <br> Tel:  (916) 444-3900 <br> Fax:  (916) 444-3249 |
| Ira Spiro <br> **SPIRO MOSS BARNESS, LLP** <br> 11377 West Olympic Blvd., Fifth Floor <br> Los Angeles, California  90064-1683 <br> Tel:  (310) 235-2468 <br> Fax:  (310) 235-2456 | *ATTORNEYS FOR DEFENDANT EAPPRAISEIT* |

1  Michael D. Braun (SBN 167416)
   **BRAUN LAW GROUP, P.C.**
2  10680 West Pico Boulevard, Suite 280
   Los Angeles, California  90064
3  Tel:  (310) 836-6000
   Fax:  (310) 836-6010
4
   *ATTORNEYS FOR PLAINTIFFS*

# EXHIBIT A

## CHART OF DATES AND DEADLINES

| EVENT | PROPOSED DEADLINE |
|---|---|
| Initial Disclosures | October 23, 2009 |
| Amend Pleadings | January 15, 2010 (w/o waiver of right to move to amend on good cause) |
| Certification Discovery Cutoff (Non-Expert) | February 26, 2010 |
| Motion for Class Certification | March 15, 2009 |
| Merits Discovery Cutoff | 9 months after Class Certification ruling |
| * Mediation | |
| * Expert Reports – Merits | 30 days after close of Merits Discovery - Initial Report<br><br>60 days after close of Merits Discovery - Supplemental |
| * Expert Discovery Cutoff – Merits | 90 days after close of Merits Discovery |
| * Dispositive Motion Cutoff | 120 days after close of Merits Discovery |
| * Other Motion Cutoff (other than Motions in Limine) | 150 days after close of Merits Discovery |
| * Pretrial Conference (hearing on Motions in Limine, agreed jury instructions and verdict forms, proposed voir dire questions) | 175 days after close of Merits Discovery |
| * Pre-Trial Briefs | 190 days after close of Merits Discovery |
| * Trial Date | 225 days after close of Merits Discovery |

\*   The parties respectfully suggest that the Court schedule a Case Management Conference following its ruling on class certification to determine if these deadlines should be amended in light of the Court's ruling.