E-FILED on     7/2/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR., SIDNEY SCHOLL, JUAN BENCOSME, and CARMEN BENCOSME, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAprraiseIT, LLC), a Delaware limited liability company; and LENDER'S SERVICE, INC. (a/k/a LSI Appraisal, LLC), a Delaware limited liability company,<br><br>Defendants. | No. C-08-00868 RMW<br><br><br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE<br><br>**[Re Docket Nos. 189, 197]** |

Plaintiffs move for class certification. For the reasons set forth below, the court denies the motion without prejudice.

## I. BACKGROUND

Home purchases in the United States have traditionally been financed through a third-party lender who retains a security interest in the property until the loan is repaid. Second Amended Complaint ("SAC") ¶ 2. In order to ensure that the secured lender will recoup the value of the loan if the borrower defaults, the lender generally requires that the property be professionally appraised. *Id.* In recent years, however, there has been a paradigm shift away from banks holding the mortgage loans until repaid to one where they sell the loans to financial institutions. *Id.* ¶ 23. This paradigm

shift created an incentive for banks to seek higher appraisals for the property underlying their mortgage loans. *Id.* ¶ 24.

Plaintiffs allege that, beginning in June of 2006, Washington Mutual Bank ("WMB") conspired with First American eAppraiseIT ("EA") and Lender's Service, Inc. ("LSI") to inflate the appraised value of property underlying their mortgage loans so that WMB could sell the aggregated security interests in these properties at inflated prices. *Id.* ¶ 6. Around June 2006, WMB retained EA and LSI to administer its appraisal program. *Id.* ¶ 36. EA and LSI have since performed almost all of WMB's appraisals, and WMB's borrowers have become EA and LSI's largest source of business. *Id.* Plaintiffs allege that defendants engaged in the following conduct as part of the conspiracy to inflate appraisals: (1) EA and LSI complied with WMB's demand that all of its appraisals be performed by appraisers on its "Proven Appraiser List," which contained appraisers selected by WMB's loan origination staff; (2) WMB maintained the contractual right to challenge appraisals by requesting a reconsideration of value ("ROV") and used ROV requests to get EA and LSI to increase appraisal values; (3) WMB requested that EA and LSI hire former WMB employees as appraisal business managers, who had the authority to override the values determined by third-party appraisers; and (4) EA and LSI altered appraisal reports to reflect higher property values, remove negative references, and make other changes so that the final appraisal reports complied with WMB's wishes. *Id.* ¶¶ 6, 37-40, 43-45.

On February 8, 2008, plaintiffs filed suit against WMB, EA, and LSI, alleging breach of contract, unjust enrichment, and violations of the Real Estate Settlement Procedures Act ("RESPA"), the Unfair Competition Law, and the Consumers Legal Remedies Act. As the case currently stands, the only claim remaining is plaintiffs Felton A. Spears and Sidney Scholl's claim against EA for violation of Section 8(a) of RESPA, 12 U.S.C. § 2607(a). The court dismissed all other claims against EA in orders issued on March 9, 2009 and August 30, 2009. In its August 30, 2009 order, the court also denied the motion to permit Juan and Carmen Bencosme to intervene and dismissed LSI from this case. Spears and Scholl now move for class certification.

## II. ANALYSIS

Class certification is a matter within the discretion of the district court, *Zinser v. Accufix*

*Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001), although the determination must be supported by sufficient factual findings, *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001), and a proper understanding of the applicable law, *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

### A.     Class Definition

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D.Cal. 2009). "A class definition should be precise, objective, and presently ascertainable." *Id.* (citing *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.1998)). Plaintiffs offer the following proposed class definition: "All consumers in California and throughout the United States who, between June 1, 2006 and September 25, 2008, received home loans from Washington Mutual Bank, FA in connection with appraisals that were obtained through First American eAppraiseIT." This class definition is based on a set of objective criteria and is sufficiently ascertainable.

