Joseph N. Kravec, Jr. (*pro hac vice*)
**STEMBER FEINSTEIN DOYLE
    PAYNE & KRAVEC, LLC**
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
E-mail:  jkravec@stemberfeinstein.com

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET
    LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

*CO-LEAD CLASS COUNSEL*

### IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>                         Plaintiffs,<br><br>        vs.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company,<br><br>                         Defendant. | Case No. 5-08-CV-00868 (RMW)<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: March 29, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 6, 4th Floor<br>280 South 1st Street |

# TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................................1

II.  PROCEDURAL HISTORY................................................................................4

III. ARGUMENT ......................................................................................................9

   A.  Standard ......................................................................................................9

   B.  EA's Motion May Be Denied Based On EA's Litigation History...........10

   C.  EA's Motion Should Be Denied Outright As Plaintiffs Sufficiently Plead Their WaMu
      Loans Were For A Personal Purpose ......................................................10

   D.  The Court's Class Certification Ruling Adopted Plaintiffs' Consumer Allegations,
      and Certified A Nationwide Class Of Consumers Whose Loans Were For A Personal
      Purpose......................................................................................................12

   E.  The Court Should Deny EA's Motion as to Plaintiffs' Tolling Allegations...........................15

     1.  The SAC sufficiently alleges tolling based on fraudulent concealment...........................16

     2.  The SAC sufficiently alleges tolling based on equitable tolling........................................18

     3.  The SAC sufficiently alleges tolling based on the delayed discovery rule.......................20

   F.  The Current Record Evidence Shows Plaintiffs Would Prevail On Summary Judgment As
      To The Primary Purpose of Plaintiffs' Loans, And As To Tolling, Or Create A Genuine
      Dispute Of Material Fact ..........................................................................21

IV. CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir.1999) ...................................... 17

*Akhavein v. Argent Mortg. Co.*, No. 5:09-cv-00634, 2009 WL 2157522
    (N.D. Cal. July 18, 2009).................................................................................... 15

*Anderson v. Holder*, 673 F.3d 1089 (9th Cir. 2012) ........................................................... 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 9, 11, 12, 18

*Atuahene v. Sears Mortg. Corp.*, 2000 WL 134326 (E.D.Pa.,2000) .................................. 15

*Barlee v. First Horizon Nat. Corp.*, No. 12-3045, 2013 WL 706091
    (E.D.Pa., Feb. 27, 2013)............................................................................... 19, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 9, 11, 12, 18

*Bloom v. Martin*, 865 F. Supp. 1377 (N.D. Cal. 1994)....................................................... 15

*Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402 (9th Cir.1995) ....................................... 20

*Daniels v. SCME Mortg. Bankers, Inc.*, 680 F.Supp.2d 1126 (C.D.Cal. 2012) ................. 14

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir.) ..................................................... 9

*Edwards v. First Am. Corp.*, 385 Fed. Appx. 629 (9th Cir. 2010) ................................. 2, 14

*Edwards v. First Am. Corp.*, Case No. 07-cv-3796, Dkt. No. 378
    (C.D.Cal. November 30, 2012)..................................................................... 11, 14

*Edwards v. First Am. Title Ins.*, No. 08-56538 (9th Cir. Apr. 9, 2009)........................ 14, 23

*Gabelli v. S.E.C.*, --- S.Ct. ---, 2013 WL 691002 (February 27, 2013) ........................ 15, 21

*Galindo v. Financo Fin., Inc.*, No. C 07-03991 WHA, 2008 WL 4452344
    (N.D.Cal. Oct. 3, 2008)..................................................................................... 14

*Gerhart v. Beazer Homes Holdings Corp.*, 2009 WL 799256 (E.D.Cal. 2009) ................. 16

*Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C.Cir. 1986)................................... 15

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055 (9th Cir.2012) ................................. 17

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946)............................................................... 15, 21

*Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) ........................................ 19

*Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401 (9th Cir. 2011)........................ 13

*Kay v. Wells Fargo & Co. N.A.*, No. C 07-01351 WHA, 2007 WL 2141292
(N.D. Cal. July 24, 2007) ........................................................................... 15

*Kay v. Wells Fargo & Co.,* 247 F.R.D. 572 (N.D. Cal. 2007) ...................................... 16, 19

*Marzan v. Bank of America*, 779 F.Supp.2d 1140 (D.Haw.2011) ................................... 17

*McCarn v. HSBC USA, Inc*., 2012 WL 5499433 (E.D.Cal. 2012) .............................. 17, 20

*McKelvey v. Boeing N. Am., Inc.*, 74 Cal.App.4th 151 (Cal.Ct.App. 1999) ...................... 20

*Powers v. Fifth Third Mortg. Co*., No. 09-cv-2059, 2011 WL 3811129 (N.D.Ohio 2011) .............. 14

*Rambus Inc. v. Samsung Electronics Co., Ltd*., 2007 WL 39374 (N.D.Cal. 2007) ........................ 20

*Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000) ........................................ *passim*

*Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777 (9th Cir.2012) .............................. 11

*Schulken v. Washington Mut. Bank*, 2009 WL 4173525 (N.D.Cal. 2009) ......................... 14

*Socop-Gonzalez v. I.N.S*., 272 F.3d 1176 (9th Cir. 2001) ................................... 15, 16, 19

*Strick v. Pitts*, 2011 WL 4074756 (W.D.Wash., Sept. 12, 2011) ...................................... 9

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir.1995) ............................... 19

*Tong v. Capital Management Services Group, Inc.,* 520 F.Supp.2d 1145
(N.D.Cal. 2007) .............................................................................. 9, 12, 18

*Tumlinson Group, Inc. v. Johannessen*, 2010 WL 4366284 (E.D.Cal. Oct. 27, 2010) ..................... 22

*United States v. Cotton*, 535 U.S. 625 (2002) ................................................... 16

*Wyo. Cmty. Dev. Auth. v. Durning*, 484 U.S. 944 (1987) .......................................... 9

*Zaremski v. Keystone Title Associates, Inc.,* 1989 WL 100656 (4th Cir. 1989) ...................... 15

**Statutes**

12 U.S.C. § 2602 ............................................................................ 11

12 U.S.C. § 2607(a) ...................................................................... 1, 4, 7

12 U.S.C. § 2607(c)(2) ....................................................................... 6

12 U.S.C. § 2606(a) ......................................................................... 10

15 U.S.C. § 1602(h) ......................................................................... 13

**Rules**

Fed.R.Civ.P. 12(b)(6).................................................................................................... 1

Fed.R.Civ.P. 12(c) ..................................................................................................... 1, 9

Fed.R.Civ.P. 12(d) .............................................................................................. 9, 10, 22

Fed.R.Civ.P. 23(f) ........................................................................................................ 7

**Regulations**

12 C.F.R. § 226.3 ....................................................................................................... 11

12 C.F.R. § 226.3(a)(1) ............................................................................................... 11

12 C.F.R. § 226.3(b)(1)(i)(A) ............................................................................... 11, 23

I.        INTRODUCTION

In filing a motion for judgment on the pleadings (Dkt. No. 286, hereafter "EA's Motion") more than five years after this case commenced, Defendant First American eAppraiseIT ("EA") seeks to revisit yet again what the Court has already addressed in **five** prior rulings:   whether Plaintiffs have stated a claim under the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2607(a), and whether that claim may be addressed on a class-wide basis.  Twice in 2009, EA filed motions to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that Plaintiffs failed to state a RESPA claim.  The Court denied both motions, the second time as to the allegations in Plaintiffs' Second Amended Complaint ("SAC").  Months after the Court denied the second motion, EA sought to certify the question of whether Plaintiffs had stated a RESPA claim to the Ninth Circuit.  This Court denied EA's certification motion both as untimely and, once again, on the merits.  In 2012, the Court certified a nationwide class as to Plaintiffs' RESPA claim, rejecting EA's various RESPA arguments and limiting the class to consumers.  To no avail, EA then asked the Ninth Circuit to reverse this Court's RESPA analysis in seeking leave for interlocutory appeal, which was denied.

