UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIt, LLC), a Delaware limited liability company,<br><br>Defendant. | Case No. 5-08-CV-00868-RMW<br><br>**ORDER DENYING DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>[Re Docket Nos. 286, 283] |

Defendant First American eAppraiseIt ("EA") moves for judgment on the pleadings, arguing that plaintiffs have failed to make required factual allegations to sustain a claim under RESPA, that nearly half of the class period is time-barred and that plaintiffs' concealment claims are deficient as a matter of law. Plaintiffs Felton A. Spears, Jr. and Sidney Sholl ("plaintiffs") file their own motion for partial judgment on the pleadings, asking this court to strike all of EA's affirmative defenses for failure to meet the required standard of pleading as articulated in *Iqbal* and *Twombly*. The court hereby DENIES EA's motion for judgment on the pleadings and GRANTS-IN-PART and DENIES-IN-PART plaintiffs' motion for partial judgment on the pleadings.

## I. BACKGROUND

Plaintiffs filed suit on February 8, 2008. *See* Comp, Dkt. No 1. Plaintiffs' Second Amended Complaint ("SAC") included six causes of action, all but one of which has been dismissed. *See* SAC, Dkt. No 149; Orders Granting Motion to Dismiss, Dkt. Nos. 149, 169. Plaintiffs bring this class action on behalf of all consumers in California who received home loans from Washington Mutual Bank ("WaMu") on or after June 1, 2006, with appraisals obtained through EA or another previous defendant, Lender's Services, Inc. ("LSI"). Plaintiffs' allege home purchases in the United States have traditionally been financed through a third-party lender who retains a security interest in the property until the loan is repaid. SAC ¶ 2. In order to ensure that the secured lender will recoup the value of the loan if the borrower defaults, the lender generally requires that the property be professionally appraised. *Id.* Plaintiffs allege that in June 2006 WaMu, with EA and LSI, began a scheme to inflate the appraised values of homes receiving loans in order to sell the aggregated security interests at inflated prices. *Id.* at ¶ 6. According to the complaint, banks like WaMu changed from a business model in which they held the mortgage loans until repaid to one where they sold the loans to financial institutions. *Id.* at ¶ 23. This "paradigm shift" created an incentive for the bank to seek higher appraisals in higher volume. *Id.* at ¶ 24.

The complaint describes a scheme in which WaMu allegedly conspired to inflate the appraised value of property underlying their mortgage loans. In 2006, WaMu retained EA and LSI to administer WaMu's appraisal program. *Id.* at ¶ 34. EA and LSI have since performed almost all of WaMu's appraisals, and WaMu's borrowers have become EA and LSI's largest source of business. *Id.* at ¶ 36. WaMu created a list of "preferred appraisers," selected by WaMu's origination staff, that it requested perform appraisals for WaMu borrowers. *Id.* at ¶¶ 37, 45. WaMu also maintained the contractual right with those appraisers to challenge an appraisal by requesting a "reconsideration of value" (which was known as an "ROV"). *Id.* at ¶ 39. WaMu allegedly used the ROV to get EA and LSI to increase the appraised value of property. *Id.* WaMu also requested that EA and LSI hire "Appraisal Business Managers," who were given authority to override the values determined by third-party appraisers. *Id.* at ¶ 40. Plaintiffs' sole remaining

claim is that the above conduct violates the Real Estate Settlement Practices Act ("RESPA"). On September 14, 2009, EA filed an Answer to the SAC denying wrongdoing and claiming eleven affirmative defenses. *See* Answer, Dkt. No. 171.

In April 2012, this court certified a class comprised of: "[a]ll consumers in California and throughout the United States who, on or after June 1, 2006, received home loans from Washington Mutual Bank, FA in connection with appraisals that were obtained through eAppraiseIT." *See* Certification, Dkt. No. 249.

Both parties now move for judgments on the pleadings. EA moves for dismissal of the sole remaining RESPA claim, arguing that the facts pled by plaintiffs are insufficient to allege a violation of RESPA. Def.'s Br 2, Dkt. No. 286. Plaintiffs move in a separate motion for partial judgment on the pleadings, arguing that none of EA's asserted affirmative defenses meets the required pleading standard because each lacks sufficient facts to put plaintiffs on notice of a plausible defense. Pls. Br. 2[1]; Dkt. No. 283.

## II.   ANALYSIS

Judgment on the pleadings is proper when "taking all the allegations in the pleadings as true and construed in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005). Under a Rule 12(c) motion for judgment on the pleadings, the court must assume the truthfulness of the material allegations in the complaint. Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989). Moreover, all inferences reasonably drawn from these allegations must be construed in favor of the responding party. Id. Thus, a Rule 12(c) judgment will be granted only if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. Fajardo v. County of L.A., 179 F.3d 698, 699 (9th Cir. 1999).

