NOT FOR CITATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company,<br><br>Defendant. | Case No.  5:08-cv-00868 RMW (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 9**<br><br>[Re:  Docket No. 375] |

Plaintiffs sue for themselves and on behalf of a certified class of "[a]ll consumers in California and throughout the United States who, on or after June 1, 2006, received home loans from Washington Mutual Bank, FA in connection with appraisals that were obtained through eAppraiseIT." They claim that defendants engaged in a scheme to inflate the appraised values of homes receiving loans in order to sell the aggregated security interests at inflated prices. First American eAppraiseIT (EA) is the only defendant left. Plaintiffs' sole remaining claim for relief is that the complained-of conduct violates the anti-kickback provision of the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. § 2607(a).

In Discovery Dispute Joint Report (DDJR) No. 9, plaintiffs seek an order compelling EA to produce deposition transcripts and expert reports from a separate lawsuit pending in the Central

District of California, *FDIC v. Corelogic Valuation Services, LLC*, Case No. SACV11-704 DOC (ANx) ("FDIC Action"). According to plaintiffs, these documents are particularly relevant for impeachment purposes and are responsive to their Request for Production No. 1 (Request 1). That request asks EA to produce "all documents, sworn statements, transcripts of depositions or other testimony and exhibits thereto, and other discovery produced or received by [EA]" in other litigation "that relates to, refers to, or otherwise concerns the inflation of property values or conduct that had the effect of inflating property values reported in appraisal reports performed or delivered by EA to WaMu for WaMu residential property loans." (Dkt. 375-1, DDJR No. 9, Ex. A at ECF p. 7). Although Request 1 specifies only three other lawsuits,[1] it contains a subsection "D," which essentially is a catch-all provision pertaining to "[a]ny other action filed in any court or other forum in which the inflation of property values in appraisal reports performed or delivered by EA to WaMu for WaMu residential property loans is alleged." (DDJR No. 9, Ex. A at ECF p. 7).

The parties disagree whether EA is obliged to produce the documents pursuant to its duty to supplement under Fed. R. Civ. P. 26(e). EA's refusal to produce the documents is based, in large part, on the fact that the FDIC Action was not filed until some nine months after Request 1 was served, and the requested documents were not created until after the October 13, 2013 fact discovery cutoff in this case. EA further contends that plaintiffs simply waited too long to move to compel the documents anyway. The matter is deemed suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons discussed below, the court grants in part and denies in part plaintiffs' request for an order compelling this discovery.

Although the FDIC Action was not filed until after Request 1 was propounded, that lawsuit falls within the (rather broadly worded) Request 1(D). There seems to be at least some overlap between these lawsuits. Plaintiffs point to two allegations in the FDIC's 86-page complaint pertaining to alleged inflated appraisal values. As discussed below, EA itself has produced documents from the FDIC Action here, it says, as a supplement to its Fed. R. Civ. P. 26(a) initial

---

[1] The three identified laws are one in Washington state and two in New York.

1 disclosures.

2   EA has not persuasively argued that a party's Fed. R. Civ. P. 26(e) duty to supplement or
3 correct its prior discovery responses necessarily ends with the fact discovery cutoff.  The duty to
4 supplement or correct arises "if the party learns that in some material respect the disclosure or
5 response is incomplete or incorrect, and if the additional or corrective information has not
6 otherwise been made known to the other parties during the discovery process or in writing."  Fed.
7 R. Civ. P. 26(e)(1)(A).  And, this court generally agrees that Rule 26(e) requires a party to
8 supplement or correct its prior disclosures or responses, whether the previously omitted
9 information was known at the time of the initial response or was later acquired.  See Robbins &
10 Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 73-80 (W.D.N.Y. 2011) (examining the text of
11 Fed. R. Civ. P. 26(e) and its history); Switch Communications Group v. Ballard, No. 2:11-cv-
12 00285 KJD, 2012 WL 2342929 (D. Nev., June 19, 2012).

13   Pointing out that fact discovery closed last fall, EA argues that plaintiffs should have
14 moved to compel these documents long before now.  This court is, frankly, unsure which side is
15 more (or less) credible in their characterization of the pertinent facts, and the record is not as clear-
16 cut as the parties contend.  EA maintains that it never told plaintiffs that it would produce the
17 FDIC Action documents being sought.  During December 2012 meet-and-confer negotiations, EA
18 says that it flatly refused to produce FDIC Action documents in response to Request 1.  And,
19 while plaintiffs contend that EA agreed in subsequent December 2012 correspondence to produce
20 the documents, they point to nothing that actually says that.

