NOT FOR CITATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company,<br><br>Defendant. | Case No. 5:08-cv-00868 RMW (HRL)<br><br>**ORDER RE NON-PARTY JPMORGAN CHASE BANK'S MOTION FOR CLARIFICATION**<br><br>[Re: Dkt. 362] |

On a prior discovery dispute, plaintiffs and non-party JPMorgan Chase Bank (Chase) disagreed whether Chase should be compelled to produce class members' HUD-1 forms pursuant to a document subpoena served by plaintiffs. (Dkt. 353). This court issued an order directing Chase to produce the requested forms. (Dkt. 359). Chase subsequently filed the instant motion, seeking clarification as to whether plaintiffs are obliged to pay for the associated expenses of producing them.[1] Although it initially noticed the motion before Judge Whyte, Chase later

---

[1] Plaintiffs and Chase bicker about whether Chase has overstated costs it says it incurred in connection with production of other documents and whether those documents were produced in response to plaintiffs' subpoena or in response to one served by EA. This court sees no need to address those arguments, since Chase is only seeking payment for production of the HUD-1 forms that were the subject of the discovery order in question.

confirmed that it was not appealing the discovery ruling. The matter was then referred to the undersigned for disposition.[2] Chase obviously is of the view that plaintiffs should be made to pay. Plaintiffs disagree. This court deemed the matter submitted without oral argument. (Dkt. 370). Upon consideration of the moving and responding papers,[3] the court now orders as follows:

With respect to Chase's request for clarification: The prior discovery order said nothing about the allocation of expenses as between plaintiffs and Chase because this court did not understand that to be at issue in the underlying Discovery Dispute Joint Report (DDJR). Chase remarked that it had already spent a lot of money in responding to discovery in this litigation, for which it had not been reimbursed by either plaintiffs or defendant. But, the allocation of expenses was not briefed in the DDJR. Instead, as discussed in the order, this court understood Chase's concern to be that it was already overwhelmed by its other production efforts in response to plaintiffs' subpoena, and simply could not gather and produce the 200,000 or so HUD-1 statements before the December 22, 2013 discovery cutoff. (Dkt. 359 at 3). True, this court found that the burden of production was not undue. As stated in the order, that was because there was no serious dispute that the requested information is important to plaintiffs' ability to prove their claimed damages, and no one suggested that the information was obtainable through some other, less burdensome means. (Id.). This court did not, however, intend to suggest that the associated expenses justifiably should be borne entirely by Chase.

Chase now also requests that this court order plaintiffs to pay for the expenses Chase says it will incur in review and production of the HUD-1 forms, including $2.2 million for production of the documents maintained in hard copy. Although this court is unpersuaded by most of plaintiffs' arguments in opposition, it cannot make an appropriate determination re Chase's request on the record presented.

---

[2] This court denies plaintiffs' request for an order denying Chase's motion on the grounds that it was a procedurally improper appeal.

[3] Defendant First American EAppraiseIT (EA) filed a statement advising that it takes no position as to the allocation of costs between plaintiffs and Chase. Instead, EA argues that plaintiffs are barred, under one of Judge Whyte's prior orders, from using the HUD-1 statements as evidence because the forms were not produced before the December 22, 2013 discovery cutoff. That is not an issue for this court to decide, and the undersigned expresses no opinion on it.

1  Where, as here, a court orders compliance with a subpoena over an objection, "the order
2  must protect a person who is neither a party nor a party's officer from significant expense resulting
3  from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). The Ninth Circuit has held "that Rule
4  45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a
5  subpoena, if those costs are significant." Legal Voice v. Storman's, Inc., 738 F.3d 1178, 1184
6  (9th Cir. 2013) (following Linder v. Calero-Portocarrero, 251 F.3d 178 (D.C. Cir. 2001)). And,
7  "significant expense" is to be distinguished from "undue burden." Id. "Thus, when discovery is
8  ordered against a non-party, the only question before the court in considering whether to shift
9  costs is whether the subpoena imposes significant expense on the non-party." Id. "If so, the
10 district court must order the party seeking discovery to bear at least enough of the cost of
11 compliance to render the remainder 'non-significant.'" Id. (quoting Linder, 251 F.3d at 182).

