John C. Hueston (164921)
A. Matthew Ashley (198235)
Justin N. Owens (254733)
**IRELL & MANELLA, LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
jhueston@irell.com
mashley@irell.com
jowens@irell.com

***ATTORNEYS FOR DEFENDANT
EAPPRAISEIT, LLC***

Joseph N. Kravec, Jr. (*pro hac vice*)
**FEINSTEIN DOYLE
   PAYNE & KRAVEC, LLC**
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
E-mail: jkravec@fdpklaw.com

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET
   LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California 90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

***CO-LEAD CLASS COUNSEL***

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>                               Plaintiff,<br>      vs.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company,<br><br>                             Defendant. | Case No. 5-08-CV-00868 (RMW)<br><br>**JOINT PRETRIAL STATEMENT**<br><br>**Honorable Ronald M. Whyte** |

Pursuant to the Court's Standing Order re: Pretrial Preparation, Plaintiff Felton A. Spears, on behalf of the class (herein, "Plaintiff"), and Defendant eAppraiseIT, LLC ("EA" or "Defendant") hereby submit the following Joint Pretrial Statement. This Joint Pretrial Statement addresses only those issues relating to the initial bifurcated issue of "whether there was inflation of appraisals on an aggregate basis as a result of an agreement between WMB [Washington Mutual Bank or "WaMu"] and EA." *See* Dkt. No. 438 at 2 (Order on bifurcation). The parties reserve the right to address all other issues in the event that the action is not resolved in its entirety through resolution of the bifurcated issue.

The Parties anticipate filing numerous motions *in limine* for pre-trial evidentiary rulings that will include, among other things, challenges to experts under *Daubert*. Accordingly, the parties reserve their right to amend this Joint Pretrial Statement to the extent permitted by the Court.

### a.     Substance of the Action

This is a certified class action in which Plaintiff represents "[a]ll consumers throughout the United States who, on or after June 1, 2006, received home loans for personal, as opposed to business or commercial purposes, originated by Washington Mutual Bank, F.A., utilizing appraisals that they paid for and obtained from defendant eAppraiseIT." Dkt. No. 438 at 25. EA is an appraisal management company ("AMC") and contracted with residential property mortgage lenders to provide appraisal management services in connection with home loans.

### **Plaintiff's Statement**

Plaintiff brings his claim pursuant to Section 8(a) of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2607(a).

RESPA Section 8(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." Plaintiff alleges EA violated Section 8(a)'s prohibition on receiving a thing of value pursuant to an unlawful agreement with WMB to provide appraisals with inflated values when and where WMB needed such inflation to justify making a loan,

in exchange for the continued referral of appraisal business from WMB. Dkt. No. 149, Second Amended Complaint, ¶¶ 6-7, 37-40, 89-93.

In granting summary judgment for Plaintiff, and in dismissing EA's First Affirmative Defense, this Court found that "Plaintiffs are correct that RESPA § 8(a) does not include any express intent requirement.  Section 8(a) only requires an 'agreement or understanding'." Dkt. 438 at 19. This Court further found that "§ 8(a) of RESPA does not require a showing that EA knew that it was engaging in illegal activity in order to establish liability for entering into an agreement to inflate appraisals in exchange for business referrals." Dkt. 438 at 20.  An agreement under RESPA has nothing to do with whether the conduct forming the agreement was intentional or knowing.  The question is whether the conduct occurred.  As the regulation explicitly spells out, "An agreement or understanding for the referral of business incident to or part of a settlement service need *not be written or verbalized* but may be established by a practice, pattern or course of conduct. When a thing of value is received repeatedly and is connected in any way with the volume or value of the business referred, the receipt of the thing of value is evidence that it is made pursuant to an agreement or understanding for the referral of business.". C.F.R. § 3500.14(e) (2010). Despite EA's constant and shifting efforts to constantly inject intention into the equation, they are just as unjustified now as they have always been.

Despite this Court's ruling, EA continues to attempt to raise intent as a defense.  Given the Court's ruling, Plaintiff believes EA's defense that it did not agree to "intentionally inflate appraisals" and that any appraisals were not "intentionally inflated" is a legally incompetent and irrelevant defense to the RESPA claim being tried.  In addition, EA's continued attempts to raise intent as a defense are improper in light of this Court's ruling.  Accordingly, Plaintiff will be moving *in limine* to preclude presentation of such defense at trial.

EA tries to claim that it has not run afoul of the Court's rulings because it argues that EA required "intent" to enter an agreement to "intentionally" inflate appraisals.  First, the Court has already acknowledged "that RESPA § 8(a) does not include an intent component and that defendants may be liable for even inadvertent violations."  Dkt. 438 at 19-20.  Even ignoring this Court's previous acknowledgment, the Court need look no further than the relevant implementing regulation

1  to see that an agreement under RESPA is clearly defined, and has nothing to do with intentional or

2  knowing conduct – the question is whether the *conduct* occurred.  As the regulation states, "An

3  agreement or understanding for the referral of business incident to or part of a settlement service

4  need *not be written or verbalized* but may be established by a practice, pattern or course of conduct.

