Joseph N. Kravec, Jr. (*pro hac vice*)
**FEINSTEIN DOYLE**
 **PAYNE & KRAVEC, LLC**
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
E-mail: jkravec@fdpklaw.com

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET**
 **LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California 90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

*CO-LEAD CLASS COUNSEL*

*Additional Plaintiff's Counsel
on signature page

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br>        vs.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company,<br><br>                              Defendant. | Case No. 5-08-CV-00868 (RMW)<br><br>**NOTICE OF MOTION, PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND SUPPORTING MEMORANDUM**<br><br>**Honorable Ronald M. Whyte**<br><br>Date:   December 5, 2014<br>Time:   9:00 a.m.<br>Place:  Courtroom 6, 4th Floor<br>           280 South 1st Street<br>           San Jose, CA 95113 |

# TABLE OF CONTENTS

NOTICE OF MOTION.....................................................................................................1

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL ....................4

SUMMARY OF THE ARGUMENT ....................................................................................4

ARGUMENT ..............................................................................................................6

I.   FACTUAL BACKGROUND ...................................................................................6

    A.  Nature of the Action...................................................................................6

    B.  The Parties Settled the Case on the Eve of Trial, Once Years of Complex
        Litigation and Contentious Discovery Had Been Completed.............................7

    C.  Settlement Discussions ...............................................................................9

    D.  Class Certification, the Definition Previously Approved, and the Proposed
        Settlement Class Definition ........................................................................10

II.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ...............................11

    A.  The Substantive Terms of the Settlement are Fair, and Should Be Granted
        Preliminary Approval.................................................................................11

        1.  The proposed Settlement is within the range of possible approval as fair,
            reasonable, and adequate ......................................................................11

            a.  The relief achieved matches the claims in the SAC .............................12

            b.  The Settlement is particularly reasonable given EA's lack of asset ..................13

        2.  The Settlement was a product of adversarial arms' length negotiations ....................14

        3.  The proposed Settlement is recommended by Settlement Class Counsel ..................15

        4.  Summary .............................................................................................15

    B.  The Settlement Class Satisfies the Class Certification Elements of Rule 23 ...................15

        1.  The litigation Class has been certified and tested by this Court ................................15

        2.  The Settlement Class is not substantially different from the certified Class ..............16

    C.  The Notice Plan Should Be Approved Because Mailing to the Best Addresses Is
        the Best Notice Practicable to Reach Class Members .......................................18

CONCLUSION...........................................................................................................19

i

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................ 15

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D.Cal. 1979) ...................................................................... 15

*Castro v. Zenith Acquisition Corp.*,
    2007 WL 81905 (N.D. Cal.  Jan. 9, 2007) .......................................................... 11

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) .............................................................................. 16

*Gattreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) .............................................................................. 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................ 11

*In re Ferrero Litigation*,
    -- Fed. Appx. --, 2014 WL 3465685 (9th Cir., July 16, 2014) ............................ 12

*In re Netflix Privacy Litig.*,
    No. 11-00379, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013)............................ 11

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
    588 F. 3d 14 (1st Cir. 2009)................................................................................ 16

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................................ 12

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007) ................................................... 4, 11, 15, 16

*Lopez v. Bank of America, N.A.*,
    No. 10-1207, 2014 WL 4681271 (N.D. Cal., Sept. 19, 2014).......................... 4, 11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ........................................................ 13

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950)......................................................................................... 18

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................... 12

*Ross v. Trex Co., Inc.*,
    2009 WL 2365865 (N.D. Cal. July 30, 2009)...................................................... 15

*Satchell v. Federal Express Corp.*,
    2007 WL 1114010 (N.D. Cal. 2007) ................................................................. 16

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................... 15

*Torrisi v. Tucson Elec. Power*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................. 12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ........................................................................... 12

**Statutes**

12 U.S.C. § 2607............................................................................................... *passim*

**Other Authorities**

Manual for Complex Litigation  § 13.15 (4th Ed. 2014) ............................................ 4, 11

**Rules**

Fed. R. Civ. P. 23............................................................................................... *passim*

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on December 5, 2014 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the above-referenced Court, located at 280 South First Street, San Jose, California 95113, Plaintiff Felton A. Spears, Jr., on behalf of himself and the certified Class, will and hereby moves the above-captioned Court for an Order granting preliminary approval of the class action settlement as set forth in the Parties' Stipulation of Settlement and attached exhibits.[1]

For the reasons set forth in the accompanying memorandum of law filed in support of this Motion, Plaintiff moves this Court to preliminarily approve the class action settlement set forth in the accompanying Settlement, to conditionally certify a Settlement Class for settlement purposes that is slightly modified from the litigation Class certified by this Court in its April 25, 2012 Order (Dkt. No. 249) as modified by its September 16, 2014 Order (Dkt. No. 438), to appoint Joseph N. Kravec, Jr., Feinstein Doyle Payne & Kravec, LLC; and Lynn Lincoln Sarko and Gretchen Freeman Cappio, Keller Rohrback L.L.P. as Settlement Class Counsel, and to approve the proposed form and manner of giving notice to Settlement Class Members of the Settlement and advising them of their rights to participate and receive benefits from the Settlement, to exclude themselves, or object.

