UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELTON A. SPEARS, JR. and SIDNEY SCHOLL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN EAPPRAISEIT (a/k/a eAppraiseIT, LLC), a Delaware limited liability company,<br><br>Defendant. | Case No. 5-08-CV-00868-RMW<br><br>**ORDER DENYING MOTION FOR REIMBURSEMENT OF COSTS BY JPMORGAN CHASE BANK, N.A.**<br><br>[Re Docket No. 564] |

Non-party JPMorgan Chase Bank, N.A. ("Chase") moves for an order compelling plaintiffs to reimburse Chase for costs incurred in responding to discovery. Dkt. No. 564. For the reasons explained below, the court DENIES the motion.

## I. Background[1]

In this certified RESPA class action, plaintiffs sought discovery from Chase relating to loans issued by Washington Mutual Bank, F.A. ("WMB"). Chase, as the entity that purchased all of the plaintiff class members loans from the FDIC after WMB went into receivership, has WMB's loan

---

[1] For more detailed background of the underlying litigation, see *Spears v. First Am. eAppraiseIT*, No. 5-08-CV-00868-RMW, 2014 WL 4647679 (N.D. Cal. Sept. 16, 2014) (Summary judgment order).

ORDER
Case No. 8-CV-00868-RMW
LM

- 1 -

files for most or all of the class. Plaintiffs sought discovery on the loan files, and served three subpoenas on Chase.

**December 3, 2012 Subpoena**: The December 3 subpoena requested information related to approximately 230,000 WMB loans. *See* Declaration of John M. Sorich ("Sorich Decl.") Ex. A. Chase objected to the subpoena, in part on the basis that the subpoena was unduly burdensome. Sorich Decl. Ex. B. Chase then filed a motion to quash or modify the December 3 subpoena. Dkt. No. 275. After further meet and confers between Chase and plaintiffs, Chase agreed to produce the "requested information in the form of spreadsheets reflecting electronically available data for the approximately 200,000 loans at issue." Dkt. No. 564 at 3; Sorich Decl. Ex. C. This agreement also responded to a subpoena from defendant EA. Chase also agreed to produce 450 sample loan files, as a substitute for producing every loan file, which also alleviated some of Chase's discovery obligations to EA. Sorich Decl. ¶ 7.

**June 5, 2013 Subpoena:** The June 5 subpoena requested documents and electronic information relating to WMB and EA's quality control measures. Sorich Decl. Ex. D. Chase again filed objections to the subpoena, including "unduly burdensome" objections. Sorich Decl. Ex. E. After meeting and conferring, Chase and plaintiffs agreed to a search of 13 custodians and specific search terms. Sorich Decl. Ex. F.

**September 24, 2013 Subpoena:** The September 24 subpoena sought nine categories of information. Chase produced responses to five of those categories. "Because the costs incurred responding to the September 24 Subpoena consisted primarily of attorneys' fees, Chase has decided not to pursue these costs in this action." Dkt. No. 564 at 5.

In addition to responding to the three subpoenas identified, Chase asserts that it spent "over $600,000 in attorney's fees" to review its production for "privileged information or information statutorily required to be withheld under the Bank Secrecy Act. Chase is not seeking reimbursement of these costs in this action." Sorich Decl. ¶ 20.

In total, Chase represents that it produced "over 334,000 pages of documents" and now seeks reimbursement of $455,589.52 in expenses. Dkt. No. 564 at 1.

## II. Analysis

### A. Chase Cannot Seek Reimbursement Under Rule 45(d) For Discovery Not Ordered by the Court, When Chase Did Not Notify Plaintiffs It Would Seek Reimbursement

Chase seeks reimbursement under Federal Rule of Civil Procedure 45(d). Rule 45(d)(2)(b)(ii) provides (emphasis added):

> (d) Protecting a Person Subject to a Subpoena; Enforcement.
>
> > (2) Command to Produce Materials or Permit Inspection.
> >
> > B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
> >
> > > (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
> > >
> > > (ii) These acts may be required only as directed in the order, and **the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.**

Plaintiffs argue that Chase cannot recover costs under Rule 45(d) unless the production is a result of a court order. Plaintiffs also argue that Chase did not notify plaintiffs that it would seek reimbursement until after production was underway.

Plaintiffs are correct that Chase did not produce any of the documents at issue in this motion in response to a court order. Therefore, if Rule 45(d) requires a court order before cost shifting is permitted, Chase's motion must be denied. Plaintiffs and Chase also agree that if documents are produced by a non-party pursuant to court order, cost shifting is mandatory for "significant" costs. Fed. R. Civ. Pro. 45(d)(2)(B)(ii); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).

Chase argues that Rule 45(d) does not necessarily require a court order to shift costs. The court agrees with Chase that requiring a court order to award costs creates a perverse incentive to bring all discovery disputes to the court, needlessly multiplying litigation. Dkt. No. 573 at 2.