### B.     Rule 23(a) Prerequisites

Federal Rule of Civil Procedure 23(a) lists four conjunctive criteria that must be met to certify a class action: numerosity, commonality of issues, typicality of the representative plaintiffs' claims, and adequacy of representation. Fed. R. Civ. P. 23(a). A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The plaintiff bears the burden of demonstrating the requirements of Rule 23(a) are satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In this case, there is no dispute regarding the satisfaction of the numerosity and commonality requirements, as the proposed class consists of approximately 260,000 consumers, Mot. Class Cert. Ex. R at 4, and there are many common questions of law and fact. The parties, however, dispute whether the typicality and adequacy requirements have been met.

### 1. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Proc. 23(a)(3). The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

EA argues that typicality has not been met because both named plaintiffs' claims are based on appraisals conducted prior to the creation of the Proven Appraiser List. The bulk of the allegations in the SAC focuses on use of the Proven Appraiser List, suggesting that this particular conduct is central to plaintiffs' case. *See* SAC ¶¶ 37, 41-56, 91-92. However, plaintiffs have alleged a conspiracy that includes a myriad of conduct intended to inflate appraisals beyond the selection of appraisers from WMB's Proven Appraiser List, including ROV requests, use of former WMB employees as appraisal business managers, and altering of appraisal reports. SAC ¶¶ 6, 38-40. Moreover, in determining whether typicality has been satisfied, courts are to consider the nature of the claims asserted by named representatives, not the specific facts from which their claims arose. *Hanon*, 976 F.2d at 508. As alleged in the SAC, Scholl and Spears have suffered the same injury as the other members of the class – receipt of an appraisal tainted by collusion between WMB and EA. This action is not based on conduct that is unique to the named plaintiffs, and other class members are alleged to have been injured by the same course of conduct – the conspiracy to inflate appraisals in exchange for appraisal business. Thus, the nature of the claims asserted by the named representatives are typical of the claims of the class.

EA also contends that the named plaintiffs' claims are not typical because Scholl cannot show that her appraisal was inflated, and WMB would not have benefited from inflating Spears' appraisal.

However, as discussed below, the class representatives need not prove that their individual appraisals were inflated, nor must they show that WMB would have benefited from inflating their individual appraisals. The court therefore finds that the typicality requirement has been satisfied.

### 2. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4). The adequacy requirement ensures that absent class members are afforded adequate representation before being bound by a judgment. *Hanlon*, 150 F.3d at 1020. In determining adequacy, courts consider: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

EA contends that Scholl is an inadequate class representative because class counsel represents her in a separate lawsuit filed against WMB. However, EA has failed to show how this separate representation in a separate case creates a conflict of interest between Scholl and other class members. Moreover, at the hearing on July 2, 2010, plaintiffs' counsel represented to the court that this separate lawsuit has been dismissed. The court thus finds no reason to believe that Scholl has a conflict of interest with other class members or that she would not prosecute the action vigorously on behalf of the class.

EA argues that Spears is an inadequate class representative because he has a criminal record and lacks sufficient understanding of the procedural history of this case. In light of the fact that Spears' arrests and convictions are all at least thirty years old, Spears Dep. 16:21-23, the court finds that they do not raise serious concerns about his credibility and thus do not prevent him from adequately representing the class. *See White v. E-Loan, Inc.*, 2006 WL 2411420, at *3 (N.D. Cal. Aug. 18, 2006) (finding that convictions from almost thirty years ago did not prevent a class representative from adequately representing the class). As for Spears' lack of familiarity with the proceedings in this case, this presents a close call. Although a class representative should have some basic understanding of the case, "a knowledge or understanding of all the intricacies of the litigation is not required." *Monroe v. City of Charlottesville*, 579 F.3d 380, 385 (4th Cir. 2009). On one hand, Spears understands the basic