EA now challenges Plaintiffs' RESPA claim for the **sixth** time, seeking dismissal of the RESPA claim alleged in the SAC under the auspices of Fed.R.Civ.P. 12(c).  EA makes two pleadings points that fail, but which it could have raised four years ago when it challenged Plaintiffs' allegations multiple times.  First, ignoring the vast majority of factual allegations regarding the personal purpose of Plaintiffs' and Class Members' loans, and the fact that Plaintiffs brought their claims only on behalf of "consumers," and specifically pled the loans were for personal, family or household purposes, EA argues that the SAC does not sufficiently allege that class members obtained the subject loans for their own personal use, rather than primarily for a business, commercial or agricultural purpose.  Second, in selectively cherry-picking four summary paragraphs while ignoring all the other factual allegations in the SAC, EA erroneously argues that the RESPA claims asserted by Plaintiff Scholl and those class members who received appraisals from EA before

February 8, 2007 are time-barred because the SAC inadequately pleads concealment.[1]

EA offers no explanation as to why it waited some **five** years until now to raise these pleading matters, and the Court could deny EA's Motion on the sole ground that there is no conceivable justification for EA's timing, which verges on abuse of process. However, EA's Motion is not merely vexatious. More fundamentally, EA complains about the absence of allegations as to proper loan purpose without acknowledging that the SAC and the documents referenced therein are replete with facts sufficient to show that proper purpose and tolling are adequately pled.

Indeed, based on the standards of Rule 12(c), Plaintiffs entire complaint and referenced documents must be considered and they clearly show adequately pled facts supporting a plausible claim that Plaintiffs' and Class Members' loans were for a "personal" purpose, and not primarily for business, commercial or agricultural purposes. Notably, and as EA is well aware, the SAC and the factual record establishes that Plaintiff Spears' loan was a personal loan and not primarily for business, commercial or agricultural purposes and, as for Plaintiff Scholl, the SAC and the record reflects factual disputes on this point. Moreover, Plaintiffs plead – and this Court certified - a nationwide Class of "consumers" which by definition excludes loans primarily for business purposes. Consistent with this Court certification decision, the Ninth Circuit in *Edwards v. First Am. Corp.* ordered that the district court certify a similar class of borrowers despite the defendant's argument that RESPA's loan purpose precluded such certification. 385 Fed. Appx. 629, 631 (9th Cir.2010). On remand, the district court in *Edwards* found that CoreLogic – i.e., Defendant EA here – was the party in possession of documents sufficient to show the certified class members' loan purposes. *Edwards v. First Am. Corp.*, Case No. 07-cv-3796, Dkt. No. 378 at p. 10 (C.D.Cal. November 30, 2012).

Plaintiffs likewise have adequately pled facts – ignored by EA in its briefing - supporting a plausible claim that fraudulent concealment (as well as equitable tolling and the delayed discovery rule) apply to toll the commencement of one-year statute of limitations for their RESPA claims until

---

[1] EA concedes Plaintiff Spears and other Class Members who received loans with WaMu on or after February 8, 2007 have timely filed RESPA claims. EA Brief at 7.

three months before the filing of this lawsuit.  Indeed, EA is well aware that Plaintiffs and Class Members had no reason to suspect that EA conspired with WaMu to inflate appraisals until after learning of the New York Attorney General's investigation and complaint against EA revealed publically for the first time on November 1, 2007, just three months before the filing of this lawsuit. EA knows these facts based on the well plead allegations in the SAC that it largely ignores in its briefing, and because it deposed Plaintiffs in 2009 on each of these very issues that it now seeks to have dismissed on the pleadings.  *See* Dkt. Nos. 205-01 and 205-02.  *See* also pp. 18-21, *infra*.

Given the state of the pleadings and the factual record on these matters, it would be a waste of everyone's time to address EA's RESPA and concealment arguments in a vacuum through the lens of the sufficiency of Plaintiffs' allegations.  Rather, the Court should dismiss EA's Motion outright and, should EA think it have a good basis, it can move for summary judgment on these issues at the close of discovery.

The Court may wish to instruct EA to limit any such summary judgment motion on these issues to the named Plaintiffs, and to avoid evidence particular to other members of the certified Class.  As part of its class certification ruling, the Court clearly delineated what Plaintiffs must show to prevail on a class-wide basis.  In its Rule 12(c) motion, EA now makes new arguments as to what each class member supposedly must prove to prevail under RESPA or to achieve equitable tolling. EA could and should have raised these points during class certification briefing, and should not be heard to raise new class issues in the context of a pleadings challenge or summary judgment motion.

Finally, should the Court conclude that the underlying issues in EA's motion merit consideration now, before discovery has been completed, Plaintiffs would make two points.  First, while it seems a pointless exercise given how far beyond the pleading stage this case has now progressed and the substantial allegations already in the SAC, Plaintiffs can amend the SAC to conform to the evidence, should the Court so direct.  This should eliminate any pleading concerns. Second, given the on-point record evidence, Rule 12(d) mandates that EA's Rule 12(c) motion must be converted to a motion for summary judgment if the Court is inclined to address the merits and the Court should allow the parties to complete discovery so that all relevant evidence may be considered.  However, the factual record to date strongly suggests that these issues are triable issues

1   of fact and will not be decided even on summary judgment. While Plaintiffs proffer some limited

2   evidence herewith in responding to EA's Rule 12(c) motion, should the Court order conversion, they

3   would request leave to proffer all evidence relevant under summary judgment standards.

4   **II.      PROCEDURAL HISTORY**

5          Plaintiffs commenced this class action over five years ago, on February 8, 2008, alleging that

6   EA participated in a hidden scheme to provide home-loan mortgage borrowers with inflated

7   appraisals of the property they sought to purchase. Plaintiffs brought the action on behalf of all

8   consumers who received home loans from WaMu on or after June 1, 2006 with appraisals obtained

9   through EA or another appraiser.

10         After EA moved to dismiss the First Amended Complaint, the Court on March 9, 2009

11  granted in part and denied in part that motion ("First RESPA Dismissal Ruling") (Dkt. No. 147).

12  Notably here, the Court denied EA's motion to dismiss Plaintiffs' RESPA claim under 12 U.S.C. §

13  2607(a). Section 2607(a), also referred to as Section 8(a) of RESPA, generally prohibits payments

14  for referrals, or "kickbacks." The provision states that "[n]o person shall give and no person shall

15  accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or

16  otherwise, that business incident to or a part of a real estate settlement service involving a federally

17  related mortgage loan shall be referred to any person." EA had argued that the alleged sham-

18  appraisals are not a "thing of value" under the statute. The Court rejected this argument, holding

19  that the inflated appraisals constituted things of value because they allowed WaMu to sell the loans

20  to financial institutions in higher volumes and at higher prices. First RESPA Dismissal Ruling at 5.

21  In sum, the Court held that Plaintiffs had adequately pled a claim under section 8(a) of RESPA.

22         In its First RESPA Dismissal Ruling, the Court gave Plaintiffs leave to file a Second

23  Amended Complaint, but limited any amendment to a different claim, for breach of contract, and to

24  the standing of another defendant, now dismissed. *Id.* at 1. The Court did not grant Plaintiffs leave

25  to amend their RESPA claim as to EA. *Id.* ("Leave to amend is granted to state a claim against LSI

26  and to assert a claim for breach of contract").

27         In accordance with the Court's First RESPA Dismissal Ruling, Plaintiffs filed their Second

28  Amended Complaint – the SAC – on March 30, 2009. Dkt. #149. As alleged therein, Plaintiffs

proceed on behalf of a class of **consumers**. *Id.* ¶ 1 ("This is a class action against Defendants seeking relief on behalf of Plaintiffs and a class of all **consumers** in California and throughout the United States…") (emphasis added). The SAC's allegations regarding consumers also specifically reference "**their** home." *See, e.g., id.* at ¶ 2 ("The vast majority of home purchasers in the United States finance their home purchase through a third party lender"); ¶ 21 (alleging that consumers trust their lenders "to provide an independent, objective and unbiased appraisal of **their** home's value…") (emphasis added).

With regard to concealment, the SAC alleged that EA and other entities never disclosed to any class member their scheme to conduct and charge for WaMu home loan appraisals that were neither independent, objective, impartial, unbiased, credible or in compliance with  applicable standards and law. *Id.* ¶ 73. Further, the SAC alleged, Defendants gave class members no reason to suspect that there were any problems with their appraisals, and that, indeed, the appraisal reports certified that they were done independently, objectively, impartially and in compliance with applicable standards and law. *Id.* ¶ 74. Further, the SAC alleged, "without disclosure of Defendants' arrangement, Plaintiffs and the Class could not have reasonably suspected that there was anything wrong with the appraisal for which they were each charged." *Id.* ¶ 75. Finally, the SAC alleged that Defendants' scheme was not publically revealed until the Fall of 2007, when the New York Attorney General announced its investigation and complaint against EA for conspiring with WaMu to create false appraisals. *Id.* ¶ 76.