---

[1] Plaintiffs' Brief does not include page numbers. The court here refers to each page as sequenced in the PDF file.

### A.  EA's Timing

Plaintiffs argue that EA's motion for judgment on the pleadings, combined with its two motions to dismiss and opposition to class certification, constitutes a piecemeal litigation strategy that "verges on vexatious" because "EA has had multiple opportunities to raise its pleading points as well as its class certification contentions" and should therefore be denied. Opp'n 10, Dkt. No. 295. EA counters that its cross-motion contains new issues and that neither case law nor the rule itself precludes a filing of a 12(c) motion at this time. Def.'s Reply 3, Dkt. No. 298. Rule 12(c) specifically disallows a motion when it would "delay trial." Fed. R. Civ. P. 12. Because trial will not be delayed by considering this motion and because the issues raised by EA have not specifically been considered before, the timing of the motion is proper.

### B.  Loan Purpose

RESPA protects only personal loans and does not apply to "'*credit transactions involving extensions of credit . . .* primarily for business, commercial or agricultural purposes.'" 12 U.S.C. § 2606; *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 418 (9th Cir. 2011) (emphasis added). The parties agree. Def.'s Br. 2; Opp'n 10-11. However, EA alleges that the SAC fails to allege a non-business purpose for the plaintiffs' loan transactions and should therefore be dismissed. Def.'s Br. 4. Plaintiffs counter by pointing to ten separate instances which they argue support the conclusion that the transactions were in fact for personal purposes. Opp'n 12. Although some of the allegations are too general to support a reasonable conclusion that the loans are personal, the complaint contains sufficient allegations to survive a motion for judgment on the pleadings. The standard under Rule 12(c) requires the court to evaluate the pleadings in the light most favorable to the nonmoving party. Fed. R. Civ. Pro. 12. The references to home purchases adequately support the conclusion that plaintiffs did secure the loans in question for personal purposes. For example, Spears's "HUD-1 settlement statement shows that the home he purchased is his primary residence." Opp'n 11; SAC, ¶¶ 11, 63. Therefore, this court finds that the plaintiffs have stated a cognizable claim under RESPA. Plaintiffs agree that only personal loans are actionable, and they will have the burden of establishing this for each class member.

ORDER RE JUDGMENT ON THE PLEADINGS
CASE NO. C-08-00868-RMW
TH/SW
- 4 -

Additionally, the court has already certified the class to include only "consumers" who secured home loans during the relevant time period. "Consumer" is defined in the Truth-in-Lending Act (TILA) as a natural person to whom credit is offered "money, property or services which are the subject of the transaction are primarily for *personal, family, or household purposes.*" 15 U.S.C. § 1602(h) (emphasis added). Any potential class members who do not meet this definition are *already* excluded from the suit. *See* Certification, Dkt. No. 249.

**C.    Time Bar**

Plaintiffs' RESPA claim is limited by a one-year time bar. 12 U.S.C. § 2614. RESPA's statute of limitations, titled "Jurisdiction of courts; restrictions," provides that a cause of action for a violation of section 2607 must be brought within 1-year "from the date of the occurrence of the violation." *Id*. EA argues that this limitation bars all class members whose claims accrued before February 8, 2007. Plaintiffs argue that this statute of limitations does not apply under three different theories to extend the statute of limitations. Opp'n 16. The court must first determine if equitable tolling is available.

### 1.    Equitable relief's applicability to RESPA

EA argues that equitable relief from the statute of limitations is unavailable because RESPA's 1-year time limit is jurisdictional. Pls' Br. 8-9. If the provision is a jurisdictional limit, the court could not grant equitable relief from the limitation because the limitation would deprive the court of jurisdiction to even consider the issue. Plaintiffs, in contrast, argue the limitations provision is a standard statute of limitations and thus equitable tolling is available as it is for all statutes of limitations. Opp'n 15; *see Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (holding that "[t]his equitable doctrine is read into every federal statute of limitation.").