21   Plaintiffs argue that it is not too late to compel these documents because they might use
22 them in expert discovery, which remains open.  But, the fact remains that they are moving to
23 compel production in response to a fact discovery request.  Civ. L.R. 37-3 (requiring motions to
24 compel fact discovery to be filed within 7 days after the fact discovery cutoff).  Plaintiffs argue
25 that courts have entertained motions to compel even after the deadline, citing Silgan Containers v.
26 Nat'l Union Fire Ins., No. C09-05971RS (LB), 2011 WL 2198141 (N.D. Cal., June 6, 2011).
27 However, there the court noted that the dispute was "part of the parties' ongoing discovery dispute
28 that was timely raised . . . in the parties' first joint discovery letter" filed before the fact discovery

3

cut-off. Id. at *3. That is not the case here.

Plaintiffs nevertheless argue that they were misled into believing that EA produced FDIC Action documents in response to Request 1. Here, plaintiffs point out that in early 2013, the parties agreed to amend the then-existing protective order to protect "'confidential information contained in documents that were produced to EA in the FDIC litigation, and which EA intends to produce in this case.'" (DDJR No. 9 at 3 (quoting March 21, 2013 email from EA's counsel to plaintiffs' counsel).

The parties subsequently submitted a stipulation and proposed order to modify the then-current protective order, and this court entered their stipulation as an order two days later on June 20, 2013. The parties' stipulation itself says that they were seeking to amend the then-current protective order to, among other things, clarify that the protective order applies to documents produced in response to third-party subpoenas issued in this case and to memorialize the parties' agreement to exchange documents received in response to third-party subpoenas issued in this case. (Dkt. 311). The modified protective order, however, expands the definition of "confidential" information to include materials from the FDIC, without any qualifier as to how those documents are received. And, as a practical matter, this court is told that EA did produce some FDIC Action documents on June 20, the same day that this court entered the parties' stipulated modified protective order.

EA says that the June 20 document production was a supplement to its Fed. R. Civ. P. 26(a) initial disclosures and that it never told plaintiffs that it was producing documents in response to Request 1(D). But, EA apparently also did not tell plaintiffs that the documents were being produced as part of its initial disclosures---that is, until they met/conferred re the instant DDJR. So, plaintiffs say that, from their perspective, EA produced FDIC Action documents in response to Request 1(D). Additionally, they explain that they did not move to compel the documents at issue before the October 20, 2013 filing deadline because (1) the FDIC Action deposition transcripts and expert reports were not created until after the fact discovery cutoff; and (2) plaintiffs did not become aware of the documents' existence until March 2014.

This court harbors some doubt as to whether plaintiffs truly were as confused as they

4

1  claim. Additionally, there appears to be some support in the record for EA's contention that
2  plaintiffs' claimed need for the subject documents is inconsistent with their conduct in this case.
3  EA points out that plaintiffs previously withdrew a subpoena to the FDIC for documents, telling
4  Judge Whyte that the FDIC had no documents relevant to their claims. (See Dkt. 268 at 21 n.8
5  and Dkt. 268-1). EA is also correct that on a prior discovery dispute over a similar---albeit not
6  identical---document request for sworn statements or testimony transcripts of current and former
7  EA employees, this court granted plaintiffs' request for an order compelling the discovery, but
8  directed plaintiffs to take the laboring oar to secure any required releases for production. (Dkt.
9  357 at 2). EA says that it did its part in providing plaintiffs with the applicable protective orders,
10  but as far as it is aware, plaintiffs have done nothing to secure the releases for that discovery.
11  Plaintiffs do not say anything to the contrary. The court will nonetheless resolve any ambiguity as
12  to plaintiffs' claimed confusion over EA's June 20 production in plaintiffs' favor.

13  Even so, there remains a disagreement over confidentiality. There apparently is no dispute
14  that the FDIC opposes production of depositions taken during the FDIC's administrative process.
15  Plaintiffs agree to do without those documents. So, the FDIC's objection appears to be moot.