12 The party who subpoenaed the discovery might not be required to bear the entire cost. Id.
13 at 1184-85; Linder, 251 F.3d at 182. Factors courts consider in deciding how much of the expense
14 to shift include: (1) whether the nonparty has an interest in the outcome of the case; (2) whether
15 the nonparty can more readily bear its costs than the requesting party; and (3) whether the
16 litigation is of public importance. Linder, 251 F.3d at 182. Additional factors suggested by the
17 Ninth Circuit include: (1) the scope of discovery; (2) the invasiveness of the request; (3) the
18 extent to which the producing party must separate responsive information from privileged or
19 irrelevant material; and (4) the reasonableness of the costs of production. United States v.
20 Columbia Broadcasting Sys., Inc., 666 F.2d 364, 371 n.9 (9th Cir. 1982).

21 Citing to § 6.3 of the Purchase and Assumption Agreement (P&A Agreement) between the
22 FDIC and Chase, plaintiffs contend that the FDIC has already paid Chase for Chase's expenses re
23 the subject discovery. Essentially, plaintiffs claim that this "payment" came in the form of the
24 "discounted rate" at which they say Chase acquired Washington Mutual's assets. But § 6.3, on its
25 face, simply says that as between Chase and the FDIC, Chase is responsible for maintaining
26 Washington Mutual's records and responding to subpoenas. (Dkt. 367, Kravec Decl., Ex. 2).
27 Plaintiffs point to nothing supporting their contention that Chase assumed the responsibility to
28 maintain Washington Mutual's records and to respond to subpoenas in exchange for a "discounted

3

rate" on Washington Mutual's assets.

Plaintiffs next contend that Chase will be indemnified by the FDIC for all costs associated with responding to their subpoena through a separate lawsuit Chase has filed against the FDIC in the District of Columbia, *JPMorgan Chase Bank, National Ass'n v. Federal Deposit Ins. Corp., et al.*, Case No. 1:13-cv-01997-RMC (D.D.C.) (FDIC Action). (Dkt. 367, Kravec Decl., Ex. 4). In that action, Chase seeks indemnification from the FDIC with respect to certain liabilities Chase says it incurred and which, it contends, triggered the FDIC's indemnification obligations. Notably, that complaint indicates that Chase believes it is entitled to indemnification for fees and costs it incurred in responding to subpoenas. But, the complaint itself seeks indemnification only for the fees and costs incurred in responding to the FDIC's own requests and in complying with subpoenas issued by government agencies. (Id. ¶¶ 66, 69). It says nothing about third party subpoenas, such as the one plaintiffs served in this lawsuit. And, while Chase's complaint expressly "reserves the right to demand indemnification from the FDIC under the P&A Agreement for matters that are not the subject of this complaint," (Id. ¶ 4), this court finds no basis on the record presented for plaintiffs' assertion that Chase will be "completely indemnified by the FDIC for all costs associated with responding to Plaintiffs' subpoena" through the FDIC Action (Dkt. 366 at ECF p. 12). Nor will this court speculate as to plaintiffs' hypothesis that if Chase loses the FDIC Action, it will be because the court in the District of Columbia will have determined that Chase assumed these obligations and associated liabilities in exchange for acquiring Washington Mutual's assets at a so-called "discounted rate."

Plaintiffs nevertheless maintain that they should not have to bear any portion of Chase's expenses because they say that Chase has an interest in the outcome of this litigation and therefore is not a true non-party. In support of this argument, plaintiffs point out that their complaint concerns alleged pre-receivership conduct by Washington Mutual.[4] They go on to assert that Chase's separate FDIC Action concerns indemnification re claims pertaining to Washington

---

[4] The sole remaining claim here is that EA had an agreement or understanding with Washington Mutual to improperly inflate appraisals in violation of the Real Estate Settlement Practices Act, 12 U.S.C. § 2607(a).