5  When a thing of value is received repeatedly and is connected in any way with the volume or value

6  of the business referred, the receipt of the thing of value is evidence that it is made pursuant to an

7  agreement or understanding for the referral of business.". C.F.R. § 3500.14(e) (2010 (emphasis

8  added).

9        The Court bifurcated the trial into two stages. The first stage is a trial on liability to decide

10  whether EA provided WMB with appraisals that were inflated in the aggregate as a result of an

11  agreement between WMB and EA. Dkt. No. 438 at 2. If Plaintiff prevails on the bifurcated issue,

12  damages will be adjudicated by a review of HUD-1 forms and, potentially, verified claim forms

13  from Class Members to confirm that they paid for their appraisal fee, the amount of the appraisal fee,

14  and the RESPA status of their loans for the purpose of calculating damages. Dkt. 438 at 2.

15  **Defendant's Statement**

16        Plaintiffs bring their remaining claim pursuant to Section 8(a) of the Real Estate Settlement

17  Practices Act ("RESPA"), 12 U.S.C. §2607(a).  EA denies Plaintiffs' allegations and states that the

18  appraisals it sourced were compliant with applicable law.  In particular, EA denies that it entered

19  into an agreement with WMB to intentionally inflate appraisals on home loans, and denies that any

20  of the appraisal services were intentionally inflated.  EA asserts numerous defenses, and states that

21  Plaintiffs are not entitled to any recovery in this litigation.

22        Plaintiffs' assertion that intent is not relevant to their claim mischaracterizes the Court's

23  summary judgment order and EA's purpose in including this language.  EA is not suggesting that

24  "intent" is a standalone element of a RESPA 8(a) violation and has not offered a separate "intent"

25  instruction.  Rather, EA is pointing out the obvious fact that EA can be liable only if EA acted

26  intentionally in entering into an "agreement" to inflate appraisals.  The Court held that "§ 8 of

27  RESPA does not require a showing that EA knew that it was engaging in illegal activity in order to

28  establish liability for entering into an agreement to inflate appraisals in exchange for business

referrals." Dkt. No. 438 at 20:16-18.  The Court never held that Plaintiffs can prevail under a theory that there was an unintentional agreement to inflate appraisals or that appraisals were inflated unintentionally.  In fact, in dismissing EA's first affirmative defense, the Court's expressly stated: "[A]s a practical matter in this case, the dismissing of the defense is of no apparent consequence." *Id.* at 20:21-24.  The Court further stated:  "The parties dispute whether plaintiffs must prove a civil conspiracy or an agreement, and the differences between the two.  The court finds this dispute is largely semantic.  RESPA § 8(a) requires an 'agreement or understanding' and that is what the court will require plaintiffs to prove." *Id.* at 12 n.15.  The Court's statement that the distinction between an "agreement" and a "conspiracy" is "largely semantic" is consistent with EA's position that it could not unintentionally or accidentally agree or conspire to inflate appraisals.  Thus, Plaintiffs will be required to prove intentional conduct to prevail on their proffered theory of recovery under RESPA.  Accordingly, the jury must consider whether EA intentionally entered into an agreement or understanding to inflate appraisals.

Plaintiffs argue that an agreement need not be written or verbalized but can be established by "practice, pattern or course of conduct."  However, the argument is a straw man.  EA does not contend that the agreement Plaintiffs allege (viz. appraisals inflated in the aggregate in exchange for a referral of business) cannot be proven by pattern evidence.  Instead, EA is arguing that, however the agreement is proven, it must prove an actual intentional agreement to inflate.  Agreements are not entered into accidentally or negligently, and appraisals that are inflated for reasons other than the alleged agreement (for instance, where the appraiser simply made an honest error in judgment) are irrelevant and not a violation of RESPA.

If a second phase of the trial is necessary, the Court has identified the manner in which it will be conducted.  Dkt. No. 438 at 2:8-22.

### b. Stipulations, Agreed Statement and Undisputed Facts

### i. Stipulations

1.  The parties have stipulated to the authenticity of WMB and EA emails and attachments, appraisals, reports, and data generated by WMB or EA.  *See* Dkt. No. 331 at 1-2 (Order entered August 30, 2013).

2. The parties have stipulated that exhibits admitted at trial and capable of being displayed electronically may be provided to the jury in electronic form for viewing in the jury room.

3. The parties have stipulated that unsigned copies of transcripts of depositions taken in the above-entitled action may be used at trial as if they were signed.

4. The parties have exchanged proposed trial exhibits. Prior to the pretrial conference, the parties will attempt to agree on authenticity, and possibly admissibility, where they can.