Plaintiff also moves the Court to enter the following schedule regarding approval of the proposed settlement:

| | |
|---|---|
| Hearing on Motion for Preliminary Approval of the Settlement | ***December 5, 2014*** |
| Deadline to complete mailing of initial notice ("Notice Deadline") to settlement class members by mail, and establish the Settlement Website and IRV Phone Line | ***December 26, 2014*** [Twenty-one (21) days following order granting preliminary approval of settlement] |
| Deadline for filing Motion for final approval of proposed Settlement and Motion for attorney's fees, | ***February 24, 2015*** [Forty-five (45) days prior to Final Fairness Hearing] |

---

[1]   A copy of the Proposed Stipulation of Settlement (hereinafter, "Settlement" or "Settlement Agreement") is attached to the Declaration of Joseph N. Kravec, Jr. in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Kravec Decl.") as Exhibit 1 filed herewith.

| reimbursement of litigation costs and expenses, and Service Award to Class Representative | |
|---|---|
| Deadline to complete re-mailing of undeliverable Notices | ***February 24, 2015*** [Forty-five (45) days prior to Final Fairness Hearing] |
| Deadline for Settlement Class Members to object to Settlement ("Objection Date") | ***Postmarked by March 6, 2015*** [Thirty-five (35) days prior to Final Fairness Hearing] |
| Deadline for counsel representing an objector to enter their appearance | ***March 11, 2015*** [Thirty (30) days prior to Final Fairness Hearing] |
| Deadline for objectors or their counsel to notice their intent to appear at the Final Approval Hearing | ***March 11, 2015*** [Thirty (30) days prior to Final Fairness Hearing] |
| Deadline for Settlement Class Members to submit claims forms ("Claim Deadline") | ***Postmarked by March 26, 2015*** [Fifteen (15) days prior to Final Fairness Hearing] |
| Deadline for Settlement Class Members to exclude themselves from the proposed Settlement ("Exclusion Deadline") | ***Postmarked by March 26, 2015*** [Fifteen (15) days prior to Final Fairness Hearing] |
| Deadline to complete depositions of any objectors | ***April 3, 2015*** [Seven (7) days prior to Final Fairness Hearing] |
| Deadline for filing supplemental papers in support of final approval of proposed settlement, attorneys' fees, reimbursement of litigation costs and expenses, and Service Award to Class Representative | ***April 3, 2015*** [Seven (7) days prior to Final Fairness Hearing] |
| Proposed Final Fairness Hearing | ***April 10, 2015*** [No less than 120 days following order granting preliminary approval of settlement] |

Plaintiff has calculated the above dates for the schedule in bold italics, using December 5, 2014 as an estimated entry date for the Preliminary Approval Order. If an order is instead entered at a later date, Plaintiff respectfully asks that each of the proposed dates in the above chart be pushed back accordingly so that the number of days for each event remains the same as indicated in the bracketed portions above. A proposed order has been submitted separately.

At the Final Approval Hearing, the Court will have the opportunity to determine whether to grant final approval to the class action Settlement, the Settlement Class, the requested attorneys' fees

2

and expenses, and the class representative Service Award, as well as to evaluate any objections thereto that may have been filed.  *See* Fed. R. Civ. P. 23(e)(2) (directing that class action settlement that purports to bind absent class members may only be entered after hearing held by the court). While the Service Award will be fully briefed, at this preliminary stage it goes without saying that the class representative, Mr. Spears, has served the class ably by being deposed, attending hearings throughout the pendency of the six-year-long litigation, and by reviewing the settlement terms, as well as key pleadings.  Likewise, class counsel have accrued far more in legal fees prosecuting this case than they will be compensated.  This issue, too, will be fully briefed in future pleadings, in keeping with the Federal Rules of Civil Procedure and with Ninth Circuit precedent.

3

1

2

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

## SUMMARY OF THE ARGUMENT

3      It would be a gross understatement to say, after nearly seven years of litigation, merely that

4  this litigation has been hard-fought.  After completion of all merits and expert discovery, exchanging

5  dozens of trial expert reports and after the Court's resolution of multiple motions (including

6  summary judgment, decertification and bifurcation) in its September 16, 2014 Order, the Parties

7  participated in contentious, multiday mediation process, including a prolonged mediation process

8  with The Honorable John Leo Wagner (Ret.) on September 17, 2014 and September 25, 2014,

9  followed by two mediator proposals.  EA has represented that it wound down its business in 2012, is

10  no longer operating, and has a negative net worth, calling into question the value of any judgment

11  Plaintiff might obtain in this litigation on behalf of the certified class. With considerable arms'

12  length negotiation conducted by Judge Wagner, the Parties each independently and separately

13  determined that it was in their best interest to accept the second mediator proposal on October 13,

14  2014, following which the parties negotiated and agreed to the Stipulation of Settlement on

15  November 21, 2014 (hereafter, "Settlement" or "Stipulation") that they now present to this Court for

16  preliminary approval.  *See* Declaration of Joseph N. Kravec, Jr. In Support of Plaintiff's Unopposed

17  Motion for Preliminary Approval of the Settlement ("Kravec Decl."), Exh. 1.  For the reasons

18  detailed herein, preliminary approval of the Settlement should be granted.

19      The question before the Court on Plaintiff's Motion for Preliminary Approval is whether the

20  Settlement the parties have reached is "sufficient to warrant public notice and a hearing." Manual for

21  Complex Litigation ("Manual") § 13.15 (4th Ed. 2014).  This merely requires deciding whether the

22  proposed Settlement is "'within the range of possible approval.'" *Lopez v. Bank of America, N.A.*,

23  No. 10-1207, 2014 WL 4681271, at *5 (N.D. Cal., Sept. 19, 2014) (quoting *In re Tableware

24  Antitrust Litig.,* 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)). The Court will then have an

25  opportunity at a final fairness hearing—having heard from all interested parties (possibly including

26  from absent class members)—to decide whether the agreement is "fair, adequate and reasonable"

27  under Fed. R. Civ. P. 23. Manual §13.15 (setting forth two-stage procedure for approval).