1  Requiring litigation of discovery disputes would conflict with the purpose of Rule 45, which is to

2  "avoid imposing undue burden or expense on a person subject to the subpoena," Rule 45(d)(1), and

3  a sounder policy is to encourage parties to meet and confer and come to an agreed resolution of

4  discovery disputes. The court sees no reason why a party and a non-party could not negotiate a

5  reasonable resolution of the discovery dispute (e.g., to a limited production in response to a

6  subpoena), and agree on reimbursement of costs from compliance, or agree that the non-party

7  reserves its right to seek reimbursement, and then proceed with discovery without requiring the

8  intervention of the court.

9      The cases cited by plaintiffs in support of its rigid court order requirement are all district

10  court cases outside of the Ninth Circuit. *See* Dkt. No. 571 at 7-8, citing *North American Rescue*

11  *Products, Inc. v. Bound Tree Med.*, *LLC*., No. 2:08-CV-101, 2009 WL 4110889 (S.D. Ohio Nov. 19,

12  2009); *DNT, LLC v. Sprint Spectrum, LP*, 750 F. Supp. 2d 616, 626 (E.D. Va. 2010); *Tutor-Saliba*

13  *Corp. v. United States*, 32 Fed. Cl. 609 (1995); *Angell v. Kelly*, 234 F.R.D. 135 (M.D.N.C. 2006);

14  *McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423 (D.N.J. 2004).

15      Although plaintiffs argue that *Legal Voice*, a Ninth Circuit case addressing Rule 45, requires

16  a court order before cost shifting is allowed, the court does not agree. *Legal Voice* did not address

17  the issue of cost shifting without a court order. The Ninth Circuit stated both that "when a court

18  *orders* compliance with a subpoena over an objection" it must award costs, and that cost shifting is

19  required "to shift a non-party's costs of compliance with a *subpoena*." 738 F.3d at 1184. *Legal*

20  *Voice* leaves open the issue of cost shifting in the absence of a court order.

21      The court also recognizes the rationale provided in the cases refusing to shift costs where the

22  party seeking discovery did not know that the non-party would seek reimbursement or did not

23  consent to reimbursement. *Angell v. Kelly*, 234 F.R.D. at 139 (due to lack of notice, "it would not be

24  fair to say that defendant Kelly agreed to pay for attorney's fees resulting from the production of the

25  documents" (footnote omitted)); *McCabe*, 221 F.R.D. at 427 ("expedient compliance does not

26  outweigh the prejudice that would ensue to Plaintiffs if required to pay exorbitant counsel fees

27  absent an opportunity to address their subpoenas and mitigate counsel fees." (footnote omitted)).

28

Accordingly, to balance the competing concerns of (1) protecting a non-party who must respond to discovery, (2) encouraging negotiated resolution of discovery disputes, and (3) providing requesting parties with adequate notice of the costs associated with their discovery requests, the court concludes that costs may be shifted under Rule 45(d)(2)(B)(ii) if the requesting party is on notice that the non-party will seek reimbursement of costs. *See also North American Rescue Products*, 2009 WL 4110889 at *14 ("A non-party's failure to follow Rule 45, however, does not mean that reimbursement is foreclosed under all circumstances. Courts have recognized that, where a non-party voluntarily complies with a subpoena without strictly adhering to Rule 45, it is reasonable to consider whether the non-party and party have reached some voluntary agreement regarding reimbursement."); *Tutor-Saliba*, 32 Fed. Cl. at 611 ("a nonparty must move to quash the subpoena *or otherwise indicate* its intention to seek costs before, and as a condition of, responding" (emphasis added).

In this case, it is clear from the record that Chase, plaintiffs, and defendant were working to find acceptable discovery that would not be excessively costly. For example, plaintiffs repeatedly sought electronic information, rather than physical documents. *See, e.g.,* Sorich Decl. Ex. 3 (letter from plaintiffs to Chase: "You will let me know if any of the items are not electronically available so was can consider if there is alternative information electronically available that will serve our purposes."). Plaintiffs also sought reduced production of the loan files, requiring Chase to produce only about 500 loan files, in contrast to potentially 200,000 files.[2]

However, it is not clear that Chase informed plaintiffs it would seek reimbursement of costs until well after production was underway or complete. First, Chase's boilerplate "unduly burdensome" objection to the subpoenas is not sufficient to put plaintiffs on notice that it would seek reimbursement. Second, none of the supporting documents submitted to the court in connection with the motion for costs show that Chase ever conditioned its negotiated responses to plaintiffs' subpoenas on the right to seek reimbursement.[3] Although the motion asserts that "[d]uring such

---

[2] The fact that Chase and the parties negotiated reduced productions does not, by itself, preclude Chase from reimbursement. In negotiating a reduced production Chase could have insisted on reimbursement, or reserved its right to seek reimbursement from the court.

[3] Chase did request costs in connection with production of physical HUD-1 forms, but that production never occurred and is not at issue.

ORDER
Case No. 8-CV-00868-RMW
LM
- 5 -

negotiations and subsequently, Chase has maintained that it was entitled to recover its costs and would seek to recover reasonable costs of complying with the subpoenas," the court does not see any evidence of this, and especially no evidence discussing costs associated with the December 3 and June 5 subpoenas. Dkt. No. 573 at 1; Sorich Decl. ¶ 8.