theory of the case, has been in regular contact with class counsel, and has reviewed each version of the complaint. Spears Dep. 29:15-16, 54:7-21, 69:10-21, 73:11-24, 76:2-11, 77:6-8. On the other hand, he is not aware of any of the court's rulings, does not know which claims have been dismissed, and is not aware of the fact that his attorneys had moved to have this case transferred to a different court. *Id.* 71:14-16, 72:21-73:8, 74:25-75:24, 76:24-77:4, 78:12-16. In this case, the court need not decide whether Spears' limited knowledge regarding the case would prevent him from prosecuting the action vigorously on behalf of the class because Rule 23 only requires that one class representative be found adequate. *Rodriguez v. West Publi'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009). As discussed above, the court finds that Scholl is an adequate class representative.

EA contends that class counsel are inadequate because: (1) they represent Scholl in a separate action; (2) they have failed to make a reasonable pre-filing investigation of the suitability of proposed class representatives; and (3) they simply repackaged allegations in a New York Attorney General's complaint against EA. First, EA has failed to show how class counsel's representation of Scholl in a separate action against a different defendant creates a potential conflict of interest such that class counsel would not prosecute this action vigorously for the class, and it appears that this separate action has already been dismissed. Second, since Rule 23's typicality and adequacy requirements for class representatives have been satisfied, there is no evidence suggesting that class counsel failed to make a reasonable pre-filing investigation with respect to the suitability of class representatives. Finally, use of the New York Attorney General's complaint, by itself, does not suggest inadequacy. EA appears to be arguing that class counsel failed to conduct a reasonable inquiry into the claims. However, class counsel has represented to the court that it has "performed a thorough investigation prior to filing this case." Reply Class Cert. at 15. The court therefore finds no reason to believe that class counsel would not prosecute the action vigorously on behalf of the class. Indeed, class counsel has vigorously prosecuted this action up to this point. Accordingly, the court finds that the adequacy requirement has been satisfied, both as to the class representatives and as to class counsel.

**C.     Rule 23(b)(3)**

In addition to fulfilling the four prerequisites of Rule 23(a), a class action must also meet the

ORDER DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE—No. C-08-00868 RMW
CCL                                                                              6

1  disjunctive requirements of Rule 23(b) by satisfying the criteria set forth in at least one of the three types
2  of class actions. Fed. R. Civ. P. 23. Plaintiff alleges that this class action may be maintained as a Rule
3  23(b)(3) class. Rule 23(b)(3) requires that "questions of law or fact common to class members
4  predominate over any questions affecting only individual members, and that a class action is superior
5  to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.
6  23(b)(3).

      The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The mere existence of common issues of fact or law is insufficient, as such commonality is already required by Rule 23(a)(2). Predominance is met where common questions, which can be resolved for all members on a class-wide basis, are such a significant aspect of the case that they present "a clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

### 1.    EA's Objections

According to EA, common questions do not predominate because individualized inquiry is necessary to determine: (1) whether individual appraisals were inflated, (2) why individual appraisals were referred to EA, and (3) whether RESPA's safe harbor applies. The court addresses each of these arguments below.

First, EA contends that, in order to establish liability as to each class member, plaintiffs must show that each individual appraisal was inflated and therefore a "thing of value." In response, plaintiffs argue that they need only demonstrate the existence of an agreement to exchange appraisal business for inflated appraisals without any proof that the agreement was actually carried out. The court disagrees with both parties. Plaintiffs must prove that WMB actually received a "thing of value" in exchange for referrals. 12 U.S.C. § 2607(a). As alleged, the "thing of value" is inflated appraisals. However, plaintiffs need not establish inflated appraisal values for each individual appraisal in order to establish liability. If plaintiffs are able to show that WMB received appraisal values that were inflated in the

aggregate in exchange for referring EA appraisal business, this would be sufficient to show that a "thing of value" was received for the referrals.[1]