As explained, the SAC included no new RESPA allegations as to EA but simply restated the RESPA claim set forth in the First Amended Complaint. Nonetheless, on April 21, 2009, EA **again** moved to dismiss Plaintiffs' RESPA claim. Attempting to justify its rehash of arguments that the Court had rejected just weeks earlier, EA stated: "While Defendants presented these arguments in their prior motions to dismiss, EA submits there are a number of reasons why this Court should review the issues once again to avoid manifest injustice and the introduction of legally incorrect RESPA precedent." Dkt. No. 156 at 2. EA cited just two such reasons: a recently issued decision, which EA admitted it "did bring…to the Court's attention" but "did not have an opportunity to explain to this Court its clear and correct application of Section 8(a) and the safe harbor," and the

1   fact that WaMu did not participate in the oral argument on the original motion to dismiss, leaving

2   EA to make its own arguments.  *Id.* at 2 n.1.

3         By Order entered August 30, 2009 ("Second RESPA Dismissal Ruling") (Dkt. No. 169), the

4   Court reaffirmed what EA had characterized as its "legally incorrect RESPA precedent," and

5   rejected each of EA's RESPA theories, all of which could have been raised in EA's first motion to

6   dismiss and two of which EA **HAD** already raised.  As the Court subsequently explained:

7         After plaintiffs filed their SAC, EA again sought dismissal of the same RESPA
          claim, based on the following grounds: (1) plaintiffs lacked standing; (2) plaintiffs
8         failed to allege a "thing of value"; (3) the safe harbor provision in § 2607(c)(2)
          defeats plaintiffs' claim; and (4) plaintiffs failed to allege a "referral."  EA's
9         "thing of value" and safe harbor arguments had already been expressly considered
          and rejected in the court's March 9, 2009 order.

10

11  Dkt. No. 182 at 2.

12        Following the Court's March 9, 2009 and August 30, 2009 denials of EA's motions to

13  dismiss the RESPA claim, EA filed an answer on September 14, 2009 (Dkt. No. 171) and then, two

14  and one half months after the second dismissal ruling, EA on November 13, 2009 asked the Court to

15  certify this dismissal for appeal to the Ninth Circuit.  See Dkt. No. 178.  As the Court explained in its

16  January 8, 2010 ruling denying this motion ("Order Denying RESPA Certification") (Dkt. No. 182),

17  EA's motion to certify failed on two independent grounds.  The Court first focused on EA's delay:

18        EA has provided no reason for the two and a half month delay in seeking
          certification of the court's August 30, 2009 order denying EA's motion to dismiss
19        plaintiffs' RESPA claim under § 2607(a) (eight months from the court's March 9,
          2009 order).  **Given the lack of any justification for its delay in seeking**
20        **certification, the court denies the motion as untimely.**

21  *Id.* at 3 (emphasis added).  Second, the Court explained, even if EA had presented sufficient

22  justification for its delay, the Court would still have denied certification on the merits.  *Id.* at 3.

23  Once again, the Court was obliged reiterate its RESPA analysis, rejecting EA's arguments that

24  Plaintiffs failed to state a RESPA claim because (1) Plaintiffs lacked standing; (2) Plaintiffs failed to

25  allege a "thing of value"; (3) the safe harbor provision in § 2607(c)(2) defeats Plaintiffs' claim; and

26  (4) Plaintiffs failed to allege a "referral."  The Court observed that EA's second and third arguments

27  "had already been expressly considered and rejected in the court's March 9, 2009 order."  *Id.* at 2.

28  Addressing arguments (1) and (4) for the second time, and arguments (2) and (3) for the third time,

1   the Court concluded that there was no substantial ground for difference of opinion as to any of EA's

2   RESPA theories.  *Id*. at 4-6.

3         EA had two opportunities to brief RESPA issues pertinent to class certification.  See Dkt.

4   Nos. 201, 231.  In opposing Plaintiffs' Renewed Motion for Class Certification, EA once again

5   leveled various RESPA arguments, including that Plaintiffs' RESPA claim could not be certified

6   because it was dependent on each class member having paid for an EA appraisal and having received

7   a funded mortgage loan.  Dkt. No. 231 at 24-25.  Rejecting EA's RESPA arguments, the Court on

8   April 25, 2012 entered an order certifying a Nationwide Class ("Class Certification Ruling") (Dkt.

9   No. 249) as to Plaintiffs' RESPA claim.

10        In its Class Certification Ruling, the Court articulated precisely what Plaintiffs must establish

11  in order to prevail on their RESPA theory:

12
13      Section 8(a) of RESPA provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate

14  settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).  Plaintiffs' theory of liability is that, pursuant to

15  an agreement, EA gave and WMB accepted inflated appraisals in exchange for WMB's referring appraisal business to EA. This court previously held that an

16  individual has standing to bring a RESPA claim if his appraisal was part of a volume of appraisal business that was referred to EA in exchange for inflated

17  appraisals. Dkt. No. 209 at 8. Thus, plaintiffs need not prove that each or any particular member of the class received an inflated appraisal. *Id*. at 7-9. However,

18  plaintiffs must still make some showing that WMB obtained a "thing of value" as a result of its agreement with EA. *Id*. at 9. The court found the mere fact that EA

19  made changes in the way the appraisal function was accomplished (such as selecting appraisers from a Proven Appraiser List) did not establish that WMB

20  received a "thing of value" without evidence that those changes actually resulted in inflated appraisals. *Id*. Thus, plaintiffs must establish that WMB received appraisal values that were inflated in the aggregate.

21

22  *Id*. at 3-4.

23        Significantly, the Court certified a class of **consumers**, not home purchasers generally.  *Id*. at

24  12 (certifying a class of "All consumers in California and throughout the United States who, on or

25  after June 1, 2006, received home loans from Washington Mutual Bank, FA in connection with

26  appraisals that were obtained through eAppraiseIT").

27        True to form, EA did not accept the Court's RESPA analysis in its Class Certification Ruling

28  but rather on May 9, 2012 filed a Petition for Permission to Appeal Pursuant to Fed.R.Civ.P. 23(f)

1   with the Ninth Circuit, at Case No. 12-90109.  Therein, EA complained about the suitability of

2   RESPA claims for class treatment, also noting this Court's purported "flawed legal premise" with

3   respect to RESPA standing.  *Id.* at 15 n.1.  On July 12, 2012, the Ninth Circuit summarily denied

4   EA's Petition.

5          This case has since proceeded, with the Court approving a Proposed Plan and Form of Class

6   Notice (Dkt. No. 253), and 216,352 notices having been mailed to class members.  Dkt. No. 265.  On

7   November 2, 2012, forty-five months after the Federal Deposit Insurance Corporation ("FDIC"),

8   acting as receiver for WaMu, was voluntarily dismissed from this action, and thirty-four months

9   after this Court's January 15, 2010 deadline to amend the pleadings, EA through its new counsel

10  filed a motion seeking to file a Third-Party Complaint against the FDIC.  Dkt. No. 266.  Plaintiffs

11  opposed this motion (Dkt. No. 268), which remains pending.

12         On February 15, 2013, Plaintiffs filed a Motion for Partial Judgment on the Pleadings as to

13  EA's Affirmative Defenses, premised on the point that these defenses consist of one-sentence legal

14  conclusions which were pled without any supporting facts.  Dkt. No. 283.  Plaintiffs have never

15  submitted any prior challenge to the sufficiency of EA's affirmative defenses.  Nor has the Court

16  addressed this matter.

17         On February 22, 2013, EA filed its Rule 12(c) Motion in retaliation to Plaintiffs' Motion for

18  Partial Judgment on the Pleadings.  EA argues that Plaintiffs' RESPA claims fail because Plaintiffs

19  have not sufficiently alleged that the underlying loans were not used primarily for business or other

20  non-personal uses.  EA's Motion at 2.   EA also argues that Plaintiffs have not sufficiently alleged

21  that EA concealed its wrongdoing, tolling the statute of limitations.  *Id.*  Finally, EA argues that each

22  class member must prove that he or she obtained a loan primarily for personal and non-business

23  purposes, and that the Court must engage in an "individualized factual inquiry for each class member

24  who needs tolling to survive the statute of limitations."  *Id.* at 2 and 11 n.8.  However, unlike EA's

25  one-line, conclusory affirmative defenses which Plaintiffs have no way of knowing the factual basis

26  supporting them, EA has an ample record of the facts pertinent to  Plaintiffs' loans, loan purposes,

27  fraudulent concealment, and equitable tolling.