The circuit courts are split as to whether RESPA's limitations provision is jurisdictional, and the Ninth Circuit has not directly considered the issue. In *Hardin v. City Title & Escrow Company*, the D.C. Circuit held that the statute of limitations was jurisdictional and not subject to equitable tolling. 797 F.2d 1037 (D.C. Cir. 1986). The court looked to the title of the section and

ORDER RE JUDGMENT ON THE PLEADINGS
CASE NO. C-08-00868-RMW
TH/SW
- 5 -

the plain language of the statute and concluded that Congress intended section 2614 to be a jurisdictional limitation. *Id.* 1040-41. The court also recognized that the RESPA language mirrored the language in TILA, which the Sixth Circuit had found was jurisdictional. *Id.* at 1040. (citing *Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118, 1119 (6th Cir. 1980)). The Seventh Circuit went the other way in *Lawyers Title Insurance Corporation v. Dearborn Title Corporation*, holding that equitable tolling is applicable to RESPA claims. 118 F.3d 1157, 1166-67 (7th Cir. 1997). In that case, the court also considered the similar language in TILA, but chose to follow the several other circuits, including the Ninth Circuit in *King v. California*, 784 F.2d 910, 914-15, which concluded that TILA's statute of limitations was *not* jurisdictional. *Id*. Northern District courts deciding the issue have followed suit, also holding that RESPA's statute of limitations is a general, not jurisdictional limit. *See e.g., Marcelos v. Dominguez*, 2008 WL 1820683 * 6 (N.D. Cal. Apr. 21, 2008) (Alsup, J.). The court agrees with this reasoning, and finds equitable tolling can apply to RESPA claims.

### 2. Equitable tolling

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008). This doctrine "focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Id* (quoting *Leong v. Potter,* 347 F.3d 1117, 1123 (9th Cir. 2003)). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1178 (9th Cir.2000) *overruled on other grounds by Leon v. Danaher Corp.*, 474 F. App'x 591, 592 (9th Cir. 2012) *cert. denied,* 133 S. Ct. 431 (2012). In addition to showing he pursued his rights diligently, a plaintiff must also show that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The Ninth Circuit has held that "district courts . . . can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly." *King,* 784 F.2d at 915. In *Hubbard v. Fidelity Federal Bank* the Ninth Circuit found there was no tolling where "nothing prevented [the plaintiff] from comparing the loan contract . . . initial disclosures, and TILA's statutory and regulatory requirements." *Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996).

Here, plaintiffs argue that "no amount of investigation could have revealed the nature of the EA-WaMu agreement until the New York Attorney General announced the results of its investigation which was based on the internal documents of EA on November 1, 2007, just three months before this lawsuit was filed." Opp'n 19. Plaintiffs further argue that, "without disclosure of Defendants' arrangement, Plaintiffs . . . could not have reasonably suspected that there was anything wrong with the appraisal for which they were each charged," specifically that "the appraisals were not done independently, objectively, impartially, unbiased or credibly in compliance" with the guidelines. *Id*. at 10, 19; SAC ¶ 75. At this stage, the court is persuaded by this reasoning. Plaintiffs, unlike the New York Attorney General, are not a prosecutorial body, and thus could not have obtained access to the internal EA documents necessary to discover the existence of a claim. Unlike *Hubbard*, there do not appear to be any documents that plaintiffs could have found after a diligent search from which they could have discerned the existence of their claim after a diligent review. Furthermore, *Hubbard* was decided at summary judgment when the court could evaluate the factual record. 91 F.3d 75. Therefore, at this stage, the court finds their impossibility argument is plausible and rises to the level of an extraordinary circumstance that would frustrate the purpose of the statute. Furthermore, plaintiffs have demonstrated diligence by bringing suit within three months after the release of the NYAG report. Finally, the fact that plaintiffs had no reason to suspect any wrongdoing supports plaintiffs' argument that they could not have reasonably known or have asserted a claim until the release of the NYAG report. Therefore, the court finds, at this stage, that equitable tolling applies until the release of the NYAG report and denies EA's motion to dismiss without prejudice.

### 3. Fraudulent concealment (equitable estoppel)

"Equitable estoppel in the limitations setting is sometimes called fraudulent concealment." *Santa Maria*, 202 F.3d at 1176-77 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir.1990).). Equitable estoppel "necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff suing in time." *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 577 (N.D. Cal. 2007) (quoting *Santa Maria,* 202 F.3d at 1177.). "Such conduct may be shown through affirmative representations or active concealment on the part of a defendant." *Id*.