16  But, the parties give somewhat conflicting reports as to whether nonparty JPMorgan Chase
17  (Chase) has a viable objection to the production of the requested FDIC Action documents. Chase
18  is not before the court on this DDJR. According to plaintiffs, Chase's confidentiality objection is
19  based "*primarily* on Chase's concern the FDIC might object." (DDJR No. 9 at p. 5) (emphasis
20  added). Plaintiffs argue that, since the FDIC's objection is moot, so is Chase's. EA, on the other
21  hand, says that "Chase has objected to the production of any expert reports or deposition
22  transcripts that were designated by Chase as confidential in [the FDIC Action], or that rely on
23  Chase's confidential documents." (DDJR No. 9 at 10 n.4) (emphasis added). Neither side has
24  cited to anything corroborating their assertions about Chase's objections. But, even plaintiffs'
25  version of events does not exclude the possibility that Chase's objections are based on more than a
26  concern that the FDIC might object.

27  Accordingly, this court will grant plaintiffs' request for an order compelling the requested
28  discovery, but only as those documents for which there is no confidentiality objection from Chase.

5

Additionally, for sworn statements or testimony transcripts of current and former EA employees, the burden of securing any required releases for their production remains with plaintiffs, with EA to provide forthwith information necessary to secure releases.  Once plaintiffs have secured releases, if any, then EA shall produce the documents within 10 days.

**SO ORDERED**.

Dated:   June 17, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:08-cv-00868-RMW Notice has been electronically mailed to:

Allison Lauren Libeu    alibeu@irell.com
Alvin Matthew Ashley    mashley@irell.com, sknight@irell.com
Angela M. Papalaskaris    apapalas@dl.com, courtalert@dl.com
Christopher J Clark    cjclark@dl.com
David A. Super    david.super@bakerbotts.com
Ellen Mary M. Doyle    edoyle@fdpklaw.com, filings@fdpklaw.com, gbrown@fdpklaw.com
Gretchen Freeman Cappio    gcappio@kellerrohrback.com, cbrewer@kellerrohrback.com, eknerr@kellerrohrback.com, tlin@kellerrohrback.com
Harry Williams , IV    hwilliams@kellerrohrback.com, kshenefield@kellerrohrback.com
Janet Lindner Spielberg    jlspielberg@jlslp.com
Jenny Lee Merris    jmerris@alvaradosmith.com, mault@alvaradosmith.com
Joel R. Hurt    jhurt@fdpklaw.com
John C. Hueston    jhueston@irell.com
John Charles Hueston    jhueston@irell.com, lhiles@irell.com
John M. Sorich    jsorich@alvaradosmith.com
Jonathan Mark Lloyd    jonathanlloyd@dwt.com, jeannecadley@dwt.com
Joseph N. Kravec , Jr    jkravec@fdpklaw.com, filings@fdpklaw.com, jnk561@yahoo.com
Justin Nathanael Owens    jowens@irell.com
Kevin C Wallace    kwallace@dl.com
Khesraw Karmand    kkarmand@kellerrohrback.com
Kris Hue Chau Man    kman@dl.com, sholstrom@dl.com
Lynn Lincoln Sarko    lsarko@kellerrohrback.com, cengle@kellerrohrback.com, kwarner@kellerrohrback.com
Margaret Anne Keane    margaret.keane@dlapiper.com, carol.stewart@dlapiper.com, marianne.haines@dlapiper.com
Martin L. Fineman    martinfineman@dwt.com, edithshertz@dwt.com, sfodocket@dwt.com
McKean James Evans    mevans@fdpklaw.com
Michael D. Braun    service@braunlawgroup.com, clc@braunlawgroup.com
Ryan E. Bull    Ryan.Bull@bakerbotts.com
Sam N. Dawood    samdawood@khklaw.com, mjaime@khklaw.com
Stephen M. Ng    stephen.ng@bakerbotts.com, leanna.gutierrez@bakerbotts.com
Stephen Michael Rummage    steverummage@dwt.com, jeannecadley@dwt.com, seadocket@dwt.com
Sung-Min Christopher Yoo    cyoo@alvaradosmith.com, crosas@alvaradosmith.com, jyoung@alvaradosmith.com, mault@alvaradosmith.com
Tana Lin    tlin@kellerrohrback.com, esiegel@kellerrohrback.com, rfarrow@kellerrohrback.com
Wyatt A. Lison    wlison@fdpklaw.com, filings@fdpklaw.com