4

Mutual's pre-receivership conduct (e.g., loan repurchase claims asserted by Freddie Mac and Fannie Mae; claims made by purchasers of Washington Mutual's residential mortgage-backed securities; claims by tax authorities; and various others). As such, plaintiffs contend that Chase has a substantial interest in this litigation in that a ruling in EA's favor may "remove a potential further source of WaMu liability that Chase could be found to have assumed under the P&A Agreement." (Dkt. 366, Opp. at ECF p. 14). The cases cited by plaintiffs, however, involved subpoenaed entities who were substantially involved in underlying events or had a significant relationship with the litigants. Citing to § 2.5 of the P&A Agreement, Chase says that it expressly did not assume liability for borrower claims, such as those asserted here. Section 2.5 of the P&A Agreement states that "any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan or commitment to lend made by [Washington Mutual] prior to [September 25, 2008] . . . are specifically *not assumed* by [Chase]." (Dkt. 367, Kravec Decl., Ex. 2) (emphasis added). And, Chase cites several cases in which the courts concluded that under § 2.5 of the P&A Agreement, liability for borrower claims were not assumed by Chase and remained with the FDIC. See, e g., Yeomalakis v. FDIC, 562 F.3d 56, 60 (1st Cir. 2009); Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 414-15 (N.D. Cal. 2009); Grealish v. Washington Mutual Bank FA, No. 2:08-cv-763 TS, 2009 WL 2170044 *2-3 (D. Utah, July 20, 2009).

     In sum, none of the arguments advanced by plaintiffs in opposition to Chase's request for reimbursement are persuasive---save for plaintiffs' expressed concerns about the reliability of Chase's estimated costs. As discussed above, shifting "significant" costs under Rule 45(d)(2)(B)(ii) is mandatory, Legal Voice, 738 F.3d at 1184, and the only question is whether Chase's costs are "significant" and, if so, how much should be shifted to plaintiffs. Although it initially estimated that production of the HUD-1 forms would cost possibly hundreds of thousands of dollars, Chase now claims that the associated expenses will be $2.2 million just to produce the hard copy documents (and not including costs for the retrieval and review of those that are maintained electronically). (See Dkt. 369-1, Hilburn Declaration). But, this court questions the reasonableness of the claimed expenses:

1    To begin, Chase's claimed costs are based on what may well be an overstated number of
2    HUD-1 forms to be reviewed and produced. Chase indicates that there are some 219,000 HUD-1
3    forms in question---approximately 100,000 of which are stored electronically, with the remaining
4    119,000 in paper files. Plaintiffs acknowledge that the potential class members number around
5    200,000. But, based on the sampling of loan files Chase previously produced, plaintiffs believe
6    that Chase likely will not need to produce a HUD-1 form for 49% of the files for a number of
7    reasons, including that (1) the files may pertain to individuals who applied for, but did not receive
8    a loan from Washington Mutual; (2) Washington Mutual did not originate the loans; or (3) the
9    files pertain to loan modifications for which there is no HUD-1 form. Plaintiffs say that Chase
10   previously produced spreadsheets for electronic loan data, representing that the spreadsheets
11   contained information sufficient to determine whether a file might fall into any one of these three
12   categories. (Dkt. 367, Kravec Decl., ¶¶ 11-12). Chase does not deny that. It thus appears that
13   Chase has information that would allow it to identify a potentially considerable number of loans
14   that may not need to be retrieved or reviewed at all.
15   Chase has not substantiated its claim for the costs of producing the electronically stored
16   HUD-1 forms.
17   Chase contends that it is entitled to attorneys' fees for review of documents to determine
18   whether any information must be withheld pursuant to the Bank Secrecy Act or whether any
19   information is privileged. However, nonparties generally are not entitled to fees incurred in
20   responding to discovery requests. United v. CBS, Inc., 103 F.R.D. 365, 374 (C.D. Cal. 1984).
21   Plaintiffs contend that the HUD-1 form is a statutorily required disclosure provided to the
22   borrower that does not contain any information that must be withheld under the Bank Secrecy Act.
23   Chase disputes that assertion, but cites only to 31 U.S.C. § 5318(g)(2)(A), which appears to
24   concern the reporting of suspicious transactions to the Secretary of the Treasury. Nor does Chase
25   satisfactorily explain what privileged information might be contained in a HUD-1 form. Instead,
26   Chase says that "[t]he difficulties of disentangling HUD-1 Statements from *larger loan files*,
27   which indisputably do contain information prohibited from disclosure under the Bank Secrecy
28   Act, means that Chase will need to undertake review of the documents to be produced." (Dkt.