5. **Plaintiff's Statement**: Plaintiff asked EA to agree to provide witnesses who have agreed to testify for EA's case during Plaintiff's case-in-chief. The majority of witnesses deposed in this action are current and former EA and WaMu employees that are not within the subpoena power of this Court to appear at trial. However, many of these witnesses were represented by EA's counsel at their depositions, and EA has listed many of them as probable or potential witnesses at trial, suggesting EA has obtained their agreement to appear at trial voluntarily. For the convenience of the witnesses and in deference to the preference for live testimony over transcripts or videotapes, Plaintiff asked EA to provide the witnesses that are willing to attend trial to be presented during Plaintiff's case-in-chief. EA did not agree. Immediately following EA's having alerted Plaintiff of this potential issue, Plaintiff modified his designation of witnesses to ensure that witnesses who have deposition testimony designated are listed as "may call" witnesses, since those witnesses may not be within the Court's trial subpoena power and may possibly not agree to appear at trial.

**Defendant's Statement**: In accordance with this Court's Standing Order, EA has listed both the witnesses it will call at trial and those it may call at trial. Because EA, a defendant, is proceeding second, for all "may call" witnesses EA will not make its ultimate determination on whether to call the witness at trial until EA sees Plaintiffs' case-in-chief. Moreover, although EA will seek to secure the attendance of some of its "may call" witnesses, EA cannot be sure that witnesses outside of the Court's

subpoena power will agree to attend.  Plaintiffs' assumption that EA's representation of some former EA employees at deposition means EA controls the attendance of those witnesses is incorrect (EA's representation of those witnesses took place at depositions that occurred within the subpoena power of the Court).  EA also notes that, while Plaintiffs refer to their alleged attempt to avoid video designations in preference for live witnesses, Plaintiffs have improperly "designated" ten depositions in their entirety (i.e., the whole transcript).

6. **Plaintiff's Statement**:   To avoid burdening the Court unnecessarily, Plaintiff proposed the procedure detailed below, which the Court has approved in other litigation, for lodging designated, highlighted, color coded, annotated deposition testimony. This procedure will improve efficiency by presenting the Court with only those issues that need the Court's attention and by avoiding the premature lodging of unnecessarily large volumes of paper transcripts while allowing the party offering the testimony adequate time to prepare a final, edited version of the testimony to display or read to the jury. Plaintiff proposes that:  (a) four court days prior to the trial day on which the deposition testimony is expected to be presented, the party which will be proffering the testimony will provide the other party with the transcript portions actually proposed to be presented, and the parties will thereafter meet and confer to attempt to resolve the objections and counter-designations to the proposed testimony; and (b) two court days prior to the trial day on which the deposition testimony is expected to be presented, the remaining designated, highlighted, color coded, annotated deposition testimony will be lodged with the Court for resolution of any remaining objections and/or counter-designations. EA did not agree.   EA first complains that Plaintiff has not timely lodged his deposition excerpt designations, but that is not true as they are attached as Exhibit A, which Plaintiff filed since EA did not agree to Plaintiff's proposed procedure.  EA then acknowledges that Plaintiff filed designations, but complains that the designations are too broad citing 10 deposition transcripts for which whole transcripts were designated.  In actuality, the so-called 10

transcripts are the transcripts of 4 key witnesses: 1) Anthony Merlo (EA's President); 2) David Feldman (EA's Vice President and later President); 3) John Parres (WMB's key officer in effectuating the outsourcing of appraisals to EA); and 4) James Dillon (WMB's appraisal auditor who created and disseminated monthly reports to WMB and EA officers showing high percentages of appraisals with unsupportable values). Plaintiff also noted which portions would likely be used, but until the Court rules on the *limine* motions Plaintiff was concerned that more limited designations of these key witnesses would prejudice them, which is why Plaintiff proposed the procedure rejected by EA.

**Defendant's Statement**:  The Court's Standing Order re: Pretrial Preparation already provides a procedure and deadlines for designating and lodging deposition testimony with the Court.  According to that order, deposition designations must be lodged with the Court by October 2, 2014.  The deadline for objections and counter-designations is October 9. 2014.   The deadline for objections to counter-designations is October 15, 2014.  The proposed "procedure" that Plaintiffs outline above is an improper attempt to unilaterally extend the Court's designation deadlines (and do so for Plaintiffs only).  *See also* Dkt. No. 439 (order denying Plaintiffs' motion to extend pretrial deadlines, stating:  "The parties shall follow the schedule set forth in the court's Standing Order re: Pretrial Preparation.").  Plaintiffs have also failed to abide by the Court's designation deadlines by designating *10 entire deposition transcripts* (and identifying full deposition transcripts as trial exhibits).   *See* Plaintiffs' Deposition Designations and Plaintiffs' Exhibit List, attached hereto as Exhibits A & E.  EA will object to these inappropriate designations or any other late ones at the appropriate time.