28

4

The Settlement reached is certainly sufficiently fair to warrant the sending of notice and to fall within the range of possible approval – it provides Settlement Class Members with meaningful cash relief to compensate them for the claims Plaintiff pled in the Second Amended Complaint (Dkt. No. 149) ("SAC").  The gravamen of the SAC is that EA entered into an agreement or understanding to provide appraisals to Washington Mutual Bank, F.A. ("WMB") that were inflated when and where needed for WMB to make a loan.[2]  SAC, ¶ 6.; Dkt. No. 438 at 3.  The Settlement provides meaningful relief for the claims alleged in the complaint by providing that EA's parent, CoreLogic Information Resources, LLC, will transfer $9,863,945 into a Settlement Fund which, after certain costs, attorneys' fees and expenses are taken out, will be divided on a *pro rata* basis and distributed to all Settlement Class Members.[3]  Additionally, Settlement Class Members who affirm that they paid for their EA appraisal will be entitled to RESPA Settlement Relief under which their *pro rata* share of the Settlement Fund will be calculated as three (3) times the amount to be paid to those with only non-RESPA claims.  This is consistent with the trebled damages provided for the RESPA claim certified for trial.

The Class Notice of the proposed Settlement fully complies with Fed. R. Civ. P. 23 and due process, as it fully advises Settlement Class Members of their rights under the Settlement and is tailored to provide the best notice practicable under the circumstances.  *See* Kravec Decl., Exh. 1.C. (proposed Class Notice).  Further, the proposed Settlement Class should be conditionally certified for settlement purposes. A litigation Class has already been certified in this case, and the proposed Settlement Class is only slightly modified to reflect the inclusion of state law claims, not just RESPA claims, that are being released by Settlement Class Members. This modified Settlement

---

[2] The parties' inability to agree even on the substance of the allegations is representative of this hotly contested litigation.  For example, EA disputes that Plaintiffs have alleged a theory of liability based on EA's inflation of appraisals "when and where needed" for WMB to make loans, and EA has argued to this Court that such a theory is inconsistent with the Second Amended Complaint and with Plaintiffs' theory of inflation "in the aggregate."  *See, e.g.*, EA's Opp. to Plaintiff's Motion in Limine No. 5 (Dkt. No. 543) at 4-5.  Accordingly, all characterizations in this Motion regarding Plaintiffs' allegations and theories of the litigation are Plaintiff's alone.

[3] EA is insolvent.  Its parent, CoreLogic Information Resources, LLC, has agreed as part of the Settlement to fund the Settlement Fund on behalf of EA.  Settlement, §§ I.K, XIII.

1    Class should be certified because all of the prerequisites for certification under Federal Rule of Civil

2    Procedure 23 have been satisfied for all the same reasons as this Court already articulated when it

3    certified a nationwide litigation Class.  Thus, certification of the Settlement Class is proper.

4           The terms of this proposed Settlement are fair, adequate, reasonable, and not the result of any

5    collusion or unfair dealing.  Under the proposed Settlement, Settlement Class Members have the

6    opportunity to recover a significant portion of the appraisal fee EA received for the appraisals it

7    provided to WMB, and for those Settlement Class Members who affirm they paid for their EA

8    appraisals, three times the amount compared to Settlement Class Members who do not similarly

9    affirm. It is impossible to determine exactly how much any Settlement Class Member will receive

10   until it is known how many Settlement Class Members provide evidence of their entitlement to

11   treble damages, but if the Court approves the amount that Plaintiff's counsel anticipates seeking in

12   its fee and cost petitions, on average Settlement Class Members will receive roughly twenty percent

13   of the average appraisal fee paid (and persons proving their RESPA status will receive treble that).

14   At this *preliminary* stage, approval should be granted.

15          Plaintiff also seeks to set all of the deadlines leading up to the Settlement hearing and has

16   submitted a proposed order for the Court's convenience based upon a date of preliminary approval

17   of December 5, 2014.  If an order granting preliminary approval is entered later than December 5,

18   2014, Plaintiff asks that the proposed dates be adjusted accordingly.

19                                              **ARGUMENT**

20   **I.      FACTUAL BACKGROUND**

21           **A.      Nature of the Action**

22          On February 8, 2008, Plaintiff, together with a former plaintiff Sidney Scholl, filed their

23   original class action complaint alleging WMB entered into an agreement, conspiracy or scheme with

24   EA and Lenders Services, Inc. ("LSI"), for EA and LSI to provide WMB with biased, inflated

25   appraisals when and where needed by WMB to justify qualifying a person for a mortgage loan.  Dkt.

26   No. 1, ¶ 6.  Plaintiff alleged seven causes of action against EA for its alleged participation in the

27   scheme, including violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§

28

Notice of Motion, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, and Supporting
Memorandum; Case No. 5-08-CV-00868 (RMW)

2607(a) and (b), for unlawful, unfair and fraudulent business practices under California's Unfair Competition Law, for violation of California's Consumer Legal Remedies Act, and for breach of contract and quasi-contract or unjust enrichment.  Dkt. No. 1, pp. 22-33.  Plaintiff and Ms. Scholl brought his action on behalf of all WMB borrowers nationwide who received WMB home loans and received an appraisal performed by EA or LSI.  *Id*. at ¶ 71.  The action was subsequently narrowed by the Court to only include WMB borrowers who received an appraisal performed by EA, and only for a claim under RESPA Section 8(a) as further described below.

### B. The Parties Settled the Case on the Eve of Trial, Once Years of Complex Litigation and Contentious Discovery Had Been Completed.