The record reflects that when Chase notified plaintiffs of specific costs associated with production, plaintiffs objected to any reimbursement and directed Chase *not* to incur the costs. For example, when Chase notified plaintiffs that it would cost $60,000 to review OptisValue messages, plaintiffs objected, and Chase did not produce the information. Dkt. No. 573 at 8. Indeed, in connection with the OptisValue messages requested in the September 24 subpoena, plaintiffs stated that "After approximately a year of negotiations about this data, which your client [Chase] represented to the Court and to Plaintiffs that Chase agreed to produce, your email yesterday afternoon was the very first time Plaintiffs have ever heard of any cost to them of producing this data -- much less a price tag of $60,000. Plaintiffs' position is that they should pay nothing for this data, given that your client has never raised this issue to us or to the Court." Hurt Decl. Ex. 1 (email from plaintiffs to Chase). Chase then replied, "For clarification, are you saying that Plaintiffs will not reimburse Chase for any of the costs it has already incurred and will incur in producing the requested data?" *Id.* (email from Chase to plaintiffs). This exchange demonstrates that Chase and plaintiffs had not come to any private agreement on reimbursement.

In addition to the assertion that reimbursement was discussed throughout the negotiations, Chase points to its motion to quash and motion for reimbursement related to the HUD-1 forms. Chase's December 28, 2012 motion to quash the December 3 subpoena explained that producing data related to 230,000 loan files would be unreasonably expensive. Dkt. No. 275 at 4. The motion to quash also asserted, in a footnote, the Chase would be "entitled to 'reasonable compensation' so as to protect Chase from incurring significant expense." *Id.* at 4 n.1. The motion did not address the expense related to any smaller production, and the motion was never refiled after being vacated for failure to comply with Magistrate Judge Lloyd's Standing Order. Dkt. No. 276.

Chase also expressly requested reimbursement relating to production of the HUD-1 forms, which the court did order Chase to produce. *See* Dkt. Nos. 353, 359, 362, 395. Chase's request was

limited costs relating to producing the HUD-1 forms, which Chase estimated would cost $2.2 million. Dkt. No. 395. In response, plaintiffs successfully moved to bifurcate the liability and damages portions of the case, in large part to avoid incurring the expense. Dkt. No. 389. Plaintiffs' behavior throughout the litigation indicates that they actively sought to reduce discovery costs and actively disputed any assertions by Chase that they would be required to reimburse discovery expenses. Chase's silence regarding recovering productions costs beyond the OptisValue messages and HUD-1 forms did not put plaintiffs on notice that Chase would seek those costs later.

Based on the record presented, Rule 45(d) does not require the court to shift production costs onto plaintiffs. The record also reflects that it would be unfair to require plaintiffs to reimburse Chase for costs relating to the negotiated productions, which were designed to significantly reduce Chase's production costs, where Chase failed to inform plaintiffs that it would later seek reimbursement of over $450,000. Accordingly, the motion for costs is DENIED.

**B. Chase's Costs Did Not "Result From Compliance" With Plaintiffs' Subpoenas**

Chase has also failed to establish that the costs "resulted from compliance" with plaintiffs' subpoenas. *McGraw-Hill*, 2014 WL 3810328, at *3 (citing *Legal Voice*, 738 F.3d at 1184).

Plaintiffs argue that Chase's production was actually the result of compliance with subpoenas from plaintiffs *and defendant*. For example, the spreadsheets produced in response to the December 3 subpoena addressed "not only [plaintiffs'] subpoena, but also the majority of the loan items in [defendant's] subpoena." Sorich Decl. Ex. C (letter from plaintiffs to Chase). The sample loan files were also requested as a follow on to defendant's subpoena. *Id.* (discussing sample loans: "We had planned to issue a separate subpoena for them, but since [defendant] has raised the issue by asking for all of the appraisals, we should address it now . . . I believe that if we get copies of the sampled properties, [defendant] will not have a good reason for needing copies of the rest."); Dkt. No. 541 at 4.

Chase responds that the EA subpoenas seeking similar discovery were withdrawn, and therefore the production was only in relation to plaintiffs' subpoenas. Dkt. No. 573 at 6-7. Chase negotiated with EA to produce a subset of the information requested, which is why the subpoenas were "withdrawn." Chase also negotiated with plaintiffs for a reduced production, and now seeks

costs. To the extent that EA's subpoenas were "withdrawn," plaintiffs' subpoenas would be as well. It is clear from the parties' submissions that Chase's production was a result of subpoenas from both parties. It would therefore be unfair to require plaintiffs to bear these costs alone, and costs would have to be allocated between EA and plaintiffs. Chase's motion does not propose any allocation. As costs are being denied for the reasons explained above, the court does not make any allocation.

### III. Order

For the reasons explained above, the court DENIES the motion for reimbursement.

Dated: December 8, 2014

Ronald M. Whyte
United States District Judge