Second, EA argues that individual inquiry into the circumstances around each referral is necessary since plaintiffs must show that each individual appraisal was referred to EA in exchange for a thing of value in order to establish standing for each class member. As discussed above, plaintiffs need not prove that each individual appraisal was referred in exchange for inflating its appraisal value. To have standing to bring a RESPA claim, each class member must have been charged for a "settlement service involved in the [RESPA] violation." 12 U.S.C. § 2607(d)(2). In this case, the alleged RESPA violation is the exchange of appraisal referrals for inflated appraisals. Hence, an appraisal is "involved" in the RESPA violation if either: (1) it was part of a volume of appraisal business that was referred in exchange for inflated appraisals, or (2) it was inflated to provide a "thing of value" in exchange for a volume of appraisal business. Establishing standing by the latter method would likely require a great deal of individualized proof. However, plaintiffs may be able to establish standing by the former method using common evidence.

Plaintiffs allege that all referrals that EA received from WMB were part of a single agreement between WMB and EA, an agreement that violated RESPA's anti-kickback provision. SAC ¶ 90. If this allegation is true, then each class member's appraisal would be involved in the RESPA violation, as a part of the volume of business referred to EA by WMB in exchange for inflated appraisals. Whether such an agreement between WMB and EA existed, the scope of any such agreement, and whether there were changes in the relationship between WMB and EA over time present common questions of fact.

Third, EA contends that individual inquiry is necessary to determine whether there was an unlawful kickback or a proper payment for services that would fall within RESPA's safe harbor. RESPA's safe harbor provision precludes liability for "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2). However, as this court has already ruled in previous orders, the exchange of appraisal business for inflated appraisals does not constitute payment or compensation for

---

[1] However, as discussed below, plaintiffs have failed to demonstrate that they can prove that WMB received appraisal values that were inflated in the aggregate using class-wide evidence.

ORDER DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE—No. C-08-00868 RMW
CCL                                                                 8

services actually performed. *Spears v. Washington Mutual, Inc.*, No. C-08-00868-RMW, 2009 U.S. Dist. LEXIS 85251, at *11-12 (N.D. Cal. Aug. 30, 2009); *Spears v. Washington Mutual, Inc.*, No. C-08-00868-RMW, 2009 U.S. Dist. LEXIS 21646, at *11 (N.D. Cal. Mar. 9, 2009). Thus, if plaintiffs are able to show that WMB referred appraisal business to EA in exchange for inflated appraisals, the safe harbor does not apply.

### 2. Proof of Inflated Appraisals

Plaintiffs allege that EA violated Section 8(a) of RESPA by conspiring with WMB to inflate appraisals in exchange for appraisal business. Section 8(a) of RESPA provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). For plaintiffs to prevail, they must prove that, pursuant to an agreement, EA gave and WMB accepted inflated appraisals in exchange for referring appraisal business to EA. Thus, the central issue in this case is whether this alleged agreement existed and was carried out. Accordingly, common questions of law and fact predominate if and only if plaintiffs are able establish the existence and carrying out of the alleged agreement with common proof.

As discussed above, plaintiffs are not required to prove that each or any particular member of the class received inflated appraisals. However, there must be some showing that WMB obtain a "thing of value" as a result of the agreement with EA. The fact that EA made some changes in the way that the appraisal function was accomplished (such as selecting appraisers from a Proven Appraiser List) does not establish that WMB received a "thing of value," without some evidence that these changes actually resulted in inflated appraisals. Plaintiffs have not shown how they can establish that WMB received inflated appraisals using common proof. For this reason, they have failed to carry their burden of establishing predominance.[2] Because neither party addressed the question of whether the inflation of appraisal values in the aggregate can be established by common proof, denial of the motion for class certification is without prejudice.

---

[2] Because plaintiffs have failed carry their burden of establishing predominance, the court need not reach the issue of superiority at this time.

ORDER DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE—No. C-08-00868 RMW
CCL                                                               9

### III. ORDER

For the foregoing reasons, the court denies the motion for class certification without prejudice.

DATED: 7/2/10

RONALD M. WHYTE
United States District Judge