28

# III.    ARGUMENT

## A.    Standard

A party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial.  Fed.R.Civ.P. 12(c).  "Under a Rule 12(c) motion for judgment on the pleadings, the court must assume the truthfulness of the material allegations in the complaint. Moreover, all inferences reasonably drawn from these facts must be construed in favor of the responding party."  *Tong v. Capital Management Services Group, Inc.,* 520 F.Supp.2d 1145, 1147 (N.D.Cal. 2007)(Whyte, J.)  To survive a motion to dismiss for failure to state a claim, the facts pled need only give rise to "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  However, this principle is inapplicable to legal conclusions; 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not taken as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  When the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12 motion.  *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir.), cert. denied sub. nom. *Wyo. Cmty. Dev. Auth. v. Durning*, 484 U.S. 944 (1987).

If EA's Motion is not denied outright, Rule 12(d) allows for conversion of a Rule 12(c) motion when "matters outside the pleadings are presented to and not excluded by the court." Fed.R.Civ.P. 12(d).   However, "[i]f…matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed.R.Civ.P. 12(c).  If a deficiency raised by motion for judgment on the pleadings could be cured, the court should grant leave to amend freely.  *See, e.g., Strick v. Pitts*, 2011 WL 4074756 (W.D.Wash. Sept. 12, 2011) (denying motion for judgment on the pleadings and granting motion for leave to amend).

EA's Rule 12(c) Motion may be denied on multiple independent grounds.   First, the procedural history speaks for itself:  EA provides no justification for seeking a sixth bite at the proverbial apple, and the Court may deny the motion outright on this ground.  Second, the SAC contains factual allegations which plausibly assert that Plaintiffs' and Class Members' WaMu loans

were for personal, not business purposes, and that the statute of limitation should be tolled in this action.  Third, this Court's class certification Order properly adopts Plaintiffs' allegations in the SAC in certifying a class of consumers, i.e., borrowers whose loans were not primarily for a business purpose.

While EA was surely on notice of Plaintiffs allegations that their WaMu loans were taken out for a "personal" purpose, and that equitable tolling applies, the factual record also described herein provides any facts that EA might feel are missing from the SAC and the Court should grant Plaintiffs leave to file a third amended complaint or, if the Court wishes to address these issues now it should do so as a motion for summary judgment under Rule 56 at the close of discovery, not in the piece-meal fashion EA has presented it.  *See* Rule 12(d).

## B.    EA's Motion May Be Denied Based On EA's Litigation History.

Plaintiffs will not repeat the story set forth above in Section II.   Suffice it to say, EA has had multiple opportunities to raise its pleading points as well as its class certification contentions.  EA's piecemeal litigation strategy creates unnecessary work for the Court and for Plaintiffs, and verges on vexatious.  The Court may summarily deny EA's Motion on this ground.[2]

## C.    EA's Motion Should Be Denied Outright As Plaintiffs Sufficiently Plead Their WaMu Loans Were For A Personal Purpose

RESPA does not apply to transactions "primarily for business, commercial, or agricultural purposes," 12 USC § 2606(a), which is the basis for EA's first Rule 12(c) argument.  EA's Motion at pp. 4-7.   As Plaintiffs allege in the SAC, Plaintiffs claims are limited to those on behalf of "consumers," i.e., those with loans not for business, commercial or agricultural purposes.  While Plaintiffs did not use the buzzwords "personal purpose" in referencing their WaMu loans, the

---

[2] EA attempts to put itself on the same footing as Plaintiffs, positing that "both parties agree that now is an appropriate time to revisit the viability of the parties' pleading" by citing Plaintiffs' Rule 12(c) motion with regard to EA's affirmative defenses.  *See* EA Rule 12(c) Motion at 3-4.  Plaintiffs decidedly do not agree with EA's equation of the two motions.  While EA has now challenged Plaintiffs' RESPA allegations in six separate sets of pleadings, Plaintiffs have never before raised the issue of EA's affirmative defenses, or addressed the sufficiency of any of EA's pleading.   Nor has the Court had any occasion to review EA's defenses, while EA's piecemeal litigation strategy has obliged the Court to address Plaintiffs' RESPA claim five times and counting.

1    allegations in the SAC, along with the documents attached and referenced therein, are sufficient to

2    survive EA's challenge to the sufficiency of the pleadings under Rule 12(c).

3           RESPA is a consumer protection law that covers federally related mortgage loans secured

4    with a mortgage placed on a one-to-four family residential property.  12 U.S.C. § 2602.  Regulation

5    X, RESPA's implementing regulation, exempts extensions of credit primarily for business or

6    commercial purposes "as defined by Regulation Z."  12 C.F.R. § 226.3(a)(1).  Regulation Z likewise

7    exempts "[a]n extension of credit primarily for a business, commercial or agricultural purpose." 12

8    C.F.R. § 226.3.  As U.S. District Judge Otero held in the *Edwards v. First Am. Corp.*, Case No. 07-

9    cv-3796, Dkt. No. 378 at p. 10 (C.D.Cal. November 30, 2012)(provided to the Court at Kravec Dec.,

10   Exhibit 1), "RESPA's business purpose exemption is subject to an exception of its own for 'real

11   property … used or expected to be used as the principal dwelling of the consumer …'" (citing 12

12   C.F.R. § 226.3(b)(1)(i)(A)).

13          The SAC contains sufficient factual allegations regarding the purpose of Plaintiffs and Class

14   Members' loans through their allegations, the documents attached to the SAC and the documents

15   referenced therein which, when taken as true and construed in a light most favorable to Plaintiffs as

16   this Court must (*Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 783 (9th Cir.2012)),

17   plausibly states a claim on behalf of Plaintiffs and Class Members under RESPA, and EA has been

18   on notice of this for several years.    *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. 663.  The SAC

19   alleges claims on behalf of Plaintiffs and other consumers who took out WaMu loans on or after

20   June 1, 2006 in connection with appraisals obtained through EA.  SAC, ¶¶ 1, 119.  "Consumer" in

21   the context of Plaintiffs' RESPA claim is synonymous with persons with "personal" loans, i.e., those

22   not primarily for a business, commercial or agricultural purpose.   The Court understood this

23   limitation when it certified a nationwide Class of "consumers" for Plaintiffs' RESPA claim as

24   further detailed below. *See* Section III.D*, infra*.

25          The SAC also makes specific factual allegations that plausibly allege Plaintiffs and Class

26   Members' WaMu loans were for a "personal" purpose.  For example, Plaintiff Spears alleges he is

27   an individual who purchased the property at issue, and his HUD-1 settlement statement shows that

28   the home he purchased is his primary residence.  SAC, ¶¶ 11, 63 and Exhibit 3.  Both Plaintiffs'

1  appraisals show that their WaMu loans were for a "personal" purpose because they show they are for

2  the purchase and refinance of single family residential homes.  *See* SAC, Exhibits 2 and 4 (appraisals

3  for the purchase and refinance of single family residential homes); Exhibit 3 (HUD-1 showing

4  Plaintiffs' Spears' "Address of Borrower" to be the same address as the property being refinanced).

5      The SAC additionally alleges Plaintiffs and Class Members are consumers who took out

6  WaMu loans for "their homes."   SAC, ¶¶ 1 (allegations on behalf of Plaintiffs and a class of

7  consumers), 10 and 58 (Plaintiff Scholl individually purchased the property at issue), 11 and 63

8  (Plaintiff Spears is an individual who purchased the property at issue), 73 (appraisals to Plaintiffs

9  and Class Members were for "home loans"), 77 (class claims brought on behalf of Plaintiffs and

10  Class Members who received "a home loan with WaMu"), 80 ("Plaintiffs took out home mortgage

11  loans"), 119 (alleging Plaintiffs and Class Members are consumers under California's Consumer

12  Legal Remedies Act which, by definition, is limited to goods and services "for personal, family or

13  household purposes"), ¶ 125 (claims brought on behalf of Plaintiffs and Class Members for

14  appraisals on "their homes.")

15      Taking these factual allegations as true, and giving Plaintiffs the benefit of all reasonable

16  inferences as this Court must, the SAC plausibly alleges Plaintiffs and Class Members' WaMu loans

17  were not "primarily for business, commercial, or agricultural purposes."  *Iqbal*, 556 U.S. at 663;

18  *Twombly*, 550 U.S. at 570; *Tong*, 520 F.Supp.2d at 1147.