In *Lukovsky v. City & County of San Francisco*, the Ninth Circuit held that an alleged basis for equitable estoppel must be distinct from a cause of action. 535 F.3d 1044, 1052 (9th Cir. 2008). In that case, plaintiffs brought suit against the City and County of San Francisco for alleged hiring preferences based on national origin. *Id*. at 1047. Plaintiffs argued they qualified for equitable estoppel because "Defendants' misrepresentations about requiring written verification of qualifying experience concealed that they were hiring unqualified . . . applicants instead." *Id*. at 1051. The court rejected this argument, however, holding that estoppel did not apply because the plaintiffs did not allege "any misrepresentation by the Defendants that concealed the composition of the applicant pool, the qualifications of those actually hired, or any promise by which the *Defendants discouraged plaintiffs from timely asserting their rights*." *Lukovsky*, 535 F.3d at 1052.

Similarly, although plaintiffs here devote many lines to describing alleged concealment by EA, none of these facts specifically allege that EA participated in active conduct to prevent plaintiffs from "timely asserting their rights." The allegations they do make are part and parcel with the scheme plaintiffs allege EA used to defraud customers in the first place. Although plaintiffs allege that EA attempted to conceal its wrongdoing generally, they fail to allege that EA actively concealed *to prevent plaintiffs suing within the statute of limitations*, as the doctrine requires. The closest plaintiffs get to alleging conduct above and beyond the original wrongdoing is the allegation that "EA held itself out as providing unbiased appraisers who provide appraisal

services pursuant to USPAP requirements." Opp'n 18. But this, as with the other facts describing concealment, is still related to the underlying wrongdoing rather than an effort to prevent plaintiffs from being able to sue. As such, plaintiffs' equitable estoppel arguments fail as a matter of law.

### 4. The discovery rule

Plaintiffs also argue that their claims are timely under the discovery rule. They claim that under the rule their claims only accrued on November 1, 2007, when they discovered the existence of their claims through a complaint filed by the New York Attorney General. SAC ¶ 67; Opp'n 3. "The discovery rule serves to extend the time from which the limitations period starts to run until 'the plaintiff knows both the existence and the cause of his injury.'" *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (quoting *U. S. v. Kubrick*, 444 U.S. 111, 113 (1979)). The discovery rule delays when the cause of action accrues, in contrast to equitable doctrines which pause the running of the statute of limitations after the cause of action has accrued. *See Kubrick*, 444 U.S. at 113 (discovery rule); *Garcia*, 526 F.3d at 465 (equitable tolling). Although the discovery rule is applicable to many claims—the classic example is tort claims for injuries that do not manifest themselves for many years—it is not universally applicable. *See Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (finding discovery rule did not apply to claim of discriminatory housing practices).

In *Garcia,* the Ninth Circuit held that the discovery rule did not apply because Congress put specific language in the law defining when the cause of action accrued rather than merely defining a limitations period from the date of accrual. *Id.* The statute at issue started the two year statute of limitations "after the *occurrence* . . . of an alleged discriminatory housing practice." 42 U.S.C. § 3613 (emphasis added). The court found that by specifying when the cause of action accrued, Congress expressed its intention to supersede any general application of the discovery rule. *Id.* The same analysis is applicable here. The section provides that any claims must be brought within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. In contrast, a more typical statute of limitations only states a time limit from the date of accrual. *See*

ORDER RE JUDGMENT ON THE PLEADINGS
CASE NO. C-08-00868-RMW
TH/SW

- 9 -

, *e.g.*, 28 U.S.C. § 2401 (requiring claims under the Federal Tort Claims Act be brought "within two years after such claim accrues"). This holding is consistent with those of most other districts that have considered the issue. *See Perkins v. Johnson*, 551 F. Supp. 2d 1246, 1254 (D. Colo. 2008) ("the federal discovery rule is inapplicable to the RESPA statute of limitations because Congress explicitly denoted that the statute begins to run 'from the date of the occurrence,' rather than 'when the action accrues,' as it has denoted in other statutory provisions."); *see also Davis v. Beazer Homes, U.S.A. Inc.*, 2009 WL 3855935 (M.D.N.C. Nov. 17, 2009) (same); *Mullinax*, 199 F. Supp. 2d at 324 (same). *But see, Estate of Henderson ex rel. Johnson v. Meritage Mortg. Corp.*, 293 F. Supp. 2d 830, 833-35 (N.D. Ill. 2003) (applying the discovery rule to RESPA when plaintiff had Alzheimer's). The court follows with the majority reasoning and holds that the discovery rule does not apply to a RESPA claim under section 2607.