369, Reply at ECF p. 8) (emphasis added). This strikes the court simply as an assertion that someone will have to look through the files to locate the HUD-1 forms---an effort that Chase has not persuasively demonstrated will involve rigorous review for privileged information or information that might be prohibited from disclosure under the Bank Secrecy Act. Moreover, Chase has already produced a sampling of loan files to plaintiffs. So, it appears that the stipulated protective order entered in this case will be sufficient to protect whatever sensitive information might be in the documents, and Chase has not convincingly demonstrated otherwise. This court will not order reimbursement or allocation of any attorney's fees.

While it questions whether the other claimed costs are of the magnitude that Chase claims, the court is willing to recognize, as guided by the principal espoused in <u>Legal Voice</u>, that Chase's expenses in producing the HUD-1 forms likely will be "significant" and that consideration should be given to plaintiffs paying at least some of it. On the record presented, however, Chase has not provided sufficient information for this court to make a proper determination. The court therefore declines to issue an order shifting costs on this record, without prejudice to Chase.

**SO ORDERED**.

Dated: July 3, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:08-cv-00868-RMW Notice has been electronically mailed to:

Allison Lauren Libeu     alibeu@irell.com
Alvin Matthew Ashley     mashley@irell.com, sknight@irell.com
Angela M. Papalaskaris     apapalas@dl.com, courtalert@dl.com
Christopher J Clark     cjclark@dl.com
David A. Super     david.super@bakerbotts.com
Ellen Mary M. Doyle     edoyle@fdpklaw.com, filings@fdpklaw.com, gbrown@fdpklaw.com
Gretchen Freeman Cappio     gcappio@kellerrohrback.com, cbrewer@kellerrohrback.com, eknerr@kellerrohrback.com, tlin@kellerrohrback.com
Harry Williams , IV     hwilliams@kellerrohrback.com, kshenefield@kellerrohrback.com
Janet Lindner Spielberg     jlspielberg@jlslp.com
Jeffrey Scott Wilkerson     JWilkerson@irell.com
Jenny Lee Merris     jmerris@alvaradosmith.com, mault@alvaradosmith.com
Joel R. Hurt     jhurt@fdpklaw.com
John C. Hueston     jhueston@irell.com
John Charles Hueston     jhueston@irell.com, lhiles@irell.com
John M. Sorich     jsorich@alvaradosmith.com
Jonathan Mark Lloyd     jonathanlloyd@dwt.com, jeannecadley@dwt.com
Joseph N. Kravec , Jr     jkravec@fdpklaw.com, filings@fdpklaw.com, jnk561@yahoo.com
Justin Nathanael Owens     jowens@irell.com
Kevin C Wallace     kwallace@dl.com
Khesraw Karmand     kkarmand@kellerrohrback.com
Kris Hue Chau Man     kman@dl.com, sholstrom@dl.com
Lynn Lincoln Sarko     lsarko@kellerrohrback.com, cengle@kellerrohrback.com, dmarshall@kellerrohrback.com
Margaret Anne Keane     margaret.keane@dlapiper.com, carol.stewart@dlapiper.com, marianne.haines@dlapiper.com
Martin L. Fineman     martinfineman@dwt.com, marcushidalgo@dwt.com, sfodocket@dwt.com
McKean James Evans     mevans@fdpklaw.com
Michael D. Braun     service@braunlawgroup.com, clc@braunlawgroup.com
Ryan E. Bull     Ryan.Bull@bakerbotts.com
Sam N. Dawood     sdawood@khklaw.com
Stephen M. Ng     stephen.ng@bakerbotts.com, leanna.gutierrez@bakerbotts.com
Stephen Michael Rummage     steverummage@dwt.com, jeannecadley@dwt.com, seadocket@dwt.com
Sung-Min Christopher Yoo     cyoo@alvaradosmith.com, crosas@alvaradosmith.com, mault@alvaradosmith.com, skanesaka@alvaradosmith.com
Tana Lin     tlin@kellerrohrback.com, esiegel@kellerrohrback.com, rfarrow@kellerrohrback.com
Wyatt A. Lison     wlison@fdpklaw.com, filings@fdpklaw.com