**ii. Agreed Statement**

This is a certified class action in which Plaintiff represents all consumers throughout the United States who, on or after June 1, 2006, received home loans for personal, as opposed to business or commercial purposes, originated by Washington Mutual Bank, F.A., utilizing appraisals

that they paid for and obtained from defendant eAppraiseIT.   Plaintiff claims that EA violated Section 8(a) of RESPA by providing WMB with appraisals that were "inflated in the aggregate" as a result of an agreement between WMB and EA to exchange inflated appraisals for referral of appraisal management business from WMB.

**Plaintiff's Statement**

This Court found in granting summary judgment for Plaintiff and dismissing EA's First Affirmative Defense that "Plaintiffs are correct that RESPA §8(a) does not include any express intent requirement.   Section 8(a) only requires an 'agreement or understanding'." Dkt. 438 at 19. This Court further found that "§8(a) of RESPA does not require a showing that EA knew that it was engaging in illegal activity in order to establish liability for entering into an agreement to inflate appraisals in exchange for business referrals." Dkt. 438 at 20.   Given the Court's ruling, Plaintiff believes EA's defense that it did not agree to "intentionally inflate appraisals" and that any appraisals were not "intentionally inflated" is a legally incompetent, irrelevant, and improper defense to the RESPA claim being tried.   Plaintiff has simultaneously moved in *limine* to preclude presentation of such defense at trial.

**Defendant's Statement**

EA denies Plaintiffs' allegations and states that the appraisals it sourced were compliant with applicable law.   In particular, EA denies that it entered into an agreement with WMB to intentionally inflate appraisals on home loans, and denies that any of the appraisal services were intentionally inflated.   As set forth in Section a above, EA disputes Plaintiffs' characterization of the Court's summary judgment order.

**iii. Undisputed Facts**

The parties hereby stipulate and propose that the following facts be admitted and require no proof:

1.   Washington Mutual Bank was a financial institution that made mortgage loans to borrowers.

2.  Prior to mid-2006, WMB managed its own appraisal services with in-house appraisers and appraisal managers, and WMB also contracted with fee appraisers who were not employed by WMB.

3.  In mid-2006, WMB retained two outside appraisal management companies – eAppraiseIT and one of its competitors, LSI Appraisal – to provide appraisal management services to WMB.

4.  eAppraiseIT is an appraisal management company (also known as an "AMC").

5.  eAppraiseIT provided appraisal management services to WMB from mid-2006 through about the first week of November 2007.

6.  WMB ceased ordering appraisal management services from eAppraiseIT on or about the first week of November 2007.

7.  During the course of their relationship, eAppraiseIT provided more than 230,000 appraisal management services to WMB, including appraisals, appraisal reviews, and other appraisal services.

8.  WMB's Appraisal Business Oversight group (also known as "ABO") had primary responsibility within WMB for the oversight of appraisal management services provided by outside appraisal management companies.

9.  During the time period at issue in this case, EA was a Delaware limited liability company.

10. In 2006 and 2007, EA maintained a service center located at 12395 First American Way, Poway, California.

11. Project Cornerstone was the name WMB gave to the outsourcing of its appraisal management function.

12. WMB began outsourcing appraisal management in June-July of 2006.

13. EA stopped providing appraisal management services to WMB on approximately November 1, 2007.

14. For WMB loans identified as "Single Family Residence Funded and Unfunded Loans" between July 2006 and October 2007, ROV statistics produced in this case show a range of rates from 1.7% to 4.3%. [CHASE000030-31].

**Plaintiff's Statement**:  Plaintiff submitted a list of 222 undisputed facts in an attempt to streamline the trial.  Defendant did not provide a response to any of those individual facts.  Rather, Defendant informed Plaintiff that it objected to Plaintiff's proposed facts in general, and added less than 10 proposed undisputed facts to the above list.

**Defendant's Statement**:  Plaintiffs' claim that Defendant did not respond to Plaintiffs' proposed facts is incorrect.  Facts to which Defendant agreed to stipulate are included in this Joint Pretrial Statement.  EA objected to other of Plaintiffs' proposed facts on the basis that, among other things, many of them purported to characterize documents and testimony.  Because admissible documents and testimony should be shown to the jury directly, EA does not believe that is appropriate for the parties to proffer competing interpretations of documents and testimony as proposed stipulated facts.  Plaintiffs also improperly asked EA to stipulate to facts that are clearly disputed and not even at issue in the initial bifurcated phase of this case (for example, Plaintiffs asked EA to stipulate that:  "Class Members' Washington Mutual loans are federally related mortgage loans under RESPA.").  Plaintiffs also improperly asked EA to stipulate to opinions proffered by Plaintiffs' experts and lifted nearly verbatim from their expert reports.

    **c.**    **Disputed Factual Issues**

The parties' list of disputed factual issues is not intended to be a comprehensive list of every fact that the parties will prove at the November 2014 trial.  The parties reserve the right to prove additional facts in support of their claims and defenses.  The list of disputed factual issues are those of each party, and their inclusion in the lists below does not indicate any agreement by the other party that the statements are correct.