Plaintiff and Ms. Scholl filed a First Amended Complaint on March 28, 2008.  After EA, LSI and WMB moved to dismiss Plaintiff's action, WMB became insolvent and the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver for WMB on September 25, 2008.  Dkt. No. 129.  Following a mandatory stay due to WMB's insolvency, Plaintiff voluntarily dismissed the FDIC as Receiver for WMB on February 4, 2009.  Dkt. No. 141.  On March 9, 2009, the Court granted LSI's motion to dismiss without prejudice, finding Plaintiff failed to allege a conspiratorial agreement between EA and LSI, and granted-in-part and denied-in-part EA's motion to dismiss leaving Plaintiff with a single claim against EA under RESPA Section 8(a).  Dkt. No. 147.  Plaintiff and Ms. Scholl filed the SAC on March 30, 2009, and added proposed interveners Juan and Carmen Bencosme as additional plaintiffs.  Dkt. No. 149.  On August 30, 2009, the Court denied the Bencosmes' motion to intervene, dismissed Plaintiff's claims against LSI, and again sustained Plaintiff's RESPA Section 8(a) claim against EA.  Dkt. No. 169.

After a period of class-focused discovery, Plaintiff and Ms. Scholl moved to certify a class for their remaining RESPA Section 8(a) claim on May 7, 2010 (Dkt. No. 189), and EA opposed. Dkt. No. 201.  On July 2, 2010, the Court denied Plaintiff's motion to certify a class without prejudice for having failed to show how Plaintiff could prove on a class-wide basis that WMB received inflated appraisals using common proof.  Dkt. No. 209 at 9.  Plaintiff and Ms. Scholl renewed their motion to certify a class on November 19, 2010 (Dkt. No. 217), and EA again

7

opposed.  Dkt. No. 231.  On April 25, 2012, the Court granted Plaintiff's motion, certifying a class of, "[a]ll consumers in California and throughout the United States who, on or after June 1, 2006, received home loans from [WMB] in connection with appraisals that were obtained through [EA]." Dkt. No. 249 at 12.

EA petitioned the Ninth Circuit Court of Appeals for permission to appeal the Class Certification Order (Dkt. No. 251), which was denied on July 19, 2012.  Dkt. No. 257.  After notice was approved and sent to putative Class members (Dkt. No. 260), 127 persons requested exclusion (2 of which were untimely).  Dkt. No. 265.  The Parties then cross-moved for judgment on the pleadings (Dkt. Nos. 268, 283), resulting in the Court: 1) denying EA's motion in its entirety, finding Plaintiff and Ms. Scholl stated cognizable claims under RESPA Section 8(a), and that equitable tolling applies to RESPA claims (Dkt. No. 309 at 4, 6); and 2) granting Plaintiff's motion in-part, striking eight of EA's affirmative defenses without leave to amend, and 1 affirmative defense with leave to amend.  Dkt. No. 309 at 11-12.

Over the next two years after class certification was granted, the parties conducted extensive merits discovery, including discovery from former WMB employees, from JPMorgan Chase Bank, N.A. which purchased the assets of WMB when it went into receivership, from the FDIC as Receiver for WMB, as well as substantial expert discovery.  Kravec Dec., ¶¶ 9-10.  On July 1, 2014, following over six years of robust motion practice and discovery, EA moved to decertify the class (Dkt. No. 387), moved for summary judgment to dismiss Plaintiff's remaining RESPA claim (Dkt. No. 386), and moved to strike several of Plaintiff's experts.  Dkt. Nos. 388.  Also on July 1, 2014, Plaintiff moved for summary judgment as to EA's remaining affirmative defenses (Dkt. No. 383), and to bifurcate the trial.  Dkt. No. 392.  After a hearing on all of the motions, on September 16, 2014, the Court granted summary judgment in EA's favor as to Ms. Scholl's RESPA claim and granted-in-part EA's motion to strike portions of Plaintiff's experts' reports, but otherwise denied EA's motions for summary judgment and decertification.  Dkt. No. 438 at 12-19, 25-31.  The Court also granted Plaintiff's motion for summary judgment as to all but one of EA's affirmative defenses, and bifurcated the trial. *Id*. at 19-25, 31-35.

On what proved to be the eve of settlement, the Parties filed more than thirty motions *in limine* collectively, which were scheduled to be heard at the final pretrial conference on October 16, 2014, three days after the Settlement was reached in principle.  Dkt. Nos. 452-555, 460-474, 483, 485-488, 490, 492, and 511.

### C.     Settlement Discussions

Following the Court's September 16, 2014 Order, the Parties participated in hard-fought, in-person mediations with the Honorable John Leo Wagner (retired) on September 17, 2014 and September 25, 2014.  Kravec Decl., Exh. 1, § I.J.  EA has represented that it wound down its business operations in 2012, is no longer operating and has a negative net worth.  *Id.*, §I.K.  If EA has a negative net worth, Plaintiff could not recover any money for the certified Class from this action even if he prevailed in the first phase of trial and obtained a judgment against EA.  Kravec Decl., ¶ 11.  Despite EA's financial condition, the Parties were too far apart at the end of the second day of mediation, leading to Judge Wagner issuing two take-it-or-leave-it mediator proposals on September 29, 2014 and October 11, 2014.  The first proposal was rejected.  Kravec Decl., Exh. 1, § I.J.  Following considerable arms' length negotiation conducted by Judge Wagner, the Parties accepted the second mediator proposal on October 13, 2014.  *Id.*, § I.L.