19      **D.    The Court's Class Certification Ruling Adopted Plaintiffs' Consumer
            Allegations, and Certified A Nationwide Class Of Consumers Whose Loans
20          Were For A Personal Purpose**

21      As described above, Plaintiffs' SAC sought to bring a claim under RESPA for "consumers"

22  who had WaMu loans on or after June 1, 2006 that had appraisals from EA.  SAC, ¶ 1.  The Court,

23  recognizing this limitation in the SAC, certified a Class of "All consumers in California and

24  throughout the United States who, on or after June 1, 2006, received home loans from Washington

25  Mutual Bank, FA in connection with appraisals that were obtained through eAppraiseIT."  *See* Dkt.

26  249, Order Granting Motion for Class Certification at 12.  The Class is therefore composed only of

27  consumers, i.e., those WaMu borrowers with loans not "primarily for business, commercial, or

28  agricultural purposes."

By definition, when a person acts as a "consumer," his or her transaction is not primarily for a business, commercial or agricultural purpose. The Ninth Circuit's discussion in *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011), underscores this obvious point:

> Congress enacted the Real Estate Settlement Procedures Act in 1974 to protect consumers from abusive practices in mortgage closings. See *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir.2002). Wells Fargo's position, accepted by the District Court, is that Johnson did not take out loans 55 and 56 as a consumer and, therefore, RESPA does not apply. We agree.

> "Consumer" also is defined as follows in the Truth in Lending Act ("TILA"):
> The adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(h). As EA states in its brief, TILA supplies the standard for assessing a non-business loan purpose under RESPA. EA's Motion at 5 n.2.

As shown, the class by definition cannot include anyone whose loan transaction was primarily for business, commercial or agricultural purposes. EA's demand that the SAC be amended to specify loan purpose accordingly seeks to waste everyone's time on an entirely academic exercise, and may be denied on this basis.

EA's Motion also should be denied as to the loan purpose argument to the extent that it improperly seeks to revisit the Court's RESPA analysis in connection with class certification. EA's Motion at 2; *see also id.* at 6 n.3 ("The burden to demonstrate a personal and non-business purpose for the loan transactions at issue in this case is not confined to the named Plaintiffs, but applies to the entire class.") EA has already argued at length as to what Plaintiffs must show under RESPA as to each class member, both in two sets of class certification pleadings before this Court and in the context of a Rule 23(f) petition to the Ninth Circuit. *See* discussion *supra*. The Court carefully considered and ultimately rejected EA's various RESPA arguments, setting forth precisely what Plaintiffs must prove in order to prevail on their class-wide RESPA claim. *See* Dkt. No. 249 at 3-4. This is not an issue to be resolved on a Rule 12(c) motion and, even if it was, this argument has been soundly rejected by the Ninth Circuit.

As EA is well aware, its former parent corporation, First American, argued to the Ninth Circuit that no class could be certified under RESPA given that RESPA only applies to residential

1    properties.  *See Edwards v. First Am. Title Ins.*, No. 08-56538 (9th Cir. Apr. 9, 2009), ECF No. 27

2    (Brief for the First American Corporation and First American Title Insurance Company) submitted

3    herewith at Kravec Dec., Exhibit 2.  The Ninth Circuit rejected this argument and ordered that the

4    case be certified.  *Edwards v. First Am. Corp.*, 385 Fed. Appx. 629, 631 (9th Cir.2010).  As the

5    District Court held when First American then moved to de-certify the class, the Ninth Circuit

6    rejected the argument that individualized proof concerning the identity of class members could

7    defeat class certification.  *Edwards*, Case No. 07-cv-3796, Dkt. No. 378 at p. 7 provided to the Court

8    at Kravec Dec., Exhibit 1.

9        Further, the *Edwards* Court went on to note that the information regarding the purpose of a

10   borrower's loan could be ascertained from CoreLogic's databases – that is, Defendant EA in this

11   very case.  *Id.* at pp. 9-10.  To the extent any further corroboration of a loan's purpose is necessary,

12   that information can be obtained from the loan information from J.P. Morgan Chase who acquired

13   the loans from WaMu when it went into receivership.  Kravec Dec., ¶ 4.  Thus, the Ninth Circuit and

14   other District Courts are in accord with this Court's Order certification of a Class of consumers.

15       The cases EA cites for the dismissal of Plaintiffs' claims based on its loan purpose argument

16   are inapposite to Plaintiffs' action here.  EA cites several cases for the proposition that if you fail to

17   make **any** allegation about a loan's purpose, dismissal is appropriate under Rule 12(b)(6).  EA's

18   Motion, p. 4 (*citing Galindo v. Financo Fin., Inc.*, No. C 07-03991 WHA, 2008 WL 4452344

19   (N.D.Cal. Oct. 3, 2008) and *Daniels v. SCME Mortg. Bankers, Inc.*, 680 F.Supp.2d 1126 (C.D.Cal.

20   2012).  As illustrated above, Plaintiffs make allegations on behalf of themselves and Class Members

21   that that loans at issue were for personal purposes, and not primarily for business, commercial or

22   agricultural purposes.

23       EA cites *Schulken v. Washington Mut. Bank*  2009 WL 4173525 (N.D.Cal. 2009) and *Powers

24   v. Fifth Third Mortg. Co.*, No. 09-cv-2059, 2011 WL 3811129 (N.D.Ohio 2011) for the proposition

25   that alleging a loan is for a residence or home is insufficient to allege a RESPA claim.  EA's Motion

26   at pp. 5-6.  *Schulken* does not support dismissing Plaintiffs claims because the Court granted the

27   plaintiff leave to clarify if the home equity line of credit loan was for a personal or business purpose

28   (*Schulken*, 2009 WL 4173525 at * 5), and *Powers* was a ruling on class certification under Rule 23,

1   not to dismiss under Rule 12.  *Powers*, 2011 WL 3811129.  As discussed *supra*, the Ninth Circuit

2   and District Court in *Edwards* found that loan purpose is not a bar to class certification in this Circuit

3   as it can be determined by documents in EA's possession.[3]

4       **E.**    **The Court Should Deny EA's Motion as to Plaintiffs' Tolling Allegations**

5       EA relies on *Hardin v. City Title & Escrow Co*., 797 F.2d 1037, 1039 (D.C.Cir. 1986) and

6   *Zaremski v. Keystone Title Associates, Inc.,* 1989 WL 100656, at *2 (4th Cir. 1989) for the

7   proposition that the 1 year statute of limitations in RESPA is a jurisdictional requirement not subject

8   to tolling.  EA's Motion at 7.  EA is plainly wrong.  It is axiomatic that equitable tolling applies to

9   RESPA claims because it "is read into every federal statute of limitations."  *Holmberg v. Armbrecht*,

10  327 U.S. 392, 397 (1946).  This proposition was affirmed by the Supreme Court as recently as

11  February 27, 2013.  *Gabelli v. S.E.C*., --- S.Ct. ---, 2013 WL 691002, *1 (February 27, 2013)("where

12  a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of

13  diligence or care on his part, the bar of the statute does not begin to run until the fraud is

14  discovered")(quoting *Holmberg,* 327 U.S. 392, 397).

15      Indeed, EA cites a plethora of cases from this very district that has found tolling applicable in

16  RESPA cases.  EA's Motion at. 9 n. 6 (citing *Akhavein v. Argent Mortg. Co*., No. 5:09-cv-00634,

17  2009 WL 2157522, at *3 (N.D. Cal. July 18, 2009) (Whyte, J.); *Bloom v. Martin*, 865 F. Supp. 1377,

18  1387 (N.D. Cal. 1994) *aff'd*, 77 F.3d 318 (9th Cir. 1996); *Kay v. Wells Fargo & Co. N.A.*, No. C 07-

19  01351 WHA, 2007 WL 2141292, at *2 (N.D. Cal. July 24, 2007)).  Moreover, the Ninth Circuit has

20  held that it is the discretion of a district court to apply tolling to RESPA claims.  *Santa Maria v.*

21  *Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)(overruled on other grounds by *Socop-Gonzalez v.*

22  *I.N.S.*, 272 F.3d 1176 (9th Cir. 2001)).  As district courts have discretion to consider tolling for

23  RESPA claims, the statute of limitations cannot be a jurisdictional requirement.  *United States v.*

24

25  _____

26  [3] *Atuahene v. Sears Mortg. Corp*., 2000 WL 134326, *5 (E.D.Pa.,2000), also cited by  EA, is clearly
    inapposite as the *pro se* plaintiff in that action argued the property at issue was a rental property he

27  did not live in that he owned as a business and never alleged the loan at issue was for a personal
    purpose.  Here, the SAC does not allege Plaintiffs or any Class Members' loan was primarily for a

28  non-personal purpose.