**D.    Plaintiffs' Motion**

Although plaintiffs characterize their motion as one for partial judgment on the pleadings, plaintiffs are generally requesting that EA's asserted defenses be struck and it is thus unclear to the court whether plaintiffs' motion is properly brought under 12(c) of 12(f). Other courts have similarly expressed confusion over what relief a plaintiff seeks and the legal basis for it, when they have sought judgment on the pleadings as to affirmative defenses. *See New York v. Micron Tech., Inc.*, 2009 WL 29883 (N.D. Cal. Jan. 5, 2009). Under Rule 12(f) a court, upon motion or *sua sponte*, may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12. Judgment on the pleading as to defenses must be denied if the "answer raises issues of fact or an affirmative defense which, if proved, would defeat plaintiff's recovery." *Id.* (citing *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)). The main point of bringing this motion under rule 12(c) appears to be to ensure that the court applies the Rule 8 "plausibility" standard under *Iqbal* and *Twombly*, which require pleadings to include facts sufficient to put the plaintiffs on notice of a plausible defense. *See* Pls.' Br. Regardless, this court and others have applied the *Iqbal* and *Twombly* standards to similar motions brought under Rule

12(f). *See Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 4062845 (N.D. Cal. Nov. 15, 2007); *Ear v. Empire Collection Authorities, Inc.*, 12-1695-SC, 2012 WL 3249514 (N.D. Cal. Aug. 7, 2012). Thus, the court would apply the same standard in either case.

### 1. Negative defenses

Plaintiffs argue that EA's "negative affirmative defenses" 1, 2, 3, 4, 5, 7, 8 and 9 should be dismissed without leave to amend because they are improperly pled. Reply 2. "A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense." *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002). This court has previously stricken defenses that are not actually affirmative defenses where the defenses "allege defects in plaintiff's claims and raise issues that are plaintiff's burden to prove." *Joe Hand Promotions, Inc. v. Nguyen*, 2012 WL 1183738 (N.D. Cal. Apr. 6, 2012) (Whyte, J.). Here, as in *Joe Hand Promotions*, EA's "affirmative defenses" 1, 2, 3, 4, 5, 7, 8 and 9 all attempt to identify deficiencies in plaintiffs' case, and do not identify a "defense on which the defendant has the burden of proof." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010). Accordingly, defenses 1, 2, 3 4, 5, 7, 8 and 9 are stricken without leave to amend. EA is, of course, free to argue in future motions and at trial that plaintiffs' claims are deficient for the failing to adequately show any element of their case.

### 2. Fair notice

To strike an affirmative defense, the moving party must demonstrate "that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Haskins v. Cherokee Grand Ave., LLC*, 2012 WL 1110014 (N.D. Cal. Apr. 2, 2012) (Gonzalez, J.) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.,* 217 F.Supp.2d 1028, 1032 (C.D.Cal.2002).). A defense is also insufficient if it does not provide the plaintiff with "fair notice" of the defense. *Wyshak*, 607 F.2d 824, 827 (9th Cir.1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.").

Although EA has provided minimal factual support for its affirmative defenses 3 and 6, it has provided enough—especially when combined with subsequent filings—to give plaintiffs further notice as to the basis of its defenses. This court addressed a similar issue in *Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 4062845 (N.D. Cal. Nov. 15, 2007) (Whyte, J.). In that case, this court determined that facts alleged in a Joint Case Management Statement provided enough of a basis to survive a motion to strike. *Id*. * 9. This court found that, because the adverse party had obtained fair notice and "little efficiency"[2] would result from forcing an amended reply that the motion to strike should be denied. *Id*. Here, EA has provided a table outlining the substantive facts required to meet the plausibility standard for its defenses. *See* Table in Def.'s Opp'n at 6, Dkt. No. 290. EA was on fair notice and therefore the motion is denied as to defenses 3 and 6. Defense 11, regarding Unjust Enrichment, however is not adequately supported. EA does not plead a factual basis and the only "notice" it cites in subsequent filings is contained in *plaintiffs'* papers. This does not sufficiently put plaintiffs on notice of the basis of EA's defense and is, therefore, struck with leave to amend.

### III. ORDER

For the foregoing reasons, the court DENIES EA's motion for judgment on the pleadings. The court GRANTS plaintiffs' motion for partial judgment on the pleadings as to striking without leave to amend affirmative defenses 1, 2, 4, 5, 7, 8, and 9. The court strikes affirmative defense 11 with leave to amend. The court DENIES plaintiffs' motion as to affirmative defenses 3 and 6.

Dated: April 23, 2013

*Ronald M. Whyte*
Ronald M. Whyte
United States District Court Judge

---

[2] With an affirmative defense, the court should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Therefore, forcing an amended filing would, in some circumstances, only serve to delay the litigation. The court so finds here.

ORDER RE JUDGMENT ON THE PLEADINGS
CASE NO. C-08-00868-RMW
TH/SW
- 12 -