    **1.**    **Plaintiff's Disputed Factual Issues**

A.  Whether EA had an agreement or understanding with WMB to provide WMB with appraisals with inflated values.

B.  Whether EA provided WMB with appraisals with inflated values in the aggregate.

C.  Whether EA had an agreement or understanding with WMB to provide appraisals with inflated values in exchange for WMB providing EA with referrals for appraisal business.

D.  The length of time EA had an agreement or understanding with WMB to provide WMB with appraisals with inflated values in exchange for WMB providing EA with appraisal business in violation of Section 8(a) of RESPA.

**2.**    **Defendant's Disputed Factual Issues**

A.  Whether EA agreed to provide WMB with appraisals that were intentionally "inflated in the aggregate" in exchange for a referral of appraisal management business from WMB.

B.  If there was such an agreement, when that agreement began, and when it ended.

C.  If there was such an agreement, whether it actually caused there to be intentional "inflation in the aggregate" of appraisals for the time period in which the agreement was in place.

D.  Whether the receipt of appraisals intentionally "inflated in the aggregate" (if it occurred) constituted a thing of value to WMB, including given the percentage of loans WMB held for investment as opposed to selling or securitizing.

E.  What constitutes "inflation in the aggregate" of appraisals, and the proper method of measuring it.

**d.**    **Disputed Legal Issues**

The parties' list of disputed legal issues is not intended to be a comprehensive list of every issue that will be addressed by the parties at the November 2014 trial.  The parties reserve the right to address additional legal issues in support of their claims and defenses.  The disputed legal issues are those of each party, and their inclusion in the lists below does not indicate any agreement by the other party that the statements are correct, appropriate for determination at this stage of the case, or properly at issue.

The parties anticipate motions *in limine* on numerous evidentiary issues before trial.  In addition, the parties anticipate evidentiary issues arising during trial.  Some issues may inevitably arise, and both parties reserve the right to raise legal issues, outside the presence of the jury, when necessary.

1.   **Plaintiff's Disputed Legal Issues**:

    A.   Whether EA's agreement or understanding with WMB to provide WMB appraisals with inflated values in exchange for WMB providing EA with appraisal business violates Section 8(a) of RESPA, 12 U.S.C. § 2607(a).

    B.   Whether Plaintiffs' evidence presented to show EA provided WMB with appraisals that had inflated values in the aggregate and that WMB securitized more than 2/3 of its home loans made with EA appraisals is sufficient to show a "thing of value" to WMB under Section 8(a) of RESPA, 12 U.S.C. § 2607(a).

    C.   Whether the statute of limitations as to any individual Class Member was equitably tolled.

    D.   The legal issues raised in Plaintiffs' motions *in limine*.

2.   **EA's Disputed Legal Issues**:

    A.   Whether, in light of the determination of each of the disputed factual issues noted above, EA could have violated Section 8(a) of RESPA as to any purported class member.

    B.   Issues raised in EA's motions *in limine*.

    e.   **Deposition Excerpts and Discovery Responses**

**Plaintiff's Statement**:  Plaintiffs' list of deposition testimony and other discovery responses that they may offer as evidence at trial, other than solely for impeachment or rebuttal, is attached hereto as Exhibit A.   Plaintiff intends to refine the specific portions of the testimony and other discovery responses that he may offer as evidence at trial on a rolling basis, and will make final designations as described in Section b.i.6 above, unless the Court directs otherwise. Additionally, the inclusion of transcript testimony to be offered by Plaintiff is subject to change based on any order by the Court that those witnesses who were deposed and have agreed to appear at trial for EA be available during Plaintiff's case-in-chief as described in Section d., *supra*.   Likewise, Plaintiff's transcript designation may change once the Court's rules on the *limine* motions of the parties. Plaintiff further responds to EA's criticisms in Section b.i.6 above.

**Defendant's Statement**:  EA's list of deposition testimony and other discovery responses that it may offer as evidence at trial, other than solely for impeachment or rebuttal, is attached hereto

as Exhibit B.   The Court's Standing Order re: Pretrial Preparation provides clear deadlines for designating and lodging deposition testimony with the Court.   Plaintiffs' statement that they "intend to refine" their designations later "on a rolling basis" and to make "final designations as described" in Section b.i.6 above is an improper attempt to unilaterally extend the Court's designation deadlines (and do so for Plaintiffs only).

**f.      Witnesses to be Called**

Plaintiff's list of witnesses that they may call at trial, other than solely for impeachment or rebuttal, is attached hereto as Exhibit C.

EA's list of witnesses that it may call at trial, other than solely for impeachment or rebuttal, is attached hereto as Exhibit D.