The Parties have diligently worked to hammer out the details of the Settlement, which, even with the broad outlines of the settlement agreed to at mediation, was the product of hard-fought arms' length negotiation.  The terms of the Settlement are favorable to the Settlement Class, providing remuneration to Settlement Class Members based on the cost of the appraisal service at issue from a company with a negative net worth that might ultimately prove to be judgment proof. All Settlement Class Members will receive a *pro rata* share of $9,863,945 (minus costs and fees), except that those Settlement Class Members who attest that they paid for EA's appraisal service will receive a trebled *pro rata* share of the settlement proceeds.  *See* Kravec Decl., Exh. 2, Plaintiff's Proposed Plan of Allocation ("Plan of Allocation"), §§ A, B.

//

//

9

### D.     Class Certification, the Definition Previously Approved, and the Proposed Settlement Class Definition

In ruling on EA's motion for decertification and summary judgment, the Court clarified the litigation Class definition as, "[a]ll consumers throughout the United States who, on or after June 1, 2006, received home loans for personal, as opposed to business or commercial purposes, originated by Washington Mutual Bank, F.A., utilizing appraisals that they paid for and obtained from defendant eAppraiseIT." Dkt. No. 438 at 25. The Parties' proposed Settlement Class definition is almost identical to the Class definition as modified by the Court in the September 16, 2014 Order with the one exception: It eliminates the requirement that a person paid for their EA appraisal to be a member of the Settlement Class. The reason for this minor change is to reflect that the Settlement Release covers all claims that were brought in the Action, not just the RESPA claim, which was the reason behind the Court's alteration of the litigation class definition. Dkt. No. 438 at 28. Moreover, the change to the class definition is accounted for in the Settlement's *pro rata* share payout dynamics. *See* Section II.A.2, *infra*.

Consequently, the proposed Settlement Class is defined as follows:

All consumers throughout the United States who, on or after June 1, 2006, received home loans for personal, as opposed to business or commercial purposes, originated by Washington Mutual Bank, F.A., utilizing appraisals obtained from defendant eAppraiseIT. Excluded from the Class are employees, officers, and directors of defendant and their subsidiaries and affiliates. Excluded from the Class are: (a) EA's employees, officers and directors; (b) persons who timely and properly exclude themselves from the Class as provided herein; and (c) the Court, the Court's immediate family and Court staff.

Plaintiff now respectfully requests that the Settlement Class be provisionally certified for settlement purposes, and the Settlement and Notice be preliminarily approved. As demonstrated in detail below, the terms of the Settlement provide for direct mailed Class Notice, which is the best notice practicable under the circumstances, comporting both with Fed. R. Civ. P 23 and due process.

//
//
//
//

10

## II. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. The Substantive Terms of the Settlement are Fair, and Should Be Granted Preliminary Approval

#### 1. The proposed Settlement is within the range of possible approval as fair, reasonable, and adequate

Approval of a class action settlement "usually involves a two stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." Manual § 13.15. At the first stage, a court is merely required to decide whether the proposed settlement is "'within the range of possible approval.'" *Lopez*, 2014 WL 4681271, at *5 (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds that the proposed settlement is "within the range of possible approval" and that notice should be given, "the next step is the fairness hearing."). After members of the class have received notice and had an opportunity to make their views known, the Court will then evaluate whether the agreement is "fair, adequate and reasonable" under Fed. R. Civ. P. 23. Manual §13.15 (setting forth two-stage procedure for approval).

Preliminary approval should be granted to the Settlement because its terms are well within the range of what is fair and reasonable. As the Ninth Circuit recognizes, "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998). Moreover, "[c]ourts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.,* No. 11-00379, 2013 U.S. Dist. LEXIS 37286, at * 10-11 (N.D. Cal. Mar. 18, 2013).

Ultimately, the decision as to whether to grant either preliminary or final approval to a settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007). In exercising that discretion, however, the Court should bear in mind that "there is an overriding public interest in settling and

quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also, In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008).  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *see Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375-76 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Where, as here, the settlement was reached after the class was certified by the court concerns over potential for collusion are ameliorated and heightened scrutiny of the settlement is not required. *In re Ferrero Litigation,* -- Fed. Appx. --, 2014 WL 3465685, at *2 (9th Cir., July 16, 2014).

This proposed Settlement assuredly satisfies the foregoing criteria.

### a. The relief achieved matches the claims in the SAC

The terms of the Settlement provide Settlement Class Members with relief that addresses the precise legal injury that was alleged in the SAC.  The gravamen of Plaintiff's SAC is that EA entered into an agreement with WMB to provide biased, inflated appraisals when necessary for WMB to make a loan.  SAC, ¶ 6.  Thus, all persons who received appraisals from EA in relation to their WMB loan potentially received a biased, inflated appraisal.  To compensate all persons in this situation, the Settlement Fund will be divided on a *pro rata* basis, and distributed to all Settlement Class Members.  Plan of Allocation, § A.  For those Settlement Class Members who affirm they paid for their EA appraisals, and would be entitled to automatic trebling of damages under RESPA, the Settlement provides that such Settlement Class Member will be entitled to RESPA Settlement Relief under which their *pro rata* share of the Settlement Fund shall be calculated using three (3) times the recovery of non-RESPA claimants.  Plan of Allocation, § B.  Claim Forms for submitting a Claim for RESPA Settlement Relief will be mailed with the Notice, are available on-line, and can be submitted by mail or on-line through the Settlement Website.

**b.     The Settlement is particularly reasonable given EA's lack of assets**

The Settlement's terms are also fair and reasonable when considered in light of the uncertain prospects and risks faced by Plaintiff and the putative class both in terms of liability, as well as the ability to collect on any judgment.  EA vigorously denies liability, and the Parties had over 30 motions *in limine* pending at the time of Settlement, which could have substantially affected the conduct of any trial.  Although Plaintiff remained confident of the merits of his case, the trial results were – like all trials – not predictable. Further, while Plaintiff sought bifurcation of the trial due to unique circumstances concerning the cost of obtaining data relating to certain aspects of class member damages claims, this unquestionably complicated the litigation and could have potentially limited recovery.  Even if judgment were entered against it, and damages assessment in a bifurcated second stage of the litigation, EA could still appeal. Such an appeal to the Ninth Circuit would likely take years to resolve, meaning that ultimate relief to the Class would likely be years down the road.