1  *Cotton*, 535 U.S. 625, 630 (2002) (jurisdiction properly refers to a court's power to hear a case, a

2  matter that "can never be forfeited or waived").

3       In addition to mischaracterizing the applicable law, EA disingenuously ignores the vast

4  majority of allegations in the SAC, focusing instead on four paragraphs that **summarize** Plaintiffs'

5  concealment claims.  EA's Motion at 8.  However, Plaintiffs' SAC alleges the following facts

6  sufficient to toll the one-year statute of limitations for Plaintiffs' RESPA claim for themselves and

7  Class Members until November 1, 2007, just three months before the filing of this lawsuit, when the

8  New York Attorney General first publically announced its investigation and lawsuit against EA.

9  Indeed, Plaintiffs' allegations support three distinct theories of tolling:  Fraudulent concealment,

10  equitable tolling, and the delayed discovery rule.[4]

11       **1.  The SAC sufficiently alleges tolling based on fraudulent concealment**

12       RESPA's one-year statute of limitations can be tolled based on the theory of fraudulent

13  concealment.  "Equitable estoppel, also known as fraudulent concealment in the limitations setting,

14  'necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which

15  the plaintiff's claim is filed, to prevent the plaintiff suing in time.'" *Kay v. Wells Fargo & Co.,* 247

16  F.R.D. 572, 577 (N.D. Cal. 2007) (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir.

17  2000) (overruled on other grounds *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194 (9th Cir. 2001)

18  (en banc)).   Such conduct may be shown through affirmative representations or active concealment

19  on the part of a defendant.  *Id. See also Gerhart v. Beazer Homes Holdings Cor*p., 2009 WL 799256,

20  at *7 (E.D.Cal. 2009).  To establish fraudulent concealment, a plaintiff " 'must plead facts showing

21  that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive

22  knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts…

23  [a] fraudulent concealment defense requires a showing both that the defendant used fraudulent

24  means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact,

25

26  [4] EA concedes Plaintiff Spears and Class Members who received loans with WaMu on or after
27  February 8, 2007 have timely filed RESPA claims. EA Brief at 7.  EA's attempt to dismiss
    Plaintiffs' tolling claims is an attempt to pick off Plaintiff Scholl and other Class Members who
28  received loans with WaMu between June 1, 2006 and February 7, 2007.

ignorant of the existence of his cause of action. *McCarn v. HSBC USA, Inc*., 2012 WL 5499433 (E.D.Cal. 2012) (*quoting Hexcel Corp. v. Ineos Polymers, Inc*., 681 F.3d 1055, 1060 (9th Cir.2012)). Fraudulent concealment must be pled to the Rule 9(b) heightened standard. *Marzan v. Bank of America*, 779 F.Supp.2d 1140, 1149 (D.Haw.2011) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir.1999)).

Here, the SAC allege the following facts that support tolling the statute of limitations due to EA's fraudulent concealment:  EA and WaMu entered into a conspiracy in violation of RESPA to exchange appraisals with inflated values when necessary to support a loan, in exchange for WaMu providing EA with its appraisal business.  SAC, ¶¶ 1, 6, 7, 87, 90.  To carry out their conspiracy, EA allowed WaMu to select the appraisers who would appraise WaMu's properties and paid those appraisers a 20% premium for each appraisal performed.  SAC, ¶¶ 41-52, 91.  WaMu's select appraisers, which EA and WaMu referred to as the "Proven Appraisers," were chosen by WaMu's loan origination staff because they knew those appraisers would provide values high enough to meet WaMu's lending needs.  SAC, ¶ 49, 91.  If an appraiser did not provide WaMu with a value for a property sufficiently high to justify a loan, WaMu took them off of their "Proven Appraiser List" and they could not do any more work for WaMu.  SAC, ¶ 50, 91.  Further, EA put former WaMu appraisers in place to override any low home value, and developed software to change the value manually if necessary.  SAC, ¶¶ 38-40.  In exchange for controlling how appraisals were done, WaMu gave EA over $50 million in fees from borrowers who took out loans with WaMu.  SAC, ¶¶ 36, 92, 135.  The Court found these allegations sufficient not only to survive multiple motions to dismiss, but also to certify a nationwide Class of WaMu borrowers for Plaintiffs' RESPA claim.  Dkt. Nos. 147 (sustaining Plaintiffs' First Amended Complaint), 169 (sustaining Plaintiffs' Second Amended Complaint), 182 (denying EA's Motion for Certification of Interlocutory Appeal), and 249 (Order Certifying Class).

The EA-WaMu inflated appraisal conspiracy was not disclosed to Plaintiffs or Class Members.  SAC, ¶¶ 61, 66, 73.  Nor did Plaintiffs or Class Members have reason to suspect that their appraisals were not done independently, objectively, impartially, unbiased or credibly in compliance with USPAP.  SAC, ¶¶ 61, 66, 74, 75.  WaMu hired EA in response to criticism from federal

1    regulators about its internal appraisal practices in order to create the impression of a firewall

2    between the bank's lending operations and the appraisers who valuated property subject to loans to

3    the public.  SAC, ¶ 34.  Similarly, EA held itself out as providing unbiased appraisers who provide

4    appraisal services pursuant to USPAP requirements.  SAC, ¶¶ 35, 74.

5           In addition, every appraisal performed for and provided to Plaintiffs and Class Members

6    independently certified in the appraisal report itself that the appraisal was done pursuant to USPAP,

7    which requires that they be independent, objective, impartial, unbiased and credible.  SAC, ¶¶ 30,

8    60, 65, 97, 129-131.  Each appraisal report also specifically stated that its purpose was for the

9    borrower and the bank to rely on it in entering the mortgage transaction.  SAC, ¶¶ 34, 127, 128 and

10   SAC Exhibits 2 (Scholl Appraisal Report, p. 14, ¶23) and Exhibit 4 (Spears Appraisal Report, p. 8,

11   ¶23).  Further, USPAP creates an affirmative duty for appraisers to communicate their appraisals

12   honestly, which would mean disclosing if the appraisal was not done pursuant to USPAP's

13   requirements.  SAC, ¶ 28, 98.  These acts of concealment by EA and its appraisers are separate and

14   distinct from Plaintiffs' RESPA claim based on the conspiracy between WaMu and EA.  SAC, ¶¶

15   84-93.  Without disclosure of WaMu's arrangement with EA, neither Plaintiffs nor Class Members

16   could have reasonably suspected that there was anything wrong with their appraisal for which they

17   were charged.  SAC, ¶ 62, 67, 75.  It was not until EA and WaMu's scheme was publically revealed

18   by the New York Attorney General on November 1, 2007 by its announcement of an investigation

19   and complaint against EA that Plaintiffs and Class Members were first put on notice that their

20   appraisals were not done pursuant to USPAP.  SAC, ¶ 76.

21          As the Court must accept these well pleaded facts as true and give all reasonable inferences

22   to Plaintiffs, Plaintiffs have sufficiently alleged EA fraudulently concealed its conspiracy from

23   WaMu, tolling the statute of limitations until the New York Attorney General announced its

24   investigation on or around November 1, 2007.  *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 570;

25   *Tong*, 520 F.Supp.2d at 1147.

26          **2.   The SAC sufficiently alleges tolling based on equitable tolling**

27          Equitable tolling extends the statute of limitations where, "despite all due diligence, a

28   plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v.*

1    *Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). The statutory period does not begin to run until

2    the plaintiff should reasonably be aware of the existence of a possible claim. *Socop–Gonzalez v.*

3    *I.N.S.*, 272 F.3d 1176, 1195–96 (9th Cir.2001). Equitable tolling "focuses on whether there was

4    excusable delay by the plaintiff," and does not require any wrongful conduct by the defendant. *Santa*

5    *Maria*, 202 F.3d at 1176. "Generally, the applicability of equitable tolling depends on matters

6    outside the pleadings, so it is rarely appropriate to grant a [Rules 12] motion to dismiss (where

7    review is limited to the complaint) if equitable tolling is at issue." *Huynh v. Chase Manhattan Bank*,

8    465 F.3d 992, 1003-04 (9th Cir. 2006)(citing *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204,

9    1206 (9th Cir.1995)).