**g.      Exhibits, Schedules and Summaries**

**Plaintiff's Statement**:  The exhibit list of documents and other items to be offered at trial by Plaintiff, other than solely for impeachment or rebuttal, is attached as Exhibit E.   Each item includes an exhibit number and a brief statement describing its substance or purpose, and the identity of the sponsoring witness.   Plaintiff has attempted to meet and confer in good faith with EA to resolve objections to exhibits before trial.   At this time, the objections Plaintiff requests the Court to address at the pretrial conference are presented in Plaintiff's motions *in limine*.   Plaintiff reserves the right to amend his exhibit list once the Court rules on the parties' *limine* motions.   Plaintiff also notes that EA submitted a list of almost 3000 exhibits to Plaintiffs.   Plaintiff, who has the burden of proof, made a good faith attempt to whittle down their exhibit list.   Plaintiff does not believe that Defendant's list of almost 3000 exhibits complies with the Court's standing order to limit the exhibits to those essential to a fair presentation of their case, and serves only to frustrate Plaintiff's ability to assert any objections thereto.   Accordingly, Plaintiff anticipates he may not be able to assert all objections to the almost 3000 exhibits Defendant identifies within the one-week time-frame provided by the Court's standing order, while responding to Defendant's *limine* motions at the same time.

**Defendant's Statement**:  The exhibit list of documents and other items to be offered at trial by EA, other than solely for impeachment or rebuttal, is attached as Exhibit F.   Each item includes

an exhibit number and a brief statement describing its substance or purpose, and the identity of the sponsoring witness.  Plaintiffs' accusation that Defendant's exhibit list violates this Court's Standing Order is baseless.  Depending upon how Plaintiffs' put on their case-in-chief, including which isolated email excerpts and isolated alleged appraisal errors Plaintiffs assert, Defendant will respond.  The parties have a combined trial estimate of 110 hours, Plaintiffs are attempting to designate 32 deposition transcripts (10 in their entirety), and so the fact that there are also a significant number of trial exhibits is unsurprising.  It should also be noted that more than 1,500 of Defendant's exhibits relate directly to the "sample" of loans and appraisals that Plaintiffs selected as the foundation of their "inflation in the aggregate" expert case, specifically:   original appraisals (approximately 375 exhibits), loan files (approximately 500 exhibits), appraiser work files (approximately 680 exhibits).  Defendants must have the flexibility to use these documents at trial depending upon how Plaintiffs attempt to put on their "inflation" case (for instance, depending upon whether Plaintiffs attempt to prove their case through isolated, and misleading, "examples" and "samples").  Putting aside these loan-level documents, there are approximately 1150 other exhibits on EA's exhibit list, which is comparable to Plaintiffs' list of approximately 1000 exhibits.  Moreover, the number of exhibits on Plaintiffs' exhibit list is extremely understated because of the way Plaintiffs have chosen to number their exhibits.  In certain instances, Plaintiffs marked literally hundreds of documents with a single exhibit number.  An example is Exhibit 1965, which Plaintiffs describe as the "Expert Report of Steve Smith (with exhibits and work files)."  Because Mr. Smith submitted more than 200 separate expert reports and 200 separate work files, Exhibit 1965 appears to contain more than 400 documents by itself.

Finally, Defendant disagrees that Plaintiffs can simply choose to ignore the deadlines for exhibit objections set forth in the Court's Standing Order re: Pretrial Preparation.   Plaintiffs' complaint that they "may not be able to assert all objections . . . while responding to Defendant's *limine* motions at the same time" is inappropriate, as the same deadlines apply to both parties under the Court's Standing Order.

Joint Statement:  The parties previously stipulated to the authenticity of WMB and EA emails and attachments, appraisals, reports, and data generated by WMB or EA.  *See* Dkt. No. 331 at 1-2 (Order entered August 30, 2013).

### h.    Relief Prayed

**Plaintiff's Statement**:

Cognizant of the Court's order that the trial is bifurcated and the issue of class membership and damages will be tried in a second phase if Plaintiff proves liability, for the sake of completeness the relief Plaintiff ultimately seeks if successful in proving liability includes:

(a) judgment against EA in the amount of damages equal to the amount Class Members paid for settlement services done by EA in connection with WaMu loans times three;

(b)  judgment awarding Plaintiff his expenses, costs and attorneys' fees in this action, and awarding an amount for Plaintiff's time and effort as a representative of the Class;

(c)  pre and post judgment interest; and

(d) such other further relief as the Court deems just and proper.

Plaintiff contends EA's belated request for attorneys' fees is meritless, and could be considered unwarranted by existing law, unsupported by facts, or designed merely to "harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]  Fed.R.Civ.P. 11(b).  EA's First Amended Answer omits a fee request so EA has not preserved the right to seek fees, and Plaintiff does not consent to an amendment of EA's Answer at this late date to add a fee request.  Dkt. No. 301 at 12-13.  Moreover, EA cannot contend in good faith, given the background and posture of this litigation and binding Ninth Circuit Law, that EA would be entitled to fees should EA prevail at trial. *See Lane v. Residential Funding Corp*, 323 F.3d 739, 747-48 (9th Cir. 2003) (concluding "that RESPA's attorneys fee provision falls closer to the rule of *Christiansburg*[;] *i.e.*, "successful defendants are only entitled to fees where the plaintiff's action is found to be frivolous, unreasonable or without foundation"); *Orange v. Wachovia Bank, N.A.*, 2013 WL 7869377, at *4-5 (C.D.Cal. 2013) (citing *Lane*; denying defendant's motion for fees under RESPA); *Martenson v. RG Fin.*, 2011 WL 855639, at *1 (D. Ariz. 2011) ("Defendants must satisfy the 'frivolous, unreasonable or without foundation' standard to receive fees" under RESPA).