Moreover, even if it were found liable to the Class, EA stopped doing business in 2012, is no longer operating, and has no assets from which Plaintiff could recover should he get a judgment against EA.  Kravec Decl., Exh. 1, § I.K.  To be able to get any relief for Settlement Class Members, Plaintiff secured an agreement for the Settlement Fund to be paid by CoreLogic Information Resources, LLC, EA's parent company.  *Id.*, § I.P.   Without the agreement for CoreLogic Information Resources, LLC to pay the settlement amount, there is a high likelihood that even if Plaintiff prevailed at trial, EA would be judgment-proof due to its negative net worth.  *Id.*, §I.K. Plaintiff's ability to get CoreLogic Information Resources, LLC, EA's parent company and a non-party to this action, to fund $9,863,945 to settle this action supports the Settlement's fairness.  *See, e.g.*, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) (granting final approval to a settlement as being fair and reasonable over objections to the value given to class members based, in part, on the uncertainty surrounding the defendant's ability to pay for any judgment for the liabilities at issue and potential bankruptcy if judgment was entered against it).

### 2.  The Settlement was a product of adversarial arms' length negotiations

The discussions and negotiations leading up to the Settlement were conducted in vigorous, adversarial, and arms' length fashion, which serves as added indicia of the fairness of the Settlement.

Here, the settlement negotiations were non-collusive and adversarial in nature.  Before engaging in any settlement talks, the parties litigated a multitude of motions, including several discovery motions, two motions for class certification, EA's three motions to dismiss, cross motions for judgment on the pleadings, cross motions for summary judgment, EA's motion for class decertification, EA's motion to strike certain of Plaintiff's experts' reports, and Plaintiff's motion for bifurcation.  *See* Sections I.A-B, *supra*.  The Parties also tried two attempts to mediate, and considered two separate mediator's proposals before a settlement was reached.  Kravec Decl., Exh. 1, §§ I.J, L.  It was only in October, 2014, just one month before the start of trial that both Parties agreed to a second mediator's proposal settling this action in principle.  *Id*., § I.L.

Moreover, the Settlement was reached at a time when uncertainties lay ahead for each Party.  Before agreeing to the second mediator's proposal, the Parties collectively filed over 30 motions *in limine*, including cross motions to strike EA's and Plaintiff's experts' reports, to restrict critical evidence, and preclude large categories of testimony and evidence.  The outcomes of the Parties' motions *in limine*, like any other adversarial motion in litigation, were uncertain.  If Plaintiff's experts were stricken, then, subject to any appeal, EA's exposure would decrease, potentially completely.  On the other hand, even if EA's motions *in limine* were denied, Plaintiff faced the prospect of arduous preparations for a trial on the merits, which could go either way, contentious hearings on the admissibility of evidence and testimony critical to Plaintiff's case, and even if successful, a second trial on damages which might not be collectable due to EA's financial condition.  Thus, the chronology of the proceedings made it particularly reasonable for the parties to explore a settlement at the time that they did, if doing so could be done on a fair and reasonable basis.

//

//

14

### 3.   The proposed Settlement is recommended by Settlement Class Counsel

The recommendations of class counsel are entitled to a presumption of reasonableness.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Here, Co-Lead Class Counsel, Settlement Class Counsel and Plaintiff's additional undersigned counsel, with the well-informed support of Mr. Spears, believe strongly that the proposed Settlement offers valuable relief to the Settlement Class, and that the Settlement is certainly in the Settlement Class Members' best interests.

### 4.   Summary

The factors to consider in determining the fairness of a proposed settlement must be analyzed in the context of the settlement as a whole.  *Staton v. Boeing*, 327 F.3d 938, 959, 961 (9th Cir. 2003).  Here, all pertinent factors indicate that this Settlement is "within the range" of being fair, reasonable, and adequate.  *See, e.g., In re Tableware Antitrust Litig.*, 484 F.Supp. 2d at 1079-80; *Ross v. Trex Co., Inc.*, 2009 WL 2365865, *3 (N.D. Cal. July 30, 2009).  Because the proposed Settlement amounts to a reasonable means of resolving this litigation, because the risks and expenses inherent in continuing to litigate this matter are significant and uncertain, and because the potential risk of being unable to collect any ultimate judgment from EA is significant and uncertain, this proposed Settlement should be preliminarily approved.

### B.   The Settlement Class Satisfies the Class Certification Elements of Rule 23

For preliminary approval, the Settlement Class must satisfy the class certification elements of Rule 23.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-621 (1997).  The Settlement Class here is not materially different than the litigation Class that the Court previously certified and reaffirmed after a motion for decertification, based on the required rigorous analysis.  Dkt. No. 249; reaffirmed and clarified Dkt. No. 438.  Consequently, the first requirement for preliminary approval of an appropriate settlement class under Rule 23(a) and (b)(3) is easily met here.

### 1.   The litigation Class has been certified and tested by this Court

Just two months ago, in September 2014, the Court reaffirmed that the Class certified in this Action met all requirements of Rule 23 of the Federal Rules of Civil Procedure.  Dkt. No. 438, § II.C.   To satisfy Fed. R. Civ. P. 23(a), a plaintiff must establish: numerosity, commonality,

15

typicality, and fair and adequate protection of the class by the class representative and counsel.  To satisfy Fed. R. Civ. P. 23(b)(3), a plaintiff must demonstrate the predominance of common questions of law or fact that make the class action procedure superior to any other available means of adjudication.  The Court must undertake a rigorous analysis to determine if class certification is appropriate.  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005).