10           As further detailed in the prior section, the SAC alleges neither Plaintiffs nor Class Members

11   knew about the conspiracy between WaMu and EA because it was a hidden agreement.  SAC, ¶¶ 61,

12   66, 73.  EA and its appraisers not only concealed their agreement with WaMu, they actively certified

13   that the appraisals at issue were done pursuant to USPAP, and could be relied on by borrowers in

14   deciding to enter into their mortgage transactions with WaMu, when they were actually done under

15   the cloud of the EA-WaMu scheme.  SAC, ¶¶ 30, 34, 60, 65, 97, 127-131.  Despite diligence, no

16   amount of investigation could have revealed the nature of the EA-WaMu agreement until the New

17   York Attorney General announced the results of its investigation which was based on the internal

18   documents of EA on November 1, 2007, just three months before this lawsuit was filed.  SAC, ¶¶ 61,

19   66, 74-76.  Equitable tolling of RESPA's one-year statute of limitations clearly is met here.  *See Kay*

20   *v. Wells Fargo & Co.*, 247 F.R.D. 572, 578 (N.D.Cal. 2007)(equitable tolling applies to a RESPA

21   claim if the plaintiff was unable to obtain vital information regarding the existence of a claim despite

22   due diligence); *Barlee v. First Horizon Nat. Corp.*, No. 12-3045, 2013 WL 706091, *5 (E.D.Pa.,

23   Feb. 27, 2013)(holding allegations that despite due diligence, Plaintiffs and putative class members

24   could not have discovered the underlying basis of their RESPA claims due to the defendants'

25   concealment of their unlawful scheme sufficient to toll RESPA's 1 year statute of limitations).  The

26   SAC sufficiently alleged facts establishing equitable tolling to toll the statute of limitations here on

27   behalf of Plaintiffs and Class Members.

28

### 3.   The SAC sufficiently alleges tolling based on the delayed discovery rule

The delayed discovery rule "'assumes that the elements of accrual including harm exist, but tolls the ruling of the statute until the plaintiff is on inquiry notice of its injury (and its wrongful cause).'" *McCarn v. HSBC USA, Inc.*, 2012 WL 5499433, at *8 (E.D.Cal. 2012) (quoting *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir.1995)).  To invoke the discovery rule as an exception to the statute of limitations, Plaintiffs need to plead facts showing "'(a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); [and] (c) how and when he did actually discover the fraud or mistake.'" *Rambus Inc. v. Samsung Electronics Co., Ltd.*, 2007 WL 39374, at *4 (N.D.Cal. 2007) (Whyte, J.) (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal.App.4th 151, 160 (Cal.Ct.App. 1999).

As detailed above, the SAC alleges neither Plaintiffs nor Class Members knew about the conspiracy between WaMu and EA because it was a hidden agreement, and EA and each appraisal report specifically certified that the appraisals were performed independently, objectively, impartially, credibly, and without bias.  SAC, ¶¶ 30, 35, 60, 61, 65, 66, 73, 74, 97, 129-131.  Each appraisal report specifically told Plaintiffs and Class Members that they could rely on them in entering into their mortgage transactions.  SAC, ¶¶ 34, 127, 128.  Because each appraisal report was certified as being independent, objective, impartial, unbiased and credible, Plaintiffs and Class Members did not have a reason to suspect there was a conspiracy between EA and WaMu to inflate appraisals.  SAC, ¶¶ 61, 66, 74, 75.  It was not until the NYAG revealed EA's and WaMu's hidden scheme three months before the filing of this lawsuit that anyone had reason to suspect that Class Members' appraisals were being performed under the cloud of this conspiracy.  SAC, ¶ 76.  These allegations show the delayed discovery rule clearly applies to toll the one-year RESPA statute of limitations here based on the allegations of Plaintiffs' SAC.

EA's additional challenges to Plaintiffs' tolling allegations are also unpersuasive.  EA argues tolling is inappropriate, even if not jurisdictionally barred, based on the failure to allege any affirmative act of concealment.  EA's Motion, p. 9.  EA's selective reading of the SAC ignores all of the allegations of affirmative concealment made to Plaintiffs and every Class Member in the

appraisals themselves.  EA's argument that the discovery rule cannot be used to toll the statute of limitations (EA's Motion p. 10) ignores binding Supreme Court and Ninth Circuit precedence permitting the use of the discovery rule.  *See Holmberg,* 327 U.S. at 397; *Gabelli*, 2013 WL 691002, *1; *Santa Maria,* 202 F.3d at, 1178 and sections III.E.2 and 3, *supra.*  EA's argument that Plaintiffs failed to allege "that EA did anything to prevent discovery" simply ignores all of the allegations (summarized above) that EA and its appraisers affirmatively concealed that it was providing appraisals pursuant to a conspiracy to inflate appraisals, and that they were not done credibly, independently, objectively or without bias.  EA's final argument that Plaintiffs' do not allege that class members investigated their claims during the limitations period, ignores the allegations that no class member could have learned of the conspiracy at issue in this action without the NYAG's investigation, which is sufficient for equitable estoppel.  *Barlee,* 2013 WL 706091 at *5.

       **F.**    **The Current Record Evidence Shows Plaintiffs Would Prevail On Summary Judgment As To The Primary Purpose of Plaintiffs' Loans, And As To Tolling, Or Create A Genuine Dispute Of Material Fact**

       In several prior opportunities to challenge Plaintiffs' RESPA allegations, EA not once raised the issue of whether Plaintiffs sufficiently alleged their WaMu loans were for a "personal" purpose. *See* EA's motions to dismiss and reply briefs, Dkt. Nos. 46 (Motion to Dismiss First Amended Complaint); 114 (Reply Memorandum to Motion to Dismiss First Amended Complaint); 156 (Motion to Dismiss Second Amended Complaint); 163 (Reply Memorandum to Motion to Dismiss Second Amended Complaint).  Had they done so prior, Plaintiffs would have sought amendment to include any facts they thought were deficient regarding Plaintiffs' loan purposes.  Instead, Defendants took discovery of Plaintiffs regarding the purposes of their WaMu loans, and waited more than 3 years after those depositions to now move for judgment on the pleadings claiming that Plaintiffs failed to put them on notice of the purpose of their WaMu loans.  EA's Motion, pp. 4-6. EA's motion is disingenuous at best, as it is well aware that the allegations in the SAC and exhibits attached thereto put it on notice of the purpose of Plaintiffs' loans, and the subsequent discovery confirms this.  Thus, if the Court feels the SAC does not sufficiently allege facts supporting theirs or the Class' RESPA claims, the Court should either permit Plaintiffs to amend to conform the complaint to the evidence or, as Rule 12(d) provides, convert EA's Motion to one for summary

1  judgment under Rule 56, and allow for supplemental briefing after the end of discovery.  However,

2  based on the facts illustrated in the SAC and below, it is clear that EA would not be entitled to

3  summary judgment on the purpose of Plaintiffs loans or tolling the statute of limitations since the

4  evidence shows at a minimum genuine questions of material fact making them proper for

5  determination by the trier of fact.

6       Rule 12(d) provides:  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

7  pleadings are presented to and not excluded by the court, the motion must be treated as one for

8  summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all

9  the material that is pertinent to the motion."  Accordingly, "[w]hen matters outside the pleadings are

10  presented on a Rule 12(c) motion and not excluded by the court, the court must convert the Rule

11  12(c) motion to a Rule 56 summary judgment motion."  *Tumlinson Group, Inc. v. Johannessen*, 2010

12  WL 4366284, at *2 (E.D.Cal. Oct. 27, 2010) (citing *Hal Roach Studios, Inc. v. Richard Feiner &*

13  *Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990)).  Because Plaintiffs herewith proffer abundant

14  evidence from outside the pleadings, EA's Rule 12(c) Motion for Judgment on the Pleadings must be

15  converted to a motion for summary judgment.[5]  The only question is when that summary judgment

16  motion should be decided.

17       This action is now over five (5) years old, discovery is still ongoing, and the Court has

18  scheduled a deadline for dispositive motions on February 12, 2014.  Dkt. No. 260.  Not only may

19  further pertinent evidence come to light in due course, but the parties are currently engaged in

20  extensive discovery.  Plaintiffs are in the midst of reviewing the over 4.7 million pages of documents

21  produced by EA and other entities (Kravec Dec., ¶ 5), and both Parties have sought discovery from

22  several non-parties such as J.P.Morgan Chase, and are conferring on the timing of depositions of the

23  many fact witnesses involved with the EA-WaMu relationship.  Kravec Dec., ¶¶4, 6.  EA has taken

24  the deposition of both Plaintiffs, and the facts obtained in those depositions support the allegations in

25  the SAC that Plaintiffs' loans were for "personal" purposes, and that they did not, and could not,

26

---

27  [5]  It also is noteworthy that while EA does not proffer proper record evidence, it nonetheless
introduces matters outside the pleadings.  *See* EA's Motion at 4 n.1 (citing supposed "concession"

28  by one of the named plaintiffs as well as loan documents).