As for Ms. Scholl's RESPA claim, it survived EA's motions to dismiss and for judgment on the pleadings. Moreover, Ms. Scholl's deposition that EA now relies on, albeit inaccurately, as the factual basis for its specious fee claim was taken in 2009. EA could have made a motion for summary judgment as to Ms. Scholl's RESPA claim at any time in the more than 4 years between 2009 and July 1, 2014 when it finally moved for summary judgment, but it did not. It also could have sought leave in that same 4 year period to amend its Answer to seek fees, but it did not. EA tries to get the Court to overlook these fatal barriers to its untimely and meritless fee request by re-arguing its motion for summary judgment. As explained in the summary judgment briefing, Ms. Scholl testified that she purchased her property as a personal investment, and argued that under the pertinent 5 factor test she believed her loan was for personal purposes subject to RESPA. Dkt. 410-03 at 22-23; Dkt. 402-04 at 14 n.15. While the Court ultimately disagreed, her claim does not rise to a level of frivolousness warranting imposition of fees. Indeed, had EA thought Ms. Scholl's claim was so obviously baseless in light of her 2009 deposition testimony it would have not waited 4 years to move for summary judgment in 2014. Instead, EA consciously avoided reliance on her testimony by moving for judgment on the pleadings in 2013, which was denied. EA's untimely attempt to make Ms. Scholl pay for its litigation decisions is itself frivolous.

**Defendant's Statement**:

EA denies Plaintiffs' allegations, states that Plaintiffs are not entitled to any recovery in this litigation, and prays for judgment as follows: (1) that Plaintiffs and members of the purported class take nothing and that Plaintiffs' RESPA claim be dismissed; (2) for costs of suit and attorneys' fees; and (3) for such other relief as the Court deems proper.

EA is entitled to attorneys' fees because, among other things, Ms. Scholl's RESPA claim was frivolous, unreasonable, and without foundation. *See Stetler v. Greenpoint Mort. Funding Inc.*, 2008 WL 2115472, at *2 (E.D. Cal. May 16, 2008). The Code of Federal Regulations and Official Staff Commentary have made clear for nearly two decades that non-owner-occupied rental properties are exempt from RESPA coverage. 12 C.F.R. § 1024.5(b)(2); 12 C.F.R. Pt. 226, Supp. I, Cmt. 3(a)(4). Ms. Scholl's loan falls squarely within that exemption, as the Court held in granting summary judgment. Dkt. No. 438 at 13:7 19. The undisputed evidence (indeed Ms. Scholl's own admissions)

proves that Ms. Scholl did not intend to, and in fact did not, occupy the property (she lived in Northern California, and her loan was for one of a series of rental properties she purchased in Edmond, Oklahoma).  Instead, she – along with her business "partners" – bought the property with an agreement in place to lease it to a master developer for at least two years, which is reflected by her admission that she bought the property for investment purposes.  *See* Dkt. No. 385-5 (EA's MSJ) at 4:14-5:12; Dkt. No. 438 (MSJ Order) at 13:7-19.  Given these undisputed facts, out of Ms. Scholl's own mouth, she had no reasonable basis to assert that she bought her property for a non-business purpose.  As such, EA is entitled to attorneys' fees.  *See Stetler*, 2008 WL 2115472, at *2 (awarding attorneys' fees to a prevailing defendant under RESPA when Plaintiff's assertion that his claim was not frivolous was "untenable given the facts before the Court").  In addition, Plaintiffs cite no authority for the proposition that a defendant is required to parrot the words "attorneys' fees" in order to be entitled to them, and indeed, EA prevailed on Plaintiffs' express breach of contract claim (for which Plaintiffs sought attorneys' fees) at the motion to dismiss stage.  *See Sea-Land Service, Inc. v. Murrey & Son's Co.*, 824 F.2d 740, 745 (9th Cir. 1987) (award of attorneys' fees to prevailing party was proper despite party's failure to request attorneys' fees in its initial pleading); *OneBeacon Ins. Co. v. Haas Industries, Inc.*, 2008 WL 4291506, at *1-2 (N.D. Cal. Sept. 18, 2008) (awarding attorneys' fees to defendant even though defendant did not pray for attorneys' fees in its answer).

### i.       Estimate Time of Trial

The Court sets aside approximately 19 hours per week for trial between Monday and Thursday, with jury selection held on Mondays.  The trial in this matter is scheduled to begin Monday November 24, 2014, and the Court will not be in session on Thursday, November 27, 2014. The Court will also be unavailable between December 22, 2014 and January 2, 2015.