In its class certification orders of July 2, 2010 and April 25, 2012, and denial of EA's motion for decertification of September 16, 2014, the Court ruled that the requirements of Rules 23(a) and (b)(3) were met, and that a litigation Class should remain certified.  Dkt. Nos. 209 at 3-6 (holding the requirements of Rule 23(a) were met); 249 at 9-12 (granting class certification after finding Rule 23(b)'s predominance and superiority requirements were met); 438 at 25-31 (denying decertification after finding Plaintiffs met their burden in demonstration class certification was warranted).  Although EA opposed certification on two occasions, and moved to decertify the class after all merits and expert discovery was complete, Plaintiff respectfully submits that – based upon the record made for the class certification motions and EA's decertification motion, the Court's orders on class certification, and the Court's order denying de-certification – there is no question that the litigation Class was properly certified, and that the Settlement Class should likewise be certified.

### 2. The Settlement Class is not substantially different from the certified Class

As the Court will recall, the original Class was certified in this case on April 25, 2012, and the Court modified the definition slightly on September 16, 2014.  Dkt. Nos. 249 and 438.  When a class has been properly certified by court order, and the proposed settlement class is not materially different from the certified class, then the settlement class should be presumptively valid under Rule 23.  *Cf. In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1079 (district court certifying a settlement class based on same analysis as prior certification of "identical" class).  That is exactly the situation here, and indeed it is typical.  *See, e.g.*, *Satchell v. Federal Express Corp.*, 2007 WL 1114010, at *3 (N.D. Cal. 2007) (certifying settlement class based on same reasoning it had previously certified a litigation class, and noting typical changes to class definition from the class earlier certified); *In re*

16

1   *Pharmaceutical Industry Average Wholesale Price Litig.,* 588 F. 3d 14, 29-30 & 40 (1st Cir. 2009)

2   (same).

3         As already noted above, the difference between the litigation Class definition as certified by

4   the Court under Rule 23(a) and (b)(3), and the Settlement Class as defined in the Settlement for

5   which approval is now sought under those same Rules, is the removal of the limitation that members

6   of the class paid for their EA appraisal service.  Compare Dkt. No. 438 at 25 with Kravec Decl.,

7   Exh. 1, § II.A.30.  As the Court will recall, the reason the Court included the "paid for" language in

8   the litigation Class definition was to ensure that the litigation Class reflected accurately the

9   prerequisites to recovering under the one remaining claim in the case under RESPA.  Dkt. No. 438 at

10  33.

11        The Settlement Class is comprised of persons who had one of the 70,356 definitely or

12  presumptively RESPA qualifying personal loans (Dkt. No. 402-13), which was determined by taking

13  EA's initial class list and removing the loans that were not originated by WaMu since June 1, 2006,

14  and loans that were not RESPA-qualifying personal loans.  Settlement, ¶ II.A.26.

15        While the size of the Settlement Class has increased from the certified litigation Class (to the

16  extent not all of the 70,356 persons within the certified litigation Class with definitely or

17  presumptively RESPA loans paid for their appraisals), the gravamen of Plaintiff's claims has stayed

18  the same, and it remains the case that Settlement Class Members have the same claims based upon

19  EA's alleged course of conduct and substantially similar, allegedly unlawful act in agreeing to

20  provide inflated appraisals to WMB.  Thus, while the Settlement Class is expanded from the

21  litigation Class to include all persons with RESPA-qualifying loans who received potentially biased,

22  inflated appraisals so that they may obtain settlement relief for their claims, the nature of the

23  Settlement Class has not been changed in any substantive respect from the originally certified Class.

24        As is almost always the case, the Parties wished to settle all of the claims in the case,

25  including those state law claims that had been previously dismissed, and could have been appealed.

26  Thus, the "paid for" language is no longer necessary to the Settlement Class Definition.  The

27  inclusion of all persons who received potentially biased, inflated appraisals, even if they did not pay

28

17

for the EA appraisal services provided to WMB as part of the Settlement Class Member's loan process, will provide compensation to consumers for EA's appraisal services based on the causes of action raised by Plaintiff in the Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief under California's CLRA, UCL, quasi-contract/unjust enrichment, and breach of contract laws.  Dkt. No. 149, pp. 30-44, 49-50.[4]  As further explained below, the Settlement accounts for those Settlement Class Members with RESPA claims, and provides those Settlement Class Members who confirm they paid for their appraisal services a three-times increase in their *pro rata* share of the Settlement Fund *vis-à-vis* Settlement Class Members who did not pay for their EA appraisals.  *See* Plan of Allocation, § A-B.

As the Court certified a litigation Class that is materially the same as the proposed Settlement Class, the requirements of Rule 23 are likewise met for certification of the Settlement Class here.

### C.  The Notice Plan Should Be Approved Because Mailing to the Best Addresses Is the Best Notice Practicable to Reach Class Members

Rule 23 and due process concerns call for notice to be provided to absent class members in order to inform them of a proposed settlement, and grant them the opportunity to opt-out or object. *See* Fed. R. Civ. P. 23(c)(2).  The notice and means of disseminating it must be the "best notice practicable" under the circumstances.  *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314-315, 317 (1950).  That test is clearly satisfied by the Class Notice agreed upon in the Settlement.  *See* Settlement, § V.A-B. and Exhibit C thereto.