1   have discovered EA's and WaMu's hidden conspiracy until after the New York Attorney General

2   announced its investigation.[6]

3        First and foremost, documentary evidence shows that a vast majority of WaMu loans were

4   "Personal" loans because they were for the borrower's primary residence.  *See Edwards,* Kravec

5   Dec., Exhibit 1 at p. 10 (holding 12 C.F.R. § 226.3(b)(1)(i)(A) establishes an exception to RESPA's

6   business purpose exemption "for real property used or expected to be used as the principal dwelling

7   of the consumer")(ellipses removed).   For example, documentary evidence shows that Plaintiff

8   Spears' loan was used to refinance his home of 16 years, which remains his primary residence to this

9   day.   SAC ¶ 125 and Exhibit 3 (identify Plaintiff Spears' residence as the same address of the

10  property subject to the loan).   Documents can similarly show those Class Members who identified

11  the property secured by their WaMu loan as being their primary residence.   These documents come

12  from EA's own records, and can be further corroborated by J.P. Morgan Chase's records.   Kravec

13  Dec., ¶ 4.

14       This documentary evidence was corroborated by testimony when EA deposed Plaintiff

15  Spears who is not in the business of acquiring real estate and his entire personal income comes from

16  his Social Security benefits.   During the heart of this conspiracy, Plaintiff Spears refinanced his

17  home with a WaMu loan in March of 2007. SAC ¶ 64; Deposition of Felton A. Spears, Jr.,

18  previously submitted at Dkt. No. 205-01 ("Spears Dep.) at 44:7-11.   Plaintiff Spears is retired, and

19  refinanced his home loan from an adjustable rate mortgage to a fixed rate mortgage with better loan

20  terms.   Spears Dep. at 44:14-20.   Plaintiff Spears has lived in the same home he refinanced since

21  1987, and has never invested in real estate as a business.   Spears Dep. at 9:5-12, 19:11-13, 46:14-16,

22  52:9-13; SAC Exhibit 3 (identify Plaintiff Spears' residence as the same address of the property

23  subject to the loan).   Plaintiff Spears did not suspect that the appraisal provided by EA to support his

24  _____

25  [6] The fact that EA took Plaintiffs' depositions, which were submitted to this Court as part of

26  Plaintiffs' class certification motion (Dkt. Nos. 205-01 and 205-02) in December of 2009 prior to
    any briefing on class certification, and specifically questioned them about the purpose of their loans

27  and on the discovery of their claims shows that EA was well aware that they adequately alleging
    both the purpose of their loans and the basis for their tolling well before filing the herein motion for

28  judgment on the pleadings.

1   WaMu loan was subject to WaMu and EA's conspiracy to inflate home values when necessary to

2   support a loan until reading about the New York Attorney General's investigation and complaint

3   against EA.   SAC, ¶¶ 66, 76; Spears Dep. at 47:5-20.   Indeed, Plaintiff Spears' appraisal was

4   certified as being done in compliance with USPAP requirements, including that it was independent,

5   objective and unbiased, and it stated that he could rely on it in entering into a mortgage loan with

6   WaMu.   SAC, ¶¶ 30, 34, 65, 97, 127-131 and Exhibit 4 thereto.   Soon after learning about the

7   conspiracy, Plaintiff Spears filed his original complaint with this Court on February 8, 2008.  Dkt.

8   No. 1.

9        Similarly, Plaintiff Scholl, a retired United Nations peace worker, purchased a home funded

10   by a WaMu loan and supported by an EA appraisal.   SAC, ¶ 59; Deposition of Sidney Scholl,

11   previously submitted at Dkt. No. 205-02 ("Scholl Dep.) at 15:3-14.   Plaintiff Scholl's WaMu loan

12   was a consumer loan taken out primarily for a personal purpose, she received no revenue or profit

13   from the purchase of the property, and her primary occupation is not real estate investing.   Scholl

14   Dep. at 72:14-17, 82:6-12.   At the time of the loan, Plaintiff Scholl had no reason to suspect that

15   WaMu had entered into an agreement with EA to inflate the value of homes when needed to support

16   a loan.   SAC, ¶ 61; Scholl Dep. at 97:18-21.   Indeed, Plaintiff Scholl's appraisal was certified as

17   being done in compliance with USPAP requirements, including that it was independent, objective

18   and unbiased, and it stated that she could rely on it in entering into a mortgage loan with WaMu.

19   SAC, ¶¶ 30, 34, 60, 97, 127-131 and Exhibit 2 thereto.   While Plaintiff Scholl began to suspect that

20   something might be wrong with appraisals performed by WaMu's internal appraisal staff in June of

21   2007, it was not until reading the New York Attorney General's November 1, 2007 announcement of

22   its investigation and complaint against EA that Plaintiff Scholl first suspected that her appraisal

23   might have been done under the cloud of the conspiracy between EA and WaMu.   SAC, ¶ 76; Scholl

24   Dep. at 28:23-29:7.   Within a month of finding this out, Plaintiff Scholl reached out to undersigned

25   counsel for legal advice and filed her original complaint with this Court on February 8, 2008.  Dkt.

26   No. 1.

27        Plaintiffs' testimony is consistent with the SAC and the U.S. Senate report – which this Court

28   may take judicial notice of and consider along with the allegations in Plaintiffs' SAC on EA's Rule

1    12 motion – which explained that WaMu and EA had every reason to conceal their scheme to inflate

2    appraisals.  *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (taking judicial notice of

3    excerpts from a Senate Report as "Legislative history is properly a subject of judicial notice").  From

4    WaMu's perspective, it's "High Risk Lending Strategy" encouraged writing high risk home loans

5    supported by fraudulently inflated appraisals that it sold to unsuspecting investors as mortgage-

6    backed securities which generated high rates of interest and were more profitable than low risk

7    loans.  Senate Report, p. 50.  From EA's perspective, it wanted to keep the fraudulent scheme to

8    inflate appraisals hidden because it was certifying and warranting the very appraisals that WaMu

9    was using to support its statements to investors that the properties were worth the amount of the

10   loans WaMu was giving, and it was being rewarded with more appraisal business as a result.  As the

11   U.S. Senate found, WaMu and EA successfully hid their scheme because WaMu was able to sell of

12   thousands of loans to investors who unwittingly invested money in WaMu's mortgage-backed

13   securities that were not worth near the value that WaMu represented them to be worth.  Senate

14   Report at 187-190.  Only after the U.S. economy collapsed did regulators and state attorneys general

15   begin investigating WaMu's conduct, culminating in the New York Attorney General's

16   announcement of its investigation and complaint against EA on November 1, 2007.  Indeed, even the

17   Office of Thrift Services, who monitored WaMu's appraisal activities, did not open a formal

18   investigation until after the NYAG's complaint.  Senate Report at 190.

19        Given the record evidence and factual testimony from Plaintiffs, it is obvious that EA did not

20   file the herein motion as one for summary judgment as there is, at the absolute minimum, a genuine

21   question of material fact whether Plaintiffs' loans were primarily for personal or business purposes

22   and whether tolling applies. Thus, should the Court feel Plaintiffs' allegations were insufficient it

23   should either permit Plaintiffs to amend to conform the complaint to the evidence or, as Rule 12(c)

24   provides, convert EA's motion to one for summary judgment under Rule 56 and allow for additional

25   briefing after discovery ends so that this issue can be adjudicated on a full record.

26   IV.    CONCLUSION

27        For all the reasons stated herein, the Court should deny EA's Motion for Judgment on the

28   Pleadings.

Dated:  March 8, 2013

**STEMBER FEINSTEIN DOYLE
  PAYNE & KRAVEC, LLC**

By:   s/Joseph N. Kravec, Jr.
        Joseph N. Kravec, Jr.
        (admitted *pro hac vice*)

429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax: (412) 281-1007
Email:  jkravec@stemberfeinstein.com

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET
  LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA        )
                             )   ss.:
COUNTY OF ALLEGHENY          )

I am employed in the County of Allegheny, State of Pennsylvania.  I am over the age of 18 and not a party to the within action.  My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA  15219.

On March 8, 2013, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**[X]     BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**   I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on March 8, 2013 at Pittsburgh, Pennsylvania.


  s/Joseph N. Kravec, Jr.
         Joseph N. Kravec, Jr.