Plaintiff estimates he will require 50 hours for his case-in-chief.  EA estimates it will need 60 hours for the presentation of its case.  Given the Court's trial schedule and unavailable days, the parties estimate the trial will go from November 24, 2014 to February 6, 2015.

**j.      Amendments, Dismissals**

<u>**Plaintiff's Statement**</u>:

Plaintiff is not proposing any amendments to his pleadings, and is not otherwise seeking the dismissal of EA's remaining affirmative defense.  As set forth above, Plaintiff opposes any attempt by EA to amend its Answer to add a belated attorney fee request at this late hour.  Plaintiff also contends any judgment against Sidney A. Scholl is premature prior to the entry of final judgment in this matter.  Indeed, entry of judgment as to one of multiple parties would violate the policy against piece-meal appeals since Ms. Scholl asserts the same RESPA claim based on the same conduct of EA as that proceeding to trial for Mr. Spears and the Class.  *See* <u>*Wood v. GCC Bend, LLC,*</u> 422 F.3d <u>873 (9th Cir. 2005)</u> (reversing entry of separate judgment because of complete factual overlap between the claim for which final judgment was entered and the extant claims in the district court action).

<u>**Defendant's Statement**</u>:

EA requests that judgment be entered against Plaintiff Sidney A. Scholl pursuant to the Court's order granting EA's motion for summary judgment on her RESPA claim.  *See* Dkt. No. 438 at 44:3-4.  Because EA's motion for summary judgment was granted as to Ms. Scholl's claim in its entirety, there is no reason for delaying entry of final judgment.  Plaintiffs cite case law purportedly in support of not entering judgment when there are overlapping facts.  However, as this Court is aware, investors like Ms. Scholl cannot possibly recover in this case.  So there is no "overlapping factual issue" to be decided in any phase of this case that could possibly affect Ms. Scholl or this Court's purely legal determination as to her failed lawsuit (all prior claims of Ms. Scholl have also been dismissed).

**k.      Settlement Discussions**

The parties participated in a half-day mediation (reduced from a full day at Defendant's request) with the Honorable John Leo Wagner on September 17, 2014. The parties participated in a second mediation, also with the Honorable John Leo Wagner, on September 25, 2014.  A double-blind mediator's proposal was presented to the parties on September 29, 2014.  The parties were unable to reach a settlement at that time and have exhausted settlement possibilities.

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**

**KELLER ROHRBACK L.L.P.**

By: /s/ Joseph N. Kravec, Jr.
    Joseph N. Kravec, Jr., Co-Lead Class
    Counsel
    (*pro hac vice*)
    Wyatt A. Lison (*pro hac vice*)
    McKean J. Evans (*pro hac vice*)

By: /s/ Lynn Lincoln Sarko
    Lynn Lincoln Sarko (*pro hac vice*)
    Tana Lin (*pro hac vice*)
    Gretchen Freeman Cappio (*pro hac vice*)
    Raymond J. Farrow (*pro hac vice
    application forthcoming*)
    Harry Williams IV (*pro hac vice*)

429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Tel:    (412) 281-8400
Fax: (412) 281-1007

1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

**KELLER ROHRBACK L.L.P.**

Matthew Preusch (SBN 298144)

1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497

*Co-Lead Trial Counsel for Plaintiff and the Class*

**LAW OFFICES OF JANET LINDNER SPIELBERG**

**BRAUN LAW GROUP, P.C.**

By: /s/ Janet Lindner Spielberg
    Janet Lindner Spielberg (SBN 221926)

By: /s/ Michael D. Braun
    Michael D. Braun (SBN 167416)

12400 Wilshire Boulevard, #400
Los Angeles, CA 90025
Tel:    (310) 392-8801
Fax:    (310) 278-5938

10680 West Pico Blvd., Suite 280
Los Angeles, CA 90064
Tel: (310) 836-6000
Fax: (310) 836-6010

*Co-Lead Counsel and Trial Counsel for Plaintiff and the Class*

*Trial Counsel for Plaintiff and the Class*

**IRELL & MANELLA LLP**

By:  s/Justin Owens via consent
        Justin N. Owens (254733)

John C. Hueston (164921)
A. Matthew Ashley (198235)
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

***Attorneys for Defendant***
***eAppraiseIT, LLC***

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA       )
                            )  ss.:
COUNTY OF ALLEGHENY        )

      I am employed in the County of Allegheny, State of Pennsylvania. I am over the age of 18 and not a party to the within action. My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA 15219.

      On October 2, 2014, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**JOINT PRETRIAL STATEMENT**

**[X]**    **BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:** I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

      I declare that I am admitted *pro hac vice* in this action.

      I declare under penalty of perjury under the laws of the United States that the above is true and correct.

      Executed on October 2, 2014, at Pittsburgh, Pennsylvania.

                                 s/Joseph N. Kravec, Jr.
                                  Joseph N. Kravec, Jr.