Specifically, the Parties have agreed to provide specific mailed notice to all Settlement Class Members as was already approved by this Court and accomplished for the litigation Class.  *See* Dkt. Nos. 253-03 (proposed notice) and 260 (Order approving notice).  The Parties propose to disseminate the Class Notice by mailing a copy of it to Settlement Class Members at the addresses

---

[4] The Settlement Class definition also excludes persons who timely and properly exclude themselves from the class, employees, officers and directors of EA and its subsidiaries and affiliates, and the Court and the Court's immediate family and Court staff.  While this is an addition from the definition of the certified litigation Class, these exclusions are typical in any class action settlement, will involve a tiny number of people, if any at all, and should not affect any of the requirements for certification under Rule 23.

18

1    identified on the Revised Class List, subject to updating to current addresses.  Kravec Decl., Exh. 1,

2    § V.B.  The Court has already concluded that this type of notice to this same group of persons "is the

3    best notice that is practicable under the circumstances, is consistent with the recommendations by

4    the Federal Judicial Center, and complies with the requirements of Federal Rule of Civil Procedure

5    23 and due process."  Dkt. No. 260 at 1.

6         While the proposed Class Notice is not the same notice previously approved by the Court and

7    sent to Class members (as it was to notify the Class of the certification Order, and did not mention

8    the Settlement), the proposed Class Notice is consistent with the previously-approved form.

9    Moreover, the language that has been added is based on the guidance and sample language

10   recommended by the Federal Judicial Center (www.fjc.gov) and the guidance published on this

11   Court's website.  Kravec Decl., Exh. 1, V.A.  The proposed Class Notice informs absent class

12   members as to the terms of the Settlement, their right to avail themselves of the settlement, opt-out,

13   or object.  *See Id.*, Exhibit C.

14        Rust Consulting was selected as the Settlement Administrator after Plaintiff's counsel

15   solicited competitive bids from several class action administration companies, and negotiated for the

16   best possible rate for the administration services to be provided.  *See* Settlement, Exhibit B.  In

17   addition to Class Notice, the Settlement Administrator will create a Settlement Website which

18   contains copies of the Class Notice, Stipulation of Settlement and exhibits, and a set of Frequently

19   Asked Questions concerning the case, the exclusion process, the objection process, and the claims

20   process, together with their responses.  *Id.*, V.C.  The Settlement Administrator will also establish a

21   toll-free interactive voice response ("IVR") phone number with script readings of information about

22   the Settlement utilizing the relevant portions of the language contained in the Class Notice.  *Id.*, V.D.

23        As such, the proposed form of notice and its plan of dissemination should be approved.

**<u>CONCLUSION</u>**

25        For all the foregoing reasons, the Plaintiff's Unopposed Motion for Preliminary Approval of

26   Settlement should be GRANTED.

19

Dated:  November 21, 2014

**FEINSTEIN DOYLE PAYNE &**                    **KELLER ROHRBACK L.L.P.**
**KRAVEC, LLC**

By: /s/ Joseph N. Kravec, Jr.                      By:  /s/ Lynn Lincoln Sarko
    Joseph N. Kravec, Jr., Co-Lead Class          Lynn Lincoln Sarko (*pro hac vice*)
    Counsel                                                        Tana Lin (*pro hac vice*)
    (*pro hac vice*)                                          Gretchen Freeman Cappio (*pro hac vice*)
    Wyatt A. Lison (*pro hac vice*)                  Raymond J. Farrow (*pro hac vice*)
    McKean J. Evans (*pro hac vice*)

                                                  1201 Third Avenue, Suite 3200
                                                  Seattle, WA 98101
    429 Forbes Avenue                                      Tel: (206) 623-1900
    Allegheny Building, 17th Floor                    Fax:  (206) 623-3384
    Pittsburgh, PA 15219
    Tel:  (412) 281-8400
    Fax:  (412) 281-1007

                                                  Khesraw Karmand (SBN 280272)
                                                  Matthew J. Preusch (SBN 298144)
                                                  1129 State Street, Suite 8
                                                  Santa Barbara, CA 93101
                                                  Tel:  (805) 456-1496
                                                  Fax:  (805) 456-1497

*Co-Lead Trial Counsel for Plaintiff and the Class*

**LAW OFFICES OF JANET LINDNER**                **BRAUN LAW GROUP, P.C.**
**SPIELBERG**

By: /s/ Janet Lindner Spielberg                    By: /s/ Michael D. Braun
    Janet Lindner Spielberg (SBN 221926)         Michael D. Braun (SBN 167416)

    12400 Wilshire Boulevard, #400                10680 West Pico Blvd., Suite 280
    Los Angeles, CA 90025                            Los Angeles, CA 90064
    Tel:  (310) 392-8801                                Tel:  (310) 836-6000
    Fax:  (310) 278-5938                              Fax:  (310) 836-6010

*Co-Lead Counsel and Trial Counsel for*          *Trial Counsel for Plaintiff and the Class*
*Plaintiff and the Class*

20

## PROOF OF SERVICE

STATE OF PENNSYLVANIA          )
                              )   ss.:
COUNTY OF ALLEGHENY           )

I am employed in the County of Allegheny, State of Pennsylvania. I am over the age of 18 and not a party to the within action. My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA 15219.

On November 21, 2014, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**NOTICE OF MOTION, PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, AND SUPPORTING MEMORANDUM**

**[X]      BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:** I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare, under penalty of perjury under the laws of the United States, that the above is true and correct.

Executed on November 21, 2014, at Pittsburgh, Pennsylvania.

  /s/Joseph N. Kravec, Jr.
      Joseph N. Kravec, Jr.

Notice of Motion, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, and Supporting Memorandum; Case No. 5-08-CV-00868 (RMW)